# Exhibit C

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

## I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>PAIGE FINKELSTEIN, M.D.</u>
Plaintiff                                              Case # _____
                                                       Judge _____

vs.
<u>MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., KFIR BEN-DAVID, M.D.</u>
 Defendant

## II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

## III.    TYPE OF CASE      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

### COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**     **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.**     **NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

    <u>4: Count 1 – Wrongful Termination and Breach of Contract - Count II - Extortion - Count III -</u>
<u>Intentional Infliction of Emotional Distress - Count IV - Emergency Injunction</u>

**VI.**     **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**     **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.**     **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Richard H. Levenstein</u>         Fla. Bar # <u>235296</u>
            Attorney or party                     (Bar # if attorney)

<u>Richard H. Levenstein     </u>          <u>09/30/2022</u>

(type or print name)                          Date

Case 1:23-cv-20188-RKA Document 1-4 Entered on FLSD Docket 01/17/2023 Page 6 of 115

IN THE CIRCUIT COURT
OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

COMES NOW the Plaintiff, PAIGE FINKELSTEIN, M.D., by and through her undersigned counsel, and files this her Verified Complaint against the Defendants, MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., a Florida Not For Profit Corporation, and KFIR BEN-DAVID, M.D., for Injunctive Relief and Damages in the amount in excess of $30,000 which the minimum jurisdictional amount of this Court, and alleges as follows:

**I.**      **ALLEGATIONS COMMON TO ALL COUNTS**

1.      This is an action for injunctive relief and damages in excess of $30,000 which is the minimum jurisdictional amount of this Court.

2.      The Plaintiff, Paige Finkelstein, M.D. is a licensed physician in the State of Florida, a resident of the State of Florida, and otherwise *sui juris* in all respects.

3.      The Defendant, Mount Sinai Medical Center ("MSMC"), is a Florida Not For Profit Corporation authorized and doing business in the State of Florida, with its principal place of business in Miami, Florida.

2254C143-F23F-49A3-B597-A871EA999B6F — 20220920 12:17:39 -5:00 --- Remote Notary

DocVerify ID: 2254C143-F23F-49A3-B597-A871EA999B6F
www.docverify.com
Page 1 of 15    1A871EA999B6F

4.      The Defendant, Dr. Kfir Ben-David, is a physician licensed in the State of Florida, and an employee of the Defendant Mount Sinai, and a resident of Dade County, and otherwise *sui juris* in all respects.

5.      At all times material hereto, the Plaintiff, Dr. Paige Finkelstein was a resident physician in residency training in general surgery at Mount Sinai, and completed two and one-half (2.5) years of that five (5) year general surgery residency.

6.      At all times material hereto, the Defendant, Dr. Kfir Ben-David was the Director of the General Surgery Residency Program at the Defendant Mount Sinai, and Chairman of the Department of Surgery at Mount Sinai as well.  In those positions, Dr. Ben-David, on behalf of the Defendant, Mount Sinai, exercised complete and total authority and control over the General Surgery Residency Program at Mount Sinai, and therefore over the Plaintiff, Dr. Paige Finkelstein while she was a part of that Residency Program.

7.      While Dr. Finkelstein was a Resident in General Surgery at Mount Sinai, both the Defendant Mount Sinai and Dr. Ben-David fostered a culture of conformity in which the personal and professional growth of the Residents were sacrificed in favor of bolstering purported "quality metrics" that allegedly augmented the prestige of Mount Sinai Medical Center and Dr. Ben-David personally.

8.      Dr. Finkelstein was punished for taking personal initiative, alerting Senior Staff to concerns within the Program with regard to issues of patient care and safety, and the voicing of any concern or complaint concerning how she was treated while she was a Member of the General Surgery Residency Program at Mount Sinai.  Dr. Finkelstein was met with retaliation, and ridicule, which ultimately resulted in the forced resignation from the Program by Dr. Finkelstein.

2254C143-F23F-49A3-B597-A871EA999B6F — 20220920 12:17:39 -5:00 — Remote Notary

9.      The General Surgery Residency Program at Mount Sinai was a Program in which the voicing of legitimate concerns about patient care, hospital administration or resident training was actively suppressed, and met with by retaliation by means of arbitrary disciplinary actions, and ultimately termination or constructive dismissal by way of a forced resignation.

10.     The Defendants, Mount Sinai and Dr. Ben-David continually harassed and cajoled Dr. Finkelstein while she was a Resident, singling her out for unwarranted discipline, degrading criticism, and efforts designed solely to drive her out of the Residency Program.

11.     Dr. Ben-David and Mount Sinai, routinely withheld documents which were required to be provided to Residents documenting their progress in the Residency Program, unless the Residents agreed to sign Non-Disclosure Agreements and/or Releases, such that the true state of affairs and events taking place at the Residency Program at Mount Sinai would never reach the public view, and any and all claims or potential claims would be released and extinguished.

12.     In fact, Dr. Ben-David and Mount Sinai Medical Center refused to provide, and continue to refuse to provide documents required to be provided to Dr. Finkelstein by the American Counsel of Graduate Medical Education (ACGME), including a Summative Evaluation and Certificate of Completion of two (2) years of the General Surgeon Residency to Dr. Finkelstein, unless she agreed to sign a non-disclosure agreement and release, agreeing not to disclose any events or facts concerning the Residency Program, and releasing both Dr. Ben-David and Mount Sinai from liability with respect to any and all claims related to her Residency Program experience, as a pre-condition to receiving the Summative Evaluation and Certificate of Completion documents which Dr. Ben-David and Mount Sinai were required to provide to her by law.

13.     Dr. Finkelstein joined the Surgical Residency Program at Mount Sinai in June of 2018 after graduating from the University of Miami Miller School of Medicine with an MD Degree

2254C143-F23F-49A3-B597-A871EA999B6F — 20220920 12:17:39 -5:00 — Remote Notary

and Master of Public Health Degree.  Prior to that time she attended the Massachusetts Institute of Technology were she graduated with Degrees in Chemical Engineering and Biology, and she has ten (10) years of experience as a Nationally Licensed Emergency Medical Technician.

14.     Upon joining the Residency Program, Dr. Finkelstein was appointed the Class Representative her Residency Class, and in that capacity she was repeatedly warned by Senior Residents and Attending Physicians to "keep her head down, avoid unneeded attention, and refrain from making waves".

15.     During the time that she was a General Surgery Resident at Mount Sinai, Dr. Finkelstein observed multiple and substantial incidents concerning patient care and safety, some of which were illegal, and she felt compelled to report that conduct to Dr. Ben-David and Mount Sinai.  As a result of making such reports of that conduct, Dr. Finkelstein was formerly disciplined and placed on probation for two (2) months, and accused of being rude and unprofessional.

16.     Months after the initial unwarranted disciplined described above, another incident occurred and was observed by Dr. Finkelstein with regard to a Code Blue in the Hospital's Psychiatric Ward.  This time, a patient died as a result of the absence of necessary tools and skills to administer proper CPR to a patient, and the failure to be able to intervene effectively in a timely manner with regard to this patient led to that patient's death.

17.     Dr. Finkelstein was compelled to report the death of that patient and the circumstances of the patient's death, and once again was placed on probation and accused of being rude to Members of the Mount Sinai Staff, and exhibiting a lack of professionalism.  Shortly thereafter, on October 26, 2020, Dr. Finkelstein received a letter of Non-Renewal of her Residency Program, in effect ending her training as a General Surgeon, and potentially ending her ability to become a General Surgeon anytime thereafter.

2254C143-F23F-49A3-B597-A871EA999B6F — 2022/09/20 12:17:39 -5:00 — Remote Notary

18.     Subsequent events occurred which Dr. Finkelstein observed with regard to the lack of the quality of care and safety provided to patients at Mount Sinai, and ultimately, Dr. Finkelstein was subjected to additional harassment and punishment by Dr. Ben-David and Mount Sinai.  On January 13, 2021, Dr. Finkelstein was forced to submit her Resignation to Mount Sinai Medical Center as a General Surgery Resident.  This Resignation was forced by the actions for Dr. Ben-David and Mount Sinai continually harassing and wrongfully punishing Dr. Finkelstein, and creating an environment such that she was no longer able to continue with her training as a Surgical Resident at Mount Sinai, and she was advised by Dr. Ben-David that if she did not resign, she would be terminated.

19.     Upon her Resignation from the General Surgery Residency Program at Mount Sinai, Dr. Ben-David and the Mount Sinai Hospital Administration attempted to extort Dr. Finkelstein into signing a Non-Disclosure Agreement and Release, in exchange for being provided with a Summative Evaluation of her Residency Performance, and a Certificate that she had completed two (2) years of the Residency Program.  These are documents which the ACGME requires a Residency Program to provide to any Resident upon request, and therefore the Defendants, Dr. Ben-David and Mount Sinai, were legally required to provide those documents to Dr. Finkelstein, and she had the corresponding legal right to receive them.  Therefore, the demand by Dr. Ben-David and Mount Sinai that she sign a Non-Disclosure Agreement and Release in exchange for the receiving such documents was extortion and blackmail, by requiring her to give up something of value in exchange for something she was legally entitled to receive.

20.     Dr. Finkelstein refused to sign the Non-Disclosure Agreement and Release, and to this date, despite repeated demand, the Defendants, Mount Sinai and Dr. Ben-David, have refused

2254C143-F23F-49A3-B597-A871EA999B6F — 2022/08/20  12:17:39 -5:00 --- Remote Notary

to provide the Summative Evaluation and Certificate of Completion of the two (2) years of the General Surgery Residency to Dr. Finkelstein.

21.    Dr. Finkelstein has attempted to continue her Residency at another local hospital, however her application was rejected due to a lack of support of that application from Dr. Ben-David, and his negative comments made to that Program about Dr. Finkelstein without justification.  Dr. Finkelstein continued to interview with other hospital systems across the country, and when she inquired as to whether or not Dr. Ben-David would provide her with a recommendation for that Program, she was told by the Defendants, that if she did not sign the Non-Disclosure Agreement and Release, Dr. Ben-David and Mount Sinai would not provide her with a reference, and therefore without such a reference all of the applications which she submitted in order to continue her residency training were rejected.

22.    In July 2021, Dr. Finkelstein received an offer from Mount Sinai Beth Israel Hospital in New York to serve as a House Surgeon in the operating room of that Hospital.  She submitted her credentials and her application, and her application was denied, once again because Dr. Ben-David either would not provide a reference or provided negative comments about her to that Hospital resulting in her being rejected for that position.

23.    The intentional actions of Dr. Ben-David and Mount Sinai as described hereinabove have prevented Dr. Finkelstein from pursuing her training as a general surgeon, have caused her economic damage, damage to her reputation, and prevented her from becoming what her education and training to date have prepared her to be, namely a general surgeon.

24.    These actions of the Defendants' have effectively ended Dr. Finkelstein's career as a physician, due to the damage to her reputation, and her inability to complete her training, and has suspended in career limbo, with little or no prospects for employment.

25.     All of the actions of the Defendants' described hereinabove were taken intentionally, with malice, and the specific intent and objection to irreparably harm Dr. Finkelstein, which is exactly the damage she has suffered, presently suffers, and will continue to suffer in the future.

### COUNT I – WRONGFUL TERMINATION AND BREACH OF CONTRACT

26.     This is an action for injunctive relief and damages in excess of $30,000 which is the minimum jurisdictional amount of this Court.

27.     The Plaintiff repeats, reiterates and restates all of the allegations common to all accounts.

28.     The Plaintiff Paige Finkelstein, M.D. and the Defendant Mount Sinai Medical Center Inc. entered into a Graduate Medical Education Program Agreement on March 11, 2020, pursuant to which Dr. Finkelstein was to be a member of the surgical residency administrated and provided by Mount Sinai Medical Center.  A copy of the Graduate Medical Education Program Agreement is attached hereto as Exhibit "A".

29.     Pursuant to that Graduate Medical Education Program Agreement, Dr. Finkelstein was to serve as a resident in Surgical Residency for a period of five (5) years, Dr. Ben-David and Mount Sinai Medical Center and Dr. Finkelstein had certain obligations and responsibilities assigned to each of them respectfully pursuant to the Agreement.

30.     As part of the obligations imposed upon by the Agreement, the Defendants Mount Sinai and Dr. Ben-David were required to provide a harassment free work environment for Dr. Finkelstein to perform her duties as Resident Physician, pursuant to Paragraph 6 of the Graduate Medical Education Program Agreement.

31.     As stated in the allegation to all counts, the work environment provided by the Defendants Mount Sinai and Ben-David was hostile, retaliatory, repressive, and subjected Dr. Finkelstein to constant reprisals, repercussion, retaliation, harassment, humiliation, and emotional distress on a daily basis, as a result of the actions of Mount Sinai and Dr. Ben-David described in the allegation to all counts.

32.     These actions of the Defendants Mount Sinai and Ben-David constitute breach of the Graduate Medical Education Program Agreement, and are additionally in violation of the obligations imposed upon the Defendants by the American Council of Graduate Medical Education (ACGME) and all Residency Programs, to provide a safe and professional work place for residents, free from the type of harassment, retaliation, humiliation, oppression, and environment created by the Defendants with respect to Dr. Finkelstein's term as a Surgical Resident.

33.     As a result of the actions of the Defendants as herein described in the allegations common to all counts, the Plaintiff, Dr. Paige Finkelstein has been unable to secure a position in another Residency Program, has been unable to secure any employment in the medical profession as a physician, and continues be unable to do so, as a result of the continuing failure and refusal of the Defendants to provide her with documents which they are required to provide evidencing her completion of two and one-half (2.5) years of her Residency, and further as a result of the false and defamatory comments made by the Defendants, including Dr. Ben-David, about Dr. Finkelstein in response to requests for information about her from potential Residency Programs and/or employers and/or the failure of the Defendants and in particular Dr. Ben-David to respond to such requests in any way at all.

2254C143-F23F-49A3-B597-A871EA999B6F — 20220820 12:17:39 -5:00 — Remote Notary

34.     As a result of the actions of the Defendants which have resulted in the inability of the Plaintiff to obtain employment in the medical profession as before described, the Plaintiff Dr. Paige Finkelstein, has suffered damages to her reputation, has suffered the loss of earnings past present and future, and a loss of earning capacity, and will suffer said damages in the future.

WHEREFORE, Plaintiff Dr. Paige Finkelstein, requests that this Court enter judgment in her favor in the amount excess of $30,000, for the damages hereinabove specified, together with interest thereon and costs of this action, together with all further relief deemed just and proper by this Court.

## COUNT II – EXTORTION

35.     The Plaintiff restates, reiterates and restates all of the allegations common to all accounts as is more fully as set forth and full.

36.     This is an action for damages in excess of $30,000, which is the maximum jurisdictional amount of this Court.

37.     As stated in the allegations common to all counts, the Defendants have refused to provide the Plaintiff with a Summative Evaluation of her residency training, and/or a Certificate of Completion, with respect to the years of residency she completed at Mount Sinai, unless she executed a Release of All Claims, and a Confidentiality Agreement, as a precondition to receiving those documents.

38.     The actions of the Defendants are therefore unlawful, and by requiring Plaintiff to sign Releases and Non-Disclosure Agreements to which Plaintiff is lawfully entitled to receive, these actions constitute extortion and blackmail.

2254C143-F23F-49A3-B597-A871EA999B6F — 20220920 12:17:39 -5:00 — Remote Notary

39.     As a result of the actions of the Defendants, the Plaintiff has suffered damage to her reputation, and the inability to secure employment or obtain any position as a physician anywhere.

40.     As a result of the Defendants' actions, the Plaintiff has suffered damages consisting of loss of earnings, past present and future, loss of earning capacity, loss of reputation, and the inability to practice the profession she has chosen and spent years of education and training to undertake.

WHEREFORE, Plaintiff Dr. Paige Finkelstein, requests that this Court enter judgment in her favor in the amount excess of $30,000, for the damages hereinabove specified, together with interest thereon and costs of this action, together with all further relief deemed just and proper by this Court.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41.     This is an action for damages in excess of $30,000.00 for the intentional infliction of emotional distress.

42.     The Plaintiff restates, reiterate and restate all of the allegations common to all accounts as more fully as set forth and full.

43.     The actions and conduct of the Defendants, Mount Sinai and Dr. Ben-David, as described in Paragraphs 37 and 38 of the Complaint, was outrageous and extreme and under the circumstances went beyond all possible bounds of decency, and are regarded as shocking, atrocious, and utterly intolerable in a civilized community.

44.     The Plaintiff has suffered, and continues to suffer severe and intense emotional distress as a result of the actions of the Defendants as is above described, of a nature no ordinary person should be expected to endure.

2254C143-F23F-49A3-B597-A871EA999B6F — 20220920 12:17:39 -5:00 — Remote Notary

45.     As a result of these actions of the Defendants, Plaintiff has suffered and continues to suffer emotional distress, humiliation and embarrassment, loss of earnings, past, present and future, loss of earning capacity, and damages to her reputation.

WHEREFORE, the Plaintiff, Dr. Paige Finkelstein respectfully requests that this Court enter judgment in favor in the amount in excess of $30,000.00 for the damages hereinabove specified, together with interest thereon, and costs of this action, together with all further relief deemed just and proper by this Court.

### COUNT IV – EMERGENCY INJUNCTION

46.     This is an action for the imposition of emergency injunctive relief.

47.     The Plaintiff restates, reiterate and restate all of the allegations common to all accounts as more fully as set forth and full.

48.     Plaintiff requests that an Emergency Injunction be entered by this Honorable Court requiring the Defendants Mount Sinai and Dr. Ben-David to provide the Plaintiff with the Summative Evaluation required to be provided to her by the American Council Graduate and Medical Education by the Defendants, as well as the Certificate of Completion of the two and one-half (2.5) years of the General Surgery Residency at Mount Sinai Hospital, a document also required to be provided to the Plaintiff by the Defendants by the American Council of Graduate Medical Education.  Further, the Plaintiff requests that this Honorable Court impose and grant Emergency Injunctive Relief prohibiting Dr. Ben-David from providing any information to Third Parties relating to the performance by Dr. Finkelstein as a General Surgery Resident at Mount Sinai, and requiring the Associate Program Director to provide such information in a fair and objective way.

2254C143-F23F-49A3-B597-A871EA999B6F — 20220920 12:17:39 -5:00 — Remote Notary

49.     Plaintiff is entitled to Injunctive Relief because she is likely to prevail on the merits of this case and will suffer irreparable harm if Injunctive Relief is not granted, and no harm to the public will be caused by granting the Emergency Injunction requested.

WHEREFORE, the Plaintiff, Dr. Paige Finkelstein respectfully requests that this Court grant her Emergency Injunctive Relief as hereinabove stated for the reasons provided above, together with all further relief deemed just and proper by this Court.

## COUNT V – TEMPORARY INJUNCTION

50.     This is an action for the imposition of temporary injunctive relief.

51.     The Plaintiff restates, reiterate and restate all of the allegations common to all accounts as more fully as set forth and full.

52.     Plaintiff requests that a Temporary Injunction be entered by this Honorable Court requiring the Defendants Mount Sinai and Dr. Ben-David to provide the Plaintiff with the Summative Evaluation required to be provided to her by the American Council Graduate and Medical Education by the Defendants, as well as the Certificate of Completion of the two (2) years of the General Surgery Residency at Mount Sinai Hospital, a document also required to be provided to the Plaintiff by the Defendants by the American Council Graduate Medical Education. Further, the Plaintiff requests that this Honorable Court impose and enter an Temporary Injunctive Relief prohibiting Dr. Ben-David from providing any information to Third Parties relating to the performance by Dr. Finkelstein as a General Surgery Resident at Mount Sinai, and requiring the Associate Program Director to provide such information in a fair and objective way.

53.     Plaintiff is entitled to injunctive relief because she is likely to prevail on the merits of this case and will suffer irreparable harm if injunctive relief is not granted, and no harm to the public will be caused by the entry of the Injunctive Relief requested.

2254C143-F23F-49A3-B597-A871EA999B6F — 2022/09/20 12:17:39 -5:00 — Remote Notary

WHEREFORE, the Plaintiff, Dr. Paige Finkelstein respectfully requests that this Court grant her Temporary Injunctive Relief as hereinabove stated for the reasons provided upon, together with all further relief deemed just and proper by this Court, and that the Court convert that Temporary Injunction to a Permanent Injunction after the trial of this matter by the trier of fact.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all claims so triable.

Dated this 30th day of September, 2022.

*Attorney for Plaintiff/Paige Finkelstein, M.D.*

NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:      (561) 686-3307
Facsimile:       (561) 686-5442
Richard H. Levenstein, Esq.
Primary E-mail: rlevenstein@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com;
creyes@nasonyeager.com


By: /s/ *Richard H. Levenstein*_____
          Richard H. Levenstein
          Florida Bar No. 235296

2254C143-F23F-49A3-B597-A871EA999B6F — 20220920 12:17:39 -5:00 — Remote Notary



## <u>VERIFICATION</u>

STATE OF <u>**FLORIDA**</u> )

COUNTY OF <u>**PALM BEACH**</u> )

      Before me, the undersigned authority, personally appeared Paige Finkelstein, M.D., who was sworn and states the facts in the foregoing Complaint in the case of Paige Finkelstein, M.D. vs Mount Sinai Medical Center of Florida, Inc. and Dr. Kfir Ben-David are true and correct.

*Paige Erin Finkelstein*
Signed on 2022/09/20 12:57:21 -5:00
_____
PAIGE FINKELSTEIN, M.D.

Paige Erin Finkelstein
_____
Print Name

      Sworn  to  (or  affirmed)  and  subscribed  before ☐ physical  presence  or ☒ online

notarization me this <u>**20**</u> day of _____**SEPTEMBER**_____, 2022, by PAIGE FINKELSTEIN, M.D.

who is ☐ personally known to me or ☒ provided the following identification: <u>**DRIVERS** LICENSE</u>

_____.

      (affix stamp)

Signed on 2022/09/20 12:57:21 -5:00
_____
Notary Public - State of Florida

Michelle A. Narea
NOTARY PUBLIC
State of Florida at Large

My Commission Expires:

Michelle A. Narea
Commission # HH 226234
Notary Public - State of Florida
My Commission Expires Apr 08, 2026

Notary Stamp 2022/09/20 09:57:21 PST

Notarial act performed by audio-visual communication

2254C143-F23F-49A3-B597-A871EA999B6F --- 2022/09/20 12:17:39 -5:00 --- Remote Notary

# EXHIBIT A

2254C143-F23F-49A3-B597-A871EA999B6F — 2022/08/20 12:17:39 -5:00 — Remote Notary

# Mount Sinai

## MEDICAL CENTER

### GRADUATE MEDICAL EDUCATION PROGRAM AGREEMENT

For _____ Paige Finkelstein, M.D. _____

AGREEMENT entered into this __11__ day of __March__, __20__20 by and between _____ Paige Finkelstein, M.D. _____ hereinafter referred to as "APPOINTEE" and MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., hereinafter referred to as the "MEDICAL CENTER."
In consideration of the promises and mutual covenants and agreements contained herein, the parties agree as follows:

## 1. APPOINTMENT

The materials presented to the Medical Center demonstrate that the APPOINTEE has met the eligibility requirements as stated in the MEDICAL CENTER's Policy for the Selection, Evaluation, Promotion, and Dismissal of Residents. Based on the APPOINTEE having met those eligibility requirements, and in accordance with the recommendation of __Kfir Ben-David, M.D.__ Program Director of __Surgery__, the APPOINTEE will be designated as __Third Year Resident in General Surgery (PGY3)__

This appointment will be for a one-year period commencing on __June 24, 2020__ and terminating on __June 23, 2021__ unless terminated as hereinafter stated. APPOINTEE acknowledges that during the term of this AGREEMENT he/she shall maintain a current license or maintain a current registration as an unlicensed physician with the Florida State Board of Medicine.

Final confirmation for appointment shall be subject to a satisfactory health examination conducted by the MEDICAL CENTER's Employee Health Services Department, such physical examination to include a screening test for the presence of non-prescribed substances, alcohol, and nicotine products. Offers of appointment to prospective employees who test positive for nicotine will be rescinded.

## 2. COMPENSATION AND BENEFITS

In consideration of this agreement, the MEDICAL CENTER shall pay the APPOINTEE an annual gross salary of __$60,292.00__ paid bi-weekly in arrears. The MEDICAL CENTER shall deduct both FICA (Social Security, if applicable, and Federal Withholding Taxes. The APPOINTEE is provided three weeks (21 calendar days) annual paid vacation at the postgraduate year one (PGY1) level and four weeks (28 calendar days) annual paid vacation at all other levels. Such vacation shall be taken at a time determined by the APPOINTEE's Program Director during the year this AGREEMENT is in effect. For convenience, the MEDICAL CENTER may make such payments and provide the fringe benefits while APPOINTEE is temporarily assigned on a rotation to another institution.

The MEDICAL CENTER shall provide two weeks (14 calendar days) annual paid Sick Leave to be used only in the event of illness or injury.

Any on-duty accident will be covered by the MEDICAL CENTER's program for Worker's Compensation.

A group medical insurance plan shall be offered by the MEDICAL CENTER to the APPOINTEE. APPOINTEE may elect coverage for spouse and eligible children. The medical insurance plan coverage starts the first recognized day of the GME program. The medical plan offered will be determined by the MEDICAL CENTER and will be administered in accordance with the provisions of that plan. The MEDICAL CENTER reserves the right to change, alter, and/or amend the provisions of the plan including the plan's carrier at its sole discretion. APPOINTEE will have access to appropriate and confidential counseling and medical and psychological support services. Access to these services will be facilitated through either APPOINTEE's Program Director, primary care physician, or the Designated Institutional Official.

Medication stocked at the MEDICAL CENTER's Pharmacy shall be provided to the APPOINTEE, spouse and eligible children in accordance with the MEDICAL CENTER's current policy.

Dental insurance shall be offered by the MEDICAL CENTER to the APPOINTEE. APPOINTEE may elect coverage for spouse and eligible children. The dental insurance plan coverage starts the first recognized day of the GME program.

The MEDICAL CENTER provides group term life insurance to APPOINTEES to become effective on the first day they report for duty. The coverage for APPOINTEE is $50,000.00.

The MEDICAL CENTER provides Long Term Disability protection to APPOINTEES. The plan provides a $1500 monthly benefit after an elimination period of 180 days.

The MEDICAL CENTER will cover the APPOINTEE under its existing professional liability (malpractice) insurance program for services at the MEDICAL CENTER, which will cover the APPOINTEE's training activities under this Agreement. This includes claims made after the termination of this Agreement for actions that occurred during the term of this Agreement. It does not include claims made for actions occurring outside the APPOINTEE's full-time responsibility to the MEDICAL CENTER under this Agreement.

The APPOINTEE agrees to fully cooperate with the MEDICAL CENTER with respect to any litigation arising out of actions which occurred during the term of this Agreement (including claims made or investigations or proceedings on-going after termination of this Agreement). Such cooperation will include assistance with trial preparation, attendance at depositions and trial, and any other reasonable requests by the MEDICAL CENTER at no cost.

[...] subsequent year.

The MEDICAL CENTER will reimburse APPOINTEE on a monthly basis to cover the cost of meals while taking in-house call. Amount of reimbursement is $10.00 per night on call. On-call sleep rooms shall be maintained by the MEDICAL CENTER.

## 3. LEAVE OF ABSENCE (LOA) POLICY

A leave of absence will be granted in the event of a medical or personal emergency. Each case will be evaluated by the Program Director on an individual basis. A written request for leave of absence should be submitted to the Program Director giving the reason, number of days required and address while away. The Office of Medical Education should be notified as soon as the individual arrangements have been made.

The MEDICAL CENTER may grant the APPOINTEE an unpaid medical leave of absence if the APPOINTEE is medically unable to work due to a non-occupational illness, injury or disability, but the APPOINTEE must first exhaust his/her sick time. The maximum duration for a medical leave is 3 months. In the event of a documented personal illness, APPOINTEE must take all remaining sick time before beginning a medical LOA. Paid vacation time may be taken if APPOINTEE so requests (subject to approval of vacation time by the MEDICAL CENTER), but the APPOINTEE does not have to exhaust vacation time before the LOA begins. A request for a medical LOA must be accompanied by the APPOINTEE'S personal physician's statement, which includes an estimated length of the LOA. A medical LOA is available only to APPOINTEES who are medically unable to work. Any APPOINTEE desiring additional time off following a period of disability may request a personal leave, which the MEDICAL CENTER, in its sole discretion, may grant. The MEDICAL CENTER has the right to request a certificate of continued disability by the physician on a regular basis during the medical LOA.

An unpaid personal leave of absence may be granted to give APPOINTEEs time to resolve personal or domestic problems or to address personal situations. Sick time may not be used to avoid a personal LOA or to delay one. Vacation time may be requested by APPOINTEE, but does not have to be exhausted before the LOA begins. A personal LOA may not be for a period longer than 3 months.

In the case of extended leave without pay, all other benefits will remain in effect. Returning to work part-time is an option that an APPOINTEE may discuss with the Program Director, but which shall be granted or denied at the sole discretion of the MEDICAL CENTER.

In the case of prolonged absence, APPOINTEE may have to make up the time in order to fulfill the Board requirements of his/her specialty. Access to information related to eligibility for specialty Board examinations is available on the specialty Board(s) website(s). The Program Director in consultation with the Designated Institutional Official will individually determine the necessary extra amount of time APPOINTEE will have to serve. APPOINTEE will receive full salary and benefits during the required extended time.

## 4. HOUSESTAFF PARENTAL LEAVE POLICY

The institution is supportive of APPOINTEEs during pregnancy, postpartum or adoption periods and the goal of this policy is to foster the health of the parent and child and at the same time protect adequate patient care and the educational requirements of the APPOINTEES. This policy should apply to maternal and paternal leave as well as to adoptions.

Pregnancy will be treated like any other disability, the duration of leave must be determined by the woman and her physician and according to the infant's health needs. In general, maternity leave begins approximately two weeks before delivery and ends six weeks postpartum. Each case will be evaluated by the Program Director on an individual basis, and the Office of Medical Education should be notified as soon as the individual arrangements have been made.

Parental leave should be requested and discussed with the Program Director as soon as the pregnancy is known, which may result in scheduling changes. Parental leave is not to exceed a maximum of 14 consecutive calendar days immediately following the birth or adoption of the infant, and each case will be evaluated by the Program Director on an individual basis. The APPOINTEE should immediately notify and discuss with the Program Director if there are any unexpected needs or changes in plans due to complicated pregnancy, delivery, or infant's health.

The APPOINTEE shall continue to receive salary and benefits during maternal/parental leave in accordance with the MEDICAL CENTER'S policy for disability. Accrual of vacation time and sick time will not continue during leave. In case of extended leave, the MEDICAL CENTER will make a decision as to salary and benefits on an individual basis. Returning to work part-time may be an option to be discussed with the Program Director.

In case of prolonged absence, APPOINTEE may have to make up the time required in order to fulfill the Board requirements of his/her specialty. Access to information related to eligibility for specialty Board examinations is available on the specialty Board(s) website(s). If the APPOINTEE has elective/selective time available following return from the maternal/parental leave, that time must be used to make up all required rotations in order to fulfill the Board requirement of his/her specialty. The Program Director in consultation with the Department Chair / Division Chief and the Designated Institutional Official will individually determine the necessary extra amount of time the APPOINTEE will have to serve. APPOINTEE will receive full salary and benefits during the required extended time.

## 5. PROFESSIONAL LEAVE POLICY

A professional leave with salary will be granted at the discretion of the Program Director for residents to attend an educational activity (seminar, course, scientific meeting) outside of the institution or for residents to submit a scientific presentation at a local, regional, national or international meeting. All requests for professional leave should be addressed in writing to the Program Director at least 5 weeks in advance to be considered. Each case will be evaluated by the Program Director on an individual basis as to the benefits accrued to the resident and/or the MEDICAL CENTER. Any planned absence greater than five days must have the prior approval of the Director of the Department of Medical Education and the DIO.

2

## 6. HARASSMENT-FREE WORK ENVIRONMENT

Mount Sinai Medical Center is committed to Equal Employment Opportunity (EEO). Discrimination on the basis of a person's race, religion, national origin, age, disability, veteran status, marital status, sex, or sexual orientation, or any other basis protected by federal, state or local law, including verbal or physical harassment on the basis of any of the above characteristics, is prohibited and will not be tolerated. Such prohibited harassment consists of unwelcome sexual advances or comments, ethnic jokes; ethnic, racial, religious or age-related slurs, and similar conduct. This policy is in accordance with the Mount Sinai Medical Center Harassment Free Work Environment Policy (#2.00.22) and in all instances will adhere to the terms and procedures of that policy.

The Vice President of Human Resources is our Equal Employment Opportunity Officer. Anyone who feels discriminated against, or who sees an act which may be interpreted to be discriminatory, has an absolute and unqualified duty to report it to the Vice President of Human Resources or his/her designee immediately. The Designated Institutional Official will be notified in each case.

## 7. ACCOMMODATION FOR DISABILITIES

APPOINTEE may request accommodation for disability under the MEDICAL CENTER's policy for disability accommodation.

## 8. RESIDENT PHYSICIAN RESPONSIBILITIES

With respect to participation in direct patient care activities, APPOINTEE shall be responsible to the pertinent Program Director, Division Chief, Department Chair, Department member(s) of the Medical Staff under whose supervision APPOINTEE may from time to time serve, and to the pertinent Senior APPOINTEE.

With respect to overall professional training and academic affairs, APPOINTEE shall be responsible to the Program Director or his/her designee. In all other respects, APPOINTEE shall be responsible to the Chief Executive Officer of the MEDICAL CENTER and his designees for the faithful and satisfactory performance of duties as a member of the MEDICAL CENTER.

APPOINTEE shall perform designated duties during such hours as the pertinent Program Director or his/her designee may direct and in accordance with the MEDICAL CENTER's policy on duty hours. Night and weekend duty shall be scheduled by the Program Director or his/her designee on a rotational, equitable basis.

APPOINTEE may not engage in outside employment (moonlighting) except in limited specific cases in the sole discretion of the MEDICAL CENTER. If APPOINTEE is included within the limited specific cases in which the MEDICAL CENTER might, in its sole discretion, allow resident moonlighting, the APPOINTEE must file a written request with the Program Director to engage in moonlighting activities and must obtain in writing said Program Director's approval. This written approval must be made part of APPOINTEE's file. The Program Director must monitor the effect of moonlighting activities on a resident's fellow's performance in the program to ensure that the extracurricular activity does not interfere with the ability of APPOINTEE to achieve the goals and objectives of APPOINTEE's program of education. Adverse effects of moonlighting on APPOINTEE's performance, as observed by the Program Director or teaching faculty, may lead to withdrawal of permission to moonlight. All moonlighting must be counted toward the 80-hour weekly limit on duty hours. APPOINTEE will not be required to engage in moonlighting. If APPOINTEE does engage in moonlighting, he/she must be properly licensed in the state of Florida. When engaging in outside limited employment, APPOINTEE is an independent contractor, not an agent of the MEDICAL CENTER and thus not covered under the MEDICAL CENTER's professional liability insurance (malpractice), or other insurance.

PGY-1 residents are not permitted to moonlight.

In performing his/her designated duties, at all times the APPOINTEE must conduct himself/herself in compliance with the Bylaws and the Rules and Regulations of the MEDICAL CENTER or the rotating institution, its Medical Staff, all applicable Service, Departmental and Divisional Rules and Regulations, as well as all applicable policies, both personnel and operational, and such specific rules and regulations as from time to time may be established for APPOINTEEs. APPOINTEE agrees not to engage in any activities that interfere with or detract from APPOINTEE's duties to the MEDICAL CENTER or to the orderly and effective operation of the MEDICAL CENTER or of the APPOINTEE's educational program.

APPOINTEE understands that his/her position of house staff physician entails provision of care commensurate with the house staff physician's level of advancement and competence, under the general supervision of appropriately privileged attending staff. Specifically, APPOINTEE is expected to:

(a) Develop a personal program of self-study and professional growth with guidance from the teaching staff.

(b) Participate in safe, effective and compassionate patient care under supervision.

(c) Participate completely in the educational activities of the program and, as required, assume responsibility for teaching and supervising other resident physicians and medical students.

(d) Participate in institutional programs and activities involving the medical staff and adhere to established practices, procedures and policies of the institution.

(e) Participate in institutional committees and councils, especially those that relate to patient care review activities.

(f) Develop an understanding of ethical, socioeconomic and medical/legal issues that affect health care practice and of how to apply cost containment measures in the provision of patient care.

(g) Work harmoniously with other members of the health care team.

(h) Complete in a timely manner all responsibilities with respect to medical records and maintain the confidentiality of patient records and information as

APPOINTEE shall abide by the MEDICAL CENTER's policy on substance abuse.

## 9. CLINICAL EXPERIENCE AND EDUCATION HOURS POLICY

Each program's formal written policies governing resident clinical experience and education hours are designed to foster resident education and facilitate the care of patients. Clinical experience and education hours will be set to be consistent with the Institutional and Common Program Requirements of the specialties and subspecialties that apply to each program. Resident clinical experience and education hours and on-call time periods will not be excessive. The structuring of clinical experience and education hours and on-call schedules will be designed to focus on the needs of the patient, continuity of care, resident well-being, and the educational needs of the residents. These clinical experience and education hour policies will apply to all institutions to which a resident rotates.

Clinical experience and education hours are defined as all clinical and academic activities related to the residency program, such as patient care (both inpatient and outpatient), administrative duties related to patient care, the provision for transfer of patient care, time spent in-house during call activities, short call, time spent in the hospital on at-home call, night float and day float, and scheduled academic activities such as conferences. Residents should not be scheduled for more than six consecutive nights of night float. Clinical experience and education hours do not include reading and preparation time spent away from the duty site.

Clinical experience and education hours will be consistent with applicable regulations.

The program should not compromise its educational goals or the learning objectives of residents by excessive reliance on residents to fulfill institutional service obligations. Clinical experience and education hours are to reflect the fact that responsibilities for continuing patient care are not automatically discharged at specific times. Clinical experience and education hour assignments must recognize that faculty and residents collectively have responsibility for the safety and welfare of patients entrusted to their care.

Each program must establish a method approved by the Graduate Medical Education Committee that periodically monitors resident clinical experience and education hours to ensure compliance. Clinical experience and education hours must be monitored with a frequency sufficient to ensure an appropriate balance between education and service. If the results of the monitoring process reveal noncompliance with the clinical experience and education hour limits, the program must institute corrective measures. On a quarterly basis each program will report to the Graduate Medical Education Committee on the results of the monitoring of resident clinical experience and education hours.

## 10. SUBSTANCE ABUSE POLICY

All house staff candidates offered employment will be screened for the presence of non-prescribed substances/alcohol. Those candidates testing positive for same in the initial and confirmatory testing will not be employed at the medical center in the absence of a reasonable explanation acceptable to the medical center. Where a house staff member voluntarily reveals a current chemical dependency, rehabilitation may be offered.

Employed house staff reasonably suspected of substance abuse are required to submit to drug screening and those employed house staff who test positive for same on the initial and confirmatory tests and/or have in their possession illegal drugs or alcohol will be subject to disciplinary action up to and including immediate dismissal or be offered rehabilitation if the medical center believes it is warranted by the circumstances. Retention of the house staff member will depend on successful participation in a rehabilitation program to continue until completion of the residency program.

## 11. GRIEVANCE POLICY

The MEDICAL CENTER is committed to ensure an educational environment in which residents may raise and resolve issues without fear of intimidation or retaliation. To this end, the MEDICAL CENTER provides an organizational system to hear and address residents' concerns and grievances.

GRIEVANCE PROCEDURES
In order to provide a mechanism for communicating substantive issues and concerns between residents, the administration of graduate medical education programs, and the institution, without fear of retribution, the following procedures should be followed.

1. Program Directors have the primary responsibility for receiving, evaluating and addressing concerns and complaints about any aspect of their program. Residents should raise issues related to their working environment and educational programs through the program's chief resident(s) and Program Director.
2. When residents wish to communicate without disclosure of names and do not wish to speak to their Program Directors, they should make a confidential communication with the Designated Institutional Official who will try to resolve the issue or issues in an appropriately confidential manner.
3. For concerns that resist resolution via these mechanisms, residents should request a hearing through the Designated Institutional Official. If such concerns are not appropriate for resolution in the manner set forth in items 1 or 2 above, the Designated Institutional Official may appoint a grievance subcommittee of the Graduate Medical Education Committee (GMEC) composed of two members of the Medical Staff (one of whom shall be designated by the chairperson of the GMEC to be chairperson of the subcommittee), and one member of administration. This grievance subcommittee will make recommendations to the GMEC for review and final decision by the GMEC.

4

management functions and formal educational activities, the competence of the house staff physician is evaluated on a regular basis. The program maintains a confidential record of the evaluation.

2. If the Program Director or designee is of the opinion that APPOINTEE's discharge of clinical responsibilities, conduct, or progress in the educational program is unsatisfactory, the Program Director or his/her designee shall meet with APPOINTEE and discuss the problems, including the ways in which improvement can be achieved. The fact of such meeting shall be reflected in APPOINTEE's file. If after this consultation the performance or conduct of APPOINTEE continues to be deemed unsatisfactory, the Program Director or his/her designee shall give written notice to APPOINTEE of the deficiencies, shall describe the improvement required, and specify a time when which improvement must be made. Continued or additional deficiencies in performance or conduct after consultation and written notice may result in one or more of the disciplinary actions described in paragraph three (3) below. Prior consultation and/or written notice are not necessary where a tentative determination is made that APPOINTEE's discharge of clinical responsibilities or conduct is so unsatisfactory that to allow him/her to continue his/her assignment would expose patients to unnecessary medical risks and/or the Medical Center to unnecessary liability or other detriment, in which case the Program Director or his/her designee has the right to take one or more of the disciplinary actions described in paragraph three (3) below.

3. APPOINTEE may be temporarily relieved from his/her clinical responsibilities and/or reassigned to other duties, reprimanded, suspended with or without stipend, or terminated by the Program Director or his/her designee for unsatisfactory performance and/or conduct in discharging clinical responsibilities, or unsatisfactory progress in the education program, or conduct unbecoming, or for excessive tardiness or absenteeism. Reassignments for reasons not related to the grounds for disciplinary action noted above shall not be considered disciplinary actions for the purpose of this paragraph and are not subject to the appeals procedure. A disciplinary action shall be in writing, setting forth the areas deemed unsatisfactory and the reasons why disciplinary action is being taken. This written notice of disciplinary action will be issued following the investigation, and should be issued within fifteen working days of the Program Director or his/her designee learning of the incident or the continued or additional deficiencies in performance or conduct after consultation and written notice which is the subject of the disciplinary action, and it must be delivered to the APPOINTEE within five working days after being written in accordance with paragraph five (5) below. A copy of the notice of disciplinary action must also be sent to the Designated Institutional Official and the Chief Executive Officer of the MEDICAL CENTER. Disciplinary action will be final as of the day of receipt of the notice by the APPOINTEE, which will be deemed to be received if evidenced by a signed receipt if personal delivery, or the certified mail return receipt, unless it is appealed pursuant to paragraph four (4) below. The issue of stipend will be determined by the Chief Operating Officer or his/her designee.

4. The APPOINTEE subject to a Disciplinary Action described above may petition the Chief Executive Officer of the MEDICAL CENTER for an appeal hearing before a Disciplinary Hearing Committee within ten working days of receiving written notice of the action. The Chief Executive Officer shall appoint a three member Disciplinary Hearing Committee which shall consist of two members of the medical staff chosen from the Graduate Medical Education Committee (one of whom shall be designated by the Chief Executive Officer to be the Chairperson of the Disciplinary Hearing Committee), and one member of the Administration of the MEDICAL CENTER. None of the members of the Committee shall be from the APPOINTEE's department. The hearing shall be conducted within fifteen working days after APPOINTEE's appeal. The parties to the hearing may call witnesses, present documentary evidence, and participate in the proceedings which will be recorded. After the hearing(s) have been concluded, the Disciplinary Hearing Committee shall deliberate and within fifteen working days shall make a final determination regarding the disposition of the disciplinary action. Any such determination shall be final and binding on all parties involved. In the case of a suspension without stipend or a termination, no compensation, whether stipend or other benefit, will be withheld from APPOINTEE until a final determination has been made by the Disciplinary Hearing Committee. If the Disciplinary Hearing Committee upholds the suspension or termination, any money paid to APPOINTEE from the date of the suspension or termination shall be repaid to the MEDICAL CENTER by the APPOINTEE. A final determination to terminate the appointment of the APPOINTEE shall also terminate any reappointment of the APPOINTEE to any subsequent year of training which may have occurred by the terms of this Agreement or otherwise.

5. All written notices required to be sent to APPOINTEE pursuant to this agreement shall be by certified mail or personal delivery by the Department Chairperson or his/her designee. The fact and date of receipt shall be noted in APPOINTEE's file. APPOINTEE shall also serve written notices sent pursuant to this agreement to the Chairperson or designee in this same manner.

6. No specialty or sub-specialty certifying board or national, state or local medical organization shall be notified of a Disciplinary Action until a final determination has been made by the Disciplinary Hearing Committee.

## 13. REAPPOINTMENT

This AGREEMENT is binding to both parties only for the dates of service of APPOINTEE indicated herein. For purposes of this AGREEMENT, the term "Preliminary Appointee" means APPOINTEES who have been accepted into the MEDICAL CENTER's training program for one-year (and in some circumstances for longer than one year) as a PGY-1 APPOINTEE (and in some circumstances a PGY-2 APPOINTEE) to receive prerequisite training for advanced programs. Such Preliminary Appointees may have: (i) already been accepted into another specialty, but they are completing prerequisites for that specialty, or (ii) not been accepted into any specialty or other training program. Except for, and excluding, Preliminary Appointees (except to the extent explicitly stated):

If APPOINTEE is not to be reappointed or promoted to another year of training after the expiration date of this AGREEMENT, for reasons not involving termination for disciplinary reasons, he/she must be given written notice by certified mail or personal delivery no later than three (3) months prior to the expiration date of this AGREEMENT. However, if the primary reason(s) for the non-renewal or non-promotion occur(s) within the three (3) months prior to the end of the contract, the MEDICAL CENTER will provide APPOINTEE with as much written notice of the intent not to renew or not to promote as the circumstances will reasonably allow, prior to the end of the AGREEMENT.

For APPOINTEEs and Preliminary Appointees, no prior notice is required in the case of non-reappointment or non-promotion due to termination for disciplinary reasons.

5

In case the MEDICAL CENTER intends to reduce the size of or close a residency program, or close the institution, the Graduate Medical Education Committee (GMEC), the Designated Institutional Official and the APPOINTEEs will be notified as soon as possible. The APPOINTEEs will be allowed to finish the remainder of the duration of this AGREEMENT and depending on the circumstances the MEDICAL CENTER will allow the APPOINTEEs to either complete the educational program or will assist the APPOINTEEs in enrolling in an ACGME accredited program in which the APPOINTEE can continue his/her education.

## 15.   RESTRICTIVE COVENANTS

Neither the MEDICAL CENTER nor its programs may require residents to sign a non-competition guarantee or restrictive covenant.

## 16.   INTERPRETATION OF AGREEMENT

Questions regarding the application or interpretation of the terms and conditions of this AGREEMENT shall be submitted in writing to the Designated Institutional Official for review. A final and binding written response will be rendered by the MEDICAL CENTER within thirty (30) days from the date the request was received by the Designated Institutional Official.

## 17.   TERMINATION OF THE AGREEMENT

Upon termination of the AGREEMENT by any of the mechanisms outlined above, the only obligation of the MEDICAL CENTER shall to be to pay the APPOINTEE's stipend earnings which may have accrued hereunder up to the date of such termination or suspension. The final clearance procedure as outlined in the House Staff Manual must be adhered to prior to termination of employment.

## 18.   APPLICABLE LAW

This AGREEMENT shall be construed in accordance with the laws of the State of Florida.

This AGREEMENT contains the entire understanding between the parties and no alteration or modification hereof shall be effected except by a subsequent written instrument executed by both parties hereto.

IN WITNESS WHEREOF, the parties have hereunto set their hands as of the date above written.

**For Mount Sinai Medical Center of Florida, Inc.:**

_____
**APPOINTEE**

4/1/2020
_____
**DATE**

_____
**Program Director**

_____
**Department Chairperson**

_____
**Administrative Officer**

6

Case 1:23-cv-20188-RKA   Document 1-4   Entered on FLSD Docket 01/17/2023   Page 27 of 115

IN THE CIRCUIT COURT
OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:

PAIGE FINKELSTEIN, M.D.,

     Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

     Defendants.

_____/

## VERIFIED MOTION FOR EMERGENCY TEMPORARY INJUNCTION

COMES NOW the Plaintiff, PAIGE FINKELSTEIN, M.D., by and through her undersigned counsel, and files this her Verified Motion for Emergency Temporary Injunction, and states as follows:

1.     This is a Motion for Emergency Temporary Injunctive Relief.

2.     The Plaintiff, Paige Finkelstein, M.D. is a licensed physician in the State of Florida, a resident of the State of Florida, and otherwise *sui juris* in all respects.

3.     The Defendant, Mount Sinai Medical Center ("MSMC"), is a Florida Not For Profit Corporation authorized and doing business in the State of Florida, with its principal place of business in Miami, Florida.

4.     The Defendant Dr. Kfir Ben-David is a physician licensed in the State of Florida, and an employee of the Defendant Mount Sinai, and a resident of Dade County, and otherwise *sui juris* in all respects.

0B01FCC4-BFD3-45AE-BD3F-D0F472E5DE41 — 20220920 12:17:39 -5:00 — Remote Notary

DocVerify ID: 0B01FCC4-BFD3-45AE-BD3F-D0F472E5DE41
www.docverify.com
Page 1 of 9    1D0F472E5DE41

5.      At all times material hereto, the Plaintiff, Dr. Paige Finkelstein was a resident physician in residency training in general surgery at Mount Sinai, and completed two and one-half (2.5) years of that five (5) year general surgery residency.

6.      At all times material hereto, the Defendant, Dr. Kfir Ben-David was the Director of the General Surgery Residency Program at the Defendant Mount Sinai, and Chairman of the Department of Surgery at Mount Sinai as well.  In those positions, Dr. Ben-David, on behalf of the Defendant, Mount Sinai, exercised complete and total authority and control over the General Surgery Residency Program at Mount Sinai, and therefore over the Plaintiff, Dr. Paige Finkelstein while she was a part of that Residency Program.

7.      While Dr. Finkelstein was a Resident in General Surgery at Mount Sinai, both the Defendant Mount Sinai and Dr. Ben-David fostered a culture of conformity in which the personal and professional growth of the Residents were sacrificed in favor of bolstering purported "quality metrics" that allegedly augmented the prestige of Mount Sinai Medical Center and Dr. Ben-David personally.

8.      Dr. Finkelstein was punished for taking personal initiative, alerting Senior Staff to concerns within the Program with regard to issues of patient care and safety, and the voicing of any concern or complaint concerning how she was treated while she was a Member of the General Surgery Residency Program at Mount Sinai.  Dr. Finkelstein was met with retaliation, and ridicule, which ultimately resulted in the forced resignation from the Program by Dr. Finkelstein.

9.      The General Surgery Residency Program at Mount Sinai was a Program in which the voicing of legitimate concerns about patient care, hospital administration or resident training was actively suppressed, and met with by retaliation by means of arbitrary disciplinary actions, and ultimately termination or constructive dismissal by way of a forced resignation.

DocVerify ID: 0B01FCC4-BFD3-45AE-BD3F-D0F472E5DE41
www.docverify.com

10.     The Defendants, Mount Sinai and Dr. Ben-David, continually harassed and cajoled Dr. Finkelstein while she was a Resident, singling her out for unwarranted discipline, degrading criticism, and efforts designed solely to drive her out of the Residency Program.

11.     Dr. Ben-David and Mount Sinai, routinely withheld documents which were required to be provided to Residents documenting their progress in the Residency Program, unless the Residents agreed to sign Non-Disclosure Agreements and/or Releases, such that the true state of affairs and events taking place at the Residency Program at Mount Sinai would never reach the public view, and any and all claims or potential claims would be released and extinguished.

12.     In fact, Dr. Ben-David and Mount Sinai Medical Center refused to provide, and continue to refuse to provide documents required to be provided to Dr. Finkelstein by the American Counsel of Graduate Medical Education (ACGME), including a Summative Evaluation and Certificate of Completion of two (2) years of the General Surgeon Residency to Dr. Finkelstein, unless she agreed to sign a non-disclosure agreement and release, agreeing not to disclose any events or facts concerning the Residency Program, and releasing both Dr. Ben-David and Mount Sinai from liability with respect to any and all claims related to her Residency Program experience, as a pre-condition to receiving the Summative Evaluation and Certificate of Completion documents which Dr. Ben-David and Mount Sinai were required to provide to her by law.

13.     Dr. Finkelstein joined the Surgical Residency Program at Mount Sinai in June of 2018 after graduating from the University of Miami Miller School of Medicine with an MD Degree and Master of Public Health Degree.  Prior to that time she attended the Massachusetts Institute of Technology were she graduated with Degrees in Chemical Engineering and Biology, and she has ten (10) years of experience as a Nationally Licensed Emergency Medical Technician.

0B01FCC4-BFD3-45AE-BD3F-D0F472E5DE41 — 2022/09/20 12:17:39 -5:00 — Remote Notary

14.     Upon joining the Residency Program, Dr. Finkelstein was appointed the Class Representative her Residency Class, and in that capacity she was repeatedly warned by Senior Residents and Attending Physicians to "keep her head down, avoid unneeded attention, and refrain from making waves".

15.     During the time that she was a General Surgery Resident at Mount Sinai, Dr. Finkelstein observed multiple and substantial incidents concerning patient care and safety, some of which were illegal, and she felt compelled to report that conduct to Dr. Ben-David and Mount Sinai.  As a result of making such reports of that conduct, Dr. Finkelstein was formerly disciplined and placed on probation for two (2) months, and accused of being rude and unprofessional.

16.     Months after the initial unwarranted disciplined described above, another incident occurred and was observed by Dr. Finkelstein with regard to a Code Blue in the Hospital's Psychiatric Ward.  This time, a patient died as a result of the absence of necessary tools and skills to administer proper CPR to a patient, and the failure to be able to intervene effectively in a timely manner with regard to this patient led to that patient's death.

17.     Dr. Finkelstein was compelled to report the death of that patient and the circumstances of the patient's death, and once again was placed on probation and accused of being rude to Members of the Mount Sinai Staff, and exhibiting a lack of professionalism.  Shortly thereafter, on October 26, 2020, Dr. Finkelstein received a letter of Non-Renewal of her Residency Program, in effect ending her training as a General Surgeon, and potentially ending her ability to become a General Surgeon anytime thereafter.

18.     Subsequent events occurred which Dr. Finkelstein observed with regard to the lack of the quality of care and safety provided to patients at Mount Sinai, and ultimately, Dr. Finkelstein was subjected to additional harassment and punishment by Dr. Ben-David and Mount Sinai.  On

0B01FCC4-BFD3-45AE-BD3F-D0F472E5DE41 — 2022/09/20 12:17:39 -5:00 — Remote Notary

January 13, 2021, Dr. Finkelstein was forced to submit her Resignation to Mount Sinai Medical Center as a General Surgery Resident.  This Resignation was forced by the actions for Dr. Ben-David and Mount Sinai continually harassing and wrongfully punishing Dr. Finkelstein, and creating an environment such that she was no longer able to continue with her training as a Surgical Resident at Mount Sinai, and she was advised by Dr. Ben-David that if she did not resign, she would be terminated.

19.    Upon her Resignation from the General Surgery Residency Program at Mount Sinai, Dr. Ben-David and the Mount Sinai Hospital Administration attempted to extort Dr. Finkelstein into signing a Non-Disclosure Agreement and Release, in exchange for being provided with a Summative Evaluation of her Residency Performance, and a Certificate that she had completed two (2) years of the Residency Program.  These are documents which the ACGME requires a Residency Program to provide to any Resident upon request, and therefore the Defendants, Dr. Ben-David and Mount Sinai, were legally required to provide those documents to Dr. Finkelstein, and she had the corresponding legal right to receive them.  Therefore, the demand by Dr. Ben-David and Mount Sinai that she sign a Non-Disclosure Agreement and Release in exchange for the receiving such documents was extortion and blackmail, by requiring her to give up something of value in exchange for something she was legally entitled to receive.

20.    Dr. Finkelstein refused to sign the Non-Disclosure Agreement and Release, and to this date, despite repeated demand, the Defendants, Mount Sinai and Dr. Ben-David, have refused to provide the Summative Evaluation and Certificate of Completion of the two (2) years of the General Surgery Residency to Dr. Finkelstein.

21.    Dr. Finkelstein has attempted to continue her Residency at another local hospital, however her application was rejected due to a lack of support of that application from Dr. Ben-

0B01FCC4-BFD3-45AE-BD3F-D0F472E5DE41 — 20220920 12:17:39 -5:00 — Remote Notary

David, and his negative comments made to that Program about Dr. Finkelstein without justification. Dr. Finkelstein continued to interview with other hospital systems across the country, and when she inquired as to whether or not Dr. Ben-David would provide her with a recommendation for that Program, she was told by the Defendants, that if she did not sign the Non-Disclosure Agreement and Release, Dr. Ben-David and Mount Sinai would not provide her with a reference, and therefore without such a reference all of the applications which she submitted in order to continue her residency training were rejected.

22.     In July 2021, Dr. Finkelstein received an offer from Mount Sinai Beth Israel Hospital in New York to serve as a House Surgeon in the operating room of that Hospital. She submitted her credentials and her application, and her application was denied, once again because Dr. Ben-David either would not provide a reference or provided negative comments about her to that Hospital resulting in her being rejected for that position.

23.     The intentional actions of Dr. Ben-David and Mount Sinai as described hereinabove have prevented Dr. Finkelstein from pursuing her training as a general surgeon, have caused her economic damage, damage to her reputation, and prevented her from becoming what her education and training to date have prepared her to be, namely a general surgeon.

24.     These actions of the Defendants' have effectively ended Dr. Finkelstein's career as a physician, due to the career as a physician, due to the damage to her reputation, and her inability to completer her training, and her suspended in career limbo, with little or no prospects for employment.

25.     All of the actions of the Defendants' described hereinabove were taken intentionally, with malice, and the specific intent and objection to irreparably harm Dr. Finkelstein,

DocVerify ID: 0B01FCC4-BFD3-45AE-BD3F-D0F472E5DE41
www.docverify.com

which is exactly the damage she has suffered, presently suffers, and will continue to suffer in the future.

26.    Plaintiff requests that an Emergency Temporary Injunction be entered by this Honorable Court requiring the Defendants, Mount Sinai and Dr. Ben-David to provide the Plaintiff with the Summative Evaluation required to be provided to her by the American Council Graduate and Medical Education by the Defendants, as well as the Certificate of Completion of the two (2) years of the General Surgery Residency at Mount Sinai Hospital, a document also required to be provided to the Plaintiff by the Defendants by the American Council of Graduate Medical Education.  Further, the Plaintiff requests that this Honorable Court impose and grant Emergency Injunctive Relief prohibiting Dr. Ben-David from providing any information to Third Parties relating to the performance by Dr. Finkelstein as a General Surgery Resident at Mount Sinai, and requiring a mutually agreed to physician who has worked closely with the Plaintiff in the program to provide such information in a fair and objective way.

27.    Plaintiff is entitled Temporary Injunctive Relief because she is likely to prevail on the merits of this case and will suffer irreparable harm if Temporary Injunctive Relief is not granted.  No harm to the public will result by the entry of this requested Emergency Temporary Injunctive Relief.

WHEREFORE, the Plaintiff, Dr. Paige Finkelstein respectfully requests that this Court grant her Emergency Temporary Injunctive Relief as hereinabove stated for the reasons provided upon, together with all further relief deemed just and proper by this Court.

Dated this 30th day of September, 2022.

*Attorney for Plaintiff/Paige Finkelstein, M.D.*

NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305

0B01FCC4-BFD3-45AE-BD3F-D0F472E5DE41 — 20220920 12:17:39 -5:00 — Remote Notary

Palm Beach Gardens, Florida 33410
Telephone:      (561) 686-3307
Facsimile:       (561) 686-5442
Richard H. Levenstein, Esq.
Primary E-mail: rlevenstein@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com;
creyes@nasonyeager.com


By: /s/   *Richard H. Levenstein*_____
       Richard H. Levenstein
       Florida Bar No. 235296

0B01FCC4-BFD3-45AE-BD3F-D0F472E5DE41 — 20220920 12:17:39 -5:00 — Remote Notary

## **VERIFICATION**

STATE OF <u>FLORIDA</u>                )

COUNTY OF <u>PALM BEACH</u>            )


Before me, the undersigned authority, personally appeared Paige Finkelstein, M.D., who was sworn and states the facts in the foregoing Motion in the case of Paige Finkelstein, M.D. vs Mount Sinai Medical Center of Florida, Inc. and Dr. Kfir Ben-David are true and correct.


*Paige Erin Finkelstein*
Signed on 2022/09/20 12:57:22 -6:00
_____
PAIGE FINKELSTEIN, M.D.

Paige Erin Finkelstein
_____
Print Name


Sworn to (or affirmed) and subscribed before ☐ physical presence or ☒ online notarization me this **20** day of **SEPTEMBER**, 2022, by PAIGE FINKELSTEIN, M.D. who is ☐ personally known to me or ☒ provided the following identification: **DRIVERS LICENSE** _____.


mne
Signed on 2022/09/20 12:57:22 -8:00
_____
Notary Public - State of Florida

Michelle A. Narea

NOTARY PUBLIC
State of Florida at Large

(affix stamp)

My Commission Expires:

**Michelle A. Narea**
**Commission # HH 226234**
Notary Public - State of Florida
My Commission Expires Apr 08, 2026

Notary Stamp 2022/09/20 09:57:22 PST

Notarial act performed by audio-visual communication

Filing # 158634131 E-Filed 10/05/2022 01:30:15 PM

IN THE CIRCUIT COURT
OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-018881-CA-01

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons, a copy of the Plaintiff's Verified

Complaint for Injunctive Relief and Damages, Plaintiff's Verified Motion for Emergency

Temporary Injunction, Administrative Order No. 21-08, Administrative Order No. 21-09 and

Joint Case Management Report, in this action on Defendant:

           MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC.,
           a Florida Not For Profit Corporation
           VALERIE YAP, Registered Agent
           4300 ALTON ROAD - 5TH FLOOR-WARNER BLDG
           MIAMI BEACH, FL 33140

Each Defendant is required to serve written defenses to the Complaint or Petition on

**RICHARD H. LEVENSTEIN, ESQUIRE**

Plaintiff's attorney, whose address and phone number is:

**NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:  (561) 686-3307

within 20 days after service of this summons on that Defendant, exclusive of the day of service,

holidays and weekends, and to file the original of the defenses with the Clerk of this Court either

before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a

default will be entered against that Defendant for the relief demanded in the Complaint or

Petition.

If you are a person with a disability who needs any accommodation in order to participate

in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.

Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Aliean Simpkins

Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175;

TDD (305) 349-7174, Fax (305) 349-7355; Email ADA@jud11.flcourts.org at least 7 days

before your scheduled court appearance, or immediately upon receiving this notification if the

time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired,

call 711.

DATED:  _____10/11/2022_____

HARVEY RUVIN
CLERK OF THE CIRCUIT COURT

By:_____
Deputy Clerk

(SEAL)

2

IN THE CIRCUIT COURT
OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-018881-CA-01

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons, a copy of the Plaintiff's Verified

Complaint for Injunctive Relief and Damages, Plaintiff's Verified Motion for Emergency

Temporary Injunction, Administrative Order No. 21-08, Administrative Order No. 21-09 and

Joint Case Management Report, in this action on Defendant:

      KFIR BEN-DAVID, M.D.
      4306 ALTON ROAD
      MIAMI BEACH, FL 33140

Each Defendant is required to serve written defenses to the Complaint or Petition on

**RICHARD H. LEVENSTEIN, ESQUIRE**

Plaintiff's attorney, whose address and phone number is:

**NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:  (561) 686-3307

within 20 days after service of this summons on that Defendant, exclusive of the day of service,

holidays and weekends, and to file the original of the defenses with the Clerk of this Court either

before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a

default will be entered against that Defendant for the relief demanded in the Complaint or

Petition.

If you are a person with a disability who needs any accommodation in order to participate

in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.

Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Aliean Simpkins

Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175;

TDD (305) 349-7174, Fax (305) 349-7355; Email ADA@jud11.flcourts.org at least 7 days

before your scheduled court appearance, or immediately upon receiving this notification if the

time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired,

call 711.

DATED:  _____10/11/2022_____

HARVEY RUVIN
CLERK OF THE CIRCUIT COURT

By:  _____**324337**_____
Deputy Clerk

(SEAL)

2

## RETURN OF SERVICE

**State of Florida**                                                      **County of Miami-Dade**

Case Number: 2022-018881-CA-01

Plaintiff,:
**PAIGE FINDELSTEIN, M.D.,**

vs.

Defendant,:
**MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., a Florida Not For Profit Corporation, and KFIR BEN-DAVID, M.D.,**

For:
Richard H. Levenstein, Esquire
Nason, Yeager, Gerson, Harris & Fumero, PA
3001 PGA Blvd.
Suite 305
Palm Beach Gardens, FL 33410

Received by Williams Process Service, Inc. on the 11th day of October, 2022 at 2:09 pm to be served on **Kfir Ben-David M.D., 4306 Alton Road, 2nd Floor, Miami Beach, FL 33140**.

I, Nassim Tauil, do hereby affirm that on the **11th day of October, 2022** at **4:05 pm, I:**

served an **AUTHORIZED** individual by delivering a true copy of the **Summons, Verified Complaint for Injunctive Relief and Damages with Exhibit A, Verified Motion for Emergency Temporary Injunction, Administrative Order No. 21-08, Administrative Order No. 21-09 and Joint Case Management Report** with the date and hour of service endorsed thereon by me, to: **Norma Salvatierra** as **Administrative Assistant** at the address of: **4300 Alton Road, 5th Floor, Miami, FL 33140**, who stated they are authorized to accept service for **Kfir Ben-David**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 60, Sex: F, Race/Skin Color: Hispanic, Height: 5'3", Weight: 110, Hair: Grey, Glasses: Y

Under penalties of perjury, I declare that I have read the foregoing and that the facts stated in it are true. I am over the age of eighteen, have no interest in the above action and am a Certified Process Server in good standing in the circuit in which service was effected in accordance with State Statutes.

/s/ Nassim Tauil

**Nassim Tauil**
ID No. 2105

**Williams Process Service, Inc.**
**721 US Highway 1**
**Suite 121**
**North Palm Beach, FL 33408**
**(561) 881-1442**

Our Job Serial Number: WPS-2022020533

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.2i



IN THE CIRCUIT COURT
OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-018881-CA-01

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons, a copy of the Plaintiff's Verified

Complaint for Injunctive Relief and Damages, Plaintiff's Verified Motion for Emergency

Temporary Injunction, Administrative Order No. 21-08, Administrative Order No. 21-09 and

Joint Case Management Report, in this action on Defendant:

      KFIR BEN-DAVID, M.D.
      4306 ALTON ROAD
      MIAMI BEACH, FL 33140

Each Defendant is required to serve written defenses to the Complaint or Petition on

**RICHARD H. LEVENSTEIN, ESQUIRE**

Plaintiff's attorney, whose address and phone number is:

**NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:  (561) 686-3307

within 20 days after service of this summons on that Defendant, exclusive of the day of service,

holidays and weekends, and to file the original of the defenses with the Clerk of this Court either

before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a

default will be entered against that Defendant for the relief demanded in the Complaint or

Petition.

If you are a person with a disability who needs any accommodation in order to participate

in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.

Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Aliean Simpkins

Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175;

TDD (305) 349-7174, Fax (305) 349-7355; Email ADA@jud11.flcourts.org at least 7 days

before your scheduled court appearance, or immediately upon receiving this notification if the

time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired,

call 711.

DATED:   _____10/11/2022_____

HARVEY RUVIN
CLERK OF THE CIRCUIT COURT

By:_____324337_____
Deputy Clerk

(SEAL)

2

Filing # 159074835 E-Filed 10/12/2022 12:39:06 PM

## RETURN OF SERVICE

**State of Florida**                                                           **County of Miami-Dade**

Case Number: 2022-018881-CA-01

Plaintiff,:
**PAIGE FINDELSTEIN, M.D.,**

vs.

Defendant,:
**MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., a Florida Not For Profit Corporation, and KFIR BEN-DAVID, M.D.,**

For:
Richard H. Levenstein, Esquire
Nason, Yeager, Gerson, Harris & Fumero, PA
3001 PGA Blvd.
Suite 305
Palm Beach Gardens, FL 33410

Received by Williams Process Service, Inc. on the 11th day of October, 2022 at 2:09 pm to be served on **Mount Sinai Medical Center of Florida, Inc. Valerie Yap, Registered Agent, 4300 Alton Road, 5th Floor - Warner Bldg, Miami Beach, FL 33140.**

I, Nassim Tauil, do hereby affirm that on the **11th day of October, 2022** at **3:40 pm, I:**

served a **CORPORATION** by delivering a true copy of the **Summons, Verified Complaint for Injunctive Relief and Damages with Exhibit A, Verified Motion for Emergency Temporary Injunction, Administrative Order No. 21-08, Administrative Order No. 21-09 and Joint Case Management Report** with the date and hour of service endorsed thereon by me, to: **Norma Salvatierra** as **Administrative Assistant** for **Mount Sinai Medical Center of Florida, Inc.**, at the address of: **4300 Alton Road, 5th Floor - Warner Bldg, Miami Beach, FL 33140**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 60, Sex: F, Race/Skin Color: Hispanic, Height: 5'3", Weight: 110, Hair: Grey, Glasses: Y

Under penalties of perjury, I declare that I have read the foregoing and that the facts stated in it are true. I am over the age of eighteen, have no interest in the above action and am a Certified Process Server in good standing in the circuit in which service was effected in accordance with State Statutes.



/s/ Nassim Tauil
_____

**Nassim Tauil**
ID No. 2105

**Williams Process Service, Inc.**
**721 US Highway 1**
**Suite 121**
**North Palm Beach, FL 33408**
**(561) 881-1442**

Our Job Serial Number: WPS-2022020531

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.2i



IN THE CIRCUIT COURT
OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-018881-CA-01

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons, a copy of the Plaintiff's Verified

Complaint for Injunctive Relief and Damages, Plaintiff's Verified Motion for Emergency

Temporary Injunction, Administrative Order No. 21-08, Administrative Order No. 21-09 and

Joint Case Management Report, in this action on Defendant:

            MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC.,
            a Florida Not For Profit Corporation
            VALERIE YAP, Registered Agent
            4300 ALTON ROAD - 5TH FLOOR-WARNER BLDG
            MIAMI BEACH, FL 33140


Each Defendant is required to serve written defenses to the Complaint or Petition on

           **RICHARD H. LEVENSTEIN, ESQUIRE**

Plaintiff's attorney, whose address and phone number is:

**NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:  (561) 686-3307

within 20 days after service of this summons on that Defendant, exclusive of the day of service,

holidays and weekends, and to file the original of the defenses with the Clerk of this Court either

before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a

default will be entered against that Defendant for the relief demanded in the Complaint or

Petition.

       If you are a person with a disability who needs any accommodation in order to participate

in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.

Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Aliean Simpkins

Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175;

TDD (305) 349-7174, Fax (305) 349-7355; Email ADA@jud11.flcourts.org at least 7 days

before your scheduled court appearance, or immediately upon receiving this notification if the

time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired,

call 711.

       DATED: _____10/11/2022_____

                                       HARVEY RUVIN
                                       CLERK OF THE CIRCUIT COURT

                                       By:_____
                                       Deputy Clerk

                                         (SEAL)

Filing # 159183265 E-Filed 10/13/2022 02:22:24 PM

IN THE CIRCUIT COURT
OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-018881-CA-01

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

## PROOF OF SERVICE OF ADMINISTRATIVE ORDER NO. 21-08, ADMINISTRATIVE ORDER NO. 21-09, AND JOINT CASE MANAGEMENT REPORT FOR ESTABLISHMENT OF PROCEDURES FOR ACTIVE CASE MANAGEMENT IN THE CIRCUIT CIVIL DIVISION PURSUANT TO AOSC-20-23A12

      I CERTIFY that on Tuesday, October 11, 2022 at 2:09 p.m. Eastern, a copy of

Administrative Order No. 21-08, Administrative Order No. 21-09 and Joint Case Management Report,

attached as Exhibit "A", was served on:

Kfir Ben-David, M.D.
4306 Alton Road
Miami Beach, FL 33140

      Signed receipt or other evidence that delivery was made to, or refused by, the addressee

or the addressee's agent is attached as Exhibit "B".

      Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged

are true, to the best of my knowledge and belief.

                          Attorneys for Plaintiff
                          NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.
                          3001 PGA Boulevard, Suite 305
                          Palm Beach Gardens, Florida 33410

1

Telephone:     (561) 686-3307
Facsimile:     (561) 686-5442
Richard H. Levenstein, Esq.
Richard H. Levenstein, Esq.
Primary E-mail: rlevenstein@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com;
creyes@nasonyeager.com


By:   /s/ Richard H. Levenstein
        Richard H. Levenstein
        Florida Bar No. 235296


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of Court and served by E-Mail through the Florida Courts E-Filing Portal on this 13th day of October, 2022, to the following:

**Attorneys for Defendants:**
Martin B. Goldberg, Esq.
David R. Ruffner, Esq.
Lash & Goldberg LLP
Lash & Goldberg LLP
100 S.E. 2nd Street
Miami Tower, Suite 1200
Miami, FL  33131
Primary Email: mgoldberg@lashgoldberg.com; druffner@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com; dsuazo@lashgoldberg.com

Respectfully submitted,

NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:     (561) 686-3307
Facsimile:     (561) 686-5442
Richard H. Levenstein, Esq.
Richard H. Levenstein, Esq.
Primary E-mail: rlevenstein@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com;
creyes@nasonyeager.com

2

By:    /s/ Richard H. Levenstein
       Richard H. Levenstein
       Florida Bar No. 235296

# EXHIBIT A

**THE ELEVENTH JUDICIAL CIRCUIT MIAMI-DADE COUNTY, FLORIDA**

**CASE NO. 21-1**
**(Court Administration)**

**ADMINISTRATIVE ORDER NO. 21-08**

**IN RE:  ESTABLISHMENT OF PROCEDURES FOR ACTIVE CASE MANAGEMENT IN THE COUNTY CIVIL DIVISION PURSUANT TO AOSC 20-23A12**

_____

**WHEREAS**, *In re: Comprehensive COVID-19 Emergency Measures for Florida Trial Courts*, Fla. S. Ct. Admin. Order No. AOSC20-23A12 (April 13, 2021) requires chief judges to issue an administrative order requiring the presiding judge for each civil case (as defined in footnote 13 of AOSC20-23A12) to actively manage civil cases as specified therein;

**WHEREAS**, this Administrative Order is issued in accordance with AOSC20-23A12;

**WHEREAS**, this Administrative Order contemplates that the Florida Rules of Civil Procedure will be enforced on a consistent and just basis, that access to hearing time will be consistently and reasonably available, that counsel will utilize access to the Court wisely and appropriately, and that to the fullest extent possible, the Court, counsel, and the parties will work to consistently move cases to timely resolution;

**WHEREAS**, pursuant to AOSC20-23A12, section III(G)(2), all judges within this circuit are directed "to strictly comply with Florida Rule of General Practice and Judicial Administration 2.545(a), (b), and (e), which respectively require judges to conclude litigation as soon as it is reasonably and justly possible to do so, to take charge of all cases at an early stage and to control the progress of the case thereafter until it is determined, and to apply a firm continuance policy allowing continuances only for good cause shown"; and

**WHEREAS**, the purpose of a case management order issued pursuant to this Administrative Order shall be to set a plan for consistent progress towards the timely resolution of each case and to set reasonable expectations for the client, the attorneys, and the Court in every case;

**NOW THEREFORE**, pursuant to the authority vested in me as Chief Judge of the Eleventh Judicial Circuit of Florida under Rule 2.215, Florida Rules of General Practice and Judicial Administration, it is hereby **ORDERED**:

The following requirements apply to cases in the Civil Division of the County Court.

## I. CASES REQUIRING CASE MANAGEMENT ORDERS

A. **NEW CASES**:  case management orders must be entered in every new case filed on or after April 30, 2021, pursuant to Section IV.B. below.

B. **EXISTING CASES**:  case management orders must be entered in every existing case pursuant to Section IV.A. below, subject to the following exceptions:

1. For all **cases with existing case management orders** under which parties are proceeding, no additional case management order need be entered.

2. For all **cases with an existing trial order with a date set for trial in the future**, no additional case management order need be entered.  The current trial order shall serve as the case management order, provided that the parties comply with the deadlines contained therein.  If the case is not reached for trial, continued, or rolled, an order setting a new, firm trial date shall be entered no later than 30 days following the end of the original trial period.

3. For all **cases currently placed on inactive status by court order**, no additional case management order need be entered.  However, within 45 days after the termination of the event or status supporting inactive status, the parties shall comply with the provisions of subsection 4 immediately below.

4. For all **cases subject to current moratoria**, no additional case management order need be entered.  If the case is subject to a statutory stay or a moratorium that prevents prosecution of the case, then a case management order shall be issued, as follows:

   a. for cases filed on or after April 30, 2021: Within 45 days after the stay or the moratorium ends or within 30 days after service of the complaint on the last of all named defendants (whichever date is later); or
   b. for cases filed before April 30, 2021: By December 3, 2021, within 45 days after the stay or the moratorium ends or within 30 days after service of the complaint on the last of all named defendants (whichever date is later).

5. For all **cases subject to section 51.011**, Florida Statutes, post-judgment proceedings, and writs to which Florida Rule of Civil Procedure 1.630 applies, no additional case management order need be entered.

6. For all **cases subject to dismissal for lack of prosecution** pursuant to Florida

2

Rule of Civil Procedure 1.420(e), no additional case management order need be entered.

7. This Administrative Order is intended to implement the requirements of Florida Rule of General Practice and Judicial Administration 2.545[1] and Florida Rules of Civil Procedure 1.010[2] to honor the requirement to progress cases to resolution.[3] Counsel are required to follow the Case Management Order entered in their case. Failure to follow the scheduling deadlines of the order may result in sanctions by the presiding judge in the case. The presiding judge may sanction counsel, sanction clients, dismiss the action, strike pleadings, limit proof by excluding witnesses or exhibits, or take any other appropriate action as provided by Florida Rule of Civil Procedure 1.200(c).

C. For each streamlined and general civil case, the case management order shall at a minimum specify the deadlines for service of complaints, service under extensions, and adding new parties and the deadlines by which: fact and expert discovery shall be completed; all objections to pleadings and pretrial motions shall be resolved; and mediation shall have occurred. The case management order shall also specify the projected date of trial; indicate that the deadlines established in the order will be strictly enforced by the court; indicate that a firm trial date will be ordered by the presiding judge when the case is at issue pursuant to Florida Rule of Civil Procedure 1.440. The maximum deadlines specified pursuant to this subsection, as well as the projected date of trial, shall be consistent with the time standards specified in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B) for the completion of civil cases.

II. **PROCEDURE FOR IMPLEMENTATION OF CASE MANAGEMENT ORDERS: THE CASE MANAGEMENT PROCEDURES BELOW APPLY TO ALL CASES IN WHICH THE FLORIDA RULES OF CIVIL PROCEDURE APPLY**.

**TRACK DETERMINATION:** Each county civil division shall cause each county civil case to which it is assigned to be reviewed to determine whether it is streamlined or general. Categorization is based on the amount of time and effort required to conduct discovery and prepare the case for resolution. Track assignments are not based on the monetary value of the case. The Court has established presumptive track assignments set forth in the schedule attached as Exhibit

A. Throughout the case management process, at all turns, counsel have an obligation to meet and confer to engage in necessary scheduling and otherwise progress the

---

[1] "Judges and lawyers have a professional obligation to conclude litigation as soon as it is reasonably and justly possible to do so. However, parties and counsel shall be afforded a reasonable time to prepare and present their case."

[2] The Rules of Civil Procedure "shall be construed to secure the just, speedy, and inexpensive determination of every action.)

[3] AOSC20-23A12, section III(G)(3)d indicates that: "lawyers must strictly comply with Florida Rule of General Practice and Judicial Administration 2.545(a), which requires lawyers to conclude litigation as soon as it is reasonably and justly possible to do so, and that the pandemic alone is not a basis for a lawyer's failure to prepare a case for trial or otherwise actively manage a case."

3

case in compliance with any case management order entered under this Administrative Order.

The track assignment affects the case management schedule.  Where the facts of the case support a track change, parties may request a track change by motion demonstrating, with specificity, a sufficient factual basis to support a different assignment.

## III.  DEFINITIONS OF CASE TRACK ASSIGNMENTS

Presumptive track assignments for cases are set forth in Exhibit A pursuant to the following criteria:

A. **Streamlined County Civil Cases** – cases in which there are few parties; non-complex issues related to liability and damages; few anticipated pretrial motions; limited need for discovery; few witnesses; minimal documentary evidence; and an anticipated trial length of less than two days.

B. **General County Civil Cases** - all other county civil cases.

## IV.  CASE MANAGEMENT ORDERS:

### A.  For All Existing Cases:

1. For cases filed before April 30, 2021, a case management order shall be entered by the Court by December 3, 2021, with the following deadlines:

| Cases Filed: | Jury and Non-Jury Trial Ready Deadline[4] |
|---|---|
| 2014 or earlier | June 1, 2022 |
| 2015 | July 1, 2022 |
| 2016 | August 1, 2022 |
| 2017 | September 1, 2022 |
| 2018 | October 1, 2022 |
| 2019 | November 1, 2022 |
| 2020 - April 30, 2021 | December 1, 2022 |

---

[4] This is the deadline by which all pretrial tasks, including, but not limited to, pleading closure, discovery, examinations, dispositive and pretrial motions, mediation, and jury instruction submission, must be completed by the parties. After review of a case, the Court may set a deadline sooner than the deadline date specified.

2.  The case management order shall serve as an inventory of the status of the case.  It shall identify with specificity all the completed tasks in the case and those tasks remaining to be finished to bring the case to resolution.  The case management order shall specify the projected date of trial; indicate that the deadlines set forth in the case management order will be strictly enforced by the Court; and that a firm trial date will be ordered by the Court when the case is at issue pursuant to Florida Rule of Civil Procedure 1.440. The case management order shall comply with the Florida Rules of General Practice and Judicial Administration for the prompt resolution of civil cases.

**B. <u>For All New Cases Filed on Or After April 30, 2021:</u>**

1.  The Court will assign a presumptive case management track upon filing pursuant to the schedule attached as Exhibit A.

2.  A case management order shall be entered by the Court within 30 days of service on the last defendant in accordance with Exhibit A.

3.  Plaintiffs must serve their actions promptly. Service issues must be addressed promptly and with diligence.

4.  No extensions pursuant to Florida Rule of Civil Procedure 1.070 shall be granted without specific proof of diligent effort to effect service and a written explanation of what efforts the Plaintiff intends to pursue to effect service successfully, with proposed deadlines.

5.  Parties may seek an amended case management order within 30 days of receipt of the Court's case management order.  Parties should make an effort to comply with the case management schedule before objecting.  If parties seek an amended case management order, the motion must set forth with specificity why the schedule set forth is not appropriate for the case and must propose an alternative schedule consistent with the Florida Rules of Judicial Administration and the Florida Rules of Civil Procedure.  General objections having to do with attorney workload, staffing, and scheduling conflicts should be discussed with clients directly before being brought to the Court; and shall be given limited weight.

This Administrative Order shall become effective immediately upon signing. To the extent that any portion of this Administrative Order may be construed as conflicting with any law, statute, or rule, the law, statute, or rule shall prevail.

**DONE AND ORDERED** in Chambers at Miami-Dade County, Florida, this <u>30</u> day of April 2021.

_____
**BERTILA SOTO, CHIEF JUDGE**
**ELEVENTH JUDICIAL CIRCUIT OF FLORIDA**

**EXHIBIT A**

**CASE MANAGEMENT TRACK ASSIGNMENTS AND DEADLINES FOR CASES FILED ON OR AFTER APRIL 30, 2021**

| Presumptive Assignments | |
|---|---|
| **Pathway** | **Case Type** |
| Streamlined Pathway | Replevin<br>Declaratory Judgment<br>Auto Negligence<br>Equitable Relief<br>Foreclosure<br>Injunctive Relief<br>Petition for Adverse Preliminary Hearing<br>Civil Forfeiture |
| General Pathway | Personal Injury Protection<br>Insurance Claim<br>Contract & Indebtedness<br>Other Negligence<br>Other Civil Complaint |

| Streamlined Pathway Deadlines | |
|---|---|
| service of complaints and extensions | 120 days from date of filing of the complaint unless the Court grants an extension which shall not exceed 210 days from the date of filing of the complaint |
| adding new parties | 150 days from date of filing of the complaint |
| fact and expert discovery | 335 days from date of filing of the complaint |
| all objections to pleadings and pretrial motions | 335 days from date of filing of the complaint |
| deadline for Mediation | 335 days from date of filing of the complaint |
| projected date of trial | 365 days from date of filing of the complaint |

| General Pathway Deadlines | |
|---|---|
| service of complaints and extensions | 120 days from date of filing of the complaint unless the Court grants an extension which shall not exceed 210 days from the date of the filing of the complaint |
| adding new parties | 180 days from date of filing of the complaint |
| fact and expert discovery | 510 days from date of filing of the complaint |
| all objections to pleadings and pretrial motions | 510 days from date of filing of the complaint |
| deadline for Mediation | 510 days from date of filing of the complaint |
| projected date of trial | 540 days from date of filing of the complaint |

THE ELEVENTH JUDICIAL
CIRCUIT MIAMI-DADE COUNTY,
FLORIDA

CASE NO. 21-1
(Court Administration)

ADMINISTRATIVE ORDER
NO. 21-09

IN RE:  ESTABLISHMENT OF
PROCEDURES FOR ACTIVE CASE
MANAGEMENT IN THE CIRCUIT
CIVIL DIVISION PURSUANT TO
AOSC 20-23A12

_____

**WHEREAS,** *In re: Comprehensive COVID-19 Emergency Measures for Florida Trial Courts*, Fla. S. Ct. Admin. Order No. AOSC20-23A12 (April 13, 2021) requires chief judges to issue an administrative order requiring the presiding judge for each civil case (as defined in footnote 13 of AOSC20-23A12) to actively manage civil cases as specified therein;

**WHEREAS,** this Administrative Order is issued in accordance with AOSC20-23A12;

**WHEREAS**, this Administrative Order contemplates that the Florida Rules of Civil Procedure will be enforced on a consistent and just basis, that access to hearing time will be consistently and reasonably available, that counsel will utilize access to the Court wisely and appropriately, and that to the fullest extent possible, the Court, counsel, and the parties will work to consistently move cases to timely resolution;

**WHEREAS**, pursuant to AOSC20-23A12, section III(G)(2), all judges within this circuit are directed "to strictly comply with Florida Rule of General Practice and Judicial Administration 2.545(a), (b), and (e), which respectively require judges to conclude litigation as soon as it is reasonably and justly possible to do so, to take charge of all cases at an early stage and to control the progress of the case thereafter until it is determined, and to apply a firm continuance policy allowing continuances only for good cause shown"; and

**WHEREAS,** the purpose of a case management order issued pursuant to this Administrative Order shall be to set a plan for consistent progress towards the timely resolution of each case and to set reasonable expectations for the client, the attorneys, and the Court in every case;

1

**NOW, THEREFORE,** pursuant to the authority vested in me as Chief Judge of the Eleventh Judicial Circuit of Florida under Rule 2.215, Florida Rules of General Practice and Judicial Administration, it is hereby **ORDERED**:

The following requirements apply to cases in the Civil Division of the Circuit Court.

## I.   CASES REQUIRING CASE MANAGEMENT ORDERS

**A.** NEW CASES:  case management orders must be entered in every new case filed on or after April 30, 2021, within 30 days after the last defendant being served but no later than 120 days after the filing of the action.

**B.** EXISTING CASES:  The Court shall ascertain the status of existing cases by receipt of a Case Management Report summarizing the current status and needs of the case and shall thereafter enter a case management order in each civil case as required.  The reports shall be due and orders entered pursuant to the schedule at section V.A.2. below, subject to the following exceptions:

   **1.** For all **cases with existing case management orders** under which parties are proceeding, no additional case management order need be entered.

   **2.** For all **cases currently set for trial in the future**, no additional case management order need be entered.  The current trial order shall serve as the case management order, provided that the parties comply with the deadlines contained therein.  If the case is not reached for trial, continued, or rolled, a case management order setting forth all deadlines for case activities which have not been completed and a new, firm trial date shall be entered no later than the end of the original trial period.

   **3.** For all **cases currently placed on inactive status by court order**, no additional case management order need be entered.  However, within 45 days after the termination of the event or status supporting inactive status, the parties shall comply with the provisions of subsection 4 immediately below.

   **4.** For all **cases subject to current moratoria**, no additional case management order need be entered.  If the case is subject to a statutory stay or a moratorium that prevents prosecution of the case, then a case management report shall be due, as follows:

   a. for cases filed on or after April 30, 2021: Within 45 days after the stay or the moratorium ends or within 30 days after service of the complaint on the last of all named defendants (whichever date is later); or

b. for cases filed before April 30, 2021: By December 3, 2021, within 45 days after the stay or the moratorium ends or within 30 days after service of the complaint on the last of all named defendants (whichever date is later).

5. For all **cases subject to section 51.011**, Florida Statutes, post-judgment proceedings, and writs to which Florida Rule of Civil Procedure 1.630 applies, no additional case management order need be entered.

6. For all **cases subject to dismissal for lack of prosecution** pursuant to Florida Rule of Civil Procedure 1.420(e), no additional case management order need be entered.
   a. If a party wishes to show good cause as to why a case shall remain pending, the good cause showing shall include a case management report proposing a schedule for the case and deliver same to the Court at the time of the hearing.  If the case remains pending after the lack of prosecution hearing, a case management order must be issued within 30 days after the Court determines that the case should remain pending.

7. If a **case is uncontested**, the Plaintiff may proceed to final judgment in lieu of engaging in the case management report process, provided that the Plaintiff files all necessary motions for default, motions for final default judgment, motions for summary judgment, and any other motions necessary to dispose of the case before the deadline set forth in section V.A.1. of this Administrative Order for the filing of the case management report. If the Plaintiff does not proceed to final judgment, it must comply with the report requirements and explain specifically why it is not progressing an uncontested case.

## II.  CASE MANAGEMENT ORDER REQUIREMENTS

This administrative order is intended to implement the requirements of Florida Rule of General Practice and Judicial Administration 2.545[1]  and Florida Rules of Civil Procedure 1.010[2] to honor the requirement to progress cases to resolution.[3] Counsel are required

---

[1] "Judges and lawyers have a professional obligation to conclude litigation as soon as it is reasonably and justly possible to do so. However, parties and counsel shall be afforded a reasonable time to prepare and present their case."

[2] The Rules of Civil Procedure "shall be construed to secure the just, speedy, and inexpensive determination of every action.)

[3] AOSC20-23A12, section III(G)(3)d indicates that: "lawyers must strictly comply with Florida Rule of General Practice and Judicial Administration 2.545(a), which requires lawyers to conclude litigation as soon

to submit the Case Management Report and to follow the Case Management Order entered in their case. Failure to file the report or follow the scheduling deadlines of the order will result in sanctions by the presiding judge in the case. The presiding judge may sanction counsel, sanction clients, dismiss the action, strike pleadings, limit proof by excluding witnesses or exhibits, or take any other appropriate action as provided by Florida Rule of Civil Procedure 1.200(c).

A.     The case management order shall specify the projected date of trial; indicate that the deadlines established in the order will be strictly enforced by the court; indicate that a firm trial date will be ordered by the presiding judge when the case is at issue pursuant to Florida Rule of Civil Procedure 1.440. The maximum deadlines specified pursuant to this subsection, as well as the projected date of trial, shall be consistent with the time standards specified in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B) for the completion of civil cases.

B.   The Case Management Order shall include the following deadlines:

| Case Management Order Deadlines |
| --- |
| Deadlines for service of complaints, service under extensions, and adding new parties |
| Deadline for Pleadings |
| Deadline for Propounding Requests for Production, Requests to Admit and Interrogatories |
| Deadline for Initial Scheduling and Setting Depositions |
| Deadline for Witness and Exhibit List |
| Deadline for Expert Disclosure |
| Deadline for Inspections/Examinations |
| Deadline for Discovery Completion (Including Depositions) |
| Deadline for Dispositive Motions |
| Deadline for Pretrial Motions |
| Deadline for Jury Instructions |
| Deadline for ADR/Mediation |
| Trial Ready Deadline |

III.   **PROCEDURE FOR IMPLEMENTATION OF CASE MANAGEMENT ORDERS:  THE CASE MANAGEMENT PROCEDURES BELOW APPLY TO ALL CASES IN WHICH THE FLORIDA RULES OF CIVIL PROCEDURE APPLY**.

Track Determination: Each civil division shall cause each civil case to which it is assigned to be reviewed to determine whether it is complex, streamlined, or general.

---

as it is reasonably and justly possible to do so, and that the pandemic alone is not a basis for a lawyer's failure to prepare a case for trial or otherwise actively manage a case."

Categorization is based on the amount of time and effort required to conduct discovery and prepare the case for resolution, and is not an indicator of the value of the case. The Court has established presumptive track assignments set forth in the current track assignment attached as Exhibit A. A current version of the operative schedule shall be available on the 11th Circuit Webpage at: https://www.jud11.flcourts.org/docs/CASE%20MANAGEMENT%20TRACK%20ASSIGNMENTS.docx .  This schedule may be amended as appropriate without the necessity of amending this AO, so parties are urged to check the link for the most up to date information.

The track assignment affects the case management schedule.  Where the facts of the case support a track change, parties may request a track change by motion, supported by a proposed case management plan demonstrating, with specificity, a sufficient factual basis to support a different assignment.   Track assignments are not based on the monetary value of the case, but rather on complexity and discovery needs.

Throughout this process counsel have an obligation to meet and confer to deliver the reports, engage in necessary scheduling, and otherwise progress the case in compliance with any case management order entered under this Administrative Order.

## IV.   **DEFINITIONS OF CASE TRACK ASSIGNMENTS**

Complex, streamlined, and general are defined as:

A. **Complex Civil Cases** - actions that have been or may be designated by court order as complex under Florida Rule of Civil Procedure 1.201 and those action types that have historically required significant discovery and typically involve more than 20 witnesses excluding records custodians.  These are cases involving expert knowledge or expertise about the subject of the controversy.  Upon such designation, the action shall proceed as provided in the rule, with an anticipated resolution/trial date no later than 24 months after designated as complex. Generally, it is expected that the case will be identified as complex no later than 120 days after filing.

B. **Streamlined Civil Cases** –streamlined civil cases are cases in which parties all have some knowledge of the event in controversy at the time it occurs and the discovery required to establish contested facts involves less than 10 witnesses (excluding records custodians), and includes all uncontested cases.

C. **General Civil Cases** - all other civil cases, which are cases in which one party has more knowledge of the subject of the controversy than the other, but which will generally require fewer than 20 depositions, excluding records custodians.

**V.    CASE MANAGEMENT REPORTS**

**A. For All Existing Cases:**

1. For cases filed before April 30, 2021, a Case Management Report in the form attached as Exhibit B to this Administrative Order and located at this link https://www.jud11.flcourts.org/docs/JOINT%20CASE%20MANAGEMENT%20REPORT%20(CIRCUIT%20CIVIL).docx shall be submitted to the Court.  The form of this report may be amended by the circuit from time to time so parties are urged to check the 11th Circuit Webpage.  Amendment will not require an amendment to this Administrative Order.

2. Each case's required report shall be filed in the Court file and delivered to the presiding judge via CourtMAP with a proposed order on the plan, Exhibit C located at https://www.jud11.flcourts.org/docs/CASE%20MANAGEMENT%20ORDER.docx.  The form of this order may be amended by the circuit from time to time so parties are urged to check the 11th Circuit Webpage.  Amendment will not require an amendment to this Administrative Order The report shall be submitted pursuant to the following deadlines:

| Filed Date | Deadline for Plan Submission to Court | Trial Ready Deadline | |
|---|---|---|---|
| 2015 or earlier: | June 15, 2021 | Streamlined | September 15, 2021 |
| | | Standard | October 15, 2021 |
| | | Complex | December 15, 2021 |
| | | | |
| 2016 - 2018: | July 15, 2021 | Streamlined | September 15, 2021 |
| | | Standard | November 15, 2021 |
| | | Complex | January 15, 2022 |
| | | | |
| 2019 - April 30, 2021: | August 15, 2021 | Streamlined | October 31, 2021 |
| | | Standard | April 15, 2022 |
| | | Complex | TBD at Case Management Conference |

3. The case management report shall serve as a comprehensive inventory of the current status of the case.  It shall identify with specificity all the completed tasks in the case and those tasks remaining to be finished to bring the case to resolution, and shall utilize the format propounded by the 11th Judicial Circuit

a. The case management report should be prepared collaboratively among counsel.  If counsel cannot work together to submit a report, then the ability of the Court to address individual scheduling and case specific issues will be limited and the parties will be subject to the availability and unilateral choices of the Court.

   i. Reasonable disagreements should be reflected on the joint case management report as opposed to filing separate reports.  Both parties are responsible for the submission of the report.  Plaintiffs shall have the burden of initiating the report drafting process, and Defendants must promptly respond. Failure of either party to engage in the process  to the other's satisfaction does not excuse any party from filing the report.  Both parties' disagreements should be encapsulated in a single report so that the report may be submitted to the Court by the deadline established within this Order.

   ii. The parties are expected to diligently move their case forward during the preparation of the case management report. The deadlines for submission are designed to afford busy attorneys the opportunity to prepare these reports across their caseload, not to delay day-to-day events in the case pending the entry of the Case Management Order.  Parties shall proceed with all scheduled events and shall continue to progress the case while the report is drafted.

b. The Case Management Report shall be filed in the court file by the deadline and submitted to the presiding judge in CourtMAP.

c. The case management report proposed by counsel must schedule case events so as to complete the case by the deadlines set forth in section V.A.2. above.

d. These orders set the deadlines by which events must be completed.  Where possible and appropriate in the case, counsel can and should take whatever actions they deem appropriate as early as possible in the case and need not wait for deadlines to engage in any action to progress the case.  These deadlines are a floor, not a ceiling; and do not act as a prohibition of earlier completion.

e. The Court will consider the Case Management Report submitted by counsel and accept it, reject it in whole or in part, and give it the weight the Court believes it deserves.  The Court may amend the case plan in the case management order for purposes of scheduling, docket control, and case momentum.  The Court is not bound by the parties' proposed plan, particularly where the plan fails to comply with the Florida Rules of Judicial Administration or the parties' obligation to promptly bring litigation to an end.

7

**B.** **For All New Cases Filed On Or After April 30, 2021:**

1. The Court will assign a case management track upon filing pursuant to the track assignment attached as Exhibit A.

2. A Case Management Order shall be entered by the Court within 30 days of service on the last defendant, but not later than 120 days from the filing of the Complaint.

3. Plaintiffs must serve their actions promptly.  Service issues must be addressed promptly and with diligence.

4. No extensions pursuant to Florida Rule of Civil Procedure 1.070 shall be granted without specific proof of diligent effort to effect service and a written explanation of what efforts the Plaintiff intends to pursue to effect service successfully, with proposed deadlines.

5. Parties may seek an amended case management order within 30 days of receipt of the Court's Case Management Order.  Parties should make an effort to comply with the case management schedule before objecting.  If parties seek an amended case management order, the motion must set forth specific facts as to why the schedule set forth is not appropriate for the case and must propose an alternative schedule consistent with the Florida Rules of Judicial Administration and the Florida Rules of Civil Procedure.  General objections having to do with attorney workload, staffing, and scheduling conflicts should be discussed with clients directly before being brought to the Court; and shall be given limited weight.


This Administrative Order shall become effective immediately upon signing. To the extent that any portion of this Administrative Order may be construed as conflicting with any law, statute, or rule, the law, statute, or rule shall prevail.

**DONE AND ORDERED** in Chambers at Miami-Dade County, Florida, this 30 day of April 2021.

_____

**BERTILA SOTO, CHIEF JUDGE**
**ELEVENTH JUDICIAL CIRCUIT OF FLORIDA**

**EXHIBIT A**

**CASE MANAGEMENT TRACK ASSIGNMENTS**

|  | Case Track Assignment |
|---|---|
| ANTITRUST/TRADE REGULATION | Complex |
| AUTO NEGLIGENCE (GREATER THAN $30,000) | Standard |
| BOND ESTREATURE | Streamlined |
| BUSINESS MALPRACTICE | Complex |
| BUSINESS TORT | Complex |
| BUSINESS TRANSACTIONS | Complex |
| CHALLENGE -STATUTE OR ORDINANCE | Complex |
| CIVIL FORFEITURE | Streamlined |
| COMM PREMISES LIABILITY | General |
| CONDOMINIUM (GREATER THAN $30,000) | Streamlined |
| CONSTRUCTION DEFECT | Complex |
| CONSTRUCTION LIEN | Streamlined |
| CONTRACT & INDEBTEDNESS (GREATER THAN $30,000) | Streamlined |
| DECLATORY JUDGMENT (GREATER THAN $30,000) | Streamlined |
| DISCRIMINATION -EMPLOYMENT OR OTHER | General |
| EMINENT DOMAIN | Complex |
| EQUITABLE RELIEF (GREATER THAN $30,000) | Streamlined |
| INJUNCTIVE RELIEF (GREATER THAN $30,000) | Streamlined |
| INSURANCE CLAIM | Streamlined |
| INTELLECTUAL PROPERTY | Complex |
| LEGACY CIRCUIT MORTGAGE FORECLOSURE | Streamlined |
| LIBEL/SLANDER | General |
| MEDICAL MALPRACTICE | Complex |
| NEGLIGENT SECURITY | General |
| NURSING HOME NEGLIGENCE | Complex |
| OTHER CIVIL COMPLAINT (NON-MONETARY) | Varies |
| OTHER NEGLIGENCE | Streamlined |
| OTHER PROFESSIONAL MALPRACTICE | Complex |
| PERSONAL INJURY PROTECTION | Streamlined |
| PRODUCT LIABILITY | Complex |
| REPLEVIN | Streamlined |
| RESID. PREM LIABILITY | Streamlined |
| RPMF -COM $0-$50,000 | Streamlined |
| RPMF -COM $250,000 OR MORE | Streamlined |
| RPMF -COM $50,001-$249,999 | Streamlined |
| RPMF -HOMESTEAD $0-$50,000 | Streamlined |
| RPMF -HOMESTEAD $250,000 OR MORE | Streamlined |
| RPMF -HOMESTEAD $50,001-$249,999 | Streamlined |
| RPMF -NON-HOMESTEAD $0-$50,000 | Streamlined |
| RPMF -NON-HOMESTEAD $250,000 OR MORE | Streamlined |
| RPMF -NON-HOMESTEAD $50,001-$249,999 | Streamlined |
| RPMF -OTHER ACTION $0-$50,000 | Streamlined |
| RPMF -OTHER ACTION $250,000 OR MORE | Streamlined |
| RPMF -OTHER ACTION $50,001-$249,999 | Streamlined |
| SHAREHOLDER DERIVATIVE | Complex |

**EXHIBIT B**

**JOINT CASE MANAGEMENT REPORT**

**The form of this report may be amended by the circuit from time to time so parties are urged to check the 11th Circuit Webpage at:**
https://www.jud11.flcourts.org/docs/JOINT%20CASE%20MANAGEMENT%20REPORT%20(CIRCUIT%20CIVIL).docx

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NUMBER:
SECTION:

     Plaintiff,

v.

     Defendant.
_____/

**JOINT CASE MANAGEMENT REPORT**

    This Joint Case Management Report ("Joint Report") shall form the basis for a case-specific case management order that will be used to set deadlines for the remainder of this case. All information provided should be as detailed, specific as possible, and fully accurate based on all of the current information available to both parties. The Court recognizes that, as additional information is exchanged, the information provided herein may change.  The purpose of this report is to generally assess the case based on current knowledge in order to plan for, and anticipate, specific case needs.
    Your answers to these questions should clearly indicate the areas of disagreement, if any, between the parties. Parties should add additional rows to charts where needed.

1. Brief Factual Description of Case:
   a. Indicate type of case. (Ex. Negligence, Breach of Contract, Medical Malpractice, etc.): Click here to enter text.
   b. What is the track assignment based on case type (Ex. Streamlined, General, Complex)

   c.  What is the relevant accrual date? (Ex. date of accident, loss, breach, etc.): Click here to enter text.

   d.  What type(s) of damages sought? Click here to enter text.

   e.  Provide a summary of pertinent facts: Click here to enter text.

2.  Legal Issue(s) of Case: Click here to enter text.

3.  List Current Pleadings Filed and Status: Click here to enter text.

4.  Is the case at issue?

5.  Do you anticipate the filing of:

   a.  Counter-claim(s) Click here to enter text.

   b.  Cross-claim(s) Click here to enter text.

   c.  Third party claim(s) Click here to enter text.

6.  List Current Motion(s) Pending: Click here to enter text.

| Name of Motion & Filer & Portal Index Number | Filed Date | Response & Portal Index Number | Reply & Portal Index Number | Meet and Confer | Outstanding Issues | Hearing Time Required | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

7.  List and describe key documents and/or evidence known as this time (Ex. Medical records, contract documents, pictures, video surveillance, etc.): Click here to enter text.

8.  Please indicate the type of written discovery propounded in this case:

9.  Click here to enter text.

| Type | Date Propounded | Response | Objection/ Privilege | Privilege Log | Meet and Confer | Outstanding Issues | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| Interrogatories | | | | | | | |
| Expert Interrogatories | | | | | | | |
| Update Interrogatories | | | | | | | |
| Requests for Production | | | | | | | |
| Requests for Admission | | | | | | | |
| Non-Party Subpoenas | | | | | | | |

10. Are there issues pertaining to Electronically Stored Information? Click here to enter text.

11. List all known fact witnesses by name.  If unknown, describe the witness (Ex. FHP Trooper): Click here to enter text.

12. As it pertains to depositions in this case,

| Fact Witness | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

14. List all expert witnesses by name.  If unknown, indicate the anticipated areas of expert witness testimony: Click here to enter text.

| Expert Witness | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Area of Testimony | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

15. Inspections requested/required? Click here to enter text.

| Inspections | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Purpose of Inspection | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

16. Comprehensive Medical Examinations requested/required? Click here to enter text.
If so, how many?

| Examinations | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Subject of Examination | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

17. Mediation:

| Mediator | Date of Mediation | Completed (Y/N) | Scheduled (Y/N) | Result | Outstanding Issues | Date of Mediation Order | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

18. Trial readiness:

| | |
|---|---|
| **Estimated Length of Trial (specify the number of trial days):** | |
| **Identification of Jury or Non-Jury Trial:** | |
| **Requested Trial Date:** | |

List dates previously set for trial:

| Previous Trial Dates | Date of Previous Trial Order | Status: Continued, Rolled Over, Reset | Name of Parking Seeking Continuance | Reason for Continuance | Outstanding Issues | Issues Resolved (Y/N) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

19. Are you aware of any issues that may possibly delay the normal progression of this case? (Ex. Maternity leave, bankruptcy, upcoming surgeries, extended special set trial in another case, etc.) Click here to enter text.
If so, please specify Click here to enter text.

20. Fill out the following contact information:

| Party | Attorney Name | Telephone # | Email Address |
|---|---|---|---|
| Choose an item. | Click here to enter text. | Click here to enter text. | Click here to enter text. |
| Choose an item. | Click here to enter text. | Click here to enter text. | Click here to enter text. |
| Choose an item. | Click here to enter text. | Click here to enter text. | Click here to enter text. |

Indicate which of the following applies:

☐This Joint Report was prepared pursuant to the information provided by the parties, following a full meet and confer.

☐This Joint Report was prepared pursuant to the information provided by the parties but there was no meet and confer.

☐This Joint Report was prepared solely based on the undersigned's information of the case.  No information was provided by any other party and no meet and confer occurred due to: (state reason)

☐None of the above – explain: Click here to enter text.

**Copies of this report have been furnished to:**

Click here to enter text.

Click here to enter text.

**Signature Bloc**

**EXHIBIT C**

**CASE MANAGEMENT ORDER**

**The form of this order may be amended by the circuit from time to time so parties are urged to check the 11th Circuit Webpage at:**
https://www.jud11.flcourts.org/docs/CASE%20MANAGEMENT%20ORDER.docx

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT**
**IN AND FOR MIAMI-DADE COUNTY, FLORIDA**
**CIRCUIT CIVIL DIVISION**

CIRCUIT CIVIL DIVISION [Div. #]

CASE NO: [Case Number]-CA-01

[Plaintiff]

**Plaintiff(s),**

**vs.**

[Defendant]

**Defendant(s)**
_____/

**CASE MANAGEMENT ORDER**

      **THE COURT** having reviewed the attached Case Management Plan, incorporated herein, and finding it to be satisfactory, it is therefore

      **ORDERED AND ADJUDGED** that the Case Management Plan is hereby approved and adopted, and the parties shall abide by the terms set forth herein**.**

**DONE AND ORDERED** in _____,       County, Florida on
_____**.**

_____
, Circuit Judge

CC: All Counsel of Record

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NUMBER:
SECTION:


      Plaintiff,

v.


      Defendant.

_____/

## JOINT CASE MANAGEMENT REPORT

    This Joint Case Management Report ("Joint Report") shall form the basis for a case-specific case management order that will be used to set deadlines for the remainder of this case. All information provided should be as detailed, specific as possible, and fully accurate based on all of the current information available to both parties. The Court recognizes that, as additional information is exchanged, the information provided herein may change.  The purpose of this report is to generally assess the case based on current knowledge in order to plan for, and anticipate, specific case needs.

    Your answers to these questions should clearly indicate the areas of disagreement, if any, between the parties. Parties should add additional rows to charts where needed.

1. Brief Factual Description of Case:
   a. Indicate type of case. (Ex. Negligence, Breach of Contract, Medical Malpractice, etc.): Click here to enter text.
   b. What is the track assignment based on case type (Ex. Streamlined, General, Complex) Click here to enter text.
   c. What is the relevant accrual date? (Ex. date of accident, loss, breach, etc.): Click here to enter text.
   d. What type(s) of damages sought? Click here to enter text.
   e. Provide a summary of pertinent facts: Click here to enter text.
2. Legal Issue(s) of Case: Click here to enter text.
3. List Current Pleadings Filed and Status: Click here to enter text.
4. Is the case at issue? Click here to enter text.
5. Do you anticipate the filing of:
   a. Counter-claim(s) Click here to enter text.
   b. Cross-claim(s) Click here to enter text.

   c.  Third party claim(s) Click here to enter text.

6.  List Current Motion(s) Pending: Click here to enter text.

| Name of Motion & Filer & Portal Index Number | Filed Date | Response & Portal Index Number | Reply & Portal Index Number | Meet and Confer | Outstanding Issues | Hearing Time Required | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

7.  List and describe key documents and/or evidence known as this time (Ex. Medical records, contract documents, pictures, video surveillance, etc.): Click here to enter text.

8.  Please indicate the type of written discovery propounded in this case:

| Type | Date Propounded | Response | Objection/ Privilege | Privilege Log | Meet and Confer | Outstanding Issues | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| Interrogatories | | | | | | | |
| Expert Interrogatories | | | | | | | |
| Update Interrogatories | | | | | | | |
| Requests for Production | | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Requests for Admission | | | | | | |
| Non-Party Subpoenas | | | | | | |

Deadline for Propounding Requests for Production, Requests to

9. Are there issues pertaining to Electronically Stored Information? Click here to enter text.

10. List all known fact witnesses by name.  If unknown, describe the witness (Ex. FHP Trooper): Click here to enter text.

11. As it pertains to depositions in this case,

| Fact Witness | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

12. List all expert witnesses by name.  If unknown, indicate the anticipated areas of expert witness testimony: Click here to enter text.

| Expert Witness | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Area of Testimony | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

13. Inspections requested/required? Click here to enter text.

| Inspections | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Purpose of Inspection | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

14. Comprehensive Medical Examinations requested/required? Click here to enter text.
   If so, how many?

| Examinations | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Subject of Examination | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

15. Mediation:

| Mediator | Date of Mediation | Completed (Y/N) | Scheduled (Y/N) | Result | Outstanding Issues | Date of Mediation Order | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

16. Trial readiness:

| | |
|---|---|
| **Estimated Length of Trial (specify the number of trial days):** | |
| **Identification of Jury or Non-Jury Trial:** | |
| **Requested Trial Date:** | |

List dates previously set for trial:

| Previous Trial Dates | Date of Previous Trial Order | Status: Continued, Rolled Over, Reset | Name of Parking Seeking Continuance | Reason for Continuance | Outstanding Issues | Issues Resolved (Y/N) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

17. Are you aware of any issues that may possibly delay the normal progression of this case? (Ex. Maternity leave, bankruptcy, upcoming surgeries, extended special set trial in another case, etc.) Click here to enter text.

   If so, please specify Click here to enter text.

18. Fill out the following contact information:

| __Party__ | __Attorney Name__ | __Telephone #__ | __Email Address__ |
|---|---|---|---|
| Choose an item. | Click here to enter text. | Click here to enter text. | Click here to enter text. |
| Choose an item. | Click here to enter text. | Click here to enter text. | Click here to enter text. |
| Choose an item. | Click here to enter text. | Click here to enter text. | Click here to enter text. |

Indicate which of the following applies:

☐This Joint Report was prepared pursuant to the information provided by the parties, following a full meet and confer.

☐This Joint Report was prepared pursuant to the information provided by the parties but there was no meet and confer.

☐This Joint Report was prepared solely based on the undersigned's information of the case.  No information was provided by any other party and no meet and confer.

☐None of the above – explain: Click here to enter text.

**Copies of this report have been furnished to:**

Click here to enter text.

Click here to enter text.

**Signature Bloc**

# EXHIBIT B

## RETURN OF SERVICE

**State of Florida**                                                                                                    **County of Miami-Dade**

Case Number: 2022-018881-CA-01

Plaintiff,:
**PAIGE FINDELSTEIN, M.D.,**

vs.

Defendant,:
**MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., a Florida Not For Profit Corporation, and KFIR BEN-DAVID, M.D.,**

For:
Richard H. Levenstein, Esquire
Nason, Yeager, Gerson, Harris & Fumero, PA
3001 PGA Blvd.
Suite 305
Palm Beach Gardens, FL 33410

Received by Williams Process Service, Inc. on the 11th day of October, 2022 at 2:09 pm to be served on **Kfir Ben-David M.D., 4306 Alton Road, 2nd Floor, Miami Beach, FL 33140**.

I, Nassim Tauil, do hereby affirm that on the **11th day of October, 2022** at **4:05 pm, I:**

served an **AUTHORIZED** individual by delivering a true copy of the **Summons, Verified Complaint for Injunctive Relief and Damages with Exhibit A, Verified Motion for Emergency Temporary Injunction, Administrative Order No. 21-08, Administrative Order No. 21-09 and Joint Case Management Report** with the date and hour of service endorsed thereon by me, to: **Norma Salvatierra** as **Administrative Assistant** at the address of: **4300 Alton Road, 5th Floor, Miami, FL 33140**, who stated they are authorized to accept service for **Kfir Ben-David**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 60, Sex: F, Race/Skin Color: Hispanic, Height: 5'3", Weight: 110, Hair: Grey, Glasses: Y

Under penalties of perjury, I declare that I have read the foregoing and that the facts stated in it are true. I am over the age of eighteen, have no interest in the above action and am a Certified Process Server in good standing in the circuit in which service was effected in accordance with State Statutes.

/s/ Nassim Tauil

**Nassim Tauil**
ID No. 2105

**Williams Process Service, Inc.**
**721 US Highway 1**
**Suite 121**
**North Palm Beach, FL 33408**
**(561) 881-1442**

Our Job Serial Number: WPS-2022020533

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.2i



IN THE CIRCUIT COURT
OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-018881-CA-01

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons, a copy of the Plaintiff's Verified

Complaint for Injunctive Relief and Damages, Plaintiff's Verified Motion for Emergency

Temporary Injunction, Administrative Order No. 21-08, Administrative Order No. 21-09 and

Joint Case Management Report, in this action on Defendant:

      KFIR BEN-DAVID, M.D.
      4306 ALTON ROAD
      MIAMI BEACH, FL 33140

Each Defendant is required to serve written defenses to the Complaint or Petition on

**RICHARD H. LEVENSTEIN, ESQUIRE**

Plaintiff's attorney, whose address and phone number is:

**NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:  (561) 686-3307

within 20 days after service of this summons on that Defendant, exclusive of the day of service,

holidays and weekends, and to file the original of the defenses with the Clerk of this Court either

before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a

default will be entered against that Defendant for the relief demanded in the Complaint or

Petition.

If you are a person with a disability who needs any accommodation in order to participate

in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.

Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Aliean Simpkins

Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175;

TDD (305) 349-7174, Fax (305) 349-7355; Email ADA@jud11.flcourts.org at least 7 days

before your scheduled court appearance, or immediately upon receiving this notification if the

time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired,

call 711.

DATED:  _____10/11/2022_____

HARVEY RUVIN
CLERK OF THE CIRCUIT COURT

By:_____324337_____
Deputy Clerk

(SEAL)

2

IN THE CIRCUIT COURT
OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-018881-CA-01

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

## PROOF OF SERVICE OF ADMINISTRATIVE ORDER NO. 21-08, ADMINISTRATIVE ORDER NO. 21-09, AND JOINT CASE MANAGEMENT REPORT FOR ESTABLISHMENT OF PROCEDURES FOR ACTIVE CASE MANAGEMENT IN THE CIRCUIT CIVIL DIVISION PURSUANT TO AOSC-20-23A12

I CERTIFY that on Tuesday, October 11, 2022 at 2:09 p.m. Eastern, a copy of

Administrative Order No. 21-08, Administrative Order No. 21-09 and Joint Case Management Report,

attached as Exhibit "A", was served on:

MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC.,
a Florida Not For Profit Corporation
VALERIE YAP, Registered Agent
4300 ALTON ROAD - 5TH FLOOR-WARNER BLDG
MIAMI BEACH, FL 33140

      Signed receipt or other evidence that delivery was made to, or refused by, the addressee

or the addressee's agent is attached as Exhibit "B".

      Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged

are true, to the best of my knowledge and belief.

                        Attorneys for Plaintiff
                        NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.
                        3001 PGA Boulevard, Suite 305

Palm Beach Gardens, Florida 33410
Telephone:      (561) 686-3307
Facsimile:      (561) 686-5442
Richard H. Levenstein, Esq.
Richard H. Levenstein, Esq.
Primary E-mail: rlevenstein@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com;
creyes@nasonyeager.com

By:   /s/ Richard H. Levenstein
        Richard H. Levenstein
        Florida Bar No. 235296

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of Court and served by E-Mail through the Florida Courts E-Filing Portal on this 13th day of October, 2022, to the following:

**Attorneys for Defendants:**
Martin B. Goldberg, Esq.
David R. Ruffner, Esq.
Lash & Goldberg LLP
Lash & Goldberg LLP
100 S.E. 2nd Street
Miami Tower, Suite 1200
Miami, FL  33131
Primary Email: mgoldberg@lashgoldberg.com; druffner@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com; dsuazo@lashgoldberg.com

Respectfully submitted,

NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:      (561) 686-3307
Facsimile:      (561) 686-5442
Richard H. Levenstein, Esq.
Richard H. Levenstein, Esq.
Primary E-mail: rlevenstein@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com;
creyes@nasonyeager.com

2

By:    /s/ Richard H. Levenstein
        Richard H. Levenstein
        Florida Bar No. 235296

# EXHIBIT A

THE ELEVENTH JUDICIAL
CIRCUIT MIAMI-DADE COUNTY,
FLORIDA

CASE NO. 21-1
(Court Administration)

ADMINISTRATIVE ORDER
NO. 21-08

IN RE:  ESTABLISHMENT OF
PROCEDURES FOR ACTIVE CASE
MANAGEMENT IN THE COUNTY
CIVIL DIVISION PURSUANT TO
AOSC 20-23A12

_____

**WHEREAS**, *In re: Comprehensive COVID-19 Emergency Measures for Florida Trial Courts*, Fla. S. Ct. Admin. Order No. AOSC20-23A12 (April 13, 2021) requires chief judges to issue an administrative order requiring the presiding judge for each civil case (as defined in footnote 13 of AOSC20-23A12) to actively manage civil cases as specified therein;

**WHEREAS**, this Administrative Order is issued in accordance with AOSC20-23A12;

**WHEREAS**, this Administrative Order contemplates that the Florida Rules of Civil Procedure will be enforced on a consistent and just basis, that access to hearing time will be consistently and reasonably available, that counsel will utilize access to the Court wisely and appropriately, and that to the fullest extent possible, the Court, counsel, and the parties will work to consistently move cases to timely resolution;

**WHEREAS**, pursuant to AOSC20-23A12, section III(G)(2), all judges within this circuit are directed "to strictly comply with Florida Rule of General Practice and Judicial Administration 2.545(a), (b), and (e), which respectively require judges to conclude litigation as soon as it is reasonably and justly possible to do so, to take charge of all cases at an early stage and to control the progress of the case thereafter until it is determined, and to apply a firm continuance policy allowing continuances only for good cause shown"; and

**WHEREAS**, the purpose of a case management order issued pursuant to this Administrative Order shall be to set a plan for consistent progress towards the timely resolution of each case and to set reasonable expectations for the client, the attorneys, and the Court in every case;

**NOW THEREFORE**, pursuant to the authority vested in me as Chief Judge of the Eleventh Judicial Circuit of Florida under Rule 2.215, Florida Rules of General Practice and Judicial Administration, it is hereby **ORDERED**:

The following requirements apply to cases in the Civil Division of the County Court.

## I. CASES REQUIRING CASE MANAGEMENT ORDERS

A. **NEW CASES**:  case management orders must be entered in every new case filed on or after April 30, 2021, pursuant to Section IV.B. below.

B. **EXISTING CASES**:  case management orders must be entered in every existing case pursuant to Section IV.A. below, subject to the following exceptions:

1. For all **cases with existing case management orders** under which parties are proceeding, no additional case management order need be entered.

2. For all **cases with an existing trial order with a date set for trial in the future**, no additional case management order need be entered.  The current trial order shall serve as the case management order, provided that the parties comply with the deadlines contained therein.  If the case is not reached for trial, continued, or rolled, an order setting a new, firm trial date shall be entered no later than 30 days following the end of the original trial period.

3. For all **cases currently placed on inactive status by court order**, no additional case management order need be entered.  However, within 45 days after the termination of the event or status supporting inactive status, the parties shall comply with the provisions of subsection 4 immediately below.

4. For all **cases subject to current moratoria**, no additional case management order need be entered.  If the case is subject to a statutory stay or a moratorium that prevents prosecution of the case, then a case management order shall be issued, as follows:

    a. for cases filed on or after April 30, 2021: Within 45 days after the stay or the moratorium ends or within 30 days after service of the complaint on the last of all named defendants (whichever date is later); or
    b. for cases filed before April 30, 2021: By December 3, 2021, within 45 days after the stay or the moratorium ends or within 30 days after service of the complaint on the last of all named defendants (whichever date is later).

5. For all **cases subject to section 51.011**, Florida Statutes, post-judgment proceedings, and writs to which Florida Rule of Civil Procedure 1.630 applies, no additional case management order need be entered.

6. For all **cases subject to dismissal for lack of prosecution** pursuant to Florida

2

Rule of Civil Procedure 1.420(e), no additional case management order need be entered.

7. This Administrative Order is intended to implement the requirements of Florida Rule of General Practice and Judicial Administration 2.545[1] and Florida Rules of Civil Procedure 1.010[2] to honor the requirement to progress cases to resolution.[3] Counsel are required to follow the Case Management Order entered in their case. Failure to follow the scheduling deadlines of the order may result in sanctions by the presiding judge in the case. The presiding judge may sanction counsel, sanction clients, dismiss the action, strike pleadings, limit proof by excluding witnesses or exhibits, or take any other appropriate action as provided by Florida Rule of Civil Procedure 1.200(c).

C. For each streamlined and general civil case, the case management order shall at a minimum specify the deadlines for service of complaints, service under extensions, and adding new parties and the deadlines by which: fact and expert discovery shall be completed; all objections to pleadings and pretrial motions shall be resolved; and mediation shall have occurred. The case management order shall also specify the projected date of trial; indicate that the deadlines established in the order will be strictly enforced by the court; indicate that a firm trial date will be ordered by the presiding judge when the case is at issue pursuant to Florida Rule of Civil Procedure 1.440. The maximum deadlines specified pursuant to this subsection, as well as the projected date of trial, shall be consistent with the time standards specified in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B) for the completion of civil cases.

II. **PROCEDURE FOR IMPLEMENTATION OF CASE MANAGEMENT ORDERS: THE CASE MANAGEMENT PROCEDURES BELOW APPLY TO ALL CASES IN WHICH THE FLORIDA RULES OF CIVIL PROCEDURE APPLY**.

**TRACK DETERMINATION:** Each county civil division shall cause each county civil case to which it is assigned to be reviewed to determine whether it is streamlined or general. Categorization is based on the amount of time and effort required to conduct discovery and prepare the case for resolution. Track assignments are not based on the monetary value of the case. The Court has established presumptive track assignments set forth in the schedule attached as Exhibit

A. Throughout the case management process, at all turns, counsel have an obligation to meet and confer to engage in necessary scheduling and otherwise progress the

---

[1] "Judges and lawyers have a professional obligation to conclude litigation as soon as it is reasonably and justly possible to do so. However, parties and counsel shall be afforded a reasonable time to prepare and present their case."

[2] The Rules of Civil Procedure "shall be construed to secure the just, speedy, and inexpensive determination of every action.)

[3] AOSC20-23A12, section III(G)(3)d indicates that: "lawyers must strictly comply with Florida Rule of General Practice and Judicial Administration 2.545(a), which requires lawyers to conclude litigation as soon as it is reasonably and justly possible to do so, and that the pandemic alone is not a basis for a lawyer's failure to prepare a case for trial or otherwise actively manage a case."

case in compliance with any case management order entered under this Administrative Order.

The track assignment affects the case management schedule.  Where the facts of the case support a track change, parties may request a track change by motion demonstrating, with specificity, a sufficient factual basis to support a different assignment.

## III.  DEFINITIONS OF CASE TRACK ASSIGNMENTS

Presumptive track assignments for cases are set forth in Exhibit A pursuant to the following criteria:

A. **Streamlined County Civil Cases** – cases in which there are few parties; non-complex issues related to liability and damages; few anticipated pretrial motions; limited need for discovery; few witnesses; minimal documentary evidence; and an anticipated trial length of less than two days.

B. **General County Civil Cases** - all other county civil cases.

## IV.  CASE MANAGEMENT ORDERS:

A.  <u>For All Existing Cases:</u>

1.  For cases filed before April 30, 2021, a case management order shall be entered by the Court by December 3, 2021, with the following deadlines:

| Cases Filed: | Jury and Non-Jury Trial Ready Deadline[4] |
|---|---|
| 2014 or earlier | June 1, 2022 |
| 2015 | July 1, 2022 |
| 2016 | August 1, 2022 |
| 2017 | September 1, 2022 |
| 2018 | October 1, 2022 |
| 2019 | November 1, 2022 |
| 2020 - April 30, 2021 | December 1, 2022 |

---

[4] This is the deadline by which all pretrial tasks, including, but not limited to, pleading closure, discovery, examinations, dispositive and pretrial motions, mediation, and jury instruction submission, must be completed by the parties. After review of a case, the Court may set a deadline sooner than the deadline date specified.

2.  The case management order shall serve as an inventory of the status of the case. It shall identify with specificity all the completed tasks in the case and those tasks remaining to be finished to bring the case to resolution. The case management order shall specify the projected date of trial; indicate that the deadlines set forth in the case management order will be strictly enforced by the Court; and that a firm trial date will be ordered by the Court when the case is at issue pursuant to Florida Rule of Civil Procedure 1.440. The case management order shall comply with the Florida Rules of General Practice and Judicial Administration for the prompt resolution of civil cases.

**B.  For All New Cases Filed on Or After April 30, 2021:**

1.  The Court will assign a presumptive case management track upon filing pursuant to the schedule attached as Exhibit A.

2.  A case management order shall be entered by the Court within 30 days of service on the last defendant in accordance with Exhibit A.

3.  Plaintiffs must serve their actions promptly. Service issues must be addressed promptly and with diligence.

4.  No extensions pursuant to Florida Rule of Civil Procedure 1.070 shall be granted without specific proof of diligent effort to effect service and a written explanation of what efforts the Plaintiff intends to pursue to effect service successfully, with proposed deadlines.

5.  Parties may seek an amended case management order within 30 days of receipt of the Court's case management order. Parties should make an effort to comply with the case management schedule before objecting. If parties seek an amended case management order, the motion must set forth with specificity why the schedule set forth is not appropriate for the case and must propose an alternative schedule consistent with the Florida Rules of Judicial Administration and the Florida Rules of Civil Procedure. General objections having to do with attorney workload, staffing, and scheduling conflicts should be discussed with clients directly before being brought to the Court; and shall be given limited weight.

This Administrative Order shall become effective immediately upon signing. To the extent that any portion of this Administrative Order may be construed as conflicting with any law, statute, or rule, the law, statute, or rule shall prevail.

**DONE AND ORDERED** in Chambers at Miami-Dade County, Florida, this 30 day of April 2021.

**BERTILA SOTO, CHIEF JUDGE**
**ELEVENTH JUDICIAL CIRCUIT OF FLORIDA**

5

**EXHIBIT A**

**CASE MANAGEMENT TRACK ASSIGNMENTS AND DEADLINES FOR CASES FILED ON OR AFTER APRIL 30, 2021**

| Presumptive Assignments | |
| --- | --- |
| **Pathway** | **Case Type** |
| Streamlined Pathway | Replevin<br>Declaratory Judgment<br>Auto Negligence<br>Equitable Relief<br>Foreclosure<br>Injunctive Relief<br>Petition for Adverse Preliminary Hearing<br>Civil Forfeiture |
| General Pathway | Personal Injury Protection<br>Insurance Claim<br>Contract & Indebtedness<br>Other Negligence<br>Other Civil Complaint |

| Streamlined Pathway Deadlines | |
| --- | --- |
| service of complaints and extensions | 120 days from date of filing of the complaint unless the Court grants an extension which shall not exceed 210 days from the date of filing of the complaint |
| adding new parties | 150 days from date of filing of the complaint |
| fact and expert discovery | 335 days from date of filing of the complaint |
| all objections to pleadings and pretrial motions | 335 days from date of filing of the complaint |
| deadline for Mediation | 335 days from date of filing of the complaint |
| projected date of trial | 365 days from date of filing of the complaint |

| General Pathway Deadlines | |
| --- | --- |
| service of complaints and extensions | 120 days from date of filing of the complaint unless the Court grants an extension which shall not exceed 210 days from the date of the filing of the complaint |
| adding new parties | 180 days from date of filing of the complaint |
| fact and expert discovery | 510 days from date of filing of the complaint |
| all objections to pleadings and pretrial motions | 510 days from date of filing of the complaint |
| deadline for Mediation | 510 days from date of filing of the complaint |
| projected date of trial | 540 days from date of filing of the complaint |

THE ELEVENTH JUDICIAL
CIRCUIT MIAMI-DADE COUNTY,
FLORIDA

CASE NO. 21-1
(Court Administration)

ADMINISTRATIVE ORDER
NO. 21-09

IN RE:  ESTABLISHMENT OF
PROCEDURES FOR ACTIVE CASE
MANAGEMENT IN THE CIRCUIT
CIVIL DIVISION PURSUANT TO
AOSC 20-23A12

_____

**WHEREAS,** *In re: Comprehensive COVID-19 Emergency Measures for Florida Trial Courts*, Fla. S. Ct. Admin. Order No. AOSC20-23A12 (April 13, 2021) requires chief judges to issue an administrative order requiring the presiding judge for each civil case (as defined in footnote 13 of AOSC20-23A12) to actively manage civil cases as specified therein;

**WHEREAS,** this Administrative Order is issued in accordance with AOSC20-23A12;

**WHEREAS**, this Administrative Order contemplates that the Florida Rules of Civil Procedure will be enforced on a consistent and just basis, that access to hearing time will be consistently and reasonably available, that counsel will utilize access to the Court wisely and appropriately, and that to the fullest extent possible, the Court, counsel, and the parties will work to consistently move cases to timely resolution;

**WHEREAS**, pursuant to AOSC20-23A12, section III(G)(2), all judges within this circuit are directed "to strictly comply with Florida Rule of General Practice and Judicial Administration 2.545(a), (b), and (e), which respectively require judges to conclude litigation as soon as it is reasonably and justly possible to do so, to take charge of all cases at an early stage and to control the progress of the case thereafter until it is determined, and to apply a firm continuance policy allowing continuances only for good cause shown"; and

**WHEREAS,** the purpose of a case management order issued pursuant to this Administrative Order shall be to set a plan for consistent progress towards the timely resolution of each case and to set reasonable expectations for the client, the attorneys, and the Court in every case;

1

**NOW, THEREFORE,** pursuant to the authority vested in me as Chief Judge of the Eleventh Judicial Circuit of Florida under Rule 2.215, Florida Rules of General Practice and Judicial Administration, it is hereby **ORDERED**:

The following requirements apply to cases in the Civil Division of the Circuit Court.

## I.   CASES REQUIRING CASE MANAGEMENT ORDERS

**A.** NEW CASES:  case management orders must be entered in every new case filed on or after April 30, 2021, within 30 days after the last defendant being served but no later than 120 days after the filing of the action.

**B.** EXISTING CASES:  The Court shall ascertain the status of existing cases by receipt of a Case Management Report summarizing the current status and needs of the case and shall thereafter enter a case management order in each civil case as required.  The reports shall be due and orders entered pursuant to the schedule at section V.A.2. below, subject to the following exceptions:

**1.** For all **cases with existing case management orders** under which parties are proceeding, no additional case management order need be entered.

**2.** For all **cases currently set for trial in the future**, no additional case management order need be entered.  The current trial order shall serve as the case management order, provided that the parties comply with the deadlines contained therein.  If the case is not reached for trial, continued, or rolled, a case management order setting forth all deadlines for case activities which have not been completed and a new, firm trial date shall be entered no later than the end of the original trial period.

**3.** For all **cases currently placed on inactive status by court order**, no additional case management order need be entered.  However, within 45 days after the termination of the event or status supporting inactive status, the parties shall comply with the provisions of subsection 4 immediately below.

**4.** For all **cases subject to current moratoria**, no additional case management order need be entered.  If the case is subject to a statutory stay or a moratorium that prevents prosecution of the case, then a case management report shall be due, as follows:

a. for cases filed on or after April 30, 2021: Within 45 days after the stay or the moratorium ends or within 30 days after service of the complaint on the last of all named defendants (whichever date is later); or

   b.  for cases filed before April 30, 2021: By December 3, 2021,
       within 45 days after the stay or the moratorium ends or within
       30 days after service of the complaint on the last of all named
       defendants (whichever date is later).

5.  For all **cases subject to section 51.011**, Florida Statutes, post-judgment
    proceedings, and writs to which Florida Rule of Civil Procedure 1.630
    applies, no additional case management order need be entered.

6.  For all **cases subject to dismissal for lack of prosecution** pursuant to
    Florida Rule of Civil Procedure 1.420(e), no additional case management
    order need be entered.
       a.  If a party wishes to show good cause as to why a case shall
           remain pending, the good cause showing shall include a case
           management report proposing a schedule for the case and
           deliver same to the Court at the time of the hearing.  If the
           case remains pending after the lack of prosecution hearing, a
           case management order must be issued within 30 days after
           the Court determines that the case should remain pending.

7.  If a **case is uncontested**, the Plaintiff may proceed to final judgment in
    lieu of engaging in the case management report process, provided that the
    Plaintiff files all necessary motions for default, motions for final default
    judgment, motions for summary judgment, and any other motions
    necessary to dispose of the case before the deadline set forth in section
    V.A.1. of this Administrative Order for the filing of the case management
    report. If the Plaintiff does not proceed to final judgment, it must comply
    with the report requirements and explain specifically why it is not
    progressing an uncontested case.

## II.   CASE MANAGEMENT ORDER REQUIREMENTS

This administrative order is intended to implement the requirements of Florida Rule of
General Practice and Judicial Administration 2.545[1] and Florida Rules of Civil Procedure
1.010[2] to honor the requirement to progress cases to resolution.[3] Counsel are required

---

[1] "Judges and lawyers have a professional obligation to conclude litigation as soon as it is reasonably and
justly possible to do so. However, parties and counsel shall be afforded a reasonable time to prepare and
present their case."

[2] The Rules of Civil Procedure "shall be construed to secure the just, speedy, and inexpensive determination
of every action.)

[3] AOSC20-23A12, section III(G)(3)d indicates that: "lawyers must strictly comply with Florida Rule of
General Practice and Judicial Administration 2.545(a), which requires lawyers to conclude litigation as soon

3

to submit the Case Management Report and to follow the Case Management Order entered in their case. Failure to file the report or follow the scheduling deadlines of the order will result in sanctions by the presiding judge in the case. The presiding judge may sanction counsel, sanction clients, dismiss the action, strike pleadings, limit proof by excluding witnesses or exhibits, or take any other appropriate action as provided by Florida Rule of Civil Procedure 1.200(c).

A.      The case management order shall specify the projected date of trial; indicate that the deadlines established in the order will be strictly enforced by the court; indicate that a firm trial date will be ordered by the presiding judge when the case is at issue pursuant to Florida Rule of Civil Procedure 1.440. The maximum deadlines specified pursuant to this subsection, as well as the projected date of trial, shall be consistent with the time standards specified in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B) for the completion of civil cases.

B.   The Case Management Order shall include the following deadlines:

| Case Management Order Deadlines |
|---|
| Deadlines for service of complaints, service under extensions, and adding new parties |
| Deadline for Pleadings |
| Deadline for Propounding Requests for Production, Requests to Admit and Interrogatories |
| Deadline for Initial Scheduling and Setting Depositions |
| Deadline for Witness and Exhibit List |
| Deadline for Expert Disclosure |
| Deadline for Inspections/Examinations |
| Deadline for Discovery Completion (Including Depositions) |
| Deadline for Dispositive Motions |
| Deadline for Pretrial Motions |
| Deadline for Jury Instructions |
| Deadline for ADR/Mediation |
| Trial Ready Deadline |

III.   **PROCEDURE FOR IMPLEMENTATION OF CASE MANAGEMENT ORDERS:  THE CASE MANAGEMENT PROCEDURES BELOW APPLY TO ALL CASES IN WHICH THE FLORIDA RULES OF CIVIL PROCEDURE APPLY**.

Track Determination: Each civil division shall cause each civil case to which it is assigned to be reviewed to determine whether it is complex, streamlined, or general.

as it is reasonably and justly possible to do so, and that the pandemic alone is not a basis for a lawyer's failure to prepare a case for trial or otherwise actively manage a case."

Categorization is based on the amount of time and effort required to conduct discovery and prepare the case for resolution, and is not an indicator of the value of the case. The Court has established presumptive track assignments set forth in the current track assignment attached as Exhibit A. A current version of the operative schedule shall be available on the 11th Circuit Webpage at: https://www.jud11.flcourts.org/docs/CASE%20MANAGEMENT%20TRACK%20ASSIGNMENTS.docx . This schedule may be amended as appropriate without the necessity of amending this AO, so parties are urged to check the link for the most up to date information.

The track assignment affects the case management schedule.  Where the facts of the case support a track change, parties may request a track change by motion, supported by a proposed case management plan demonstrating, with specificity, a sufficient factual basis to support a different assignment.   Track assignments are not based on the monetary value of the case, but rather on complexity and discovery needs.

Throughout this process counsel have an obligation to meet and confer to deliver the reports, engage in necessary scheduling, and otherwise progress the case in compliance with any case management order entered under this Administrative Order.

## IV.    **DEFINITIONS OF CASE TRACK ASSIGNMENTS**

Complex, streamlined, and general are defined as:

A. **Complex Civil Cases** - actions that have been or may be designated by court order as complex under Florida Rule of Civil Procedure 1.201 and those action types that have historically required significant discovery and typically involve more than 20 witnesses excluding records custodians.  These are cases involving expert knowledge or expertise about the subject of the controversy.  Upon such designation, the action shall proceed as provided in the rule, with an anticipated resolution/trial date no later than 24 months after designated as complex. Generally, it is expected that the case will be identified as complex no later than 120 days after filing.

B. **Streamlined Civil Cases** –streamlined civil cases are cases in which parties all have some knowledge of the event in controversy at the time it occurs and the discovery required to establish contested facts involves less than 10 witnesses (excluding records custodians), and includes all uncontested cases.

C. **General Civil Cases** - all other civil cases, which are cases in which one party has more knowledge of the subject of the controversy than the other, but which will generally require fewer than 20 depositions, excluding records custodians.

## V.   CASE MANAGEMENT REPORTS

### A. For All Existing Cases:

1. For cases filed before April 30, 2021, a Case Management Report in the form attached as Exhibit B to this Administrative Order and located at this link https://www.jud11.flcourts.org/docs/JOINT%20CASE%20MANAGEMENT%20REPORT%20(CIRCUIT%20CIVIL).docx shall be submitted to the Court.  The form of this report may be amended by the circuit from time to time so parties are urged to check the 11th Circuit Webpage.  Amendment will not require an amendment to this Administrative Order.

2. Each case's required report shall be filed in the Court file and delivered to the presiding judge via CourtMAP with a proposed order on the plan, Exhibit C located at https://www.jud11.flcourts.org/docs/CASE%20MANAGEMENT%20ORDER.docx.  The form of this order may be amended by the circuit from time to time so parties are urged to check the 11th Circuit Webpage.   Amendment will not require an amendment to this Administrative Order The report shall be submitted pursuant to the following deadlines:

| Filed Date | Deadline for Plan Submission to Court | Trial Ready Deadline | |
|---|---|---|---|
| 2015 or earlier: | June 15, 2021 | Streamlined | September 15, 2021 |
| | | Standard | October 15, 2021 |
| | | Complex | December 15, 2021 |
| | | | |
| 2016 - 2018: | July 15, 2021 | Streamlined | September 15, 2021 |
| | | Standard | November 15, 2021 |
| | | Complex | January 15, 2022 |
| | | | |
| 2019 - April 30, 2021: | August 15, 2021 | Streamlined | October 31, 2021 |
| | | Standard | April 15, 2022 |
| | | Complex | TBD at Case Management Conference |

3. The case management report shall serve as a comprehensive inventory of the current status of the case.  It shall identify with specificity all the completed tasks in the case and those tasks remaining to be finished to bring the case to resolution, and shall utilize the format propounded by the 11th Judicial Circuit

a. The case management report should be prepared collaboratively among counsel. If counsel cannot work together to submit a report, then the ability of the Court to address individual scheduling and case specific issues will be limited and the parties will be subject to the availability and unilateral choices of the Court.

   i. Reasonable disagreements should be reflected on the joint case management report as opposed to filing separate reports. Both parties are responsible for the submission of the report. Plaintiffs shall have the burden of initiating the report drafting process, and Defendants must promptly respond. Failure of either party to engage in the process to the other's satisfaction does not excuse any party from filing the report. Both parties' disagreements should be encapsulated in a single report so that the report may be submitted to the Court by the deadline established within this Order.

   ii. The parties are expected to diligently move their case forward during the preparation of the case management report. The deadlines for submission are designed to afford busy attorneys the opportunity to prepare these reports across their caseload, not to delay day-to-day events in the case pending the entry of the Case Management Order. Parties shall proceed with all scheduled events and shall continue to progress the case while the report is drafted.

b. The Case Management Report shall be filed in the court file by the deadline and submitted to the presiding judge in CourtMAP.

c. The case management report proposed by counsel must schedule case events so as to complete the case by the deadlines set forth in section V.A.2. above.

d. These orders set the deadlines by which events must be completed. Where possible and appropriate in the case, counsel can and should take whatever actions they deem appropriate as early as possible in the case and need not wait for deadlines to engage in any action to progress the case. These deadlines are a floor, not a ceiling; and do not act as a prohibition of earlier completion.

e. The Court will consider the Case Management Report submitted by counsel and accept it, reject it in whole or in part, and give it the weight the Court believes it deserves. The Court may amend the case plan in the case management order for purposes of scheduling, docket control, and case momentum. The Court is not bound by the parties' proposed plan, particularly where the plan fails to comply with the Florida Rules of Judicial Administration or the parties' obligation to promptly bring litigation to an end.

**B.** **For All New Cases Filed On Or After April 30, 2021:**

1. The Court will assign a case management track upon filing pursuant to the track assignment attached as Exhibit A.

2. A Case Management Order shall be entered by the Court within 30 days of service on the last defendant, but not later than 120 days from the filing of the Complaint.

3. Plaintiffs must serve their actions promptly.  Service issues must be addressed promptly and with diligence.

4. No extensions pursuant to Florida Rule of Civil Procedure 1.070 shall be granted without specific proof of diligent effort to effect service and a written explanation of what efforts the Plaintiff intends to pursue to effect service successfully, with proposed deadlines.

5. Parties may seek an amended case management order within 30 days of receipt of the Court's Case Management Order.  Parties should make an effort to comply with the case management schedule before objecting.  If parties seek an amended case management order, the motion must set forth specific facts as to why the schedule set forth is not appropriate for the case and must propose an alternative schedule consistent with the Florida Rules of Judicial Administration and the Florida Rules of Civil Procedure.  General objections having to do with attorney workload, staffing, and scheduling conflicts should be discussed with clients directly before being brought to the Court; and shall be given limited weight.


This Administrative Order shall become effective immediately upon signing. To the extent that any portion of this Administrative Order may be construed as conflicting with any law, statute, or rule, the law, statute, or rule shall prevail.

**DONE AND ORDERED** in Chambers at Miami-Dade County, Florida, this 30 day of April 2021.

**BERTILA SOTO, CHIEF JUDGE**
**ELEVENTH JUDICIAL CIRCUIT OF FLORIDA**

**EXHIBIT A**

**CASE MANAGEMENT TRACK ASSIGNMENTS**

|  | Case Track Assignment |
|---|---|
| ANTITRUST/TRADE REGULATION | Complex |
| AUTO NEGLIGENCE (GREATER THAN $30,000) | Standard |
| BOND ESTREATURE | Streamlined |
| BUSINESS MALPRACTICE | Complex |
| BUSINESS TORT | Complex |
| BUSINESS TRANSACTIONS | Complex |
| CHALLENGE -STATUTE OR ORDINANCE | Complex |
| CIVIL FORFEITURE | Streamlined |
| COMM PREMISES LIABILITY | General |
| CONDOMINIUM (GREATER THAN $30,000) | Streamlined |
| CONSTRUCTION DEFECT | Complex |
| CONSTRUCTION LIEN | Streamlined |
| CONTRACT & INDEBTEDNESS (GREATER THAN $30,000) | Streamlined |
| DECLATORY JUDGMENT (GREATER THAN $30,000) | Streamlined |
| DISCRIMINATION -EMPLOYMENT OR OTHER | General |
| EMINENT DOMAIN | Complex |
| EQUITABLE RELIEF (GREATER THAN $30,000) | Streamlined |
| INJUNCTIVE RELIEF (GREATER THAN $30,000) | Streamlined |
| INSURANCE CLAIM | Streamlined |
| INTELLECTUAL PROPERTY | Complex |
| LEGACY CIRCUIT MORTGAGE FORECLOSURE | Streamlined |
| LIBEL/SLANDER | General |
| MEDICAL MALPRACTICE | Complex |
| NEGLIGENT SECURITY | General |
| NURSING HOME NEGLIGENCE | Complex |
| OTHER CIVIL COMPLAINT (NON-MONETARY) | Varies |
| OTHER NEGLIGENCE | Streamlined |
| OTHER PROFESSIONAL MALPRACTICE | Complex |
| PERSONAL INJURY PROTECTION | Streamlined |
| PRODUCT LIABILITY | Complex |
| REPLEVIN | Streamlined |
| RESID. PREM LIABILITY | Streamlined |
| RPMF -COM $0-$50,000 | Streamlined |
| RPMF -COM $250,000 OR MORE | Streamlined |
| RPMF -COM $50,001-$249,999 | Streamlined |
| RPMF -HOMESTEAD $0-$50,000 | Streamlined |
| RPMF -HOMESTEAD $250,000 OR MORE | Streamlined |
| RPMF -HOMESTEAD $50,001-$249,999 | Streamlined |
| RPMF -NON-HOMESTEAD $0-$50,000 | Streamlined |
| RPMF -NON-HOMESTEAD $250,000 OR MORE | Streamlined |
| RPMF -NON-HOMESTEAD $50,001-$249,999 | Streamlined |
| RPMF -OTHER ACTION $0-$50,000 | Streamlined |
| RPMF -OTHER ACTION $250,000 OR MORE | Streamlined |
| RPMF -OTHER ACTION $50,001-$249,999 | Streamlined |
| SHAREHOLDER DERIVATIVE | Complex |

**EXHIBIT B**

**JOINT CASE MANAGEMENT REPORT**

**The form of this report may be amended by the circuit from time to time so parties are urged to check the 11th Circuit Webpage at:**
https://www.jud11.flcourts.org/docs/JOINT%20CASE%20MANAGEMENT%20REPORT%20(CIRCUIT%20CIVIL).docx

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NUMBER:
SECTION:


      Plaintiff,

v.

      Defendant.
_____/

**<u>JOINT CASE MANAGEMENT REPORT</u>**

    This Joint Case Management Report ("Joint Report") shall form the basis for a case-specific case management order that will be used to set deadlines for the remainder of this case. All information provided should be as detailed, specific as possible, and fully accurate based on all of the current information available to both parties. The Court recognizes that, as additional information is exchanged, the information provided herein may change.  The purpose of this report is to generally assess the case based on current knowledge in order to plan for, and anticipate, specific case needs.
    Your answers to these questions should clearly indicate the areas of disagreement, if any, between the parties. Parties should add additional rows to charts where needed.

1. Brief Factual Description of Case:
    a. Indicate type of case. (Ex. Negligence, Breach of Contract, Medical Malpractice, etc.): Click here to enter text.
    b. What is the track assignment based on case type (Ex. Streamlined, General, Complex)

   c.  What is the relevant accrual date? (Ex. date of accident, loss, breach, etc.): Click here to enter text.

   d.  What type(s) of damages sought? Click here to enter text.

   e.  Provide a summary of pertinent facts: Click here to enter text.

2.  Legal Issue(s) of Case: Click here to enter text.

3.  List Current Pleadings Filed and Status: Click here to enter text.

4.  Is the case at issue?

5.  Do you anticipate the filing of:

   a.  Counter-claim(s) Click here to enter text.

   b.  Cross-claim(s) Click here to enter text.

   c.  Third party claim(s) Click here to enter text.

6.  List Current Motion(s) Pending: Click here to enter text.

| Name of Motion & Filer & Portal Index Number | Filed Date | Response & Portal Index Number | Reply & Portal Index Number | Meet and Confer | Outstanding Issues | Hearing Time Required | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

7.  List and describe key documents and/or evidence known as this time (Ex. Medical records, contract documents, pictures, video surveillance, etc.): Click here to enter text.

8.  Please indicate the type of written discovery propounded in this case:

9.  Click here to enter text.

| Type | Date Propounded | Response | Objection/ Privilege | Privilege Log | Meet and Confer | Outstanding Issues | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| Interrogatories | | | | | | | |
| Expert Interrogatories | | | | | | | |
| Update Interrogatories | | | | | | | |
| Requests for Production | | | | | | | |
| Requests for Admission | | | | | | | |
| Non-Party Subpoenas | | | | | | | |

10. Are there issues pertaining to Electronically Stored Information? Click here to enter text.

11. List all known fact witnesses by name.  If unknown, describe the witness (Ex. FHP Trooper):  Click here to enter text.

12. As it pertains to depositions in this case,

| Fact Witness | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

14. List all expert witnesses by name.  If unknown, indicate the anticipated areas of expert witness testimony: Click here to enter text.

| Expert Witness | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Area of Testimony | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

15. Inspections requested/required? Click here to enter text.

| Inspections | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Purpose of Inspection | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

16. Comprehensive Medical Examinations requested/required? Click here to enter text.
If so, how many?

| Examinations | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Subject of Examination | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

17. Mediation:

| Mediator | Date of Mediation | Completed (Y/N) | Scheduled (Y/N) | Result | Outstanding Issues | Date of Mediation Order | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

18. Trial readiness:

| | |
|---|---|
| **Estimated Length of Trial (specify the number of trial days):** | |
| **Identification of Jury or Non-Jury Trial:** | |
| **Requested Trial Date:** | |

List dates previously set for trial:

| Previous Trial Dates | Date of Previous Trial Order | Status: Continued, Rolled Over, Reset | Name of Parking Seeking Continuance | Reason for Continuance | Outstanding Issues | Issues Resolved (Y/N) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

19. Are you aware of any issues that may possibly delay the normal progression of this case? (Ex. Maternity leave, bankruptcy, upcoming surgeries, extended special set trial in another case, etc.) Click here to enter text.
If so, please specify Click here to enter text.

13

20. Fill out the following contact information:

| Party | Attorney Name | Telephone # | Email Address |
|---|---|---|---|
| Choose an item. | Click here to enter text. | Click here to enter text. | Click here to enter text. |
| Choose an item. | Click here to enter text. | Click here to enter text. | Click here to enter text. |
| Choose an item. | Click here to enter text. | Click here to enter text. | Click here to enter text. |

Indicate which of the following applies:

☐This Joint Report was prepared pursuant to the information provided by the parties, following a full meet and confer.

☐This Joint Report was prepared pursuant to the information provided by the parties but there was no meet and confer.

☐This Joint Report was prepared solely based on the undersigned's information of the case.  No information was provided by any other party and no meet and confer occurred due to: (state reason)

☐None of the above – explain: Click here to enter text.

**Copies of this report have been furnished to:**

Click here to enter text.

Click here to enter text.

**Signature Bloc**

**EXHIBIT C**

**CASE MANAGEMENT ORDER**

**The form of this order may be amended by the circuit from time to time so parties are urged to check the 11th Circuit Webpage at:**
https://www.jud11.flcourts.org/docs/CASE%20MANAGEMENT%20ORDER.docx

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION**

CIRCUIT CIVIL DIVISION [Div. #]

CASE NO: [Case Number]-CA-01

[Plaintiff]

**Plaintiff(s),**

**vs.**

 [Defendant]

**Defendant(s)**

_____ /

**CASE MANAGEMENT ORDER**

**THE COURT** having reviewed the attached Case Management Plan, incorporated herein, and finding it to be satisfactory, it is therefore

**ORDERED AND ADJUDGED** that the Case Management Plan is hereby approved and adopted, and the parties shall abide by the terms set forth herein**.**

**DONE AND ORDERED** in _____,        County, Florida on _____**.**

_____
, Circuit Judge

CC: All Counsel of Record

15

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NUMBER:
SECTION:


       Plaintiff,

v.


       Defendant.
_____/

## JOINT CASE MANAGEMENT REPORT

    This Joint Case Management Report ("Joint Report") shall form the basis for a case-specific case management order that will be used to set deadlines for the remainder of this case. All information provided should be as detailed, specific as possible, and fully accurate based on all of the current information available to both parties. The Court recognizes that, as additional information is exchanged, the information provided herein may change.  The purpose of this report is to generally assess the case based on current knowledge in order to plan for, and anticipate, specific case needs.

    Your answers to these questions should clearly indicate the areas of disagreement, if any, between the parties. Parties should add additional rows to charts where needed.


1. Brief Factual Description of Case:
   a. Indicate type of case. (Ex. Negligence, Breach of Contract, Medical Malpractice, etc.): Click here to enter text.
   b. What is the track assignment based on case type (Ex. Streamlined, General, Complex) Click here to enter text.
   c. What is the relevant accrual date? (Ex. date of accident, loss, breach, etc.): Click here to enter text.
   d. What type(s) of damages sought? Click here to enter text.
   e. Provide a summary of pertinent facts: Click here to enter text.
2. Legal Issue(s) of Case: Click here to enter text.
3. List Current Pleadings Filed and Status: Click here to enter text.
4. Is the case at issue? Click here to enter text.
5. Do you anticipate the filing of:
   a. Counter-claim(s) Click here to enter text.
   b. Cross-claim(s) Click here to enter text.

**Page 1 of 6**

   c.  Third party claim(s) Click here to enter text.

6.  List Current Motion(s) Pending: Click here to enter text.

| Name of Motion & Filer & Portal Index Number | Filed Date | Response & Portal Index Number | Reply & Portal Index Number | Meet and Confer | Outstanding Issues | Hearing Time Required | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

7.  List and describe key documents and/or evidence known as this time (Ex. Medical records, contract documents, pictures, video surveillance, etc.): Click here to enter text.

8.  Please indicate the type of written discovery propounded in this case:

| Type | Date Propounded | Response | Objection/ Privilege | Privilege Log | Meet and Confer | Outstanding Issues | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| Interrogatories | | | | | | | |
| Expert Interrogatories | | | | | | | |
| Update Interrogatories | | | | | | | |
| Requests for Production | | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Requests for Admission | | | | | | |
| Non-Party Subpoenas | | | | | | |

Deadline for Propounding Requests for Production, Requests to

9. Are there issues pertaining to Electronically Stored Information? Click here to enter text.

10. List all known fact witnesses by name.  If unknown, describe the witness (Ex. FHP Trooper): Click here to enter text.

11. As it pertains to depositions in this case,

| Fact Witness | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

12. List all expert witnesses by name.  If unknown, indicate the anticipated areas of expert witness testimony: Click here to enter text.

| Expert Witness | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Area of Testimony | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

**Page 3 of 6**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

13. Inspections requested/required? Click here to enter text.

| Inspections | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Purpose of Inspection | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

14. Comprehensive Medical Examinations requested/required? Click here to enter text.
    If so, how many?

| Examinations | Date | Completed (Y/N) | Scheduled (Y/N) | Noticed By (Name of Party) | Outstanding Issues | Subject of Examination | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

15. Mediation:

| Mediator | Date of Mediation | Completed (Y/N) | Scheduled (Y/N) | Result | Outstanding Issues | Date of Mediation Order | Deadline for Completion (Date) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Page 4 of 6**

16. Trial readiness:

| Estimated Length of Trial (specify the number of trial days): | |
|---|---|
| **Identification of Jury or Non-Jury Trial:** | |
| **Requested Trial Date:** | |

List dates previously set for trial:

| Previous Trial Dates | Date of Previous Trial Order | Status: Continued, Rolled Over, Reset | Name of Parking Seeking Continuance | Reason for Continuance | Outstanding Issues | Issues Resolved (Y/N) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

17. Are you aware of any issues that may possibly delay the normal progression of this case? (Ex. Maternity leave, bankruptcy, upcoming surgeries, extended special set trial in another case, etc.) Click here to enter text.

    If so, please specify Click here to enter text.

18. Fill out the following contact information:

| **Party** | **Attorney Name** | **Telephone #** | **Email Address** |
|---|---|---|---|
| Choose an item. | Click here to enter text. | Click here to enter text. | Click here to enter text. |
| Choose an item. | Click here to enter text. | Click here to enter text. | Click here to enter text. |
| Choose an item. | Click here to enter text. | Click here to enter text. | Click here to enter text. |

Indicate which of the following applies:

☐This Joint Report was prepared pursuant to the information provided by the parties, following a full meet and confer.

**Page 5 of 6**

☐This Joint Report was prepared pursuant to the information provided by the parties but there was no meet and confer.

☐This Joint Report was prepared solely based on the undersigned's information of the case.  No information was provided by any other party and no meet and confer.

☐None of the above – explain: Click here to enter text.

**Copies of this report have been furnished to:**

Click here to enter text.

Click here to enter text.

**Signature Bloc**

# EXHIBIT B

## **RETURN OF SERVICE**

**State of Florida**                                                                                                          **County of Miami-Dade**

Case Number: 2022-018881-CA-01

Plaintiff,:
**PAIGE FINDELSTEIN, M.D.,**

vs.

Defendant,:
**MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., a Florida Not For Profit Corporation, and KFIR BEN-DAVID, M.D.,**

For:
Richard H. Levenstein, Esquire
Nason, Yeager, Gerson, Harris & Fumero, PA
3001 PGA Blvd.
Suite 305
Palm Beach Gardens, FL 33410

Received by Williams Process Service, Inc. on the 11th day of October, 2022 at 2:09 pm to be served on **Mount Sinai Medical Center of Florida, Inc. Valerie Yap, Registered Agent, 4300 Alton Road, 5th Floor - Warner Bldg, Miami Beach, FL 33140.**

I, Nassim Tauil, do hereby affirm that on the **11th day of October, 2022** at **3:40 pm, I:**

served a **CORPORATION** by delivering a true copy of the **Summons, Verified Complaint for Injunctive Relief and Damages with Exhibit A, Verified Motion for Emergency Temporary Injunction, Administrative Order No. 21-08, Administrative Order No. 21-09 and Joint Case Management Report** with the date and hour of service endorsed thereon by me, to: **Norma Salvatierra** as **Administrative Assistant** for **Mount Sinai Medical Center of Florida, Inc.**, at the address of: **4300 Alton Road, 5th Floor - Warner Bldg, Miami Beach, FL 33140**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 60, Sex: F, Race/Skin Color: Hispanic, Height: 5'3", Weight: 110, Hair: Grey, Glasses: Y

Under penalties of perjury, I declare that I have read the foregoing and that the facts stated in it are true. I am over the age of eighteen, have no interest in the above action and am a Certified Process Server in good standing in the circuit in which service was effected in accordance with State Statutes.


_/s/ Nassim Tauil_
_____

**Nassim Tauil**
ID No. 2105

**Williams Process Service, Inc.**
**721 US Highway 1**
**Suite 121**
**North Palm Beach, FL 33408**
**(561) 881-1442**

Our Job Serial Number: WPS-2022020531

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.2i



Case 1:23-cv-20188-RKA   Document 1-4   Entered on FLSD Docket 01/17/2023   Page 114 of 115

IN THE CIRCUIT COURT
OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2022-018881-CA-01

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons, a copy of the Plaintiff's Verified

Complaint for Injunctive Relief and Damages, Plaintiff's Verified Motion for Emergency

Temporary Injunction, Administrative Order No. 21-08, Administrative Order No. 21-09 and

Joint Case Management Report, in this action on Defendant:

           MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC.,
           a Florida Not For Profit Corporation
           VALERIE YAP, Registered Agent
           4300 ALTON ROAD - 5TH FLOOR-WARNER BLDG
           MIAMI BEACH, FL 33140

Each Defendant is required to serve written defenses to the Complaint or Petition on

      **RICHARD H. LEVENSTEIN, ESQUIRE**

Plaintiff's attorney, whose address and phone number is:

**NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:  (561) 686-3307

within 20 days after service of this summons on that Defendant, exclusive of the day of service,

holidays and weekends, and to file the original of the defenses with the Clerk of this Court either

before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a

default will be entered against that Defendant for the relief demanded in the Complaint or

Petition.

　　　　If you are a person with a disability who needs any accommodation in order to participate

in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.

Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Aliean Simpkins

Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175;

TDD (305) 349-7174, Fax (305) 349-7355; Email ADA@jud11.flcourts.org at least 7 days

before your scheduled court appearance, or immediately upon receiving this notification if the

time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired,

call 711.

　　　　DATED:  _____10/11/2022_____

　　　　　　　　　　　　　　　　　　　　HARVEY RUVIN
　　　　　　　　　　　　　　　　　　　　CLERK OF THE CIRCUIT COURT

　　　　　　　　　　　　　　　　　　　　By:_____
　　　　　　　　　　　　　　　　　　　　　　Deputy Clerk

　　　　　　　　　　　　　　　　　　　　　　　(SEAL)

2