IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-27

PAIGE FINKELSTEIN, M.D.,

     Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

     Defendants.

_____/

**NOTICE OF APPEARANCE AND NOTICE OF FILING E-MAIL DESIGNATION
PURSUANT TO FLA. R. JUD. ADMIN. 2.516 AND FLA. R. CIV. P. 1.080**

Notice is hereby given that **Martin B. Goldberg, Esq., David R. Ruffner, Esq. and Clark S. Splichal, Esq.** of the law firm of **Lash & Goldberg LLP** file this Notice of Appearance and Notice of Filing E-Mail Designation Pursuant to Fla. R. Jud. Admin. 2.516 and Fla. R. Civ. P. 1.080 on behalf of **Defendants Mount Sinai Medical Center of Florida, Inc. and Kfir Ben-David, M.D.**, and request that copies of all correspondence and pleadings be served upon them at the below listed e-mail addresses:

The primary e-mail addresses for receiving service in this matter is designated as:

     **Martin B. Goldberg, Esq.**
     Primary E-mail: mgoldberg@lashgoldberg.com
     Secondary E-mail: rdiaz@lashgoldberg.com

     **David R. Ruffner, Esq.**
     Primary E-mail: druffner@lashgoldberg.com
     Secondary E-mail: mwallace@lashgoldberg.com

     **Clark S. Splichal, Esq.**
     Primary Email: csplichal@lashgoldberg.com
     Secondary Email: mwallace@lashgoldberg.com



**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

LASHGOLDBERG.COM

CASE NO. 2022-018881-CA-27

Respectfully submitted,

**LASH & GOLDBERG LLP**
Miami Tower, Suite 1200
100 Southeast Second Street
Tel: 305-347-4040
Fax: 305-347-4050
*Attorneys for Defendants*

By: */s/ Martin B. Goldberg*
**MARTIN B. GOLDBERG**
Florida Bar No. 827029
Primary E-mail: mgoldberg@lashgoldberg.com
Secondary E-mail: rdiaz@lashgoldberg.com
**DAVID R. RUFFNER**
Florida Bar No. 44874
Primary E-mail: druffner@lashgoldberg.com
Secondary E-mail: mwallace@lashgoldberg.com
**CLARK S. SPLICHAL**
Florida Bar No. 1010425
Primary Email: csplichal@lashgoldberg.com
Secondary Email: mwallace@lashgoldberg.com

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on this 13th day of October 2022, a true and correct copy of
the foregoing has been electronically filed with the Clerk of Court and has been served pursuant
to Florida Rule of Judicial Administration 2.516, via the Florida Courts E-Filing Portal System to
all of the following:

Richard H. Levenstein, Esq.
**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com

*Attorneys for Plaintiff*

By: */s/ Martin B. Goldberg*
**MARTIN B. GOLDBERG**

2


MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel
LASHGOLDBERG.COM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-27

PAIGE FINKELSTEIN, M.D.,

     Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., a Florida Not For Profit Corporation, and KFIR BEN-DAVID, M.D.,

     Defendants.

_____/

### DEFENDANTS' MOTION[1] TO REJECT EMERGENCY TREATMENT OF PLAINTIFF'S VERIFIED MOTION FOR TEMPORARY INJUNCTION

Defendants Mount Sinai Medical Center of Florida, Inc. (the "Hospital") and Kfir Ben-David, M.D. ("Dr. Ben-David") (together "Defendants"), by and through their undersigned counsel, hereby file this Motion to Reject Emergency Treatment of Plaintiff Paige Finkelstein, M.D.'s ("Plaintiff") Verified Motion for "Emergency" Temporary Injunction (the "TI Motion"), dated September 30, 2022. Stated simply, **_there is no emergency_** and the TI Motion does not warrant emergency treatment or hearing and should be handled in the ordinary course of court affairs. In support of their Motion, Defendants state as follows:

1.    On September 30, 2022, Plaintiff filed a Complaint and a Verified Motion for "Emergency" Temporary Injunction (the "TI Motion").

---

[1] Although styled as a Motion, the Judges of this Court regularly determine *sua sponte* that a motion or matter is not an emergency and thereafter address the subject motion in the ordinary course of court affairs. Here, Defendants request that the Court reject *sua sponte* Plaintiff's "emergency" designation without the need for additional motion practice or a hearing.



LASHGOLDBERG.COM    MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

2.      In the TI Motion, Plaintiff, a former general surgery resident who left the Hospital approximately 22 months ago in January 2021, seeks an "emergency" temporary injunction mandating that the Hospital immediately provide her with documentation related to her medical residency program, as well as enjoining Dr. Ben-David from "providing any information to Third Parties relating to the performance by [Plaintiff] as a General Surgery Resident" at the Hospital. TI Motion ¶ 26.

3.      The TI Motion improperly declares there to be an "emergency" requiring prompt relief. But neither the TI Motion nor Complaint state the grounds for emergency treatment, including any facts regarding urgency.[2] To the contrary, Plaintiff alleges that her resignation from the residency program was "forced" by Defendants in January 2021 (TI Motion ¶ 18), and that in July 2021, Dr. Ben-David did not provide her a positive reference for a new position (*id.* ¶ 22).

4.      Thus, the last complained-of incident in the TI Motion and Complaint allegedly *occurred in July 2021*, well over a year before this action was filed, and the TI Motion does not point to any recent event that would justify emergency treatment by this Court of the Motion. Yet, Plaintiff asks this Court (in October 2022) to provide her "emergency" relief based on purported incidents well over a year old.

5.      Moreover, it is a matter of public record that Plaintiff is currently a student seeking an advanced business (not medical) degree in New York. This change of profession further casts the designation of "emergency" to be, at best, unsupported. Also, counsel for Plaintiff habitually designates these types of motions as being emergencies in Florida state courts when there is no basis to do so. And Florida judges have summarily rejected Plaintiff's counsel's (Richard

---

[2] Certain Judges of this Court appear to utilize a form requiring a party to provide the following certification when filing an "emergency" motion: "I hereby certify this matter as an Emergency in my judgment, the grounds of which are reflected in the motion itself, including any facts regarding urgency." Of course, here, there is no certification in the TI Motion and no explanation whatsoever by Plaintiff as to what constitutes an "emergency."



MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

Levenstein, Esq.) attempts to cast these motions in this regard. *See, e.g.*, *Sumit Sawhney, M.D. et al. v. Northwest Medical Ctr., Inc.*, No. CACE-22-009137 (Fla. Cir. Ct., Broward Cty., June 30, 2022) (order declining to schedule hearing on motion for temporary injunction on emergency basis); *Amit K. Gupta, M.D. v. Memorial Healthcare Group, Inc.*, No. 16-2021-CA-000079-XXXX-MA (Fla. Cir. Ct., Duval Cty., Jan. 20, 2021) (correspondence from the Court to the parties declining to hear motion for temporary injunction on emergency basis).

6.      While the Eleventh Judicial Circuit does not provide uniform guidance on what circumstances constitute an "emergency," the Seventeenth Judicial Circuit does: "[A] matter that will result in ***irreparable harm, death or result in a manifest injury*** if immediate relief is not afforded." Admin. Order 2021-50-Civ (17th Jud. Cir.) (emphasis added). Plaintiff alleges no facts coming close to satisfying this standard.

7.      Setting aside the non-emergent nature of the relief sought in the TI Motion, Defendants intend to move to dismiss the Complaint in full as a matter of law and oppose the TI Motion in full, if at all necessary. The Hospital and Dr. Ben-David will also be asking this Court to hold a case management conference to determine an orderly schedule of events to address both the Complaint and TI Motion in a due and non-emergent course.

8.      Prior to commencement of this action and the filing of the TI Motion, Defendants' counsel informed Mr. Levenstein that this matter did not constitute an "emergency" and requested that counsel remove the designation. Plaintiff's counsel still proceeded to file the TI Motion as an "emergency."

WHEREFORE, for all the foregoing reasons, Defendants respectfully request that this Court reject Plaintiff's designation of this matter as an "emergency" and determine that it is not an emergency matter, direct that the matter be handled in the ordinary course of court affairs, and

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-27

grant any further relief that the Court deems just or appropriate under the circumstances.

Dated:  October 13, 2022

Respectfully submitted,

**LASH & GOLDBERG, LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 347-4040
Fax: (305) 347-4050
*Attorneys for Defendants*

By:  /s/ *Martin B. Goldberg*
   **MARTIN B. GOLDBERG**
   Florida Bar No. 0827029
   Primary Email: mgoldberg@lashgoldberg.com
   Secondary Email: rdiaz@lashgoldberg.com
   **DAVID R. RUFFNER**
   Florida Bar No. 044874
   Primary Email: druffner@lashgoldberg.com
   Secondary Email: mwallace@lashgoldberg.com
   **CLARK S. SPLICHAL**
   Florida Bar No. 1010425
   Primary Email: csplichal@lashgoldberg.com
   Secondary Email:mwallace@lashgoldberg.com

4


MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-27

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 13th day of October 2022, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court and has been served pursuant to Florida Rule of Judicial Administration 2.516, via the Florida Courts E-Filing Portal System to all of the following:

Richard H. Levenstein, Esq.
**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com

*Attorneys for Plaintiff*

By: */s/ Martin B. Goldberg*
           **MARTIN B. GOLDBERG**



MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel 305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel 954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-27

PAIGE FINKELSTEIN, M.D.,

        Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

        Defendants.

_____/

## NOTICE OF CASE MANAGEMENT CONFERENCE

PLEASE TAKE NOTICE that the undersigned intends to convene before the Court during its regular Uniform Motion Calendar or other hearing time, on a date to be determined and agreed upon by the parties and duly noticed for hearing pursuant to this Court's procedures, a **Case Management Conference** pursuant to Rule 1.200(a)(1) and (10), Fla. R. Civ. R., to address the following matters: (i) if not already addressed by the Court, resolution of Defendants' Motion to Reject Emergency Treatment of Plaintiff's Verified Motion for Temporary Injunction (ii) Defendants' forthcoming Motion to Dismiss Plaintiff's Verified Complaint; (iii) the orderly disposition in the due course of the Court's regular affairs of Plaintiff's Verified Motion for Temporary Injunction; and (iv) a briefing schedule for the responses and replies related to Defendants' forthcoming Motion to Dismiss and  Plaintiff's Verified Motion for Temporary Injunction.

Dated: October 13, 2022



**LASHGOLDBERG.COM**    **MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-27

Respectfully submitted,

**LASH & GOLDBERG LLP**
Miami Tower, Suite 1200
100 Southeast Second Street
Tel: 305-347-4040
Fax: 305-347-4050
*Attorneys for Defendants*

By: */s/ Martin B. Goldberg*
**MARTIN B. GOLDBERG**
Florida Bar No. 827029
Primary E-mail: mgoldberg@lashgoldberg.com
Secondary E-mail: rdiaz@lashgoldberg.com
**DAVID R. RUFFNER**
Florida Bar No. 44874
Primary E-mail: druffner@lashgoldberg.com
Secondary E-mail: mwallace@lashgoldberg.com
**CLARK S. SPLICHAL**
Florida Bar No. 1010425
Primary Email: csplichal@lashgoldberg.com
Secondary Email: mwallace@lashgoldberg.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 13th day of October 2022, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court and has been served pursuant to Florida Rule of Judicial Administration 2.516, via the Florida Courts E-Filing Portal System to all of the following:

Richard H. Levenstein, Esq.
**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com

*Attorneys for Plaintiff*

By: */s/ Martin B. Goldberg*
**MARTIN B. GOLDBERG**

2

Lash&Goldberg LLP
LASHGOLDBERG.COM
MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Filing # 159276118 E-Filed 10/14/2022 03:03:59 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

PAIGE FINKELSTEIN, M.D.,                    CASE NO.: 2022-018881-CA-01

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

## NOTICE OF HEARING
## (MOTION CALENDAR - VIA ZOOM)

**TO:**   Martin B. Goldberg, Esq.
David R. Ruffner, Esq.
Clark S. Splichal, Esq.
Lash & Goldberg LLP
100 S.E. 2nd Street
Miami Tower, Suite 1200
Miami, FL 33131
Primary Email: mgoldberg@lashgoldberg.com; druffner@lashgoldberg.com;
csplichal@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com; mwallace@lashgoldberg.com

**YOU ARE HEREBY NOTIFIED** that the undersigned will call up for hearing before the

**Honorable Oscar M. Rodriguez-Fonts**, Judge of the above Court, via Zoom on **Tuesday,**

**October 18, 2022 at 9:00 a.m.**, or as soon thereafter as same may be heard, the following matter:

5 minute Status Conference on Plaintiff's Verified Motion
for Emergency Temporary Injunction (filed 9/30/22)

### *Directions for accessing hearing VIA ZOOM*

Zoom Meeting ID: 95863336732
Zoom Dial In Number: +1 786-635-1003
Zoom Link: https://zoom.us/j/95863336732

Notice of Hearing
Page 2

PLEASE GOVERN YOURSELF ACCORDINGLY.

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Aliean Simpkins Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355; Email ADA@jud11.flcourts.org at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of Court and served by E-Mail through the Florida Courts E-Filing Portal on this 14th day of October, 2022, to the following:

<u>**Attorneys for Defendants:**</u>
Martin B. Goldberg, Esq.
David R. Ruffner, Esq.
Clark S. Splichal, Esq.
Lash & Goldberg LLP
100 S.E. 2nd Street
Miami Tower, Suite 1200
Miami, FL  33131
Primary Email: mgoldberg@lashgoldberg.com; druffner@lashgoldberg.com; csplichal@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com; mwallace@lashgoldberg.com

Respectfully submitted,

NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:      (561) 686-3307
Facsimile:      (561) 686-5442
Richard H. Levenstein, Esq.
Richard H. Levenstein, Esq.
Primary E-mail: rlevenstein@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com; creyes@nasonyeager.com

By: ___/s/ Richard H. Levenstein_____
      Richard H. Levenstein
      Florida Bar No. 235296

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**

**CASE NO.: 2022-018881-CA-01**

**SECTION:**                          CA27

**PAIGE FINKELSTEIN, M.D.**
**Plaintiff(s),**

**vs.**

**MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC. et al**
**Defendant(s)**
_____/

<u>**ZOOM/VIRTUAL**</u>
<u>**NOTICE OF SPECIAL SET HEARING**</u>
**Plaintiff's Verified Motion for Emergency Temporary Injunction**

       **YOU ARE HEREBY NOTIFIED** that, a Special Set hearing on the above cause is scheduled for _____**30 min**_____ on ____**11-28-2022 at 11:00 AM**____ in Room   Virtual courtroom.

Virtual Court is held remotely on the Zoom platform. You will receive an email from the Court with the information you need to connect to your event by video or phone if you are on the E-Filing Portal service list.  If you do not receive an email, check the judge's webpage for the Zoom link to their virtual courtroom or further instructions. You may also register for text notification via link https://cmap.jud11.flcourts.org/ebench/textNotificationsRegistration.jsp.

IT IS THE RESPONSIBILITY OF THE SCHEDULER TO PROVIDE TIMELY NOTICE OF THE ZOOM MEETING DETAILS TO ANY PARTY NOT REGISTERED ON THE E-FILING SERVICE PORTAL.

<u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the above notice was delivered to the parties below on _____**10-25-2022**_____.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

Copies Furnished to:
Electronically Served

Clark S. Splichal, csplichal@lashgoldberg.com
Clark S. Splichal, mwallace@lashgoldberg.com
Richard H. Levenstein, rlevenstein@nasonyeager.com
Richard H. Levenstein, ptreadway@nasonyeager.com
Richard H. Levenstein, creyes@nasonyeager.com
Martin B. Goldberg, mgoldberg@lashgoldberg.com
Martin B. Goldberg, rdiaz@lashgoldberg.com
Martin B. Goldberg, lashgoldberg@gmail.com
David R Ruffner, druffner@lashgoldberg.com
David R Ruffner, mwallace@lashgoldberg.com

Filing # 160195360 E-Filed 10/28/2022 02:10:01 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-018881-CA-01
SECTION: CA27
JUDGE: Oscar Rodriguez-Fonts

**PAIGE FINKELSTEIN, M.D.**

Plaintiff(s)

vs.

**MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC. et al**

Defendant(s)

_____/

### AGREED ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S VERIFIED COMPLAINT

THIS CAUSE came before the Court upon Defendants' Unopposed Motion for Extension of Time to Respond to Plaintiff's Verified Complaint. The Court, having reviewed the motion, being advised of the agreement of the parties on the form and content of this Order, and being otherwise fully advised in the premises, hereby ORDERS and ADJUDGES as follows:

1. Defendants' Unopposed Motion for Extension of Time to Respond to Plaintiff's Verified Complaint is GRANTED.

2. Defendants shall have up to and including Monday, November 14, 2022, to respond to Plaintiff's Verified Complaint.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>28th day of October, 2022</u>.

<u>2022-018881-CA-01 10-28-2022 1:54 PM</u>
Hon. Oscar Rodriguez-Fonts

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Clark S. Splichal, csplichal@lashgoldberg.com
Clark S. Splichal, mwallace@lashgoldberg.com
Clark Sigman Splichal, csplichal@lashgoldberg.com
Clark Sigman Splichal, mwallace@lashgoldberg.com
David R Ruffner, druffner@lashgoldberg.com
David R Ruffner, mwallace@lashgoldberg.com
Martin B. Goldberg, mgoldberg@lashgoldberg.com
Martin B. Goldberg, rdiaz@lashgoldberg.com
Martin B. Goldberg, lashgoldberg@gmail.com
Richard H. Levenstein, rlevenstein@nasonyeager.com
Richard H. Levenstein, ptreadway@nasonyeager.com
Richard H. Levenstein, creyes@nasonyeager.com


**Physically Served:**

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-01 (27)

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

### DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S VERIFIED COMPLAINT

Defendants Mount Sinai Medical Center of Florida, Inc. and Kfir Ben-David, M.D. (collectively, "Defendants") move for an order extending Defendants' time to respond to Plaintiff's Verified Complaint, which was served on October 11, 2022.

1.      Defendants' response to the Verified Complaint is presently due to be served on or before October 31, 2022.

2.      Defendants hereby respectfully request a two-week extension of time to respond because they require additional time to investigate the allegations in Plaintiff's Verified Complaint and prepare a response.

3.      This motion is made in good faith and not for the purpose of delay. Moreover, no party will be prejudiced by the brief extension requested, and Plaintiff's counsel does not object to the request.



MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

WHEREFORE, Defendants respectfully request that this Court enter an order extending the time for Defendants to respond to Plaintiff's Verified Complaint to Monday, **November 14, 2022**.

Dated: October 28, 2022

Respectfully submitted,

**LASH & GOLDBERG, LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
*Counsel for Defendants*
Tel: (305) 347-4040
Fax: (305) 347-4050

By:*/s/ Clark S. Splichal*
    **MARTIN B. GOLDBERG**
    Florida Bar No. 0827029
    Primary Email: mgoldberg@lashgoldberg.com
    Secondary Email: rdiaz@lashgoldberg.com
    **DAVID R. RUFFNER**
    Florida Bar No. 044874
    Primary Email: druffner@lashgoldberg.com
    Secondary Email: mwallace@lashgoldberg.com
    **CLARK S. SPLICHAL**
    Florida Bar No. 1010425
    Primary Email: csplichal@lashgoldberg.com
    Secondary Email: mwallace@lashgoldberg.com



**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

## <u>CERTIFICATE OF SERVICE</u>

     **I HEREBY CERTIFY** that on this 28th day of October 2022, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court and has been served pursuant to Florida Rule of Judicial Administration 2.516, via the Florida Courts E-Filing Portal System to all of the following:

Richard H. Levenstein, Esq.
**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com

*Attorneys for Plaintiff*

    By: */s/ Clark S. Splichal*
          **CLARK S. SPLICHAL**

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-01 (27)

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

## DEFENDANTS' MOTION FOR EXTENSION OF
## TIME TO RESPOND TO PLAINTIFF'S VERIFIED COMPLAINT

Defendants Mount Sinai Medical Center of Florida, Inc. and Kfir Ben-David, M.D. (collectively, "Defendants") move for an order extending Defendants' time to respond to Plaintiff's Verified Complaint.

1.      Defendants' response to the Verified Complaint is presently due to be served on or before November 14, 2022. This is Defendants' second extension request, with the first request agreed to by Plaintiff. Plaintiff has not yet advised as to whether she will agree to this request.

2.      Defendants hereby respectfully request a second extension of time to respond to the Complaint for one personalized reason that will be explained to the Court upon a hearing if such hearing is necessary. Plaintiff has been advised of this reason in the meet and confer process.

3.      Additionally, additional time will be used to streamline Defendants' forthcoming motion to save the Court time upon its adjudication. And, since this Court previously stated that it wanted to hear Plaintiff's Motion for Emergency Temporary Injunction prior to a motion to



Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

dismiss the Complaint, and since Plaintiff's injunction motion has yet to be set for a hearing (the previous hearing date of November 28, 2022 was canceled by the Court), there is no time constraints with respect to the motion to dismiss at issue here.   .

4.      This motion is made in good faith and not for the purpose of delay. Moreover, no party will be prejudiced by the extension requested.

5.      On November 9 and 10, 2022, the undersigned counsel reached out to Plaintiff's counsel regarding the relief requested herein. As stated above, Plaintiff's counsel has not yet indicated whether Plaintiff agrees to the requested extension, but should the parties confer further and reach agreement, the undersigned will immediately notify the Court

WHEREFORE, Defendants respectfully request that this Court enter an order extending the time for Defendants to respond to Plaintiff's Verified Complaint to Monday, **December 5, 2022**.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

Dated: November 11, 2022

Respectfully submitted,

**LASH & GOLDBERG, LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 347-4040
Fax: (305) 347-4050
*Counsel for Defendants*

By:*/s/ Clark S. Splichal*
    **MARTIN B. GOLDBERG**
    Florida Bar No. 0827029
    Primary Email: mgoldberg@lashgoldberg.com
    Secondary Email: rdiaz@lashgoldberg.com
    **DAVID R. RUFFNER**
    Florida Bar No. 044874
    Primary Email: druffner@lashgoldberg.com
    Secondary Email: mwallace@lashgoldberg.com
    **CLARK S. SPLICHAL**
    Florida Bar No. 1010425
    Primary Email: csplichal@lashgoldberg.com
    Secondary Email: mwallace@lashgoldberg.com

Lash & Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

### CERTIFICATE OF SERVICE

     **I HEREBY CERTIFY** that on this 11th day of November 2022, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court and has been served pursuant to Florida Rule of Judicial Administration 2.516, via the Florida Courts E-Filing Portal System to all of the following:

Richard H. Levenstein, Esq.
**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com

*Attorneys for Plaintiff*

              By: */s/ Clark S. Splichal*_____
                **CLARK S. SPLICHAL**

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-018881-CA-01
SECTION: CA27
JUDGE: Oscar Rodriguez-Fonts

**PAIGE FINKELSTEIN, M.D.**

Plaintiff(s)

vs.

**MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC. et al**

Defendant(s)

_____/

**<u>AGREED ORDER GRANTING DEFENDANTS' MOTION FOR EXTENSION OF TIME
TO RESPOND TO PLAINTIFF'S VERIFIED COMPLAINT</u>**

THIS CAUSE came before the Court upon Defendants' Motion for Extension of Time to Respond to Plaintiff's Verified Complaint. The Court, having reviewed the motion, being advised of the agreement of the parties on the form and content of this Order, and being otherwise fully advised in the premises, hereby ORDERS and ADJUDGES as follows:

1. Defendants' Motion for Extension of Time to Respond to Plaintiff's Verified Complaint is GRANTED.

2. Defendants shall have up to and including Monday, December 5, 2022, to respond to Plaintiff's Verified Complaint.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 15th day of November, 2022.

2022-018881-CA-01 11-15-2022 3:59 PM
Hon. Oscar Rodriguez-Fonts

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Clark S. Splichal, csplichal@lashgoldberg.com
Clark S. Splichal, mwallace@lashgoldberg.com
Clark Sigman Splichal, csplichal@lashgoldberg.com
Clark Sigman Splichal, mwallace@lashgoldberg.com
David R Ruffner, druffner@lashgoldberg.com
David R Ruffner, mwallace@lashgoldberg.com
Martin B. Goldberg, mgoldberg@lashgoldberg.com
Martin B. Goldberg, rdiaz@lashgoldberg.com
Martin B. Goldberg, lashgoldberg@gmail.com
Richard H. Levenstein, rlevenstein@nasonyeager.com
Richard H. Levenstein, ptreadway@nasonyeager.com
Richard H. Levenstein, creyes@nasonyeager.com

**Physically Served:**

Filing # 161675861 E-Filed 11/21/2022 04:46:48 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:  2022-018881-CA-01

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida not-for-profit
corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

### PLAINTIFF'S MOTION TO SPECIAL SET HEARING ON VERIFIED MOTION FOR EMERGENCY INJUNCTIVE RELIEF

Plaintiff, PAIGE FINKELSTEIN, M.D., by and through the undersigned counsel, files this Motion to Special Set Hearing on Plaintiff's Verified Motion for Emergency Injunctive Relief and as ground therefore states as follows:

1. On September 30, 2022, Plaintiff, Paige Finkelstein, M.D. filed a Verified Motion for Emergency Injunctive Relief.

2. On October 18, 2022 at a Status Conference, Judge Oscar Rodriguez-Fonts ordered the Verified Motion for Emergency Injunctive Relief to be special set and directed the parties to contact his judicial assistant to schedule a 30 minute hearing.

3. On October 20, 2022 and October 25, 2022, the parties spoke with the Judicial Assistant and she scheduled a special set hearing on Plaintiff's Verified Motion for Emergency Injunctive Relief on Monday, November 28, 2022 at 11:00am.

4. On October 25, 2022, a Notice of Special Set Hearing was prepared and filed by Judge Rodriguez-Fonts office.

CASE NO: 2022-018881-CA-01
Motion to Special Set Hearing on Plaintiff's Verified Motion for Emergency Injunctive Relief
Page 2

5.     On November 8, 2022, the Court sent a system generated email notifying the parties

that the November 28, 2022 hearing at 11:00am was cancelled.

6.     Plaintiff requests the Verified Motion for Emergency Injunctive Relief be set on

an emergency basis because the interview process for residency positions for which Plaintiff is

applying begins in early January, 2023 and the issues with respect to Dr. Kfir Ben-David must be

resolved before then in order to avoid further irreparable harm.

WHEREFORE, Plaintiff, Paige Finkelstein, M.D., respectfully requests that this

Honorable Court grant this Motion to Special Set Hearing, Thirty (30) minutes reserved, on

Plaintiff's Verified Motion for Emergency Injunctive Relief for filed September 30, 2022, and any

further relief deemed just and appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the

Clerk of Court and served by E-Mail through the Florida Courts E-Filing Portal on this 21st day of

November, 2022, to the following:

***Attorneys for Defendants***
Martin B. Goldberg, Esq.
David R. Ruffner, Esq.
Clark Splichal, Esq.
Lash & Goldberg LLP
Miami Tower
100 S.E. 2nd Street
Suite 1200
Miami, Florida 33131
Primary Email: mgoldberg@lashgoldberg.com; csplichal@lashgoldberg.com
druffner@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com; mwallace@lashgoldberg.com

CASE NO: 2022-018881-CA-01
Motion to Special Set Hearing on Plaintiff's Verified Motion for Emergency Injunctive Relief
Page 3

*Attorneys for Plaintiff, Paige Finkelstein, M.D.*
NASON, YEAGER, GERSON,
HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:      (561) 686-3307
Facsimile:      (561) 686-5442
Richard H. Levenstein, Esq.
Primary E-mail: rlevenstein@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com;
 creyes@nasonyeager.com


By:     /s/ Richard H. Levenstein
          Richard H. Levenstein
          Florida Bar No. 235296

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-01

JUD. SEC. CA27

PAIGE FINKELSTEIN, M.D.,

       Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

       Defendants.

_____/

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO SPECIAL SET HEARING ON VERIFIED MOTION FOR EMERGENCY INJUNCTIVE RELIEF

Defendants Mount Sinai Medical Center of Florida, Inc. and Kfir Ben-David, M.D. (collectively, "Defendants") submit this response in opposition to Plaintiff's Motion to Special Set Hearing on Verified Motion for Emergency Injunctive Relief ("Motion"). In short, the Motion must be denied because it contravenes this Court's prior ruling that no "emergency" exists as well as this Court's specific instructions to the parties to coordinate scheduling a hearing on a non-emergent basis. In further support, Defendants state as follows:

1.      On September 30, 2022, Plaintiff filed a Complaint and a Verified Motion for "Emergency" Temporary Injunction (the "TI Motion"). This Court, *sua sponte*, denied emergency treatment. More specifically, on October 18, 2022, the parties appeared for a status conference to discuss case management affairs. Not only did the Court at that time, *sua sponte*, determine that the TI Motion would not be afforded "emergency" consideration or treatment, but the Court



Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

specifically directed the parties to jointly contact the Judicial Assistant to discuss their mutual availability for a 15- to 30-minute hearing on Plaintiff's TI Motion on a non-emergent basis.

2.      The parties complied with these instructions and selected November 28, 2022, as the hearing date for Plaintiff's TI Motion. On November 8, 2022, the Court cancelled this date. Instead of coordinating with the undersigned counsel to jointly approach chambers again to discuss potential new hearing dates per the Court's instructions, Plaintiff unilaterally filed the instant Motion.

3.      Now, nearly two months later, she again requests that her TI Motion be heard on an "emergency" basis. But, again, the Court has already rejected emergency treatment of the TI Motion, and nothing has changed to warrant a different result.

4.      In the TI Motion, Plaintiff, a former general surgery resident who left the Hospital approximately 22 months ago in January 2021, seeks an "emergency" temporary injunction mandating that the Hospital immediately provide her with documentation related to her medical residency program, as well as enjoining Dr. Ben-David from "providing any information to Third Parties relating to the performance by [Plaintiff] as a General Surgery Resident" at the Hospital. TI Motion ¶ 26. Defendants will be filing a comprehensive motion to dismiss on December 5, 2022.

5.      The TI Motion alleges no cognizable emergency. To the contrary, Plaintiff alleges that her resignation from the residency program was "forced" by Defendants in January 2021 (TI Motion ¶ 18), and that in July 2021, Dr. Ben-David did not provide her a positive reference for a new position (*id.* ¶ 22).

6.      Thus, the last complained-of incident in the TI Motion and Complaint allegedly occurred in July 2021, well over a year before this action was filed. Yet, Plaintiff asks this Court

Lash&Goldberg LLP

LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida 33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida 33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

CASE NO. 2022-018881-CA-01 (CA27)

(in November 2022) to provide her "emergency" relief based on purported incidents well over a year old.[1]

7.      Counsel for Plaintiff habitually designates these types of motions as being emergencies in Florida state courts when there is no basis to do so. And, like this Court two months ago, Florida judges have summarily rejected Plaintiff's counsel's attempts to cast these motions in this regard. *See, e.g.*, *Sumit Sawhney, M.D. et al. v. Northwest Medical Ctr., Inc.*, No. CACE-22-009137 (Fla. Cir. Ct., Broward Cty., June 30, 2022) (order declining to schedule hearing on motion for temporary injunction on emergency basis); *Amit K. Gupta, M.D. v. Memorial Healthcare Group, Inc.*, No. 16-2021-CA-000079-XXXX-MA (Fla. Cir. Ct., Duval Cty., Jan. 20, 2021) (correspondence from the Court to the parties declining to hear motion for temporary injunction on emergency basis).

8.      Defendants stand by ready and willing to comply with this Court's instructions announced at the October 18, 2022, status conference and re-schedule a hearing on the TI Motion on a non-emergent basis.

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion to the extent it demands "emergency" treatment.

---

[1] While the Eleventh Judicial Circuit does not provide uniform guidance on what circumstances constitute an "emergency," the Seventeenth Judicial Circuit does: "[A] matter that will result in <u>irreparable harm, death or result in a manifest injury</u> if immediate relief is not afforded." Admin. Order 2021-50-Civ (17th Jud. Cir.) (emphasis added). Plaintiff alleges no facts coming close to satisfying this standard.



LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (CA27)

Dated: November 23, 2022

Respectfully submitted,

**LASH & GOLDBERG, LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
*Counsel for Defendants*
Tel: (305) 347-4040
Fax: (305) 347-4050

By:*/s/ Clark S. Splichal*
**MARTIN B. GOLDBERG**
Florida Bar No. 0827029
Primary Email: mgoldberg@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com
**DAVID R. RUFFNER**
Florida Bar No. 044874
Primary Email: druffner@lashgoldberg.com
Secondary Email: mwallace@lashgoldberg.com
**CLARK S. SPLICHAL**
Florida Bar No. 1010425
Primary Email: csplichal@lashgoldberg.com
Secondary Email: mwallace@lashgoldberg.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via e-service notification through the Florida Courts E-Filing Portal on November 23, 2022 to Richard H. Levenstein, Esq. of the law firm of NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A. at the following email addresses: rlevenstein@nasonyeager.com, and ptreadway@nasonyeager.com.

By: */s/ Clark S. Splichal*
**CLARK S. SPLICHAL**



LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2215 • 813-284-4002 tel

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-01 (27)

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

## DEFENDANTS' NOTICE OF FILING HEARING TRANSCRIPT

Defendants Mount Sinai Medical Center of Florida, Inc. and Kfir Ben-David, M.D. (collectively, "Defendants"), by and through undersigned counsel, hereby give notice of filing the attached transcript of the hearing held on October 18, 2022, in support of Defendants' Response in Opposition to Plaintiff's Motion to Special Set Hearing on Verified Motion for Emergency Injunctive Relief, filed on November 23, 2022.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

Respectfully submitted,

**LASH & GOLDBERG, LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 347-4040
Fax: (305) 347-4050
*Counsel for Defendants*

By:*/s/ Clark S. Splichal*
    **MARTIN B. GOLDBERG**
    Florida Bar No. 0827029
    Primary Email: mgoldberg@lashgoldberg.com
    Secondary Email: rdiaz@lashgoldberg.com
    **DAVID R. RUFFNER**
    Florida Bar No. 044874
    Primary Email: druffner@lashgoldberg.com
    Secondary Email: mwallace@lashgoldberg.com
    **CLARK S. SPLICHAL**
    Florida Bar No. 1010425
    Primary Email: csplichal@lashgoldberg.com
    Secondary Email: mwallace@lashgoldberg.com

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 30th day of November 2022, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court and has been served pursuant to Florida Rule of Judicial Administration 2.516, via the Florida Courts E-Filing Portal System to all of the following:

Richard H. Levenstein, Esq.
**NASON, YEAGER, GERSON,
HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com

*Attorneys for Plaintiff*

By: */s/ Clark S. Splichal*
　　**CLARK S. SPLICHAL**

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Page 1

1        IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT
              IN AND FOR MIAMI-DADE COUNTY, FLORIDA
2                   CIRCUIT CIVIL DIVISION
3

                   CASE NO.: 2022-018881-CA-01
4

5   PAIGE FINKELSTEIN, M.D.,
6           Plaintiff,
7   v.
8   MOUNT SINAI MEDICAL CENTER OF
    FLORIDA, INC., a Florida Not For Profit
9   Corporation, and KFIR BEN-DAVID, M.D.,
10          Defendants.
11  _____/
12
13
14
15
16
17                        Tuesday, October 18, 2022
                          9:47 a.m. - 9:53 a.m.
18
19
20
21
22
23          This cause came on for hearing before the
24  Honorable Oscar Rodriguez-Fonts, Circuit Court
25  Judge, via Zoom, pursuant to notice.

```
                                                    Page 2

 1   APPEARANCES:
 2             RICHARD H. LEVENSTEIN, ESQUIRE (Via Zoom)
             NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.
 3             3001 PGA Boulevard
             Suite 305
 4             Palm Beach Gardens, Florida 33410
             (561) 686-3307
 5             rlevenstein@nasonyeager.com
             ON BEHALF OF PLAINTIFF
 6
 7             MARTIN B. GOLDBERG, ESQUIRE (Via Zoom)
             LASH & GOLDBERG, LLP
 8             100 Southeast 2nd Street
             Miami Tower, Suite 1200
 9             Miami, Florida 33131
             (305) 347-4040
10             mgoldberg@lashgoldberg.com
             ON BEHALF OF DEFENDANTS
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1              (The hearing commenced at 9:47 a.m.:)
 2         THE COURT:  This is Paige Finkelstein, M.D.
 3    versus Mount Sinai Medical Center of Florida, Inc.,
 4    et al., 2022-18881-CA-01.  This is status
 5    conference and verified motion for emergency
 6    temporary injunction.
 7         MR. LEVENSTEIN:  Good morning, Your Honor.
 8    Richard Levenstein, Nasan Yeager, for Dr. Paige
 9    Finkelstein, the Plaintiff.
10         THE COURT:  Good morning.
11         MR. GOLDBERG:  Good morning, Your Honor.
12    Martin Goldberg and Clark Splichal on behalf of
13    Mount Sinai and Dr. Ben-David.
14         THE COURT:  All right.  Good morning.  All
15    right.  Go ahead.
16         MR. GOLDBERG:  Judge, we had filed a motion
17    asking the Court to deem the emergency motion for
18    temporary injunction not to be an emergency.  I
19    think it was communicated by your office to me that
20    you agreed with that, so that is one issue, if that
21    is the Court's ruling, is not an emergency.
22         And we, from the defense side, believe, and we
23    just want a briefing schedule for a motion to
24    dismiss.  And we think the motion to dismiss will
25    dispense just as a matter of law --
```

Page 4

```
 1          THE COURT:  I don't think that I spoke to you
 2      guys.
 3          MR. GOLDBERG:  No.
 4          THE COURT:  It was probably my JA that
 5      spoke -- when you say that I perceived it not to be
 6      an emergency, you meant that that was interpreted
 7      through my JA.
 8          MR. GOLDBERG:  Yes, that's what I said.  Your
 9      chambers had communicated that.  I don't know if
10      that's -- I assume that's accurate, but I'll let
11      you address that.
12          THE COURT:  I have to look back because I've
13      had quite a few emergency motions come in recently.
14      I believe this was not, if I remember correctly --
15      I only believe that it's not an emergency because
16      the last three or four motions that have come in
17      recently were not -- I remember them not being
18      emergencies.
19          MR. GOLDBERG:  And just as background, Judge,
20      Dr. Finkelstein was a former general surgery
21      resident at Mount Sinai.  She left in January 2021,
22      about 22 months ago.  She was there for two
23      and-a-half years and she had clinical and
24      professionalism concerns.  She was placed on
25      probation twice.  She advised that her contract
```

Page 5

```
1        wasn't being renewed.  She was then terminated, and
2        then two days later, allowed to resign.
3             THE COURT:  I remember the motion now.
4             MR. GOLDBERG:  And we had said, look, there's
5        nothing pled between that time period and today
6        that requires any emergency treatment.  She's in an
7        MBA program now outside of the field --
8             THE COURT:  Right.  I believe, if I remember
9        correctly, I don't know if she had a job pending or
10       coming up or something like that, but I'm not
11       exactly sure.
12            Let me hear from the opposing side.
13            MR. LEVENSTEIN:  Your Honor, initially, let me
14       state that what this case is really about is the
15       fact that the Mount Sinai Medical Center and
16       Dr. Ben-David will not provide Dr. Finkelstein with
17       a summative evaluation and a certificate of
18       completion.
19            THE COURT:  I remember this.  I remember this.
20       I remember that it was a residency, that she was
21       sort of a whistleblower of the services being
22       provided in the hospital, and I think the chief
23       person who was in charge -- I remember reading all
24       that, but I don't think it was an emergency.  So if
25       you want to special set it, I'd be happy to hear it
```

```
                                             Page 6
 1        on special set.
 2             MR. GOLDBERG:  What I'd like --
 3             THE COURT:  Hold on, let Mr. Levenstein speak,
 4        please.
 5             MR. LEVENSTEIN:  The reason that we asked for
 6        emergency relief is because these documents are
 7        necessary for Dr. Finkelstein to go forward with
 8        any application to a residency program other than
 9        Mount Sinai.  They did not provide her with these
10        documents because they required her to sign a
11        nondisclosure agreement and general release in
12        exchange for them.  We have emails confirming --
13             THE COURT:  I believe, if I remember
14        correctly, you guys were asking for a four-hour
15        special set on this matter?
16             MR. LEVENSTEIN:  Yes, Your Honor.
17             THE COURT:  This does not need a four-hour
18        special set.  I'm not going to do four hours on
19        this.  This is something we could probably do in 15
20        or 30 minutes.  I'm going to give you my JA's
21        direct number, you guys can special set this.  If
22        you guys can't coordinate, I'll just unilaterally
23        set it.
24             So call chambers.  I'll give you my JA's
25        direct line.  Do a joint call.  Her number is
```

Page 7

```
1        (305)776-7138.
2             This is not a four-hour special set.  Set it
3        for 15 or 30 minutes and that's it.  You guys will
4        split the time.
5             MR. LEVENSTEIN:  Thank you, Your Honor.
6             MR. GOLDBERG:  Okay.  And Judge, on the motion
7        to dismiss that we're going to file, would you
8        entertain a briefing schedule in your normal course
9        that we file and they respond and a reply?
10            THE COURT:  I don't know that I would need a
11       briefing schedule.  This is a motion to dismiss?
12            MR. GOLDBERG:  Well, he has an emergency
13       motion for temporary injunction.  We are going to
14       file a motion to dismiss.  I'd like to have the
15       motion to dismiss heard before you take time on an
16       injunction motion.
17            THE COURT:  Mr. Levenstein?
18            MR. LEVENSTEIN:  Well, Your Honor, I think
19       that's inappropriate because we are asking for some
20       temporary relief up front.  By the time we go
21       through the motion to dismiss process and have it
22       heard and briefed, the time that will elapse --
23            THE COURT:  Hold on.
24            Mr. Goldberg, what's the basis for the motion
25       to dismiss?  The complaint?
```

Page 8

1          MR. GOLDBERG:  Yes, and the injunction motion
2     isn't even tied to any of the requests for --
3          THE COURT:  No, I believe I need to hear the
4     motion for relief first -- I'm sorry, the
5     injunction relief first.  So that will be heard
6     first, okay?
7          So go ahead and set it.  I think 15 minutes is
8     fine, but if you guys want 30, that's it.
9          MR. LEVENSTEIN:  Thank you, Your Honor.
10          THE COURT:  Just call chambers.  And if you
11     guys can't agree on a time, just put it back on the
12     five-minute motion calendar immediately, not a
13     couple weeks from now, and I will unilaterally set
14     it.
15          MR. LEVENSTEIN:  Thank you, Your Honor.
16          MR. GOLDBERG:  Thank you.
17          (The hearing was concluded at 9:53 a.m.)
18
19
20
21
22
23
24
25

```
 1                   HEARING CERTIFICATE

 2

 3          I, CHRISTINE SAVOUREUX-MARINER, Florida

 4   Professional Reporter, certify that I was authorized

 5   to and did stenographically report the foregoing

 6   proceedings and that this transcript is a true

 7   record of the proceedings before the Court.

 8          I further certify that I am not a

 9   relative, employee, attorney, or counsel for any of

10   the parties, nor am I a relative or employee of any

11   of the parties' attorney or counsel connected with

12   the action, nor am I financially interested in the

13   action.

14

            Dated this 23rd day of November, 2022.

15

16

17

                 CHRISTINE SAVOUREUX-MARINER

18               Florida Professional Reporter

19

20

21

22

23

24

25
```

**&**

& 2:2,7

**0**

01 1:3 3:4

**1**

100 2:8
11th 1:1
1200 2:8
15 6:19 7:3 8:7
18 1:17

**2**

2021 4:21
2022 1:17 9:14
2022-018881 1:3
2022-18881 3:4
22 4:22
23rd 9:14
2nd 2:8

**3**

30 6:20 7:3 8:8
3001 2:3
305 2:3,9 7:1
33131 2:9
33410 2:4
3442 9:17
347-4040 2:9

**5**

561 2:4

**6**

686-3307 2:4

**7**

776-7138 7:1

**9**

9:47 1:17 3:1
9:53 1:17 8:17

**a**

a.m. 1:17,17 3:1
  8:17
accurate 4:10
action 9:12,13
address 4:11
advised 4:25
ago 4:22
agree 8:11
agreed 3:20
agreement 6:11
ahead 3:15 8:7
al 3:4
allowed 5:2
appearances 2:1
application 6:8
asked 6:5
asking 3:17 6:14
  7:19
assume 4:10
attorney 9:9,11
authorized 9:4

**b**

b 2:7
back 4:12 8:11
background 4:19
basis 7:24
beach 2:4
behalf 2:5,10
  3:12
believe 3:22 4:14
  4:15 5:8 6:13 8:3
ben 1:9 3:13 5:16

boulevard 2:3
briefed 7:22
briefing 3:23 7:8
  7:11

**c**

ca 1:3 3:4
calendar 8:12
call 6:24,25 8:10
case 1:3 5:14
cause 1:23
center 1:8 3:3
  5:15
certificate 5:17
  9:1
certify 9:4,8
chambers 4:9
  6:24 8:10
charge 5:23
chief 5:22
christine 9:3,17
circuit 1:1,1,2,24
civil 1:2
clark 3:12
clinical 4:23
come 4:13,16
coming 5:10
commenced 3:1
communicated
  3:19 4:9
complaint 7:25
completion 5:18
concerns 4:24
concluded 8:17
conference 3:5
confirming 6:12
connected 9:11

contract 4:25
coordinate 6:22
corporation 1:9
correctly 4:14 5:9
  6:14
counsel 9:9,11
county 1:1
couple 8:13
course 7:8
court 1:1,24 3:2
  3:10,14,17 4:1,4
  4:12 5:3,8,19 6:3
  6:13,17 7:10,17
  7:23 8:3,10 9:7
court's 3:21

**d**

dade 1:1
dated 9:14
david 1:9 3:13
  5:16
day 9:14
days 5:2
deem 3:17
defendants 1:10
  2:10
defense 3:22
direct 6:21,25
dismiss 3:24,24
  7:7,11,14,15,21
  7:25
dispense 3:25
division 1:2
documents 6:6,10
dr 3:8,13 4:20
  5:16,16 6:7

**e**

elapse   7:22
emails   6:12
emergencies   4:18
emergency   3:5,17
  3:18,21 4:6,13,15
  5:6,24 6:6 7:12
employee   9:9,10
entertain   7:8
esquire   2:2,7
et   3:4
evaluation   5:17
exactly   5:11
exchange   6:12

**f**

fact   5:15
field   5:7
file   7:7,9,14
filed   3:16
financially   9:12
fine   8:8
finkelstein   1:5
  3:2,9 4:20 5:16
  6:7
first   8:4,5,6
five   8:12
florida   1:1,8,8
  2:4,9 3:3 9:3,18
fonts   1:24
foregoing   9:5
former   4:20
forward   6:7
four   4:16 6:14,17
  6:18 7:2
front   7:20
fumero   2:2

**further**   9:8

**g**

gardens   2:4
general   4:20 6:11
gerson   2:2
give   6:20,24
go   3:15 6:7 7:20
  8:7
going   6:18,20 7:7
  7:13
goldberg   2:7,7
  3:11,12,16 4:3,8
  4:19 5:4 6:2 7:6
  7:12,24 8:1,16
good   3:7,10,11,14
guys   4:2 6:14,21
  6:22 7:3 8:8,11

**h**

h   2:2
half   4:23
happy   5:25
harris   2:2
hear   5:12,25 8:3
heard   7:15,22 8:5
hearing   1:23 3:1
  8:17 9:1
hold   6:3 7:23
honor   3:7,11 5:13
  6:16 7:5,18 8:9
  8:15
honorable   1:24
hospital   5:22
hour   6:14,17 7:2
hours   6:18

**i**

immediately   8:12
inappropriate
  7:19
initially   5:13
injunction   3:6,18
  7:13,16 8:1,5
interested   9:12
interpreted   4:6
issue   3:20

**j**

ja   4:4,7
ja's   6:20,24
january   4:21
job   5:9
joint   6:25
judge   1:25 3:16
  4:19 7:6
judicial   1:1

**k**

kfir   1:9
know   4:9 5:9
  7:10

**l**

lash   2:7
lashgoldberg.c...
  2:10
law   3:25
left   4:21
levenstein   2:2 3:7
  3:8 5:13 6:3,5,16
  7:5,17,18 8:9,15
line   6:25
llp   2:7
look   4:12 5:4

**m**

m.d.   1:5,9 3:2
mariner   9:3,17
martin   2:7 3:12
matter   3:25 6:15
mba   5:7
meant   4:6
medical   1:8 3:3
  5:15
mgoldberg   2:10
miami   1:1 2:8,9
minute   8:12
minutes   6:20 7:3
  8:7
months   4:22
morning   3:7,10
  3:11,14
motion   3:5,16,17
  3:23,24 5:3 7:6
  7:11,13,14,15,16
  7:21,24 8:1,4,12
motions   4:13,16
mount   1:8 3:3,13
  4:21 5:15 6:9

**n**

nasan   3:8
nason   2:2
nasonyeager.com
  2:5
necessary   6:7
need   6:17 7:10
  8:3
nondisclosure
  6:11
normal   7:8
notice   1:25

**[november - zoom]**
Page 12

**november** 9:14
**number** 6:21,25

**o**

**october** 1:17
**office** 3:19
**okay** 7:6 8:6
**opposing** 5:12
**oscar** 1:24
**outside** 5:7

**p**

**p.a.** 2:2
**paige** 1:5 3:2,8
**palm** 2:4
**parties** 9:10,11
**pending** 5:9
**perceived** 4:5
**period** 5:5
**person** 5:23
**pga** 2:3
**placed** 4:24
**plaintiff** 1:6 2:5
  3:9
**please** 6:4
**pled** 5:5
**probably** 4:4
  6:19
**probation** 4:25
**proceedings** 9:6,7
**process** 7:21
**professional** 9:4
  9:18
**professionalism**
  4:24
**profit** 1:8
**program** 5:7 6:8
**provide** 5:16 6:9

**provided** 5:22
**pursuant** 1:25
**put** 8:11

**q**

**quite** 4:13

**r**

**reading** 5:23
**really** 5:14
**reason** 6:5
**record** 9:7
**relative** 9:9,10
**release** 6:11
**relief** 6:6 7:20 8:4
  8:5
**remember** 4:14
  4:17 5:3,8,19,19
  5:20,23 6:13
**renewed** 5:1
**reply** 7:9
**report** 9:5
**reporter** 9:4,18
**requests** 8:2
**required** 6:10
**requires** 5:6
**residency** 5:20
  6:8
**resident** 4:21
**resign** 5:2
**respond** 7:9
**richard** 2:2 3:8
**right** 3:14,15 5:8
**rlevenstein** 2:5
**rodriguez** 1:24
**ruling** 3:21

**s**

**savoureux** 9:3,17
**schedule** 3:23 7:8
  7:11
**services** 5:21
**set** 5:25 6:1,15,18
  6:21,23 7:2,2 8:7
  8:13
**side** 3:22 5:12
**sign** 6:10
**signature** 9:17
**sinai** 1:8 3:3,13
  4:21 5:15 6:9
**sorry** 8:4
**sort** 5:21
**southeast** 2:8
**speak** 6:3
**special** 5:25 6:1
  6:15,18,21 7:2
**splichal** 3:12
**split** 7:4
**spoke** 4:1,5
**state** 5:14
**status** 3:4
**stenographically**
  9:5
**street** 2:8
**suite** 2:3,8
**summative** 5:17
**sure** 5:11
**surgery** 4:20

**t**

**take** 7:15
**temporary** 3:6,18
  7:13,20
**terminated** 5:1

**thank** 7:5 8:9,15
  8:16
**think** 3:19,24 4:1
  5:22,24 7:18 8:7
**three** 4:16
**tied** 8:2
**time** 5:5 7:4,15
  7:20,22 8:11
**today** 5:5
**tower** 2:8
**transcript** 9:6
**treatment** 5:6
**true** 9:6
**tuesday** 1:17
**twice** 4:25
**two** 4:22 5:2

**u**

**unilaterally** 6:22
  8:13

**v**

**v** 1:7
**verified** 3:5
**versus** 3:3

**w**

**want** 3:23 5:25
  8:8
**weeks** 8:13
**whistleblower**
  5:21

**y**

**yeager** 2:2 3:8
**years** 4:23

**z**

**zoom** 1:25 2:2,7

Filing # 162394895 E-Filed 12/05/2022 03:20:27 PM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-01 (27)

PAIGE FINKELSTEIN, M.D.,

     Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

     Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT

Pursuant to Rule 1.140(b)(1) and 1.140(b)(6), Fla. R. Civ. P., Defendants Mount Sinai Medical Center of Florida, Inc. ("MSMC" or the "Hospital") and Kfir Ben-David, M.D. ("Dr. Ben-David") (together "Defendants"), by and through their undersigned counsel, hereby move to dismiss with prejudice Paige Finkelstein, M.D.'s ("Plaintiff") Verified Complaint (the "Complaint"), served on October 11, 2022. In short, the Complaint states no cognizable legal basis for which relief can be granted, and the action is due to be dismissed in its entirety without leave to replead.

## PRELIMINARY STATEMENT

Plaintiff was a former third-year surgical resident at MSMC who was terminated due to longstanding issues with her professionalism and communication skills—namely, her persistent demeaning attitude towards other residents and patients, and patient safety concerns. Despite Defendants providing her every opportunity to succeed as a surgical resident notwithstanding these issues, Plaintiff eschewed these opportunities, failed to improve her conduct following two



MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

LASHGOLDBERG.COM

academic probations and other efforts at remediation, and now, almost two years later, seeks to blame everyone at MSMC for her well-documented failures as a surgical resident. Plaintiff also sues Dr. Ben-David in his personal capacity, despite having no contractual privity or legally cognizable relationship with him. Dr. Ben-David's inclusion in this lawsuit is nothing more than a vindictive ploy to smear the reputation of a respected physician and medical leader in the community.

The Complaint is without legal merit (at best) and must be dismissed as a matter of law for numerous, independently dispositive reasons. As shown in Point I, Plaintiff cannot sustain a breach of contract claim because MSMC has no contractual obligation—express or implied—to provide Plaintiff with any evaluative or completion paperwork for her residency under the plain terms of her Graduate Medical Education Program Agreement (the "GME Agreement," to which only MSMC, not Dr. Ben-David, is a party). Further to that point, the Accreditation Council for Graduate Medical Education ("ACGME"), a private regulatory body that promulgates guidelines for residency programs, creates no private right of action based on a purported violation of its standards for accreditation. And to the extent Plaintiff challenges her termination from the program, she failed to exhaust her contractual remedies under the GME Agreement, depriving this Court of subject matter jurisdiction. Finally, Plaintiff's allegation that MSMC failed to provide a "harassment-free" workplace is nothing more than a disguised discrimination claim, which allegations are time barred under applicable state and federal law (and as recently determined by the Equal Employment Opportunity Commission).

As to Point II, Plaintiff's claim of "extortion" must be dismissed because Florida law recognizes no such civil cause of action. The claim is frivolous and inflammatory.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

As to Point III, Plaintiff cannot maintain a claim of intentional infliction of emotional distress because Defendants' alleged conduct did not rise to the level of "outrageous." This Court is permitted to determine as a matter of law—and must determine here—that the alleged conduct in question was not "outrageous" and dismiss the claim on the pleadings.

Finally, as to Point IV, and will be fully briefed in Defendants' forthcoming response to Plaintiff's motion for temporary injunction (the "Response"), no claim for any injunctive relief lies absent any viable underlying claim. A claim for injunctive relief (be it emergency, temporary, or otherwise) cannot stand as an independent claim. And as fully explained in the Response, Plaintiff's claim for injunctive relief must also fail because she: (i) cannot demonstrate a likelihood of success on the merits given the myriad deficiencies in her underlying claims; (ii) cannot demonstrate irreparable harm given the interminable delay in seeking the relief; (iii) has a remedy at law, as evidenced by her claims for monetary damages sounding in breach of contract or tort, and because portions of the relief sought involve circumstances far too speculative for this Court to entertain until the purported future actions take place; and (iv) cannot demonstrate that an injunction would serve the public interest.

No measure of re-pleading can salvage these deficiencies. As such, Defendants' Motion should be granted and the Complaint dismissed in its entirety, with prejudice.[1]

## **FACTUAL BACKGROUND**

A summary of the pertinent factual background will be included in Defendants' forthcoming Response to Plaintiff's motion for temporary injunction. However, this Court need

---

[1] Finally, Plaintiff fails in the Complaint to delineate her operative allegations between MSMC and Dr. Ben-David, which deprives this Court and Defendants of adequate notice of the claims and allegations. Specifically, Plaintiff impermissibly lumps together MSMC and Dr. Ben-David in nearly all of her operative allegations, in paragraphs 10, 11, 12, 15, 18, 19, 20, 21, 23, 30, 31, 32, 33, 34, 37, 38, 39, 40, 43, 44, 45, 48, and 52 of the Complaint. The Complaint is the quintessential "shotgun pleading" and should be dismissed on this basis as well.



MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel
LASHGOLDBERG.COM

only address Plaintiff's version of the facts as alleged in her Complaint to find that no viable claim has been pled as a matter of law, which requires dismissal of the entire action <u>with prejudice</u>.

## **PERTINENT ALLEGATIONS IN THE COMPLAINT**

The allegations in Plaintiff's Complaint present a version of reality through the *looking glass*,[2] where Plaintiff was an exceptional medical resident, a champion for patient care, and that her termination from the program was the result of a retaliatory campaign in which she was singled out.

According to the Complaint, Plaintiff began her surgical residency with MSMC in June 2018. Compl. ¶ 13. On March 11, 2020, Plaintiff entered a written agreement with MSMC for her third year of residency, which would run from June 2020 until June 2021 (hereinafter the "GME Agreement"). *See* Compl. ¶ 28, & Ex. A. Dr. Ben-David signed the GME Agreement on behalf of MSMC, but is not a party to the agreement. *Id.* Ex. A.

In January 2021, Defendants "forced" Plaintiff's resignation from the residency program. *Id.* ¶ 18. She alleges that all disciplinary actions taken against her during her residency, leading to her "forced" resignation, were designed to "harass" and "retaliate" against her. Compl. ¶¶ 8, 10.

Following her resignation, Plaintiff alleges that Defendants attempted to "extort" and "blackmail" her by withholding her "Summative Evaluation" and "Certification of Completion" (the latter evidencing her completion of two years in the program) unless Plaintiff signed a release and nondisclosure agreement. *Id.* ¶¶ 12, 19.

In July 2021, Plaintiff received an "offer" for a house surgeon position at Mount Sinai Beth Israel in New York City ("Beth Israel"). Compl. ¶ 22. She alleges her application for clinical

---

[2] LEWIS CARROLL, THROUGH THE LOOKING-GLASS, AND WHAT ALICE FOUND THERE (1871). In this sequel, Alice again enters a fantastical world by climbing through a mirror. Upon entry she finds that, just like a reflection everything is reversed, including logic.



MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, Fl 33606-2315 • 813-284-4002 tel
LASHGOLDBERG.COM

privileges at Beth Israel was denied because Dr. Ben-David did "not provide a reference or provided negative comments about her." *Id.* She alleges that Defendants actions have "effectively ended [her] career as a physician." *Id.* ¶ 23.

Plaintiff purports to plead three substantive claims and two claims for injunctive relief:

Count I - Wrongful Termination and Breach of Contract. Plaintiff alleges Defendants breached the GME Agreement by failing to provide a "harassment free work environment" for Plaintiff, and by purportedly withholding from her the Summative Evaluation and Certification of Completion, in violation of MSMC's "obligations" pursuant to the ACGME. Compl. ¶¶ 30-32.

Count II - Extortion. Plaintiff alleges that Defendants "extort[ed] and blackmail[ed]" her by withholding the Summative Evaluation and Certification of Completion unless Plaintiff sign a release and nondisclosure agreement. Compl. ¶ 37.

Count III – Intentional Infliction of Emotional Distress. Plaintiff alleges that Defendants' withholding of the Summative Evaluation and Certification of Completion was "shocking, atrocious, and utterly intolerable in a civilized community" and thereby caused her emotional distress. Compl. ¶¶ 43-44.

The Complaint also seeks temporary and "emergency" injunctive relief (Counts IV and V), which claims are addressed more fully in Defendants' forthcoming Response to Plaintiff's motion for temporary injunction, but are summarized below.

## **ARGUMENT**

### I.   **LEGAL STANDARD**

A motion to dismiss is appropriate when, accepting the well pled facts alleged in the complaint as true, the plaintiff nevertheless fails to state a valid cause of action. *See* Rule 1.140(b)(6), Fla. R. Civ. P.; *Varnes v. Dawkins*, 624 So. 2d 349, 350 (Fla. 1st DCA 1993). In order

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

to state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief. *W.R. Townsend Contr., Inc. v. Jensen Civ. Constr., Inc.*, 728 So. 2d 297, 300 (Fla. 1st DCA 1999); Rule 1.110(b), Fla. R. Civ. P. Further, at the outset of a lawsuit, litigants must state their pleadings with sufficient particularity in order for a defense to be prepared. *Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp.*, 537 So. 2d 561 (Fla. 1988).

In ruling on a motion to dismiss, the Court must consider the attachments to the complaint. *Harry Pepper & Associates, Inc. v. Lasseter*, 247 So. 2d 736, 736 (Fla. 3d DCA 1971); *see also Ginsberg v. Lennar Florida Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("When a party attaches exhibits to the complaint those exhibits become part of the pleading and the court will review those exhibits accordingly."); Rule 1.130, Fla. R. Civ. P. ("All . . . contracts . . . on which action may be brought or defense made . . . must be incorporated in or attached to the pleading."). Exhibits attached to or referenced in the complaint are controlling and, where the complaint's allegations are contradicted by the exhibits, the plain meaning of the exhibits control, subjecting the complaint to dismissal. *See Ginsberg,* 645 So. 2d at 494; *American Seafood Inc. v. Clawson*, 598 So. 2d 273, 274 (Fla. 3d DCA 1992); *Harry Pepper & Assocs., Inc.,* 247 So. 2d at 736.

## II.     THE BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW

Count I ("Wrongful Termination and Breach of Contract") fails for five independent reasons.

### A.  Plaintiff Fails to Allege a Cognizable Breach of the GME Agreement

In support of Count I, Plaintiff suggests that her rights to Summative Evaluation and Certificate of Completion spring from her March 11, 2020 GME Agreement, as follows:

Lash&Goldberg LLP

LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

> As a result of the actions of the Defendants … [Plaintiff] has been unable to secure a position in another Residency Program, has been unable to secure any employment in the medical profession as a physician, and continues be unable to do so, as a result of the continuing failure and refusal of the Defendants to provide her with documents which they are required to provide evidencing her completion of two and one-half (2.5) years of her Residency, ….

*See* Compl. ¶ 32 & Ex. A. But Plaintiff does not point to any provision of the GME Agreement containing these terms, and in fact, concedes the point by recognizing that these purported obligations are imposed upon the Hospital by the ACGME. Compl. ¶¶ 12, 19. Plaintiff also fails to point to any provision or part of her GME Agreement that would transform an administrative complaint to the ACGME into a contractual dispute. Indeed, nothing in the GME Agreement— express or implied—obligates MSMC to provide Plaintiff with a Summative Evaluation or Certificate of Completion. And further, nothing in the GME Agreement references or incorporates ACGME guidelines or standards.

The interpretation of a contract is a matter of law, and when clear and unambiguous, "its meaning is to be ascertained in accordance with its plainly expressed intent." *Super Cars of Miami, LLC v. Webster*, 300 So. 3d 752, 754–55 (Fla. 3d DCA 2020). To that end, when an agreement's terms are clear, the court may not "rewrite, alter, or add to the terms of a written agreement … and may not substitute their judgment for that of the parties …." *Webster*, 300 So. 3d at 755 (citing *Int'l Expositions, Inc. v. City of Miami Beach*, 274 So. 2d 29, 30-31 (Fla. 3d DCA 1973)).

To sustain her breach of contract claim, the Court would have to rewrite the GME Agreement to include these obligations. The Court cannot do so. Indeed, the GME Agreement provides no such terms and imposes no such obligations on Defendants, and clearly states that it "contains the entire understanding between the parties and no alteration or modification hereof shall be effected except by a subsequent written instrument executed by both parties hereto." Compl. Ex. A, § 18. Even if Plaintiff were to the persuade this Court to somehow read the ACGME

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, Fl 33606-2315 • 813-284-4002 tel

guidelines into her GME Agreement (which courts are not permitted), courts in other jurisdictions have only entertained claims where ACGME policies were <u>expressly</u> (that is, not implicitly) incorporated into a residency contract. *Cf. Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690, 46 N.E.3d 24, 40 (2016) (incorporating ACGME's nondiscrimination policy by clear reference thereto).

On this basis alone, the claim must be dismissed.

B.   <u>The ACGME Guidelines Provide No Private Right of Action</u>

Plaintiff's reference and reliance upon the ACGME guidelines fares no better. Plaintiff alleges that the evaluative and completion paperwork "were documents which the ACGME requires a Residency Program to provide to any Resident upon request." Compl. ¶ 19. Whether or not that is so, there is no private right of action for an individual resident to enforce the ACGME guidelines.

One court explained how issues arising under ACGME standards simply do not present a justiciable controversy between private parties:

> [S]tandards that ACGME has established for all of its accredited institutions ... are akin to regulations established by an administrative body, <u>rather than a contract governing a relationship between two entities</u>. If [the sponsoring institution] fails to substantially comply with ACGME's requirements, ACGME can revoke its accreditation; that would not be a "breach" of any "contract" by [the sponsoring institution], but rather a decision by ACGME, as a regulatory institution, that [the residency program] is no longer entitled to accreditation.

*Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*, 3:14-CV-3577-CMC, 2016 WL 3079466, at *49 (D.S.C. June 1, 2016), *aff'd sub nom. Irani v. Palmetto Health*, 767 Fed. Appx. 399 (4th Cir. 2019) (alterations in original) (emphasis added).

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Accordingly, Defendants' purported failures to comply with ACGME standards and guidelines for accreditation present no justiciable controversy, which is a further basis for dismissal of the claim.

### C.  Defendant Dr. Ben-David Was Not a Party to the GME Agreement

In addition to the foregoing reasons to dismiss Count I against both Defendants, Dr. Ben-David was not a party or signatory to the GME Agreement in his personal capacity, and thus no breach of contract claim against him may survive. *See, e.g.*, *Noventa Ocho LLC v. PBD Properties LLC*, 284 Fed. Appx. 726, 728 (11th Cir. 2008).

### D.  Plaintiff's Claim Is Preempted by State and Federal Discrimination Laws, and Her Allegations of Discrimination Are Time Barred

Plaintiff alleges that Defendants were required to "provide a harassment free work environment for [Plaintiff] to perform her duties as [a] Resident Physician, pursuant to Paragraph 6 of the [GME Agreement]." Compl. ¶ 30. Section 6 of the GME Agreement states, in pertinent part:

> Mount Sinai Medical Center is committed to Equal Employment Opportunity (EEO). Discrimination on the basis of a person's race, religion, national origin, age, disability, veteran status, marital status, sex, or sexual orientation, or any other basis protected by federal, state or local law, including verbal or physical harassment on the basis of any of the above characteristics, is prohibited and will not be tolerated. Such prohibited harassment consists of unwelcome sexual advances or comments; ethnic jokes; ethnic, racial, religious or age-related slurs; and similar conduct.

Compl. Ex. A, § 6.

In other words, Plaintiff is seeking to enforce the Hospital's EEO policy. The law is very clear that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (and its state law equivalent) provides the exclusive remedy for unlawful discrimination or harassment in the workplace. *See Carver v. Casey*, 669 F. Supp. 412, 417 (S.D. Fla. 1987). Further and relatedly, an EEO policy contained within a contract does not give rise to an independent contractual obligation.

9

Lash&Goldberg LLP

LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, Fl 33606-2315 • 813-284-4002 tel

*See Pineda v. PRC, LLC*, 1:11-CV-20894-JLK, 2011 WL 3022564, at *4 (S.D. Fla. July 22, 2011) ("Courts have held that an anti-harassment policy that merely restates the law does not create an implied contract … [nor] create a separate and independent contractual obligation" and collecting cases).

Tellingly, Plaintiff does not plead a discrimination or harassment claim in this action because those allegations would be time barred, as the last complained-of action by Defendants occurred in July 2021. *See* 42 U.S.C. § 2000e-5 (setting forth 300-day statute of limitations to bring charges before the EEOC). In fact, Plaintiff filed a charge of discrimination with the EEOC on July 22, 2022 (i.e., outside of the 300-day statute of limitations), which the EEOC correctly dismissed as untimely. A true and correct copy of the EEOC's October 27, 2022, Dismissal and Notice of Rights is attached as **Exhibit A**.

Having forfeited her remedy under Title VII and comparable state law, Plaintiff cannot now attempt to disguise the same allegations as a breach of contract: "The fact that plaintiff is precluded from asserting his Title VII claims … does not permit the court to substitute breach of contract claims for that exclusive remedy." *Casey*, 669 F. Supp. at 417 (internal citations omitted).

E. **Plaintiff Cannot Challenge Her "Wrongful Termination" under the GME Agreement Absent Exhaustion of Her Contractual Remedies**

While Count I of Plaintiff's Complaint is denominated as a "Wrongful Termination," nowhere in the Complaint does Plaintiff actually allege that her termination was "wrongful" or allege any other facts to support the claim. But even if such facts had been alleged, this Court is without jurisdiction to entertain such a claim. Well-settled and binding authority in Florida requires physicians challenging adverse actions to exhaust their administrative remedies prior to seeking relief in court. *Desai v. Lawnwood Med. Ctr., Inc.*, 219 So. 3d 869, 871-72 (Fla. 4th DCA 2017), *aff'd*, 260 So. 3d 218, 219 (Fla. 2018); *Keller v. Lawnwood Med. Ctr., Inc.*, 219 So. 3d 879 (Fla.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

4th DCA 2017); *City of Miami v. Fraternal Order of Police Lodge No. 20 of City of Miami*, 378 So. 2d 20, 23 (Fla. 3d DCA 1979). Courts in multiple jurisdictions with similar law have applied the exhaustion requirement to actions brought by medical residents. *See, e.g., Nemazee v. Mt. Sinai Med. Ctr.*, 564 N.E.2d 477, 482 (Ohio 1990) ("[W]e hold that a [resident] physician in a private hospital whose employment and/or hospital privileges have been terminated must exhaust all internal administrative remedies provided by a hospital's charter, bylaws, rules, regulations and employment contract prior to seeking judicial review."); *Knapik v. Mary Hitchock Mem'l Hosp.*, 2014 WL 12717446, at *3 (D. Vt. May 30, 2014) (finding that New Hampshire law requires medical residents to exhaust contractual administrative remedies).[3]

Here, Plaintiff had the right to appeal her termination through an administrative process. That right is detailed in the GME Agreement, Section 12(4), which states that residents subject to disciplinary action (including termination from the program) "may petition the Chief Executive Officer of [MSMC] for an appeal hearing before a Disciplinary Hearing Committee within ten working days of receiving written notice of the action." Compl. Ex. A. Under this process, the Disciplinary Hearing Committee may reverse a termination decision following its hearing of witnesses and evidence. Compl. Ex. A, § 12(4).

But Plaintiff has not alleged that she petitioned MSMC for an appeal of its decision to terminate her, and in point of fact, Plaintiff was informed of these administrative remedies but

---

[3] Plaintiff's failure to exhaust her administrative remedies presents a jurisdictional defect. *See Dist. Bd. of Trs. of Broward Cmty. Coll. v. Caldwell*, 959 So. 2d 767, 770 (Fla. 4th DCA 2007) ("[F]ailure to exhaust administrative remedies goes to the subject matter jurisdiction of the court to hear a matter.") As such, the Court is without discretion to do anything but dismiss this action. *See Trerice v. Trerice*, 250 So. 3d 695, 697 (Fla. 4th DCA 2018) (quoting *Griffith v. Fla. Parole and Prob. Comm'n*, 485 So. 2d 818, 821 (Fla. 1986).

11

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

never made any request.[4] Plaintiff's failure to exhaust her administrative remedies renders this claim (and lawsuit) subject to dismissal.

## II.     PLAINTIFF'S CLAIM OF EXTORTION IS NOT A COGNIZABLE CIVIL CAUSE OF ACTION

Count II is frivolous, inflammatory, and asserted in bad faith. Plaintiff alleges that Defendants have "unlawfully" extorted and blackmailed her by withholding the Summative Evaluation and Certificate of Completion, and she has suffered damages as a result. Compl. ¶¶ 37-39. But Florida law recognizes no civil cause of action for extortion. *See Bass v. Morgan, Lewis & Bockius*, 516 So.2d 1011 (Fla. 3d DCA 1987) ("[W]e hold that no violation of the [criminal extortion] statute gives rise to a civil cause of action."); *see also  Am. Nat. Title & Escrow of Florida, Inc. v. Guarantee Title & Tr. Co.*, 748 So. 2d 1054, 1056 (Fla. 4th DCA 1999) ("There is, however, no common law action for damages based upon extortionate conduct."); *Hush Little Baby, LLC v. Chapman*, 8:13-CV-2027-T-17AEP, 2015 WL 9165909, at \*9 (M.D. Fla. Dec. 16, 2015) (same, citing *Bass*, *supra*). The claim must be dismissed.

## III.    PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW

In Count III of the Complaint, Plaintiff alleges that Defendants' withholding of the Summative Evaluation and Certificate of Completion (which is alleged as a breach of contract discussed above) was "shocking, atrocious, and utterly intolerable in civil society." Compl. ¶ 43. Yet, Plaintiff alleges no independent tortious conduct on Defendants' part to support Count III. Black letter law mandates the dismissal of this count at the pleading stage.

---

[4] Defendants attach the Declaration of Robert C. Goldszer M.D., the Designated Institutional Official for MSMC's residency programs, who attests that no petition from Plaintiff was ever received by MSMC to appeal her termination. *See* **Exhibit B**. Affidavits, declarations, and other materials extrinsic to the pleadings may be considered by the Court to determine whether subject matter jurisdiction exists to entertain the claim. *See Fong v. Forman*, 105 So. 3d 650, 652 (Fla. 4th DCA 2013) (quoting *Morgan v. Dep't of Envtl. Prot.,* 98 So. 3d 651, 653 (Fla. 3d DCA 2012)) ("A trial court may look to facts gathered outside the pleadings, including affidavits, to determine subject matter jurisdiction.").



LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

The tort of intentional infliction of emotional distress is comprised of four elements: "(1) [T]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Clemente v. Horne*, 707 So. 2d 865, 866 (Fla. 3d DCA 1998) (alterations in original). It is well-established that the question of "outrageousness" must be determined by the trial court, as a matter of law, and may warrant dismissal of the claim based on the pleadings. *LeGrande v. Emmanuel*, 889 So. 2d 991, 995 (Fla. 3d DCA 2004).

This exceedingly high standard was explained in *Deauville Hotel Mgmt., LLC v. Ward*, where the plaintiff alleged that the defendant's breach of a wedding venue agreement was "outrageous." 219 So. 3d 949, 956 (Fla. 3d DCA 2017). The Third District Court of Appeal found that while the conduct at issue may have been "wrong" and "tortious," it did not rise to the level of "outrageous," drawing a helpful comparison with a pair of Florida cases, *Liberty Mut. Ins. Co. v. Steadman*, 968 So.2d 592, 595 (Fla. 2d DCA 2007) and *Thomas v. Hosp. Bd. of Dirs. of Lee Cnty.*, 41 So.3d 246 (Fla. 2d DCA 2010):

> Causing these bad memories (as the hotel did here), however, is many degrees removed from causing or covering up the negligent death of another on the outrageousness scale. Purposefully <u>causing death by withhold insurance benefits</u> or <u>covering up the negligent death</u> of a family member is atrocious, utterly intolerable, and outside the bounds of decency in a way that causing nightmares, disappointment, and embarrassment because of a ruined wedding is not.

*Id.* at 956 (emphasis added).

The situation alleged in the Complaint—that Defendants intentionally withheld evaluative documents from Plaintiff—is a far cry from "matters of life-and-death" illustrated in the *Ward* case. *Id.* at 955. Accordingly, this Court must find, as a matter of law, that these actions, even

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2113 • 813-284-4002 tel

assuming their truth, do not rise to the level of "outrageous" to sustain the tort. The Court also need not consider Plaintiff's "subjective response" to Defendants' alleged conduct in determining whether the tort has been sufficiently pled. *Id.* at 955.

Finally, Plaintiff may not recover emotional distress damages where the gravamen of the litigation sounds in breach of contract—here, Defendants' alleged breach of the GME Agreement. *See Floyd v. Video Barn, Inc.*, 538 So. 2d 1322, 1325 (Fla. 1st DCA 1989), *cause dismissed*, 542 So. 2d 1335 (Fla. 1989) ("[W]here the gravamen of the proceeding is breach of contract, even if such breach be willful and flagrant, there can be no recovery for mental pain and anguish resulting from such breach.").

Accordingly, Plaintiff's claim of intentional infliction of emotional distress must be dismissed with prejudice.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR TEMPORARY AND "EMERGENCY" INJUNCTIVE RELIEF

Because injunctive relief is a remedy, not a cause of action, the absence of any cognizable substantive claims in the Complaint means that Plaintiff's claims for temporary and/or emergency injunctive relief (Counts IV and V, respectively) are defective as a threshold matter.[5] *See Waterman Broad. Corp. v. Saro, Inc.*, 555 So. 2d 1273 (Fla. 2d DCA 1989) (plaintiff required to plead substantive cause of action to seek injunctive relief); *Skyway Trap & Skeet Club, Inc v. Southwest Fla. Water Management Dist.*, 854 So. 2d 676, 681 (Fla. 2d DCA 2003) (trial court lacked authority to grant temporary injunctive relief where the complaint did not include a substantive cause of action providing permanent relief). Because Plaintiff's three (3) substantive claims fail, so must any claim for injunctive relief.

---

[5]  At a status conference held on October 18, 2022, this Court announced, *ore tenus*, that it would not afford "emergency" treatment to Plaintiff's request for injunctive relief in this case. As such, Plaintiff's cause of action for "emergency" injunctive relief is foreclosed by this Court's announcement and due to be immediately dismissed.



LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

As briefed in Defendants' forthcoming Response to Plaintiff's motion for temporary injunctive relief, Plaintiff fails to satisfy her heavy burden for issuance of an injunction. Injunctive relief is an extraordinary and drastic remedy. *See Florida High School Activities Ass'n v. Kartenovich*, 749 So. 2d 1290, 1291 (Fla. 3d DCA 2000) ("[a] temporary injunction is an extraordinary and drastic remedy which should be sparingly granted"); *Gomez v. Fradin*, 41 So. 3d 1068, 1071 (Fla. 4th DCA 2010) ("A claim for a permanent injunction is an extraordinary remedy"). To establish the right to a temporary injunction, the moving party must show: (1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) the substantial likelihood of success on the merits; (4) the threatened injury to the petitioner outweighs the possible harm to the respondent; and (5) the granting of the temporary injunction will not disserve the public interest. *See Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So. 3d 1086, 1089–90 (Fla. 3d DCA 2014). If the party seeking the injunction fails to establish any one of these requirements, the relief must be denied. *Id.* at 918. Inconsistent or conclusory allegations are insufficient. *Pinellas County v. Seminole Lake Country Club Estates Homeowners Ass'n, Inc.*, 555 So. 2d 883, 884 (Fla. 2d DCA 1989).

An injunction that would change or alter the status quo is known as a "mandatory" injunction. *See Pinkston v. Univ. of S. Fla. Bd. of Trustees*, No. 8:15-CV-1724-T-33-TBM, 2016 WL 11469181, at *2 (M.D. Fla. May 18, 2016). A mandatory injunction is subject to a heightened standard and "should be issued in only the rarest of circumstances where the rights are clear and certain." *Blue Earth Sols. v. Fla. Consol. Properties, LLC*, 113 So. 3d 991, 992–93 (Fla. 5th DCA 2013). These types of injunctions are "rare and extraordinary." *See Amelio v. Marilyn Pines Unit II Condo. Ass'n, Inc.*, 173 So. 3d 1037, 1042 (Fla. 2d DCA 2015) (quoting *Johnson v. Killian*, 157 Fla. 754, 27 So. 2d 345, 347 (1946)).

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

In addition to the above requirements, the law is well settled that "a mandatory injunction may not be granted prior to a final hearing on the merits, except in those rare cases where the right to it is clear and free from reasonable doubt." *Delta Gen. Corp. v. Priess*, 389 So. 2d 1083, 1083 (Fla. 3d DCA 1980) (citing, inter alia, *Montgomery Pipe & Tube Co. of Florida v. Mann*, 205 So. 2d 660 (Fla. 3d DCA 1968)) (emphasis added); *accord Ctr. State Transportation, Inc. v. Motor Trend Orlando Serv., LLC*, 312 So. 3d 225, 226 (Fla. 5th DCA 2021).

### A.  Plaintiff Cannot Show Her Right to An Injunction is Clear and Free from Doubt

Plaintiff seeks an injunction in three parts: (i) mandating that MSMC provide her with a Summative Evaluation; (ii) mandating that MSMC provide her with a Certificate of Completion evidencing completion of two years of residency; and (iii) enjoining Dr. Ben-David from communicating to third parties about her "performance" in the residency program. Compl. ¶ 52.

As an initial matter, two-thirds of the injunctive relief that Plaintiff seeks is mandatory— she is asking the Court to compel that MSMC provide her documents. That is, Plaintiff seeks to alter the status quo pending a final determination, on the merits, of whether MSMC is legally obligated to provide her these same documents. For the reasons stated above, Plaintiff cannot demonstrate a clear right to the relief requested because her GME Agreement imposes no obligation on Defendants to provide a Summative Evaluation and Certificate of Completion, and to the extent the ACGME imposes such a requirement, those standards are not incorporated into her GME Agreement and provide no independent private right of action. *Cf. Amelio v. Marilyn Pines Unit II Condo. Ass'n, Inc.*, 173 So. 3d 1037, 1040 (Fla. 2d DCA 2015) (plaintiff established clear right to mandatory injunctive relief based on duties and obligations set forth in condominium's governing documents).

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

      B.  <u>Plaintiff Cannot Show a Substantial Likelihood of Success on the Merits</u>

As discussed in Parts I-III, *supra*, Plaintiff cannot demonstrate a likelihood of success on the merits of her claims because each claim fails, on its face, as a matter of law.

      C.  Plaintiff Cannot Demonstrate the Likelihood of Irreparable Harm Absent an <u>Injunction</u>

Plaintiff fails to demonstrate the likelihood of irreparable harm for three (3) reasons.

*First*, Plaintiff fails to allege in her Complaint what "harm" (much less whether the harm is irreparable) she will suffer absent issuance of an injunction, a deficiency which is alone fatal: "General allegations of irreparable harm are insufficient to state a claim for the issuance of a temporary injunction …." *Hialeah, Inc. v. B & G Horse Transp., Inc.*, 368 So. 2d 930, 933 (Fla. 3d DCA 1979); *see also Holiday Pines Prop. Owners Ass'n, Inc. v. Wetherington*, 557 So. 2d 243, 245 (Fla. 4th DCA 1990) (same). While Plaintiff alleges that Defendants' actions have harmed her "career" and "training," she fails to allege what additional irreparable harm would befall her absent entry of an injunction.

*Second*, Plaintiff delayed too long in seeking a temporary injunction. The law is well-established that a party who seriously delays in seeking an injunction is precluded from obtaining the relief. *See Mercer v. Keynton*, 127 So. 859, 861 (Fla. 1930); *see also  Mora v. Karr*, 697 So.2d 887 (Fla. 4th DCA 1997).[6] Here, Plaintiff alleges that her resignation from the residency program

---

[6] Federal courts, in Florida and elsewhere, have uniformly held that a delay in seeking an injunction undermines the plaintiff's showing of irreparable harm. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm. A preliminary injunction requires showing 'imminent' irreparable harm."). *See also Wireless Agents, LLC v. T-Mobile USA, Inc.*, Civ. No. 3:05-cv-0094, 2006 U.S. Dist. LEXIS 36590, 2006 WL 1540687, at *13 (N.D. Tex. June 6, 2006) (citing *High Tech Med. Instrumentation v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995)); *Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 438 (S.D. Tex. 2008) (denying injunctive relief after an alleged breach of a non-compete where movant unreasonably delayed to file suit, then requested multiple continuances to the injunction hearing); *Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc.*, No. 16-CV-5079 (JGK), 2016 U.S. Dist. LEXIS 107358, 2016 WL 4367990, at *3 (S.D.N.Y. Aug. 12, 2016); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996). One federal court in Florida found that a delay indicates that a suit or request for injunctive relief is more about gaining an advantage (either a commercial or



MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel
LASHGOLDBERG.COM

occurred in January 2021 (Compl. ¶ 18), and that in July 2021, Dr. Ben-David did not provide her a reference in connection with an "offer" she received from Beth Israel (*id.* ¶ 22). Thus, the last complained-of incident in the Complaint allegedly occurred in July 2021, well over a year before Plaintiff approached this Court to purportedly alter the status quo by mandating Defendants provide her documentation she never requested during that same time period. Nor does Plaintiff point to any recent event that would justify this Court's equitable intervention. Also telling, Plaintiff filed a complaint with the ACGME in June 2022 containing identical factual allegations and relief, but again, did not commence this lawsuit until late September 2022, over two months later. And most recently, the EEOC dismissed Plaintiff's July 22, 2022 charge as untimely, finding that the operative allegations fell outside the statutory 300-day statute of limitations. *See* Ex. A. Stated simply, Plaintiff's pervasive and unexplained delay in coming to Court completely vitiates any claim of irreparable harm.

*Third*, Plaintiff does not request a <u>permanent injunction</u> in her Complaint. In other words, Plaintiff has no desire to permanently enjoin or mandate any activity allegedly consistent with a legal right. This fact underscores that there is no actual status quo to maintain, but rather only alter, and that Plaintiff's claim for temporary injunctive relief is divorced from any viable legal right, claim or theory, but is advanced post hoc and without justification.

Accordingly, between Plaintiff's year-plus long delay in bringing this lawsuit; that Plaintiff seeks no <u>permanent</u> injunctive relief despite seeking a "temporary" and "emergency" injunction purportedly needed to maintain the status quo, when it fact Plaintiff seeks to alter it absent any clear legal right; and that there are no facts alleged remotely suggesting that Plaintiff has or will suffer any harm, much less "irreparable harm," this Court must dismiss the claim with prejudice.

---

litigation advantage) than protecting a party from irreparable harm. *Pippin et al. v. Playboy Entm't Group, Inc. et al.*, 2003 U.S. Dist. LEXIS 25415, *6 (M.D. Fla. 2003).



LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

    D.  <u>Plaintiff Cannot Demonstrate She Lacks an Adequate Remedy at Law</u>

All relief sought by Plaintiff in her Complaint is compensable at law. Loss of employment (such as Plaintiff's residency here), without more, is compensable through reinstatement, back pay, and damages. *Broward Cty. v. Meiklejohn*, 936 So. 2d 742, 745-46 (Fla. 4th DCA 2006); *Dep't of Corrs. v. Croce*, 520 So. 2d 695, 695 (Fla. 4th DCA 1988). Moreover, loss of an educational or professional opportunity is not irreparable where the plaintiff could obtain a comparable opportunity. *See St. Brendan High Sch., Inc. v. Neff*, 275 So. 3d 220, 222-23 (Fla. 3d DCA 2019) (quashing order compelling high school to readmit expelled student because "[t]he inconvenience of [student] having to change schools during her high school years does not rise to the level of irreparable harm to support a temporary injunction.").

Specifically, the relief Plaintiff seeks against Dr. Ben-David—enjoining him from communicating freely and honestly with other programs about Plaintiff's performance deficiencies—is speculative at best, given that no verification requests have been received by Defendants since 2021. The law is clear that injunctive relief is not available "when the right to the injunction is premised on a <u>speculative, future event</u>." *Lutsky v. Schoenwetter*, 172 So.3d 534 (Fla. 3d DCA 2015) (emphasis added) (citations omitted). In other words, any right to recover by Plaintiff is contingent upon a future event, namely, Dr. Ben-David's hypothetical communications with third parties. If such event were to occur, it would give Plaintiff the option to sue for damages. *Biscayne Park, LLC v. Wal-Mart Stores E., LP*, 34 So. 3d 24, 27 (Fla. 3d DCA 2010) ("[I]n the event that such an alleged event were to occur, Wal–Mart would have an adequate remedy at law, i.e., a claim for money damage.").

Lash&Goldberg LLP

LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

    E.  Plaintiff Cannot Demonstrate that Granting Injunctive Relief Would Serve the <u>Public Interest</u>

Plaintiff has not demonstrated that the public interest would be served by injunctive relief. In fact, Plaintiff does not address the public ramifications of her request, merely what she perceives as the negative impact on her: "Defendants' [sic] have effectively ended [Plaintiff's] career as a physician, due to the damage to her reputation, and her inability to complete her training, and has suspended in career limbo, with little or no prospects for employment." Compl. ¶ 24. But not only has Plaintiff failed to demonstrate or even allege a public interest that <u>would</u> be served by injunctive relief, the critical reality is that, in the present context, such relief is decidedly <u>against</u> the public interest.

Florida law recognizes that the public interest is served by rules ensuring that physicians are competent to practice, and that other physicians are best positioned to make competency determinations and recommendations regarding their peers' qualifications. For instance, Chapter 458 of the Florida Statutes establishes licensure requirements and procedures for physicians, such as Plaintiff. The opening section of the chapter states:

> The Legislature recognizes that the practice of medicine is potentially dangerous to the public if conducted by unsafe and incompetent practitioners. The Legislature finds further that it is difficult for the public to make an informed choice when selecting a physician and that the consequences of a wrong decision could seriously harm the public health and safety. The primary legislative purpose in enacting this chapter is to ensure that every physician practicing in this state meets minimum requirements for safe practice. It is the legislative intent that physicians who fall below minimum competency or who otherwise present a danger to the public shall be prohibited from practicing in this state.

Fla. Stat. § 458.301.

Similarly, Florida Statute § 395.0193 mandates that each hospital in the State establish an internal peer review process to, *inter alia*, discipline members of the hospital's medical staff who display incompetence. Fla. Stat. § 395.0193(3)(a). Because medicine is highly specialized and

Lash&Goldberg LLP
LASHGOLDBERG.COM
MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

involves substantial risks to the public if practiced improperly, the law recognizes that physicians should be the ones to evaluate the professional competence and qualifications of other physicians. *See Hackett v. Metro. Gen. Hosp.*, 465 So. 2d 1246, 1251-52 (Fla. 2d DCA 1985) (recognizing that "physicians themselves are best able to evaluate the competence and skill of another physician and to take appropriate action in the public interest.").

One of Dr. Ben-David's most essential functions as Program Director is to graduate only competent medical residents and to provide information to credentialing bodies or other institutions about the qualifications of the program's residents when they request it. Plaintiff now asks the Court to wrest this important function away from Dr. Ben-David and MSMC, issue a gag order, and presumably permit Plaintiff to evade this important safeguard that is consistent with applicable law. Stated simply, silencing Dr. Ben-David under these circumstances would put the community and patient population at risk.[7] It goes without saying that any court faced with such an extraordinary request should exercise extreme caution. In short, the public interest in ensuring the competence of licensed physicians—and ensuring that credentialing bodies and other institutions are informed about a physician's competency—vastly outweighs any generic countervailing interest that Plaintiff could plausibly articulate under the circumstances.

Accordingly, Plaintiff cannot establish any of the required elements to sustain a claim for injunctive relief, and thus, Count IV and Count V must be dismissed with prejudice.

## **CONCLUSION**

For all of the foregoing reasons, Defendants' Motion should be granted. And because the deficiencies noted above cannot be remedied through repleading, this action should be dismissed with prejudice.

---

[7] It would also do vastly more harm to MSMC and Dr. Ben-David, and to the reputation and integrity of the surgical residency program, by forcing the program to whitewash Plaintiff's serious deficiencies with any inquiring third party.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, Fl 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

Dated:  December 5, 2022

Respectfully submitted,

**LASH & GOLDBERG, LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 347-4040
Fax: (305) 347-4050
*Counsel for Defendants*

By:*/s/ Martin B. Goldberg*
    **MARTIN B. GOLDBERG**
    Florida Bar No. 0827029
    Primary Email: mgoldberg@lashgoldberg.com
    Secondary Email: rdiaz@lashgoldberg.com
    **DAVID R. RUFFNER**
    Florida Bar No. 044874
    Primary Email: druffner@lashgoldberg.com
    Secondary Email: mwallace@lashgoldberg.com
    **CLARK S. SPLICHAL**
    Florida Bar No. 1010425
    Primary Email: csplichal@lashgoldberg.com
    Secondary Email: mwallace@lashgoldberg.com


**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel
LASHGOLDBERG.COM

CASE NO. 2022-018881-CA-01 (27)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 5th day of December 2022, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court and has been served pursuant to Florida Rule of Judicial Administration 2.516, via the Florida Courts E-Filing Portal System to all of the following:

Richard H. Levenstein, Esq.
**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com

*Attorneys for Plaintiff*

By: */s/ Martin B. Goldberg*
         **MARTIN B. GOLDBERG**

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

# EXHIBIT A

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Miami District Office
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 10/26/2022

**To:** Paige Finkelstein
3914 NW 53rd Street
Boca Raton, FL 33496
Charge No: 510-2023-00555

EEOC Representative and email:     Jeanette Wooten
Federal Investigator
jeanette.wooten@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC is closing this charge because your charge was not filed within the time limits under the law; in other words, you waited too long after the date of the alleged discrimination to file your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 510-2023-00555.

On behalf of the Commission,

Digitally Signed By:Evangeline Hawthorne
10/26/2022

Evangeline Hawthorne
**Acting District Director**

**Cc:**
Nick  Duris
Mount Sinai Medical Center of Florida, Inc.
4300 Alton Road
Miami Beach, FL 33140

Richard H Levenstein
Nason, Yeager, Gerson, Harris & Fumero, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 510-2023-00555 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500

Miami, FL 33131.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT B

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-01 (27)

PAIGE FINKELSTEIN, M.D.,

    Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

    Defendants.

_____/

## DECLARATION OF ROBERT C. GOLDSZER M.D., M.B.A.

STATE OF FLORIDA    )
COUNTY OF MIAMI-DADE    )

BEFORE ME, the undersigned authority, personally appeared Robert C. Goldszer, M.D.,

M.B.A., who under oath, deposes and states:

1.    My name is Dr. Robert Goldszer. I am over eighteen (18) years old. I have personal

knowledge with respect to the matters set forth herein.

2.    I am the Chief Medical Officer at Mount Sinai Medical Center of Florida, Inc.

("Mount Sinai" or the "Hospital"). I am also the Designated Institutional Official ("DIO") for the

Hospital's graduate medical education programs.

3.    In my role, I am involved in issues related to the Hospital's residency programs and

the standards and requirements for our programs as established by the Accreditation Council for

Graduate Medical Education ("ACGME").

4.      I am familiar with the allegations that Plaintiff, Dr. Paige Finkelstein ("Dr. Finkelstein") advances against the Hospital and Dr. Kfir Ben-David personally (her Program Director in the surgical residency program) in this lawsuit.

5.      In January 2021, Dr. Finkelstein was terminated from the surgical residency program at Mount Sinai. She was also given the option to resign from the program, which she accepted.

6.      Upon her termination/resignation, I informed Dr. Finkelstein of her right to petition the Hospital to appeal its termination decision, based on administrative procedures contained in Section 12(4) of her 2020 third-year residency agreement with the Hospital (the "GME Agreement").

7.      Dr. Finkelstein did not petition the Hospital to appeal the termination decision when she was informed about her right to do so, and to date, she has failed to utilize the procedures under Section 12(4) of her GME Agreement.

8.      This Declaration does not exhaust my knowledge of these matters or of Dr. Finkelstein's other allegations in her complaint.

**FURTHER DECLARANT SAYETH NOT.**

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

**DR. ROBERT GOLDSZER**

2

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-01 (27)

PAIGE FINKELSTEIN, M.D.,

     Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida not for Profit
Corporation, and KFIR BEN-DAVID, M.D.,

     Defendants.

_____/

## DEFENDANTS' MOTION TO SPECIALLY SET HEARING ON DEFENDANTS' MOTION TO DISMISS

Defendants Mount Sinai Medical Center of Florida, Inc. and Kfir Ben-David, M.D. (collectively, "Defendants"), move for an order specially setting a hearing on their pending Motion to Dismiss Verified Complaint (the "Motion to Dismiss"), filed and served on December 5, 2022. In support of this motion, Defendants state:

1.     On September 30, 2022, Plaintiff commenced this action by service of summons and a Verified Complaint.

2.     Defendants filed a case-dispositive Motion to Dismiss Verified Complaint on December 5, 2022.

3.     Defendants believe that thirty (30) minutes is required for a hearing on Defendants' Motion to Dismiss.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

WHEREFORE, Defendants respectfully request that this Court enter an order specially setting their pending Motion to Dismiss for a 30-minute hearing on a mutually agreeable date and time, and grant any other relief that this Court deems just and appropriate under the circumstances.

Dated: December 23, 2022

Respectfully submitted,

**LASH & GOLDBERG, LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 347-4040
Fax: (305) 347-4050
*Counsel for Defendants*

By:*/s/ Clark S. Splichal*
**MARTIN B. GOLDBERG**
Florida Bar No. 0827029
Primary Email: mgoldberg@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com
**CLARK S. SPLICHAL**
Florida Bar No. 1010425
Primary Email: csplichal@lashgoldberg.com
Secondary Email: mwallace@lashgoldberg.com



**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

LASHGOLDBERG.COM

CASE NO. 2022-018881-CA-01 (27)

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 23rd day of December 2022, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court and has been served pursuant to Florida Rule of Judicial Administration 2.516, via the Florida Courts E-Filing Portal System to all of the following:

Richard H. Levenstein, Esq.
**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com

*Attorneys for Plaintiff*

By: */s/ Clark S. Splichal*
     **CLARK S. SPLICHAL**

3

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

PAIGE FINKELSTEIN, M.D.,                    CASE NO.: 2022-018881-CA-01

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

## NOTICE OF UMC HEARING

**PLEASE TAKE NOTICE** that on **Thursday, January 19, 2023 at 9:00 a.m.,** the undersigned

will bring on to be heard the following motion before the **Honorable Thomas J. Rebull,** via

Zoom Video Conference (Please note that the Court will send you an email with a Zoom link and

instructions approximately a day before the hearing):

**Plaintiff's Motion to Special Set Hearing on**
**Plaintiff's Verified Motion for Emergency Injunctive Relief (filed 11/21/22)**

**Defendants' Motion to Specially Set Hearing on**
**Defendants' Motion to Dismiss Plaintiff's Verified Complaint (filed 12/23/22)**

___X___ *Movant's attorney has spoken in person or by telephone with the attorney(s) for all parties who may be affected by the relief sought in the motion in a good faith effort to resolve or narrow the issues raised.*

_____ *Movant's attorney has attempted to speak in person or by telephone with the attorney(s) for all parties who may be affected by the relief sought in the motion.*

_____ *One or more of the parties who may be affected by the motion are self-represented.*

Notice of UMC Hearing
Case No.: 2022-018881-CA-01

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of Court and served by E-Mail through the Florida Courts E-Filing Portal on December 27, 2022 to the following:

***Attorneys for Defendants***
Martin B. Goldberg, Esq.
David R. Ruffner, Esq.
Clark Splichal, Esq.
Lash & Goldberg LLP
Miami Tower
100 S.E. 2nd Street
Suite 1200
Miami, Florida 33131
Primary Email: mgoldberg@lashgoldberg.com; csplichal@lashgoldberg.com
druffner@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com; mwallace@lashgoldberg.com

*Attorneys for Plaintiff, Paige Finkelstein, M.D.*
NASON, YEAGER, GERSON,
HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:      (561) 686-3307
Facsimile:      (561) 686-5442
Richard H. Levenstein, Esq.
Primary E-mail: rlevenstein@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com;
creyes@nasonyeager.com

By: ___/s/ Richard H. Levenstein_____
        Richard H. Levenstein
        Florida Bar No. 235296

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-01

JUD. SEC. CA27

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., a Florida Not For Profit Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S VERIFIED MOTION FOR TEMPORARY INJUNCTION

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................. 7

FACTUAL BACKGROUND ............................................................................................... 9

    A.    Overview of the Surgical Residency Program at MSMC ................................. 9

    B.    Plaintiff's Tenure in the Program ................................................................... 10

    C.    Non-renewal of the GME Agreement and Plaintiff's Termination/Resignation .......... 13

    D.    Subsequent Events Pertaining to Her Request for Injunctive Relief ............................ 14

PERTINENT ALLEGATIONS IN MOTION AND COMPLAINT .......................................... 18

ARGUMENT .................................................................................................................... 19

    I.    Preliminary Injunction Standard .................................................................... 19

    II.    Plaintiff Cannot Show Her Right to An Injunction is Clear and Free
          from Doubt ..................................................................................................... 21

    III.    Plaintiff Has Not Demonstrated a Substantial Likelihood of Success
           on the Merits of Her Claims .......................................................................... 22

        A.    Count I – Breach of Contract and "Wrongful Termination".......................... 22

            1.    *Plaintiff Fails to Allege a Cognizable Breach of the GME Agreement* ............ 22

            2.    *The ACGME Guidelines Provide No Private Right of Action* .................................. 24

            3.    *Defendant Dr. Ben-David Was Not a Party to the GME Agreement* ...................... 24

            4.    *Plaintiff's Claim Is Preempted by State and Federal Discrimination Laws,
                 and Her Allegations of Discrimination Are Time Barred* .......................... 25

            5.    *Plaintiff Cannot Challenge Her "Wrongful Termination" under the GME
                 Agreement Absent Exhaustion of Her Contractual Remedies* ................................ 26

        B.    Count II – Extortion ...................................................................................... 28

        C.    Count III – Intentional Infliction of Emotional Distress ................................. 28

    IV.    Plaintiff Fails to Demonstrate a Likelihood of Irreparable Harm Absent
           Issuance of a Temporary Injunction............................................................... 30

    V.    Plaintiff Has Failed to Demonstrate She Has No Adequate Remedy at Law ............... 32

    VI.    Granting Injunctive Relief Would Not Serve the Public Interest................................... 33

CONCLUSION................................................................................................................ 35

Lash&Goldberg LLP

LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

## **TABLE OF AUTHORITIES**

Cases

*Am. Nat. Title & Escrow of Florida, Inc. v. Guarantee Title & Tr. Co.*,
  748 So. 2d 1054 (Fla. 4th DCA 1999) ................................................................. 28

*Amelio v. Marilyn Pines Unit II Condo. Ass'n, Inc.*,
  173 So. 3d 1037 (Fla. 2d DCA 2015) ............................................................. 20, 21

*Bass v. Morgan, Lewis & Bockius*,
  516 So. 2d 1011 (Fla. 3d DCA 1987) ................................................................. 28

*Bautista REO U.S., LLC v. ARR Investments, Inc.*,
  229 So. 3d 362 (Fla. 4th DCA 2017). ................................................................ 30

*Biscayne Park, LLC v. Wal-Mart Stores E., LP*,
  34 So. 3d 24 (Fla. 3d DCA 2010) ....................................................................... 33

*Blue Earth Sols. v. Fla. Consol. Properties, LLC*,
  113 So. 3d 991 (Fla. 5th DCA 2013) ................................................................. 20

*Broward Cty. v. Meiklejohn*,
  936 So. 2d 742 (Fla. 4th DCA 2006) ................................................................. 32

*Bulwer v. Mount Auburn Hosp.*,
  473 Mass. 672, 46 N.E.3d 24 (2016) ................................................................. 23

*Carver v. Casey*,
  669 F. Supp. 412 (S.D. Fla. 1987)....................................................................... 25

*Chevaldina v. R.K./FL Mgmt., Inc.*,
  133 So. 3d 1086 (Fla. 3d DCA 2014) ................................................................ 20

*City of Miami v. Fraternal Order of Police Lodge No. 20 of City of Miami*,
  378 So. 2d 20 (Fla. 3d DCA 1979) ..................................................................... 26

*Clemente v. Horne*,
  707 So. 2d 865 (Fla. 3d DCA 1998) ................................................................... 29

*Deauville Hotel Mgmt., LLC v. Ward*,
  219 So. 3d 949 (Fla. 3d DCA 2017) ................................................................... 29

*Delta Gen. Corp. v. Priess*,
  389 So. 2d 1083 (Fla. 3d DCA 1980) ................................................................. 21

Lash&Goldberg LLP

LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

*Dep't of Corrs. v. Croce*,
   520 So. 2d 695 (Fla. 4th DCA 1988) ...................................................... 32

*Desai v. Lawnwood Med. Ctr., Inc.*,
   219 So. 3d 869 (Fla. 4th DCA 2017),
   *aff'd*, 260 So. 3d 218 (Fla. 2018) ......................................................... 26

*Dist. Bd. of Trs. of Broward Cmty. Coll. v. Caldwell*,
   959 So. 2d 767 (Fla. 4th DCA 2007) ..................................................... 27

*Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc.*,
   No. 16-CV-5079 (JGK), 2016 U.S. Dist. LEXIS 107358,
   2016 WL 4367990 (S.D.N.Y. Aug. 12, 2016) .......................................... 31

*Florida Dep't of Health v. Florigrown, LLC*,
   317 So. 3d 1101 (Fla. 2021) ................................................................. 22

*Floyd v. Video Barn, Inc.*,
   538 So. 2d 1322 (Fla. 1st DCA 1989),
   *cause dismissed*, 542 So. 2d 1335 (Fla. 1989) ...................................... 30

*Fong v. Forman*,
   105 So. 3d 650 (Fla. 4th DCA 2013) ...................................................... 27

*Gawker Media, LLC v. Bollea*,
   129 So. 3d 1196 (Fla. 2d DCA 2014) ...................................................... 20

*Hackett v. Metro. Gen. Hosp.*,
   465 So. 2d 1246 (Fla. 2d DCA 1985) ...................................................... 34

*Hialeah, Inc. v. B & G Horse Transp., Inc.*,
   368 So. 2d 930 (Fla. 3d DCA 1979) ....................................................... 30

*Holiday Pines Prop. Owners Ass'n, Inc. v. Wetherington*,
   557 So. 2d 243 (Fla. 4th DCA 1990) ...................................................... 30

*Hush Little Baby, LLC v. Chapman*,
   8:13-CV-2027-T-17AEP, 2015 WL 9165909 (M.D. Fla. Dec. 16, 2015) ............... 28

*Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*,
   3:14-CV-3577-CMC, 2016 WL 3079466 (D.S.C. June 1, 2016),
   *aff'd sub nom. Irani v. Palmetto Health*, 767 Fed. Appx. 399 (4th Cir. 2019)........ 24

*J.B.J. Inv. of S. Fla., Inc. v. Maslanka*,
   163 So. 3d 726 (Fla. 5th DCA 2015) ...................................................... 22

*Keller v. Lawnwood Med. Ctr., Inc.*,
   219 So. 3d 879 (Fla. 4th DCA 2017) ...................................................... 26

4

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

*Knapik v. Mary Hitchock Mem'l Hosp.*,
  2014 WL 12717446 (D. Vt. May 30, 2014) ........................................................................... 27

*LeGrande v. Emmanuel*,
  889 So. 2d 991 (Fla. 3d DCA 2004) ..................................................................................... 29

*Lutsky v. Schoenwetter*,
  172 So. 3d 534 (Fla. 3d DCA 2015) ..................................................................................... 32

*Mercer v. Keynton*,
  127 So. 859 (Fla. 1930) ........................................................................................................ 30

*Michele Pommier Models, Inc. v. Diel*,
  886 So. 2d 993 (Fla. 3d DCA 2004) ..................................................................................... 20

*Mora v. Karr*,
  697 So. 2d 887 (Fla. 4th DCA 1997) .................................................................................... 31

*Nemazee v. Mt. Sinai Med. Ctr.*,
  564 N.E.2d 477 (Ohio 1990) ................................................................................................ 26

*Noventa Ocho LLC v. PBD Properties LLC*,
  284 Fed. Appx. 726 (11th Cir. 2008) ................................................................................... 25

*Pineda v. PRC, LLC*,
  1:11-CV-20894-JLK, 2011 WL 3022564 (S.D. Fla. July 22, 2011)...................................... 25

*Pinkston v. Univ. of S. Fla. Bd. of Trustees*,
  No. 8:15-CV-1724-T-33-TBM, 2016 WL 11469181 (M.D. Fla. May 18, 2016).................... 20

*Pippin et al. v. Playboy Entm't Group, Inc. et al.*,
  2003 U.S. Dist. LEXIS 25415, *6 (M.D. Fla. 2003)............................................................. 31

*Planned Parenthood of Greater Orlando, Inc. v. MMB Props.*,
  211 So. 3d 918 (Fla. 2017)................................................................................................... 20

*Polymer Techs., Inc. v. Bridwell*,
  103 F.3d 970 (Fed. Cir. 1996) .............................................................................................. 31

*Rimkus Consulting Grp., Inc. v. Cammarata*,
  255 F.R.D. 417 (S.D. Tex. 2008) ......................................................................................... 31

*Skyway Trap & Skeet Club, Inc v. Southwest Fla. Water Management Dist.*,
  854 So. 2d 676 (Fla. 2d DCA 2003) ..................................................................................... 22

*St. Brendan High Sch., Inc. v. Neff*,
  275 So. 3d 220 (Fla. 3d DCA 2019) ..................................................................................... 32

*State Transportation, Inc. v. Motor Trend Orlando Serv., LLC*,
  312 So. 3d 225 (Fla. 5th DCA 2021) ....................................................................... 21

*Super Cars of Miami, LLC v. Webster*,
  300 So. 3d 752 (Fla. 3d DCA 2020) ........................................................................ 23

*Thomas v. Hosp. Bd. of Dirs. of Lee Cnty.*,
  41 So.3d 246 (Fla. 2d DCA 2010) ........................................................................... 29

*Waterman Broad. Corp. v. Saro, Inc.*,
  555 So. 2d 1273 (Fla. 2d DCA 1989) ...................................................................... 22

Wireless Agents, LLC v. T-Mobile USA, Inc.,
  Civ. No. 3:05-cv-0094, 2006 U.S. Dist. LEXIS 36590,
  2006 WL 1540687, at *13 (N.D. Tex. June 6, 2006) .............................................. 31

*Wreal, LLC v. Amazon.com, Inc.*,
  840 F.3d 1244 (11th Cir. 2016) ............................................................................... 31

**Statutes**

42 U.S.C. § 2000e ....................................................................................................... 25

42 U.S.C. § 2000e-5 .................................................................................................... 26

Fla. Stat. § 395.0193(3)(a) .......................................................................................... 34

Fla. Stat. § 458.301 ..................................................................................................... 34

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Defendants Mount Sinai Medical Center of Florida, Inc. ("MSMC" or the "Hospital") and Kfir Ben-David, M.D. ("Dr. Ben-David") (together "Defendants"), by and through their undersigned counsel, hereby submit this response in opposition to Plaintiff Paige Finkelstein, M.D.'s ("Plaintiff" or "Dr. Finkelstein") Verified Motion for "Emergency" Temporary Injunction (the "Motion"), dated September 30, 2022. In short, Plaintiff's Motion must be denied because it requests injunctive relief unmoored from any justiciable or legally cognizable claim. Further, as explained below, Defendants provided Plaintiff (a physician) every opportunity to succeed in her surgical residency at MSMC. But Plaintiff eschewed these opportunities, was terminated/resigned from the surgical residency program (the "Program") based on her persistent unprofessionalism and mistreatment of patients and peers, and now, almost two years later, seeks to blame everyone at MSMC but herself for her well-documented professional and personal failures. The Motion is meritless and is due to be denied.

## PRELIMINARY STATEMENT

Plaintiff comes to this Court seeking to enforce a grudge, and harm a well reputed graduate medical educational program and its faculty in her wake. Having been terminated from her position as a third-year surgical resident because of longstanding (and well documented) issues with her professionalism, Plaintiff now demands this Court intrude in the internal affairs of MSMC and the Program. Plaintiff specifically demands that MSMC – nearly two years after her departure from the residency program – immediately provide her with evaluative paperwork which she never requested as a resident and to which she has no legal entitlement. Remarkably, she also seeks an order silencing Dr. Ben-David (the Program Director), impairing his essential role of providing truthful and accurate information about surgical residents to other programs, employers, and medical credentialing bodies. And, Plaintiff requests this relief completely divorced from any cognizable cause of action or legal theory.

7

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

As explained in detail below, the Motion is without legal or factual merit for numerous, independently dispositive reasons. As shown in Point I, Plaintiff cannot demonstrate a likelihood of success on the merits, and in fact, each and every one of Plaintiff's substantive claims fails as a matter of law. First, Plaintiff cannot sustain a breach of contract claim because MSMC has no contractual obligation – express or implied – to provide Plaintiff with evaluative or completion paperwork for her residency under the terms of her Graduate Medical Education Program Agreement ("GME Agreement"), nor does her GME Agreement govern references requested from other academic programs or employers. This alone is <u>fatal</u> to her request for injunction – because the request cannot stand alone but must be tied to a cognizable claim.

As shown in Point II, Plaintiff cannot demonstrate irreparable harm in the absence of an injunction.  In fact, no harm is even alleged in the Motion. Even if Plaintiff were to allege any harm (which she does not), her departure from the program occurred 22 months ago, in January 2021, and the last complained-on incident occurred in July 2021. In fact, the record demonstrates that Plaintiff has voluntarily moved on to pursue graduate business (not medical) education, vitiating any claim of harm, much less harm that is irreparable. Even if she were to allege she wants to return to residency training, her request before the Court is too late. And finally, Plaintiff seeks no <u>permanent</u> injunctive relief in this case, casting further doubt upon any "status quo" in the first instance.

As shown in Point III, to the extent Plaintiff seeks to enjoin Dr. Ben-David from communicating truthfully with other educational programs, employers, or credentialing bodies, such an occurrence is far too speculative to support issuance of an injunction. In any event, if such communication did occur and somehow constituted an actionable tort (which of course, it would not), Plaintiff would have an adequate remedy at law for damages.

Lash&Goldberg LLP

LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Finally, as shown in Point IV, the public interest weighs against injunctive relief.  Florida public policy rightly dictates that trained medical professionals should be the ones to evaluate whether an individual is qualified to practice medicine. For obvious reasons, the public interest would not be served by judicial intrusion into such specialized decision-making and by wresting an important responsibility away from Dr. Ben-David in providing truthful information about Plaintiff's qualifications to inquiring parties.

For these reasons and others explained below, the Motion should be denied.

## **FACTUAL BACKGROUND**

A.  Overview of the Surgical Residency Program at MSMC

MSMC enjoys continued accreditation from the ACGME as a sponsoring institution for 13 residency and fellowship programs**.** Oversight of graduate medical education is vested in MSMC's Designated Institutional Official (the "DIO"), Dr. Robert C. Goldszer, in collaboration with the MSMC Graduate Medical Education Committee.

With respect to the Residency in Surgery (the "Program"), MSMC and the Program have been dedicated to the education and training of surgeons and clinical leaders for more than 50 years. Defendant Dr. Kfir Ben-David has been the Program Director since 2016 after joining the MSMC Department of Surgery in 2015 from the University of Florida. At the University of Florida, Dr. Ben-David was a tenured Associate Professor of Surgery who was the recipient of many teaching awards. One of Dr. Ben-David's most important functions as Program Director at MSMC is to ensure, with input from the Program's Clinical Competency Committee ("CCC"), that the Program graduates residents who are competent and qualified to practice medicine – specifically here, surgery.

MSMC and the Program also maintain a culture of professionalism that is supported through robust policies and assessment (including MSMC's Policies on a Harassment-Free Work

9

Lash&Goldberg LLP

LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813 384-4002 tel

Environment and Equal Employment Opportunity), individual conduct, training, and remediation and/or discipline when necessary. MSMC's expectations of professionalism are of critical importance with respect to its program directors, program leaders and faculty.

MSMC welcomes and encourages its residents to report patient safety concerns or any other concerns, including any issues of unprofessionalism or mistreatment. Retaliation for reporting issues or concerns is strictly prohibited by MSMC's policies.

B.  Plaintiff's Tenure in the Program

Plaintiff joined the Program in 2018 as a PGY-1 (i.e., a first-year resident or "intern"). As reflected in faculty evaluations, attached as Exhibit A[1], Plaintiff was recognized in her first year as highly intelligent and enthusiastic about operating and learning. However, she was lacking in communication skills, struggling with professionalism, and having difficulty with time management. Dr. Ben-David developed a support plan that envisioned Plaintiff meeting with him regularly to review interpersonal skills and professionalism matters. Plaintiff was also offered additional mentorship by two female faculty members; she participated in some mentorship sessions with one faculty member, however she generally declined to meet with the other. Plaintiff completed her intern year and was promoted to PGY-2 (i.e., her second year of residency) with some reservations and a requirement that she submit to weekly test taking to improve upon her test performance and medical knowledge.

As a PGY-2 resident, Plaintiff showed some progress in her procedural skills, but her conduct continued to be unprofessional. Specifically, she showed poor compassion, resulting in multiple patients complaining about her bedside manner, was disrespectful to residents and faculty, was dismissive toward staff, would inappropriately reprimand junior residents, and struggled to

---

[11]  Limited redactions have been applied to certain exhibits attached to this Response based on protected health information ("PHI") and to protect the public identification of individuals who lodged complaints concerning Plaintiff.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

work effectively as a member of a health care team. As one example of this, an intensivist with 16 years of experience complained that Plaintiff made fun of his accent on multiple occasions during rounds, mocking his pronunciation of certain words and being disrespectful in other ways, despite his asking Plaintiff to be respectful.

The Program's CCC conducted a mid-year review of Plaintiff in December 2019.  In a letter from the Chair of the CCC to Dr. Ben-David, the Chair conveyed that the CCC had "serious concern[s] about Dr. Finkelstein's progress in the ACGME milestones for surgical residency and her potential for appropriate advancement to the 3rd year."  The Chair also noted that Plaintiff's continued deficiencies "may not be remediable." This letter is attached as <u>Exhibit B</u>.

Notwithstanding these issues, Dr. Ben-David wanted to continue to work with Plaintiff and try to remediate her deficiencies so she could succeed in the Program. To this end, she was placed on a six-week academic probation, from December 26, 2019 through February 15, 2020, with a targeted plan aimed at remediating her professionalism, communication skills and medical knowledge, which is attached as <u>Exhibit C</u>. Among other elements, the remediation plan included continued mentorship[2], evaluations of interactions with residents, faculty, staff and patients, and a goal of Plaintiff improving her performance on the national surgery residency assessment examination.  Plaintiff acknowledged her remediation plan, which stated that if she was not successful with the plan, her GME Agreement would not be renewed for the 2020-2021 academic year.

Plaintiff's behavior and interactions improved while she was on probation. Faculty and Dr. Ben-David recognized Plaintiff's efforts to improve and, despite continued reservations, Dr. Ben-David determined to promote Plaintiff to PGY-3 (i.e., her third year, to commence June 2020)

---

[2] Again, Plaintiff declined meeting with one of her assigned faculty mentors.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

based on the hope that she would maintain her focus and effort and that, with Program support, become a skilled and professional surgeon. Dr. Ben-David and the Program were dedicated to rehabilitating Plaintiff. In particular, Dr. Ben-David and other faculty spent many hours regularly meeting with Plaintiff, counseling her, and providing her guidance and support aimed at overcoming these issues.

At the end of June 2020, a "code blue" was called within MSMC's psychiatric unit. Multiple physicians, including Plaintiff, as well as a senior surgical physician assistant, all responded to the code. Plaintiff had purported concerns as to the handling by, and preparation of, the nursing staff in responding to the code, and she entered an incident report in the MSMC event reporting system.

MSMC strongly encourages resident participation in adverse event and patient safety reporting. In this instance, however, information from nursing staff and from others responding to the code was contrary to Plaintiff's incident report on a number of points, and it was determined that Plaintiff was not aware of certain protocols applicable to the psychiatric unit.[3] But worse, investigation of the incident revealed that Plaintiff had engaged in inappropriate behavior during the code, including yelling at allied health professionals and staff and calling staff "incompetent." In June and July 2020, Dr. Ben-David received multiple complaints from other residents about Plaintiff. In and around this time, Dr. Ben-David received additional complaints about Plaintiff regarding her disrespect towards her patients and peers, and her refusal to wear a mask during the

---

[3] For instance, Plaintiff reported there was no IV pole readily available. Consistent with environment of care standards for psychiatric units and hospitals, rooms in the psychiatric unit are not equipped with IV poles as the poles can become weapons. Similarly, Plaintiff flagged in her incident report that the only supplies that were available was the crash cart. This is consistent with MSMC policy given that all patients are examined and medically cleared prior to being admitted to the psychiatric unit.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

height of the COVID-19 pandemic. Documentation supporting these incidents are attached together as <u>Exhibit D</u>.

Due to these complaints and the code blue incident, on July 2020, Plaintiff was placed on a second probation, from July 6, 2020 through August 14, 2020, with a new action/remediation plan (attached as <u>Exhibit E</u>) aimed at her demonstrating an ability to work collaboratively with physicians and all healthcare staff. During and subsequent to her second probation, Plaintiff performed below expectations across multiple competencies: medical knowledge, interpersonal and communication skills, and professionalism. Plaintiff was found to have a poor attitude, she continued to lack humility and patience, losing her temper inappropriately at times, and she continued to have unprofessional interactions with attending faculty.

C. <u>Non-renewal of the GME Agreement and Plaintiff's Termination/Resignation</u>

By letter dated October 26, 2020, Plaintiff received notice of the non-renewal of her GME Agreement for the 2021-2022 program year, based on her continued failure to satisfy MSMC's expectations of professionalism and communication skills. Thus, despite MSMC and the Program's misgivings about Plaintiff, and her persistent performance issues, MSMC and the Program determined to allow Plaintiff to complete her PGY-3 year.

Following her non-renewal, Plaintiff's behavior and actions with patients continued to be a serious concern. Several additional incidents of note: An anonymous hotline complaint was made by a staff member regarding Plaintiff's abusive interactions with staff and patients. Plaintiff also performed a procedure on a patient in the emergency department without notifying a senior resident or attending faculty. In such circumstances, a surgical resident <u>must</u> notify the attending faculty on call and discuss the proposed treatment, which would then be performed by a credentialed attending physician. Ultimately, following Plaintiff's performance of the procedure

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

(notably, without the patient's informed concert or under supervision), the patient required emergency surgery. The incident was alarming to Dr. Ben-David and the Program and evinced extremely poor judgment by Plaintiff. Documentation regarding this incident is attached as <u>Exhibit F</u>.

Plaintiff was involved in another incident where she placed a femoral intravenous line in a patient in the ICU. The patient presented serious complications following Plaintiff's intervention, continuing to hemorrhage and requiring close monitoring and care. However, Plaintiff did not discuss this complication with the patient's attending surgeon or with any senior residents. The attending physician learned of the complication the next morning during her rounds to see the patient.

Despite MSMC's and the Program's desire for Plaintiff to complete her PGY-3 year, in light of these incidents, Plaintiff could no longer remain a resident in the Program due to severe and emergent concerns directly implicating patient safety. A decision was therefore made to terminate Dr. Finkelstein.  Plaintiff was given the option to resign. Plaintiff's resignation letter was complimentary of the residency program. Copies of Plaintiff's termination paperwork and resignation letter are attached together as <u>Exhibit G</u>. At the time she was verbally informed of her termination, Plaintiff was informed of her appeal rights under the GME Agreement. Plaintiff expressed no desire to appeal the termination and as noted above, she accepted MSMC's offer to resign. *See* Declaration of Robert C. Goldszer, M.D., M.B.A., attached as <u>Exhibit H</u>.

D.  <u>Subsequent Events Pertaining to Her Request for Injunctive Relief</u>

At no time during her surgical residency did Plaintiff request copies of any of her evaluations (despite being told that she could obtain them), nor did she ever request certification/verification from the program of her completion of her first and second years.

14

Lash&Goldberg LLP

LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

However, after her resignation, Plaintiff requested her <u>entire residency file</u> from MSMC. Plaintiff then indicated that she would retain an attorney to handle further communications with MSMC. Under these circumstances, Plaintiff and MSMC, at arms-length and each represented by counsel, attempted to reach a resolution for a release in exchange for a neutral reference/recommendation from the Program. During these negotiations, MSMC insisted, as a matter of patient and community safety, that any written reference include mention of Plaintiff's two probationary periods in the Program. Despite this being an appropriate measure of protection for MSMC to take under these specific circumstances, this release was never finalized or signed as Plaintiff and her father, Mr. Finkelstein, and their counsel would not agree on what MSMC set forth as an accurate and truthful statement concerning Plaintiff's tenure and departure from the Program. A nondisclosure agreement was never proposed during these discussions. In fact, no resident, whether completing the Program or departing the Program prior to completion, has ever been asked to sign a nondisclosure agreement by the Dr. Ben-David or MSMC administration.

Shortly thereafter, Plaintiff's father (Plaintiff's purported business partner in a startup venture) <u>threatened to make public</u> purported issues with "patient care" raised by Plaintiff, as well as file complaints with the ACGME, Florida Department of Health, and other regulatory agencies, if certain specific demands were not met—namely, Dr. Ben-David's immediate resignation from MSMC. MSMC did not entertain these demands. The rest of this threatening and extortive letter to MSMC speaks for itself, and is attached as <u>Exhibit I</u>.[4]

---

[4] The letter further stated that Mr. Finkelstein wanted to speak with MSMC's CEO and General Counsel regarding alleged problems in the Program and at MSMC, including intimations of a hostile work environment and unprofessionalism on the part of Dr. Ben-David. The letter also mentioned that Plaintiff is the "Medical Director" and the co-founder of a company and app called ERinfoPro for Firstnet®, while also mentioning that there was going to be a significant amount of press, social media and other public events featuring Plaintiff, supported by ERinfo's in-house and outside public relations teams—thereby implying that Plaintiff would take her purported grievances with the MSMC and Program public.

15

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

In the fall of 2021, MSMC received a request for verification of Plaintiff's progress in her residency at MSMC from Mount Sinai Beth Israel in New York City ("Beth Israel"). Dr. Ben-David provided truthful information responding to the request, namely, the fact that Plaintiff had not completed the full surgical residency program at MSMC. This verification was provided on November 3, 2021, and is attached as <u>Exhibit J</u>. Since that time, MSMC has received no other verification requests from any educational institution or credentialing body regarding Plaintiff. Around this time, word also spread at MSMC that Plaintiff had accepted enrollment in an MBA program at Columbia University.

In June 2022, Plaintiff filed a complaint with the Accreditation Council for Graduate Medical Education ("ACGME") against MSMC, mounting similar allegations raised in this lawsuit (as detailed below). The ACGME complaint when sent to MSMC months later triggered a review of the Program by an ad hoc committee of the Graduate Medical Education Committee – a "Special Review" pursuant to ACGME requirements. During this process, and as an accommodation, MSMC provided Plaintiff a packet including a verification letter confirming her completion of two and one-half years of residency in the Program, as well as a collection of all of her substantive evaluations made available to her while a resident. A copy of the letter enclosing Plaintiff's evaluations and verification of competition of a portion of her residency are attached together as <u>Exhibit K</u>.

One month later, in July 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging gender and disability discrimination, and again, raising many of the same factual allegations raised in this lawsuit. The EEOC dismissed the charge on October 27, 2022 as time barred. The EEOC's Dismissal and Notice of Rights is attached here as <u>Exhibit L</u>.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

Indeed, just recently, on December 14, 2022, Plaintiff and her counsel again attempted to extort Defendants by threatening to bring additional "sensitive information" to the attention of the ACGME (and other third parties) as well as file an amended complaint in this action. Defendants placed Plaintiff and her counsel, Richard H. Levenstein, Esq., on notice that they reserve all rights concerning that conduct and communication(s).

Finally, it recently came to the Program's attention that sometime in May 2022, Plaintiff was interviewed for an article by the publication *Poets & Quants* about her experience as a physician at MSMC during the initial outbreak of the COVID-19 pandemic. The article is entitled "Meet the Surgeon & Entrepreneur Who Became a Last-Minute Columbia MBA Student," and a copy of the article is attached as <u>Exhibit M</u>. The article quotes Plaintiff as follows:

> It was my job to walk around on wards, and I would carry a chest tube and a scalpel in my pocket because so many patients were put on vents . . . And when you're on a vent, and your lungs are very sick, they lose their compliance, and you can develop something called a pneumothorax (collapsed lung). So it was my job to literally run from bed to bed, to put chest tubes in these patients. And sorry, the unfortunate situation is that nobody really survived.

This scenario as described by Plaintiff—like most of her allegations in this lawsuit—is completely false. It never happened. To the contrary, MSMC and the Program did not allow surgical residents to walk around the COVID wards and circulate from bed to bed to place chest tubes into COVID patients. Those patients were seen only by attending physicians. At the beginning of the pandemic, surgical residents were not permitted to see COVID-positive patients to protect the residents' safety. Even when residents were later included in the evaluation and care of COVID-positive patients, they did not do chest-related procedures. Plaintiff fabricated this

17

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

information to seemingly whitewash the resoundingly negative appraisal of her performance while a resident at MSMC.[5]

## <u>PERTINENT ALLEGATIONS IN MOTION AND COMPLAINT</u>

The allegations in Plaintiff's "verified" Motion and Complaint present a version of reality through the <u>looking glass</u>,[6] where Plaintiff was an exceptional medical resident, a champion for patient safety and care, and her termination from the Program was the result of a retaliatory campaign in which she was singled out.

According to her Motion and Complaint, Plaintiff began her surgical residency with MSMC in June 2018. Mot. ¶ 13. On March 11, 2020, Plaintiff entered a written agreement with MSMC for her third year of residency, which would run from June 2020 until June 2021 (hereinafter the "GME Agreement"). *See* Compl. ¶ 28, & Ex. A. Dr. Ben-David signed the GME Agreement on behalf of MSMC, but is not a party to the agreement. *Id.* Ex. A.

In January 2021, Defendants "forced" Plaintiff's resignation from the residency program. *Id*. ¶ 18. She alleges that all disciplinary actions taken against her during her residency, leading to her "forced" resignation, were designed to "harass" and "retaliate" against her. Mot. & Compl. ¶¶ 8, 10.

Following her resignation, Plaintiff alleges that Defendants attempted to "extort" and "blackmail" her by withholding her "Summative Evaluation" and "Certification of Completion" (the latter evidencing her completion of two years in the program) unless Plaintiff signed a release and nondisclosure agreement. *Id*. ¶¶ 12, 19.

---

[5] In their attached declarations, Dr. Kfir Ben-David and Dr. Robert C. Goldszer each attest that all of the facts recited above, with which they were involved and/or have personal knowledge, are true, and all the documents attached to Defendants' Response are true and accurate copies thereof. *See* <u>Exhibit N</u> and <u>Exhibit O</u>, respectively.

[6] LEWIS CARROLL, THROUGH THE LOOKING-GLASS, AND WHAT ALICE FOUND THERE (1871). In this sequel, Alice again enters a fantastical world by climbing through a mirror. Upon entry she finds that, just like a reflection everything is reversed, including logic.



LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2215 • 813-284-4002 tel

In July 2021, Plaintiff received an "offer" for a house surgeon position at Mount Sinai Beth Israel in New York City ("Beth Israel"). Mot. & Compl. ¶ 22. She alleges her application for clinical privileges at Beth Israel was denied because Dr. Ben-David did "not provide a reference or provided negative comments about her." *Id.* She alleges that Defendants actions have "effectively ended [her] career as a physician." *Id.* ¶ 23.

Plaintiff purports to plead three substantive claims in her Complaint:

Count I - Wrongful Termination and Breach of Contract. Plaintiff alleges Defendants breached the GME Agreement by failing to provide a "harassment free work environment" for Plaintiff, and by purportedly withholding from her the Summative Evaluation and Certification of Completion, in violation of MSMC's "obligations" pursuant to the ACGME. Compl. ¶¶ 30-32.

Count II - Extortion. Plaintiff alleges that Defendants "extort[ed] and blackmail[ed]" her by withholding the Summative Evaluation and Certification of Completion unless Plaintiff sign a release and nondisclosure agreement. Compl. ¶ 37.

Count III – Intentional Infliction of Emotional Distress. Plaintiff alleges that Defendants' withholding of the Summative Evaluation and Certification of Completion was "shocking, atrocious, and utterly intolerable in a civilized community" and thereby caused her emotional distress. Compl. ¶¶ 43-44.

## **ARGUMENT**

### I.     **Preliminary Injunction Standard**

Florida Rule of Civil Procedure 1.610(a)(1)(A) provides that a temporary injunction may be granted only if "it appears from the specific facts . . . that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  The purpose of a temporary injunction "is to preserve the status quo while final injunctive relief is sought." *Planned Parenthood of Greater Orlando, Inc. v. MMB Props.*, 211 So. 3d 918, 924 (Fla.

19

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

2017). Florida courts have held that a typical temporary injunction should be granted "sparingly" and only after the moving party has alleged and proved facts entitling it to relief. *Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So. 3d 1086, 1089–90 (Fla. 3d DCA 2014) (quotation marks and citation omitted). The purpose of a temporary injunction "is *not* to resolve disputes[.]" *See Michele Pommier Models, Inc. v. Diel*, 886 So. 2d 993, 995–96 (Fla. 3d DCA 2004) (emphasis added). Rather, the "primary purpose" of a temporary injunction is to "preserve the status quo while the merits of the underlying dispute are litigated." *Gawker Media, LLC v. Bollea*, 129 So. 3d 1196, 1199 (Fla. 2d DCA 2014) (quoting *Manatee Cnty. v. 1187 Upper James of Fla., LLC*, 104 So. 3d 1118, 1121 (Fla. 2d DCA 2012)). To establish the right to a temporary injunction that <u>does not</u> change the status quo, the moving party must show: (1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) the substantial likelihood of success on the merits; (4) the threatened injury to the petitioner outweighs the possible harm to the respondent; and (5) the granting of the temporary injunction will not disserve the public interest. *See Chevaldina v. R.K./FL Mgmt., Inc.*, 133 So. 3d 1086, 1089–90 (Fla. 3d DCA 2014).

An injunction that <u>would change or alter the status quo</u> is known as a "mandatory" injunction. *See Pinkston v. Univ. of S. Fla. Bd. of Trustees*, No. 8:15-CV-1724-T-33-TBM, 2016 WL 11469181, at *2 (M.D. Fla. May 18, 2016). A mandatory injunction is subject to a heightened standard and "should be issued in only the rarest of circumstances where the rights are clear and certain." *Blue Earth Sols. v. Fla. Consol. Properties, LLC*, 113 So. 3d 991, 992–93 (Fla. 5th DCA 2013). These types of injunctions are "rare and extraordinary." *See Amelio v. Marilyn Pines Unit II Condo. Ass'n, Inc.*, 173 So. 3d 1037, 1042 (Fla. 2d DCA 2015) (quoting *Johnson v. Killian*, 157 Fla. 754, 27 So. 2d 345, 347 (1946)).

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

In addition to the above requirements, the law is well settled that "a mandatory injunction may not be granted prior to a final hearing on the merits, except in those rare cases where the right to it is clear and free from reasonable doubt." *Delta Gen. Corp. v. Priess*, 389 So. 2d 1083, 1083 (Fla. 3d DCA 1980) (citing, inter alia, *Montgomery Pipe & Tube Co. of Florida v. Mann*, 205 So. 2d 660 (Fla. 3d DCA 1968)) (emphasis added); *accord Ctr. State Transportation, Inc. v. Motor Trend Orlando Serv., LLC*, 312 So. 3d 225, 226 (Fla. 5th DCA 2021).

**II.      Plaintiff Cannot Show Her Right to An Injunction is Clear and Free from Doubt**

Plaintiff seeks an injunction in three parts: (i) mandating that MSMC provide her with a Summative Evaluation; (ii) mandating that MSMC provide her with a Certificate of Completion evidencing completion of two years of residency; and (iii) enjoining Dr. Ben-David from communicating to third parties about her "performance" in the residency program. Mot. ¶ 52.

As an initial matter, the first two requests for injunctive relief that Plaintiff seeks is mandatory—she is asking the Court to <u>compel</u> that MSMC provide her documents. That is, Plaintiff seeks to <u>alter</u> the status quo pending a final determination, on the merits, of whether MSMC is legally obligated to provide her these same documents. For the reasons explained below, Plaintiff cannot demonstrate a clear right to the relief requested because her GME Agreement imposes no obligation on Defendants to provide her a Summative Evaluation and Certificate of Completion, and to the extent the ACGME imposes such a requirement, those standards are not incorporated into her GME Agreement and provide no independent private right of action. *Cf. Amelio v. Marilyn Pines Unit II Condo. Ass'n, Inc.*, 173 So. 3d 1037, 1040 (Fla. 2d DCA 2015) (plaintiff established clear right to mandatory injunctive relief based on duties and obligations set forth in condominium's governing documents).

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2215 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

### III.    Plaintiff Has Not Demonstrated a Substantial Likelihood of Success on the <u>Merits of Her Claims</u>

A plaintiff seeking injunctive relief must demonstrate a "substantial likelihood of success on the merits." *Florida Dep't of Health v. Florigrown, LLC*, 317 So. 3d 1101, 1110 (Fla. 2021). A substantial likelihood of success is more than a mere good faith, viable claim. *J.B.J. Inv. of S. Fla., Inc. v. Maslanka*, 163 So. 3d 726, 728 (Fla. 5th DCA 2015). Crucially, and as an initial matter, <u>injunctive relief is simply a remedy, not a standalone cause of action</u>. Thus, the absence of any cognizable substantive claim (to which a request for injunctive relief would be anchored) means that a plaintiff cannot demonstrate a likelihood of success on the merits. *See Waterman Broad. Corp. v. Saro, Inc.*, 555 So. 2d 1273 (Fla. 2d DCA 1989) (plaintiff required to plead substantive cause of action to seek injunctive relief); *Skyway Trap & Skeet Club, Inc v. Southwest Fla. Water Management Dist.*, 854 So. 2d 676, 681 (Fla. 2d DCA 2003) (trial court lacked authority to grant temporary injunctive where the complaint did not include a substantive cause of action providing permanent relief). As explained below, Plaintiff is unlikely to (indeed cannot) prevail on the merits of her  three (3) substantive claims because each claim fails as a matter of law.

A.  <u>Count I – Breach of Contract and "Wrongful Termination"</u>

1.  *Plaintiff Fails to Allege a Cognizable Breach of the GME Agreement*

In support of Count I, Plaintiff suggests that her rights to Summative Evaluation and Certificate of Completion spring from her March 11, 2020 GME Agreement, alleging as follows:

> As a result of the actions of the Defendants … [Plaintiff] has been unable to secure a position in another Residency Program, has been unable to secure any employment in the medical profession as a physician, and continues be unable to do so, as a result of the continuing failure and refusal of the Defendants to provide her with documents which they are required to provide evidencing her completion of two and one-half (2.5) years of her Residency, ….

*See* Compl. ¶ 32 & Ex. A. But Plaintiff does not point to any provision of the GME Agreement containing these terms, and in fact, concedes the point by recognizing that these purported

22

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

obligations are imposed upon the Hospital by the ACGME. Compl. ¶¶ 12, 19. Plaintiff also fails

to point to any provision or part of her GME Agreement that would transform an administrative

complaint to the ACGME (explained above) into a contractual dispute that is justiciable in this

Court. Indeed, nothing in the GME Agreement— express or implied—obligates MSMC to provide

Plaintiff with a Summative Evaluation or Certificate of Completion. And further, nothing in the

GME Agreement references or incorporates ACGME guidelines or standards.

The interpretation of a contract is a matter of law, and when clear and unambiguous, "its

meaning is to be ascertained in accordance with its plainly expressed intent." *Super Cars of Miami,*

*LLC v. Webster*, 300 So. 3d 752, 754–55 (Fla. 3d DCA 2020)*.* To that end, when an agreement's

terms are clear, the court may not "rewrite, alter, or add to the terms of a written agreement … and

may not substitute their judgment for that of the parties …." *Webster*, 300 So. 3d at 755 (citing

*Int'l Expositions, Inc. v. City of Miami Beach*, 274 So. 2d 29, 30-31 (Fla. 3d DCA 1973)).

To sustain her breach of contract claim, the Court would have to rewrite the GME

Agreement to include these obligations. The Court cannot do so. Indeed, the GME Agreement

provides no such terms and imposes no such obligations on Defendants, and clearly states that it

"contains the entire understanding between the parties and no alteration or modification hereof

shall be effected except by a subsequent written instrument executed by both parties hereto."

Compl. Ex. A, § 18. Even if Plaintiff were to the persuade this Court to somehow read the ACGME

guidelines into her GME Agreement (which courts are not permitted), courts in other jurisdictions

have only entertained claims where ACGME policies were <u>expressly</u> (that is, not implicitly)

incorporated into a residency contract. *Cf. Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690,

46 N.E.3d 24, 40 (2016) (incorporating ACGME's nondiscrimination policy by clear reference

thereto).

Lash&GoldbergLLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

On this basis alone, the claim fails and thus no temporary injunction may issue.

2.   *The ACGME Guidelines Provide No Private Right of Action*

Plaintiff's reference and reliance upon the ACGME guidelines fares no better. Plaintiff alleges that the evaluative and completion paperwork "were documents which the ACGME requires a Residency Program to provide to any Resident upon request." Compl. ¶ 19. Whether or not that is so, there is no private right of action for an individual resident to enforce the ACGME guidelines.

One court explained how issues arising under ACGME standards simply do not present a justiciable controversy between private parties:

> [S]tandards that ACGME has established for all of its accredited institutions ... are akin to regulations established by an administrative body, <u>rather than a contract governing a relationship between two entities</u>. If [the sponsoring institution] fails to substantially comply with ACGME's requirements, ACGME can revoke its accreditation; that would not be a "breach" of any "contract" by [the sponsoring institution], but rather a decision by ACGME, as a regulatory institution, that [the residency program] is no longer entitled to accreditation.

*Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*, 3:14-CV-3577-CMC, 2016 WL 3079466, at *49 (D.S.C. June 1, 2016), *aff'd sub nom. Irani v. Palmetto Health*, 767 Fed. Appx. 399 (4th Cir. 2019) (alterations in original) (emphasis added).

Accordingly, Defendants' purported failures to comply with ACGME standards and guidelines for accreditation <u>present no justiciable controversy</u>, which is a further basis for denying injunctive relief.

3.   *Defendant Dr. Ben-David Was Not a Party to the GME Agreement*

In addition to the foregoing reasons why Plaintiff's "breach of contract" claim must fail, Defendant Dr. Ben-David was not a party or signatory to the GME Agreement in his personal capacity. Thus, no breach of contract claim against him may survive and thus no injunction issue.

24

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

*See, e.g.*, *Noventa Ocho LLC v. PBD Properties LLC*, 284 Fed. Appx. 726, 728 (11th Cir. 2008)

(denying to enter injunctive relief against individual not party to underlying agreement).

4. *Plaintiff's Claim Is Preempted by State and Federal Discrimination Laws, and Her Allegations of Discrimination Are Time Barred*

Plaintiff alleges that Defendants were required to "provide a harassment free work environment for [Plaintiff] to perform her duties as [a] Resident Physician, pursuant to Paragraph 6 of the [GME Agreement]." Compl. ¶ 30. Section 6 of the GME Agreement states, in pertinent part:

> Mount Sinai Medical Center is committed to Equal Employment Opportunity (EEO). Discrimination on the basis of a person's race, religion, national origin, age, disability, veteran status, marital status, sex, or sexual orientation, or any other basis protected by federal, state or local law, including verbal or physical harassment on the basis of any of the above characteristics, is prohibited and will not be tolerated. Such prohibited harassment consists of unwelcome sexual advances or comments; ethnic jokes; ethnic, racial, religious or age-related slurs; and similar conduct.

Compl. Ex. A, § 6.

In other words, Plaintiff is seeking to enforce the Hospital's EEO policy. The law is very clear that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (and its state law equivalent) provides the exclusive remedy for unlawful discrimination or harassment in the workplace. *See Carver v. Casey*, 669 F. Supp. 412, 417 (S.D. Fla. 1987). Further and relatedly, an EEO policy contained within a contract does not give rise to an independent contractual obligation. *See Pineda v. PRC, LLC*, 1:11-CV-20894-JLK, 2011 WL 3022564, at *4 (S.D. Fla. July 22, 2011) ("Courts have held that an anti-harassment policy that merely restates the law does not create an implied contract … [nor] create a separate and independent contractual obligation" and collecting cases).

Tellingly, Plaintiff does not plead a discrimination or harassment claim in this action because those allegations would be time barred, as the last complained-of action by Defendants

25

Lash&Goldberg LLP

LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

occurred in July 2021. *See* 42 U.S.C. § 2000e-5 (setting forth 300-day statute of limitations to bring charges before the EEOC). In fact, Plaintiff filed a charge of discrimination with the EEOC on July 22, 2022 (i.e., outside of the 300-day statute of limitations), which the EEOC correctly dismissed as untimely. A true and correct copy of the EEOC's October 27, 2022, Dismissal and Notice of Rights is attached as Exhibit L.

Having forfeited her remedy under Title VII and comparable state law, Plaintiff cannot now attempt to disguise the same allegations as a breach of contract: "The fact that plaintiff is precluded from asserting his Title VII claims … does not permit the court to substitute breach of contract claims for that exclusive remedy." *Casey*, 669 F. Supp. at 417 (internal citations omitted). Accordingly, no breach of contract claim lies based on a purported breach of MSMC's EEO policy and Plaintiff's request for injunction must fail.

5. *Plaintiff Cannot Challenge Her "Wrongful Termination" under the GME Agreement Absent Exhaustion of Her Contractual Remedies*

While Count I of Plaintiff's Complaint is denominated as a "Wrongful Termination," nowhere in the Complaint does Plaintiff actually allege that her termination was "wrongful" or allege any other facts to support the claim. But even if such facts had been alleged, this Court is underline without jurisdiction to entertain such a claim. Well-settled and binding authority in Florida requires physicians challenging adverse actions to exhaust their administrative remedies prior to seeking relief in court. *Desai v. Lawnwood Med. Ctr., Inc.*, 219 So. 3d 869, 871-72 (Fla. 4th DCA 2017), *aff'd*, 260 So. 3d 218, 219 (Fla. 2018); *Keller v. Lawnwood Med. Ctr., Inc.*, 219 So. 3d 879 (Fla. 4th DCA 2017); *City of Miami v. Fraternal Order of Police Lodge No. 20 of City of Miami*, 378 So. 2d 20, 23 (Fla. 3d DCA 1979). Courts in multiple jurisdictions with similar law have applied the exhaustion requirement to actions brought by medical residents. *See, e.g., Nemazee v. Mt. Sinai Med. Ctr.*, 564 N.E.2d 477, 482 (Ohio 1990) ("[W]e hold that a [resident] physician in a

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

private hospital whose employment and/or hospital privileges have been terminated must exhaust all internal administrative remedies provided by a hospital's charter, bylaws, rules, regulations and employment contract prior to seeking judicial review."); *Knapik v. Mary Hitchock Mem'l Hosp.*, 2014 WL 12717446 (D. Vt. May 30, 2014) (finding that New Hampshire law requires medical residents to exhaust contractual administrative remedies).[7]

Here, Plaintiff had the right to appeal her termination through an administrative process. That right is detailed in the GME Agreement, Section 12(4), which states that residents subject to disciplinary action (including termination from the program) "may petition the Chief Executive Officer of [MSMC] for an appeal hearing before a Disciplinary Hearing Committee within ten working days of receiving written notice of the action." Compl. Ex. A. Under this process, the Disciplinary Hearing Committee may reverse a termination decision following its hearing of witnesses and evidence. Compl. Ex. A, § 12(4).

But Plaintiff has not alleged that she petitioned MSMC for an appeal of its decision to terminate her, and in point of fact, Plaintiff was informed of these administrative remedies but never made any request.[8] Plaintiff's failure to exhaust her administrative remedies renders this claim (and lawsuit) subject to dismissal. Absent any basis for jurisdiction, no claim for injunctive relief lies.

---

[7] Plaintiff's failure to exhaust her administrative remedies presents a jurisdictional defect. *See Dist. Bd. of Trs. of Broward Cmty. Coll. v. Caldwell*, 959 So. 2d 767, 770 (Fla. 4th DCA 2007) ("[F]ailure to exhaust administrative remedies goes to the subject matter jurisdiction of the court to hear a matter.").

[8] Defendants attach the Declaration of Robert C. Goldszer M.D., the Designated Institutional Official for MSMC's residency programs, who attests that no petition from Plaintiff was ever received by MSMC to appeal her termination. *See* Ex. H. Affidavits, declarations, and other materials extrinsic to the pleadings may be considered by the Court to determine whether subject matter jurisdiction exists. *See Fong v. Forman*, 105 So. 3d 650, 652 (Fla. 4th DCA 2013) (quoting *Morgan v. Dep't of Envtl. Prot.,* 98 So. 3d 651, 653 (Fla. 3d DCA 2012)) ("A trial court may look to facts gathered outside the pleadings, including affidavits, to determine subject matter jurisdiction.").



LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

B.  Count II – Extortion

Count II is frivolous, inflammatory, and asserted in bad faith. Plaintiff alleges that Defendants have "unlawfully" extorted and blackmailed her by withholding the Summative Evaluation and Certificate of Completion, and she has suffered damages as a result. Compl. ¶¶ 37-39. But Florida law recognizes no civil cause of action for extortion. *See Bass v. Morgan, Lewis & Bockius*, 516 So.2d 1011 (Fla. 3d DCA 1987) ("[W]e hold that no violation of the [criminal extortion] statute gives rise to a civil cause of action."); *see also Am. Nat. Title & Escrow of Florida, Inc. v. Guarantee Title & Tr. Co.*, 748 So. 2d 1054, 1056 (Fla. 4th DCA 1999) ("There is, however, no common law action for damages based upon extortionate conduct."); *Hush Little Baby, LLC v. Chapman*, 8:13-CV-2027-T-17AEP, 2015 WL 9165909, at *9 (M.D. Fla. Dec. 16, 2015) (same, citing *Bass*, *supra*).

Absent any cognizable basis for recovery for common law "extortion," Plaintiff cannot prevail on the merits of the claim to sustain an injunction.

C.  Count III – Intentional Infliction of Emotional Distress

In Count III of the Complaint, Plaintiff alleges that Defendants' withholding of the Summative Evaluation and Certificate of Completion (which is alleged as a breach of contract discussed above) was "shocking, atrocious, and utterly intolerable in civil society." Compl. ¶ 43. Yet, Plaintiff alleges no independent tortious conduct on Defendants' part to support Count III. Black letter law mandates the dismissal of this count at the pleading stage.

The tort of intentional infliction of emotional distress is comprised of four elements: "(1) [T]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Clemente v. Horne*, 707 So. 2d 865, 866 (Fla. 3d DCA 1998) (alterations in original). It is well-established that the question of "outrageousness" must be determined by the trial court, as a matter of law, and may warrant dismissal of the claim based on the pleadings. *LeGrande v. Emmanuel*, 889 So. 2d 991, 995 (Fla. 3d DCA 2004).

This exceedingly high standard was explained in *Deauville Hotel Mgmt., LLC v. Ward*, where the plaintiff alleged that the defendant's breach of a wedding venue agreement was "outrageous." 219 So. 3d 949, 956 (Fla. 3d DCA 2017). The Third District Court of Appeal found that while the conduct at issue may have been  "wrong" and "tortious," it did not rise to the level of "outrageous," drawing a helpful comparison with a pair of Florida cases, and *Thomas v. Hosp. Bd. of Dirs. of Lee Cnty.*, 41 So.3d 246 (Fla. 2d DCA 2010):

> Causing these bad memories (as the hotel did here), however, is many degrees removed from causing or covering up the negligent death of another on the outrageousness scale. Purposefully <u>causing death by withhold insurance benefits</u> or <u>covering up the negligent death</u> of a family member is atrocious, utterly intolerable, and outside the bounds of decency in a way that causing nightmares, disappointment, and embarrassment because of a ruined wedding is not.

*Id.* at 956 (emphasis added).

The situation alleged in the Complaint—that Defendants intentionally withheld evaluative documents from Plaintiff—is a far cry from "matters of life-and-death" illustrated in the *Ward* case. *Id.* at 955. Accordingly, this Court must find, as a matter of law, that these actions, even assuming their truth, do not rise to the level of "outrageous" to sustain the tort. The Court also need not consider Plaintiff's "subjective response" to Defendants' alleged conduct in determining whether the tort has been sufficiently pled. *Id.* at 955.

Finally, Plaintiff may not recover emotional distress damages where the gravamen of the litigation sounds in breach of contract—here, Defendants' alleged breach of the GME Agreement.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

*See Floyd v. Video Barn, Inc.*, 538 So. 2d 1322, 1325 (Fla. 1st DCA 1989), *cause dismissed*, 542 So. 2d 1335 (Fla. 1989) ("[W]here the gravamen of the proceeding is breach of contract, even if such breach be willful and flagrant, there can be no recovery for mental pain and anguish resulting from such breach.").

Accordingly, Plaintiff's claim for injunctive relief must fail absent any viable substantive claim.

## IV.    Plaintiff Fails to Demonstrate a Likelihood of Irreparable Harm Absent Issuance of a Temporary Injunction

The Motion should be denied because Plaintiff has not demonstrated irreparable harm in the absence of an injunction. "Irreparable harm is not established if the harm can be adequately compensated by a monetary award." *Bautista REO U.S., LLC v. ARR Investments, Inc.*, 229 So. 3d 362, 365 (Fla. 4th DCA 2017). Plaintiff fails to demonstrate irreparable harm for the following four (4) reasons.

*First*, Plaintiff fails to allege in her Motion what "harm" (much less whether the harm is irreparable) she will suffer absent issuance of an injunction, a deficiency which is alone fatal: "General allegations of irreparable harm are insufficient to state a claim for the issuance of a temporary injunction …." *Hialeah, Inc. v. B & G Horse Transp., Inc.*, 368 So. 2d 930, 933 (Fla. 3d DCA 1979); *see also Holiday Pines Prop. Owners Ass'n, Inc. v. Wetherington*, 557 So. 2d 243, 245 (Fla. 4th DCA 1990) (same). While Plaintiff alleges that Defendants' actions have harmed her "career" and "training," she fails to allege what additional irreparable harm would befall her absent entry of an injunction.

*Second*, Plaintiff delayed too long in seeking a temporary injunction. The law is well-established that a party who seriously delays in seeking an injunction is precluded from obtaining the relief. *See Mercer v. Keynton*, 127 So. 859, 861 (Fla. 1930); *Mora v. Karr*, 697 So. 2d 887

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

(Fla. 4th DCA 1997).[9] Here, Plaintiff alleges that her resignation from the residency program occurred in January 2021 (Mot. ¶ 18), and that in July 2021, Dr. Ben-David did not provide her a reference in connection with an "offer" she received from Beth Israel (*id.* ¶ 22). Thus, the last complained-of incident in the Complaint allegedly occurred in July 2021, well over a year before Plaintiff approached this Court to purportedly alter the status quo by mandating Defendants provide her documentation she never requested during her residency training. Nor does Plaintiff point to any recent event that would justify this Court's equitable intervention. Also telling, Plaintiff filed a complaint with the ACGME in June 2022 containing identical factual allegations and relief, but again, did not commence this lawsuit until late September 2022, over two months later. And most recently, the EEOC dismissed Plaintiff's July 22, 2022 charge as untimely, finding that the operative allegations fell outside the statutory 300-day statute of limitations. *See* Ex. L. Stated simply, Plaintiff's pervasive and unexplained delay in coming to Court completely vitiates any claim of irreparable harm.

*Third*, Plaintiff does not request a <u>permanent injunction</u> in her Complaint. In other words, Plaintiff apparently has no desire to permanently enjoin or mandate any activity allegedly consistent with a legal right. This fact underscores that there is no actual status quo to maintain,

---

[9] Federal courts, in Florida and elsewhere, have uniformly held that a delay in seeking an injunction undermines the plaintiff's showing of irreparable harm. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm. A preliminary injunction requires showing 'imminent' irreparable harm."). *See also Wireless Agents, LLC v. T-Mobile USA, Inc.*, Civ. No. 3:05-cv-0094, 2006 U.S. Dist. LEXIS 36590, 2006 WL 1540687, at *13 (N.D. Tex. June 6, 2006) (citing *High Tech Med. Instrumentation v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995)); *Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 438 (S.D. Tex. 2008) (denying injunctive relief after an alleged breach of a non-compete where movant unreasonably delayed to file suit, then requested multiple continuances to the injunction hearing); *Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc.*, No. 16-CV-5079 (JGK), 2016 U.S. Dist. LEXIS 107358, 2016 WL 4367990, at *3 (S.D.N.Y. Aug. 12, 2016); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996). One federal court in Florida found that a delay indicates that a suit or request for injunctive relief is more about gaining an advantage (either a commercial or litigation advantage) than protecting a party from irreparable harm. *Pippin et al. v. Playboy Entm't Group, Inc. et al.*, 2003 U.S. Dist. LEXIS 25415, *6 (M.D. Fla. 2003).

Lash&Goldberg LLP

LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-384-4042 tel

but rather only alter, and that Plaintiff's claim for temporary injunctive relief is divorced from any viable legal right, claim or theory, but is advanced post hoc and without justification.

Between Plaintiff's year-plus long delay in bringing this lawsuit and Motion; that Plaintiff seeks no <u>permanent</u> injunctive relief despite seeking a "temporary" and "emergency" injunction purportedly needed to maintain the status quo; and that there are no facts alleged remotely suggesting that Plaintiff has or will suffered any harm, much less "irreparable harm," this Court must deny the Motion.

**V.      Plaintiff Has Failed to Demonstrate She Has No Adequate Remedy at Law**

All relief sought by Plaintiff in her Complaint is compensable at law. Loss of employment (such as Plaintiff's residency here), without more, is compensable through reinstatement, back pay, and damages. *Broward Cty. v. Meiklejohn*, 936 So. 2d 742, 745-46 (Fla. 4th DCA 2006); *Dep't of Corrs. v. Croce*, 520 So. 2d 695, 695 (Fla. 4th DCA 1988). Moreover, loss of an educational or professional opportunity is not irreparable where the plaintiff could obtain a comparable opportunity. *See St. Brendan High Sch., Inc. v. Neff*, 275 So. 3d 220, 222-23 (Fla. 3d DCA 2019) (quashing order compelling high school to readmit expelled student because "[t]he inconvenience of [student] having to change schools during her high school years does not rise to the level of irreparable harm to support a temporary injunction.").

Specifically, the relief Plaintiff seeks against Dr. Ben-David—enjoining him from communicating freely and honestly with other programs about Plaintiff's performance deficiencies—is speculative at best, given that no verification requests have been received by Defendants since 2021. The law is clear that injunctive relief is not available "when the right to the injunction is premised on a <u>speculative, future event</u>." *Lutsky v. Schoenwetter*, 172 So. 3d 534 (Fla. 3d DCA 2015) (emphasis added) (citations omitted). In other words, any right to recover by

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Plaintiff is contingent upon a future event, namely, Dr. Ben-David's hypothetical communications with third parties. If such event were to occur, it would give Plaintiff the option to sue for damages. *Biscayne Park, LLC v. Wal-Mart Stores E., LP*, 34 So. 3d 24, 27 (Fla. 3d DCA 2010) ("[I]n the event that such an alleged event were to occur, Wal–Mart would have an adequate remedy at law, i.e., a claim for money damage.").

## VI.    Granting Injunctive Relief Would Not Serve the Public Interest

Plaintiff has not demonstrated that the public interest would be served by injunctive relief. In fact, Plaintiff does not address the public ramifications of her request, merely what she perceives as the negative impact on her: "Defendants' [sic] have effectively ended [Plaintiff's] career as a physician, due to the damage to her reputation, and her inability to complete her training, and has suspended in career limbo, with little or no prospects for employment." Mot. ¶ 24. But not only has Plaintiff failed to demonstrate or even allege a public interest that would be served by injunctive relief, the critical reality is that, in the present context, such relief is decidedly against the public interest.

Florida law recognizes that the public interest is served by rules ensuring that physicians are competent to practice, and that other physicians are best positioned to make competency determinations and recommendations regarding their peers' qualifications. For instance, Chapter 458 of the Florida Statutes establishes licensure requirements and procedures for physicians, such as Plaintiff. The opening section of the chapter states:

> The Legislature recognizes that the practice of medicine is potentially dangerous to the public if conducted by unsafe and incompetent practitioners. The Legislature finds further that it is difficult for the public to make an informed choice when selecting a physician and that the consequences of a wrong decision could seriously harm the public health and safety. The primary legislative purpose in enacting this chapter is to ensure that every physician practicing in this state meets minimum requirements for safe practice. It is the legislative intent that physicians who fall below minimum competency or who

Lash&Goldberg LLP

LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-254-4902 tel

otherwise present a danger to the public shall be prohibited from practicing in
this state.

Fla. Stat. § 458.301.

Similarly, Florida Statute § 395.0193 mandates that each hospital in the State establish an

internal peer review process to, *inter alia*, discipline members of the hospital's medical staff who

display incompetence. Fla. Stat. § 395.0193(3)(a). Because medicine is highly specialized and

involves substantial risks to the public if practiced improperly, the law recognizes that physicians

should be the ones to evaluate the professional competence and qualifications of other physicians.

*See Hackett v. Metro. Gen. Hosp.*, 465 So. 2d 1246, 1251-52 (Fla. 2d DCA 1985) (recognizing

that "physicians themselves are best able to evaluate the competence and skill of another physician

and to take appropriate action in the public interest.").

One of Dr. Ben-David's most essential functions as Program Director is to ensure that the

Program graduates competent medical residents and to provide information to credentialing bodies

or other institutions about the qualifications of the program's residents when they request it. *See*

*supra* p. 4.  Plaintiff now asks the Court to wrest this important function away from Dr. Ben-David

and MSMC, issue in effect a <u>gag order and prior restraint</u>, and presumably permit Plaintiff to evade

this important safeguard that is consistent with applicable law. Stated simply, silencing Dr. Ben-

David under these circumstances would put the community and patient population at risk.[10] It goes

without saying that any court faced with such an extraordinary request should exercise extreme

caution. In short, the public interest in ensuring the competence of licensed physicians—and

ensuring that credentialing bodies and other institutions are informed about a physician's

---

[10] It would also do vastly more harm to MSMC and Dr. Ben-David, and to the reputation and integrity of the surgical
residency program, by forcing the program to whitewash Plaintiff's serious deficiencies with any inquiring third party.

Lash&Goldberg LLP

LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

competency—vastly outweighs any generic countervailing interest that Plaintiff could plausibly articulate under the circumstances.

## CONCLUSION

For all the foregoing reasons, the Motion should be denied.

Dated:  December 29, 2022

Respectfully submitted,

**LASH & GOLDBERG, LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
*Attorneys for Defendants*
Tel: (305) 347-4040
Fax: (305) 347-4050

By:  /s/ *Martin B. Goldberg*
**MARTIN B. GOLDBERG**
Florida Bar No. 0827029
Primary Email: mgoldberg@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com
**CLARK S. SPLICHAL**
Florida Bar No. 1010425
Primary Email: csplichal@lashgoldberg.com
Secondary Email:mwallace@lashgoldberg.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via e-service notification through the Florida Courts E-Filing Portal on  December 29, 2022 to Richard H. Levenstein, Esq. of the law firm of NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A. at the following email addresses: rlevenstein@nasonyeager.com, and ptreadway@nasonyeager.com.

By: /s/ *Martin B. Goldberg*
**MARTIN B. GOLDBERG**



LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

# EXHIBIT A



# Individual Resident Evaluations Faculty Evaluation of Resident 1-2.

## Mount Sinai
MEDICAL CENTER
Department of Surgery

## Mount Sinai Medical Center - Surgery

**Report Date/Time: 12/12/2018 9:06:19 AM**

Report Date Range:  07/01/2018 - 12/12/2018

*Resident:* Paige Finkelstein

**Competency** = Average score on competency for selected residents
**Attending Avg** = Average score given by an Attending for each question
**Group** = Average score of all PGYs represented
**Total** = Average score of all PGYs

*Evaluation Completed:* 11/06/2018

*Attending:* Dr. Roy Williams

*Evaluation Period:* 08/01/2018
through 08/31/2018

*Rotation Name:* Cardiothoracic

### Patient Care and Procedural Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>40.0%<br>**Meets Expectations** | 2.67 (n=3)<br>53.33% | 2.42 (n=59)<br>48.50% | 2.36 (n=92)<br>47.20% |
| The resident demonstrates ability to recognize and mange complications.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>40.0%<br>**Meets Expectations** | 2.33 (n=3)<br>46.67% | 2.34 (n=59)<br>46.80% | 2.29 (n=92)<br>45.90% |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>40.0%<br>**Meets Expectations** | 2.00 (n=3)<br>40.00% | 2.63 (n=59)<br>52.50% | 2.50 (n=92)<br>50.00% |

### Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | 2.00<br>40.0%<br>**Meets Expectations** | 2.00 (n=3)<br>40.00% | 2.31 (n=59)<br>46.10% | 2.27 (n=92)<br>45.40% |
| The resident demonstrates knowledge of surgical procedures and operations. | 2.00<br>40.0% | 2.00 (n=3)<br>40.00% | 2.36 (n=59)<br>47.10% | 2.35 (n=92)<br>47.00% |

Individual Resident Evaluations Report

| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | Meets Expectations | | | |
|---|---|---|---|---|

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>**Scale of 1-5 (1=lowest and 5=highest) (See Bottom)** | 2.00 40.0% Meets Expectations | 2.33 (n=3) 46.67% | 2.44 (n=59) 48.80% | 2.39 (n=92) 47.80% |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>**Scale of 1-5 (1=lowest and 5=highest) (See Bottom)** | 2.00 40.0% Meets Expectations | 2.33 (n=3) 46.67% | 2.39 (n=59) 47.80% | 2.38 (n=92) 47.60% |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>**Scale of 1-5 (1=lowest and 5=highest) (See Bottom)** | 2.00 40.0% Meets Expectations | 2.67 (n=3) 53.33% | 2.32 (n=59) 46.40% | 2.30 (n=92) 46.10% |
| The resident practices appropriate communication in the Operating Room<br><br>**Scale of 1-5 (1=lowest and 5=highest) (See Bottom)** | 2.00 40.0% Meets Expectations | 2.33 (n=3) 46.67% | 2.54 (n=59) 50.80% | 2.51 (n=92) 50.20% |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>**Scale of 1-5 (1=lowest and 5=highest) (See Bottom)** | 2.00 40.0% Meets Expectations | 2.33 (n=3) 46.67% | 2.34 (n=59) 46.80% | 2.28 (n=92) 45.70% |
| The resident demonstrates self-directed learning.<br><br>**Scale of 1-5 (1=lowest and 5=highest) (See Bottom)** | 2.00 40.0% Meets Expectations | 2.33 (n=3) 46.67% | 2.41 (n=59) 48.10% | 2.34 (n=92) 46.70% |

## Overall/Summary - Category Summary (1.50, 30.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>**Scale of 1-5 (1=lowest and 5=highest) (See Bottom)** | 1.00 20.0% Pass | 1.00 (n=3) 20.00% | 1.00 (n=59) 20.00% | 1.00 (n=92) 20.00% |

Individual Resident Evaluations Report

| | | | | |
|---|---|---|---|---|
| Did you have a face to face discussion about this evaluation with the resident? | **2.00 40.0% No** | 2.00 (n=3) 40.00% | 1.76 (n=59) 35.30% | 1.73 (n=92) 34.60% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

**Comments**

| | |
|---|---|
| Evaluation Comments: | Overall Nice Job for early intern rotation. *Did you provide direct feedback on this evaluation?: No. Signed - Dr. Roy Williams* |
| Resident Acknowledgement: | *Reviewed/Signed on 11/14/2018:* I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed – Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | *Reviewed by Dr. Kfir Ben-David, 11/06/2018* |

**Evaluation Completed:** 10/14/2018

**Evaluation Period:** 08/01/2018 through 08/31/2018

*Attending:* **Dr. Fernando Safdie**

*Rotation Name:* **Cardiothoracic**

### Patient Care and Procedural Skills - Category Summary (2.67, 53.33%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | **2.00 40.0% Meets Expectations** | 2.50 (n=4) 50.00% | 2.42 (n=59) 48.50% | 2.36 (n=92) 47.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates ability to recognize and mange complications. | **2.00 40.0% Meets Expectations** | 2.25 (n=4) 45.00% | 2.34 (n=59) 46.80% | 2.29 (n=92) 45.90% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | **4.00 80.0% Cannot Evaluate** | 2.75 (n=4) 55.00% | 2.63 (n=59) 52.50% | 2.50 (n=92) 50.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### Medical Knowledge - Category Summary (2.50, 50.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | **1.00 20.0% Below Expectations** | 2.00 (n=4) 40.00% | 2.31 (n=59) 46.10% | 2.27 (n=92) 45.40% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates knowledge of surgical procedures and operations. | **4.00 80.0% Cannot Evaluate** | 2.50 (n=4) 50.00% | 2.36 (n=59) 47.10% | 2.35 (n=92) 47.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 40.0% Meets Expectations | 3.00 (n=4) 60.00% | 2.44 (n=59) 48.80% | 2.39 (n=92) 47.80% |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 40.0% Meets Expectations | 2.50 (n=4) 50.00% | 2.39 (n=59) 47.80% | 2.38 (n=92) 47.60% |

## Interpersonal and Communication Skills - Category Summary (2.50, 50.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 1.00 20.0% Below Expectations | 2.25 (n=4) 45.00% | 2.32 (n=59) 46.40% | 2.30 (n=92) 46.10% |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 4.00 80.0% Cannot Evaluate | 3.25 (n=4) 65.00% | 2.54 (n=59) 50.80% | 2.51 (n=92) 50.20% |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 40.0% Meets Expectations | 2.25 (n=4) 45.00% | 2.34 (n=59) 46.80% | 2.28 (n=92) 45.70% |
| The resident demonstrates self-directed learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 40.0% Meets Expectations | 2.75 (n=4) 55.00% | 2.41 (n=59) 48.10% | 2.34 (n=92) 46.70% |

## Overall/Summary - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 1.00 20.0% Pass | 1.00 (n=4) 20.00% | 1.00 (n=59) 20.00% | 1.00 (n=92) 20.00% |
| Did you have a face to face discussion about this evaluation with the resident? | | 1.50 (n=4) 30.00% | 1.76 (n=59) 35.30% | 1.73 (n=92) 34.60% |

| | | | | | |
|---|---|---|---|---|---|
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**20.0%**<br>**Yes** | | | | |

**Comments**

| | |
|---|---|
| Evaluation Comments: | Paige needs to work on her communication skills , particularly with physicians from other teams. Also, she needs to manage her time in a more efficient way to accommodate the floor duties without missing OR time.<br>On the other hand, Paige was receptive to constructive criticism and demonstrated within the month on our service that she is open to learn.<br>I believe that with the right guidance she will be able to mature as a surgeon and physician<br><br>*. Did you provide direct feedback on this evaluation?: Yes. Signed - Dr. Fernando Safdie* |
| Resident Acknowledgement: | *Reviewed/Signed on 10/14/2018:* I was writing notes about 3 hours a day (usually 9 am to 12 or 1 pm). Days I was alone I was writing between 20 to 30 notes and discharges, plus pages from the floor nurses non stop. Cases were usually done by the time I finished. I think Dr. Safdie had unrealistic expectations for an intern who was 4 weeks in. I was doing a lot of the PA work and could never abandon the floor because then patient care suffers. If he wants residents in the OR, consider hiring auxiliary staff to handle all the paper work so that the residents can actually operate. Or maybe I was taking on too much work from the Amp because I didn't want her to think I was slacking. Maybe make those expectations more clear for how much paperwork you want us to be doing. Furthermore, I know Dr Safdie wanted us to be watching surgeries, but when you're behind the SAs and PAs you cannt see much. I learned more watching YouTube videos because I could see much better. I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | *Reviewed by Dr. Kfir Ben-David, 10/25/2018* |

*Evaluation Completed:* **10/31/2018**                                              *Attending:* **Dr. Irving Jorge**

*Evaluation Period:* **09/01/2018**
**through 09/30/2018**                                                    *Rotation Name:* **Manhaimer**

### Patient Care and Procedural Skills - Category Summary (2.33, 46.67%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | **2.00**<br>**40.0%**<br>**Meets Expectations** | 2.17 (n=6) 43.33% | 2.42 (n=59) 48.50% | 2.36 (n=92) 47.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates ability to recognize and mange complications. | **2.00**<br>**40.0%**<br>**Meets Expectations** | 2.17 (n=6) 43.33% | 2.34 (n=59) 46.80% | 2.29 (n=92) 45.90% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | **3.00**<br>**60.0%**<br>**Exceeds Expectations** | 2.33 (n=6) 46.67% | 2.63 (n=59) 52.50% | 2.50 (n=92) 50.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.31 (n=6)<br>43.33% | 2.31 (n=59)<br>46.10% | 2.27 (n=92)<br>45.40% |
| The resident demonstrates knowledge of surgical procedures and operations.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.17 (n=6)<br>43.33% | 2.36 (n=59)<br>47.10% | 2.35 (n=92)<br>47.00% |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.33 (n=6)<br>46.67% | 2.44 (n=59)<br>48.80% | 2.39 (n=92)<br>47.80% |

## Professionalism - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**20.0%**<br>**Below**<br>**Expectations** | 2.17 (n=6)<br>43.33% | 2.39 (n=59)<br>47.80% | 2.38 (n=92)<br>47.60% |

## Interpersonal and Communication Skills - Category Summary (1.50, 30.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**20.0%**<br>**Below**<br>**Expectations** | 2.17 (n=6)<br>43.33% | 2.32 (n=59)<br>46.40% | 2.30 (n=92)<br>46.10% |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.17 (n=6)<br>43.33% | 2.54 (n=59)<br>50.80% | 2.51 (n=92)<br>50.20% |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.17 (n=6)<br>43.33% | 2.34 (n=59)<br>46.80% | 2.28 (n=92)<br>45.70% |

| | | | | |
|---|---|---|---|---|
| The resident demonstrates self-directed learning. | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.17 (n=6)<br>43.33% | 2.41 (n=59)<br>48.10% | 2.34 (n=92)<br>46.70% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Overall/Summary - Category Summary (1.50, 30.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | **1.00**<br>**20.0%**<br>**Pass** | 1.00 (n=6)<br>20.00% | 1.00 (n=59)<br>20.00% | 1.00 (n=92)<br>20.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | **2.00**<br>**40.0%**<br>**No** | 1.17 (n=6)<br>23.33% | 1.76 (n=59)<br>35.30% | 1.73 (n=92)<br>34.60% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### Comments

| | |
|---|---|
| Evaluation Comments: | Paige needs to work on professionalism, would also benefit from working on communication skills between peers and attendings. Operative skills are solid for intern level. Is very enthusiastic about operating and learning. Has potential if addresses the above issues.. *Did you provide direct feedback on this evaluation?: Yes. Signed - Dr. Irving Jorge* |
| Resident Acknowledgement: | *Reviewed/Signed on 10/31/2018:* I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | thank you for the input. *Reviewed by Dr. Kfir Ben-David, 11/05/2018* |

*Evaluation Completed:* 11/05/2018

*Attending:* **Dr. Jennifer Davies**

*Evaluation Period:* 09/01/2018
through 09/30/2018

*Rotation Name:* **Manhaimer**

## Patient Care and Procedural Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.00 (n=6)<br>40.00% | 2.42 (n=59)<br>48.50% | 2.36 (n=92)<br>47.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates ability to recognize and mange complications. | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.00 (n=6)<br>40.00% | 2.34 (n=59)<br>46.80% | 2.29 (n=92)<br>45.90% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.17 (n=6)<br>43.33% | 2.63 (n=59)<br>52.50% | 2.50 (n=92)<br>50.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.00 (n=6) 40.00% | 2.31 (n=59) 46.10% | 2.27 (n=92) 45.40% |
| The resident demonstrates knowledge of surgical procedures and operations.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.00 (n=6) 40.00% | 2.36 (n=59) 47.10% | 2.35 (n=92) 47.00% |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.00 (n=6) 40.00% | 2.44 (n=59) 48.80% | 2.39 (n=92) 47.80% |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.17 (n=6) 43.33% | 2.39 (n=59) 47.80% | 2.38 (n=92) 47.60% |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.00 (n=6) 40.00% | 2.32 (n=59) 46.40% | 2.30 (n=92) 46.10% |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.00 (n=6) 40.00% | 2.54 (n=59) 50.80% | 2.51 (n=92) 50.20% |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.00 (n=6) 40.00% | 2.34 (n=59) 46.80% | 2.28 (n=92) 45.70% |

Individual Resident Evaluations Report

| | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates self-directed learning. | 2.00 40.0% Meets Expectations | 2.00 (n=6) 40.00% | 2.41 (n=59) 48.10% | 2.34 (n=92) 46.70% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Overall/Summary - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | 1.00 20.0% Pass | 1.00 (n=6) 20.00% | 1.00 (n=59) 20.00% | 1.00 (n=92) 20.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | 1.00 20.0% Yes | 1.00 (n=6) 20.00% | 1.76 (n=59) 35.30% | 1.73 (n=92) 34.60% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

Comments

| Evaluation Comments: | Level appropriate. *Did you provide direct feedback on this evaluation?: Yes. Signed - Dr. Jennifer Davies* |
|---|---|
| Resident Acknowledgement: | Comments Not Available |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | *Reviewed by Dr. Kfir Ben-David, 11/06/2018* |

*Evaluation Completed:* **10/10/2018**

*Evaluation Period:* **09/01/2018 through 09/30/2018**

*Attending:* **Dr. Robert Bailey**

*Rotation Name:* **Manhaimer**

## Patient Care and Procedural Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | 2.00 40.0% Meets Expectations | 2.33 (n=9) 46.67% | 2.42 (n=59) 48.50% | 2.36 (n=92) 47.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates ability to recognize and mange complications. | 2.00 40.0% Meets Expectations | 2.44 (n=9) 48.89% | 2.34 (n=59) 46.80% | 2.29 (n=92) 45.90% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | 2.00 40.0% Meets Expectations | 2.44 (n=9) 48.89% | 2.63 (n=59) 52.50% | 2.50 (n=92) 50.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| | | | | |

Individual Resident Evaluations Report

| | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | **2.00 40.0% Meets Expectations** | 2.22 (n=9) 44.44% | 2.31 (n=59) 46.10% | 2.27 (n=92) 45.40% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates knowledge of surgical procedures and operations. | **2.00 40.0% Meets Expectations** | 2.67 (n=9) 53.33% | 2.36 (n=59) 47.10% | 2.35 (n=92) 47.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## System-Based Practices - Category Summary (4.00, 80.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | **4.00 80.0% Cannot Evaluate** | 2.44 (n=9) 48.89% | 2.44 (n=59) 48.80% | 2.39 (n=92) 47.80% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | **2.00 40.0% Meets Expectations** | 2.11 (n=9) 42.22% | 2.39 (n=59) 47.80% | 2.38 (n=92) 47.60% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | **2.00 40.0% Meets Expectations** | 2.11 (n=9) 42.22% | 2.32 (n=59) 46.40% | 2.30 (n=92) 46.10% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident practices appropriate communication in the Operating Room | **2.00 40.0% Meets Expectations** | 2.67 (n=9) 53.33% | 2.54 (n=59) 50.80% | 2.51 (n=92) 50.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Practice-Based Learning and Improvement - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | **2.00 40.0% Meets Expectations** | 2.22 (n=9) 44.44% | 2.34 (n=59) 46.80% | 2.28 (n=92) 45.70% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates self-directed learning. | **4.00 80.0% Cannot Evaluate** | 2.89 (n=9) 57.78% | 2.41 (n=59) 48.10% | 2.34 (n=92) 46.70% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

Individual Resident Evaluations Report

## Overall/Summary - Category Summary (1.50, 30.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | 1.00 20.0% Pass | 1.00 (n=9) 20.00% | 1.00 (n=59) 20.00% | 1.00 (n=92) 20.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | 2.00 40.0% No | 2.00 (n=9) 40.00% | 1.76 (n=59) 35.30% | 1.73 (n=92) 34.60% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| Question Comments: Appropriate level of knowledge and skills for PGY-1 level. | | | | |

### Comments

| | |
|---|---|
| Evaluation Comments: | Appropriate level of knowledge and skills for PGY-1 level. No immediate recommendations for strengths or weaknesses at this point. . *Did you provide direct feedback on this evaluation?: No. Signed - Dr. Robert Bailey* |
| Resident Acknowledgement: | *Reviewed/Signed on 10/10/2018.* I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | *Reviewed by Dr. Kfir Ben-David, 10/25/2018* |

*Evaluation Completed: 10/07/2018*
*Evaluation Period: 09/01/2018 through 09/30/2018*

*Attending:* **Dr. Stephen Unger**

*Rotation Name:* **Manhaimer**

## Patient Care and Procedural Skills - Category Summary (2.67, 53.33%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | 3.00 60.0% Exceeds Expectations | 2.53 (n=15) 50.67% | 2.42 (n=59) 48.50% | 2.36 (n=92) 47.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates ability to recognize and mange complications. | 3.00 60.0% Exceeds Expectations | 2.40 (n=15) 48.00% | 2.34 (n=59) 46.80% | 2.29 (n=92) 45.90% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | 2.00 40.0% Meets Expectations | 2.33 (n=15) 46.67% | 2.63 (n=59) 52.50% | 2.50 (n=92) 50.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|

| | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | 2.00 40.0% Meets Expectations | 2.40 (n=15) 48.00% | 2.31 (n=59) 46.10% | 2.27 (n=92) 45.40% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates knowledge of surgical procedures and operations. | 2.00 40.0% Meets Expectations | 2.00 (n=15) 40.00% | 2.36 (n=59) 47.10% | 2.35 (n=92) 47.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | 2.00 40.0% Meets Expectations | 2.47 (n=15) 49.33% | 2.44 (n=59) 48.80% | 2.39 (n=92) 47.80% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Professionalism - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | 3.00 60.0% Exceeds Expectations | 2.67 (n=15) 53.33% | 2.39 (n=59) 47.80% | 2.38 (n=92) 47.60% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | 2.00 40.0% Meets Expectations | 2.20 (n=15) 44.00% | 2.32 (n=59) 46.40% | 2.30 (n=92) 46.10% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident practices appropriate communication in the Operating Room | 2.00 40.0% Meets Expectations | 2.20 (n=15) 44.00% | 2.54 (n=59) 50.80% | 2.51 (n=92) 50.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | 2.00 40.0% Meets Expectations | 2.33 (n=15) 46.67% | 2.34 (n=59) 46.80% | 2.28 (n=92) 45.70% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates self-directed learning. | 2.00 40.0% Meets Expectations | 2.00 (n=15) 40.00% | 2.41 (n=59) 48.10% | 2.34 (n=92) 46.70% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

Individual Resident Evaluations Report

## Overall/Summary - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | 1.00 20.0% Pass | 1.00 (n=15) 20.00% | 1.00 (n=59) 20.00% | 1.00 (n=92) 20.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | 1.00 20.0% Yes | 1.53 (n=15) 30.67% | 1.76 (n=59) 35.30% | 1.73 (n=92) 34.60% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### Comments

| | |
|---|---|
| Evaluation Comments: | I have discussed with Paige the importance of maintaining a professional and calm presence in her patient care activities. I have the sense that she is not adept yet in time management and communication skills and that she needs to slow down, calm down and work on her efficiency. I believe she has tremendous upside potential.. *Did you provide direct feedback on this evaluation?: Yes. Signed - Dr. Stephen Unger* |
| Resident Acknowledgement: | *Reviewed/Signed on 10/31/2018: I acknowledge receipt of this evaluation. Did the evaluator provide you with direct feedback on this evaluation?: Yes, at the end of the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | *Reviewed by Dr. Kfir Ben-David, 10/07/2018* |

**Evaluation Completed: 11/11/2018**
**Evaluation Period: 10/04/2018**
**through 10/31/2018**

*Attending:* **Dr. Stephen Unger**

*Rotation Name:* **Vascular**

## Patient Care and Procedural Skills - Category Summary (2.33, 46.67%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | 3.00 60.0% Exceeds Expectations | 2.53 (n=15) 50.67% | 2.42 (n=59) 48.50% | 2.36 (n=92) 47.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates ability to recognize and mange complications. | 2.00 40.0% Meets Expectations | 2.40 (n=15) 48.00% | 2.34 (n=59) 46.80% | 2.29 (n=92) 45.90% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | 2.00 40.0% Meets Expectations | 2.33 (n=15) 46.67% | 2.63 (n=59) 52.50% | 2.50 (n=92) 50.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Medical Knowledge - Category Summary (2.50, 50.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| | | | | |

| | | | | |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **3.00**<br>**60.0%**<br>**Exceeds**<br>**Expectations** | 2.40 (n=15)<br>48.00% | 2.31 (n=59)<br>46.10% | 2.27 (n=92)<br>45.40% |
| The resident demonstrates knowledge of surgical procedures and operations.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.00 (n=15)<br>40.00% | 2.36 (n=59)<br>47.10% | 2.35 (n=92)<br>47.00% |

## System-Based Practices - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **3.00**<br>**60.0%**<br>**Exceeds**<br>**Expectations** | 2.47 (n=15)<br>49.33% | 2.44 (n=59)<br>48.80% | 2.39 (n=92)<br>47.80% |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.67 (n=15)<br>53.33% | 2.39 (n=59)<br>47.80% | 2.38 (n=92)<br>47.60% |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.20 (n=15)<br>44.00% | 2.32 (n=59)<br>46.40% | 2.30 (n=92)<br>46.10% |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.20 (n=15)<br>44.00% | 2.54 (n=59)<br>50.80% | 2.51 (n=92)<br>50.20% |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.33 (n=15)<br>46.67% | 2.34 (n=59)<br>46.80% | 2.28 (n=92)<br>45.70% |
| The resident demonstrates self-directed learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**40.0%**<br>**Meets**<br>**Expectations** | 2.00 (n=15)<br>40.00% | 2.41 (n=59)<br>48.10% | 2.34 (n=92)<br>46.70% |

## Overall/Summary - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | 1.00 20.0% Pass | 1.00 (n=15) 20.00% | 1.00 (n=59) 20.00% | 1.00 (n=92) 20.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | 1.00 20.0% Yes | 1.53 (n=15) 30.67% | 1.76 (n=59) 35.30% | 1.73 (n=92) 34.60% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

**Comments**

| | |
|---|---|
| Evaluation Comments: | I believe Paige needs to concentrate on establishing a confident and professional image and avoid being deferential and apologetic for her first year status. She is a really intelligent and knowledgeable physician but sometimes does not assert that. Her technical skills in the operation room have been inconsistent demonstrating excellent technical skills and steady hands on one occasion and inability to know which side of the artery she was sewing on on another occasion. This is not something I have seen before in a resident so time will tell but it may just be a lapse of concentration. . *Did you provide direct feedback on this evaluation?: Yes. Signed - Dr. Stephen Unger* |
| Resident Acknowledgement: | *Reviewed/Signed on 11/13/2018:* Thank you for the feedback. I had poor visualization of the artery and I should have said something and adjusted when I was trying to sew instead do trying to improvise. I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: Yes. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | Reviewed by Dr. Kfir Ben-David, 12/05/2018 |

**Evaluation Completed:** 11/14/2018

**Evaluation Period:** 10/04/2018 through 10/31/2018

*Attending:* **Dr. Micheal Ayad**

*Rotation Name:* **Vascular**

## Patient Care and Procedural Skills - Category Summary (3.33, 66.67%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | 3.00 60.0% Exceeds Expectations | 3.00 (n=2) 60.00% | 2.42 (n=59) 48.50% | 2.36 (n=92) 47.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates ability to recognize and mange complications. | 3.00 60.0% Exceeds Expectations | 2.50 (n=2) 50.00% | 2.34 (n=59) 46.80% | 2.29 (n=92) 45.90% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | 4.00 80.0% Cannot Evaluate | 3.00 (n=2) 60.00% | 2.63 (n=59) 52.50% | 2.50 (n=92) 50.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.00 (n=2) 40.00% | 2.31 (n=59) 46.10% | 2.27 (n=92) 45.40% |
| The resident demonstrates knowledge of surgical procedures and operations.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 3.00 (n=2) 60.00% | 2.36 (n=59) 47.10% | 2.35 (n=92) 47.00% |

## System-Based Practices - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **3.00 60.0% Exceeds Expectations** | 3.00 (n=2) 60.00% | 2.44 (n=59) 48.80% | 2.39 (n=92) 47.80% |

## Professionalism - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **3.00 60.0% Exceeds Expectations** | 3.00 (n=2) 60.00% | 2.39 (n=59) 47.80% | 2.38 (n=92) 47.60% |

## Interpersonal and Communication Skills - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **3.00 60.0% Exceeds Expectations** | 3.00 (n=2) 60.00% | 2.32 (n=59) 46.40% | 2.30 (n=92) 46.10% |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **3.00 60.0% Exceeds Expectations** | 3.00 (n=2) 60.00% | 2.54 (n=59) 50.80% | 2.51 (n=92) 50.20% |

## Practice-Based Learning and Improvement - Category Summary (2.50, 50.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **3.00 60.0% Exceeds Expectations** | 2.50 (n=2) 50.00% | 2.34 (n=59) 46.80% | 2.28 (n=92) 45.70% |

Individual Resident Evaluations Report                                            Page 17 of 18

| | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates self-directed learning. | 2.00 40.0% Meets Expectations | 2.00 (n=2) 40.00% | 2.41 (n=59) 48.10% | 2.34 (n=92) 46.70% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Overall/Summary - Category Summary (1.50, 30.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | 1.00 20.0% Pass | 1.00 (n=2) 20.00% | 1.00 (n=59) 20.00% | 1.00 (n=92) 20.00% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | 2.00 40.0% No | 2.00 (n=2) 40.00% | 1.76 (n=59) 35.30% | 1.73 (n=92) 34.60% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

**Comments**

| Evaluation Comments: | Strengths: Paige was a very pleasant resident to work with, She is dedicated and committed to patient care. She has a good knowledge base and is attentive to details of patient care and findings<br><br>Weaknesses: She should try to be in the OR more often even as a second scrubbed resident.. *Did you provide direct feedback on this evaluation?: No. Signed - Dr. Micheal Ayad* |
|---|---|
| Resident Acknowledgement: | *Reviewed/Signed on 11/14/2018:* I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: Yes. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | *Reviewed by Dr. Kfir Ben-David, 12/05/2018* |

**Summary - Core Competencies**

| Category Summary | Dr. Finkelstein (n=8) | PGY-Peers (n=59) | All PGYs (n=92) |
|---|---|---|---|
| Interpersonal and Communication Skills | 2.12500 / 42.50% | 2.43 / 48.64% | 2.41 / 48.15% |
| Medical Knowledge | 2.12500 / 42.50% | 2.33 / 46.61% | 2.31 / 46.20% |
| Patient Care and Procedural Skills | 2.41667 / 48.33% | 2.46 / 49.27% | 2.38 / 47.68% |
| Practice-Based Learning and Improvement | 2.18750 / 43.75% | 2.37 / 47.46% | 2.31 / 46.20% |
| Professionalism | 2.12500 / 42.50% | 2.39 / 47.80% | 2.38 / 47.61% |
| System-Based Practices | 2.50000 / 50.00% | 2.44 / 48.81% | 2.39 / 47.83% |
| Overall/Summary | 1.25000 / 25.00% | 1.38 / 27.63% | 1.36 / 27.28% |

Individual Resident Evaluations Report

| Statistical Analysis Based on a Multiple Scales | | | | | |
|---|---|---|---|---|---|
| n | Std Dev | Median | Mean | Variance | High & Low |
| 8 | 0.71 | 2 | 2.1 | 0.51 | 4 & 1 |

**MULTIPLE SCALES**

- **MSMC Yes/No**
- **Mt Sinai Pass/Fail**
- **Sx Surg**

**This document contains confidential peer review information to be used in the assessment of the quality of the delivery of healthcare. This document and the information in it are confidential and should not be distributed outside the relevant review committees, and appropriate hospital personnel.**

A confidential report prepared for Mount Sinai Medical Center - Surgery Copyright © 1998 - 2019 MyEvaluations.com



## Mount Sinai
MEDICAL CENTER

**DEPARTMENT OF SURGERY**
**SURGICAL RESIDENT**
**SEMI-ANNUAL EVALUATION**

RESIDENT NAME: _____Paige Finkelstein, MD_____

DATES: _____07/01/18_____ to _____12/31/18_____     PGY YEAR: _____1_____

FUTURE PLAN: _____Undecided_____

This evaluation is based on demonstrated performance compared to what is reasonably expected of a practitioner at his/her level of training, experience, and background.

| | Superior | Good | Fair | Poor |
|---|---|---|---|---|
| Patient Care | | ✓ | | |
| Medical Knowledge | | ✓ | | |
| Practice Based Learning and Improvement | | | ✓ | |
| Interpersonal Skills | | | ✓ | |
| Communication Skills | | | | ✓ |
| Professionalism | | | | ✓ |
| System Based Practice | | | ✓ | |

Surgical case list reviewed _13_ ABSITE Scores reviewed _____ 2017_____% 2018_____%
ACGME/other workshop attendance _____ ✓   Work hours compliance (tracking hours) _too many hours_
Completes Medical Records in timely and accurate fashion _✓_

**CORRECTIVE ACTION:**
During the period verified above, was the practitioner ever subject to any disciplinary action, such as admonition, reprimand, suspension, or termination?

Yes _____ No _✓_   If Yes, details are described on a separate sheet of paper and attached to this form.

EVALUATION:   _____ Highly competent/without reservation
   _____ Qualified and competent
   _✓_ Some reservations
   _____ See attached letter

Evaluation based on   _✓_ Close Personal Observation
   _✓_ General Impression
   _✓_ Other: __360 evaluations__

Additional Comments: _- Meet every 2 weeks to discuss interpersonal skills_
_and professional behavior. Reassess progress every week; need to do_
_- Meet with Dr. David                                      score questions_

Resident Signature: _Paige Finkelstein_   Date: _12/19/18_

Name (Print or Type): __Kfir Ben-David, MD__

Signature: _____   Date: _12/19/2018_

Title: __Program Director / Associate Program Director, Surgical Residency Program__

Page 1 of 6



# Individual Resident Evaluations All Evaluations



Mount Sinai
M E D I C A L   C E N T E R
Department of Surgery

## Mount Sinai Medical Center - Surgery

Report Date Range: 12/01/2018 - 05/30/2019

**Report Date/Time: 5/30/2019 8:37:12 AM**

*Resident:* Paige Finkelstein

Competency = Average score on competency for selected residents

Group = Average score of all PGYs represented

Total = Average score of all PGYs

Evaluation Name: **Faculty Evaluation of Resident 1-2.**

*Evaluation Completed: 03/20/2019*

*Evaluation Period: 12/01/2018 through 01/04/2019*

*Attending:* Dr. Kiranmayi Muddasani

*Rotation Name:* Dembrow

### Patient Care and Procedural Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** **40.0%** Meets Expectations | 2.33 (n=3) 46.67% | 2.37 (n=19) 47.40% | 2.32 (n=31) 46.50% |
| The resident demonstrates ability to recognize and mange complications. *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** **40.0%** Meets Expectations | 2.00 (n=3) 40.00% | 2.26 (n=19) 45.30% | 2.26 (n=31) 45.20% |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** **40.0%** Meets Expectations | 2.00 (n=3) 40.00% | 2.32 (n=19) 46.30% | 2.16 (n=31) 43.20% |

### Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** **40.0%** Meets Expectations | 2.00 (n=3) 40.00% | 2.26 (n=19) 45.30% | 2.19 (n=31) 43.90% |
| The resident demonstrates knowledge of surgical procedures and operations. | **2.00** **40.0%** Meets Expectations | 2.00 (n=3) 40.00% | 2.16 (n=19) 43.20% | 2.13 (n=31) 42.60% |

Resident Evaluations Report

*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)*

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.33 (n=3) 46.67% | 2.26 (n=19) 45.30% | 2.26 (n=31) 45.20% |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.33 (n=3) 46.67% | 2.53 (n=19) 50.50% | 2.39 (n=31) 47.70% |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.33 (n=3) 46.67% | 2.53 (n=19) 50.50% | 2.48 (n=31) 49.70% |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.33 (n=3) 46.67% | 2.26 (n=19) 45.30% | 2.26 (n=31) 45.20% |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.00 (n=3) 40.00% | 2.21 (n=19) 44.20% | 2.19 (n=31) 43.90% |
| The resident demonstrates self-directed learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00 40.0% Meets Expectations** | 2.00 (n=3) 40.00% | 2.21 (n=19) 44.20% | 2.23 (n=31) 44.50% |

## Overall/Summary - Category Summary (1.50, 30.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00 20.0% Pass** | 1.00 (n=3) 20.00% | 1.00 (n=19) 20.00% | 1.00 (n=31) 20.00% |

Individual Resident Evaluations Report

| Did you have a face to face discussion about this evaluation with the resident? | 2.00 40.0% No | 2.00 (n=3) 40.00% | 1.74 (n=19) 34.70% | 1.77 (n=31) 35.50% |
|---|---|---|---|---|
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Comments

| Evaluation Comments: | I notice Paige has difficulty in prioritizing at times. She can get overwhelmed easily and this spills over into episodes of disarray. I think she should calm down and reorganize her thoughts whenever she is overwhelmed. She has great energy but sometimes has difficulty on staying focused. These things are expected in a new intern, but in 3 months she will be a second year resident. I think this is the time, she needs to focus on working towards organizing her priorities and having better communication with co-residents, attending physicians and especially patients. She is very bright and motivated and I am sure will learn to focus her energy productively. *Did you provide direct feedback on this evaluation?: No. Signed - Dr. Kiranmayi Muddasani* |
|---|---|
| Resident Acknowledgement: | *Reviewed/Signed on 03/20/2019:* I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | |
| Program Director Comments: | *Reviewed by Dr. Kfir Ben-David, 03/22/2019* |

Evaluation Name: **Faculty Evaluation of Resident 1-2.**

*Evaluation Completed:* **01/09/2019**

*Attending:* **Dr. Juan Paramo**

*Evaluation Period:* **12/01/2018 through 01/04/2019**

*Rotation Name:* **Dembrow**

## Patient Care and Procedural Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | 2.00 40.0% Meets Expectations | 2.00 (n=6) 40.00% | 2.37 (n=19) 47.40% | 2.32 (n=31) 46.50% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates ability to recognize and mange complications. | 2.00 40.0% Meets Expectations | 2.00 (n=6) 40.00% | 2.26 (n=19) 45.30% | 2.26 (n=31) 45.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | 2.00 40.0% Meets Expectations | 2.00 (n=6) 40.00% | 2.32 (n=19) 46.30% | 2.16 (n=31) 43.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | 2.00 40.0% Meets Expectations | 2.00 (n=6) 40.00% | 2.26 (n=19) 45.30% | 2.19 (n=31) 43.90% |

tps://www.myevaluations.com/Reports/IndividualEvaluationResult.aspx

5/30/2019

... ........ ......... .............. Report
Page 4 of 6

| | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates knowledge of surgical procedures and operations. | 2.00 40.0% Meets Expectations | 2.00 (n=6) 40.00% | 2.16 (n=19) 43.20% | 2.13 (n=31) 42.60% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | 2.00 40.0% Meets Expectations | 2.00 (n=6) 40.00% | 2.26 (n=19) 45.30% | 2.26 (n=31) 45.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | 2.00 40.0% Meets Expectations | 2.17 (n=6) 43.33% | 2.53 (n=19) 50.50% | 2.39 (n=31) 47.70% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Interpersonal and Communication Skills - Category Summary (1.50, 30.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | 1.00 20.0% Below Expectations | 2.17 (n=6) 43.33% | 2.53 (n=19) 50.50% | 2.48 (n=31) 49.70% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident practices appropriate communication in the Operating Room | 2.00 40.0% Meets Expectations | 2.00 (n=6) 40.00% | 2.26 (n=19) 45.30% | 2.26 (n=31) 45.20% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | 2.00 40.0% Meets Expectations | 2.00 (n=6) 40.00% | 2.21 (n=19) 44.20% | 2.19 (n=31) 43.90% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates self-directed learning. | 2.00 40.0% Meets Expectations | 2.00 (n=6) 40.00% | 2.21 (n=19) 44.20% | 2.23 (n=31) 44.50% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Overall/Summary - Category Summary (1.50, 30.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|

Individual Resident Evaluations Report

| Comments and suggestions for improvement: | | 1.00<br>20.0%<br>Pass | 1.00 (n=6)<br>20.00% | 1.00 (n=19)<br>20.00% | 1.00 (n=31)<br>20.00% |
|---|---|---|---|---|---|
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | | 2.00<br>40.0%<br>No | 2.00 (n=6)<br>40.00% | 1.74 (n=19)<br>34.70% | 1.77 (n=31)<br>35.50% |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | | |

## Comments

| | |
|---|---|
| Evaluation Comments: | Knowledgeable, responsible.<br>Needs to work on appropriate communication when taking to patients.. *Did you provide direct feedback on this evaluation?: No. Signed - Dr. Juan Paramo* |
| Resident Acknowledgement: | *Reviewed/Signed on 01/10/2019:* okay will do. I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Filed - submitted w/o review comments. |
| Program Director Comments: | Reviewed by Dr. Kfir Ben-David, 02/07/2019 |

## Summary - Core Competencies

| Category Summary | Dr. Finkelstein<br>(n=2) | PGY-<br>Peers<br>(n=19) | All PGYs<br>(n=54) |
|---|---|---|---|
| Interpersonal and Communication Skills | 1.75000 /<br>35.00% | 2.39 /<br>47.89% | 2.42 /<br>48.33% |
| Medical Knowledge | 2.00000 /<br>40.00% | 2.21 /<br>44.21% | 2.21 /<br>44.26% |
| Patient Care and Procedural Skills | 2.00000 /<br>40.00% | 2.32 /<br>46.32% | 2.33 /<br>46.54% |
| Practice-Based Learning and Improvement | 2.00000 /<br>40.00% | 2.21 /<br>44.21% | 2.30 /<br>45.93% |
| Professionalism | 2.00000 /<br>40.00% | 2.53 /<br>50.53% | 2.52 /<br>50.37% |
| System-Based Practices | 2.00000 /<br>40.00% | 2.26 /<br>45.26% | 2.37 /<br>47.41% |
| Overall/Summary | 1.50000 /<br>30.00% | 1.37 /<br>27.37% | 1.37 /<br>27.41% |

| Statistical Analysis Based on a Multiple Scales | | | | | |
|---|---|---|---|---|---|
| n | Std Dev | Median | Mean | Variance | High & Low |
| 2 | 0.32 | 2 | 1.88 | 0.1 | 2 & 1 |

## MULTIPLE SCALES

- MSMC Yes/No
- Mt Sinai Pass/Fail
- Sx Surg



# Mount Sinai
M E D I C A L   C E N T E R

### DEPARTMENT OF SURGERY
### SURGICAL RESIDENT
### SEMI-ANNUAL EVALUATION

RESIDENT NAME:    Paige Finkelstein, MD

DATES:    01/01/19    to    06/23/19    PGY YEAR:    1

FUTURE PLAN:    *Gen / Plastics*

This evaluation is based on demonstrated performance compared to what is reasonably expected of a practitioner at his/her level of training, experience, and background.

| | Superior | Good | Fair | Poor |
|---|---|---|---|---|
| Patient Care | | ✓ | | |
| Medical Knowledge | | | ✓ | |
| Practice Based Learning and Improvement | | ✓ | | |
| Interpersonal Skills | | ✓ | | |
| Communication Skills | | ✓ | ✓ | |
| Professionalism | | ✓ | | |
| System Based Practice | | ✓ | | |

Surgical case list reviewed  128   ABSITE Scores reviewed _____ 2018 _____ %   2019 _31_ %

ACGME/other workshop attendance ____✓____   Work hours compliance (tracking hours) ____✓____

Completes Medical Records in timely and accurate fashion ___✓___

**CORRECTIVE ACTION:**
During the period verified above, was the practitioner ever subject to any disciplinary action, such as admonition, reprimand, suspension, or termination?

Yes _____ No ___✓___   If Yes, details are described on a separate sheet of paper and attached to this form.

EVALUATION:        _____ Highly competent/without reservation        – QI- *visuals mem*
                   _____ Qualified and competent
                   __✓__ Some reservations        *JO vs. CC in cases*
                   _____ See attached letter

Evaluation based on    _____ Close Personal Observation        – *case updates*
                       _____ General Impression
                       _____ Other: 360 evaluations        *↓ need to turn in*

Additional Comments: ____ *– Cesaro  unable  from quick*    *Score questions every*
_____ *– Questions ...  next*    *week*
_____ – *..  for  ABSITE*

Resident Signature: *Paige* _____   Date: _____

Name (Print or Type):    Kfir Ben-David, MD

Signature: _____   Date:  6/17/2019

Title:    Program Director / Associate Program Director, Surgical Residency Program

Individual Resident Evaluations Report                                                Page 1 of 17



## Individual Resident Evaluations Faculty Evaluation of Resident 1-2.



Mount Sinai
MEDICAL CENTER
Department of Surgery

**Mount Sinai Medical Center - Surgery**

Report Date/Time: 12/23/2019 11:52:40 AM

Report Date Range: 06/24/2019 - 12/23/2019

*Resident:* Paige Finkelstein

**Competency** = Average score on competency for selected residents
**Attending Avg** = Average score given by an Attending for each question
**Group** = Average score of all PGYs represented
**Total** = Average score of all PGYs

*Evaluation Completed: 08/21/2019*
*Evaluation Period: 07/01/2019 through 07/31/2019*

*Attending:* Dr. Stephen Unger

*Rotation Name:* Vascular

### Patient Care and Procedural Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets Expectations | 2.72 (n=25) | 2.34 (n=44) | 2.30 (n=141) |
| The resident demonstrates ability to recognize and mange complications.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets Expectations | 2.48 (n=25) | 2.32 (n=44) | 2.22 (n=141) |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets Expectations | 2.24 (n=25) | 2.45 (n=44) | 2.36 (n=141) |

### Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets Expectations | 2.40 (n=25) | 2.27 (n=44) | 2.23 (n=141) |

| The resident demonstrates knowledge of surgical procedures and operations. | 2.00 Meets Expectations | 2.32 (n=25) | 2.34 (n=44) | 2.23 (n=141) |
|---|---|---|---|---|
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | 2.00 Meets Expectations | 2.76 (n=25) | 2.36 (n=44) | 2.28 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | 2.00 Meets Expectations | 2.96 (n=25) | 2.34 (n=44) | 2.38 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Interpersonal and Communication Skills - Category Summary (1.50, 30.04%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | 1.00 Below Expectations | 2.44 (n=25) | 2.32 (n=44) | 2.30 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident practices appropriate communication in the Operating Room | 2.00 Meets Expectations | 2.40 (n=25) | 2.75 (n=44) | 2.43 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | 2.00 Meets Expectations | 2.56 (n=25) | 2.34 (n=44) | 2.26 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates self-directed learning. | 2.00 Meets Expectations | 2.48 (n=25) | 2.43 (n=44) | 2.28 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Overall/Summary - Category Summary (1.50, 29.96%)

| Question | PFinkelstein | | Group | Total |
|---|---|---|---|---|

| | | Attending Avg | | |
|---|---|---|---|---|
| Comments and suggestions for improvement: | 1.00 Pass | 1.00 (n=25) | 1.00 (n=44) | 1.01 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | 2.00 No | 1.88 (n=25) | 1.73 (n=44) | 1.74 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

**Comments**

| | |
|---|---|
| Evaluation Comments: | I thought that Paige had responded to constructive criticism and matured this year and the fact is that she is taking more responsibility and teaching with the junior residents but she still allows her sometimes abrasive and impulsive interactions to surface somehow not recognizing the respectful hierarchy of an academic institution. It is perfectly ok to disagree with attending, but the disagreement has to be both respectful and literature supported and never personal. Part of their issue may be that casual interactions are misinterpreted as permission to criticize attending and senior residents in the same casual manner without respecting the large knowledge and experiential difference between her and the person she is debating. In addition when given direct instructions by a senior resident she is required to follow that directive or at the very least let all involved know that she is not going to follow orders and why.. *Did you provide direct feedback on this evaluation?: No. Signed - Dr. Stephen Unger* |
| Resident Acknowledgement: | *Reviewed/Signed on 08/21/2019:* I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | Great observation. *Reviewed by Dr. Kfir Ben-David, 09/17/2019* |

*Evaluation Completed:* 08/28/2019

*Evaluation Period:* 07/01/2019 through 07/31/2019

*Attending:* **Dr. Micheal Ayad**

*Rotation Name:* **Vascular**

## Patient Care and Procedural Skills - Category Summary (2.33, 46.68%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | 3.00 Exceeds Expectations | 2.44 (n=9) | 2.34 (n=44) | 2.30 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident demonstrates ability to recognize and mange complications. | 2.00 Meets Expectations | 2.33 (n=9) | 2.32 (n=44) | 2.22 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | 2.00 Meets Expectations | 2.78 (n=9) | 2.45 (n=44) | 2.36 (n=141) |

Individual Resident Evaluations Report

Page 4 of 17

*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)*

## Medical Knowledge - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | 3.00 Exceeds Expectations | 2.33 (n=9) | 2.27 (n=44) | 2.23 (n=141) |

*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)*

| | | | | |
|---|---|---|---|---|
| The resident demonstrates knowledge of surgical procedures and operations. | 3.00 Exceeds Expectations | 2.11 (n=9) | 2.34 (n=44) | 2.23 (n=141) |

*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)*

## System-Based Practices - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | 3.00 Exceeds Expectations | 2.33 (n=9) | 2.36 (n=44) | 2.28 (n=141) |

*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)*

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | 2.00 Meets Expectations | 2.44 (n=9) | 2.34 (n=44) | 2.38 (n=141) |

*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)*

## Interpersonal and Communication Skills - Category Summary (2.50, 50.04%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | 2.00 Meets Expectations | 2.44 (n=9) | 2.32 (n=44) | 2.30 (n=141) |

*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)*

| | | | | |
|---|---|---|---|---|
| The resident practices appropriate communication in the Operating Room | 3.00 Exceeds Expectations | 2.56 (n=9) | 2.75 (n=44) | 2.43 (n=141) |

*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)*

## Practice-Based Learning and Improvement - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| | | 2.33 (n=9) | 2.34 (n=44) | 2.26 (n=141) |

Individual Resident Evaluations Report                                        Page 5 of 17

| | | | | |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | 3.00 Exceeds Expectations | | | |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident demonstrates self-directed learning. | 3.00 Exceeds Expectations | 2.56 (n=9) | 2.43 (n=44) | 2.28 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## Overall/Summary - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | 1.00 Pass | 1.00 (n=9) | 1.00 (n=44) | 1.01 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | 1.00 Yes | 1.56 (n=9) | 1.73 (n=44) | 1.74 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## Comments

| | |
|---|---|
| Evaluation Comments: | Paige had continued to improve and she is developing into a very competent second year resident. I am always impressed with her sef directed learning as she often comes back after reading and doing her own literature review with appropriate and interesting questions. From a professional standpoint, I encourage her to continue her efforts as she did very well on the Vascular team. *Did you provide direct feedback on this evaluation?: Yes.* Signed - Dr. Micheal Ayad |
| Resident Acknowledgement: | *Reviewed/Signed on 08/28/2019:* I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | |
| Program Director Comments: | *Reviewed by Dr. Kfir Ben-David, 09/17/2019* |

*Evaluation Completed:* **10/02/2019**                          *Attending:* **Dr. Sarah Abdelfattah**

*Evaluation Period:* **08/01/2019 through 08/31/2019**                    *Rotation Name:* **SICU**

## Patient Care and Procedural Skills - Category Summary (1.67, 33.32%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | 1.00 Below Expectations | 2.00 (n=5) | 2.34 (n=44) | 2.30 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

Individual Resident Evaluations Report                                                    Page 6 of 17

| The resident demonstrates ability to recognize and mange complications. | 2.00 Meets Expectations | 2.40 (n=5) | 2.32 (n=44) | 2.22 (n=141) |
|---|---|---|---|---|
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | 2.00 Meets Expectations | 2.40 (n=5) | 2.45 (n=44) | 2.36 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Medical Knowledge - Category Summary (3.00, 59.92%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | 4.00 Cannot Evaluate | 3.20 (n=5) | 2.27 (n=44) | 2.23 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates knowledge of surgical procedures and operations. | 2.00 Meets Expectations | 2.40 (n=5) | 2.34 (n=44) | 2.23 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | 2.00 Meets Expectations | 2.40 (n=5) | 2.36 (n=44) | 2.28 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Professionalism - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | 1.00 Below Expectations | 2.00 (n=5) | 2.34 (n=44) | 2.38 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Interpersonal and Communication Skills - Category Summary (3.00, 60.08%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | 2.00 Meets Expectations | 2.20 (n=5) | 2.32 (n=44) | 2.30 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident practices appropriate communication in the Operating Room | | 4.00 (n=5) | 2.75 (n=44) | 2.43 (n=141) |

| | | | | |
|---|---|---|---|---|
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 4.00 Cannot Evaluate | | | |

## Practice-Based Learning and Improvement - Category Summary (3.00, 59.92%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | 4.00 Cannot Evaluate | 2.60 (n=5) | 2.34 (n=44) | 2.26 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates self-directed learning. | 2.00 Meets Expectations | 2.40 (n=5) | 2.43 (n=44) | 2.28 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Overall/Summary - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | 1.00 Pass | 1.00 (n=5) | 1.00 (n=44) | 1.01 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | 1.00 Yes | 1.40 (n=5) | 1.73 (n=44) | 1.74 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

Question Comments: Paige has potential and is smart. Less tsocializing and texting on phone would be appreciated.

### Comments

| | |
|---|---|
| Evaluation Comments: | Paige is a smart resident and can offer helpful information on interdisciplinary rounds. However, she continually places herself in situations she does not need to be in and consistently shows poor compassion as well as professionalism. Multiple patients have complained about her bedside manner. Multiple nursing staff have complained about her lack of communication when doing bedside procedures. She also needs to work on being present mentally when on teaching rounds and/or during lectures. She is constantly on her phone texting/laughing/smiling, or socializing with other people unrelated to the ICU team.  When asked, she will do a task but frequently will make excuses and procrastinate. She inappropriately will reprimand junior residents or other staff memebers when she is not in a position to. overall, she has the intelligence to be great; however, her professionalism is very poor. . Signed - Dr. Sarah Abdelfattah |
| Resident Acknowledgement: | *Reviewed/Signed on 10/06/2019:* I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Filed - submitted w/o review comments. |
| Program Director Comments: | Comments Not Available |

Individual Resident Evaluations Report

Page 8 of 17

*Evaluation Completed:* **09/18/2019**
*Evaluation Period:* **08/01/2019 through 08/31/2019**

*Attending:* **Dr. Carolina De la Cuesta**

*Rotation Name:* **SICU**

## Patient Care and Procedural Skills - Category Summary (2.66, 53.27%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | 2.00 Meets Expectations | 2.00 (n=5) | 2.34 (n=44) | 2.30 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates ability to recognize and mange complications. | 2.00 Meets Expectations | 2.20 (n=5) | 2.32 (n=44) | 2.22 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | 4.00 Cannot Evaluate | 3.00 (n=5) | 2.45 (n=44) | 2.36 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Medical Knowledge - Category Summary (3.00, 60.08%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | 2.00 Meets Expectations | 2.00 (n=5) | 2.27 (n=44) | 2.23 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates knowledge of surgical procedures and operations. | 4.00 Cannot Evaluate | 2.40 (n=5) | 2.34 (n=44) | 2.23 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | 2.00 Meets Expectations | 2.20 (n=5) | 2.36 (n=44) | 2.28 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Professionalism - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | 1.00 Below Expectations | 2.20 (n=5) | 2.34 (n=44) | 2.38 (n=141) |

Individual Resident Evaluations Report                                                   Page 9 of 17

| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
|---|---|---|---|---|

## Interpersonal and Communication Skills - Category Summary (3.00, 60.08%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | 2.00 Meets Expectations | 2.40 (n=5) | 2.32 (n=44) | 2.30 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident practices appropriate communication in the Operating Room | 4.00 Cannot Evaluate | 3.60 (n=5) | 2.75 (n=44) | 2.43 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | 2.00 Meets Expectations | 2.00 (n=5) | 2.34 (n=44) | 2.26 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident demonstrates self-directed learning. | 2.00 Meets Expectations | 2.00 (n=5) | 2.43 (n=44) | 2.28 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## Overall/Summary - Category Summary (1.50, 29.96%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | 1.00 Pass | 1.00 (n=5) | 1.00 (n=44) | 1.01 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | 2.00 No | 2.00 (n=5) | 1.73 (n=44) | 1.74 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

### Comments

| Evaluation Comments: | Some of the attendings felt she was not taking this rotation seriosly initially. I would say I have seen improvment towards the end of the rotation where she is more respectful with those attendings. She is a smart resident but needs to mature. She does care for her patients,  and follows closely the very sick ones. good differential diagnosis, always looking out for possible complications. . Signed - Dr. Carolina De la Cuesta |
|---|---|
| Resident Acknowledgement: | Reviewed/Signed on 10/06/2019: I acknowledge receipt of this evaluation. Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein |

Individual Resident Evaluations Report                                                    Page 16 of 17

| Evaluator Acknowledgement: | Comments Not Available |
|---|---|
| Program Director Comments: | Comments Not Available |

*Evaluation Completed:* **10/02/2019**

*Evaluation Period:* **09/01/2019 through 09/30/2019**

*Attending:* **Dr. Sarah Abdelfattah**

*Rotation Name:* **SICU**

## Patient Care and Procedural Skills - Category Summary (1.67, 33.32%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | 1.00 Below Expectations | 2.00 (n=5) | 2.34 (n=44) | 2.30 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident demonstrates ability to recognize and mange complications. | 2.00 Meets Expectations | 2.40 (n=5) | 2.32 (n=44) | 2.22 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | 2.00 Meets Expectations | 2.40 (n=5) | 2.45 (n=44) | 2.36 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## Medical Knowledge - Category Summary (3.00, 59.92%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | 4.00 Cannot Evaluate | 3.20 (n=5) | 2.27 (n=44) | 2.23 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident demonstrates knowledge of surgical procedures and operations. | 2.00 Meets Expectations | 2.40 (n=5) | 2.34 (n=44) | 2.23 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | 2.00 Meets Expectations | 2.40 (n=5) | 2.36 (n=44) | 2.28 (n=141) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

Individual Resident Evaluations Report                                                                Page 11 of 17

## Professionalism - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 1.00 Below Expectations | 2.00 (n=5) | 2.34 (n=44) | 2.38 (n=141) |

## Interpersonal and Communication Skills - Category Summary (2.51, 50.11%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 1.00 Below Expectations | 2.20 (n=5) | 2.32 (n=44) | 2.30 (n=141) |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 4.00 Cannot Evaluate | 4.00 (n=5) | 2.75 (n=44) | 2.43 (n=141) |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 Meets Expectations | 2.60 (n=5) | 2.34 (n=44) | 2.26 (n=141) |
| The resident demonstrates self-directed learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 Meets Expectations | 2.40 (n=5) | 2.43 (n=44) | 2.28 (n=141) |

## Overall/Summary - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 1.00 Pass | 1.00 (n=5) | 1.00 (n=44) | 1.01 (n=141) |
| Did you have a face to face discussion about this evaluation with the resident?<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 1.00 Yes | 1.40 (n=5) | 1.73 (n=44) | 1.74 (n=141) |

**Comments**

| Evaluation Comments: | Paige is a smart resident and can give helpful information on interdisciplinary rounds. However, she continually places herself in situations that she does not need to be |
|---|---|

Individual Resident Evaluations Report

| | involved in and she consistently has been difficult to work with in terms of professionalism and compassion. Multiple patients have complained about her bedside manner. Multiple nursing staff have complained about her lack of communication when doing bedside procedures.  She needs to work on being more present mentally during group discussions as she is continually on her phone texting, smiling/laughing, or socializing with other people while other residents are listening to the attending's lecture at the bedside. ( This is unrelated to the recent change in patient list being on Haiku versus on paper. ) . *Signed - Dr. Sarah Abdelfattah* |
|---|---|
| Resident Acknowledgement: | *Reviewed/Signed on 10/06/2019:* I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: **No**, throughout the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Filed – submitted w/o review comments. |
| Program Director Comments: | Comments Not Available |

*Evaluation Completed:* **10/05/2019**

*Evaluation Period:* **09/01/2019 through 09/30/2019**

*Attending:* **Dr. Carolina De la Cuesta**

*Rotation Name:* **SICU**

## Patient Care and Procedural Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets<br>Expectations | 2.00 (n=5) | 2.34 (n=44) | 2.30 (n=141) |
| The resident demonstrates ability to recognize and mange complications.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets<br>Expectations | 2.20 (n=5) | 2.32 (n=44) | 2.22 (n=141) |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets<br>Expectations | 3.00 (n=5) | 2.45 (n=44) | 2.36 (n=141) |

## Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets<br>Expectations | 2.00 (n=5) | 2.27 (n=44) | 2.23 (n=141) |
| The resident demonstrates knowledge of surgical procedures and operations.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets<br>Expectations | 2.40 (n=5) | 2.34 (n=44) | 2.23 (n=141) |

Individual Resident Evaluations Report                                            Page 15 of 17

### System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | 2.00 Meets Expectations | 2.20 (n=5) | 2.36 (n=44) | 2.28 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | 2.00 Meets Expectations | 2.20 (n=5) | 2.34 (n=44) | 2.38 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | 2.00 Meets Expectations | 2.40 (n=5) | 2.32 (n=44) | 2.30 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident practices appropriate communication in the Operating Room | 2.00 Meets Expectations | 3.60 (n=5) | 2.75 (n=44) | 2.43 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | 2.00 Meets Expectations | 2.00 (n=5) | 2.34 (n=44) | 2.26 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates self-directed learning. | 2.00 Meets Expectations | 2.00 (n=5) | 2.43 (n=44) | 2.28 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### Overall/Summary - Category Summary (1.50, 29.96%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | 1.00 Pass | 1.00 (n=5) | 1.00 (n=44) | 1.01 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

Individual Resident Evaluations Report

Page 14 of 17

| Question Comments: . | | | | |
|---|---|---|---|---|
| Did you have a face to face discussion about this evaluation with the resident? | 2.00 No | 2.00 (n=5) | 1.73 (n=44) | 1.74 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

**Comments**

| Evaluation Comments: | there was some improvement from previous month she seemed more mature and poised. *Did you provide direct feedback on this evaluation?: No. Signed - Dr. Carolina De la Cuesta* |
|---|---|
| Resident Acknowledgement: | *Reviewed/Signed on 10/06/2019:* I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | Comments Not Available |

*Evaluation Completed:* **12/04/2019**

*Attending:* **Dr. Ivan Puente**

*Evaluation Period:* **10/07/2019 through 11/30/2019**

*Rotation Name:* **Trauma/Critical Care/Gen Sx Broward Health**

## Patient Care and Procedural Skills - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | 3.00 Exceeds Expectations | 2.25 (n=4) | 2.34 (n=44) | 2.30 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates ability to recognize and mange complications. | 3.00 Exceeds Expectations | 2.25 (n=4) | 2.32 (n=44) | 2.22 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | 3.00 Exceeds Expectations | 2.25 (n=4) | 2.45 (n=44) | 2.36 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | 2.00 Meets Expectations | 2.00 (n=4) | 2.27 (n=44) | 2.23 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

| | | | | |
|---|---|---|---|---|
| The resident demonstrates knowledge of surgical procedures and operations. | 2.00 Meets Expectations | 2.00 (n=4) | 2.34 (n=44) | 2.23 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### System-Based Practices - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | 3.00 Exceeds Expectations | 2.25 (n=4) | 2.36 (n=44) | 2.28 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### Professionalism - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | 3.00 Exceeds Expectations | 2.50 (n=4) | 2.34 (n=44) | 2.38 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | 2.00 Meets Expectations | 2.00 (n=4) | 2.32 (n=44) | 2.30 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident practices appropriate communication in the Operating Room | 2.00 Meets Expectations | 2.00 (n=4) | 2.75 (n=44) | 2.43 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### Practice-Based Learning and Improvement - Category Summary (3.00, 60.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | 3.00 Exceeds Expectations | 2.25 (n=4) | 2.34 (n=44) | 2.26 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates self-directed learning. | 3.00 Exceeds Expectations | 2.50 (n=4) | 2.43 (n=44) | 2.28 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### Overall/Summary - Category Summary (1.50, 29.96%)

| | PFinkelstein | | | |
|---|---|---|---|---|

Individual Resident Evaluations Report                                    Page 16 of 17

| Question | | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | 1.00 Pass | 1.00 (n=4) | 1.00 (n=44) | 1.01 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | 2.00 No | 1.50 (n=4) | 1.73 (n=44) | 1.74 (n=141) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

**Comments**

| | |
|---|---|
| Evaluation Comments: | Paige performed very well on this clinical rotation.  She was challenged initially by the acuity level and responsibilities as she did not have significant previous experience in critical care.  During the rotation she showed steady and significant progress in managing very critical patients.<br><br>I met with her twice regarding administrative issues.  One involved staying past her scheduled work hours on her post-call days.  She expressed concern about leaving without finishing her work.  We discussed ways of signing off her responsibilities to the other residents and leaving on time.  We discussed the importance of adhering to the 80-hour limit.  She was offered assistance in helping her feel comfortable with signing off any peding matters to the senior resident or the attending.<br><br>The second administrative issue involved a personal interaction with one of the physical therapists that was perceived as dismissive.  Although she did not perceive an issue, she was receptive to the opinion of the therapist.  We discussed some better ways to interrupt a PT session in order to provide patient care and she agreed.. *Did you provide direct feedback on this evaluation?: No. Signed – Dr. Ivan Puente* |
| Resident Acknowledgement: | *Reviewed/Signed on 12/04/2019:* Thanks Dr. Puente. Like you said, we don't have the same kind of critically ill patients at MSMC so this was a great learning experience. I feel like I came a long way and feel comfortable managing these kinds of sick patients now. I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: Yes. Signed – Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | Comments Not Available |

**Summary** - Core Competencies

| Category Summary | Dr. Finkelstein (n=7) | PGY-Peers (n=44) | All PGYs (n=141) |
|---|---|---|---|
| Interpersonal and Communication Skills | 2.35714 / 47.14% | 2.53 / 50.68% | 2.37 / 47.38% |
| Medical Knowledge | 2.57143 / 51.43% | 2.31 / 46.14% | 2.23 / 44.54% |
| Patient Care and Procedural Skills | 2.19048 / 43.81% | 2.37 / 47.42% | 2.29 / 45.86% |
| Practice-Based Learning and Improvement | 2.42857 / 48.57% | 2.39 / 47.73% | 2.27 / 45.32% |

Individual Resident Evaluations Report

| | | | |
|---|---|---|---|
| Professionalism | 1.71429 / 34.29% | 2.34 / 46.82% | 2.38 / 47.66% |
| System-Based Practices | 2.28571 / 45.71% | 2.36 / 47.27% | 2.28 / 45.67% |
| Overall/Summary | 1.28571 / 25.71% | 1.36 / 27.27% | 1.37 / 27.45% |

| Statistical Analysis Based on a Multiple Scales | | | | | |
|---|---|---|---|---|---|
| n | Std Dev | Median | Mean | Variance | High & Low |
| 7 | 0.82 | 2 | 2.14 | 0.67 | 4 & 1 |

MULTIPLE SCALES

- MSMC Yes/No
- Mt Sinai Pass/Fail
- Sx Surg

This document contains confidential peer review information to be used in the assessment of the quality of the delivery of healthcare. This document and the information in it are confidential and should not be distributed outside the relevant review committees, and appropriate hospital personnel.

A confidential report prepared for Mount Sinai Medical Center – Surgery Copyright © 1998 - 2020 MyEvaluations.com



# Mount Sinai
MEDICAL CENTER

**DEPARTMENT OF SURGERY
SURGICAL RESIDENT
SEMI-ANNUAL EVALUATION**

RESIDENT NAME:   Paige Finkelstein, MD

DATES:   07/01/2019   to   12/31/2019   PGY YEAR:   2

FUTURE PLAN:   Unknown

This evaluation is based on demonstrated performance compared to what is reasonably expected of a practitioner at his/her level of training, experience, and background.

|  | Superior | Good | Fair | Poor |
|---|---|---|---|---|
| Patient Care |  |  | ✓ |  |
| Medical Knowledge |  |  |  | ✓ |
| Practice Based Learning and Improvement |  |  | ✓ |  |
| Interpersonal Skills |  |  | ✓ |  |
| Communication Skills |  |  |  | ✓ |
| Professionalism |  |  |  | ✓ |
| System Based Practice |  |  | ✓ |  |

Surgical case list reviewed __212__ ABSITE Scores reviewed _____ 2017____ % 2018 _31_ %

ACGME/other workshop attendance _____   Work hours compliance (tracking hours) _____

Completes Medical Records in timely and accurate fashion _____

CORRECTIVE ACTION:
During the period verified above, was the practitioner ever subject to any disciplinary action, such as admonition, reprimand, suspension, or termination?

Yes _✓_ No _____   If Yes, details are described on a separate sheet of paper and attached to this form. *See previous evaluation + semi-annual eval*

EVALUATION:   _____ Highly competent/without reservation
_____ Qualified and competent
_____ Some reservations
_✓_ See attached letter

Evaluation based on   _✓_ Close Personal Observation
_✓_ General Impression
_✓_ Other: 360 evaluations

Additional Comments:   *Academic Probation as noted in the letter attached.*

Resident Signature: _____   Date: _____

Name (Print or Type):   Kfir Ben-David, MD / Philip Bao, MD

Signature: _____   Date: _12/00/2019_

Title:   Program Director / Associate Program Director, Surgical Residency Program

5/6/2020                                                      Individual Resident Evaluations Report



# Individual Resident Evaluations
# Faculty Evaluation of Resident 1-2.

Mount Sinai
MEDICAL CENTER
Department of Surgery

## Mount Sinai Medical Center - Surgery

**Report Date Range:** 12/12/2019 - 05/06/2020

Report Date/Time: 5/6/2020 1:35:51 PM

*Resident:* Paige Finkelstein

**Competency** = Average score on competency for selected residents
**Attending Avg** = Average score given by an Attending for each question
**Group** = Average score of all PGYs represented
**Total** = Average score of all PGYs

*Evaluation Completed:* 03/15/2020
*Evaluation Period:* 01/01/2020 through
02/29/2020

*Attending:* Dr. Stephen Unger

*Rotation Name:* Vascular

## Patient Care and Procedural Skills - Category Summary (2.33, 46.68%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. <br><br> *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.56 (n=16) | 2.17 (n=23) | 2.29 (n=79) |
| The resident demonstrates ability to recognize and mange complications. <br><br> *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **3.00** Exceeds Expectations | 2.44 (n=16) | 2.22 (n=23) | 2.24 (n=79) |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. <br><br> *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.19 (n=16) | 1.96 (n=23) | 2.29 (n=79) |

## Medical Knowledge - Category Summary (2.50, 49.97%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. <br><br> *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **3.00** Exceeds Expectations | 2.63 (n=16) | 2.17 (n=23) | 2.20 (n=79) |
| The resident demonstrates knowledge of surgical procedures and operations. <br><br> *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.06 (n=16) | 2.09 (n=23) | 2.19 (n=79) |

## System-Based Practices - Category Summary (2.00, 40.00%)

| | PFinkelstein | | | |
|---|---|---|---|---|

5/6/2020

Individual Resident Evaluations Report

| Question | | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets Expectations | 2.56 (n=16) | 2.17 (n=23) | 2.29 (n=79) |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets Expectations | 2.75 (n=16) | 2.39 (n=23) | 2.47 (n=79) |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets Expectations | 2.25 (n=16) | 2.22 (n=23) | 2.29 (n=79) |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets Expectations | 2.31 (n=16) | 2.39 (n=23) | 2.46 (n=79) |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets Expectations | 2.38 (n=16) | 2.13 (n=23) | 2.25 (n=79) |
| The resident demonstrates self-directed learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets Expectations | 2.50 (n=16) | 2.17 (n=23) | 2.28 (n=79) |

## Overall/Summary - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>Pass | 1.00 (n=16) | 1.00 (n=23) | 1.00 (n=79) |
| Did you have a face to face discussion about this evaluation with the resident?<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>Yes | 1.81 (n=16) | 1.65 (n=23) | 1.66 (n=79) |

5/6/2020                                    Individual Resident Evaluations Report

## Comments

| Evaluation Comments: | This has been a very difficult rotation in that there is a lot of pressure on Paige to perform under fairly intense scrutiny. She has actually done everything we have asked of her. She still has occasional lapses of professionalism but her overall performance has been acceptable. I was particularly impressed by her stepping up and running the service when her senior resident was away. Most of the time her technical skills are up to level.. *Did you provide direct feedback on this evaluation?: No. Signed - Dr. Stephen Unger* |
|---|---|
| Resident Acknowledgement: | *Reviewed/Signed on 04/08/2020:* I acknowledge Dr. Unger's comments but do not agree with occasional lapses in professionalism. During my rotations I have specifically asked if he wanted to tell me anything professionalism related before the evaluation and he said I was doing a great job. I think it would be more helpful to address anything he felt was an issue at the time. This comment is very vague and makes it difficult for me to take specific actions to improve. I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | Not Filed |

*Evaluation Completed: 03/25/2020*

*Evaluation Period: 01/01/2020 through 02/29/2020*

*Attending:* **Dr. Micheal Ayad**

*Rotation Name:* **Vascular**

## Patient Care and Procedural Skills - Category Summary (2.33, 46.68%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.20 (n=5) | 2.17 (n=23) | 2.29 (n=79) |
| The resident demonstrates ability to recognize and mange complications.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **3.00** Exceeds Expectations | 2.60 (n=5) | 2.22 (n=23) | 2.24 (n=79) |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.40 (n=5) | 1.96 (n=23) | 2.29 (n=79) |

## Medical Knowledge - Category Summary (2.50, 50.03%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.20 (n=5) | 2.17 (n=23) | 2.20 (n=79) |
| The resident demonstrates knowledge of surgical procedures and operations.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **3.00** Exceeds Expectations | 2.20 (n=5) | 2.09 (n=23) | 2.19 (n=79) |

5/6/2020                                          Individual Resident Evaluations Report

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.20 (n=5) | 2.17 (n=23) | 2.29 (n=79) |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.40 (n=5) | 2.39 (n=23) | 2.47 (n=79) |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.40 (n=5) | 2.22 (n=23) | 2.29 (n=79) |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.60 (n=5) | 2.39 (n=23) | 2.46 (n=79) |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.00 (n=5) | 2.13 (n=23) | 2.25 (n=79) |
| The resident demonstrates self-directed learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.00 (n=5) | 2.17 (n=23) | 2.28 (n=79) |

## Overall/Summary - Category Summary (1.50, 29.97%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00** Pass | 1.00 (n=5) | 1.00 (n=23) | 1.00 (n=79) |
| Did you have a face to face discussion about this evaluation with the resident? | **2.00** No | 1.60 (n=5) | 1.65 (n=23) | 1.66 (n=79) |

5/6/2020                                        Individual Resident Evaluations Report

| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | | |

## Comments

| Evaluation Comments: | Paige is a bright resident with very good fund of knowledge<br>Her interpersonal skills have improved compared to previous months<br>She is a reliable resident on the Vascular service. *Did you provide direct feedback on this evaluation?: Yes. Signed - Dr. Micheal Ayad* |
|---|---|
| Resident Acknowledgement: | *Reviewed/Signed on 03/27/2020: Thanks. I acknowledge receipt of this evaluation. Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein* |
| Evaluator Acknowledgement: | |
| Program Director Comments: | Not Filed |

*Evaluation Completed: 04/22/2020*                                    *Attending:* **Dr. Thomas Mesko**
*Evaluation Period: 03/01/2020 through*
*03/31/2020*                                                          *Rotation Name:* Dembrow

## Patient Care and Procedural Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets<br>Expectations | 2.00 (n=8) | 2.17 (n=23) | 2.29 (n=79) |
| The resident demonstrates ability to recognize and mange complications.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets<br>Expectations | 2.00 (n=8) | 2.22 (n=23) | 2.24 (n=79) |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets<br>Expectations | 2.00 (n=8) | 1.96 (n=23) | 2.29 (n=79) |

## Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets<br>Expectations | 2.00 (n=8) | 2.17 (n=23) | 2.20 (n=79) |
| The resident demonstrates knowledge of surgical procedures and operations.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets<br>Expectations | 2.00 (n=8) | 2.09 (n=23) | 2.19 (n=79) |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|

5/6/2020           Individual Resident Evaluations Report

| | | | | |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets Expectations | 2.00 (n=8) | 2.17 (n=23) | 2.29 (n=79) |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets Expectations | | 2.39 (n=23) | 2.47 (n=79) |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets Expectations | 2.13 (n=8) | 2.22 (n=23) | 2.29 (n=79) |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets Expectations | 2.00 (n=8) | 2.39 (n=23) | 2.46 (n=79) |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets Expectations | 2.00 (n=8) | 2.13 (n=23) | 2.25 (n=79) |
| The resident demonstrates self-directed learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets Expectations | 2.00 (n=8) | 2.17 (n=23) | 2.28 (n=79) |

## Overall/Summary - Category Summary (1.50, 29.97%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>Pass | 1.00 (n=8) | 1.00 (n=23) | 1.00 (n=79) |
| Did you have a face to face discussion about this evaluation with the resident?<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>No | 2.00 (n=8) | 1.65 (n=23) | 1.66 (n=79) |

**Comments**

5/6/2020                                    Individual Resident Evaluations Report

| Evaluation Comments: | Paige has definitely shown her dedication to becoming a strong resident. This extra effort is noted. Her knowledge base is very good, her patient care is fine and she is definitely showing her desire in the operating room. She seems more comfortable working collaboratively with the surgical team. Good work!. *Did you provide direct feedback on this evaluation?: No.* Signed - Dr. Thomas Mesko |
|---|---|
| Resident Acknowledgement: | *Reviewed/Signed on 04/23/2020:* I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation.* Signed - Dr. Paige Finkelstein |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | Not Filed |

*Evaluation Completed: 04/15/2020*                                    *Attending:* **Dr. Juan Paramo**
*Evaluation Period: 03/01/2020 through 03/31/2020*                                    *Rotation Name:* Dembrow

### Patient Care and Procedural Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.10 (n=10) | 2.17 (n=23) | 2.29 (n=79) |
| The resident demonstrates ability to recognize and mange complications.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.10 (n=10) | 2.22 (n=23) | 2.24 (n=79) |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.00 (n=10) | 1.96 (n=23) | 2.29 (n=79) |

### Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.00 (n=10) | 2.17 (n=23) | 2.20 (n=79) |
| The resident demonstrates knowledge of surgical procedures and operations.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.00 (n=10) | 2.09 (n=23) | 2.19 (n=79) |

### System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | **2.00** Meets Expectations | 2.10 (n=10) | 2.17 (n=23) | 2.29 (n=79) |

Individual Resident Evaluations Report

| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
|---|---|---|---|---|

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg. | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | 2.00 Meets Expectations | 2.40 (n=10) | 2.39 (n=23) | 2.47 (n=79) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg. | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | 2.00 Meets Expectations | 2.40 (n=10) | 2.22 (n=23) | 2.29 (n=79) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident practices appropriate communication in the Operating Room | 2.00 Meets Expectations | 2.00 (n=10) | 2.39 (n=23) | 2.46 (n=79) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg. | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | 2.00 Meets Expectations | 2.20 (n=10) | 2.13 (n=23) | 2.25 (n=79) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident demonstrates self-directed learning. | 2.00 Meets Expectations | 2.20 (n=10) | 2.17 (n=23) | 2.28 (n=79) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## Overall/Summary - Category Summary (1.50, 29.97%)

| Question | PFinkelstein | Attending Avg. | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | 1.00 Pass | 1.00 (n=10) | 1.00 (n=23) | 1.00 (n=79) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | 2.00 No | 2.00 (n=10) | 1.65 (n=23) | 1.66 (n=79) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

### Comments

| Evaluation Comments: | Is definitely making an effort to improve. She is progressing in the right direction. . *Did you provide direct feedback on this evaluation?: No.* Signed - Dr. Juan Paramo |
|---|---|

Individual Resident Evaluations Report

| Resident Acknowledgement: | *Reviewed/Signed on 04/15/2020:* I acknowledge receipt of this evaluation. *Did the evaluator provide you with direct feedback on this evaluation?: No, throughout the rotation. Signed - Dr. Paige Finkelstein* |
|---|---|
| Evaluator Acknowledgement: | Filed - submitted w/o review comments. |
| Program Director Comments: | Not Filed |

*Evaluation Completed:* 04/03/2020

*Evaluation Period:* 03/01/2020 through 03/31/2020

*Attending:* Dr. Norberto Garcia-Henriquez

*Rotation Name:* Dembrow

## Patient Care and Procedural Skills - Category Summary (1.67, 33.36%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets Expectations | 2.50 (n=10) | 2.17 (n=23) | 2.29 (n=79) |
| The resident demonstrates ability to recognize and mange complications.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets Expectations | 2.40 (n=10) | 2.22 (n=23) | 2.24 (n=79) |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 1.00<br>Below Expectations | 2.70 (n=10) | 1.96 (n=23) | 2.29 (n=79) |

## Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets Expectations | 2.30 (n=10) | 2.17 (n=23) | 2.20 (n=79) |
| The resident demonstrates knowledge of surgical procedures and operations.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets Expectations | 2.20 (n=10) | 2.09 (n=23) | 2.19 (n=79) |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00<br>Meets Expectations | 2.60 (n=10) | 2.17 (n=23) | 2.29 (n=79) |

## Professionalism - Category Summary (2.00, 40.00%)

5/6/2020

Individual Resident Evaluations Report

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets<br>Expectations | 2.90 (n=10) | 2.39 (n=23) | 2.47 (n=79) |

## Interpersonal and Communication Skills - Category Summary (1.50, 30.03%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>Below<br>Expectations | 2.70 (n=10) | 2.22 (n=23) | 2.29 (n=79) |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets<br>Expectations | 2.90 (n=10) | 2.39 (n=23) | 2.46 (n=79) |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets<br>Expectations | 2.60 (n=10) | 2.13 (n=23) | 2.25 (n=79) |
| The resident demonstrates self-directed learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>Meets<br>Expectations | 2.60 (n=10) | 2.17 (n=23) | 2.28 (n=79) |

## Overall/Summary - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>Pass | 1.00 (n=10) | 1.00 (n=23) | 1.00 (n=79) |
| Did you have a face to face discussion about this evaluation with the resident?<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>Yes | 1.70 (n=10) | 1.65 (n=23) | 1.66 (n=79) |

## Comments

| Evaluation Comments: | This resident has a lot to learn on multiple levels.<br>1. Needs to learn how to talk to people. She on occasion can be quite abrasive with the hospital staff, nurses and doctors alike.<br>2. Needs to read more<br>3. Needs to find more time to be in the operating room<br>4. Lacks humility and at times can come across as arrogant.<br>I have had an extensive talk with this resident specifically addressing the above mentioned points. She has expressed understanding and has told me that she wants to be better and will |
|---|---|

5/6/2020                                                    Individual Resident Evaluations Report

| | continue to work on all that we discussed. . *Did you provide direct feedback on this evaluation?: Yes. Signed - Dr. Norberto Garcia-Henriquez* |
|---|---|
| Resident Acknowledgement: | Comments Not Available |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | Not Filed |

**Summary - Core Competencies**

| Category Summary | Dr. Finkelstein (n=5) | PGY- Peers (n=23) | All PGYs (n=79) |
|---|---|---|---|
| Interpersonal and Communication Skills | 1.90000 / 38.00% | 2.30 / 46.09% | 2.37 / 47.47% |
| Medical Knowledge | 2.20000 / 44.00% | 2.13 / 42.61% | 2.20 / 43.92% |
| Patient Care and Procedural Skills | 2.06667 / 41.33% | 2.12 / 42.32% | 2.27 / 45.49% |
| Practice-Based Learning and Improvement | 2.00000 / 40.00% | 2.15 / 43.04% | 2.27 / 45.32% |
| Professionalism | 2.00000 / 40.00% | 2.39 / 47.83% | 2.47 / 49.37% |
| System-Based Practices | 2.00000 / 40.00% | 2.17 / 43.48% | 2.29 / 45.82% |
| Overall/Summary | 1.30000 / 26.00% | 1.33 / 26.52% | 1.33 / 26.58% |

| Statistical Analysis Based on a Multiple Scales | | | | | |
|---|---|---|---|---|---|
| n | Std Dev | Median | Mean | Variance | High & Low |
| 5 | 0.44 | 2 | 1.92 | 0.19 | 3 & 1 |

**MULTIPLE SCALES**

- MSMC Yes/No
- Mt Sinai Pass/Fail
- Sx Surg

This document contains confidential peer review information to be used in the assessment of the quality of the delivery of healthcare. This document and the information in it are confidential and should not be distributed outside the relevant review committees, and appropriate hospital personnel.

A confidential report prepared for Mount Sinai Medical Center - Surgery Copyright © 1998 - 2020 MyEvaluations.com



# Mount Sinai
MEDICAL CENTER

**DEPARTMENT OF SURGERY
SURGICAL RESIDENT
SEMI-ANNUAL EVALUATION**

RESIDENT NAME:   Paige Finkelstein, MD

DATES:   01/01/2020   to   06/23/2020   PGY YEAR:   **2**

FUTURE PLAN:   *Break / 10mh*

This evaluation is based on demonstrated performance compared to what is reasonably expected of a practitioner at his/her level of training, experience, and background.

| | Superior | Good | Fair | Poor |
|---|---|---|---|---|
| Patient Care | | ✓ | | |
| Medical Knowledge | | | ✓ | |
| Practice Based Learning and Improvement | | ✓ | | |
| Interpersonal Skills | | ✓ | | |
| Communication Skills | | ✓ | | |
| Professionalism | | ✓ | | |
| System Based Practice | | ✓ | | |

Surgical case list reviewed **3/4**   ABSITE Scores reviewed 2019 **31** %   2020 **21** %   2021 _____ %

ACGME/other workshop attendance   ✓   Work hours compliance (tracking hours)   ✓

Completes Medical Records in timely and accurate fashion   ✓

CORRECTIVE ACTION:
During the period verified above, was the practitioner ever subject to any disciplinary action, such as admonition, reprimand, suspension, or termination?   *See previa arts / Probate*

Yes  ✓  No _____   If Yes, details are described on a separate sheet of paper and attached to this form.

EVALUATION:   _____ Highly competent/without reservation
   ✓   Qualified and competent   *IRB*
   _____ Some reservations → *Professional*   *- Appy*
   _____ See attached letter   *m*

Evaluation based on   _____ Close Personal Observation
   ✓   General Impression
   _____ Other: **360 evaluations**

Additional Comments:   - *Move on to PGY-3 cat*
- *Continue focused remediation c Med disease*
- *improve ABS2 78*

Resident Signature:   *Paige Finkelstein*   Date: _____

Name (Print or Type):   **Kfir Ben-David, MD / Philip Bao, MD**

Signature:   _____   Date: **6/11/2020**

Title:   **Program Director / Associate Program Director, Surgical Residency Program**



# Individual Resident Evaluations Faculty Evaluation of Resident 3-4.

**Mount Sinai**
MEDICAL CENTER
Department of Surgery

## Mount Sinai Medical Center - Surgery

**Report Date/Time: 10/13/2020 11:31:36 AM**

**Report Date Range:** 06/24/2020 - 10/13/2020

*Resident:* **Paige Finkelstein**

**Competency** = Average score on competency for selected residents
**Attending Avg** = Average score given by an Attending for each question
**Group** = Average score of all PGYs represented
**Total** = Average score of all PGYs

*Evaluation Completed:* **09/21/2020**

*Attending:* **Dr. Philip Bao**

*Evaluation Period:* **07/01/2020 through 08/31/2020**

*Rotation Name:* **GI Surgery**

### Patient Care and Procedural Skills - Category Summary (2.67, 53.36%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | 2.00 Meets Expectations | 2.00 (n=1) | 1.93 (n=14) | 2.10 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates ability to recognize and mange complications. | 4.00 Cannot Evaluate | 4.00 (n=1) | 2.21 (n=14) | 2.24 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | 2.00 Meets Expectations | 2.00 (n=1) | 1.71 (n=14) | 1.79 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

### Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | 2.00 Meets Expectations | 2.00 (n=1) | 1.86 (n=14) | 1.90 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

Individual Resident Evaluations Report

| | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of surgical procedures and operations. | **2.00** Meets Expectations | 2.00 (n=1) | 1.79 (n=14) | 1.90 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | **2.00** Meets Expectations | 2.00 (n=1) | 2.29 (n=14) | 2.21 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | **2.00** Meets Expectations | 2.00 (n=1) | 1.93 (n=14) | 2.28 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | **2.00** Meets Expectations | 2.00 (n=1) | 2.00 (n=14) | 2.21 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident practices appropriate communication in the Operating Room | **2.00** Meets Expectations | 2.00 (n=1) | 2.14 (n=14) | 2.28 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Practice-Based Learning and Improvement - Category Summary (2.50, 50.08%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | **1.00** Below Expectations | 1.00 (n=1) | 2.14 (n=14) | 2.14 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates self-directed learning. | **4.00** Cannot Evaluate | 4.00 (n=1) | 2.21 (n=14) | 2.14 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Overall/Summary - Category Summary (1.50, 29.97%)

| Question | PFinkelstein | | Group | Total |
|---|---|---|---|---|

Individual Resident Evaluations Report

| | | Attending Avg | | |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>Pass | 1.00 (n=1) | 1.29 (n=14) | 1.14 (n=29) |
| Did you have a face to face discussion about this evaluation with the resident?<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>No | 2.00 (n=1) | 1.71 (n=14) | 1.76 (n=29) |

**Comments**

| Evaluation Comments: | We did some cases together (primarily cholecystectomy and appendectomy) and Dr. F performed reasonably well. Knows the steps of the procedures with moderate need for direction during the case particularly if the dissection is more difficult. Technical areas to improve include instrument handling efficiency and tissue handling.<br><br>We discussed consults and patient care as well during the rotation. Strength area is the confidence to come up with a diagnostic or treatment plan. When communicating about a case sometimes key pieces of information are omitted or glossed over, unclear whether purposefully or unintentionally, but can influence the evaluation. An area of improvement is thus to try avoid prejudging a case/diagnosis and really looking at the available data to make sure the story is consistent before moving forward. I would probably prefer more direct phone calls than text messaging in this regard to try make sure information is not missed.   *. Did you provide direct feedback on this evaluation?: No. Signed - Dr. Philip Bao* |
|---|---|
| Resident Acknowledgement: | Comments Not Available |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | *Reviewed by Dr. Kfir Ben-David, 09/29/2020* |

Evaluation Completed: **09/10/2020**

Evaluation Period: **07/01/2020 through 08/31/2020**

*Attending:* **Dr. Kfir Ben-David**

*Rotation Name:* **GI Surgery**

**Patient Care and Procedural Skills** - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>Below Expectations | 1.00 (n=1) | 1.93 (n=14) | 2.10 (n=29) |
| The resident demonstrates ability to recognize and mange complications.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>Below Expectations | 1.00 (n=1) | 2.21 (n=14) | 2.24 (n=29) |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | **1.00**<br>Below Expectations | 1.00 (n=1) | 1.71 (n=14) | 1.79 (n=29) |

Individual Resident Evaluations Report

| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
|---|---|---|---|---|

## Medical Knowledge - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | **1.00** Below Expectations | 1.00 (n=1) | 1.86 (n=14) | 1.90 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates knowledge of surgical procedures and operations. | **1.00** Below Expectations | 1.00 (n=1) | 1.79 (n=14) | 1.90 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | **2.00** Meets Expectations | 2.00 (n=1) | 2.29 (n=14) | 2.21 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Professionalism - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | **1.00** Below Expectations | 1.00 (n=1) | 1.93 (n=14) | 2.28 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | **2.00** Meets Expectations | 2.00 (n=1) | 2.00 (n=14) | 2.21 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident practices appropriate communication in the Operating Room. | **2.00** Meets Expectations | 2.00 (n=1) | 2.14 (n=14) | 2.28 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| | | 2.00 (n=1) | 2.14 (n=14) | 2.14 (n=29) |

Individual Resident Evaluations Report

| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | **2.00**<br>**Meets**<br>**Expectations** | | | |
|---|---|---|---|---|
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates self-directed learning. | **2.00**<br>**Meets**<br>**Expectations** | 2.00 (n=1) | 2.21 (n=14) | 2.14 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Overall/Summary - Category Summary (1.50, 30.03%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | **2.00**<br>**Fail** | 2.00 (n=1) | 1.29 (n=14) | 1.14 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | **1.00**<br>**Yes** | 1.00 (n=1) | 1.71 (n=14) | 1.76 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

**Comments**

| Evaluation Comments: | Paige is struggling significantly as a third year residents. Her medical knowledge is way below expectation and more concerning is her surgical skills. Her laparoscopic skills are very poor and way below a third year level resident. She doesn't listen in the operating room when instructed to do certain maneuvers and clearly doesn't prepare for an operation like a third year resident needs to. She does not practice before coming to the OR and makes multiple excuses for her below expectation performance. She is not capable of doing any surgical procedure without significant assistance and guidance. This is very disappointing. Her clinical presentation is not succinct and her plan is weak for a third year resident. I am extremely concerned about her overall progress considering her ongoing professional issues within the department and medical center, surgical skills, and medical knowledge. . *Did you provide direct feedback on this evaluation?: Yes. Signed - Dr. Kfir Ben-David* |
|---|---|
| Resident Acknowledgement: | Comments Not Available |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | *Reviewed by Dr. Kfir Ben-David, 09/10/2020* |

---

*Evaluation Completed:* **10/02/2020**

*Attending:* **Dr. Juan Paramo**

*Evaluation Period:* **06/24/2020 through 09/16/2020**

*Rotation Name:* **Global**

## Patient Care and Procedural Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | **2.00**<br>**Meets**<br>**Expectations** | 2.60 (n=5) | 1.93 (n=14) | 2.10 (n=29) |

Individual Resident Evaluations Report

| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
|---|---|---|---|---|
| The resident demonstrates ability to recognize and mange complications. *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 Meets Expectations | 2.20 (n=5) | 2.21 (n=14) | 2.24 (n=29) |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 Meets Expectations | 2.00 (n=5) | 1.71 (n=14) | 1.79 (n=29) |

## Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 Meets Expectations | 2.00 (n=5) | 1.86 (n=14) | 1.90 (n=29) |
| The resident demonstrates knowledge of surgical procedures and operations. *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 Meets Expectations | 2.00 (n=5) | 1.79 (n=14) | 1.90 (n=29) |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 Meets Expectations | 2.40 (n=5) | 2.29 (n=14) | 2.21 (n=29) |

## Professionalism - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 Meets Expectations | 2.80 (n=5) | 1.93 (n=14) | 2.28 (n=29) |

## Interpersonal and Communication Skills - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | 2.00 Meets Expectations | 2.60 (n=5) | 2.00 (n=14) | 2.21 (n=29) |

Individual Resident Evaluations Report

| | | | | |
|---|---|---|---|---|
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**Meets**<br>**Expectations** | 2.40 (n=5) | 2.14 (n=14) | 2.28 (n=29) |

### Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**Meets**<br>**Expectations** | 2.40 (n=5) | 2.14 (n=14) | 2.14 (n=29) |
| The resident demonstrates self-directed learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**Meets**<br>**Expectations** | 2.20 (n=5) | 2.21 (n=14) | 2.14 (n=29) |

### Overall/Summary - Category Summary (1.50, 29.97%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**Pass** | 1.00 (n=5) | 1.29 (n=14) | 1.14 (n=29) |
| Did you have a face to face discussion about this evaluation with the resident?<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**No** | 2.00 (n=5) | 1.71 (n=14) | 1.76 (n=29) |

### Comments

| | |
|---|---|
| Evaluation Comments: | Needs to improve fund of knowledge.. *Did you provide direct feedback on this evaluation?: No. Signed - Dr. Juan Paramo* |
| Resident Acknowledgement: | Comments Not Available |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | Thank you for the feedback. *Reviewed by Dr. Kfir Ben-David, 10/07/2020* |

---

*Evaluation Completed:* **10/06/2020**
*Evaluation Period:* **06/24/2020 through 09/16/2020**

*Attending:* **Dr. Irving Jorge**

*Rotation Name:* **Global**

### Patient Care and Procedural Skills - Category Summary (1.33, 26.68%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | **1.00**<br>**Below**<br>**Expectations** | 1.86 (n=7) | 1.93 (n=14) | 2.10 (n=29) |

Individual Resident Evaluations Report

| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
|---|---|---|---|---|
| The resident demonstrates ability to recognize and mange complications. | **2.00**<br>**Meets**<br>**Expectations** | 2.14 (n=7) | 2.21 (n=14) | 2.24 (n=29) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | **1.00**<br>**Below**<br>**Expectations** | 1.57 (n=7) | 1.71 (n=14) | 1.79 (n=29) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## Medical Knowledge - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | **1.00**<br>**Below**<br>**Expectations** | 1.86 (n=7) | 1.86 (n=14) | 1.90 (n=29) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident demonstrates knowledge of surgical procedures and operations. | **1.00**<br>**Below**<br>**Expectations** | 1.71 (n=7) | 1.79 (n=14) | 1.90 (n=29) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care. | **2.00**<br>**Meets**<br>**Expectations** | 2.29 (n=7) | 2.29 (n=14) | 2.21 (n=29) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## Professionalism - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | **1.00**<br>**Below**<br>**Expectations** | 2.00 (n=7) | 1.93 (n=14) | 2.28 (n=29) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

## Interpersonal and Communication Skills - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | **1.00**<br>**Below**<br>**Expectations** | 2.00 (n=7) | 2.00 (n=14) | 2.21 (n=29) |

| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
|---|---|---|---|---|
| The resident practices appropriate communication in the Operating Room | **1.00** Below Expectations | 1.86 (n=7) | 2.14 (n=14) | 2.28 (n=29) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

### Practice-Based Learning and Improvement - Category Summary (1.50, 29.97%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | **2.00** Meets Expectations | 2.29 (n=7) | 2.14 (n=14) | 2.14 (n=29) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| The resident demonstrates self-directed learning. | **1.00** Below Expectations | 2.14 (n=7) | 2.21 (n=14) | 2.14 (n=29) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

### Overall/Summary - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | **2.00** Fail | 1.29 (n=7) | 1.29 (n=14) | 1.14 (n=29) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | **2.00** No | 1.71 (n=7) | 1.71 (n=14) | 1.76 (n=29) |
| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |

### Comments

| Evaluation Comments: | Paige is very nice and smart but I'm not sure her heart is in surgery. To become a good surgeon, you have to have a lot of patience, be able to recognize your limitations, and be humble- these are things that Paige lacks. Her operative skills are behind where she needs to be as a senior level resident and her attitude when she feels the case is being taken away from her is immature. Consulting clinicians and OR staff (nurses, scrub tech, anesthesia) have complained about her attitude and demeanor towards them. I feel that she has tried to improve but her efforts are sporadic and several years too late. As a PGY-3, she should be a more senior and mature resident with a much stronger knowledge foundation and better technical skills.. *Did you provide direct feedback on this evaluation?: No. Signed - Dr. Irving Jorge* |
|---|---|
| Resident Acknowledgement: | Comments Not Available |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | Thank you for the honest feed back I will discuss this with her. *Reviewed by Dr. Kfir Ben-David, 10/07/2020* |

Individual Resident Evaluations Report

*Evaluation Completed:* **10/06/2020**
*Evaluation Period:* **06/24/2020 through 09/16/2020**

*Attending:* **Dr. Devendra Joshi**

*Rotation Name:* **Global**

## Patient Care and Procedural Skills - Category Summary (1.33, 26.68%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00** Below Expectations | 1.00 (n=1) | 1.93 (n=14) | 2.10 (n=29) |
| The resident demonstrates ability to recognize and mange complications.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.00 (n=1) | 2.21 (n=14) | 2.24 (n=29) |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00** Below Expectations | 1.00 (n=1) | 1.71 (n=14) | 1.79 (n=29) |

## Medical Knowledge - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00** Below Expectations | 1.00 (n=1) | 1.86 (n=14) | 1.90 (n=29) |
| The resident demonstrates knowledge of surgical procedures and operations.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00** Below Expectations | 1.00 (n=1) | 1.79 (n=14) | 1.90 (n=29) |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.00 (n=1) | 2.29 (n=14) | 2.21 (n=29) |

## Professionalism - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles. | **1.00** Below Expectations | 1.00 (n=1) | 1.93 (n=14) | 2.28 (n=29) |

*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)*

## Interpersonal and Communication Skills - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals. | **1.00** Below Expectations | 1.00 (n=1) | 2.00 (n=14) | 2.21 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident practices appropriate communication in the Operating Room | **1.00** Below Expectations | 1.00 (n=1) | 2.14 (n=14) | 2.28 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Practice-Based Learning and Improvement - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning. | **1.00** Below Expectations | 1.00 (n=1) | 2.14 (n=14) | 2.14 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates self-directed learning. | **1.00** Below Expectations | 1.00 (n=1) | 2.21 (n=14) | 2.14 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Overall/Summary - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement: | **2.00** Fail | 2.00 (n=1) | 1.29 (n=14) | 1.14 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| Did you have a face to face discussion about this evaluation with the resident? | **2.00** No | 2.00 (n=1) | 1.71 (n=14) | 1.76 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

## Comments

| Evaluation Comments: | Strength:<br>- Paige is smart and intelligent.<br><br>Weakness:<br>- She behaves in an immature manner and that is the biggest hindrance to her performance.<br>- She gets easily distracted and often picks up on irrelevant things. That forces her to loose focus from more important issues at hand.<br>- I feel she looses her temper easily and inappropriately at times. She tends to project her problems/inadequacies to her peers and lacks an insight into the issue.<br>- Her surgical skills are not adequate for her level in program. During a procedure, if i is |
|---|---|

| | felt that step/s is not at level of her current training, she becomes very passive and stops assisting in an appropriate manner.<br>- She feels that it is the sole responsibility of the program for surgical education. It is hard to teach professionalism and inter-personal relaionship without self direction.. *Did you provide direct feedback on this evaluation?: No. Signed - Dr. Devendra Joshi* |
|---|---|
| Resident Acknowledgement: | Comments Not Available |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | Thank you for the feedback. I will discuss this with her. *Reviewed by Dr. Kfir Ben-David, 10/07/2020* |

*Evaluation Completed:* **09/24/2020**
*Evaluation Period:* **06/24/2020 through 09/16/2020**

*Attending:* **Dr. Stephen Unger**
*Rotation Name:* **Global**

## Patient Care and Procedural Skills - Category Summary (1.33, 26.68%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**Meets Expectations** | 2.50 (n=6) | 1.93 (n=14) | 2.10 (n=29) |
| The resident demonstrates ability to recognize and mange complications.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**Below Expectations** | 2.33 (n=6) | 2.21 (n=14) | 2.24 (n=29) |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**Below Expectations** | 2.00 (n=6) | 1.71 (n=14) | 1.79 (n=29) |

## Medical Knowledge - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**Meets Expectations** | 2.00 (n=6) | 1.86 (n=14) | 1.90 (n=29) |
| The resident demonstrates knowledge of surgical procedures and operations.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**Meets Expectations** | 2.00 (n=6) | 1.79 (n=14) | 1.90 (n=29) |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**Meets**<br>**Expectations** | 2.67 (n=6) | 2.29 (n=14) | 2.21 (n=29) |

## Professionalism - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**Below**<br>**Expectations** | 2.33 (n=6) | 1.93 (n=14) | 2.28 (n=29) |

## Interpersonal and Communication Skills - Category Summary (1.50, 30.03%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**Below**<br>**Expectations** | 2.17 (n=6) | 2.00 (n=14) | 2.21 (n=29) |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**Meets**<br>**Expectations** | 2.67 (n=6) | 2.14 (n=14) | 2.28 (n=29) |

## Practice-Based Learning and Improvement - Category Summary (1.50, 29.97%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**Meets**<br>**Expectations** | 2.33 (n=6) | 2.14 (n=14) | 2.14 (n=29) |
| The resident demonstrates self-directed learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**Below**<br>**Expectations** | 2.33 (n=6) | 2.21 (n=14) | 2.14 (n=29) |

## Overall/Summary - Category Summary (1.50, 29.97%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**Pass** | 1.00 (n=6) | 1.29 (n=14) | 1.14 (n=29) |
| Did you have a face to face discussion about this evaluation with the resident? | **2.00**<br>**No** | 1.67 (n=6) | 1.71 (n=14) | 1.76 (n=29) |

Individual Resident Evaluations Report

| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | | |
|---|---|---|---|---|---|

**Comments**

| | |
|---|---|
| Evaluation Comments: | Paige remains difficult to assess. she has the potential to be a solid resident but she continually crosses the line on professionalism. her presentations of patients are often superficial and missing on details. She is at a point where she should be maturing and it is clear that she is trying to mature but almost every case she still tends to say she has never done this type of case before or makes excuses for not being confidnet technically,. There is an odd crossing of the line in terms of familiarity and I am not sure she understands the professional boundaries betwenn residents and attendings. She needs to spend more time reading and especially preparing for cases so that they do not seem unfamiliar. *Did you provide direct feedback on this evaluation?: No. Signed - Dr. Stephen Unger* |
| Resident Acknowledgement: | Comments Not Available |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | *Reviewed by Dr. Kfir Ben-David, 09/29/2020* |

*Evaluation Completed:* **10/07/2020**

*Evaluation Period:* **09/01/2020 through 09/30/2020**

*Attending:* **Dr. Irving Jorge**

*Rotation Name:* **Manheimer**

**Patient Care and Procedural Skills** - Category Summary (1.33, 26.68%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health. | **1.00** Below Expectations | 1.86 (n=7) | 1.93 (n=14) | 2.10 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates ability to recognize and mange complications. | **2.00** Meets Expectations | 2.14 (n=7) | 2.21 (n=14) | 2.24 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures. | **1.00** Below Expectations | 1.57 (n=7) | 1.71 (n=14) | 1.79 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

**Medical Knowledge** - Category Summary (1.50, 29.97%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | **2.00** Meets Expectations | 1.86 (n=7) | 1.86 (n=14) | 1.90 (n=29) |
| *Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | | | | |

Individual Resident Evaluations Report                                      Page 15 of 19

| The resident demonstrates knowledge of surgical procedures and operations.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**Below**<br>**Expectations** | 1.71 (n=7) | 1.79 (n=14) | 1.90 (n=29) |
|---|---|---|---|---|

### System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**Meets**<br>**Expectations** | 2.29 (n=7) | 2.29 (n=14) | 2.21 (n=29) |

### Professionalism - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**Below**<br>**Expectations** | 2.00 (n=7) | 1.93 (n=14) | 2.28 (n=29) |

### Interpersonal and Communication Skills - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**Below**<br>**Expectations** | 2.00 (n=7) | 2.00 (n=14) | 2.21 (n=29) |
| The resident practices appropriate communication in the Operating Room<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00**<br>**Below**<br>**Expectations** | 1.86 (n=7) | 2.14 (n=14) | 2.28 (n=29) |

### Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**Meets**<br>**Expectations** | 2.29 (n=7) | 2.14 (n=14) | 2.14 (n=29) |
| The resident demonstrates self-directed learning.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00**<br>**Meets**<br>**Expectations** | 2.14 (n=7) | 2.21 (n=14) | 2.14 (n=29) |

### Overall/Summary - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | | Group | Total |
|---|---|---|---|---|

Individual Resident Evaluations Report

|  |  | Attending Avg |  |  |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Fall | 1.29 (n=7) | 1.29 (n=14) | 1.14 (n=29) |
| Did you have a face to face discussion about this evaluation with the resident?<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** No | 1.71 (n=7) | 1.71 (n=14) | 1.76 (n=29) |

**Comments**

| | |
|---|---|
| Evaluation Comments: | As I mentioned in my global review, Paige is not where she needs to be as a PGY-3 technically, maturity wise or knowledge base.. *Did you provide direct feedback on this evaluation?:* **No**. Signed - Dr. Irving Jorge |
| Resident Acknowledgement: | Comments Not Available |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | Not Filed |

*Evaluation Completed:* **10/08/2020**

*Attending:* **Dr. Stephen Unger**

*Evaluation Period:* **09/01/2020 through 09/30/2020**

*Rotation Name:* **Manheimer**

### Patient Care and Procedural Skills - Category Summary (1.67, 33.36%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident provides patient care that is compassionate, appropriate, and effective for the treatment of health problems and the promotion of health.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.50 (n=6) | 1.93 (n=14) | 2.10 (n=29) |
| The resident demonstrates ability to recognize and mange complications.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **2.00** Meets Expectations | 2.33 (n=6) | 2.21 (n=14) | 2.24 (n=29) |
| The resident demonstrates an appropriate level of manual dexterity and technical skill in the operating room and when performing bedside procedures.<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00** Below Expectations | 2.00 (n=6) | 1.71 (n=14) | 1.79 (n=29) |

### Medical Knowledge - Category Summary (1.50, 29.97%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates knowledge of established and evolving biomedical, clinical, epidemiological and social-behavioral sciences, as well as the application of this knowledge to patient care. | **2.00** Meets Expectations | 2.00 (n=6) | 1.86 (n=14) | 1.90 (n=29) |

| Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | | | | |
|---|---|---|---|---|
| The resident demonstrates knowledge of surgical procedures and operations.<br><br>Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | **1.00**<br>Below<br>Expectations | 2.00 (n=6) | 1.79 (n=14) | 1.90 (n=29) |

## System-Based Practices - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates an awareness of and responsiveness to the larger context and system of health care, as well as the ability to call effectively on other resources in the system to provide optimal health care.<br><br>Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | **2.00**<br>Meets<br>Expectations | 2.67 (n=6) | 2.29 (n=14) | 2.21 (n=29) |

## Professionalism - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates a commitment to carrying out professional responsibilities and an adherence to ethical principles.<br><br>Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | **1.00**<br>Below<br>Expectations | 2.33 (n=6) | 1.93 (n=14) | 2.28 (n=29) |

## Interpersonal and Communication Skills - Category Summary (1.50, 30.03%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health care professionals.<br><br>Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | **1.00**<br>Below<br>Expectations | 2.17 (n=6) | 2.00 (n=14) | 2.21 (n=29) |
| The resident practices appropriate communication in the Operating Room<br><br>Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | **2.00**<br>Meets<br>Expectations | 2.67 (n=6) | 2.14 (n=14) | 2.28 (n=29) |

## Practice-Based Learning and Improvement - Category Summary (2.00, 40.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| The resident demonstrates the ability to investigate and evaluate their care of patients, to appraise and assimilate scientific evidence, and to continuously improve patient care based on constant self-evaluation and life-long learning.<br><br>Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | **2.00**<br>Meets<br>Expectations | 2.33 (n=6) | 2.14 (n=14) | 2.14 (n=29) |
| The resident demonstrates self-directed learning.<br><br>Scale of 1-5 (1=lowest and 5=highest) (See Bottom) | **2.00**<br>Meets<br>Expectations | 2.33 (n=6) | 2.21 (n=14) | 2.14 (n=29) |

## Overall/Summary - Category Summary (1.00, 20.00%)

| Question | PFinkelstein | Attending Avg | Group | Total |
|---|---|---|---|---|
| Comments and suggestions for improvement:<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00** Pass | 1.00 (n=6) | 1.29 (n=14) | 1.14 (n=29) |
| Did you have a face to face discussion about this evaluation with the resident?<br><br>*Scale of 1-5 (1=lowest and 5=highest) (See Bottom)* | **1.00** Yes | 1.67 (n=6) | 1.71 (n=14) | 1.76 (n=29) |

### Comments

| | |
|---|---|
| Evaluation Comments: | Paige seems to be trying harder but she remains a project her in case knowledge or awareness of anatomy is below level (hernia and gall bladder) she is quite insecure and always asking what she can do to improve her performance but at this point she should be just improving without asking. her confidence is very low we have pushed her on her professionalism which remains a problem but she is having trouble understanding that this is not a criticism of her overal performance. recommendations specifically are for more reading and particularly night before surgery case specific reading so she comes itnto the case knowing the anatomy *. Did you provide direct feedback on this evaluation?: Yes. Signed - Dr. Stephen Unger* |
| Resident Acknowledgement: | Comments Not Available |
| Evaluator Acknowledgement: | Comments Not Available |
| Program Director Comments: | Not Filed |

### Summary - Core Competencies

| Category Summary | Dr. Finkelstein (n=8) | PGY-Peers (n=14) | All PGYs (n=29) |
|---|---|---|---|
| Interpersonal and Communication Skills | **1.50000** / 30.00% | 2.07 / 41.43% | 2.24 / 44.83% |
| Medical Knowledge | **1.50000** / 30.00% | 1.82 / 36.43% | 1.90 / 37.93% |
| Patient Care and Procedural Skills | **1.58333** / 31.67% | 1.95 / 39.05% | 2.05 / 40.92% |
| Practice-Based Learning and Improvement | **1.81250** / 36.25% | 2.18 / 43.57% | 2.14 / 42.76% |
| Professionalism | **1.25000** / 25.00% | 1.93 / 38.57% | 2.28 / 45.52% |
| System-Based Practices | **2.00000** / 40.00% | 2.29 / 45.71% | 2.21 / 44.14% |
| Overall/Summary | **1.62500** / 32.50% | 1.50 / 30.00% | 1.45 / 28.97% |

Individual Resident Evaluations Report

| Statistical Analysis Based on Multiple Scales | | | | | |
|---|---|---|---|---|---|
| n | Std Dev | Median | Mean | Variance | High & Low |
| 8 | 0.6 | 2 | 1.61 | 0.35 | 4 & 1 |

## MULTIPLE SCALES

- MSMC Yes/No
- Mt Sinai Pass/Fail
- Sx Surg

This document contains confidential peer review information to be used in the assessment of the quality of the delivery of healthcare. This document and the information in it are confidential and should not be distributed outside the relevant review committees, and appropriate hospital personnel.

A confidential report prepared for Mount Sinai Medical Center - Surgery Copyright © 1998 - 2021 MyEvaluations.com



# Mount Sinai
### M E D I C A L   C E N T E R

### DEPARTMENT OF SURGERY
### SURGICAL RESIDENT
### SEMI-ANNUAL EVALUATION

RESIDENT NAME:   Paige Finkelstein, MD

DATES:   07/01/2020   to   12/31/2020   PGY YEAR:   3

FUTURE PLAN:

This evaluation is based on demonstrated performance compared to what is reasonably expected of a practitioner at his/her level of training, experience, and background.

| | Superior | Good | Fair | Poor |
|---|---|---|---|---|
| Patient Care | | | ✓ | ✓ |
| Medical Knowledge | | | | ✓ |
| Practice Based Learning and Improvement | | | ✓ | |
| Interpersonal Skills | | | ✓ | |
| Communication Skills | | | | ✓ |
| Professionalism | | | | ✓ |
| System Based Practice | | | ✓ | |

Surgical case list reviewed _____   ABSITE Scores reviewed 2019 _31_ %  2020 _21_ %  2021 _____ %
2022 _____ %   2023 _____ %

ACGME/other workshop attendance _____✓_____   Work hours compliance (tracking hours) _____✓_____

Completes Medical Records in timely and accurate fashion _____

CORRECTIVE ACTION:
During the period verified above, was the practitioner ever subject to any disciplinary action, such as admonition, reprimand, suspension, or termination?

Yes _____  No _____   If Yes, details are described on a separate sheet of paper and attached to this form.

EVALUATION:   _____   Highly competent/without reservation
               _____   Qualified and competent
               _____   Some reservations
               ✓   See attached letter → Non Renewal

Evaluation based on   _____   Close Personal Observation
                      _____   General Impression
                      _____   Other: 360 evaluations

Additional Comments: _ - Dr. Finkelstein was given a letter of_
_non-renewal at MSMC._

Resident Signature: _Resident refused to sign form_ Date: _12/16/2020_

Name (Print or Type): _Kfir Ben-David, MD / Philip Bao, MD_

Signature: _____   Date: _12/16/2020_

Title:   Program Director / Associate Program Director, Surgical Residency Program

# EXHIBIT B

December 17, 2019

Re: CCC review of Dr. Finkelstein

Dear Dr. Ben-David,

The Clinical Competencies Committee met 12/16/2019 for its semi-annual review of resident performance. A quorum of faculty was present for discussion of Paige Finkelstein, our 2nd year categorical resident. We reviewed prior milestone evaluations, her academic performance, and current evaluations through the first half of this academic year.

After very extensive review and discussion, the Committee expresses serious concern about Dr. Finkelstein's progress in the ACGME milestones for surgical residency and her potential for appropriate advancement to the 3rd year. The practice domains and competencies that still demonstrate deficiency or lack of progress include professionalism and interpersonal communication as well as to some extent maintenance of emotional health. It seems this is despite open discussion of these issues directly with her on prior occasions and opportunities made available for help and remediation. Please note that some of the faculty evaluations did remark on improvement, her intelligence, and level-appropriate clinical care, but my impression is that this is inconsistent and the overall sentiment is that she still "needs to mature."

Unfortunately, these continued deficiencies speak as much to being a good physician as a good surgeon, and as such may not be remediable. Conversely, Dr. Finkelstein may ultimately train to become a fine surgeon, but her fit with Mount Sinai Medical Center to achieve that goal may be questionable.

At minimum, the Committee would suggest an updated remediation plan for Dr. Finkelstein and consideration of formal academic probation. We would also offer to review her performance on a quicker cycle in the next 3-4 months particularly as the issue of contract renewal becomes more relevant.


Sincerely,


Philip Bao, MD

Chair, Clinical Competencies Committee

# EXHIBIT C

General Surgery Residency Program

ACTION PLAN   12/26/19

Probation and Remediation Plan for Professionalism, Communication Skills and Medical Knowledge

Resident Name: Page Finkelstein   PGY: 2

Educational Enhancement Issue: **Professionalism, Communication Skills and Medical Knowledge**

Based on 1) attending evaluations, 2) prior suggestions and counseling from General Surgery residency leadership, 3) overall academic performance and scores on standardized testing, resident is placed on probation 12/26/19.

Goals:

1. Demonstrate appropriate  level of knowledge on General Surgery National Exam
2. Demonstrate ability to work  collaboratively and professionally with physicians and staff

Focused current issues of educational deficiencies:

1. Scored 31% on the American Board of Surgery In-Training Examination
2. Repeated criticism and poor, below standard,  evaluations from staff and colleagues regarding the following ACGME competencies: Professionalism, Communication skills and Medical Knowledge

Goal: Focus on recognizing and developing professional interactions and achieving medical knowledge

Next Steps/ Resolution plan:

1. 6 weeks probation
2. Mentorship with PD / Assoc. PD, or designee  to continue every other week for 20-30 minutes until February  15,2020
3. At these evaluations resident will provide written summary of interactions with other residents, staff, attendings physicians and patients.
4. At these every other week evaluations provide written summary of what studying you have done to prepare for exams.
   a. You will submit 10 answered questions from the SCORE question bank every week.
5. Score above the 50%  on January 2020 standardized national surgery residency assessment examination
6. You will provide 5 mini-clinical evaluation exercise every week. (previously provided and on the resident shared-drive)
7. You will provide an Operative Performance Rating System (OPRS) for each case you do. (previously provided and on the resident shared-drive)

If resident is not successful with remediation plan to resolve probation resident will not be renewed for 2020- 2021 training year.

Program Director: _____   Date: 1/8/2020

Resident signature: _____   Date: 1/1/2020

1

94

# EXHIBIT D

## Robert C. Goldszer

| | |
|---|---|
| **From:** | Kfir Ben-david |
| **Sent:** | Thursday, June 11, 2020 12:52 PM |
| **To:** | Robert C. Goldszer |
| **Subject:** | FW: Update on resident behavior |

**Importance:** High

FYI

Kfir Ben-David, MD, FACS
Chairman of Surgery
General Surgery Program Director
Mount Sinai Medical Center

Comprehensive Cancer Center
4306 Alton Road, 2nd Floor
Miami Beach, FL 33140

Office: 305-674-2397
Fax: 305-674-2863

**From:** Kfir Ben-david
**Sent:** Thursday, June 11, 2020 11:42 AM
**To:** Devendra Joshi; Irving Jorge; Philip Bao; Stephen Unger; Kiranmayi Muddasani
**Cc:** April Chisolm
**Subject:** FW: Update on resident behavior
**Importance:** High

Please see below emails from two different residents and keep confidential and anonymous.

I just met with her for her semiannual evaluation and she was extremely unhappy with the faculty comments and overall assessment of her. She feels like she can never climb herself out of the hole that she has dug for herself.
I anonymously shared some of the comments relayed by the residents as noted below and she became even more upset that her colleagues feel the same way about her professionalism.

At the end she told me she does not think she is cut out to be a surgeon.
Not sure what that means yet but if she decides to quit ███ might be a very happy camper.

Kfir Ben-David, MD, FACS
Chairman of Surgery
General Surgery Program Director
Mount Sinai Medical Center

Comprehensive Cancer Center
4306 Alton Road, 2nd Floor
Miami Beach, FL 33140

1

Office: 305-674-2397
Fax: 305-674-2863

Dear Dr. Ben-David,

I have spoken to**** multiple times this month about many of my recent work experience with Paige and I have tried to think of the best way to handle this without causing more trouble. He suggested I reach out to you. I do not want to seem petty and in the past my direct work experience with her has been fairly limited. She has been difficult to work with and I have tried to mitigate that in the past without involving anyone else.
However at this point (probably made more obvious by the COVID restrictions and the reduced number of residents to pick up her slack) her behavior is increasingly concerning. I think it goes beyond disrespectful and is dangerous for her patients and peers.

Some examples of what I mean below:
- Participation- She shows up as rounds starts, asking which patients she is assigned. It is clear she is not chart checking anyone prior to rounds.
- During rounds she is disrespectful. She has loud side conversations not related to patient care, does not pay attention, and often makes disparaging comments about patients and residents that can be heard inside patient rooms.
- Poor work ethic. , she seems to spend more time socializing in the ED and reading/chatting than patient care than helping with patient care. To her credit she does sometimes ask if there is anything I need help with, but infrequently follows through to the point where it is easier if I just tell her no. She really only seems to do work when she has been told multiple times by a senior to do something, or by an attending, and still often fails to follow through with these tasks. Yesterday +++ and I spent time updating the case counts for each service which she has been asked to help me with no less than 3 times. She claimed to have update Vascular, but we found that she had missed many cases and had to repeat her work.
- Habitually not wearing her mask in the workroom despite being told to wear it countless times by multiple people. She has gone to the ED, the ICU, 6 tower, including into many patient rooms without a mask. She will say she doesn't care if she gets sick. When I explained to her that this was about keeping patients and coworkers safe, her response was "survival of the fittest."
- Not observing social distancing/observing personal boundaries. She has "used" my zoom screen multiple times even after I have told her not to. She touches me frequently when I know she is not using hand hygiene despite me telling her multiple times to stop.
I can handle working with difficult personalities. However, her attitude and behavior is dangerous to patients and team members. I have tried to directly speak with her about some of this, but she can be defensive and dismissive.  I have no authority of her actions so hoped to get your opinion on how to best address this, or if at all. Please keep this private, but if you have any questions, comments, or concerns I am happy to talk.

Sorry for the long email, but thank you for your time."

Another email from a separate resident.

"I have had the pleasure of working with Paige for about 10 days over the last month with the COVID scheduling. Here are some things I've noticed. She typically does not see her patients prior to rounding, even the ICU patients. She does write her notes on time though. She complains frequently about wearing a mask and takes it off during rounds, in patient care areas, as well as in the work room. She is frequently disrespectful to her co-residents and makes a lot of snide remarks. She does not volunteer to help complete tasks, and when asked to often does so but very reluctantly. I've found that the intern and attendings will contact me directly to complete tasks or round in order to avoid her due to her unpleasant attitude. She does not run the list, and when the list is being run she usually does not participate unless asked to, which she again does begrudgingly. I don't think its necessarily worse than her typical behavior is. But it is especially frustrating during times when there are less residents in house. I think she would adamantly deny any of this if it were brought up to her, and would complain about other's behavior. We as a group of residents are all usually easy going, and there are some jokes poking fun at each other, but I think she takes it too far and does not receive these jokes well. This makes for a potentially hostile environment where she does not perceive to be harassing anyone, but when others speak in a similar manner to her, she likely interprets it as harassment. I hope we can keep this privately and that if any of this information is used in her performance evaluation that it can be reported anonymously."

2

Robert C. Goldszer

| | |
|---|---|
| **From:** | Charlene Welker |
| **Sent:** | Wednesday, July 1, 2020 5:00 PM |
| **To:** | Kfir Ben-david; Robert C. Goldszer |
| **Subject:** | Code Blue on 6 North |
| **Attachments:** | DOC070120.pdf |

Dear Dr. Ben-david and Dr. Goldszer,

Yesterday, June 29th, there was a Code Blue called on 6 North on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ unfortunately expired. As you know, the psych staff do not experience many Code Blues so when the RRT and code team arrived the psych team is always so appreciative. Attached you will find an incident report entered by Dr. Paige Finkelstein who responded to the code as a surgical resident. When Jessica Stein, Director of Nursing was debriefing our staff after the code, it was noted that Dr. Finkelstein entered the room displaying a non-professional attitude, described as very hyper and yelling at the nursing staff.  As described on the incident report that she submitted the following was also noted:

- 6 North nurses were not prepared to handle a code: That is not the case since everyone is BLS trained and responded to the code in a timely manner including initiating CPR
- Only supplies available was a crash cart: That statement is accurate since this is a Psychiatric Unit and not an ICU or Med-Surg area. All patients are examined and medically cleared prior to being admitted to the unit
- No one knew how to unlock the bed: The bed the patient was on was on a Psych Med-Surg bed.  There was a delay in finding the mechanism to unlock the bed
- No Suction available: The suction on the code cart was for intermittent suction.  It was determined by Central Processing that since Psych has such few codes the unit was issued this type of suction.  The correct suction was brought over from 6 South with minimal delay.
- No Yankauer suction catheter was available: Not accurate….they are on the cart
- No IV Pole: This is piece of equipment becomes a weapon in Psychiatry unit and thus are prohibited
- No IV fluids: Not accurate…they are on the bottom of the cart
- Patient was dead for a while: Psych patients are checked every 15 minutes.  Cameras are also everywhere and when reviewed showed staff looking at the patient
- The nurses did not know how to apply the pads: Not accurate.  The AED pads were not placed by nursing.  When they tried to shock the patient the nursing staff found the apical  pad was not applied
- The nurse in charge of the unit was extremely rude and defensive: Jessica Stein is the Nursing Director of Psychiatry and is always kind and helpful.

When further speaking to the staff today, they were disappointed and sad to learn that Dr. Finkelstein wrote this IR. This staff responds to Code Berts as well as Code Grays all of the time throughout the medical center and we know everyone depends on their expertise  during these types of Behavioral emergencies.  They would only hope that when they have a medical emergency that the help that arrives understand the unit's limitations and works together as team for the best interest of the patient.

As always, thank you both,

Charlene

**Charlene Welker**
**Senior Vice President, Specialty Services**
**Mount Sinai Medical Center**

1

4300 Alton Road
Miami Beach, FL 33140
305-674-2294

Charlene.welker@msmc.com

Healthcare excellence Ethical Behavior Accountability Respect & caring Teamwork Service before self



Mount Sinai
Medical Center

Event Reporting System

Hello STEIN, JESSICA

Log Out

Save   Cancel/Return
Start New Entry

Entry Type: PATIENT (VIEW)

| Num | Question | Response |
|---|---|---|
| 1 | Group Code | **38** |
| 2 | Incident Number | **38012020002361** |
| 3 | Master Inc Number | **38012020002361** |
| 4 | Facility | **01** |
| 5 | Facility Name | **MOUNT SINAI MEDICAL CENTER** |
| 6 | **PATIENT INFORMATION** | |
| 7 | * Type of Person | |
| 8 | * Patient CSN | |
| 9 | * Org/Per ID | |
| 10 | * Patient Last Name | |
| 11 | Patient Full Name | |
| 12 | Patient Age | |
| 13 | Patient Age Unit | |
| 14 | Gender/Sex | |
| 15 | Admission Date | |
| 16 | Medical Record # | |
| 17 | Admitting Physician # | **2731** |
| 18 | Admitting Phys Name | **ALONSO, LEONARDO** |
| 19 | **INCIDENT INFORMATION** | |
| 20 | * Date of Occurrence | **06/30/2020** |
| 21 | Day Of Week | **Tuesday** |
| 22 | * Time of Occurrence (Military) | **14:30** |
| 23 | Occurrence Shift | **DAY** |
| 24 | * Occurrence Category | **COMPLAINT** |
| 25 | * Occurrence Sub-Categ | **OTHER** |
| 26 | Occurrence Sub-Categ | **Other Issue** |
| 27 | **ADDITIONAL INCIDENT DETAILS** | |
| 28 | * Location Where Incident OCCURRED | **MAIN6BH** |

**My Open Follow Up**

**Additional Incident/Occurrence Info**

**Add**

Click Here to add Parties Directly Involved
Click Here to add Follow Up
Click Here to add Witnesses

3d year Ben David
Goldszer

| 29 | Location Desc | Main 6 Behavioral Health |
|---|---|---|
| 30 | Exact Location/Room # | 639 |
| 31 | * Incident Description | Patient coded. Multiple physicians showed up to code. The nurses and staff of 6 N were NOT prepared to handle a code. The only supplies available were the crash cart. No one knew how to unlock the bed so that we could get to the head and properly intubate the patient. No suction was available. When they finally brought suction, no yankauer was available nor did the machine work. No IV pole or fluids were readily available to resuscitate patient. Interns had to hold the fluids and apply pressure instead. Honestly the patient had probably been dead for a while before the code was called as the central line withdrew severely hypoxic blood. The nurses did not know how to place the pads on the patient. This was brought to the attention to the woman was in charge of the unit and she was extremely rude/defensive. Hopefully no additional patients code on 6N as they are not prepared to adequately resuscitate patients there. |
| 32 | * Was Person Injured? | Y |
| 33 | * Injury Type | DEATH |
| 34 | Injury Type Desc | Death |
| 35 | * XRay Ordered? | N |
| 36 | * Tx/Test Ordered? | Y |
| 37 | Treatment Ordered Desc | ACLS |
| 38 | * COVID-19 Related? | N |
| 39 | * Physician Notified? | N |
| 40 | **REPORTER DETAILS** | |
| 41 | Reported By Per Type | USER |
| 42 | Reported By | SWB7704 |
| 43 | Reporter Name | FINKELSTEIN, PAIGE |

| 44 | Reporter Department | **760** |
|----|---------------------|---------|
| 45 | Reported Date | **06/30/2020** |
| 46 | Reported Time | **15:08** |
| 47 | How Reported | **INCREPRT** |
| 48 | Date Occurrence Rprt Received | **06/30/2020** |
| 49 | Days In Transit/Lag Time | **0** |
| 50 | Duplicate? | **N** |

< Prev. Page  Next Page >

\* Required fields   View Reference Docs

**Contact Risk Management for all application problems (305) 674-2555 (8:00 am - 5:00 pm)..... Contact IS Help Desk for password issues only (305) 674-2545**



*RiskQual Technologies, Inc.*

[Contact RiskQual Technologies]   Contact Risk Management

RiskQual Support

**From:** Kfir Ben-david <Kfir.bendavid@msmc.com>
**Sent:** Thursday, July 2, 2020 1:07 PM
**To:** Paige Finkelstein <Paige.Finkelstein@msmc.com>
**Cc:** Kiranmayi Muddasani <Kiranmayi.Muddasani@msmc.com>; April Chisolm <April.Chisolm@msmc.com>
**Subject:** Code Blue on 6 North

I need to meet with you tomorrow at 3pm with April and Dr Muddasani to discuss this further.

1. I have been sent the incident Report and feedback.

2. I need to understand what happened From your perspective.

Kfir Ben-David, MD, FACS

Chairman of Surgery

General Surgery Program Director

Mount Sinai Medical Center

Comprehensive Cancer Center

4306 Alton Road, 2nd Floor

Miami Beach, FL 33140

Office: 305-674-2397

Fax: 305-674-2863

Sent from my iPhone

**From:** ███████████  ████████████████████
**Sent:** Thursday, July 16, 2020 9:20 PM
**To:** Robert C. Goldszer
**Subject:** Re: Conversation Confirmation
<span style="color:red">CAUTION: **EXTERNAL EMAIL** This email is from outside MSMC. Please use caution with attachments and links.</span>

Hi Dr. Goldszer,

Yes this is correct, I have no edits to make. Please let me know if you have any other questions or require more information.

Thank you,

███████████

On Jul 16, 2020, at 7:58 PM, Robert C. Goldszer <Robert.Goldszer@msmc.com> wrote:

████████,

Thank you for talking yesterday afternoon

To summarize our conversation see below

If this is correct please email back to me to confirm this is correct

Let me know of any edits

I listened to your recounting your experiences with Dr Page Finkelstein since July 6,

2020

You described that Dr Finkelstein came to you Monday July 13 while you were involved in the zoom meeting of GMEC. Dr Finkelstein asked you to complete an evaluation form. When you asked her about the evaluation form she rushed you to get this completed, provided no explanation, and made you feel like her problems were your fault. She said to just fill it out. Your impression was her style interacting with you as a colleague was poor. You felt this interaction and aggressiveness of her interactions were not professional. You have not noticed patient care problems nor have a lot negative to say but felt the interaction about the evaluation form was not respectful, professional, or collegial.

Thank you

Robert Goldszer

Designated Institutional Official

Mount Sinai medical Center

# EXHIBIT E

General Surgery Residency Program

ACTION PLAN   7/6/20

Probation for Professionalism and Communication Skills

Resident Name: Page Finkelstein   PGY 3

Educational Enhancement Issue: **Professionalism and Communication Skills**

Based on 1) attending evaluations, 2) senior resident evaluation 3) prior suggestions and counseling from General Surgery residency leadership, 4) nursing leadership interaction, resident is placed on probation 7/6/2020-8/14/2020.  Note that this is the second probation for Dr Finkelstein.

Goals:

1.   Demonstrate ability to work collaboratively and professionally with physicians and all healthcare staff

Focused current issues:

1.   Repeated criticism and poor, below standard evaluations from staff and colleagues regarding the following ACGME competencies: Professionalism and Communication skills.

Goal: Focus on recognizing and developing professional interactions.

Next Steps/ Resolution plan:

1.   Mentorship with PD / Assoc. PD, or designee to continue every week for 20-30 minutes for 6 weeks until August 16,2020
2.   At these evaluations resident will provide written summary of interactions with other residents, staff, attendings physicians and patients.
3.   You will provide 5 mini-clinical evaluation exercise every week. (previously provided and on the resident shared-drive)
4.   You will provide an Operative Performance Rating System (OPRS) for each case you do. (previously provided and on the resident shared-drive)
5.   We will solicit random evaluations regarding your professionalism and communication skills from attendings, surgery chief residents, nursing and any other allied healthcare provider in our healthcare system every week during the probation period.

If the resident is not successful with this remediation plan to resolve probation, Dr. Finkelstein will be terminated since this is her second probation period within a year.

Program Director: _____   Date: __7/6/2020__

Resident signature: Page Finkelstein   Date: __7/6/2020__

1

# EXHIBIT F

**From:** Kfir Ben-david <Kfir.bendavid@msmc.com>
**Sent:** Sunday, November 22, 2020 5:23 PM
**To:** Paige Finkelstein <Paige.Finkelstein@msmc.com>
**Subject:** Re:

Next do not do anything without calling your chief or attending.

Kfir Ben-David, MD, FACS
Chairman of Surgery
General Surgery Program Director
Mount Sinai Medical Center
Comprehensive Cancer Center
4306 Alton Road, 2nd Floor
Miami Beach, FL 33140
Office: 305-674-2397
Fax: 305-674-2863
Sent from my iPhone

> On Nov 22, 2020, at 4:50 PM, Paige Finkelstein <Paige.Finkelstein@msmc.com> wrote:
>
> Dr. Ben David,
> I saw Dr. Shim ended up taking the patient for further debridement. I just wanted to clarify that initially when we got the consult I asked for them to call hand surgery but they said no because it was "too far" from the elbow. I didn't suspect an NSTI because of her story ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ so I thought a simple I and d would suffice, at least in the mean time.
> Additionally, I apologize for letting the ER do the nerve block, the attending who did it was fellowship trained in ultrasound and these procedures so I thought it was okay. It won't happen again.

I was also made aware she is an ███████████. When I had asked the ER to get a ████████ they said they thought it wasn't really indicated. I didn't catch it really wasn't ordered until now. I should have ordered ████████ myself and when I saw her backpack I almost asked to look through it but then changed my mind because I didn't want to seem invasive. It makes a lot of sense that ███████
████████████

Do you happen to have Dr. Shims number so I can call her directly next time? Often the ER will refuse to call hand surgery at night and just call us because they know we are readily available and cannot say no to seeing the patient. Next time I will just call myself.
I have learned from this experience and will manage future situations differently.
Paige

# EXHIBIT G

January 13, 2021

Dr. Robert Goldszer
Chief Medical Officer
Mt. Sinai Medical Center
4300 Alton Road
Miami Beach, Florida 33140

Dr. Goldszer,

    I am hereby tendering my resignation from the Mount Sinai Medical Center General Surgery Residency Program, effective January 11, 2021.

    The time I spent in the program was invaluable, and instrumental in my growth and development as a surgeon and healthcare professional. I am grateful to the teaching faculty and staff for their contributions to my career. If any matters arise relating to patient care or medical recordkeeping, please feel free to contact me at paige@finkelstein.us.

Sincerely,

Paige Finkelstein, M.D.

# Mount Sinai
## MEDICAL CENTER

# NOTICE OF SEPARATION (Rev 05/2020)

PLEASE SUBMIT COMPLETED FORM WITH APPROPRIATE DOCUMENTATION IMMEDIATELY TO HUMAN RESOURCES VIA EMAIL TO
NOTICEOFSEPARATION@MSMC.COM

| EMPLOYEE NAME: Paige Finkelstein | EMPLOYEE NUMBER: 47869 | DATE OF HIRE: 6/24/18 |
|---|---|---|

**DEPARTMENT NAME:** Medical Education

**ELIGIBLE FOR RE-EMPLOYMENT IN YOUR DEPARTMENT?** ☐ YES ☑NO
NO, EXPLAIN:

**DEPARTMENT NUMBER:** 760

☑REGULAR FULL-TIME/ PART-TIME ☐ PER DIEM ☐ TEMPORARY

**JOB TITLE:** PGY III

☐ CONTRACTED ☐ RESIDENT

**PAY ACCRUED PTO?** ☐ YES NO☑ IF NO, EXPLAIN: N/A

*LAST DAY WORKED BY EMPLOYEE:* 1 / 11 / 21     *OFFICIAL SEPARATION DATE:* 1 / 11 / 21

| Term Reason **MUST** be checked off for Voluntary Resignation Select up to two keys reasons for leaving. | |
|---|---|
| Accept Job Closer To Home ☐ | Lack of Equipment /Supplies ☐ |
| Accept Other Type Of Employment ☐ | Lack of Promotion ☐ |
| Better Benefits ☐ | No Child Care ☐ |
| Better Pay ☐ | Pursue Education ☐ |
| Did Not Return From Leave ☐ | Relocation ☐ |
| Dislike Duties ☐ | Retirement ☐ |
| Dissatisfied with Co-Workers ☐ | Want More Challenging Work ☐ |
| Dissatisfied with Supervisor ☐ | Work Hours ☐ |
| Family ☐ | Work Load ☐ |
| Health Reasons ☐ | |
| Please provide specific reason if none of the above applies. | |

☑RESIGNED       ☐ DISCHARGED       ☐ DECEASED
(Attach Letter of Resignation)   (Attach Documentation)   (Attach Documentation)

☐ TO ACTIVE MILITARY DUTY
(Attach copy of orders)

DEPT DIRECTOR NAME (PLEASE PRINT)      3/165      1/11/21
                                        EMPLOYEE #      DATE

DEPT DIRECTOR SIGNATURE

ADDITIONAL COMMENTS:

1

# EXHIBIT H

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-01 (27)

PAIGE FINKELSTEIN, M.D.,

    Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

    Defendants.

_____/

## DECLARATION OF ROBERT C. GOLDSZER M.D., M.B.A.

STATE OF FLORIDA      )
COUNTY OF MIAMI-DADE    )

BEFORE ME, the undersigned authority, personally appeared Robert C. Goldszer, M.D.,

M.B.A., who under oath, deposes and states:

1.    My name is Dr. Robert Goldszer. I am over eighteen (18) years old. I have personal

knowledge with respect to the matters set forth herein.

2.    I am the Chief Medical Officer at Mount Sinai Medical Center of Florida, Inc.

("Mount Sinai" or the "Hospital"). I am also the Designated Institutional Official ("DIO") for the

Hospital's graduate medical education programs.

3.    In my role, I am involved in issues related to the Hospital's residency programs and

the standards and requirements for our programs as established by the Accreditation Council for

Graduate Medical Education ("ACGME").

CASE NO. 2022-018881-CA-01 (27)

4. I am familiar with the allegations that Plaintiff, Dr. Paige Finkelstein ("Dr. Finkelstein") advances against the Hospital and Dr. Kfir Ben-David personally (her Program Director in the surgical residency program) in this lawsuit.

5. In January 2021, Dr. Finkelstein was terminated from the surgical residency program at Mount Sinai. She was also given the option to resign from the program, which she accepted.

6. Upon her termination/resignation, I informed Dr. Finkelstein of her right to petition the Hospital to appeal its termination decision, based on administrative procedures contained in Section 12(4) of her 2020 third-year residency agreement with the Hospital (the "GME Agreement").

7. Dr. Finkelstein did not petition the Hospital to appeal the termination decision when she was informed about her right to do so, and to date, she has failed to utilize the procedures under Section 12(4) of her GME Agreement.

8. This Declaration does not exhaust my knowledge of these matters or of Dr. Finkelstein's other allegations in her complaint.

**FURTHER DECLARANT SAYETH NOT.**

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

**DR. ROBERT GOLDSZER**

2

# EXHIBIT I

3/31/2021

Mr. Jaffee,

Although we have not met, I am for the second and final time extending to you and your CEO an opportunity to discuss and address many of the issues I have uncovered about the MSMC Surgical Residency Program and specifically with respect to Dr. Kfir Ben-David. Interviews I am aware of with several former and current individuals associated with the Program reveal that Dr. Ben-David's lack of professionalism, greed and abuses of power render him wholly unsuitable for department chairmanship and program leadership. My opinion was formed based upon objective facts described by individuals with first-hand knowledge.

In response to Mr. Wax's email dated March 22, 2021, you advised Mr. Wax that MSMC was taking this matter seriously and would be conducting an internal investigation. In light of the manner in which my daughter, Dr. Paige Finkelstein was "investigated" I have no confidence that the process would be full, fair and complete. You have requested of Mr. Wax that we be transparent and disclose our witnesses, which I am unwilling to agree to based upon Paige's personal experience with the witch hunt conducted by Dr. Ben-David and Dr. Goldszer. I am convinced that doing so would place the witnesses in harm's way by facing certain vindictiveness and retribution from Dr. Ben-David and other medical staff and administrators at MSMC.

To be clear, if I do not receive the opportunity to speak with you and your CEO this week, I move in a different direction, and my altruism and benevolence will cease. Mr. Wax and other attorneys will be instructed to file complaints and requests for action with organizations including the Accreditation Council for Graduate Medical Education, Florida Department of Health, the Florida Board of Medicine, the Association of Program Directors in Surgery, the Drug Enforcement Administration and Medicare.

I will have no hesitation directly revealing our sources to these bona-fide third-party organizations, specifically to those with processes that provide us with visibility and transparency into their findings. I can confirm that many of our witnesses have openly communicated their desire to speak on the record with these organizations. I am sure you can appreciate how those results will play into any litigation we may choose to begin with respect to Paige's resignation and the circumstances surrounding it.

As I hope Mr. Wax communicated to you, I am concerned about your institution and am genuinely interested in helping you and your CEO manage the amount of collateral damage these investigations will create. One example of collateral damage is the cost your facility will incur for refusal to produce the completion documents which were requested to demonstrate Paige's completion of her internship and PGY2 year.

As I am sure you recall, upon the documents being requested so Paige could apply to other surgical residency programs, rather than providing them, you demanded a release and non-disclosure agreement as a condition of their production. A second request was later made, to which you reiterated you had no requirement to produce the documents, and would only do so if Paige signed a release and NDA. This requirement imposed by you on behalf of MSMC was in derogation of ACGME Common Program Requirements (Residency), as follows:

"Residents must not be required to sign a noncompetition guarantee or restrictive covenant."

"Background and Intent: Primary verification of graduate medical education is important to credentialing of physicians for further training and practice. Such verification must be accurate and timely. Sponsoring Institution and program policies for record retention are important to facilitate timely documentation of residents who have previously completed the program. <u>Residents who leave the program prior to completion also require timely documentation of their summative evaluation.</u>"

*ACGME Common Program Requirements (Residency), effective July 1, 2020, section II.A.4.a).(13).(a) - II.A.4.a).(15)*

Not only is it an affirmative ACGME program requirement, but it also includes a 30-day deadline for providing the requested documents. Paige's initial request for these documents was well in excess of 30 days ago. In the event that these documents are not provided and litigation to obtain them ensues, the pleadings will be available for review by every attending or anyone who has been subjected to the same treatment by Dr. Ben-David or anyone else in a position of authority at MSMC.

I will also be requesting as part of a complaint to the ACGME, that MSMC be compelled to notify every attending or resident that was coerced into signing an unwarranted release or NDA of the invalidity of those documents. I bring this to your attention to make it clear that we have a legal basis to go forward with these complaints, yet I remain willing to work together to resolve matters amicably.

I want to make myself perfectly clear: I want Dr. Ben-David removed as Program Director of the Surgical Residency program at MSMC. I believe based on the evidence I have seen to date that Dr. Ben-David lacks the necessary leadership abilities to provide appropriate resident training, evaluation and promotion of residents, supervision of residents and resident education in the context of patient care.

In his last email to you, Mr. Wax provided you with some examples of the many we have discovered which in my opinion, conclusively proves that Dr. Ben-David is not only greedy and self-serving but rules by intimidation and at the expense of patient care. Here are additional instances of ACGME violations according to our witnesses (and yes, we have multiple people that will confirm these): Dr. Ben-David instructed residents to 1) falsify their work hours to maintain compliance requirements and he 2) has instructed residents to report only positive feedback on the ACGME year-end surveys under the threat that if the residents reported negative feedback, it would jeopardize their careers and continued enrollment in the residency program.

Dr. Finkelstein is not only my daughter, but also my business partner in ERinfo Inc. It is highly unfortunate for MSMC that she was forced to resign under such abhorrent circumstances, literally weeks before ERinfoPRO for FirstNet and ERinfo were launched. Over the next several months I can imagine that the reasons for her departure from the program are going to be explained in detail through our public relations and social media teams, and in private with various local and national VIPs, including large donors, as we are national partners with patient advocacy groups and FirstNet.gov. Without doubt, the open complaints and publicly available evidence will support our narrative.

Considering the foregoing, please let me know by close of business Friday, April 2, 2021 if you and your CEO will accept my request for a conference to review these issues.

Yours truly,

David Finkelstein
david@finkelstein.us
561.866.8500

# EXHIBIT J

—



**Mount Sinai Medical Staff Services**
555 West 57th Street, 5th Floor
New York, NY 10019
P: (646) 285-6270
Email: Jessica.Crociata@mountsinai.org

*emailed*
*11/3/21*

# Mount Sinai

**Date: 11/1/2021**

**Re: Paige Finkelstein, MD**
Mount Sinai Medical Center   1/11/2021
**Date of Training: 6/24/2018 – 1/14/2021**
**Program / Specialty: Residency – General Surgery**

To Whom It May Concern:

The above listed practitioner is applying for privileges at our facility. Regulatory agencies require the Hospital to verify the applicant's credentials prior to their being allowed to join the Medical / Professional Staff.   According to the above practitioner's application, he/she has graduated / completed a program at your facility.

Please verify this information by checking the appropriate box below.  A signed release of information is attached to this letter.

_____ The practitioner named above **DID** complete the training program as noted above.

✗ The practitioner named above **DID NOT** complete the training program as noted above.

Comments:  Resident resigned from program effective 1/11/2021

_____        _____
Signature                                                                          Date  11/3/21

Michelle Vincent                                                       Manager, Medical Education
Printed Name                                                          Title

Your prompt reply in returning this completed form would be greatly appreciated.
**This form may be emailed to Jessica.Crociata@mountsinai.org**

Sincerely,

*Jessica Crociata*
Credentialing Coordinator
Mount Sinai Medical Staff Services
555 West 57th Street, 5th Floor
New York, NY 10019
Phone: (646) 285-6270
Fax:    (212) 996-2230

# EXHIBIT K

# Mount Sinai
## MEDICAL CENTER

Via Email and Mail

November 9, 2022

Paige Finkelstein, M.D.
3914 NW 53rd St
Boca Raton, Florida, 33496

Re:  Copies of evaluations; verification letter

Dr. Finkelstein:

The General Surgery Residency Program was just recently made aware by the Accreditation Council for Graduate Medical Education (ACGME) of a complaint that you filed with the ACGME in June 2022. You suggest, in part, that you were not provided with documentation and evaluations. While the Program and Mount Sinai Medical Center of Florida will address the merits of your complaint with the ACGME, I respond collegially to both matters in turn.

First, to the extent you may not have printed, downloaded or retained your end of assignment or semi-annual evaluations prior to your departure from the Program in January 2021, enclosed are copies of the end of assignment and semi-annual evaluations completed while you trained in the Program from June 24, 2018 to January 11, 2021, including the final summative evaluation completed prior to your departure from the Program. I note that you signed certain of these evaluations at the time they were reviewed with you.

Second, attached as well, is a letter verifying your residency participation and education for the above-referenced period. Requests to send verification of your education directly to another institution should continue to be submitted to Michelle Vincent, Manager-Medical Education (Michelle.Vincent@msmc.com) by email, preferably. Relatedly, the only  request for verification we have received regarding your time here was in November 2021, from Mount Sinai Health System in New York.

Sincerely,

Robert C. Goldszer, M.D., MBA
Senior Vice President
Designated Institutional Official
Mount Sinai Medical Center

Attachments:
End of Assignment and Semi-Annual Evaluations (PF000001- PF000078)
November 8, 2022 Letter of Verification

**Mount Sinai Medical Center**
4300 Alton Road
Miami Beach, FL 33140
Phone: 305.674.2121
msmc.com

**Mount Sinai Primary & Specialty Care**
· Aventura        · Key Biscayne       · Skylake
· Coral Gables    · Miami Shores       · Sunny Isles Beach
· Hialeah         · Midtown            · Mount Sinai Cardiology
                                         of the Florida Keys

**Mount Sinai Freestanding
Emergency Centers**
· Aventura
· Hialeah

**Mount Sinai
Comprehensive Cancer Center**
4306 Alton Road
Miami Beach, FL 33140
Phone: 305.674.9100
msccc.com



# Mount Sinai
## MEDICAL CENTER

November 9, 2022

Re: Paige Finkelstein, M.D.

To Whom It May Concern:

The above referenced physician trained at this institution as a resident in General Surgery from June 24, 2018 to January 11, 2021. Dr. Finkelstein completed program year 1 (PGY1), program year 2 (PGY2), and half of program year 3 (PGY3) during this time.

This letter should not be construed to address the physician's performance or reasons for leaving the program.

Sincerely,

Robert C. Goldszer, M.D., MBA
Senior Vice President
Designated Institutional Official
Mount Sinai Medical Center

**Mount Sinai Medical Center**
4300 Alton Road
Miami Beach, FL 33140
Phone: 305.674.2121
msmc.com

**Mount Sinai Primary & Specialty Care**
· Aventura        · Key Biscayne      · Skylake
· Coral Gables    · Miami Shores      · Sunny Isles Beach
· Hialeah         · Midtown           · Mount Sinai Cardiology
                                        of the Florida Keys

**Mount Sinai Freestanding Emergency Centers**
· Aventura
· Hialeah

**Mount Sinai Comprehensive Cancer Center**
4306 Alton Road
Miami Beach, FL 33140
Phone: 305.674.9100
msccc.com

# EXHIBIT L

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Miami District Office
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 10/26/2022

**To:** Paige Finkelstein
3914 NW 53rd Street
Boca Raton, FL 33496
Charge No: 510-2023-00555

EEOC Representative and email:     Jeanette Wooten
Federal Investigator
jeanette.wooten@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC is closing this charge because your charge was not filed within the time limits under the law; in other words, you waited too long after the date of the alleged discrimination to file your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 510-2023-00555.

On behalf of the Commission,

Digitally Signed By:Evangeline Hawthorne
10/26/2022
Evangeline Hawthorne
**Acting District Director**

**Cc:**
Nick  Duris
Mount Sinai Medical Center of Florida, Inc.
4300 Alton Road
Miami Beach, FL 33140

Richard H Levenstein
Nason, Yeager, Gerson, Harris & Fumero, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 510-2023-00555 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500

Miami, FL 33131.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### Notice Of Rights Under The ADA Amendments Act Of 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active.**

- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ⦿ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ⦿ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ⦿ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*

# EXHIBIT M





 

Search for:

- NEWS
- RANKINGS
- SCHOOLS
- ADMISSIONS
- FINANCING
- GMAT / GRE
- STUDENTS
- JOBS
- EMBA
- ONLINE MBA
- MASTERS
- EVENTS
- VIDEOS

1. Home
2. Admissions News & Features
3. Students
4. Meet The Surgeon & Entrepreneur Who Became A Last-Minute Columbia MBA Student

# Meet The Surgeon & Entrepreneur Who Became A Last-Minute Columbia MBA Student

BY: MARC ETHIER ON MAY 03, 2022 | 0 COMMENTS | 5,626 VIEWS

- 
- 
- 
- 
-



Paige Finkelstein is a surgeon who decided to go to business school — and won a place in one of the premier MBA programs in the world. Courtesy photo

Paige Finkelstein lost count of the number of times her life was put in danger.

A surgeon at a Miami hospital when the coronavirus pandemic broke out in the spring of 2020, Finkelstein was tasked with cutting open sick patients who could no longer breathe — literally making incisions to release trapped Covid air from their bodies. "It was my job to walk around on wards, and I would carry a chest tube and a scalpel in my pocket because so many patients were put on vents," she recalls. "And when you're on a vent, and your lungs are very sick, they lose their compliance, and you can develop something called a pneumothorax (collapsed lung). So it was my job to literally run from bed to bed, to put chest tubes in these patients. And sorry, the unfortunate situation is that nobody really survived.

"It was really morbid."

As the pandemic wore on through 2020 and into 2021, Finkelstein — like so many health care workers around the globe — began to feel worn down. The volume of Covid-19 cases would fluctuate but the work of caring for the sick was relentless. As a surgeon on the front lines, she saw how frequently a lack of information about a patient led to bad health outcomes — and that led to inspiration. In early 2021 **Finkelstein launched a company** that provides doctors with real-time data in emergency situations, allowing first responders to quickly and easily notify a person's contacts. Exhausted by the demands of medicine amid an ongoing crisis but eager to learn more about the business world to improve her startup's chances, she decided to pursue an MBA.

## FAMILY TRADITION



Paige Finkelstein while on call at the Miami hospital where she worked before becoming an MBA student. She attended MIT as an undergrad. Courtesy photo

"I was working on this company, working on this idea, and it just came into my head: 'Maybe I should learn how to pursue other interests of mine.' So that's why I got this idea of going to business school."

A Miami native who attended MIT as an undergrad, Finkelstein had been urged to try business classes by her parents, both of whom have MBAs. But it never clicked before.

"I already had a couple of friends who had gone to HBS and Wharton, and it seemed like they had a good time," says Finkelstein, 30. "They learned a lot. And the most ironic thing is, both my parents have their MBAs, and they had told me my whole life, 'Take a business school class,' but I was always so pro-science. Even though I went to MIT for undergrad, which has a fantastic business school, I never took a single business class there because I didn't understand its importance at the time.

"So it's just kind of come full circle. It's pretty ironic for me because they were right. And I ended up going. And I guess now, I get to carry on the family tradition of all these MBAs."

## FALLING INTO PLACE AT THE LAST MINUTE

Of course, it wasn't that easy. Once she'd decided to get an MBA, Finkelstein had a big problem: Her epiphany was in late spring 2021 — too late to apply for fall admission at most top business schools.

"When I realized physicians didn't know the first thing about managing a company, I applied — pretty last minute, as in May for an August start date!" she says.

She had always wanted to live in New York. But by the time she had determined to go to B-school, she was left with just one option: Columbia Business School, which had a June 1 deadline and rolling admissions.

"When I decided I was going to go, I just went online," she says. "I had heard about the **M7 school thing** from my friends, but I didn't really know who was in it, or what it meant. I just knew that I wanted to target a school in New York or the upper Northeast because I went to undergrad there. And I missed it. I've been in Miami for seven years. And I quickly learned what the three rounds were, but that a lot of schools had gotten rid of the third round because of coronavirus.

"I was like, 'Oh my God, this limits my process, I guess!'

"I was like, 'Oh, snap, it's already April or May,' or whenever it was. And I emailed Columbia saying, 'Hey, are you guys still accepting applications? I know it's pretty late. It seems like the application process literally opened over a year ago for the August class already.' And they were like, 'Oh, yeah, it's fine. Definitely, please apply.'"

## 'YOU CAN'T REALLY STRESS OUT ABOUT A PROCESS YOU DON'T REALLY UNDERSTAND'

Another hurdle: She hadn't taken the **Graduate Management Admission Test** or the **Graduate Record Exam**, the two most common entrance exams for business school. There was less than a month to go — certainly not enough time for the 120 hours that GMAT takers average in studying for the test.

"I emailed them back and said, 'By the way, I don't really know what to do about this GMAT/GRE requirement, because I don't think I have the time right now to study for it. But I have my MCAT scores. Would that be something you guys would be willing to accept?' And they said, 'Well, how about this: There's this test called the **Executive Assessment**.' Never heard of it. And they were like, 'Why don't you try that?'

"So I Googled really fast. And it's a 40-question test. And there wasn't really much information on it. And I was like, 'Okay, well, it's 40 questions. I've definitely survived worse standardized tests in my life at this point.'"

Within a week, she was scheduled to take the EA. Because of a lack of study materials, she "walked in and took it. I think I did well. I couldn't even Google what the score range was because there was really nothing available. I was like, 'All right, well, I guess I'll just send this in.' I think I did my application and my essays in probably under an hour.

"One of my best friends went to HBS. I sent the essays to her, and she was like, 'Great.' She sent a few changes. I made some corrections, and that was it. That was the extent of me applying to business school. And it's funny because when I got to CBS in the fall, and I learned about everyone who had been sweating and spent five months studying for the GMAT and applied early and was so nervous, I was like, 'Oh.' So, I feel like ignorance is almost bliss when it comes to applying to business school when you can't really stress out about a process you don't really understand."

She had always had her eyes on Columbia. Now Paige Finkelstein had earned a last-minute seat in its Class of 2023.

"I wanted to go to New York City. It was my time to go. I could feel it."

CONTINUE READING

# Meet The Surgeon & Entrepreneur Who Became A Last-Minute Columbia MBA Student

BY: MARC ETHIER ON MAY 03, 2022 | 0 COMMENTS | 5,629 VIEWS



Paige Finkelstein and a hospital therapy dog. Courtesy photo

## 'HOW DO I MAKE THIS A BUSINESS?'

Doctors are natural problem-solvers, Paige Finkelstein says. But while they can get from A to B, they often have trouble going from B to C.

"I lived this experience, where you spend so much time in these science classes, math classes, physics classes, pre-med, going to med school, you become a doctor — and then your whole life just becomes consumed by seeing patients and hospital bureaucracy," she says. "And even though you might have ideas to fix problems — and healthcare is obviously a hot subject right now, and there's lots of problems to be fixed — you might have an idea, but you never get to see it commercialized. I would just witness as so many doctors just complaining about this or that, and things we could do to fix it, but they could never sort of close the deal, for lack of a better word."

She's determined not to let that happen with her company, **ERinfo**, a facial-recognition platform to identify patients in emergencies and traumas. The success of the enterprise is, literally, a matter of life and death.

Continue reading P&Q's premium content for free! **LOGIN** or **REGISTER**



Paige Finkelstein. Courtesy photo

"I was seeing so many Jane and John Does coming through the hospital doors," Finkelstein says. "And what a lot of people don't realize is there are state laws, too, that we are supposed to identify patients within 48 hours. Try and reach out to loved ones. And often that's not the case, not because we don't want to, but because we're just not able to. I've worked in many metropolitan areas where there's millions of people. So it's like, 'Where do you start?' I literally had the conversation with police, especially when kids come in. I'm like, 'Can we get a move-on, finding the parents?' They are like, 'Where do you want us to start looking?'

"Normally, the process is you have to wait for someone to file a missing person report, or they have to call the hospitals. And it's just really not an efficient process. And unfortunately, sometimes that critical window is missed, and people get there too late, and it's really heartbreaking."

Finkelstein put a team together to develop a facial recognition algorithm that works on any provider's cell phone. They joined FirstNet, a joint project between AT&T and the government, becoming its first patient-facing app. They've also teamed up with the Junior Diabetes Research Foundation for kids who have Type 1 diabetes. "Every kid who has Type 1 diabetes, if you look at the stats, is going to end up in the emergency room as they're learning to manage their blood sugar," she says.

"I knew this technology existed, and I knew it could be leveraged to do some good in the healthcare industry. And I have this engineering background, I have this medical background, and I was able to put the two together. And sort of the next step in the journey was, 'Okay, how do I make this a business?'"

## 'WHAT DID I JUST DO?'

When she was working with patients dying of coronavirus in Miami, Finkelstein frequently risked her own life.

"There was more than times I can count on my fingers, where it was like, 'Okay, I can go into the room, do the chest tube and expose myself' — and keep in mind when you place a chest tube, it's puncturing a hole in the lung wall, and all that Covid air is just pumped right out at me," she says, demonstrating with a sweep of her hand. "And this was earlier on in Covid, where you just didn't know what would happen — 'I have no idea how this is going to affect me.'

"It was, 'All right, either I can watch this person just die, because if I don't do something in the next 30 seconds, that's what's going to happen. Or I can put my own life at risk.' You make a calculated decision. And there were many times I was very scared: 'Holy crap, what did I just do?'

"Looking back, I'm like, 'I can't believe I did that.' But that's why I went into medicine. You put others ahead of you, sometimes. And there were times, before we understood the virus as much as we do now, where I thought, 'Okay, can I go home to see my family after if I've had this exposure? Am I just waiting to see if I develop symptoms?' It was a weird time."

## STARS ALIGN



Courtesy photo

Finkelstein's first year at Columbia ended the first week of May. It has been a whirlwind, she says. "I honestly can't believe it because a couple of years ago, me being in business school really wasn't something I'd ever imagined I'd be able to do, given how medicine is. The process of becoming a doctor is very controlled and very streamlined, and there's not really a lot of wiggle room for people to branch out and try other things. But honestly, moving (to New York) has been one of the best experiences in my life. I feel like it worked out the way it was supposed to. All the stars aligned for me applying to Columbia, not even to take the GMAT or the GRE. Them having rolling admission still being open."

Her good fortune didn't end there. Amid her research into schools, she was advised by her friend from HBS to check out Columbia's healthcare program and find professors to reach

out to. She clicked on one of the first names to come up: Carri Chan, a professor of Decision, Risk, and Operations and faculty director of the school's Healthcare and Pharmaceutical Management program.

"I opened up her bio, and she also went to the same undergrad as me — so I was like destiny," Finkelstein says. "And I reached out to her, and she was like, 'Hey, want to just Zoom chat? More than happy to make some time for you.' And I actually spent a few minutes talking to her, and she was so awesome and welcomed me. She's like, 'You'd be a great fit here. Please apply.' So she kind of sealed the deal.

"And then she actually happened to be our Operations professor in the spring semester! So it was just a full-circle moment."

## NEEDED: MORE PHYSICIANS IN B-SCHOOL

Finkelstein was disappointed in one thing: to be the only doctor in her class. The MBA offers a valuable skillset for physicians, she says, but so many feel like they don't have the time, or don't want to pay the opportunity costs.

"But I feel like it's totally worth it," she says. "And at the very least the word should be out there that you don't need to come from a business background, you can come from something as far-fetched as medicine and still thrive and do a good job.

When she first showed up to Columbia and discovered that she was the only fully-licensed physician in the class, "I remember people just being like, 'What are you doing here?' And I was like, 'This is my first time seeing corporate finance, seeing accounting, seeing operations management.' A lot of people who come from these backgrounds of finance and private equity, they've already seen this all before. So I was like, 'What are you guys doing here? You already know it all.'

"I know a lot of people come to pivot, but for me, I'm actually here to learn."

**DON'T MISS: HIGH & LOW HEALTHCARE MBA SALARIES AT THE TOP 25 B-SCHOOLS or AS IT RELOCATES TO A SPARKLING NEW HOME, COLUMBIA TOUTS ITS SHINIEST JOBS REPORT YET**

PREVIOUS PAGE
Page 2 of 2  1  2

# EXHIBIT N

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-01 (27)

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

## <u>DECLARATION OF KFIR BEN-DAVID, M.D.</u>

STATE OF FLORIDA      )
COUNTY OF MIAMI-DADE     )

BEFORE ME, the undersigned authority, personally appeared Kfir Ben-David, M.D., who under oath, deposes and states:

1.     My name is Dr. Kfir Ben-David. I am over eighteen (18) years old. I have personal knowledge with respect to the matters set forth herein.

2.     I am the chairperson of the Department of Surgery at Mount Sinai Medical Center of Florida, Inc. ("Mount Sinai" or the "Hospital"), and also the Program Director of MSMC's general surgery residency program. I am also a defendant in this case.

3.     As Program Director, I have knowledge of Dr. Paige Finkelstein's ("Dr. Finkelstein") tenure as a general surgery resident at MSMC.

4.     I am also familiar with the allegations Dr. Finkelstein advances against the Hospital and me personally in this lawsuit and in her motion for temporary injunction (the "TI Motion").

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

5.      The "Factual Background" section included in Defendants' Response to the TI Motion is true and correct insofar it relates to matters in which I was involved, matters involving the surgical residency program and Dr. Finkelstein's tenure therein, and any other matter of which I have personal knowledge.

6.      Further, all documents cited to and referenced in Defendants' Response to the TI Motion –including Exhibit A through Exhibit M – are true and correct copies thereof.

7.      This Declaration does not exhaust my knowledge of these matters or of Dr. Finkelstein's other allegations in her complaint and TI Motion.

**FURTHER DECLARANT SAYETH NOT.**

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

Dated: December 29, 2022

                                   */s/ Kfir Ben-David*
                                   **DR. KFIR BEN-DAVID**

Lash&Goldberg LLP
LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

# EXHIBIT O

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-01 (27)

PAIGE FINKELSTEIN, M.D.,

     Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

     Defendants.

_____/

## DECLARATION OF ROBERT C. GOLDSZER M.D., M.B.A.

STATE OF FLORIDA     )
COUNTY OF MIAMI-DADE     )

     BEFORE ME, the undersigned authority, personally appeared Robert C. Goldszer, M.D.,

M.B.A., who under oath, deposes and states:

     1.     My name is Dr. Robert Goldszer. I am over eighteen (18) years old. I have personal

knowledge with respect to the matters set forth herein.

     2.     I am the Chief Medical Officer at Mount Sinai Medical Center of Florida, Inc.

("Mount Sinai" or the "Hospital"). I am also the Designated Institutional Official ("DIO") for the

Hospital's graduate medical education programs.

     3.     In my role, I am involved in issues related to the Hospital's residency programs and

the standards and requirements for our programs as established by the Accreditation Council for

Graduate Medical Education ("ACGME").


MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

LASHGOLDBERG.COM

4.       I am familiar with the allegations that Plaintiff, Dr. Paige Finkelstein ("Dr. Finkelstein") advances against the Hospital and Dr. Kfir Ben-David personally (her Program Director in the surgical residency program) in this lawsuit and in her motion for temporary injunction (the "TI Motion"). I previously executed a declaration in this case in support of Defendants' pending Motion to Dismiss Dr. Finkelstein's Verified Complaint.

5.       The "Factual Background" section included in Defendants' Response to the TI Motion is true and correct insofar it relates to matters in which I was involved, matters involving MSMC generally and the surgical residency program specifically, and any other matter of which I have personal knowledge.

6.       Further, all documents cited to and referenced in Defendants' Response to the TI Motion –including Exhibit A through Exhibit M – are true and correct copies thereof.

7.       This Declaration does not exhaust my knowledge of these matters or of Dr. Finkelstein's other allegations in her complaint and TI Motion.

**FURTHER DECLARANT SAYETH NOT.**

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

Dated: December 28, 2022

**DR. ROBERT GOLDSZER**

2

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

Case 1:23-cv-20188-RKA   Document 1-5   Entered on FLSD Docket 01/17/2023   Page 255 of 262

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:   2022-018881-CA-01

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida not-for-profit
corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

### <u>AFFIDAVIT OF PAIGE FINKELSTEIN, M.D.</u>

STATE OF FLORIDA
COUNTY OF PALM BEACH

      BEFORE ME, the undersigned authority personally appeared PAIGE FINKELSTEIN, M.D., who after being duly sworn deposes and says:

      1.      My name is Paige Finkelstein.   I am over the age of eighteen (18) years of age and I make this Affidavit based upon my personal knowledge.

      2.      I graduated at the top of my high school class and was accepted into MIT where I studied engineering while also working on my pre-med requirements.

      3.      I earned my MD and MPH degrees at the University of Miami.

      4.      Thereafter, I undertook a residency in general surgery training at Mount Sinai Medical Center ("Mount Sinai") via a "Match" program which is operated by the Accreditation Council for Graduate Medical Education ("ACGME").   This program occurs once a year.

      5.      I was at Mount Sinai for 2 ½ years as a General Surgery Resident.   Dr. Kfir Ben David, was the Program Director of the General Surgery Residency Program, and an employee of Mount Sinai.   I also worked with numerous other attending physicians, nurses and residents.

MMW.15622/01509272 v1

673AE58A-8379-48B2-B0B1-2C76134F7766 — 2022/10/25 10:43:28 -5:00 — Remote Notary

6.      During my tenure at Mount Sinai, I was harassed and otherwise mistreated by Dr. Kfir Ben David and was forced to resign by Dr. Ben David, to avoid being wrongfully dismissed from the Residency Program by Dr. Ben David.

7.      Mount Sinai demanded that I sign a non-disclosure agreement and general release of all claims to prevent me from sharing the details of my experience at Mount Sinai, as a precondition of providing me with my Summative Evaluations and Certificate of Completion documents which Mount Sinai was required to provide me upon request, pursuant to the Rules of Regulations of the ACGME.

8.      I refused to sign the non-disclosure agreement and general release of all claims.

9.      Pursuant to the by-laws of ACGME, it is prohibited to ask a resident to sign this type of agreement or similar document of any type, as I am entitled, as a matter of right, to receive the Summative Evaluations and Certificate of Completion, simply upon requesting them.

10.      Mount Sinai and Dr. Ben David have refused to provide me with my Summative Evaluations and Certificate of Completion, despite my repeated requests.

11.      Mount Sinai continued to coerce me into signing the non-disclosure agreement and general release in exchange for a letter of recommendation, my certificate of intern year completion, and Summative Evaluations, all documents Mount Sinai was required to provide by the ACGME.

12.      To date, Mount Sinai has failed and refused to provide any of the documents I have requested, which prevents me from securing a position as a physician, or to enroll in another residency position.

13.      Dr. Kfir Ben David has and continues to retaliate against me.   I have personal knowledge that because of Dr. Kfir Ben David's inference, at least one formal job offer was

MMW.15622/01509272 v1

673AE58A-8379-48B2-B0B1-2C76134F7766 — 2022/10/25 10:43:28 -5:00 — Remote Notary



rescinded.

14.     After my departure from Mount Sinai, I received ten (10) letters of reference from other physicians, nurses, and colleagues that I worked with during my time at Mount Sinai, simply upon making a request for same.

15.     I have not been successful in my efforts to enroll in another residency program, or obtain any other comparable position, due to the actions of Mount Sinai and Dr. Ben David.

FURTHER AFFIANT SAYETH NAUGHT.

_Paige Finkelstein_
Signed on 2022/10/25 15:39:29 -6:00

PAIGE FINKELSTEIN

SUBSCRIBED AND SWORN TO before me by means of _____ physical presence or __X___ online notarization this __10/25/2022_____, by PAIGE FINKELSTEIN, M.D., who is personally known to me, or produced __FL DL_ as identification.

mne
Signed on 2022/10/25 15:39:29 -6:00

Notary Public

Michelle A. Narea

(SEAL)

Michelle A. Narea
Commission # HH 226234
Notary Public - State of Florida
My Commission Expires Apr 08, 2026

Notary Stamp 2022/10/25 12:39:29 PST

Notarial act performed by audio-visual communication

MMW.15622/01509272 v1

673AE58A-8379-48B2-B0B1-2C76134F7766 — 2022/10/25 10:43:28 -5:00 — Remote Notary

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2022-018881-CA-27

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.

MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., a Florida Not For Profit Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

## DEFENDANTS' UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S VERIFIED AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Defendants Mount Sinai Medical Center of Florida, Inc. and Kfir Ben-David, M.D. (collectively, "Defendants"), move for an order extending Defendants' time to respond to Plaintiff's Verified Amended Complaint for Injunctive Relief and Damages (the "Amended Complaint").

1.      Defendants' response to the Amended Complaint is presently due to be served on or before January 12, 2023.

2.      Defendants hereby respectfully request a brief extension of time to respond because they require additional time to investigate the allegations in Plaintiff's Amended Complaint and prepare a response.

3.      This motion is made in good faith and not for the purposes of delay. Moreover, no party will be prejudiced by the brief extension requested.



LashGoldberg
LASHGOLDBERG.COM

MIAMI 100 SE 2nd St., Ste.1200 • Miami, FL, 33131• Tel: 305.347.4040 • Fax: 305 347.4050
FT. LAUDERDALE 2500 Weston Rd., Ste. 220 • Weston, FL, 33331 • Tel: 954 384.2500 • Fax: 954.384 2510
TAMPA 142 West Platt St., Ste.118 • Tampa, FL, 33606 • Tel: 813.284.4002

CASE NO. 2022-018881-CA-27

4.    On January 4, 2023 and January 9, 2023, the undersigned counsel reached out to Plaintiff's counsel regarding the relief requested herein. Plaintiff has no objection to the requested extension.

**WHEREFORE**, Defendants Mount Sinai Medical Center of Florida, Inc. and Kfir Ben-David, M.D., respectfully request that this Court enter an Order extending the time for Defendants to respond to Plaintiff's Amended Complaint to Wednesday, **February 1, 2023**.

Dated: January 10, 2023

Respectfully submitted,

**LASHGOLDBERG**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 347-4040
Fax: (305) 347-4050
*Counsel for Defendants*

By: */s/ Clark S. Splichal*
**MARTIN B. GOLDBERG**
Florida Bar No. 0827029
Primary Email: mgoldberg@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com
**CLARK S. SPLICHAL**
Florida Bar No. 1010425
Primary Email: csplichal@lashgoldberg.com
Secondary Email: mwallace@lashgoldberg.com

2



LASHGOLDBERG.COM

MIAMI  100 SE 2nd St., Ste.1200 •  Miami, FL, 33131• Tel: 305.347.4040 • Fax: 305 347.4050
FT. LAUDERDALE  2500 Weston Rd., Ste. 220 •  Weston, FL, 33331 • Tel: 954 384.2500 • Fax: 954.384 2510
TAMPA  142 West Platt St., Ste.118 •  Tampa, FL, 33606 • Tel: 813.284.4002

CASE NO. 2022-018881-CA-27

## <u>CERTIFICATE OF SERVICE</u>

    **I HEREBY CERTIFY** that on this 10th day of January 2023, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court and has been served pursuant to Florida Rule of Judicial Administration 2.516, via the Florida Courts E-Filing Portal System to all of the following:

Richard H. Levenstein, Esq.
**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com

*Attorneys for Plaintiff*

                              By: *<u>/s/ Clark S. Splichal</u>*
                                    **CLARK S. SPLICHAL**


LASHGOLDBERG.COM

MIAMI 100 SE 2nd St., Ste.1200 • Miami, FL, 33131• Tel: 305.347.4040 • Fax: 305 347.4050
FT. LAUDERDALE 2500 Weston Rd., Ste. 220 • Weston, FL, 33331 • Tel: 954 384.2500 • Fax: 954.384 2510
TAMPA 142 West Platt St., Ste.118 • Tampa, FL, 33606 • Tel: 813.284.4002

Filing # 164629898 E-Filed 01/12/2023 01:31:45 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL**
**CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2022-018881-CA-01
SECTION: CA27
JUDGE: Thomas J. Rebull

**PAIGE FINKELSTEIN, M.D.**

Plaintiff(s)

vs.

**MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC. et al**

Defendant(s)

_____/

**AGREED ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR**
**EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S VERIFIED AMENDED**
**COMPLAINT**

THIS CAUSE came before the Court upon Defendants' Unopposed Motion for Extension of Time to Respond to Plaintiff's Verified Amended Complaint. The Court, having reviewed the motion, being advised of the agreement of the parties on the form and content of this Order, and being otherwise fully advised in the premises, hereby ORDERS and ADJUDGES as follows:

1. Defendants' Unopposed Motion for Extension of Time to Respond to Plaintiff's Verified Amended Complaint is GRANTED.

2. Defendants shall have up to and including Wednesday, February 1, 2023, to respond to Plaintiff's Verified Amended Complaint.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 12th day of January, 2023.

2022-018881-CA-01 01-12-2023 1:17 PM

2022-018881-CA-01 01-12-2023 1:17 PM
Hon. Thomas J. Rebull

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Clark S. Splichal, csplichal@lashgoldberg.com
Clark S. Splichal, mwallace@lashgoldberg.com
Clark Sigman Splichal, csplichal@lashgoldberg.com
Clark Sigman Splichal, mwallace@lashgoldberg.com
David R Ruffner, druffner@lashgoldberg.com
David R Ruffner, mwallace@lashgoldberg.com
Martin B. Goldberg, mgoldberg@lashgoldberg.com
Martin B. Goldberg, rdiaz@lashgoldberg.com
Martin B. Goldberg, lashgoldberg@gmail.com
Richard H. Levenstein, rlevenstein@nasonyeager.com
Richard H. Levenstein, ptreadway@nasonyeager.com
Richard H. Levenstein, creyes@nasonyeager.com

**Physically Served:**