IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF FLORIDA MIAMI
DIVISION

PAIGE FINKELSTEIN, M.D., )
                                                   )
      Plaintiff, )  Case No. 1:23-CV-20188-RKA
                                                   )
v. )
                                                   )
MOUNT SINAI MEDICAL CENTER OF )
FLORIDA, INC., a Florida Not For Profit )
Corporation, and KFIR BEN-DAVID, M.D., )
                                                   )
      Defendants.

**PLAINTIFF'S, PAIGE FINKELSTEIN, (CORRECTED) RESPONSE TO
DEFENDANTS' MOTION TO STRIKE OR, IN THE ALTERNATIVE,
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Cases

17-CV-22620-KMW,
  2017 WL 6987706 (S.D. Fla. July 14, 2017) ............................................................................. 17
*Axelrod v. Califano*,
  357 So. 2d 1048 (Fla. Dist. Ct. App. 1978) ............................................................................. 13
*Delaware State Coll. v. Ricks*,
  449 U.S. 250, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980) ........................................................... 15
*Fowler v. Taco Viva, Inc.*,
  646 F. Supp. 152 (S.D. Fla. 1986) ........................................................................................... 15
*Greenberg v. BellSouth Telecommunications, Inc.*,
  498 F.3d 1258 (11th Cir. 2007) ................................................................................................ 15
*Hart v. United States*,
  894 F.2d 1539 (11th Cir. 1990) ................................................................................................ 11
*Hodge v. Hughes*,
  No. 18-CV-21571, 2018 WL 2688800 (S.D. Fla. Apr. 23, 2018) ............................................ 17
*Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*,
  783 So. 2d 353 (Fla. Dist. Ct. App. 2001) ............................................................................... 16
*In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*,
  524 F. Supp. 3d 1346 (S.D. Fla. 2021) ...................................................................................... 9
*Leon v. Cont'l AG*,
  301 F. Supp. 3d 1203 (S.D. Fla. 2017) ............................................................................. 13, 14
*Linafelt v. Beverly Enterprises-Fla., Inc.*,
  745 So. 2d 386 (Fla. Dist. Ct. App. 1999) ............................................................................... 11
*Nazareth v. Herndon Ambulance Serv., Inc.*,
  467 So. 2d 1076 (Fla. Dist. Ct. App. 1985) ............................................................................. 16
*Nicholas v. Bd. of Trustees of Univ. of Alabama*,
  251 F. App'x 637 (11th Cir. 2007) ........................................................................................... 14
*Noah v. Assor*,
  379 F. Supp. 3d 1284 (S.D. Fla. 2019) .................................................................................... 11
*Schiavo ex rel. Schindler v. Schiavo*,
  403 F.3d 1223 (11th Cir. 2005) ................................................................................................ 18
*Shedrick v. Dist. Bd. of Trustees of Miami-Dade Coll.*,
  941 F. Supp. 2d 1348 (S.D. Fla. 2013) .................................................................................... 14
*Sussman v. Fla. E. Coast Properties, Inc.*,
  557 So. 2d 74 (Fla. Dist. Ct. App. 1990) ................................................................................. 16
*Thomas v. Jacksonville Television, Inc.*,
  699 So. 2d 800 (Fla. Dist. Ct. App. 1997) ............................................................................... 12
*Valenzuela v. GlobeGround N. Am., LLC*,
  18 So. 3d 17 (Fla. Dist. Ct. App. 2009) ................................................................................... 14
*Witover v. Celebrity Cruises, Inc.*,
  161 F. Supp. 3d 1139 (S.D. Fla. 2016) .............................................................................. 16, 17
*Yule v. Ocean Reef Cmty. Ass'n*,
  No. 19-10138-CIV, 2020 WL 3051505 (S.D. Fla. June 8, 2020) ...................................... 10, 11

Statutes

18 U.S.C.A. § 1962 (West) .................................................................................................. 14
42 U.S.C.A. § 2000e-3(a) (West) ........................................................................................ 14
Fla. Stat. Ann. § 760.10(7) (West) ...................................................................................... 14
Fla. Stat. Ann. § 760.11 (West 2010) .................................................................................. 15

COMES NOW the Plaintiff, PAIGE FINKELSTEIN, MD, MPH ("Dr. Finkelstein" or "Plaintiff"), by and through her undersigned counsel of record, hereby submits this Corrected Response to Defendants' MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC. ("MSMC"), a Florida Not for Profit Corporation, and KFIR BEN-DAVID, M.D. ("Dr. Ben David" or "Residency Program Director") (together, "Defendants"), Motion to Strike or, in the alternative, Dismiss (the "Motion") (ECF No. 52) Plaintiff's Second Amended Complaint ("SAC") (ECF No. 38).

## PRELIMINARY STATEMENT

After embarking on a series of discriminatory practices, which culminated with Dr. Finkelstein's forced resignation from MSMC's surgical residency program (the "Program"), as well as a tortious scheme to interfere with and permanently derail Dr. Finkelstein's career by both spreading incomplete and false information about her and also by failing to provide her with essential documents to her securing a placement with a new residency program, Defendants now seek to avoid answering for their misconduct in this Court.

They do so by attempting to muddy the waters under the guise of their Motion to Strike or, in the Alternative, Dismiss the SAC. Their argument is, yet again, another attempt by Defendants to continue to protect themselves, even if it continues to cost the career of the Plaintiff, a talented young physician who chose their program to complete their surgical training.

First, Defendants inappropriately ask that this Court Strike the SAC, claiming that this Court's February 7, 2023 order, which mandated that Plaintiff file a Second Amended Complaint, somehow did not allow Plaintiff to Amend its First Amended Complaint. *See* ECF No. 28. Much like the Defendants' baseless Motions to Strike filed with this Court, the Motion to Strike should be denied because Plaintiff's Second Amended Complaint was filed in compliance with the Court's order and merely seeks to make the necessary adjustments as to make the pending claims appropriate to the new venue sought by Defendants, and to add claims also appropriate for filing with this Court.

Alternatively, because Plaintiff's counsel understood the Court's order not to be limiting in the way Defendants claim, Plaintiff respectfully requests that the Court retroactively grant a leave to amend as there was no undue delay, bad faith, dilatory motive on the part of Plaintiff, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to Defendants by virtue or allowance of the SAC. *See Joyner v. Monier Roof Tile, Inc.*, 784 F. Supp.

4

872, 874 (S.D. Fla. 1992). Further, far from being futile, the SAC makes the appropriate modifications so as to make Plaintiff's claims and legal authority appropriate to the federal Court. *Id.* Additionally, it is the long time doctrine and practice of this Court, and all federal Courts, to freely grant leave to amend, unless futile to do so, or if the right to amend has been abused. The Plaintiff's SAC is neither a futile effort nor an abuse of the right to amend. And, perhaps most importantly, no Court has yet judicially reviewed or made any determination with respect to the legal sufficiency of any complaint filed by Plaintiff, whether in State or Federal Court.

Moreover, the Defendants' instant Motion to Dismiss must be denied because it stands in stark contradiction to the fundamental principle of law regarding motions to dismiss. The Court must view the complaint in the light most favorable to the plaintiff and accept as true the well-pled facts of the complaint and all reasonable inferences therefrom. *See Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Stephens v. Dep't of Health & Hum. Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). Applying this standard, the facts as set forth in the Second Amended Complaint ("SAC") (ECF No. 38) should be "accepted as true" and "construe[d] in the light most favorable to Dr. Finkelstein. Likewise, the Court should also summarily deny the Motion to Dismiss because Dr. Finkelstein adequately and properly pled facts supporting each element of the twenty-two counts in her Second Amended Complaint. Defendants' inappropriate attempts to persuade this Court to engage in contractual and documentary interpretation must be rejected. The governing case law is clear that contractual interpretation is not proper at this stage. As such, the Motion must be denied.

## SUMMARY OF ARGUMENT

Dr. Finkelstein sufficiently alleges the required main facts and supporting allegations in her Second Amended Complaint: (i) that Defendants devised an illegal enterprise to extort a General Release of all Claims and Non-Disclosure Agreement, agreeing not to divulge any events or facts concerning the Surgical Residency Program, and releasing both Defendants from liability with respect to any and all claims related to her Surgical Residency Program experience, as a pre-condition to producing to Plaintiff the Completion Documents, which Defendants were required to provide to her by law, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See* SAC ¶¶ 33-36; 125-136. *See also* Finkelstein Decl. ¶¶ 32-41; Exhibits W, X, Y, Z, AA, and BB; (ii) that Dr. Ben-David, individually and on behalf of MSMC, sought to advance this

5

illegal enterprise by providing false or otherwise incomplete information to prospective residency programs and employers, intentionally interfering with Dr. Finkelstein's ability to secure a new position. *See* SAC ¶¶ 39-42; 83-124. *See also* Finkelstein Decl. ¶¶ 32-41; Exhibits W, X, Y, Z, AA, and BB; (iii) that Dr. Finkelstein is well qualified for the positions of resident and house surgeon. Finkelstein Decl. ¶¶ 32-41; Exhibits Y and Z; (iv) that Dr. Finkelstein has Attention Deficit Hyperactivity Disorder ("ADHD"). *See* SAC ¶¶ 18-19; 182-195. *See also* Finkelstein Decl. ¶14; Exhibits G and H; (v) that Dr. Ben-David, individually and on behalf of MSMC, and MSMC denied the accommodations that Defendants knew Dr. Finkelstein was entitled to while a resident at MSMC. *See* Finkelstein Decl. ¶14; (vi) that Defendants violated the Graduate Medical Education Program Agreement ("GME Agreement") by both fostering a hostile work environment in which sexual discrimination and harassment ran rampant, as well as by virtue of failing to ensure an educational environment in which residents such as Dr. Finkelstein could raise and resolve issues without fear of intimidation or retaliation. *See* SAC ¶¶ 20-24; 137-160. *See also* Finkelstein Decl. ¶19; Exhibit S at 52, 69, 72, 93, 94, 231, and 232; (vii) that Dr. Ben-David, individually and/or on behalf of MSMC, subjected Dr. Finkelstein to a relentless campaign to discredit her, ultimately leading to her receiving a letter of Non-Renewal of her Surgical Residency Program, in effect ending her training as a General Surgeon, and potentially ending her ability to become a General Surgeon anytime thereafter. *See* SAC ¶¶ 39-42; 83-124. *See also* Finkelstein Decl. 32-41; Exhibits W, X, Y, Z, AA, and BB; (viii) that Defendants subjected Dr. Finkelstein, a woman, to discrimination based on her gender. *See* SAC ¶¶ 33-36; 137-160. *See also* Finkelstein Decl. ¶¶ 8, 29; Exhibits B and C; (ix) that Defendants retaliated against Dr. Finkelstein's reporting of sexual discrimination and harassment. *See* SAC ¶¶ 33-36; 161-181. *See also* Finkelstein Decl. ¶¶ 9, 15, 19, 26, and 33; Exhibits P, T, and W; (x) that Dr. Ben-David is aware of Dr. Finkelstein's knowledge of his personal affairs. *See* Finkelstein Decl. ¶28; and (xi) that Dr. Finkelstein has suffered and continues to suffer mental anguish, emotional distress, humiliation, and embarrassment as a result of the Defendants' actions, was unable to competently and safely perform her duties, was unable to complete her residency program, suffered damages consisting of loss of earnings, past present and future, loss of earning capacity, loss of reputation, and the inability to practice the profession she has chosen and spent years of education and training to undertake. *See* Second Amended Complaint, generally; *see also* Finkelstein Decl. at ¶¶ 32-41, Exhibits W, X, Y, Z, AA, and BB.

While requesting the extreme remedy of dismissal with prejudice, Defendants completely ignore the well-pled allegations in the SAC and attempt to argue the merits of this case in their Motion. Specifically, the Defendants' arguments are predominantly based on their own exercise in contractual and documentary interpretation, and their request for this Court to try this case based on their Motion to Dismiss at this stage of the litigation is inappropriate and improper. Defendants ask the Court to look well beyond the four corners of the Second Amended Complaint and its allegations and exhibits in this Motion as well.

Additionally, given the nature of Dr. Finkelstein's claims, and Defendants' concealed dealings, as alleged in the SAC, it is unknown to Dr. Finkelstein (at this time) the complete extent of Defendants' wrongdoings both regarding her wrongful termination, but also their attempts to cover up their misconduct. Therefore, without allowing discovery to proceed in this action, it would be entirely premature and improper to dismiss the case at this stage.

## MEMORANDUM OF LAW

### A. Standard of Review

The central inquiry at the dismissal stage is whether the pleader has presented sufficient allegations to state a claim, not whether he will win. *Regions Bank v. Commonwealth Land Title Ins. Co.*, No. 11-23257-CIV, 2012 WL 5410609, at *3 (S.D. Fla. Nov. 6, 2012), *citing Deuel v. Santander Consumer USA, Inc.*, 700 F. Supp. 2d 1306, 1309 (S.D. Fla. 2010) (Conn, J.) ("A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Accordingly, a well pleaded complaint will survive a motion to dismiss 'even if it appears that a recovery is very remote and unlikely.' ") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also Innovative Strategic Commc'ns, LLC v. Viropharma, Inc.*, No. 8:11-CV-1838-T-33TBM, 2012 WL 3156587, at *7 (M.D. Fla. Aug. 3, 2012) (Hernandez Covington, J.) ("Whether Plaintiff can actually prove the elements of the cause of action based on the evidence in this case, as Defendant contends it cannot, is more appropriately considered at the summary judgment stage.").

Indeed, the Federal Rules of Civil Procedure require only " 'a short and plain statement of the claim showing that the pleader is entitled to relief, in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]' " *Twombly*, 550 U.S. at 555, quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), *abrogated by Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). On a motion to dismiss pursuant to Rule 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, accepting the well-pleaded facts of the complaint and all reasonable inferences therefrom as true. *Glover*, 459 F.3d at 1308; *Stephens*, 901 F.2d at 1573. Nevertheless, "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly.*, 550 U.S. at 555 (citations omitted).

A complaint must have "enough facts to state a claim to relief that is plausible on its face;" if it does not "nudge[] the [] claims across the line from conceivable to plausible, [it] must be dismissed." *Id.* at 570; *see also Brooks*, 116 F.3d at 1368–69("A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory."[citations omitted]"We hasten to add that this motion is viewed with disfavor and rarely granted."[citations omitted]). Further, Courts are reluctant to grant the extreme remedy of dismissal with prejudice. *See Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985) (explaining that a "district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim"). Finally, a Court may only consider documents outside the four corners of the complaint as part of the pleadings for purposes of a motion to dismiss only if such documents are *central* to the plaintiff's claims and their authenticity is undisputed. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Plaintiff therefore requests leave to amend in the event this Court dismisses any portion of the SAC.

**B. Defendants' Exhibits To The Motion And Any References Thereto Are Improper And Outside The Four Corners Of The SAC**

Ignoring the fundamental rule that a Court is limited to the four corners of the complaint when ruling on a motion to dismiss, Defendants attach and refer to three (3) exhibits that are not part of the SAC: Ex. 1-Declaration of Robert C. Goldszer, M.D., Ex. 2- Alleged Finkelstein Authorization, Ex. 3- EEOC notices. These exhibits and notices may not be considered by the Court at this stage. Defendants' attempt to argue that these documents and other materials may be considered to determine whether subject matter jurisdiction exists is beside the point, as neither of the parties argues against subject matter jurisdiction, including Defendants in the entirety of the

Motion. Further, the attached exhibits and notices are not central to Dr. Finkelstein's claims and, therefore, may not be considered at this stage. *See Horsley*, 304 F.3d at 1134.

### C.  Dr. Finkelstein Has Sufficiently Alleged Her Breach Of Contract And Wrongful Termination Claims Against MSMC And Dr. Ben-David (Counts I And II)

To properly plead a claim for breach of contract under Florida law, a plaintiff must plead and establish (1) the existence of a contract, (2) a material breach of that contract, and (3) damages resulting from the breach. *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 524 F. Supp. 3d 1346 (S.D. Fla. 2021).

Defendants use a standalone clause (Provision 6- Harassment-free Work Environment) in the MSMC Graduate Medical Education Program Agreement ("GME Agreement") to improperly assert that Dr. Finkelstein's breach of contract and wrongful termination claims are preempted by federal law. However, as explained further on the SAC, in addition to Provision 6, the following GME Agreement provisions were violated by Defendants: (7) Accommodation for Disabilities; (9) Clinical Experience and Education Hours Policy; and (15) Restrictive Covenants. *See* Exhibit B to the SAC. Thus, Defendants cannot argue that the entirety of the GME Agreement is preempted by Title VII or any other federal law because it is not. In doing so, Defendants fundamentally misunderstand the SAC by conflating Dr. Finkelstein's discrimination and harassment claims (Counts X to XV) with her breach of contract and wrongful termination claims. However, Dr. Finkelstein's claims against Defendants for breach of contract and wrongful termination are founded upon a legal duty independent of Title VII and, thus, are not preempted by federal law.

Additionally, the Defendants' assertions that Dr. Finkelstein's Breach of Contract and Wrongful termination claims should be dismissed because the same are based on Plaintiff's reference and reliance upon the Accreditation Council for Graduate Medical Education ("ACGME") guidelines is also mistaken; while the SAC cites to the ACGME guidelines as evidence of Defendants' breach of contract and wrongful termination, Dr. Finkelstein never claims that the ACGME guidelines are the basis of Defendants' violations.

Also, the Defendants' assertion that Defendants' refusal to produce the documents, while a restrictive covenant, is not a breach is also erroneous and must not be entertained. Defendants' position that the Provision precluding restrictive covenants from Defendants was no longer valid because the breach happened after the termination of the GME Agreement is absurd. Restrictive Covenant Provisions, much like arbitration provisions, are provisions in which the parties have a

9

reasonable expectation will survive for a reasonable time upon contract termination. *Milfort v. Comcast Cable Commc'ns Mgmt. LLC*, 309 F. Supp. 3d 1268, 1271 (S.D. Fla. 2018) (stating that the Supreme Court recognized a "presumption in favor of postexpiration arbitration of matters unless negated expressly or by clear implication.") Here, Provision 15 of the GME Agreement was clearly implemented to protect residents from MSMC and its agents causing any restrictive covenants upon former residents who wish to transfer to other programs, and the fact that Defendants intentionally and wrongfully withheld documents which were exclusively in their possession, including a Summative Evaluation, Proof of Completion for at least two years of surgical residency, and her Diploma for completing the intern year of the General Surgery Residency, and Program Director Letter ("Completion Documents"), in fact, is a breach of Provision 15. Further, the GME Agreement does not reference or refer to any separate "policy or other document" in any provision, rather, it contains distinct and discrete provision governing workplace harassment and discrimination.

Similarly, Defendants' assertions that Counts I and II must be dismissed because Dr. Ben-David is not a party to the GME Agreement, as well as the fact that Dr. Finkelstein's failure to exhaust the contractual remedies are fully addressed by the SAC. *See* SAC ¶¶56-58, ¶¶60-66, ¶¶70-72; and ¶¶78-80. Moreover, even if these assertions were not sufficiently addressed by the SAC (they are), the contract sections in dispute are reasonably susceptible to more than one interpretation, and thus this issue should be decided at the summary judgment stage and the motion to dismiss on this basis should be denied. *See Managed Care Sols., Inc. v. Cmty. Health Sys., Inc.*, No. 10-60170-CIV, 2011 WL 6024572, at *6 (S.D. Fla. Dec. 2, 2011); *Moran v. Crystal Beach Cap., LLC*, No. 8:10-CV-1037-T-30AEP, 2011 WL 17637, at *2 (M.D. Fla. Jan. 4, 2011).

Likewise, Defendants' assertions regarding Counts I and II failing on multiple grounds are unfounded, and Dr. Finkelstein's Breach of Contract and Wrongful termination Claims shall not be dismissed.

### D. Dr. Finkelstein Has Sufficiently Alleged Her Intentional Infliction Of Emotional Distress Claims Against MSMC And Dr. Ben-David (Counts III And IV)

To state a claim for intentional infliction of emotional distress under Florida law, Dr. Finkelstein must allege that: (1) Defendants engaged in intentional or reckless conduct; (2) the conduct was "outrageous"; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Yule v. Ocean Reef Cmty. Ass'n*, No. 19-10138-CIV, 2020 WL 3051505, at *5

(S.D. Fla. June 8, 2020) (citing *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990).) What constitutes "outrageous" conduct is a question of law. *Id.* (citing *Noah v. Assor*, 379 F. Supp. 3d 1284, 1299 (S.D. Fla. 2019).)

While Dr. Finkelstein explicitly and properly alleged each of these elements, as indicated by Counts III and VI of the SAC, Defendants' Motion attempts to depict the second element as equating to an impossible hurdle, so as none of the Defendants' conduct, conveniently, could never be outrageous enough for Dr. Finkelstein to successfully allege an Intentional Infliction of Emotional Distress claim. Here, in the SAC, Dr. Finkelstein details how Defendants' conduct was outrageous, as Defendants' relentless campaign to discredit her, involving credible threats and actions perpetrated to destroy and derail her career, which ultimately led to her receiving a letter of Non-Renewal of her Surgical Residency Program, in effect ending her training as a General Surgeon, and potentially ending her ability to become a General Surgeon anytime thereafter, and ultimately, forced her resignation form the Program. It is telling that numerous others affiliated with Defendants and the Program all provided positive evaluations and references to Plaintiff, including Dr. Philip Bao, who was Dr. Ben-David assistant Program Director and second in command while the Plaintiff was a resident.

Even though Defendants try once more to minimize the extent of the damage inflicted by them, this is a matter of life or death to Plaintiff. Moreover, for the purpose of the instant Motion, the Court is required to accept Plaintiff's allegations as true.

### E. Dr. Finkelstein Has Alleged Facts Sufficient to Establish Her Tortious Interference Claims Against MSMC And Dr. Ben-David (Counts V And VI)

The elements of the tort of intentional interference with an advantageous business relationship are (1) the existence of a business relationship not necessarily evidenced by an enforceable contract, (2) the knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with that relationship by the defendant, and (4) damage to the plaintiff as the result of the breach of the relationship. *Linafelt v. Beverly Enterprises-Fla., Inc.*, 745 So. 2d 386, 389 (Fla. Dist. Ct. App. 1999).

Defendants argue that Plaintiff fails to state a cause of action for tortious interference, alleging both that Mount Sinai Beth Israel ("MSBI") had merely presented an offer and also that Dr. Ben-David's communications with MSBI were privileged. In support of their position, Defendants rely on the cases which greatly differ from Dr. Finkelstein's circumstances and are,

11

therefore, irrelevant to the case at hand. *Marino v. Phaidon Int'l, Inc.*, No. 22-14027-CV-Cannon/McCabe, 2022 WL1913266, at *5 (S.D. Fla. May 17, 2022), *report and recommendation adopted*, 2022 WL 1908977 (S.D. Fla. June 3, 2022) (dismissing tortious interference claim where a third party "withdrew its job offer because Plaintiff never completed his degrees"); *Supinger v. Virginia*, 167 F. Supp. 3d 795, 822 (W.D. Va. 2016) (conditional offers of employment insufficient to state a claim of tortious interference which requires a "specific, existing contract or business expectancy or opportunity"). However, unlike in *Marino*, Dr. Finkelstein was fully qualified for the position, and unlike *Supinger*, MSBI had submitted an offer for employment, which was not a conditioned offer of employment. *See* SAC ¶¶ 99-100 and Ex. E, F, and G. Here, but for Dr. Ben-David's interference and defamatory remarks about Dr. Finkelstein, MSBI would not have rescinded its offer, as evidenced by Ex. G to the SAC.

Also, Dr. Ben-David's communications with MSBI were not privileged because Dr. Ben-David's narrative of Dr. Finkelstein's tenure as a resident at the Program was made in bad faith because it was "concocted" to serve Defendants interests, and thus not protected by qualified privilege. *Harris v. Plapp*, No. 1D21-1837, 2022 WL 17173916 (Fla. Dist. Ct. App. Nov. 23, 2022). Specifically, Dr. Ben-David created this narrative pertaining to Dr. Finkelstein's unspecified professionalism issues which are, until now, unverified but which served the purpose of sabotaging Plaintiff's attempts to resume her surgical education. Contrary to Defendants' assertions that Dr. Finkelstein "invited the alleged tortious communications," which should not be considered for being outside the four corners of the SAC, Dr. Finkelstein's authorization was based on the assumption that MSMC would provide a good faith reference, without malice, unlike the defamatory representations made by Dr. Ben-David as part of Defendants' smear campaign motivated by discrediting Dr. Finkelstein and forcing her to sign a

Further, whether the alleged privilege exists or has been exceeded creates a mixed question of law and fact, which should be determined by the trier of fact. *See Harris*, 2022 WL 17173916, at *2; *Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1179 (Fla. Dist. Ct. App. 2003).

### F. Dr. Finkelstein Has Sufficiently Alleged Her Defamation Claims Against MSMC And Dr. Ben-David (Counts VII And VII)

The elements of a defamation claim include "a false and defamatory statement concerning another." *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 803 (Fla. Dist. Ct. App. 1997). A defamatory statement is one that tends to harm someone's reputation in the community or deters

others from associating with the person. *See id.* "When the words published concerning a person tend to degrade him, bring him into ill repute, destroy confidence in his integrity, or cause other like injury, such language is actionable per se." *Axelrod v. Califano*, 357 So. 2d 1048, 1050 (Fla. Dist. Ct. App. 1978). A simple review of the SAC's allegations shows that the Defamation Counts alleges that Defendants made statements orally and in writing that were false, that were published to third parties, and that caused damages.

Dr. Ben-David, individually and on behalf of MSMC, has defamed Dr. Finkelstein by capriciously providing statements to prospective employers, statements that were "knowingly false," "deliberately misleading," or "rendered with a malicious purpose." *Linafelt*, 745 So. 2d at 389. Specifically, Defendants' misrepresentations pertaining to Dr. Finkelstein's lack of professionalism or abilities as a prospective resident or medical professional to residency programs or prospective employers, whether done individually or on behalf of MSMC, were knowingly false and not based on her experience as a member of the Surgical Residency Program. This is easily verifiable by comparing Dr. Ben-David's assessment, who had observed Dr. Finkelstein as a resident only a handful of times, to the assessment made by Dr. Finkelstein's faculty and mentors, as she has received numerous recommendation letters which debunk the falsities divulged by Dr. Ben-David with the purpose of tarnishing Dr. Finkelstein's reputation. *See* SAC ¶¶ 115- 116 and Ex. A, G and I.

Further, and as explained above, Defendants' statements were not made in good faith, thus, are not privileged, and were made with the further purpose of forcing Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release in favor of Defendants and/or to discredit her and prevent her from continuing her residency training and/or obtaining employment as a physician. Alternatively, whether the alleged privilege exists or has been exceeded creates a mixed question of law and fact, which should be determined by the trier of fact. *See Harris*, 2022 WL 17173916, at *2; *Spears*, 848 So. 2d at 1179. Thus, construing the allegations in the SAC in the light most favorable to Dr. Finkelstein, the Court should not conclude at this stage of the proceedings that the Defamation Counts should be dismissed.

### G. Dr. Finkelstein Has Sufficiently Alleged Her RICO Claim (Count IX)

To state a civil RICO claim, Plaintiff must successfully allege that Defendants: (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity. *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1232 (S.D. Fla. 2017). An enterprise, for purposes of civil claim under

13

RICO, must possess three qualities: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. 18 U.S.C.A. § 1962 (West). Id. Similarly, a pattern of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts. *Leon*, 301 F. Supp. 3d at 1232.

The elements of extortion have been properly and sufficiently alleged. *See* SAC ¶¶ 126-136. First, Defendants cannot take the absurd position that Arnold Jaffe, MSMC general counsel, or Dr. Ben-David, as Program Director, were acting within the scope of their roles while they both took illegal actions in furtherance of Defendants' enterprise to extort a General Release and a Non-Disclosure Agreement from Dr. Finkelstein. Second, the Defendants' reliance in *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004) and *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404, 123 S. Ct. 1057, 154 L. Ed. 2d 991 (2003) is unfounded as the Defendants' allegation that a RICO claim requires a violation of the Hobbs Act is erroneous. *See Raney*, 370 F.3d at 1087) (noting that, in order to survive a motion to dismiss in a civil RICO case, a plaintiff must show a "pattern of racketeering activity" by alleging that the defendants committed two qualifying predicate acts.)

### H. Dr. Finkelstein Has Sufficiently Alleged Her Discrimination Claims based on Title VII, FCRA, and the ADA Against MSMC And Dr. Ben-David (Counts X-XVI) and The Same Are Not Time-Barred

In order to succeed on a claim of sex discrimination under Title VII or the FCRA, a plaintiff must first establish a prima facie case, which requires a showing that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside her protected class more favorably. *Nicholas v. Bd. of Trustees of Univ. of Alabama*, 251 F. App'x 637, 643 (11th Cir. 2007). FCRA claims are subject to the same analysis as Title VII claims. *See Valenzuela v. GlobeGround N. Am., LLC*, 18 So. 3d 17, 21–22 (Fla. Dist. Ct. App. 2009). Plaintiffs asserting retaliation claim under Title VII or Florida Civil Rights Act (FCRA) must show that (1) she engaged in protected activity, (2) she suffered an adverse action, and (3) causal link exists between protected activity and adverse action; "protected activity" may involve opposing unlawful employment practices or participating in making charge, testifying, assisting, or participating in any manner in investigation, proceeding, or hearing regarding unlawful employment practices. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a) (West); Fla. Stat. Ann. § 760.10(7) (West). *See also Shedrick v. Dist. Bd. of Trustees of Miami-Dade Coll.*, 941 F. Supp. 2d 1348 (S.D. Fla. 2013). As

Seen in the SAC, Dr. Finkelstein sufficiently alleges facts to satisfy these elements. *See* SAC ¶¶142-149, ¶¶ 153-160, ¶¶ 165-170, ¶¶ 176-181, ¶¶ 188-195, and ¶¶ 198-206.

Pertaining to Defendants' timeliness assertion, federal law determines when a civil rights violation accrues for actions brought under Title VII and, therefore, when the statute of limitations begins to run. *See Fowler v. Taco Viva, Inc.*, 646 F. Supp. 152, 155 (S.D. Fla. 1986). Generally, the limitations period commences in Title VII cases when the prohibited deprivation of employment rights occurs. *Id.* (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258, 101 S. Ct. 498, 504, 66 L. Ed. 2d 431 (1980).) The appropriate state limitations statute is then applied to calculate the time frame within which the judicial claim must be brought. *Id.* In this case, the applicable statute is Fla. Stat. Ann. § 760.11 (West), which provides a 180 day period after the filing of the complaint with the commission in which to bring suit. Dr. Finkelstein filed her charge with the Equal Employment Opportunity Commission ("EEOC") on July 22, 2022, and filed the Amended Complaint on December 30, 2022. Likewise, Dr. Finkelstein's Amended Complaint, including the Title VII violation claims was filed several days before the January 18, 2023 cutoff date and are, therefore, no time-barred. This further evidenced by SAC Ex. D, containing a copy of communications between undersigned counsel and the Equal Employment Opportunity Commission's ("EEOC") Enforcement Supervisor, Max Feige, clarifying that the agency cannot deny Dr. Finkelstein's right to proceed to court upon completion of the required attempt to seek administrative remedy, which Plaintiff did by filing a charge with the EEOC. *See* SAC Ex. D. Also, contrary to Defendants' assertions, the operative dates for the discrimination and retaliation claims are not limited to the day she received an "offer" from MSBI, in July 2021, but the day MSBI rescinded its offer, in March 2022. This is also evidenced by the fact that the EEOC decided to reopen its investigations pertaining to Dr. Finkelstein's retaliation claims. *See* SAC Ex. D.

In order to establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that: (1) she has a disability; (2) she is a qualified individual; and (3) the employer discriminated against her because of her disability. *Id.* (citing *Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007)) (interpreting prior version of Act).) Contrary to Defendants' assertions, Dr. Finkelstein sufficiently shows that her ADA is a disability for the purposes of the ADA, she was a qualified individual, and Defendants discriminated against her because of her ADHD. *See* SAC ¶¶ 183-195. *See also* Mayo Clinic, Adult Attention-Deficit/Hyperactivity Disorder. (available at

15

https://www.mayoclinic.org/diseases-conditions/adult-adhd/symptoms-causes/syc-20350878). Lastly, contradicting Defendants' allegations, Defendants' harassment was so severe and pervasive that ultimately forced Dr. Finkelstein to resign from her post at the Program , thus altering the terms and conditions of her employment.

### I. Dr. Finkelstein Has Sufficiently Alleged Her Vicarious Liability Claims against MSMC (Count XVII)

Under the doctrine of respondeat superior, an employer can be held liable for the tortious or criminal acts of an employee when the acts were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer. *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 356–57 (Fla. Dist. Ct. App. 2001) (citing *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So. 2d 1076, 1078 (Fla. Dist. Ct. App. 1985)). An employee's conduct is within the scope of his or her employment where: (1) the conduct is of the kind he or she was employed to perform; (2) the conduct in question occurs substantially within the time and space limits authorized or required by the work to be performed; and (3) the conduct is activated at least in part by a purpose to serve the master. *Id.* at 357 (citing *Sussman v. Fla. E. Coast Properties, Inc.*, 557 So. 2d 74, 75–76 (Fla. Dist. Ct. App. 1990)).

As further discussed above, Dr. Finkelstein's claims against Dr. Ben-David are viable and should survive this Motion. Therefore, Defendant MSMC is vicariously liable for Dr. Ben-David's to the following tortious conduct, including, but not limited to Breach of the GME Agreement; Intentional Infliction of Emotional Distress; Tortious Interference with business relationship; Defamation; Sexual Discrimination and Harassment, and Extortion, because, the alleged misconduct was committed either during the course of his employment as the Program Director and/or to further MSMC's interests in raising MSMC's Surgical Residency Program's prestige, who benefited from the tortious acts, and authorized or subsequently acquiesced to the tortious acts. *See* SAC ¶¶ 129-136 and ¶¶ 220-223.

### J. Dr. Finkelstein Has Sufficiently Alleged Her Negligent Supervision and Retention Claims against MSMC (Counts XVIII and XIX)

Like claims for negligent supervision, to state a claim for negligent hiring or retention against a principal, a plaintiff must prove that "(1) the agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1148 (S.D. Fla.

2016). To satisfy the second element of a negligent hiring or retention claim, a plaintiff must allege facts "showing that the employer was put on notice of the *harmful propensities* of the [agent/employee/contractor]." *Id.* Liability for negligent retention "occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment." *Id.*

Defendants' reliance on *Freese v. Wuesthoff Health Sys., Inc.*, No. 6:06CV175-ORL-31JGG, 2006 WL 1382111 (M.D. Fla. May 19, 2006) to advance the position that Dr. Finkelstein's Negligent Supervision and Retention Claims fail is once again mistaken, because it assumes that the only torts committed by Dr. Ben-David or other MSMC agents against Dr. Finkelstein were of sexual harassment or of a discriminatory nature. However, that is not supported by the SAC. *See* SAC ¶ 226, citing to Arnie Jaffe, MSMC general counsel, and Dr. Ben-David openly seeking to extort Dr. Finkelstein's signature of a General Release and a Non-Disclosure Agreement in exchange for the Completion Documents. Additionally, as further discussed in the section immediately preceding this one, MSMC is also liable for negligent supervision and retention of Dr. Ben-David's following tortious conduct, including, but not limited to Breach of the GME Agreement; Intentional Infliction of Emotional Distress; Tortious Interference with business relationship; Defamation; and Extortion. *See* SAC ¶¶ 129-136 and ¶¶ 220-223. Likewise, Dr. Finkelstein states a prima facie case against MSMC for the Negligent Supervision and Retention Claims.

### K. Dr. Finkelstein Has Sufficiently Alleged Her Claims for Injunctive Relief (Counts XX-XXII)

To obtain a injunctive relief, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Hodge v. Hughes*, No. 18-CV-21571, 2018 WL 2688800, at *1 (S.D. Fla. Apr. 23, 2018). The same standards apply to requests for a temporary restraining order. *See J.P. Morgan Sec. LLC v. McBee*, 17-CV-22620-KMW, 2017 WL 6987706, at *1 (S.D. Fla. July 14, 2017) ("To obtain a temporary restraining order, a movant must demonstrate: '(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief

17

would inflict on the non-movant; (4) that entry of the relief would serve the public interest."') (quoting *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005)).

Dr. Finkelstein's request for injunctive relief, contrary to Defendants' assertion, is not a prior restraint on speech because it does not seek to silence or impair Defendants' ability to provide truthful and accurate information about Dr. Finkelstein to requesting third-parties. Instead, Dr. Finkelstein seeks the least restrictive remedy by requesting this Court to compel Defendants to consent that Dr. Finkelstein can designate a new faculty member of the Surgical Residency Program of her choice to serve as reference provider, consent to which MSMC and Dr. Ben-David shall not unreasonably and or withhold or object without just cause.

Further, contrary to Defendants' assertion, Dr. Finkelstein's request for injunctive relief is tied to several causes of action, upon which Plaintiff is likely to prevail on merits, and prevent Defendants from continuing to interfere with the maintenance of the status quo. *See* SAC ¶¶ 241-251. Thus, the application of the facts to the aforementioned factors weighs strongly in favor of granting the requested injunctive relief as, absent this Court's granting the requested relief, Dr. Finkelstein will continue to suffer irreparable harm as a result of the Defendants' unlawful conduct.

## CONCLUSION

WHEREFORE, the Plaintiff, Dr. Paige Finkelstein, respectfully requests that this Court deny Defendants' Motion to Strike or, in the alternative, Dismiss as hereinabove stated for the reasons provided above, together with all further relief deemed just and proper by this Court. Further, if the Court is inclined to dismiss or strike any portion of the Second Amended Complaint, the Plaintiff, Dr. Paige Finkelstein, respectfully requests that the Court grant Plaintiff leave to amend as applicable.

Dated this 3rd day of April, 2023.

Respectfully submitted,

*/s/Richard H. Levenstein*
Richard H. Levenstein, Esq.
Florida Bar No. 235296
NASON, YEAGER, GERSON,
HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone: (561) 686-3307
Facsimile: (561) 686-5442
Email: RLevenstein@nasonyeager.com
Trial Counsel for Plaintiff

Gabrielle Sliwka, Esq.
Florida Bar No. 1022654
NASON, YEAGER, GERSON,
HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone: (561) 686-3307
Facsimile: (561) 686-5442
Email: GSliwka@nasonyeager.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of Court and served by E-Mail through the Florida Courts E-Filing Portal on this 3rd day of April, 2023 to the following:

***Attorneys for Defendant, Mount Sinai Medical Center of Florida***
Martin B. Goldberg, Esq.
David R. Ruffner, Esq.
Clark Splichal, Esq.
Lash & Goldberg LLP
Miami Tower
100 S.E. 2nd Street
Suite 1200
Miami, Florida 33131

19

Primary Email: mgoldberg@lashgoldberg.com; csplichal@lashgoldberg.com druffner@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com; mwallace@lashgoldberg.com

***Attorneys for Defendant, Kfir Ben-David, MD***
Gary A. Orseck, Esq.
Lauren Cassady Andrews, Esq.
Kramer, Levin, Naftalis, & Frankel, LLP
2000 K Street, NW, 4th Floor
Washington, DC  20006
Primary Email: gorseck@kramerlevin.com; landrews@kramerlevin.com

*Attorneys for Plaintiff, Paige Finkelstein, M.D.*
NASON, YEAGER, GERSON,
HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:     (561) 686-3307
Facsimile:      (561) 686-5442
Richard H. Levenstein, Esq.
Primary E-mail: rlevenstein@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com; creyes@nasonyeager.com
Gabrielle O. Sliwka
Primary E-mail: gsliwka@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com; creyes@nasonyeager.com

By:     /s/ *Richard H. Levenstein*
        Richard H. Levenstein
        Florida Bar No. 235296
        Gabrielle O. Sliwka
        Florida Bar No. 1022654