IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| PAIGE FINKELSTEIN, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23-CV-20188-RKA |
| | ) | |
| v. | ) | |
| | ) | |
| MOUNT SINAI MEDICAL CENTER OF | ) | |
| FLORIDA, INC., a Florida Not For Profit | ) | |
| Corporation, and KFIR BEN-DAVID, M.D., | ) | |
| | ) | |
| Defendants. | | |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT**

Defendants Mount Sinai Medical Center of Florida, Inc. ("MSMC" or the "Hospital") and Kfir Ben-David, M.D. ("Dr. Ben-David") (together "Defendants") hereby submit their Reply memorandum in further support of their Motion to Strike, or in the Alternative, to Dismiss Plaintiff Paige Finkelstein, M.D.'s ("Plaintiff") Verified Second Amended Complaint (the "Motion" or "Mot."). On April 3, 2023, Plaintiff served her response in opposition to Defendants' Motion ("Response" or "Resp."). Plaintiff's Response fails to address the Second Amended Complaint's ("SAC") numerous deficiencies.

**THE SAC SHOULD BE STRICKEN PURSUANT TO RULE 12(f)**

The SAC was filed without the consent of Defendants, without leave of Court, and in direct violation of this Court's February 7, 2023 Order, which instructed Plaintiff "to remove the extraneous material discussed on the record" from her former pleading. ECF No. 28 (Paperless Order). Yet, Plaintiff claims that her SAC is in "compliance" with the February 7 Order and the Rules, and that the SAC merely makes "the necessary adjustments as to make the pending claims appropriate to the new venue sought by Defendants." Resp. at 4. That is wrong.

First, the Court directed Plaintiff to *remove* certain material in response to Defendants' motion to strike, full stop. Plaintiff fails to explain how that order somehow gave her *carte blanche* to nearly double the size of her pleading and to assert a host of new claims. Plaintiff's assertion

1

that she did no more than make the "necessary adjustments" contemplated by this Court's order is baseless.

Second, there is nothing about the change of venue to federal court that automatically permits Plaintiff to file a new complaint without complying with the requirements of Rule 15(a)(2). The SAC is simply an attempt to plead around the case-dispositive arguments raised in Defendants' *prior* motion to dismiss, without first requesting or obtaining leave of court. *See* ECF No. 17. Plaintiff cannot help herself to that relief, especially in light of an order that could not be clearer in its terms and direction. This Court should strike the SAC or recognize Plaintiff's blatant violation of its Order and the Rules as support for issuing a dismissal *with prejudice*. Plaintiff has already helped herself to a third complaint; she should not be entitled to a fourth.

## **EACH COUNT OF THE SAC SHOULD BE DISMISSED WITH PREJUDICE**[1]

A. *Counts I and II – Breach of Contract*

Plaintiff ignores key arguments in Defendants' Motion, including her failure to exhaust contractual remedies[2], her failure to point to any cognizable breaches of Sections 7 and 9 of her contract with MSMC (the "GME Agreement"), and her failure to acknowledge that Exhibit H to the SAC negates her allegations regarding any "restrictive covenant." These omissions alone warrant dismissal of Counts I and II as abandoned. *See Haasbroek v. Princess Cruise Lines, Ltd.,* 286 F. Supp. 3d 1352, 1357 n. 4 (S.D. Fla. 2017) (explaining that on a motion to dismiss, an opposing party's failure to respond to an argument may result in abandonment of the claim); *W. Coast Life Ins. Co. v. Life Brokerage Partners LLC,* 08-80897-CIV, 2009 WL 2957749, at *11 (S.D. Fla. Sept. 9, 2009) (same).

To the extent Plaintiff engages with Defendants' arguments, it is unpersuasive. First, Plaintiff asserts that even if her claim that Defendants breached Section 6 of the GME Agreement is preempted by Title VII, that does not mean that "the entirety" of her breach claim is preempted,

---

[1] Defendants track the order of arguments laid out in the Response.

[2] The sole, non-substantive response offered by Plaintiff on this point is that Defendants have trenched outside the four corners of the SAC by attaching the declaration of Robert Goldszer, M.D., the residency program's Designated Institutional Official. But this exhibit goes directly to Plaintiff's failure to exhaust her contractual remedies, which presents a jurisdictional bar for which extrinsic materials (such as declarations and affidavits) are permitted at the motion to dismiss stage. *See* Mot. at 8, n. 6.

2

because she has alleged that Defendants also breached Section 7 and 9 of the GME Agreement. Resp. at 9. But even as to those Sections, the Response still fails to allege or explain what actions and/or omissions by Defendants constitute breaches, which is fatal to those prongs of her claim. Mot. at 5. Plaintiff's conclusory assertion that Defendants breached those sections, absent any supporting facts, cannot survive dismissal.

With respect to Section 15, the Response *fully* ignores Defendants' argument that Exhibit H to the SAC – which is the purported "restrictive covenant" at issue – is no such thing, but rather a plain release agreement with no non-disclosure or confidentiality component. Mot. at 6. That Plaintiff maintains this portion of her claim (and uses it to support her RICO claim, *infra*) is frivolous in light of the clear terms of Exhibit H which entirely contradict her allegations. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) ("[W]hen exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern."). While Defendants maintain that Section 15 is also not a structural contractual provision that could survive termination in any event, this Court need only look at Exhibit H to determine that the alleged breach cannot survive as a matter of law.[3]

In all events, Plaintiff's breach of contract claim must be dismissed as to Defendant Dr. Ben-David because he is not a party to the GME Agreement. Mot. at 7. The opening recitals of the GME Agreement demonstrate that he is not a party, which is further confirmed by Plaintiff's allegation that Dr. Ben-David signed the GME Agreement in his capacity "as program director *and on behalf of MSMC*. Dr. Ben-David's signature to the GME Agreement was endorsed and assumed by MSMC…" SAC ¶ 58 (internal citations omitted) (emphasis added). Plaintiff's response is insubstantial. She simply asserts, without citing anything in the Agreement (or in the law) that the contract is "susceptible to more than one interpretation," and on that basis asks the Court to punt this issue until "the summary judgment stage." Resp. at 10.[4] None of that provides

---

[3] Plaintiff's Response solely relies on *Milfort v. Comcast Cable Commc'ns Mgmt. LLC*, 309 F. Supp. 3d 1268, 1271 (S.D. Fla. 2018), but that case dealt with a quintessential structural provision (an arbitration clause) not at issue in this case.

[4] Notably, Plaintiff's Response grossly mistakes this Court's role on a motion to dismiss: "Defendants' inappropriate attempts to persuade this Court to engage in contractual and documentary interpretation must be rejected. The governing case law is clear that contractual interpretation is not proper at this stage." Resp. at 5. Not only is this statement incorrect, but it is

any basis to sustain this claim against Dr. Ben-David. It should be dismissed now, not later. *See, e.g.*, *Esys Latin Am., Inc. v. Intel Corp.*, 925 F. Supp. 2d 1306, 1313 (S.D. Fla. 2013)2013) (on motion to dismiss, court determined that plaintiff was not a party to an agreement based on unambiguous assignment language).

B.  *Counts III and IV – Intentional Infliction of Emotional Distress*

The Response merely restates the elements of the tort and asserts, without citation to authority, that the conduct Plaintiff alleged in the SAC was "outrageous" and "relentless." But such conclusory statements are insufficient to state a claim. Resp. at 11. Defendants rest on the arguments and authority cited in their Motion.

C.  *Counts V and VI – Tortious Interference*

As demonstrated in Defendants' opening brief, Plaintiff's claim of tortious interference fails because a mere offer (and specifically here, a conditional offer) is not a cognizable business expectancy as a matter of law. Mot. at 11. In response, Plaintiff contends that her offer from Mount Sinai Beth Israel ("BI") was not a conditional offer, and was revoked only because of Defendants' conduct. Resp. at 11. But this assertion is directly belied by Plaintiff's own explanation in her pleading that after she received the offer from BI, she had to go through a separate and independent credentialing process subject to review by the medical staff at BI. Indeed, Plaintiff alleges: "Although she was fully qualified for the position [at BI], *having submitted her credentials and application for medical staff privileges needed for that position*, Dr. Finkelstein's application was therefore denied …." SAC ¶ 42 (emphasis added). Thus, securing a position at BI was a two-part process, and Plaintiff's initial offer from BI was always conditioned upon approval of her subsequent application for medical staff privileges. This is not a case where Plaintiff had received a firm offer subject to no other processes and conditions. By her own allegations, Plaintiff's employment at BI never vested, but was always contingent upon another independent occurrence, notwithstanding Defendants' alleged conduct. The allegations within the four corners of the SAC simply do not plead an actionable tort.

As to the question of malice, Plaintiff relies upon *Harris v. Plapp*, --- So. 3d ---, 2022 WL

---

also the *exact opposite* of this Court's proper (and indeed, essential) role on a motion to dismiss. In reality, "the construction of a contract *is a question of law* for the courts to determine where the language used in the written contract is clear, unambiguous, and susceptible of only one interpretation." *Esys Latin Am.*, 925 F. Supp. 2d at 1311 (emphasis added).

4

17173916 (Fla. 1st DCA, Nov. 23, 2022) a case that dealt with the defendant's qualified privilege as an affirmative defense in a summary judgment posture. What *Harris* does not address, nor does Plaintiff cogently address in her Response, is that black letter law requires, as a matter of pleading, that bad faith or malice must be the "sole" purpose for the alleged interference. *See Int'l Yacht Bureau, Inc. v. Int'l Registries, Inc.*, 13-60947-CIV, 2015 WL 5118121, at *4 (S.D. Fla. Sept. 1, 2015) ("Even though the speaker's primary motivation must be express malice to overcome the privilege in a defamation action[,] in a *tortious interference* claim, *malice* must be the *sole basis* for the interference.") (internal citations and quotation marks omitted).

Here, the allegations in the SAC, taken on the whole, dispel any inference that the sole reason Defendants allegedly "interfered" with Plaintiff's prospective employment opportunities was due to malice. Rather, Plaintiff's own allegations show that Defendants' communications were undertaken pursuant to MSMC's function to provide information about its residents to inquiring institutions. For example, in support of her claims of injunctive relief, Plaintiff asks the Court for "another representative of MSMC to be agreed upon by Plaintiff and MSMC, to provide such information [regarding Plaintiff] in a fair and objective way *whenever MSMC is asked about [Plaintiff]*." SAC ¶ 240 (emphasis added).[5] These communications are thus not undertaken voluntarily or gratuitously, but are invited by MSMC's residents and given as a matter of course. There is no way to infer from the SAC that Defendants' *sole* reason for communicating with BI was malice or bad faith.

D. *Counts VII and VIII – Defamation*

The *sine qua non* of a defamation claim is a false statement of fact. *See Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1253 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015). Absent any allegation in the SAC identifying a false statement of fact uttered by Defendants, the claim must be dismissed. *See Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So. 2d 1025, 1028 (Fla. 3d DCA 1981); *accord Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) ("In a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred."

---

[5] Plaintiff also objects to Defendants' attaching her signed authorization to release information to BI. Defendants forthrightly noted in their Motion that this document is outside the pleadings, but explained that the document is included should the Court wish to consider it for context (and nothing more). *See* Mot. at 11, n. 9.

(internal quotation marks omitted)).

Plaintiff's Response simply proves the point that the SAC is devoid of a false statement of fact. Instead, Plaintiff doubles down on the SAC's vague and implausible allegations that Defendants made unspecified "misrepresentations" and "knowingly false" statements to third parties. Resp. at 13. The claim fails on its face and must be dismissed.

   E.  *Count IX – RICO Claim*

In the SAC, Plaintiff unsuccessfully attempts to refashion her defunct state law "extortion" claim as one pursuant to the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). The claim fares no better and as explained in Defendants' Motion, it too fails for multiple reasons.

In her Response, Plaintiff tries but fails to "establish a distinction between the defendant 'person' and the 'enterprise' itself." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1355 (11th Cir. 2016). That "distinctness requirement may not be circumvented" where, as here, Plaintiff alleges that the enterprise "consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). The allegedly extortionate acts Plaintiff points to – managing the surgical residency program, negotiating releases with former residents, and responding to inquiries from prospective employers about those former residents – are plainly nothing other than Defendants "carrying out the business" of MSMC. *See id.*; *see also Ray*, 836 F.3d at 1356 (no enterprise where defendants were "carrying on the normal work of the corporation"). Plaintiff's allegations that such acts were illegal or extortionate, even if accepted as true, do not evade the requirement of distinctness, and her RICO claim must be dismissed on that ground alone. *See Cruz v. FXDirectDealer, LLC*, 720 F. 3d 115, 121 (2d Cir. 2013).

Further, Plaintiff's argument that a Hobbs Act violation is not necessary to support a RICO claim misses the point (Resp. at 14), because Plaintiff has not alleged any predicate act that constitutes extortion (which she identifies as her claim) under *either* federal or state law.

   F.  *Counts X – XVI – Discrimination, Retaliation, and Harassment*

Plaintiff's claims pursuant to Title VII, the FCRA, and ADA are time-barred under 42 U.S.C. § 2000e-5. Plaintiff responds that an inapposite limitations period applies to her claims – that is, the time a charging party has to commence suit after filing with the EEOC, which is 180 days. Resp. at 15 (citing Fla. Stat. § 760.11). Plaintiff's reliance on Florida Statute § 760.11 is

6

incorrect and is *not* the governing limitations period, which is rather set forth in 42 U.S.C. § 2000e-5.

To survive dismissal, claims pursuant to Title VII and the like must be brought before the EEOC within 300 days of their accrual. *See* 42 U.S.C. § 2000e-5; *Dagnesses v. Target Mediat Partners*, 1:15-CV-23989-UU, 2016 WL 11501585, at *2 (S.D. Fla. Feb. 26, 2016) (purported violations of Title VII that were not timely raised before the EEOC during the time prescribed warranted dismissal). In her pleading, all alleged discrimination, retaliation, or harassment occurred *during Plaintiff's residency*, that is, prior to her January 11, 2021 termination from the residency program. SAC ¶ 31. Thus, the last day that Plaintiff could have filed a charge with the EEOC was November 17, 2021. However, according to her, she did not file with the EEOC until July 22, 2022[6], more than seven months late. Plaintiff's claims are untimely as a matter of law, and her resistance to this fact is futile and frivolous.

Further, Plaintiff's reference (Resp. 15) to March 2022 in her Response as the date when the limitations clock began to run fails because Plaintiff does not plead this date anywhere in her SAC, and indeed, it appears for the first time in her Response. Of course, Plaintiff cannot raise new matters in her Response in a belated attempt to amend her pleading. *See Bayou Lawn & Landscape Servs. v. Johnson*, 173 F. Supp. 3d 1271, 1281 (N.D. Fla. 2016) (declining to consider argument presented in a responsive brief because the argument was absent from the complaint and essentially directed toward amending the Complaint by way of responsive pleading). And in any event, any action taken by BI (a third party and not Plaintiff's employer) is not an "adverse action" for which Defendants can be liable under Title VII, the FCRA, or the ADA. As a result, this Court must dismiss the entirety of these claims as being time-barred.

As to the balance of Defendants' arguments, Plaintiff fails to address that her allegations do not amount to protected activity under the retaliation statutes or that there was any actionable hostile work environment. Mot. at 14-15. As to Plaintiff's ADA allegations, she merely states, in

---

[6] Plaintiff objects to Defendants' attaching to their Motion the EEOC's dismissal of her charge as untimely. But this is the same EEOC paperwork that Plaintiff attaches to her SAC (Ex. C) to support her allegation that she has satisfied all conditions precedent to filing suit under Title VII, the FCRA, and the ADA. As such, it is central to her pleading and the Court may, and should, consider it. *See Rodrigues v. SCM I Investments, LLC*, 2:15-CV-128-FTM-29CM, 2015 WL 6704296, at *2 (M.D. Fla. Nov. 2, 2015) ("Here, the Court may look to the EEOC documents attached … because the EEOC documents are central to the litigation and the authenticity of the documents is not in dispute.").

conclusory and unsupported fashion, that they are sufficient to state a "disability" as defined under the statute. *See* Resp. at 15. Defendants therefore rest on the remaining arguments and authorities cited in their Motion.

G. *Count XVII – Vicarious Liability*

Plaintiff has no claim for vicarious liability against MSMC absent any viable claim against Dr. Ben-David personally. Mot. at 16. In her Response, Plaintiff simply declares, without support, that her claims against Dr. Ben-David are "viable." Resp. at 16. Defendants rest on the arguments raised in their Motion.

H. *Counts XVIII and XIX – Negligent Supervision and Retention*

Plaintiff's claims of negligent retention and supervision also fail absent any actionable underlying tort recognized under the common law. Florida common law does not recognize causes of action for employment discrimination, retaliation, or sexual harassment in the workplace, *see McElrath v. Burley*, 707 So. 2d 836, 839 (Fla. 1st DCA 1998), or causes of action for extortion, *see Bass v. Morgan, Lewis & Bockius*, 516 So. 2d 1011 (Fla. 3d DCA 1987). As explained in Defendants' Motion, Plaintiff utilizes these tort claims simply as an end-run around other time-barred and/or defunct claims.

In her Response, Plaintiff fails to address that the tort of "extortion" does not exist under Florida law and thus cannot anchor theseher negligence claims. (Mot. at 17.). Yet, Plaintiff claims that her underlying allegations of "extortion" and breach of the GME Agreement somehow salvage these causes of action. This is meritless for two reasons: (i) as explained, extortion is not a tort recognized under the common law of Florida; and (ii) a breach of contract is not a tort at all.

I. *Counts XX – XXIII – Plaintiff's Claims for Injunctive Relief*

Plaintiff's Response does not address the substance of Defendants' arguments as to why injunctive relief is unavailable here. Instead, Plaintiff formulaically restates the elements of a claim for injunctive relief, and repeats allegations from her SAC. A key infirmity in Plaintiff's request for injunctive relief is that she does not tie it to any substantive claim in her SAC. Given the chance in her Response to identify an actual substantive cause of action, Plaintiff states without elaboration that "it is tied to several causes of action," pointing the Court to nowhere. Resp. at 18. This is fatal to these claims. *See Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1379 (S.D. Fla. 2019) ("The Eleventh Circuit has made clear that 'any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action....'").

Case No. 1:23-CV-20188-RKA

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Strike should be granted and the SAC stricken, or in the alternative, Defendants' Motion to Dismiss should be granted and the SAC dismissed in its entirety with prejudice.

Dated: April 10, 2023

Respectfully submitted,

**LASH GOLDBERG LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 347-4040
Fax: (305) 347-4050
*Attorneys for Defendants*

By: */s/ Martin B. Goldberg*
    **MARTIN B. GOLDBERG**
    Florida Bar No. 0827029
    Email: mgoldberg@lashgoldberg.com
    **CLARK S. SPLICHAL**
    Florida Bar No. 1010425
    Email: csplichal@lashgoldberg.com

**KRAMER LEVIN NAFTALIS**
**& FRANKEL LLP**
2000 K Street N.W., 4th Floor
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
*Attorneys for Defendant Kfir Ben-David, M.D.*

By: */s/ Gary A. Orseck*
    **GARY A. ORSECK**
    Florida Bar No. 846015
    Primary Email: gorseck@kramerlevin.com
    **LAUREN CASSADY ANDREWS**
    Va. Bar No. 92149 (appearing *pro hac vice*)
    Primary Email: landrews@kramerlevin.com

Case No. 1:23-CV-20188-RKA

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF on April 10, 2023, or in the manner specified on all counsel or parties of record on the Service List below.

By: */s/ Martin B. Goldberg*
**MARTIN B. GOLDBERG**

## SERVICE LIST

Richard H. Levenstein, Esq.
Gabrielle O. Sliwka, Esq.
**NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
gsliwka@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com
*Attorneys for Plaintiff*