# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | | |
|---|---|---|
| PAIGE FINKELSTEIN, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23-CV-20188-RKA |
| | ) | |
| v. | ) | |
| | ) | |
| MOUNT SINAI MEDICAL CENTER OF | ) | |
| FLORIDA, INC., a Florida Not For Profit | ) | |
| Corporation, and KFIR BEN-DAVID, M.D., | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MEMORANDUM OF LAW IN SUPPLEMENTARY SUPPORT OF HER EXPEDITED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

*Give me some case law to support your position that I have authority to require a program director letter and that that somehow is injunctive.*[1]

In advance of the June 21, 2023, hearing for legal argument on Plaintiff's motion for preliminary injunction, the Court directed Plaintiff to submit a concise, supplemental legal memorandum on the narrow issue of whether the Court may compel Defendants to provide a "program director letter" to Plaintiff. Ex. 1, 49:3-6. But Plaintiff provided no such authority. Plaintiff failed to even acknowledge the Court's specific request. Instead, Plaintiff's Memorandum is 20-plus pages of refurbished allegations and off-point argument, and far from what this Court requested. *See* ECF No. 94.

Plaintiff filed her "Memorandum of Law in Supplementary Support of Her Motion for Entry of a Temporary Restraining Order and Preliminary Injunction (the "PI Motion")" (the "Memorandum" or "Memo."), on June 1, 2023. ECF No. 94. Defendants Mount Sinai Medical

---

[1] Hearing Tr. (May 19, 2023) 45:23-47:4 (quoting the Court to Plaintiff's counsel; excerpts attached as Exhibit 1).

Center of Florida, Inc. ("MSMC" or the "Hospital") and Kfir Ben-David, M.D. hereby submit this response in opposition to the Memorandum (the "Response").

What is clear now, as it was before, is that Plaintiff cannot cite to any authority mandating that this Court compel Defendants to provide a letter of recommendation to Plaintiff (or what Plaintiff terms a "program director letter"), authored by an individual of Plaintiff's choice, and silencing Defendants by requiring expressly limited language Plaintiff deems "accurate." Plaintiff's Memorandum veers further off-course and suggests for the first time that her request for injunctive relief is authorized under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). And, at the 11th hour, Plaintiff again materially modifies her request for injunctive relief as follows, in summary:

- Compel MSMC and Dr. Ben-David to consent that Plaintiff can designate a new faculty member of her choice as a reference provider, which Defendants cannot unreasonably withhold;

- Compel a complete and accurate reference verification, including an accurate "Residency Program Director" letter;

- Prohibit Defendants from referring to or mentioning or discussing "unfounded" professionalism claims when discussing her tenure at MSMC;

- Prohibit Defendants from mentioning or discussing Plaintiff's alleged ADHD traits, which Plaintiff now contends include many of the performance and professionalism issues she struggled with as a resident; and

- Enjoin Defendants from destroying records.[2]

Memo. at 20. Defendants do not engage herein with Plaintiff's rendition of her story, which, of course, is inaccurate and disputed.[3] Defendants below focus on what the Court specifically

---

[2] Defendants had no previous knowledge of a concern regarding alleged destruction of records. The issue was not pled in the SAC, not mentioned in the PI Motion, not based on any cognizable claim for relief and Plaintiff's counsel has never raised the issue. Immediately upon receipt of Plaintiff's Memorandum, undersigned counsel sent a letter to Plaintiff's counsel asking for an explanation to be provided by last Tuesday, June 6, 2023, so that Defendants could address any issue herein. *See* Exhibit 2. Mr. Levenstein did not respond.

[3] Defendants refer the Court to their presentation of the case's factual background and procedural history included in their March 10, 2023, Response in Opposition to Plaintiff's Motion for

requested from the parties on May 19 – to concisely address Plaintiff's legal entitlement to injunctive relief.

I. **Plaintiff Cites No Legal Authority Regarding a Letter of Recommendation**

Plaintiff cites to no law, rule, regulation, accreditation standard under the Accreditation Council for Graduate Medical Education ("ACGME"), or other legal mandate that requires the provision of a letter of recommendation, or a so-called "program director letter," from a medical residency program to a current or former resident, to another residency program, or to any third party. Nor does MSMC have any obligation under Plaintiff's GME Agreement (i.e., her residency contract) to provide her with a letter of recommendation as evidenced by Plaintiff's failure to sue for breach of contract on this issue.[4] *See* SAC, Ex. B. Nowhere in her 20-page Memorandum does Plaintiff cite any legal basis or authority, which lays bare her repeated conclusory allegations in the SAC, PI Motion and direct representations to this Court[5] that she is "entitled" to such a letter or that the letter is "required" to be completed and provided to her by MSMC. *See, e.g.*, SAC ¶¶ 10, 11, 33, 50, 134; PI Motion ¶¶ 3, 11.[6]

---

Temporary Restraining Order and Preliminary Injunction (ECF No. 60, pp. 1-3), and their prior response to Plaintiff's motion for injunction in state court prior to removal of the action (ECF No. 24-25, pp. 7-19).

[4] This Court appeared to understand at the May 19, 2023, hearing that there was a contractual requirement in this case to provide a letter of recommendation. There is not.

[5] Plaintiff's counsel represented to this Court on May 19, 2023: "This – this program director letter is not optional. The residency program that Dr. Ben-David is the director of is required to furnish program director letters for every resident who goes through the program." Ex. 1, 41:5-8. Also, Mr. Levenstein told the Court, "she is entitled to have an objective program director letter under the ACGME guidelines. We are asking the Court to issue an injunction requiring them to comply with that requirement by giving her the opportunity to have an objective program director letter to go on further with her career." *Id.* 42:22-43:3 He further posited as follows: "Under the ACGME guidelines and rules under the manual by which this residency program is governed … they're required to provide [a letter]." *Id.* 44:20-22. Yet, almost two weeks later, Plaintiff and her counsel did not cite one single ACGME accreditation standard in her Memorandum, much less any caselaw to support these representations.

[6] On June 5, 2023, Plaintiff took the unusual step of deposing her own attorney, Barry Wax, Esq., with the thinly veiled purpose of attempting to secure testimony that a letter of recommendation, or letter from the program director, was *legally required* to be provided by the Defendants. But Mr. Wax was also unable to identify any specific standard or law that requires a letter of

Even if the ACGME had such a requirement (which it does not), it does not give rise to a private right of action. *See Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*, No. 3:14-cv-3577-CMC, 2016 WL 3079466, at *49 (D.S.C. June 1, 2016), *aff'd sub nom. Irani v. Palmetto Health*, 767 F. App'x. 399 (4th Cir. 2019) (emphasis added); ECF No. 52, pp. 5-6. In any event, on June 29, 2022, Plaintiff filed a lengthy complaint with the ACGME and asserted that the Program and Dr. Ben-David were improperly withholding a letter of recommendation, among other things. MSMC cooperated with the ACGME and in December 2022, the ACGME determined to take no action. *See* ECF No. 52, p. 22.

Finally, further underscoring the absence of any cognizable right to a recommendation letter is the reality of how such letters are obtained in the normal course by medical residents. In short:

- Residents request a letter of recommendation (LoR) from their program director through the Electronic Residency Application Service (ERAS). This is a centralized online application service used to deliver the resident's application, along with supporting documents including letters of recommendation (if agreed to be written) to residency programs.

- Such materials are compiled and delivered directly to the residency programs identified by the applicant. The applicant must either waive or not waive his or her right to view the letters of recommendation. The materials are not given directly to the applicant.

Here, Plaintiff *never* made a request to Defendants through ERAS. Rather, after her termination/resignation, Plaintiff sought to negotiate a letter of recommendation around this process with MSMC via her attorney, Mr. Barry Wax. Plaintiff's desire was to negotiate out the negative events on her academic record, including her probations and remediation plans. Notwithstanding this tactic, MSMC agreed to provide a letter of recommendation from Dr. Ben-

---

recommendation. When asked to identify a specific source of authority, he responded: "I don't know that there is one. I would have to refer to the ACGME policies." Wax Depo. 86:13-17 (deposition excerpts are attached as Exhibit 3). When asked to narrow down the specific ACGME "policies," he responded: "I would think that there is [an ACGME policy]. It's pretty specific." *Id.* 86:18-20. He said he asked an associate lawyer to research the issue but could not recall the details. *Id.* 187:21-188:18, 191:16-192:2. All other references by Mr. Wax at his deposition on this subject, like Plaintiff's SAC and affidavit, were conclusory and unsupported.

David directly to Plaintiff (i.e., outside of ERAS procedures) in exchange for a release of claims.[7] As Defendants believe the Court acknowledged at the May 19 hearing, such a release was inherently reasonable in light of Plaintiff's previous complaints against the Program, her retention of counsel, her desire to negotiate around established residency protocols and the legal risks associated with providing any recommendation letter much less one for a resident who did not complete the program.[8] Not satisfied with the draft letter proposed by MSMC, Plaintiff refused to accept it, did not sign the release, and terminated negotiations. After additional unsuccessful threats by Plaintiff, her father, and her new counsel (i.e., not Mr. Wax, but Mr. Richard Levenstein) designed to have MSMC terminate Dr. Ben-David and secure a favorable resolution for Plaintiff, Plaintiff and her counsel filed this lawsuit.

Now, Plaintiff has, in effect, requested that this Court take over her negotiations with MSMC where Mr. Wax left off, and enter a mandatory injunction to compel the provision of a letter of recommendation that only Plaintiff finds suitable to her future needs. Such an order, unmoored to any legal requirement or other cognizable theory, is beyond this Court's powers in equity or law. And, Plaintiff has not shown otherwise despite the Court's direct invitation to do so.

## II.     Plaintiff May Not Use Her Memorandum to Belatedly Amend Her Pleadings Without Leave of Court.

As noted above, Plaintiff's Memorandum presents a moving target. In her original motion for injunction, Plaintiff first suggested that her entitlement to injunctive relief somehow sprang

---

[7] MSMC never discussed, presented, requested, or raised a non-disclosure agreement or other form of confidentiality agreement with Plaintiff or her counsel. Plaintiff has asserted approximately fifty-five separate and frivolous allegations to this end within the SAC and Plaintiff's sworn affidavit – which underpin many of her claims. Defendants demanded Plaintiff and her counsel withdraw these frivolous allegations. Mr. Levenstein refused. Mr. Wax has since testified at his deposition that MSMC and Mr. Jaffee *never* raised, discussed, or presented a non-disclosure agreement or confidentiality restriction. Wax Depo. 80:17-18, 126:18-19, and *passim* ("Arnie Jaffee never threatened anything [regarding signing an NDA]"; "I have no specific recollection of discussing an NDA with Mr. Jaffee.")

[8] As the Court may be aware, letters of recommendation often give rise to various claims of liability against the author, so much so that the state of Florida has codified the traditional common law qualified privilege defense with respect to letters of recommendation. *See* Fla. Stat. § 768.095 ("Employer immunity from liability; disclosure of information regarding former or current employees.").

from all of her substantive claims, with little more than a conclusory explanation. *See* ECF No. 39 (PI Motion), ¶¶ 10-11. In her Reply in further support of the PI Motion, she then suggested, for the first time, that her entitlement to an injunction arose from her tortious interference and defamation claims. *See* ECF No. 72, pp. 5-9. After expression of doubt by both Defendants and this Court as to the legal viability of those unpled theories, Plaintiff now, in what was meant to be a purely legal memorandum, suggests that the injunction arises under her RICO claim.

None of this, of course, is asserted in the PI Motion (ECF No. 39), or Plaintiff's SAC (ECF No. 38), nor could it be. A party cannot amend his or her pleading or motion for injunction via a supplemental memorandum of law. *See, e.g., Bayou Lawn & Landscape Servs. v. Johnson*, 173 F. Supp. 3d 1271, 1281 (N.D. Fla. 2016) (declining to consider argument presented in a responsive brief because the argument was absent from the complaint and essentially directed toward amending the complaint by way of responsive pleading). This Court can and should summarily deny the PI Motion for this reason alone as there is nothing left to consider. *See Willis v. DHL Global Customer Solutions (USA), Inc.*, 2011 WL 4737909 (S.D. Fla. Oct. 7, 2011) (declining to consider new arguments raised in reply in light of Local Rule 7.1(c) and denying motion for summary judgment acknowledging that movant had withdrawn original arguments from opening brief).[9]

**III.    Plaintiff Does Not Plead a Cognizable Right to Injunctive Relief Under RICO**

Aside from being belatedly and inappropriately raised, Plaintiff cannot succeed in her request for an injunction pursuant to her RICO claim for three independent reasons.

*A.   The SAC Fails to State a Legally Viable RICO Claim*

A claim for injunction is not a standalone claim, but rather must be tied to or authorized by another cognizable claim for relief, and analyzed in conjunction with the claim that purportedly would give rise to such an extraordinary equitable remedy. *See Klay v. United Healthgroup, Inc.* 376 F.3d 1092, 1097 (11th Cir. 2004). As discussed in Defendants' pending motion to dismiss Plaintiff's SAC (ECF No. 52, pp. 19-20), the SAC and PI Motion fail to make this connection, dooming Plaintiff's requests for injunction. *See Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*,

---

[9] Plaintiff and her counsel have previously attempted to raise new allegations and mount new legal argument in belated fashion via reply briefing (*see* ECF No. 72, wherein Plaintiff pivoted to a new theory of injunctive relief and included the affidavit of a fact witness for the first time). Such practice is improper.

416 F. Supp. 3d 1369, 1379 (S.D. Fla. 2019) ("The Eleventh Circuit has made clear that 'any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action....'").

In her Memorandum, Plaintiff claims, for the very first time, that her request for injunctive relief is based upon her RICO claim (SAC, Count IX). The genesis of Plaintiff's RICO claim bears mentioning here. First, as Defendants have already made Judge Altman aware, the current SAC was filed without leave of court and is thus inoperative. Specifically, the SAC was filed in direct violation of Judge Altman's order granting Defendants' motion to strike impertinent material concerning Dr. Ben-David (ECF No. 28), and to remove any such references to this material by filing a new amended complaint. Notwithstanding this clear directive, Plaintiff took it upon herself to file a new and expanded pleading adding, among other claims, a RICO claim upon which Plaintiff now relies for her request for injunction.[10] Defendants have moved to strike and/or dismiss this inoperative pleading (ECF No. 52), and the matter has been fully briefed. ECF Nos. 52, 70, and 74. While Defendants expect Judge Altman to address this fundamental problem, this Court can and should consider that the SAC is inoperative *ab initio*.

Should the Court proceed to review the viability of the RICO claim, Defendants ask this Court to consider the arguments raised in their motion to dismiss (ECF No. 52, pp. 12-13) which outlines its many legal infirmities. For example, a plaintiff cannot establish the existence of a "RICO enterprise" between a corporation (MSMC) and its agents or employees acting within the scope of their corporate roles (Dr. Ben-David). *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016). Here, the only "enterprise" that Plaintiff alleges is the "common unit" of MSMC and Dr. Ben-David. *See* SAC ¶ 134. MSMC and Dr. Ben-David, as a defendant corporation and an employee "carrying on the normal work of the corporation," cannot constitute an enterprise for purposes of RICO. *See Ray*, 836 F.3d at 1356. To interpret RICO so broadly "would turn every claim of corporate fraud into a RICO violation." *Id.* This is fatal to her claim.

Plaintiff also provides no caselaw to suggest that it is proper to apply RICO to a hospital or academic residency program that identifies and acts upon determinations concerning a

---

[10] For the Court's edification, Plaintiff initially and frivolously charged Defendants in this civil action with the crime of "extortion." When Defendants responded in their initial motion to dismiss that there is no such civil claim in Florida for "extortion" (ECF No. 17, p. 6), Plaintiff amended her claim (again, without leave and circumventing Judge Altman's order) from "extortion" into a federal RICO count.

resident's progress, lack of academic success, or professional deficiencies. Plaintiff's attempt to transform routine actions within this academic environment into some kind of criminal enterprise has no legal support.

### B.  Plaintiff's RICO Claim Provides No Private Right to Injunctive Relief

Even if the Court were to find Plaintiff's RICO claim was viable based on the facts alleged (it is not), her request still fails as a matter of law for want of a legal right to equitable relief under the statute. *See generally* 18 U.S.C. § 1964. Prevailing and recent precedent dictates that private parties such as Plaintiff cannot seek injunctive relief under RICO. By the statute's terms, such relief is reserved for the government, leaving private parties to seek monetary damages only.

One paragraph in Plaintiff's 20-page Memorandum addresses this issue, but it does not accurately set forth the status of the law. There has been a Circuit split on this issue for many years, with the Eleventh Circuit not adopting one view or the other. Until 2021, four Circuits had addressed the question, with the Second and Seventh Circuits holding that equitable relief is available. The Fifth and Ninth Circuits held that a private party cannot secure an injunction. Most recently and persuasively, the Fourth Circuit in *Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021) held that no equitable relief is available to private parties under RICO and specifically found that the contrary view adopted by the Second and Seventh Circuits was flawed. The court in *Hengle* explained that Section 1964(a) does not specify *who* may invoke the court's equitable powers under the statute, whereas Section 1964(b) specifies that only the *government* may seek equitable relief, and Section 1964(c) (which applies to private litigants) does not refer to the equitable remedies discussed in Section 1964(a) at all, only that a private party may sue for damages. 19 F.4th at 353-54. Thus, just by examining the text of the statute, by allowing the government to seek equitable relief, and not providing same to private litigants, "Congress expressed its intent to withhold from private plaintiffs the ability to invoke the injunctive power granted to the courts in Section 1964(a)." *Id.* at 354. *Hengle* thus found that the Second and Seventh Circuit decisions were flawed – i.e., a "flawed premise leads to a flawed conclusion" – and noted that Congress failed twice to pass legislation that would have provided litigants right to seek injunctive relief, but has not. *Id.*

In her Memorandum, Plaintiff completely fails to disclose the status of the law as outlined above and cites only one case as if it is a definitive statement of her rights – yet this case is far from it. Twenty years ago (and predating *Hengle* by nearly 18 years), Judge Federico Moreno

acknowledged that there was no controlling precedent on whether RICO authorizes private litigants to seek injunctive relief. *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1282-83 (S.D. Fla. 2003). While Judge Moreno seriously considered the arguments against finding a private right of action for injunctive relief, he was ultimately persuaded by a then recent case from the Seventh Circuit but noted it was "a close call." *Id.* at 1283. While Defendants respect Judge Moreno, *In re Managed Care Litig.* was likely wrongly decided and is outdated. At best, Plaintiff faces an uphill battle on this issue. The *Hengle* decision now represents the most recent and well-reasoned decision on this issue – which Judge Moreno did not have the benefit of considering 20 years ago in what he deemed then to be a "close call."[11] *Id*. *In re Managed Care Litig*. has been sparsely (and cautiously) cited in this jurisdiction to support the right of private litigants to seek injunctive relief under RICO.[12] That Plaintiff would rest her right to relief on this thin legal reed is far from establishing the "existence of a clear legal right" necessary to trigger this Court's exercise of extraordinary equitable powers.

### C. The Injunction Sought by Plaintiff Does Not Seek to Enjoin any Unlawful Predicate Acts under RICO

There is a fundamental disconnect between Plaintiff's RICO claim, which is based on Defendants' alleged unlawful enterprise to carry out an extortion scheme (*see* SAC ¶ 130), and the injunctive relief she requests, which includes the provision of an academic reference and the selection of an individual of Plaintiff's choice to prepare such reference. Memo. at 20. Even assuming Plaintiff could pursue injunctive relief under RICO (and as discussed above, this is an uphill climb), the actions Plaintiff asks the Court to mandate and/or enjoin are not based on any underlying conduct violative of RICO. To the extent courts have entered injunctions for private litigants under RICO, it is to enjoin specific unlawful predicate acts under the statute, not to police

---

[11] Also notable, the U.S. Justice Department, Criminal Division (tasked with enforcement of RICO) does not view the statute as bestowing a private right of action for injunctive relief. *See* CIVIL RICO: MANUAL FOR FEDERAL ATTORNEYS (2007 ed.), *available at* https://www.justice.gov/sites/ default/files/criminal/legacy/ 2010/11/12/2007civil-rico.pdf, at p. 26 ("The Attorney General's right to sue for equitable relief derives from Sections 1964(a) and (b), and those provisions, in combination, make the Attorney General's right exclusive.").

[12] Indeed, more recent decisions have declined to follow the Seventh and Second Circuits on this issue. *See, e.g.*, *In re Insulin Pricing Litig.*, 317CV699BRMLHG, 2020 WL 831552, at *3 (D.N.J. Feb. 20, 2020) ("As such, this Court declines to stray from the weight of persuasive authority and holds that a private party may not seek equitable relief under RICO.").

conduct unrelated to any alleged RICO offense. *See, e.g.*, *Absolute Activist Value Master Fund Ltd. v. Devine*, No. 215CV328FTM29MRM, 2016 WL 1572388, at *4 (M.D. Fla. Apr. 19, 2016) (entering injunction freezing assets based on underlying money laundering scheme violating RICO); *National Organization For Women, Inc. v. Scheidler*, 267 F.3d 687, R.I.C.O. Bus. Disp. Guide (CCH) ¶ 10140 (7th Cir. 2001), rev'd on other grounds, 537 U.S. 393, 123 S. Ct. 1057, 154 L. Ed. 2d 991, R.I.C.O. Bus. Disp. Guide (CCH) ¶ 10428, 188 A.L.R. Fed. 741 (2003) (enjoining future antiabortion protest activities deemed to violate RICO).

Plaintiff's request for a "reference" and "program director letter" prepared by an individual of her choice, which letter(s) must be "accurate" according to her, is a far cry from Plaintiff's allegations that Defendants engaged in an extortion racket by repeatedly "forcing" her to sign a nondisclosure agreement and release to "silence" her.[13] Section 1964 makes clear that equitable remedies under RICO must be based on "violations of section 1962 of this chapter." *See* 18 U.S.C. § 1964(a); *cf. Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997), *opinion amended on reh'g,* 131 F.3d 950 (11th Cir. 1997) (denying injunctive relief where it "was not of the same character that could be granted finally, and dealt with a matter that was wholly outside of the issues in the suit"); *Rudnikas v. Nova Se. Univ., Inc.*, 19-25148-CIV, 2021 WL 3621955, at *9 (S.D. Fla. June 2, 2021), *report and recommendation adopted*, 19-25148-CIV, 2021 WL 2980203 (S.D. Fla. July 15, 2021), *aff'd*, 21-12801, 2022 WL 17952580 (11th Cir. Dec. 27, 2022) (denying Plaintiff's request for injunctive relief where based upon "unpled" claim of ADA retaliation).

## IV.   Plaintiff's Request Is Not Susceptible to Management and Is Outside the Court's Equitable Powers

As discussed in Defendants' response to the PI Motion (ECF No. 60, pp. 6-7), Plaintiff's request for injunction is laden with arbitrary standards that would evade court review and management. *See, e.g.*, *Minotti S.P.A. v. Belletti*, 15-23365-CIV, 2016 WL 7508244, at *3 (S.D. Fla. June 30, 2016) (discussing the prohibition on injunctions that invite the "question of what behaviors would constitute a violation of the injunction"). Entry of such an injunction, as Plaintiff has framed it, would raise a multitude of additional questions and potential pitfalls and conundrums, ultimately rendering it unworkable and well beyond the province of this Court's powers in equity.

---

[13] See *supra*, footnote 7 (discussing frivolity of Plaintiff's allegations concerning a "non-disclosure agreement" in this case).

For instance, what does the Court do if Plaintiff's selection of a reference provider refuses? Who decides whether MSMC's "consent" to the new provider is being unreasonably withheld? Who decides whether the letter of recommendation or oral reference provided is "accurate?" Who decides what is said in response to specific questions raised by third parties about whether Plaintiff was in good standing, on probation, terminated, resigned, or had any deficiencies? If an injunction is entered as requested by Plaintiff, it may compel MSMC to provide false and/or misleading statements in its responses to third parties. In such a circumstance, would MSMC have to come back to the Court to assist with crafting a specific response? This is unworkable.

Relatedly, by entering an injunction, is the Court finding that all statements concerning Plaintiff's failures as a resident are somehow attributable to her ADHD and thus are somehow untrue and legally irrelevant for purposes of responding to third parties? And what legal or factual support is there for this extraordinary request where there is no record evidence (much less a verifiable factual allegation in the SAC) that Plaintiff ever *asked* MSMC for any disability accommodation in the first place?

Is the Court immunizing the Defendants or releasing the Defendants from any potential liability vis a vis third parties because it will be acting pursuant to a court order? Is the Court cutting off any alleged damages in this case after the requested injunction order, under the assumption that such Court intervention will mitigate any further alleged damage to Plaintiff?

These open issues show, among other reasons, that Plaintiff's purported reliance on the Court's equitable powers falls well short of sustaining her request. In her Memorandum, Plaintiff points to *S.E.C. v. Solow*, 554 F. Supp. 2d 1356, 1361–62 (S.D. Fla. 2008), *aff'd,* 308 F. App'x 364 (11th Cir. 2009) as somehow supporting issuance of an injunction in the present case. But *Solow* dealt with an injunction that would enjoin specific continued violations of federal securities laws by "track[ing] the statutory language of the sections … violated." *Id.* at 1362. Here, by contrast, Plaintiff cannot point to any specific violation of RICO, and her request for injunction is plainly not aimed at enjoining any continued violations, nor does it track any specific statutory language under RICO, but is aimed at banning wholly unrelated conduct with only the scantest, superficial relationship to her RICO claim. *See supra* Part III.C. And while the Court has broad powers in equity to craft an injunctive remedy, such powers depend upon such a right being clearly established and clearly violated – which for the reasons already explained do not apply here. *See* Part III.A *supra*).

## V.   **Plaintiff's Request Mandates that the Court Unlawfully Regulate Speech**

Plaintiff asks that the Court regulate speech in two ways, raising serious constitutional concerns: (i) by compelling speech when none is required, as Plaintiff points to no legal requirement to say anything about Plaintiff in a letter of recommendation and (ii) by silencing MSMC or Dr. Ben-David from speaking truthfully and freely about Plaintiff.

As briefed in Defendants' papers (ECF No. 60, pp. 5-6), Plaintiff in essence asks the Court to enter a prior restraint: "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Even though Plaintiff apparently retreats from her defamation claim as a basis for entry of an injunction, her requests are premised on the notion that Defendants may in the future utter false or "inaccurate" statements about her. *Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013) (collecting cases and observing the "rule … that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages"); *Santilli v. Van Erp*, 8:17-CV-1797-T-33MAP, 2018 WL 2152095, at *1 (M.D. Fla. May 10, 2018) ("Notably, in defamation cases, there is a strong presumption against injunctive relief.").

For the same reason, to the extent that Plaintiff may attempt to utilize her tortious interference claims to anchor her request for injunction, it should not issue where, as here, the gravamen of those claims involve speech. *See Santilli v. Van Erp*, 8:17-CV-1797-T-33MAP, 2018 WL 2172554, at *4 (M.D. Fla. Apr. 20, 2018), *report and recommendation adopted,* 8:17-CV-1797-T-33MAP, 2018 WL 2152095 (M.D. Fla. May 10, 2018) (emphasis added).

## VI.   **Plaintiff's Request of the Court Places Defendants in Legal Peril**

Not only is an injunction unworkable, but it would also place Defendants in unwarranted legal peril in at least three ways:

From the Court: Should Plaintiff not approve what is said or written in this requested court-ordered reference process, Plaintiff would invariably seek to hold Defendants in contempt of court and threaten such a proceeding if Defendants did not accede to her demands.

From Plaintiff: Such an order would subject Defendants to additional claims. As explained above, the Court does not have the power to immunize Defendants from any claims based on the content of a recommendation letter. Nor does the Court have the authority to have Plaintiff release any such claims. The prospect of Plaintiff suing Defendants in the future over this requested court-

ordered process is very real, and entry of the injunction as framed and requested by Plaintiff would not resolve litigation but simply invite more of it.

From third parties. Hospitals face exposure in the medical credentialing or other similar processes based on false or incomplete disclosures regarding a doctor's history. For example, in *Kadlec Medical Center v. Lakeview Anesthesia Associates*, 527 F.3d 412 (5th Cir. 2008), the Fifth Circuit highlighted that a hospital has a duty to not mislead another hospital about a physician's history. The Fifth Circuit's analysis and result support the view that this Court should be very cautious about what it requires to be written or said about Plaintiff to third parties as it could place the Hospital in additional legal peril for misleading or inaccurate references.

Overall, an injunction should not issue if it would subject a party to additional, future liability. *See, e.g.*, *Abney v. Amgen, Inc.*, 5:05-CV-254-JMH, 2005 WL 1630154, at *11 (E.D. Ky. July 8, 2005), *aff'd*, 443 F.3d 540 (6th Cir. 2006) ("[T]he Court finds that the defendant might well suffer irreparable harm if an injunction was entered because of the possibility of future liability."). Such is the case here.

## VII.   Plaintiff Fails to Establish the Remaining Elements Of A Preliminary Injunction

As briefed in Defendants' response to the PI Motion (ECF No. 60) and their motion to dismiss the SAC (ECF No. 52), Plaintiff fails to satisfy the remaining elements supporting issuance of a preliminary injunction.

First, Plaintiff fails to allege any facts showing irreparable harm, which claim is particularly undermined by the interminable length of time Plaintiff waited to bring this action following the last purported "injury" she suffered over a year before she filed suit. ECF No. 60, pp. 7-9; *see Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *Pippin et al. v. Playboy Entm't Group, Inc. et al.*, No. 8:02-cv-2329-T-30EAJ, 2003 U.S. Dist. LEXIS 25415, *6 (M.D. Fla. 2003) (finding that delay reflects that a request for injunctive relief is more about gaining an advantage rather than protecting a party from irreparable harm).

Second, Plaintiff cannot show that the public interest will be served by issuance of an injunction. ECF No. 60, pp. 9-10. In fact, all signs point to a public disservice if an injunction issues, given that serious patient care and professionalism concerns about a resident physician (about which the public has an interest in being aware and protected against) would be censored by the Court. Courts have roundly decided against injunctions that trench into areas of physician

and student evaluation in an academic setting. *See, e.g.*, *Spatz v. Regents of the Univ. of California*, 21-CV-09605-LB, 2023 WL 114230, at *7 (N.D. Cal. Jan. 4, 2023) (injunctive relief not in the public interest where it "implicates public safety involving the training of doctors in a competitive and technical field" which is better suited to be tested through litigation rather than through preliminary injunctive relief); *Allawi v. State Univ. of New York at Stony Brook*, No. 15830/2002, 2002 WL 31748836, at *1 (N.Y. Sup. Ct. Nov. 15, 2002) (denying an injunction and noting "[s]trong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance").

<u>Third</u>, Plaintiff cannot show that the equities favor Plaintiff, and in fact, Defendants will be harmed more than Plaintiff upon entry of an injunction if they are forced to whitewash Plaintiff's surgical educational history and risk potential liability to Plaintiff and third parties. *See* Part VI *supra*; ECF No. 60, pp. 11.

<u>Fourth and finally</u>, Plaintiff cannot show a likelihood of success on the merits for all the reasons set forth above and in Defendants' motion to dismiss. ECF No. 52.

<u>**CONCLUSION**</u>

For all the foregoing reasons, Plaintiff's Motion for Entry of a Temporary Restraining Order and Preliminary Injunction should be denied.

Dated:  June 12, 2023

Respectfully submitted,

**LASH GOLDBERG LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
*Attorneys for Defendants Mount Sinai Medical*
*Center and Kfir Ben-David, M.D.*
Tel: (305) 347-4040
Fax: (305) 347-4050

By:*/s/ Martin B. Goldberg*
    **MARTIN B. GOLDBERG**
    Florida Bar No. 0827029
    Email: mgoldberg@lashgoldberg.com
    **CLARK S. SPLICHAL**
    Florida Bar No. 1010425
    Email: csplichal@lashgoldberg.com

**KRAMER LEVIN NAFTALIS**
**& FRANKEL LLP**
2000 K Street N.W., 4th Floor
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202)775-4510
*Attorneys for Defendant Kfir Ben-David, M.D.*

By:*/s/ Gary A. Orseck*
    **GARY A. ORSECK**
    Florida Bar No. 846015
    Primary Email: gorseck@kramerlevin.com
    **LAUREN CASSADY ANDREWS**
    Va. Bar No. 92149 (appearing *pro hac vice*)
    Primary Email: landrews@kramerlevin.com

Case No. 1:23-CV-20188-RKA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF on June 12, 2023, or in the manner specified on all counsel or parties of record on the Service List below.

By: */s/ Martin B. Goldberg*
**MARTIN B. GOLDBERG**

## <u>SERVICE LIST</u>

Richard H. Levenstein, Esq.
Gabrielle O. Sliwka, Esq.
Abby M. Spears, Esq.
**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
gsliwka@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com
*Attorneys for Plaintiff*