# Tab 1

Case 1:23-cv-20188-RKA   Document 102-1   Entered on FLSD Docket 06/30/2023   Page 2 of 11

CASE NO. 2022-018881-CA-01 (27)

Finally, as shown in Point IV, the public interest weighs against injunctive relief. Florida public policy rightly dictates that trained medical professionals should be the ones to evaluate whether an individual is qualified to practice medicine. For obvious reasons, the public interest would not be served by judicial intrusion into such specialized decision-making and by wresting an important responsibility away from Dr. Ben-David in providing truthful information about Plaintiff's qualifications to inquiring parties.

For these reasons and others explained below, the Motion should be denied.

## FACTUAL BACKGROUND

A. <u>Overview of the Surgical Residency Program at MSMC</u>

MSMC enjoys continued accreditation from the ACGME as a sponsoring institution for 13 residency and fellowship programs. Oversight of graduate medical education is vested in MSMC's Designated Institutional Official (the "DIO"), Dr. Robert C. Goldszer, in collaboration with the MSMC Graduate Medical Education Committee.

With respect to the Residency in Surgery (the "Program"), MSMC and the Program have been dedicated to the education and training of surgeons and clinical leaders for more than 50 years. Defendant Dr. Kfir Ben-David has been the Program Director since 2016 after joining the MSMC Department of Surgery in 2015 from the University of Florida. At the University of Florida, Dr. Ben-David was a tenured Associate Professor of Surgery who was the recipient of many teaching awards. One of Dr. Ben-David's most important functions as Program Director at MSMC is to ensure, with input from the Program's Clinical Competency Committee ("CCC"), that the Program graduates residents who are competent and qualified to practice medicine – specifically here, surgery.

MSMC and the Program also maintain a culture of professionalism that is supported through robust policies and assessment (including MSMC's Policies on a Harassment-Free Work

Lash&Goldberg LLP

LASHGOLDBERG.COM

**MIAMI** 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel 305 347 4050 fax
**FT. LAUDERDALE** 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel 954 384 2510 fax
**TAMPA** 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813 434-4002 tel

Environment and Equal Employment Opportunity), individual conduct, training, and remediation and/or discipline when necessary. MSMC's expectations of professionalism are of critical importance with respect to its program directors, program leaders and faculty.

MSMC welcomes and encourages its residents to report patient safety concerns or any other concerns, including any issues of unprofessionalism or mistreatment. Retaliation for reporting issues or concerns is strictly prohibited by MSMC's policies.

B.  Plaintiff's Tenure in the Program

Plaintiff joined the Program in 2018 as a PGY-1 (i.e., a first-year resident or "intern"). As reflected in faculty evaluations, attached as Exhibit A[1], Plaintiff was recognized in her first year as highly intelligent and enthusiastic about operating and learning. However, she was lacking in communication skills, struggling with professionalism, and having difficulty with time management. Dr. Ben-David developed a support plan that envisioned Plaintiff meeting with him regularly to review interpersonal skills and professionalism matters. Plaintiff was also offered additional mentorship by two female faculty members; she participated in some mentorship sessions with one faculty member, however she generally declined to meet with the other. Plaintiff completed her intern year and was promoted to PGY-2 (i.e., her second year of residency) with some reservations and a requirement that she submit to weekly test taking to improve upon her test performance and medical knowledge.

As a PGY-2 resident, Plaintiff showed some progress in her procedural skills, but her conduct continued to be unprofessional. Specifically, she showed poor compassion, resulting in multiple patients complaining about her bedside manner, was disrespectful to residents and faculty, was dismissive toward staff, would inappropriately reprimand junior residents, and struggled to

---

[1]  Limited redactions have been applied to certain exhibits attached to this Response based on protected health information ("PHI") and to protect the public identification of individuals who lodged complaints concerning Plaintiff.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

work effectively as a member of a health care team. As one example of this, an intensivist with 16 years of experience complained that Plaintiff made fun of his accent on multiple occasions during rounds, mocking his pronunciation of certain words and being disrespectful in other ways, despite his asking Plaintiff to be respectful.

The Program's CCC conducted a mid-year review of Plaintiff in December 2019.  In a letter from the Chair of the CCC to Dr. Ben-David, the Chair conveyed that the CCC had "serious concern[s] about Dr. Finkelstein's progress in the ACGME milestones for surgical residency and her potential for appropriate advancement to the 3rd year."  The Chair also noted that Plaintiff's continued deficiencies "may not be remediable." This letter is attached as Exhibit B.

Notwithstanding these issues, Dr. Ben-David wanted to continue to work with Plaintiff and try to remediate her deficiencies so she could succeed in the Program. To this end, she was placed on a six-week academic probation, from December 26, 2019 through February 15, 2020, with a targeted plan aimed at remediating her professionalism, communication skills and medical knowledge, which is attached as Exhibit C. Among other elements, the remediation plan included continued mentorship[2], evaluations of interactions with residents, faculty, staff and patients, and a goal of Plaintiff improving her performance on the national surgery residency assessment examination.  Plaintiff acknowledged her remediation plan, which stated that if she was not successful with the plan, her GME Agreement would not be renewed for the 2020-2021 academic year.

Plaintiff's behavior and interactions improved while she was on probation. Faculty and Dr. Ben-David recognized Plaintiff's efforts to improve and, despite continued reservations, Dr. Ben-David determined to promote Plaintiff to PGY-3 (i.e., her third year, to commence June 2020)

---

[2] Again, Plaintiff declined meeting with one of her assigned faculty mentors.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200  •  Miami, Florida  33131-2158  •  305 347 4040 tel   305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220  •  Weston, Florida  33331-3615  •  954 384 2500 tel   954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118  •  Tampa, FL 33606-2315  •  813-284-4002 tel

based on the hope that she would maintain her focus and effort and that, with Program support, become a skilled and professional surgeon. Dr. Ben-David and the Program were dedicated to rehabilitating Plaintiff. In particular, Dr. Ben-David and other faculty spent many hours regularly meeting with Plaintiff, counseling her, and providing her guidance and support aimed at overcoming these issues.

At the end of June 2020, a "code blue" was called within MSMC's psychiatric unit. Multiple physicians, including Plaintiff, as well as a senior surgical physician assistant, all responded to the code. Plaintiff had purported concerns as to the handling by, and preparation of, the nursing staff in responding to the code, and she entered an incident report in the MSMC event reporting system.

MSMC strongly encourages resident participation in adverse event and patient safety reporting. In this instance, however, information from nursing staff and from others responding to the code was contrary to Plaintiff's incident report on a number of points, and it was determined that Plaintiff was not aware of certain protocols applicable to the psychiatric unit.[3] But worse, investigation of the incident revealed that Plaintiff had engaged in inappropriate behavior during the code, including yelling at allied health professionals and staff and calling staff "incompetent." In June and July 2020, Dr. Ben-David received multiple complaints from other residents about Plaintiff. In and around this time, Dr. Ben-David received additional complaints about Plaintiff regarding her disrespect towards her patients and peers, and her refusal to wear a mask during the

---

[3] For instance, Plaintiff reported there was no IV pole readily available. Consistent with environment of care standards for psychiatric units and hospitals, rooms in the psychiatric unit are not equipped with IV poles as the poles can become weapons. Similarly, Plaintiff flagged in her incident report that the only supplies that were available was the crash cart. This is consistent with MSMC policy given that all patients are examined and medically cleared prior to being admitted to the psychiatric unit.

12

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

height of the COVID-19 pandemic. Documentation supporting these incidents are attached together as Exhibit D.

Due to these complaints and the code blue incident, on July 2020, Plaintiff was placed on a second probation, from July 6, 2020 through August 14, 2020, with a new action/remediation plan (attached as Exhibit E) aimed at her demonstrating an ability to work collaboratively with physicians and all healthcare staff. During and subsequent to her second probation, Plaintiff performed below expectations across multiple competencies: medical knowledge, interpersonal and communication skills, and professionalism. Plaintiff was found to have a poor attitude, she continued to lack humility and patience, losing her temper inappropriately at times, and she continued to have unprofessional interactions with attending faculty.

   C.   Non-renewal of the GME Agreement and Plaintiff's Termination/Resignation

By letter dated October 26, 2020, Plaintiff received notice of the non-renewal of her GME Agreement for the 2021-2022 program year, based on her continued failure to satisfy MSMC's expectations of professionalism and communication skills. Thus, despite MSMC and the Program's misgivings about Plaintiff, and her persistent performance issues, MSMC and the Program determined to allow Plaintiff to complete her PGY-3 year.

Following her non-renewal, Plaintiff's behavior and actions with patients continued to be a serious concern. Several additional incidents of note: An anonymous hotline complaint was made by a staff member regarding Plaintiff's abusive interactions with staff and patients. Plaintiff also performed a procedure on a patient in the emergency department without notifying a senior resident or attending faculty. In such circumstances, a surgical resident must notify the attending faculty on call and discuss the proposed treatment, which would then be performed by a credentialed attending physician. Ultimately, following Plaintiff's performance of the procedure

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

(notably, without the patient's informed concert or under supervision), the patient required emergency surgery. The incident was alarming to Dr. Ben-David and the Program and evinced extremely poor judgment by Plaintiff. Documentation regarding this incident is attached as Exhibit F.

Plaintiff was involved in another incident where she placed a femoral intravenous line in a patient in the ICU. The patient presented serious complications following Plaintiff's intervention, continuing to hemorrhage and requiring close monitoring and care. However, Plaintiff did not discuss this complication with the patient's attending surgeon or with any senior residents. The attending physician learned of the complication the next morning during her rounds to see the patient.

Despite MSMC's and the Program's desire for Plaintiff to complete her PGY-3 year, in light of these incidents, Plaintiff could no longer remain a resident in the Program due to severe and emergent concerns directly implicating patient safety. A decision was therefore made to terminate Dr. Finkelstein.  Plaintiff was given the option to resign. Plaintiff's resignation letter was complimentary of the residency program. Copies of Plaintiff's termination paperwork and resignation letter are attached together as Exhibit G. At the time she was verbally informed of her termination, Plaintiff was informed of her appeal rights under the GME Agreement. Plaintiff expressed no desire to appeal the termination and as noted above, she accepted MSMC's offer to resign. *See* Declaration of Robert C. Goldszer, M.D., M.B.A., attached as Exhibit H.

D.  Subsequent Events Pertaining to Her Request for Injunctive Relief

At no time during her surgical residency did Plaintiff request copies of any of her evaluations (despite being told that she could obtain them), nor did she ever request certification/verification from the program of her completion of her first and second years.

14

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

However, after her resignation, Plaintiff requested her <u>entire residency file</u> from MSMC. Plaintiff then indicated that she would retain an attorney to handle further communications with MSMC. Under these circumstances, Plaintiff and MSMC, at arms-length and each represented by counsel, attempted to reach a resolution for a release in exchange for a neutral reference/recommendation from the Program. During these negotiations, MSMC insisted, as a matter of patient and community safety, that any written reference include mention of Plaintiff's two probationary periods in the Program. Despite this being an appropriate measure of protection for MSMC to take under these specific circumstances, this release was never finalized or signed as Plaintiff and her father, Mr. Finkelstein, and their counsel would not agree on what MSMC set forth as an accurate and truthful statement concerning Plaintiff's tenure and departure from the Program. A nondisclosure agreement was never proposed during these discussions. In fact, no resident, whether completing the Program or departing the Program prior to completion, has ever been asked to sign a nondisclosure agreement by the Dr. Ben-David or MSMC administration.

Shortly thereafter, Plaintiff's father (Plaintiff's purported business partner in a startup venture) <u>threatened to make public</u> purported issues with "patient care" raised by Plaintiff, as well as file complaints with the ACGME, Florida Department of Health, and other regulatory agencies, if certain specific demands were not met—namely, Dr. Ben-David's immediate resignation from MSMC. MSMC did not entertain these demands. The rest of this threatening and extortive letter to MSMC speaks for itself, and is attached as <u>Exhibit I</u>.[4]

---

[4] The letter further stated that Mr. Finkelstein wanted to speak with MSMC's CEO and General Counsel regarding alleged problems in the Program and at MSMC, including intimations of a hostile work environment and unprofessionalism on the part of Dr. Ben-David. The letter also mentioned that Plaintiff is the "Medical Director" and the co-founder of a company and app called ERinfoPro for Firstnet®, while also mentioning that there was going to be a significant amount of press, social media and other public events featuring Plaintiff, supported by ERinfo's in-house and outside public relations teams—thereby implying that Plaintiff would take her purported grievances with the MSMC and Program public.

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

In the fall of 2021, MSMC received a request for verification of Plaintiff's progress in her residency at MSMC from Mount Sinai Beth Israel in New York City ("Beth Israel"). Dr. Ben-David provided truthful information responding to the request, namely, the fact that Plaintiff had not completed the full surgical residency program at MSMC. This verification was provided on November 3, 2021, and is attached as Exhibit J. Since that time, MSMC has received no other verification requests from any educational institution or credentialing body regarding Plaintiff. Around this time, word also spread at MSMC that Plaintiff had accepted enrollment in an MBA program at Columbia University.

In June 2022, Plaintiff filed a complaint with the Accreditation Council for Graduate Medical Education ("ACGME") against MSMC, mounting similar allegations raised in this lawsuit (as detailed below). The ACGME complaint when sent to MSMC months later triggered a review of the Program by an ad hoc committee of the Graduate Medical Education Committee – a "Special Review" pursuant to ACGME requirements. During this process, and as an accommodation, MSMC provided Plaintiff a packet including a verification letter confirming her completion of two and one-half years of residency in the Program, as well as a collection of all of her substantive evaluations made available to her while a resident. A copy of the letter enclosing Plaintiff's evaluations and verification of competition of a portion of her residency are attached together as Exhibit K.

One month later, in July 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging gender and disability discrimination, and again, raising many of the same factual allegations raised in this lawsuit. The EEOC dismissed the charge on October 27, 2022 as time barred. The EEOC's Dismissal and Notice of Rights is attached here as Exhibit L.

Lash&Goldberg LLP

LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

Indeed, just recently, on December 14, 2022, Plaintiff and her counsel again attempted to extort Defendants by threatening to bring additional "sensitive information" to the attention of the ACGME (and other third parties) as well as file an amended complaint in this action. Defendants placed Plaintiff and her counsel, Richard H. Levenstein, Esq., on notice that they reserve all rights concerning that conduct and communication(s).

Finally, it recently came to the Program's attention that sometime in May 2022, Plaintiff was interviewed for an article by the publication *Poets & Quants* about her experience as a physician at MSMC during the initial outbreak of the COVID-19 pandemic. The article is entitled "Meet the Surgeon & Entrepreneur Who Became a Last-Minute Columbia MBA Student," and a copy of the article is attached as <u>Exhibit M</u>. The article quotes Plaintiff as follows:

> It was my job to walk around on wards, and I would carry a chest tube and a scalpel in my pocket because so many patients were put on vents . . . And when you're on a vent, and your lungs are very sick, they lose their compliance, and you can develop something called a pneumothorax (collapsed lung). So it was my job to literally run from bed to bed, to put chest tubes in these patients. And sorry, the unfortunate situation is that nobody really survived.

This scenario as described by Plaintiff—like most of her allegations in this lawsuit—is completely false. It never happened. To the contrary, MSMC and the Program did not allow surgical residents to walk around the COVID wards and circulate from bed to bed to place chest tubes into COVID patients. Those patients were seen only by attending physicians. At the beginning of the pandemic, surgical residents were not permitted to see COVID-positive patients to protect the residents' safety. Even when residents were later included in the evaluation and care of COVID-positive patients, they did not do chest-related procedures. Plaintiff fabricated this

Lash&Goldberg LLP
LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida 33131-2158 • 305 347 4040 tel 305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida 33331-3615 • 954 384 2500 tel 954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2315 • 813-284-4002 tel

CASE NO. 2022-018881-CA-01 (27)

information to seemingly whitewash the resoundingly negative appraisal of her performance while a resident at MSMC.[5]

## PERTINENT ALLEGATIONS IN MOTION AND COMPLAINT

The allegations in Plaintiff's "verified" Motion and Complaint present a version of reality through the underlined looking glass,[6] where Plaintiff was an exceptional medical resident, a champion for patient safety and care, and her termination from the Program was the result of a retaliatory campaign in which she was singled out.

According to her Motion and Complaint, Plaintiff began her surgical residency with MSMC in June 2018. Mot. ¶ 13. On March 11, 2020, Plaintiff entered a written agreement with MSMC for her third year of residency, which would run from June 2020 until June 2021 (hereinafter the "GME Agreement"). *See* Compl. ¶ 28, & Ex. A. Dr. Ben-David signed the GME Agreement on behalf of MSMC, but is not a party to the agreement. *Id.* Ex. A.

In January 2021, Defendants "forced" Plaintiff's resignation from the residency program. *Id*. ¶ 18. She alleges that all disciplinary actions taken against her during her residency, leading to her "forced" resignation, were designed to "harass" and "retaliate" against her. Mot. & Compl. ¶¶ 8, 10.

Following her resignation, Plaintiff alleges that Defendants attempted to "extort" and "blackmail" her by withholding her "Summative Evaluation" and "Certification of Completion" (the latter evidencing her completion of two years in the program) unless Plaintiff signed a release and nondisclosure agreement. *Id*. ¶¶ 12, 19.

---

[5] In their attached declarations, Dr. Kfir Ben-David and Dr. Robert C. Goldszer each attest that all of the facts recited above, with which they were involved and/or have personal knowledge, are true, and all the documents attached to Defendants' Response are true and accurate copies thereof. *See* Exhibit N and Exhibit O, respectively.

[6] LEWIS CARROLL, THROUGH THE LOOKING-GLASS, AND WHAT ALICE FOUND THERE (1871). In this sequel, Alice again enters a fantastical world by climbing through a mirror. Upon entry she finds that, just like a reflection everything is reversed, including logic.



LASHGOLDBERG.COM

MIAMI 100 Southeast 2nd Street, Suite 1200 • Miami, Florida  33131-2158 • 305 347 4040 tel  305 347 4050 fax
FT. LAUDERDALE 2500 Weston Road, Suite 220 • Weston, Florida  33331-3615 • 954 384 2500 tel  954 384 2510 fax
TAMPA 142 West Platt Street, Suite 118 • Tampa, FL 33606-2121 • 813-284-4002 tel