# Tab 24

Case 1:23-cv-20188-RKA Document 102-25 Entered on FLSD Docket 06/30/2023 Page 2 of 4
Irani v. Palmetto Health, University of South Carolina..., Not Reported in Fed....

2016 WL 3079466

KeyCite Yellow Flag - Negative Treatment
Distinguished by Chandler v. Technical College of Lowcountry, D.S.C., July 11, 2022

2016 WL 3079466
Only the Westlaw citation is currently available.
United States District Court, D.
South Carolina, Columbia Division.

Afraaz R. IRANI, M.D., Plaintiff,
v.
PALMETTO HEALTH, UNIVERSITY OF SOUTH
CAROLINA SCHOOL OF MEDICINE, David E.
Koon, M.D., in his individual capacity, and John J.
Walsh, M.D., in his individual capacity, Defendants.

C/A No. 3:14-cv-3577-CMC
|
Signed 06/01/2016

**Attorneys and Law Firms**

David E. Rothstein, Rothstein Law Firm, Greenville, SC, for Plaintiff.

Katherine Dudley Helms, Ogletree Deakins Nash Smoak and Stewart, Fred Adam Williams, Kathryn Thomas, Gignilliat Savitz and Bettis, Columbia, SC, for Defendants.

Opinion and Order on Motions for Summary
Judgment, Motion to Compel, and Motion to Strike

ECF Nos. 136, 137, 139, 146, 175

CAMERON MCGOWAN CURRIE, Senior United States District Judge

**\*1** Through this action, Plaintiff Afraaz R. Irani, M.D., ("Plaintiff" or "Dr. Irani") seeks relief relating to his treatment during and termination from an orthopaedic surgery medical residency program ("Residency Program" or "Program") and subsequent events related to that termination. Defendant Palmetto Health ("Palmetto Health") was the official sponsor of the Residency Program and operated the Program in affiliation with Defendant University of South Carolina School of Medicine ("USC-SOM") (collectively "Entity Defendants").[1]

Defendant David E. Koon, Jr., M.D. ("Dr. Koon"), a member of the USC-SOM faculty, was the Program Director for the Residency Program at all times relevant to this action. Defendant John J. Walsh, IV, M.D. ("Dr. Walsh") was the Chair of the Orthopaedic Surgery Department at USC-SOM during the same period. Both Drs. Koon and Walsh are sued in their individual capacities (collectively "Individual Defendants").

The matter is before the court on Defendants' motions for summary judgment, ECF Nos. 136, 137, 139, and two related evidentiary motions.[2] For the reasons set forth below, Defendants' motions for summary judgment are granted as to all causes of action, though not necessarily on all grounds argued. The two evidentiary motions are rendered moot by the summary judgment ruling.

**STANDARD**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

**\*2** Rule 56(c)(1) provides as follows:

(1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers or other materials; or

(b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Case 1:23-cv-20188-RKA   Document 102-25   Entered on FLSD Docket 06/30/2023   Page 3 of 4
Irani v. Palmetto Health, University of South Carolina..., Not Reported in Fed....
2016 WL 3079466

is "careful and deliberate." *Board of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78. 85 (1978) (applying standard to dismissal of medical student on academic grounds). Academic dismissals do not require even a formal hearing, much less the type of protections (e.g., right to examine evidence and confront witnesses) typical in judicial proceedings. *Id.*

There is no question Dr. Irani was fully and repeatedly informed of the faculty's dissatisfaction with his progress and the risk of dismissal. By the time of the Grievance Committee hearing, he had, in fact, been dismissed from the Program. What Dr. Irani challenges is the collective and consistent judgment of the faculty and GMEC that he should be dismissed and the decisions of the Grievance Committee and Palmetto Health's CEO upholding his dismissal. He was, however, afforded more process than *Horowitz* requires because he was afforded a formal hearing before a Grievance Committee comprised of faculty and residents from other departments. *See infra* Discussion § VIII (discussing constitutional claim). Thus, even if constitutional due process requirements are read into the Resident Agreement, the resulting promise was not breached.

## V. Breach of Contract – Third-Party Beneficiary of ACGME Standards

**Amended Complaint.** The fifth cause of action alleges breach of contract based on a third-party beneficiary theory and is asserted against both Entity Defendants. ECF No. 49 ¶¶ 61-63. Dr. Irani alleges "Palmetto Health and USC-SOM applied for and received accreditation from the ACGME for the Program" and, "[i]n receiving accreditation," these Defendants "agreed to comply with certain practices, policies, and procedures including the ACGME's Institutional Requirements and ... Common Program Requirements." *Id.* ¶ 63. He alleges "[t]hese standards for accreditation amount to a contract between Defendants Palmetto Health/USC-SOM and the ACGME" and that, as a resident, he was an intended third-party beneficiary of this contract. *Id.* ¶¶ 63, 64.

**\*48** Dr. Irani alleges that the Entity Defendants breached the alleged contract and his rights as third-party beneficiary through six failures. *Id.* ¶ 65. These failures include failing to (a) provide an education that facilitates residents' professional, ethical, and personal development; (b) inform residents of and adhere to established educational and clinical practices, policies and procedures; (c) provide fair, reasonable, and readily available written institutional policies and procedures for grievances and due process and failing

to minimize conflicts of interest in adjudication of academic or disciplinary matters; (d) follow ACGME duty hour requirements; (e) provide adequate supervision of residents; and (f) provide an educational and work environment in which residents may raise and resolve issues without fear of intimidation or retaliation. *Id.*

**Arguments for Summary Judgment.** USC-SOM argues it cannot be liable on this claim because there is no evidence it was a party to any contract or agreement with ACGME. ECF No. 136-1 at 8. It also argues there was no breach because the Program never lost its accreditation. *Id.* (also noting that the ACGME considered Dr. Irani's allegations regarding non-compliance but rejected them as without merit, citing Koon first aff. ¶ 36, Walsh aff. ¶ 33, Thomas aff. Ex. S). Finally, USC-SOM argues that accreditation standards are not a proper basis for any contract-based claim. ECF No. 136-1 at 9 n. 4 (citing *Castrillon v. St. Vincent Hosp. and Health Care Center, Inc.*, 51 F. Supp. 3d 828, 842-43 (S.D. Ind. 2014) (rejecting resident's third-party beneficiary claim based on sponsoring institution's alleged failure to comply with ACGME standards)).

Palmetto Health argues that the statute of frauds precludes enforcement of any alleged contract between it and the ACGME because the agreement spans a period in excess of one year and there is no signed writing. ECF No. 139-1 at 28 (relying on S.C. Code Ann. § 32-3-10 (2012)). It also argues accreditation standards do not constitute a contract. *Id.* Next, Palmetto Health argues the ACGME's failure to find a breach or to remove accreditation precludes any finding of breach. *Id.* Finally, Palmetto Health argues that, even if there was a breach, Dr. Irani was at most an incidental rather than an intended beneficiary and, consequently, may not seek damages for the breach. *Id.* at 28-31.

**Dr. Irani's Response**. Dr. Irani does not address Defendants' arguments. Most critically, he does not address arguments Defendants (1) were not in a contractual relationship with the ACGME and (2) even if the relationship with ACGME were deemed a contract, there was no breach because the Program never lost accreditation.

He, instead, advances a new argument that he is a third-party beneficiary of "one or more agreements *between Palmetto Health and the USC-SOM* to abide by the ACGME accreditation guidelines." ECF No. 148 at 39 (emphasis added). Dr. Irani identifies the following two agreements as supporting this claim: an Affiliation Agreement between

Irani v. Palmetto Health, University of South Carolina..., Not Reported in Fed....

2016 WL 3079466

Case 1:23-cv-20188-RKA  Document 102-25  Entered on FLSD Docket 06/30/2023  Page 4 of 4

USC-SOM and Palmetto Health ("Affiliation Agreement"); and a Program Letter of Agreement between Palmetto Health and the University Specialty Clinics, Department of Orthopaedic Surgery ("PLA"). ECF No. 148 at 40-42.

The Affiliation Agreement states the two entities will collaborate to ensure "Palmetto Health's graduate medical education programs operate ... in compliance with regulatory and accreditation standards." Affiliation Agreement ¶ 6.6. The PLA states educational experiences "will be provided in a manner consistent with the applicable [ACGME] requirements, and other federal, state and local laws, rules and regulations." PLA at 2, ECF No. 153-4 at 3.

**Discussion.** Dr. Irani's failure to address Defendants' arguments is a concession of any claim based on contracts or contractual obligations flowing between either Defendant and the ACGME. Any direct reliance on ACGME standards would fail in any event for reasons explained in *Castrillon*:

> **\*49** [S]tandards that ACGME has established for all of its accredited institutions ... are akin to regulations established by an administrative body, rather than a contract governing a relationship between two entities. If [the sponsoring institution] fails to substantially comply with ACGME's requirements, ACGME can revoke its accreditation; that would not be a "breach" of any "contract" by [the sponsoring institution], but rather a decision by ACGME, as a regulatory institution, that [the residency program] is no longer entitled to accreditation. In other words, Dr. Castrillon has produced nothing that demonstrates that [the sponsoring institution] promised ACGME that it would follow its requirements. Rather, it has produced a set of regulations that ACGME requires [sponsoring institution] to follow *if [it] wishes to retain accreditation. Cf. Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schools & Colleges,* 44 F.3d 447, 449 (7th Cir. 1994) ("[A]ccrediting bodies are not engaged in commercial transactions for which state-law contract principles are natural matches. The 'contract' the School wants to enforce is not a bargained-for exchange but a set of rules developed by an entity with many of the attributes of an administrative agency.").

> *Castrillon,* 51 F. Supp. 3d at 842-43) (emphasis in original).

Dr. Irani's new argument, that he is a third-party beneficiary of the Affiliation Agreement and PLA, fails because it is not fairly predicted by the Amended Complaint, which expressly relies on third-party beneficiary rights arising out of a contract or contracts *between the Entity Defendants and the ACGME,* not on contracts between the Entity Defendants themselves. The Affiliation Agreement and PLA are not, in fact, mentioned at any point in the Amended Complaint.

Even if not barred for this reason, the new argument would fail because the nature of the promises between the Entity Defendants does not give rise to an inference residents are intended third-party beneficiaries rather than incidental beneficiaries of these agreements in general or any promises relating to ACGME standards in particular. *See Johnson v. Sam English Grading, Inc.,* 772 S.E.2d 544, 552 (S.C. Ct. App. 2015) (stating third party may enforce contract if the contract is "intended to create a direct, rather than an incidental or consequential, benefit to such third party"). Critically, Dr. Irani fails to cite a single case holding that agreements of a similar nature (agreements between entities engaged in joint educational efforts) may be enforced by students under a third-party beneficiary theory.

The court finds both Defendants are entitled to summary judgment on these grounds. It need not, therefore, reach Defendants' additional arguments for summary judgment, including that there was no breach given the Program never lost accreditation and the ACGME found no merit to Dr. Irani's multi-faceted complaint.

**VI. Wrongful Discharge in Violation of Public Policy Amended Complaint.** The sixth cause of action for wrongful discharge in violation of public policy is asserted against USC-SOM and Palmetto Health. ECF No. 49 ¶¶ 69-77. Both Entity Defendants moved for summary judgment on this claim.

Dr. Irani responded by "conced[ing] that the recent case of *Cunningham v. Anderson County,* 778 S.E.2d 884 (S.C. 2015), appears to preclude" this claim and his counsel "has determined that this cause of action is no longer viable." ECF No. 148 at 68 (stating he "withdraws [this] cause of action"). In light of the pendency of motions for summary judgment, the court treats Dr. Irani's "withdraw[al]" of this claim as a concession Defendants Palmetto Health and USC-SOM are entitled to summary judgment on this cause of action and grants both Entity Defendants' motions as to this claim.

**VII. Tortious Interference with Contract (Employment Contract with Palmetto Health)**