# Tab 26

# Mount Sinai
## MEDICAL CENTER

### GRADUATE MEDICAL EDUCATION PROGRAM AGREEMENT

For: _____ Paige Finkelstein, M.D. _____

AGREEMENT entered into this __11__ day of __March__, 20_20_ by and between _____ Paige Finkelstein, M.D. _____ hereinafter referred to as "APPOINTEE" and MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., hereinafter referred to as the "MEDICAL CENTER."
In consideration of the promises and mutual covenants and agreements contained herein, the parties agree as follows:

### 1. APPOINTMENT

The materials presented to the Medical Center demonstrate that the APPOINTEE has met the eligibility requirements as stated in the MEDICAL CENTER's Policy for the Selection, Evaluation, Promotion, and Dismissal of Residents. Based on the APPOINTEE having met those eligibility requirements, and in accordance with the recommendation of __Kfir Ben-David, M.D._____, Program Director of __Surgery_____, the APPOINTEE will be designated as _____Third Year Resident in General Surgery (PGY3)_____.

This appointment will be for a one-year period commencing on_____June 24, 2020_____ and terminating on__June 23, 2021_____, unless terminated as hereinafter stated. APPOINTEE acknowledges that during the term of this AGREEMENT he/she shall maintain a current license or maintain a current registration as an unlicensed physician with the Florida State Board of Medicine.

Final confirmation for appointment shall be subject to a satisfactory health examination conducted by the MEDICAL CENTER's Employee Health Services Department, such physical examination to include a screening test for the presence of non-prescribed substances, alcohol, and nicotine products. Offers of appointment to prospective employees who test positive for nicotine will be rescinded.

### 2. COMPENSATION AND BENEFITS

In consideration of this agreement, the MEDICAL CENTER shall pay the APPOINTEE an annual gross salary of __$60,292.00_____, paid bi-weekly in arrears. The MEDICAL CENTER shall deduct both FICA (Social Security), if applicable, and Federal Withholding Taxes. The APPOINTEE is provided three weeks (21 calendar days) annual paid vacation at the postgraduate year one (PGY-1) level and four weeks (28 calendar days) annual paid vacation at all other levels. Such vacation shall be taken at a time determined by the APPOINTEE's Program Director during the year this AGREEMENT is in effect. For convenience, the MEDICAL CENTER may make such payments and provide the fringe benefits while APPOINTEE is temporarily assigned on a rotation to another institution.

The MEDICAL CENTER shall provide two weeks (14 calendar days) annual paid Sick Leave to be used only in the event of illness or injury.

Any on-duty accident will be covered by the MEDICAL CENTER's program for Worker's Compensation.

A group medical insurance plan shall be offered by the MEDICAL CENTER to the APPOINTEE. APPOINTEE may elect coverage for spouse and eligible children. The medical insurance plan coverage starts the first recognized day of the GME program. The medical plan offered will be determined by the MEDICAL CENTER and will be administered in accordance with the provisions of that plan. The MEDICAL CENTER reserves the right to change, alter, and/or amend the provisions of the plan including the plan's carrier at its sole discretion. APPOINTEE will have access to appropriate and confidential counseling and medical and psychological support services. Access to these services will be facilitated through either APPOINTEE's Program Director, primary care physician, or the Designated Institutional Official.

Medication stocked at the MEDICAL CENTER'S Pharmacy shall be provided to the APPOINTEE, spouse and eligible children in accordance with the MEDICAL CENTER'S current policy.

Dental insurance shall be offered by the MEDICAL CENTER to the APPOINTEE. APPOINTEE may elect coverage for spouse and eligible children. The dental insurance plan coverage starts the first recognized day of the GME program.

The MEDICAL CENTER provides group term life insurance to APPOINTEES to become effective on the first day they report for duty. The coverage for APPOINTEE is $50,000.00.

The MEDICAL CENTER provides Long Term Disability protection to APPOINTEES. The plan provides a $1500 monthly benefit after an elimination period of 180 days.

The MEDICAL CENTER will cover the APPOINTEE under its existing professional liability (malpractice) insurance program for services at the MEDICAL CENTER, which will cover the APPOINTEE's training activities under this Agreement. This includes claims made after the termination of this Agreement for actions that occurred during the term of this Agreement. It does not include claims made for actions occurring outside the APPOINTEE's full-time responsibility to the MEDICAL CENTER under this Agreement.

The APPOINTEE agrees to fully cooperate with the MEDICAL CENTER with respect to any litigation arising out of actions which occurred during the term of this Agreement (including claims made or investigations or proceedings on-going after termination of this Agreement). Such cooperation will include assistance with trial preparation, attendance at depositions and trial, and any other reasonable requests by the MEDICAL CENTER, at no charge to the MEDICAL CENTER.

The MEDICAL CENTER will provide free parking on its premises to APPOINTEEs.

The MEDICAL CENTER will provide three uniform coats to APPOINTEEs at the beginning of the initial academic year. One uniform coat will be provided each subsequent year.

The MEDICAL CENTER will reimburse APPOINTEE on a monthly basis to cover the cost of meals while taking in-house call. Amount of reimbursement is $10.00 per night on call. On-call sleep rooms shall be maintained by the MEDICAL CENTER.

### 3. LEAVE OF ABSENCE (LOA) POLICY

A leave of absence will be granted in the event of a medical or personal emergency. Each case will be evaluated by the Program Director on an individual basis. A written request for leave of absence should be submitted to the Program Director giving the reason, number of days required and address while away. The Office of Medical Education should be notified as soon as the individual arrangements have been made.

The MEDICAL CENTER may grant the APPOINTEE an unpaid medical leave of absence if the APPOINTEE is medically unable to work due to a non-occupational illness, injury or disability, but the APPOINTEE must first exhaust his/her sick time. The maximum duration for a medical leave is 3 months. In the event of a documented personal illness, APPOINTEE must take all remaining sick time before beginning a medical LOA. Paid vacation time may be taken if APPOINTEE so requests (subject to approval of vacation time by the MEDICAL CENTER), but the APPOINTEE does not have to exhaust vacation time before the LOA begins. A request for a medical LOA must be accompanied by the APPOINTEE'S personal physician's statement, which includes an estimated length of the LOA. A medical LOA is available only to APPOINTEES who are medically unable to work. Any APPOINTEE desiring additional time off following a period of disability may request a personal leave, which the MEDICAL CENTER, in its sole discretion, may grant. The MEDICAL CENTER has the right to request a certificate of continued disability by the physician on a regular basis during the medical LOA.

An unpaid personal leave of absence may be granted to give APPOINTEEs time to resolve personal or domestic problems or to address personal situations. Sick time may not be used to avoid a personal LOA or to delay one. Vacation time may be requested by APPOINTEE, but does not have to be exhausted before the LOA begins. A personal LOA may not be for a period longer than 3 months.

In the case of extended leave without pay, all other benefits will remain in effect. Returning to work part-time is an option that an APPOINTEE may discuss with the Program Director, but which shall be granted or denied at the sole discretion of the MEDICAL CENTER.

In the case of prolonged absence, APPOINTEE may have to make up the time in order to fulfill the Board requirements of his/her specialty. Access to information related to eligibility for specialty Board examinations is available on the specialty Board(s) website(s). The Program Director in consultation with the Designated Institutional Official will individually determine the necessary extra amount of time APPOINTEE will have to serve. APPOINTEE will receive full salary and benefits during the required extended time.

### 4. HOUSESTAFF PARENTAL LEAVE POLICY

The institution is supportive of APPOINTEEs during pregnancy, postpartum or adoption periods and the goal of this policy is to foster the health of the parent and child and at the same time protect adequate patient care and the educational requirements of the APPOINTEEs. This policy should apply to maternal and paternal leave as well as to adoptions.

Pregnancy will be treated like any other disability; the duration of leave must be determined by the woman and her physician and according to the infant's health needs. In general, maternity leave begins approximately two weeks before delivery and ends six weeks postpartum. Each case will be evaluated by the Program Director on an individual basis, and the Office of Medical Education should be notified as soon as the individual arrangements have been made.

Parental leave should be requested and discussed with the Program Director as soon as the pregnancy is known, which may result in scheduling changes. Parental leave is not to exceed a maximum of 14 consecutive calendar days immediately following the birth or adoption of the infant, and each case will be evaluated by the Program Director on an individual basis. The APPOINTEE should immediately notify and discuss with the Program Director if there are any unexpected needs or changes in plans due to complicated pregnancy, delivery, or infant's health.

The APPOINTEE shall continue to receive salary and benefits during maternal/parental leave in accordance with the MEDICAL CENTER'S policy for disability. Accrual of vacation time and sick time will not continue during leave. In case of extended leave, the MEDICAL CENTER will make a decision as to salary and benefits on an individual basis. Returning to work part-time may be an option to be discussed with the Program Director.

In case of prolonged absence, APPOINTEE may have to make up the time required in order to fulfill the Board requirements of his/her specialty. Access to information related to eligibility for specialty Board examinations is available on the specialty Board(s) website(s). If the APPOINTEE has elective/selective time available following return from the maternal/parental leave, that time must be used to make up all required rotations in order to fulfill the Board requirement of her/his specialty. The Program Director in consultation with the Department Chair / Division Chief and the Designated Institutional Official will individually determine the necessary extra amount of time the APPOINTEE will have to serve. APPOINTEE will receive full salary and benefits during the required extended time.

### 5. PROFESSIONAL LEAVE POLICY

A professional leave with salary will be granted at the discretion of the Program Director for residents to attend an educational activity (seminar, course, scientific meeting) outside of the institution or for residents to submit a scientific presentation at a local, regional, national or international meeting. All requests for professional leave should be addressed in writing to the Program Director at least 5 weeks in advance to be considered. Each case will be evaluated by the Program Director on an individual basis as to the benefits accrued to the resident and/or the MEDICAL CENTER. Any planned absence greater than five days must have the prior approval of the Director of the Department of Medical Education and the DIO.

Expenses related to attendance at an educational activity will be considered on an individual basis and must conform to the house staff travel policy. With the exception of the foregoing, no additional benefits shall be provided to APPOINTEE by the MEDICAL CENTER, and it is understood that the MEDICAL CENTER may be reimbursed when the APPOINTEE is on rotation to another institution.

## 6. HARASSMENT-FREE WORK ENVIRONMENT

Mount Sinai Medical Center is committed to Equal Employment Opportunity (EEO). Discrimination on the basis of a person's race, religion, national origin, age, disability, veteran status, marital status, sex, or sexual orientation, or any other basis protected by federal, state or local law, including verbal or physical harassment on the basis of any of the above characteristics, is prohibited and will not be tolerated. Such prohibited harassment consists of unwelcome sexual advances or comments; ethnic jokes; ethnic, racial, religious or age-related slurs; and similar conduct. This policy is in accordance with the Mount Sinai Medical Center Harassment Free Work Environment Policy (#2.20.022) and in all instances will adhere to the terms and procedures of that policy.

The Vice President of Human Resources is our Equal Employment Opportunity Officer. Anyone who feels discriminated against, or who sees an act which may be interpreted to be discriminatory, has an absolute and unqualified duty to report it to the Vice President of Human Resources or his/her designee immediately. The Designated Institutional Official will be notified in each case.

## 7. ACCOMMODATION FOR DISABILITIES

APPOINTEE may request accommodation for disability under the MEDICAL CENTER's policy for disability accommodation.

## 8. RESIDENT PHYSICIAN RESPONSIBILITIES

With respect to participation in direct patient care activities, APPOINTEE shall be responsible to the pertinent Program Director, Division Chief, Department Chair, member(s) of the Medical Staff under whose supervision APPOINTEE may from time to time serve, and to the pertinent Senior APPOINTEE.

With respect to overall professional training and academic affairs, APPOINTEE shall be responsible to the Program Director or his/her designee. In all other respects, APPOINTEE shall be responsible to the Chief Executive Officer of the MEDICAL CENTER and his designees for the faithful and satisfactory performance of duties as a member of the MEDICAL CENTER.

APPOINTEE shall perform designated duties during such hours as the pertinent Program Director or his/her designee may direct and in accordance with the MEDICAL CENTER's policy on duty hours. Night and weekend duty shall be scheduled by the Program Director or his/her designee on a rotational, equitable basis. APPOINTEE may not engage in outside employment (moonlighting) except in limited specific cases in the sole discretion of the MEDICAL CENTER. If APPOINTEE is included within the limited specific cases in which the MEDICAL CENTER might, in its sole discretion, allow resident moonlighting, the APPOINTEE must file a written request with the Program Director to engage in moonlighting activities and must obtain in writing said Program Director's approval. This written approval must be made part of APPOINTEE's file. The Program Director must monitor the effect of moonlighting activities on a resident's/fellow's performance in the program to ensure that the extracurricular activity does not interfere with the ability of APPOINTEE to achieve the goals and objectives of APPOINTEE's program of education. Adverse effects of moonlighting on APPOINTEE's performance, as observed by the Program Director or teaching faculty, may lead to withdrawal of permission to moonlight. All moonlighting must be counted toward the 80-hour weekly limit on duty hours. APPOINTEE will not be required to engage in moonlighting. If APPOINTEE does engage in moonlighting, he/she must be properly licensed in the state of Florida. When engaging in outside limited employment, APPOINTEE is an independent contractor, not an agent of the MEDICAL CENTER and thus not covered under the MEDICAL CENTER's professional liability insurance (malpractice), or other insurance.

PGY-1 residents are not permitted to moonlight.

In performing his/her designated duties, at all times the APPOINTEE must conduct himself/herself in compliance with the Bylaws and the Rules and Regulations of the MEDICAL CENTER or the rotating institution, its Medical Staff, all applicable Service, Departmental and Divisional Rules and Regulations, as well as all applicable policies, both personnel and operational, and such specific rules and regulations as from time to time may be established for APPOINTEEs. APPOINTEE agrees not to engage in any activities that interfere with or detract from APPOINTEE's duties to the MEDICAL CENTER or to the orderly and effective operation of the MEDICAL CENTER or of the APPOINTEE's educational program.

APPOINTEE understands that his/her position of house staff physician entails provision of care commensurate with the house staff physician's level of advancement and competence, under the general supervision of appropriately privileged attending staff. Specifically, APPOINTEE is expected to:
(a) Develop a personal program of self-study and professional growth with guidance from the teaching staff.
(b) Participate in safe, effective and compassionate patient care under supervision.
(c) Participate completely in the educational activities of the program and, as required, assume responsibility for teaching and supervising other resident physicians and medical students.
(d) Participate in institutional programs and activities involving the medical staff and adhere to established practices, procedures and policies of the institution.
(e) Participate in institutional committees and councils, especially those that relate to patient care review activities.
(f) Develop an understanding of ethical, socioeconomic and medical/legal issues that affect health care practice and of how to apply cost containment measures in the provision of patient care.
(g) Work harmoniously with other members of the health care team.
(h) Complete in a timely manner all responsibilities with respect to medical records and maintain the confidentiality of patient records and information as required by law.
(i) Submit to the Program Director or to the Designated Institutional Official, at least annually, confidential, written evaluations of the faculty and the educational experiences.

3

(j) Achieve standards set by the Program Director in the six education competencies: Patient Care, Medical Knowledge, Practice Based Learning and Improvement, Interpersonal and Communication Skills, Professionalism, and Systems Based Practice.

APPOINTEE shall abide by the MEDICAL CENTER's or the rotating institution's dress code for all employees as set forth in the MEDICAL CENTER's Operational Manual.

APPOINTEE shall abide by the MEDICAL CENTER's policy on substance abuse.

## 9. CLINICAL EXPERIENCE AND EDUCATION HOURS POLICY

Each program's formal written policies governing resident clinical experience and education hours are designed to foster resident education and facilitate the care of patients. Clinical experience and education hours will be set to be consistent with the Institutional and Common Program Requirements of the specialties and subspecialties that apply to each program. Resident clinical experience and education hours and on-call time periods will not be excessive. The structuring of clinical experience and education hours and on-call schedules will be designed to focus on the needs of the patient, continuity of care, resident well-being, and the educational needs of the residents. These clinical experience and education hour policies will apply to all institutions to which a resident rotates.

Clinical experience and education hours are defined as all clinical and academic activities related to the residency program, such as patient care (both inpatient and outpatient), administrative duties related to patient care, the provision for transfer of patient care, time spent in-house during call activities, short call, time spent in the hospital on at-home call, night float and day float, and scheduled academic activities such as conferences. Residents should not be scheduled for more than six consecutive nights of night float. Clinical experience and education hours do not include reading and preparation time spent away from the duty site.

Clinical experience and education hours will be consistent with applicable regulations.

The program should not compromise its educational goals or the learning objectives of residents by excessive reliance on residents to fulfill institutional service obligations. Clinical experience and education hours are to reflect the fact that responsibilities for continuing patient care are not automatically discharged at specific times. Clinical experience and education hour assignments must recognize that faculty and residents collectively have responsibility for the safety and welfare of patients entrusted to their care.

Each program must establish a method approved by the Graduate Medical Education Committee that periodically monitors resident clinical experience and education hours to ensure compliance. Clinical experience and education hours must be monitored with a frequency sufficient to ensure an appropriate balance between education and service. If the results of the monitoring process reveal noncompliance with the clinical experience and education hour limits, the program must institute corrective measures. On a quarterly basis each program will report to the Graduate Medical Education Committee on the results of the monitoring of resident clinical experience and education hours.

## 10. SUBSTANCE ABUSE POLICY

All house staff candidates offered employment will be screened for the presence of non-prescribed substances/alcohol. Those candidates testing positive for same in the initial and confirmatory testing will not be employed at the medical center in the absence of a reasonable explanation acceptable to the medical center. Where a house staff member voluntarily reveals a current chemical dependency, rehabilitation may be offered.

Employed house staff reasonably suspected of substance abuse are required to submit to drug screening and those employed house staff who test positive for same on the initial and confirmatory tests and/or have in their possession illegal drugs or alcohol will be subject to disciplinary action up to and including immediate dismissal or be offered rehabilitation if the medical center believes it is warranted by the circumstances. Retention of the house staff member will depend on successful participation in a rehabilitation program to continue until completion of the residency program.

## 11. GRIEVANCE POLICY

The MEDICAL CENTER is committed to ensure an educational environment in which residents may raise and resolve issues without fear of intimidation or retaliation. To this end, the MEDICAL CENTER provides an organizational system to hear and address residents' concerns and grievances.

GRIEVANCE PROCEDURES
In order to provide a mechanism for communicating substantive issues and concerns between residents, the administration of graduate medical education programs, and the institution, without fear of retribution, the following procedures should be followed.

1. Program Directors have the primary responsibility for receiving, evaluating and addressing concerns and complaints about any aspect of their program. Residents should raise issues related to their working environment and educational programs through the programs' chief resident(s) and Program Director.
2. When residents wish to communicate concerns without disclosure of names and do not wish to speak to their Program Directors, they should make a confidential communication with the Designated Institutional Official who will try to resolve the issue or issues in an appropriately confidential manner.
3. For concerns that resist resolution via these mechanisms, residents should request a hearing through the Designated Institutional Official. If such concerns are not appropriate for resolution in the manner set forth in items 1 or 2 above, the Designated Institutional Official may appoint a grievance subcommittee of the Graduate Medical Education Committee (GMEC) composed of two members of the Medical Staff (one of whom shall be designated by the chairperson of the GMEC to be chairperson of the subcommittee), and one member of administration. This grievance subcommittee will make recommendations for review and final decision by the GMEC.

## 12. PERSONNEL EVALUATIONS, RELATIONS AND DISCIPLINARY ACTION
## AT THE MEDICAL CENTER

1. The Program Director or his/her designee shall periodically consult with APPOINTEE about progress in the educational program and his/her discharge of clinical responsibilities. As the position of house staff physician involves a combination of supervised, progressively more complex and independent patient evaluation and management functions and formal educational activities, the competence of the house staff physician is evaluated on a regular basis. The program maintains a confidential record of the evaluation.

2. If the Program Director or designee is of the opinion that APPOINTEE's discharge of clinical responsibilities, conduct, or progress in the educational program is unsatisfactory, the Program Director or his/her designee shall meet with APPOINTEE and discuss the problems, including the ways in which improvement can be achieved. The fact of such meeting shall be reflected in APPOINTEE's file. If after this consultation the performance or conduct of APPOINTEE continues to be deemed unsatisfactory, the Program Director or his/her designee shall give written notice to APPOINTEE of the deficiencies, shall describe the improvement required, and specify a time within which improvement must be made. Continued or additional deficiencies in performance or conduct after consultation and written notice may result in one or more of the disciplinary actions described in paragraph three (3) below. Prior consultation and/or written notice are not necessary where a tentative determination is made that APPOINTEE's discharge of clinical responsibilities or conduct is so unsatisfactory that to allow him/her to continue his/her assignment would expose patients to unnecessary medical risks and/or the Medical Center to unnecessary liability or other detriment; in which case the Program Director or his/her designee has the right to take one or more of the disciplinary actions described in paragraph three (3) below.

3. APPOINTEE may be temporarily relieved from his/her clinical responsibilities and/or reassigned to other duties, reprimanded, suspended with or without stipend, or terminated by the Program Director or his/her designee for unsatisfactory performance and/or conduct in discharging clinical responsibilities, or unsatisfactory progress in the education program, or conduct unbecoming, or for excessive tardiness or absenteeism. Reassignments for reasons not related to the grounds for disciplinary action noted above shall not be considered disciplinary actions for the purpose of this paragraph and are not subject to the appeals procedure. A disciplinary action shall be in writing, setting forth the areas deemed unsatisfactory and the reasons why disciplinary action is being taken. This written notice of disciplinary action will be issued following the investigation, and should be issued within fifteen working days of the Program Director or his/her designee learning of the incident or the continued or additional deficiencies in performance or conduct after consultation and written notice which is the subject of the disciplinary action, and it must be delivered to the APPOINTEE within five working days after being written in accordance with paragraph five (5) below. A copy of the notice of disciplinary action must also be sent to the Designated Institutional Official and the Chief Executive Officer of the MEDICAL CENTER. Disciplinary action will be final as of the day of receipt of the notice by the APPOINTEE, which will be deemed to be received if evidenced by a signed receipt if personal delivery, or the certified mail return receipt, unless it is appealed pursuant to paragraph four (4) below. The issue of stipend will be determined by the Chief Operating Officer or his/her designee.

4. The APPOINTEE subject to a Disciplinary Action described above may petition the Chief Executive Officer of the MEDICAL CENTER for an appeal hearing before a Disciplinary Hearing Committee within ten working days of receiving written notice of the action. The Chief Executive Officer shall appoint a three member Disciplinary Hearing Committee which shall consist of two members of the medical staff chosen from the Graduate Medical Education Committee (one of whom shall be designated by the Chief Executive Officer to be the Chairperson of the Disciplinary Hearing Committee), and one member of the Administration of the MEDICAL CENTER. None of the members of the Committee shall be from the APPOINTEE's department. The hearing shall be conducted within fifteen working days after APPOINTEE's appeal. The parties to the hearing may call witnesses, present documentary evidence, and participate in the proceedings which will be recorded. After the hearing(s) have been concluded, the Disciplinary Hearing Committee shall deliberate and within fifteen working days shall make a final determination regarding the disposition of the disciplinary action. Any such determination shall be final and binding on all parties involved. In the case of a suspension without stipend or a termination, no compensation, whether stipend or other benefit, will be withheld from APPOINTEE until a final determination has been made by the Disciplinary Hearing Committee. If the Disciplinary Hearing Committee upholds the suspension or termination, any money paid to APPOINTEE from the date of the suspension or termination shall be repaid to the MEDICAL CENTER by the APPOINTEE. A final determination to terminate the appointment of the APPOINTEE shall also terminate any reappointment of the APPOINTEE to any subsequent year of training which may have occurred by the terms of this Agreement or otherwise.

5. All written notices required to be sent to APPOINTEE pursuant to this agreement shall be by certified mail or personal delivery by the Department Chairperson or his/her designee. The fact and date of receipt shall be noted in APPOINTEE's file. APPOINTEE shall also serve written notices sent pursuant to this agreement to the Chairperson or designee in this same manner.

6. No specialty or sub-specialty certifying board or national, state or local medical organization shall be notified of a Disciplinary Action until a final determination has been made by the Disciplinary Hearing Committee.

## 13. REAPPOINTMENT

This AGREEMENT is binding to both parties only for the dates of service of APPOINTEE indicated herein. For purposes of this AGREEMMENT, the term "Preliminary Appointee" means APPOINTEES who have been accepted into the MEEDICAL CENTER's training program for one-year (and in some circumstances for longer than one year) as a PGY-1 APPOINTEE (and in some circumstances a PGY-2 APPOINTEE) to receive prerequisite training for advanced programs. Such Preliminary Appointees may have: (i) already been accepted into another specialty, but they are completing prerequisites for that specialty, or (ii) not been accepted into any specialty or other training program. Except for, and excluding, Preliminary Appointees (except to the extent explicitly stated):

If APPOINTEE is not to be reappointed or promoted to another year of training after the expiration date of this AGREEMENT for reasons not involving termination for disciplinary reasons, he/she must be given written notice by certified mail or personal delivery no later than three (3) months prior to the expiration date of this AGREEMENT. However, if the primary reason(s) for the non-renewal or non-promotion occur(s) within the three (3) months prior to the end of the contract, the MEDICAL CENTER will provide APPOINTEE with as much written notice of the intent not to renew or not to promote as the circumstances will reasonably allow, prior to the end of the AGREEMENT.

For APPOINTEEs and Preliminary Appointees, no prior notice is required in the case of non-reappointment or non-promotion due to termination for disciplinary reasons.

5

## 14. INSTITUTION CLOSURE OR RESIDENCY REDUCTION/CLOSURE

In case the MEDICAL CENTER intends to reduce the size of or close a residency program, or close the institution, the Graduate Medical Education Committee (GMEC), the Designated Institutional Official and the APPOINTEEs will be notified as soon as possible. The APPOINTEEs will be allowed to finish the remainder of the duration of this AGREEMENT and depending on the circumstances the MEDICAL CENTER will allow the APPOINTEEs to either complete the educational program or will assist the APPOINTEEs in enrolling in an ACGME accredited program in which the APPOINTEE can continue his/her education.

## 15. RESTRICTIVE COVENANTS

Neither the MEDICAL CENTER nor its programs may require residents to sign a non-competition guarantee or restrictive covenant.

## 16. INTERPRETATION OF AGREEMENT

Questions regarding the application or interpretation of the terms and conditions of this AGREEMENT shall be submitted in writing to the Designated Institutional Official for review. A final and binding written response will be rendered by the MEDICAL CENTER within thirty (30) days from the date the request was received by the Designated Institutional Official.

## 17. TERMINATION OF THE AGREEMENT

Upon termination of the AGREEMENT by any of the mechanisms outlined above, the only obligation of the MEDICAL CENTER shall to be to pay the APPOINTEE's stipend earnings which may have accrued hereunder up to the date of such termination or suspension. The final clearance procedure as outlined in the House Staff Manual must be adhered to prior to termination of employment.

## 18. APPLICABLE LAW

This AGREEMENT shall be construed in accordance with the laws of the State of Florida.

This AGREEMENT contains the entire understanding between the parties and no alteration or modification hereof shall be effected except by a subsequent written instrument executed by both parties hereto.

IN WITNESS WHEREOF, the parties have hereunto set their hands as of the date above written.

_____
APPOINTEE

4/11/2020
DATE

For Mount Sinai Medical Center of Florida, Inc.:

_____
Program Director

_____
Department Chairperson

_____
Administrative Officer