# Tab 41

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | | |
|---|---|---|
| PAIGE FINKELSTEIN, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23-CV-20188-RKA |
| | ) | |
| v. | ) | |
| | ) | |
| MOUNT SINAI MEDICAL CENTER OF | ) | |
| FLORIDA, INC., a Florida Not For Profit | ) | |
| Corporation, and KFIR BEN-DAVID, M.D., | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANTS' MOTION TO STRIKE, OR IN THE ALTERNATIVE TO DISMISS, PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION AND PERTINENT ALLEGATIONS ............................................................. 2

ARGUMENT ........................................................................................................................... 4

    I.     LEGAL STANDARD ................................................................................................. 4

    II.   THE BREACH OF CONTRACT CLAIMS (COUNTS I AND II) FAIL ON
         MULTIPLE GROUNDS ........................................................................................... 4

    III.  PLAINTIFF'S CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL
         DISTRESS (COUNTS III AND IV) FAIL AS A MATTER OF LAW ......................... 8

    IV.  PLAINTIFF'S TORTIOUS INTERFERENCE CLAIMS (COUNTS V AND VI) FAIL
         AS A MATTER OF LAW ...................................................................................... 10

    V.   PLAINTIFF'S CLAIMS OF DEFAMATION (COUNTS VII AND VIII) FAIL AS A
         MATTER OF LAW ................................................................................................ 11

    VI.  PLAINTIFF'S CLAIM PURSUANT TO RICO (COUNT IX) FAILS ....................... 12

    VII. PLAINTIFF'S CLAIMS PURSUANT TO TITLE VII, THE FCRA, AND THE
         ADA (COUNTS X-XVI) ARE TIME-BARRED AND INDEPENDENTLY FAIL .... 13

    VIII. PLAINTIFF FAILS TO STATE A CLAIM OF VICARIOUS LIABILITY (COUNT
         XVII) AGAINST MSMC ...................................................................................... 16

    IX.  PLAINTIFF'S NEGLIGENT SUPERVISION AND RETENTION CLAIMS
         (COUNTS XVIII AND XIX) FAIL ........................................................................ 16

    X.   PLAINTIFF FAILS TO STATE A CLAIM FOR INJUNCTIVE RELIEF
         (COUNTS XX-XXII) ........................................................................................... 18

CONCLUSION ...................................................................................................................... 23

## **TABLE OF AUTHORITES**

**Cases**

*Albright v. Teva Pharms. USA, Inc.*,
  290 F. Supp. 3d 1321 (S.D. Fla. 2017) ................................................................. 4

*Alexander v. Prendergrast*,
  No. 5:18-cv-519-Oc-30PRL, 2019 WL 10817143 (M.D. Fla. Jan. 24, 2019) ......... 14

*Allison v. Parise*,
  No. 8:12-CV-1313-T-17EAJ, 2013 WL 877111 (M.D. Fla. Mar. 8, 2013) ............. 11

*Am. Acad. of Dermatology v. Dep't of Health & Human Services*,
  118 F.3d 1495 (11th Cir. 1997) ............................................................................. 7

*Artiga v. Garcia*,
  No. 05-61036-CIV, 2006 WL 8451593 (S.D. Fla. Jan. 10, 2006) ......................... 19

*Baker v. Joseph*,
  938 F. Supp. 2d 1265 (S.D. Fla. 2013) .................................................................. 18

*Bass v. Morgan, Lewis & Bockius*,
  516 So. 2d 1011 (Fla. 3d DCA 1987) .................................................................... 16

*Bickel v. City of Coral Springs*,
  No. 17-cv-60606-BLOOM/Valle, 2017 WL 2439078 (S.D. Fla. June 6, 2017) ...... 16

*Boehm v. Am. Bankers Ins. Group, Inc.*,
  557 So. 2d 91 (Fla. 3d DCA 1990) ........................................................................ 11

*Brooks v. Blue Cross & Blue Shield*,
  116 F.3d 1364 (11th Cir.1997) .............................................................................. 4

*Broward Cty. v. Meiklejohn*,
  936 So. 2d 742 (Fla. 4th DCA 2006) ..................................................................... 22

*Brown v. Stroud*,
  No. CV 08-2348 VRW, 2011 WL 13312050 (N.D. Cal. Jan. 28, 2011) ................. 2

*Buckner v. Lower Florida Keys Hosp. Dist.*,
  403 So. 2d 1025 (Fla. 3d DCA 1981) .................................................................... 12

*Bulwer v. Mount Auburn Hosp.*,
  473 Mass. 672 46 N.E.3d 24 (2016) ...................................................................... 6

*Carver v. Casey*,
  669 F. Supp. 412 (S.D. Fla. 1987) ......................................................................... 5

*Castleberry v. Edward M. Chadbourne, Inc.*,
    810 So. 2d 1028 (Fla. 1st DCA 2002) .......................................................................... 18

*City of Miami v. Fraternal Order of Police Lodge No. 20 of City of Miami*,
    378 So. 2d 20 (Fla. 3d DCA 1979) ............................................................................... 7

*Clemente v. Horne*,
    707 So. 2d 865 (Fla. 3d DCA 1998) ............................................................................. 9

*Concerned Citizens for a Safe Comm. v. Office of Fed'l Detention Trustee*,
    No. CV. No. 09–01409 DAE, 2011 WL 2971000 (D. Nev. July 19, 2011) ................. 2

*Crawford's Auto Cent., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    269 F. Supp. 3d 1344 (M.D. Fla. 2017) ...................................................................... 13

*D'Angelo v. ConAgra Foods, Inc.*,
    422 F.3d 1220 (11th Cir. 2005) ................................................................................... 15

*Deauville Hotel Mgmt., LLC v. Ward*,
    219 So. 3d 949 (Fla. 3d DCA 2017) ............................................................................. 9

*Demby v. English*,
    667 So. 2d 350 (Fla. 1st DCA 1995) ........................................................................... 11

*Desai v. Lawnwood Med. Ctr., Inc.*,
    219 So. 3d 869 (Fla. 4th DCA 2017),
    *aff'd*, 260 So. 3d 218 (Fla. 2018) ................................................................................. 7

*Dinehart v. Town of Palm Beach*,
    728 So. 2d 360 (Fla. 4th DCA 1999) ............................................................................ 8

*Edwards v. Prime, Inc.*,
    602 F.3d 1276 (11th Cir. 2010) ................................................................................... 15

*Ethan Allen, Inc. v. Georgetown Manor, Inc*,
    647 So. 2d 812  (Fla. 1994) ......................................................................................... 10

*Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc.*,
    No. 16-CV-5079 (JGK), 2016 U.S. Dist. LEXIS 107358,
    2016 WL 4367990 (S.D.N.Y. Aug. 12, 2016); ........................................................... 21

*Fed. Deposit Ins. Corp. v. VRG Appraisels, Inc.*,
    No. 8:12-CV-1814-T-35TGW, 2013 WL 12156110 (M.D. Fla. Aug. 13, 2013) ........ 7

*Fernandez v. Bal Harbour Vill.*,
    49 F. Supp. 3d 1144 (S.D. Fla. 2014) ................................................................... 17, 20

*FHR TB, LLC v. TB Isle Resort, LP.*,
    865 F. Supp. 2d 1172 (S.D. Fla. 2011) ................................................................... 19

*Florida Carry, Inc. v. Thrasher*,
    315 So. 3d 771 (Fla. 1st DCA 2021),
    *reh'g denied* (May 4, 2021) ................................................................................. 8

*Freese v. Wuesthoff Health Sys., Inc.*,
    No. 6:06-cv-175-Orl-31JGG, 2006 WL 1382111 (M.D. Fla. May 19, 2006) ........................ 16

*Gerritsen v. Warner Bros. Entertainment Inc.*,
    116 F. Supp. 3d 1104 (C.D. Cal. 2015) ................................................................... 2

*Gibson v. Nocco*,
    No. 8:20-cv-2992-KKM-SPF, 2021 WL 4033893 (M.D. Fla. Sept. 3, 2021) ......................... 13

*Grossman v. Nationsbank, N.A.*,
    225 F.3d 1228 (11th Cir. 2000) ............................................................................ 4

*Gutman v. Quest Diagnostics Clinical Labs., Inc.*,
    707 F. Supp. 2d 1327 (S.D. Fla. 2010) ................................................................... 16

*Hamze v. Steele*,
    No. 09-60882-CIV, 2011 WL 13122736 (S.D. Fla. Aug. 4, 2011) ................................... 20

*Harris v. Cellco P'ship*,
    No. 21-81129-CV-MIDDLEBROOKS/Matthewman,
    2021 WL 8155331 (S.D. Fla. Dec. 29, 2021) ........................................................... 17

*Harris v. Sch. Bd. of Broward Cnty.*,
    No. 11-62604-CIV, 2012 WL 882610 (S.D. Fla. Mar. 15, 2012) ..................................... 15

*Ingram v. Butter*,
    No. 14-21392-CV-Williams, 2015 WL 9911314 (S.D. Fla. Dec. 23, 2015) ......................... 9

*Int'l Sales & Serv., Inc. v. Austral Insulated Products, Inc.*,
    262 F.3d 1152 (11th Cir. 2001) ........................................................................... 10

*Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*,
    No. 3:14-cv-3577-CMC, 2016 WL 3079466 (D.S.C. June 1, 2016),
    *aff'd sub nom. Irani v. Palmetto Health*, 767 F. App'x 399 (4th Cir. 2019) .................... 6

*Jackman v. 20th Judicial Circuit Court Admin.*,
    No. 2:19-cv-828-FtM-38MRM, 2020 WL 3895425 (M.D. Fla. July 10, 2020) ...................... 18

*Jarzynka v. St. Thomas Univ. of Law*,
    310 F. Supp. 2d 1256 (S.D. Fla. 2004) ................................................................... 11

*K.G. ex rel. Garrido v. Dudek,*
    839 F. Supp. 2d 1254 (S.D. Fla. 2011) .................................................................. 20

*Keller v. Lawnwood Med. Ctr., Inc.,*
    219 So. 3d 879 (Fla. 4th DCA 2017) ....................................................................... 7

*Klay v. United Healthgroup, Inc.*
    376 F.3d 1092 (11th Cir. 2004) ............................................................................... 19

*Knapik v. Mary Hitchcock Mem'l Hosp.,*
    No. 5:12-cv-175, 2014 WL 12717446 (D. Vt. May 30, 2014) ................................. 7

*LeGrande v. Emmanuel,*
    889 So. 2d 991 (Fla. 3d DCA 2004) .......................................................................... 9

*Liberty Mut. Ins. Co. v. Steadman,*
    968 So. 2d 592 (Fla. 2d DCA 2007) .......................................................................... 9

*Marino v. Phaidon Int'l, Inc.,*
    No. 22-14027-CV-Cannon/McCabe, 2022 WL 1913266 (S.D. Fla. May 17, 2022),
    *report and recommendation adopted,* 2022 WL 1908977 (S.D. Fla. June 3, 2022) ............... 11

*McElrath v. Burley,*
    707 So. 2d 836 (Fla. 1st DCA 1998) ....................................................................... 17

*McMaster v. United States,*
    177 F.3d 936 (11th Cir. 1999) ................................................................................... 8

*Mendoza v. Borden, Inc.,*
    195 F.3d 1238 (11th Cir. 1999) ................................................................................. 15

*Moon v. Med. Tech. Assocs., Inc.,*
    577 F. App'x 934 (11th Cir. 2014) ........................................................................... 19

*Muck Miami, LLC v. United States,*
    No.14-24870-CIV,
    2015 WL 12533140 (S.D. Fla. Feb. 13, 2015), *report and recommendation adopted,* No. 14-
    24870-CIV, 2015 WL 12533141 (S.D. Fla. Mar. 9, 2015). ..................................... 20

*Ne. Florida Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.,*
    896 F.2d 1283 (11th Cir. 1990) ................................................................................. 20

*Nemazee v. Mt. Sinai Med. Ctr.,*
    564 N.E.2d 477 (Ohio 1990) ..................................................................................... 7

*Nodar v. Galbreath,*
    462 So. 2d 803 (Fla. 1984) ................................................................................. 11, 12

*Noventa Ocho LLC v. PBD Properties LLC,*
    284 F. App'x 726, 728 (11th Cir. 2008)................................................................. 7

*Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.,*
    416 F. Supp. 3d 1369 (S.D. Fla. 2019)................................................................. 19

*Pierre v. Catalina Hotel, LLC,*
    No. 1:16-cv-25300-JAL, 2017 WL 7805574 (S.D. Fla. Feb. 10, 2017) ................. 1

*Pineda v. PRC, LLC,*
    No. 1:11-CV-20894-JKL, 2011 WL 3022564 (S.D. Fla. July 22, 2011)................. 5

*Pippin et al. v. Playboy Entm't Group, Inc. et al.,*
    No. 8:02-cv-2329-T-30EAJ, 2003 U.S. Dist. LEXIS 25415 (M.D. Fla. 2003) ....... 20

*Polymer Techs., Inc. v. Bridwell,*
    103 F.3d 970 (Fed. Cir. 1996)............................................................................. 21

*Raney v. Allstate Ins. Co.,*
    370 F.3d 1086 (11th Cir. 2004).................................................................... 12, 13

*Ray v. Spirit Airlines, Inc.,*
    836 F.3d 1340 (11th Cir. 2016).................................................................... 12, 13

*Rimkus Consulting Grp., Inc. v. Cammarata,*
    255 F.R.D. 417 (S.D. Tex. 2008) ........................................................................ 21

*Santandreu v. Miami-Dade Cnty.,*
    No. 10-24616-CIV-ALTONAGA/Simonton, 2011 WL 13136161 (S.D. Fla. Aug. 1, 2011),
    *aff'd,* 513 F. App'x 902 (11th Cir. 2013) ........................................................... 17

*Santilli v. Van Erp,*
    No. 8:17-CV-1797-T-33MAP, 2018 WL 2152095 (M.D. Fla. May 10, 2018) ....... 18

*Sarkis v. Pafford Oil Co., Inc.,*
    697 So. 2d 524 (Fla. 1st DCA 1997).................................................................... 10

*Scheidler v. Nat'l Org. for Women,*
    537 U.S. 393 (2003) ........................................................................................... 13

*Seminole Tribe of Fla. v. Times Publ'g Co., Inc.,*
    780 So. 2d 310 (Fla. 4th DCA 2001) ................................................................... 10

*Short v. Immokalee Water & Sewer Dist.,*
    165 F. Supp. 3d 1129 (M.D. Fla. 2016) ................................................................ 9

*Siegel v. LePore,*
    234 F.3d 1163 (11th Cir. 2000)........................................................................... 19

*Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*,
  641 F. App'x 849 (11th Cir. 2016) ..................................................................... 7

*Solis–Ramirez v. United States Dept. of Justice*,
  758 F.2d 1426 (11th Cir.1985) ........................................................................... 4

*Storves v. Island Water Ass'n, Inc.*,
  No. 210CV274FTM36SPC, 2010 WL 11622686 (M.D. Fla. Nov. 3, 2010) .......................... 22

*Supinger v. Virginia*,
  167 F. Supp. 3d 795 (W.D. Va. 2016) ................................................................ 11

*Thomas v. Hosp. Bd. of Dirs. of Lee Cnty.*,
  41 So. 3d 246 (Fla. 2d DCA 2010) ...................................................................... 9

*Torres v. Garmin Int'l, Inc.*,
  No. 16-CV-81397, 2017 WL 5634950 (S.D. Fla. Sept. 22, 2017) ............................. 2

*Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*,
  912 F. Supp. 1549 (S.D. Fla. 1996) ................................................................... 9

*Wireless Agents, LLC v. T-Mobile USA, Inc.*,
  Civ. No. 3:05-cv-0094, 2006 U.S. Dist. LEXIS 36590,
  2006 WL 1540687 (N.D. Tex. June 6, 2006) ..................................................... 21

*Wreal, LLC v. Amazon.com, Inc.*,
  840 F.3d 1244 (11th Cir. 2016) ....................................................................... 20

**Statutes**

18 U.S.C. § 1951(b)(2) ....................................................................................... 13

42 U.S.C. § 12102(2) ......................................................................................... 15

42 U.S.C. § 1981 ............................................................................................... 18

42 U.S.C. § 2000e *et seq*. ................................................................................... 5

42 U.S.C. § 2000e-5 .......................................................................................... 14

Fla. Stat. § 760.11 ............................................................................................ 14

Florida Civil Rights Act of 1992 ......................................................................... 13

Title VII of the Civil Rights Act of 1964 .......................................................... 5, 13

**Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 1

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 4

Fed. R. Civ. P. 12(f)................................................................................................1, 2

Fed. R. Civ. P. 15(a)(1)..............................................................................................1

Fed. R. Civ. P. 15(a)(2)..............................................................................................1

Pursuant to Rule 12(f), Federal Rules of Civil Procedure, Defendants Mount Sinai Medical Center of Florida, Inc. ("MSMC" or the "Hospital") and Kfir Ben-David, M.D. ("Dr. Ben-David") (together "Defendants") hereby move to strike Plaintiff Paige Finkelstein, M.D.'s ("Plaintiff") Verified Second Amended Complaint (the "SAC"), as it was filed without leave of Court pursuant to Rule 15(a)(2) and in violation of this Court's Order dated February 7, 2023. In the alternative, Defendants move pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, to dismiss the SAC. Because Defendants' motion pursuant to Rule 12(f) presents threshold issues related to the propriety of the SAC in the first instance, Defendants address it first.

## THE COURT SHOULD STRIKE THE SAC IN VIOLATION OF RULE 15(A)(2) AND THIS COURT'S FEBRUARY 7, 2023 ORDER

Defendants move to strike Plaintiff's massive new Second Amended Complaint (the "SAC"). Rule 15(a)(1) permits Plaintiff to amend her complaint only once as a matter of right. Plaintiff served her First Amended Complaint on December 30, 2022, and she cannot now amend her complaint a second time without "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).[1]

On February 7, 2023, the Court struck Plaintiff's First Amended Complaint under Rule 12(f) and, at Defendants' request, instructed her to amend it in one, narrow respect: "*to remove the extraneous material discussed on the record*." ECF No. 28 (Paperless Order) (emphasis added). Hoping to make lemonade out of lemons, Plaintiff presumes to take the Court's order as license to (1) add more than *one hundred* new paragraphs to the complaint; (2) add eight new exhibits; and (3) reimagine most of her claims, including by recasting her legally deficient "extortion" claim as a new (and equally deficient) civil RICO claim. *See generally* ECF No. 38.

None of that is permissible under the Court's February 7 Order or Rule 15. Plaintiff never sought leave to file all this new material on the ground that "justice so requires" (Rule 15(a)(2)); rather, the Court's February 7 Order was prompted by *Defendants'* motion to strike. Nor did the Court grant leave for Plaintiff to take a third pass at stating a claim for relief, particularly after

---

[1] The First Amended Complaint, despite being filed originally in state court, was removed to this Court and therefore counts as Plaintiff's sole amendment as of right. *See, e.g.*, *Pierre v. Catalina Hotel, LLC*, No. 1:16-cv-25300-JAL, 2017 WL 7805574, at *1 (S.D. Fla. Feb. 10, 2017) (after plaintiff filed an amended complaint in state court that was subsequently removed to federal court, plaintiff "was required to seek Defendant's consent or leave of the Court to file her Second Amended Complaint").

having the benefit of reviewing Defendants' motion to dismiss the First Amended Complaint filed on February 1, 2023. *See* ECF No. 17. Again, the Court's Order directed Plaintiff to *remove scurrilous* material, not file *additional* allegations and claims.[2]

"[D]istrict courts often strike new claims, parties or factual allegations of an amended complaint that are beyond the permissible scope of a court's prior order granting leave to amend." *Brown v. Stroud*, No. CV 08-2348 VRW, 2011 WL 13312050, at *3 (N.D. Cal. Jan. 28, 2011). All of the new material in Plaintiff's SAC falls outside the scope of this Court's February 7 order and should therefore be struck pursuant to Rule 12(f). *See, e.g.*, *Torres v. Garmin Int'l, Inc.*, No. 16-CV-81397, 2017 WL 5634950, at *1 (S.D. Fla. Sept. 22, 2017) (granting motion to strike where "[r]ather than comply with the Court's order, Plaintiff filed an unauthorized amended complaint …."); *Gerritsen v. Warner Bros. Entertainment Inc.*, 116 F. Supp. 3d 1104, 1125 (C.D. Cal. 2015) (striking "new claims that exceed the scope of leave to amend granted by the court" pursuant to Rule 12(f)) (internal quotation marks omitted); *Concerned Citizens for a Safe Comm. v. Office of Fed'l Detention Trustee*, No. CV. No. 09–01409 DAE, 2011 WL 2971000, at *2 (D. Nev. July 19, 2011) (granting motion to strike where "[p]laintiffs improperly, and without leave of court, added new substantive claims, allegations, and defendants in their Second Amended Complaint").

The Court therefore should strike Plaintiff's SAC and direct her to file a new amended complaint consistent with the Court's original instructions. However, if the Court does not strike the SAC, the SAC should nevertheless be dismissed for the reasons set forth below.

## <u>INTRODUCTION AND PERTINENT ALLEGATIONS IN THE SAC</u>

Plaintiff was a former third-year surgical resident at MSMC who was terminated due to longstanding issues with her professionalism and communication skills—namely, her persistent demeaning attitude towards other residents and patients, as well as patient safety concerns. Despite Defendants providing her every opportunity to succeed as a surgical resident, Plaintiff failed to improve her conduct following two academic probations and other efforts at remediation, and now, almost two years later, seeks to blame everyone at MSMC for her well-documented failures as a surgical resident.

---

[2] This is not the first time Plaintiff has helped herself to relief without leave of court. *See* ECF No. 28 (disallowing Plaintiff's reply brief because it was both untimely and excessively long, in violation of the Local Rules).

Plaintiff's lawsuit purports to depict a workplace culture in which she was, for inexplicable reasons, harassed and set up to fail. Yet, while Plaintiff presents a backwards version of reality, even if these allegations are taken as true, the proffered claims must fail for the independently dispositive reasons set forth in the argument below.

According to the SAC, Plaintiff began her surgical residency with MSMC in June 2018. SAC ¶ 13. On March 11, 2020, Plaintiff entered into a written agreement with MSMC for her third year of residency, which would run from June 2020 until June 2021 (hereinafter the "GME Agreement"). *See Id*. ¶ 56, & Ex. B. Dr. Ben-David, MSMC's Chairman of Surgery and General Surgery Program Director, signed the GME Agreement on behalf of MSMC, but is not a party to that agreement. *Id.* at Ex. B.

In January 2021, Defendants purportedly "forced" Plaintiff's resignation from the residency program. SAC ¶ 31. She alleges that all disciplinary actions taken against her during her residency, leading to her resignation, were designed to "harass" and "retaliate" against her, for reasons that are not explained. *Id*. ¶¶ 12, 30-31. She also alleges that during her employment at MSMC, she was subject to discrimination on the basis of gender and a purported disability (ADHD). Plaintiff contends that she voiced concerns about alleged disparate gender treatment in the program at unspecified times to unspecified individuals. *Id*. ¶¶ 17, 20, 21, 23, 26. Plaintiff alleges that she timely exhausted her administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and timely pursued her statutory claims in Court. *Id.*

Plaintiff alleges that following her resignation, Defendants attempted to "extort" and "blackmail" her by withholding her "Completion Documents" (which show her completion of two years in the program) unless Plaintiff signed a release and nondisclosure agreement. *Id*. ¶¶ 33-34. Plaintiff claims that the Hospital has since provided her with the Completion Documents but only in response to this litigation and her complaint to the Accreditation Council for Graduate Medical Education ("ACGME", discussed further *infra*). *Id.* ¶ 36.

Plaintiff contends that in July 2021, she received an offer for a house surgeon position at Mount Sinai Beth Israel in New York City ("MSBI"). *Id*. ¶ 42. She alleges her application for clinical privileges at MSBI was denied because Dr. Ben-David did "not provide a reference, or would only provide defamatory comments about her." *Id.* ¶¶ 41-42. She alleges that Defendants' actions have "effectively ended [her] career as a physician." *Id.* ¶ 50. Plaintiff alleges nineteen substantive (and often overlapping) claims and three claims for injunctive relief.

## ARGUMENT

### I.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Albright v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 1321, 1325–26 (S.D. Fla. 2017). To survive such a motion, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

It is well-settled that when considering a motion to dismiss, a court may consider not only the pleadings, but also the exhibits attached thereto. *See Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000). A court may consider documents referred to in the complaint, and doing so will not convert the motion to one for summary judgment. *See Brooks v. Blue Cross & Blue Shield,* 116 F.3d 1364, 1369 (11th Cir.1997) (*citing Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993) (citations omitted)); *Solis–Ramirez v. United States Dept. of Justice,* 758 F.2d 1426, 1430 (11th Cir.1985).

### II.    THE BREACH OF CONTRACT CLAIMS (COUNTS I AND II) FAIL ON MULTIPLE GROUNDS

In her SAC, Plaintiff advances breach of contract claims against Dr. Ben-David individually (Count I) and MSMC (Count II). The counts are virtually identical and the grounds for dismissal asserted below apply to both.

*The Claim is Preempted*. Plaintiff alleges that Defendants breached a contractual obligation to "provide a harassment free work environment for [Plaintiff] to perform her duties as [a] Resident Physician, pursuant to Paragraph 6 of the [GME Agreement]." SAC. ¶ 74. That claim is preempted by federal law. Section 6 of the GME Agreement states, in pertinent part:

> Mount Sinai Medical Center is committed to Equal Employment Opportunity (EEO). Discrimination on the basis of a person's race, religion, national origin, age, disability, veteran status, marital status, sex, or sexual orientation, or any other basis protected by federal, state or local law, including verbal or physical harassment on the basis of any of the above characteristics, is prohibited and will not be tolerated. Such prohibited harassment consists of unwelcome sexual advances or comments; ethnic jokes; ethnic, racial, religious or age-related slurs; and similar conduct.

*Id.*, Ex. B, § 6.

In other words, Plaintiff is seeking to enforce the Hospital's EEO policy. But the law is very clear that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (and its state law equivalent) provides the exclusive remedy for unlawful discrimination or harassment in the workplace. *See Carver v. Casey*, 669 F. Supp. 412, 417 (S.D. Fla. 1987). Further and relatedly, an EEO policy contained within a contract does not give rise to an independent contractual obligation. *See Pineda v. PRC, LLC*, No. 1:11-CV-20894-JKL, 2011 WL 3022564, at *4 (S.D. Fla. July 22, 2011).

As explained further below, Plaintiff's discrimination, retaliation and harassment claims are time-barred. Thus, having forfeited her remedy under Title VII, Plaintiff cannot now attempt to disguise the same allegations as a breach of contract: "The fact that plaintiff is precluded from asserting his Title VII claims … does not permit the court to substitute breach of contract claims for that exclusive remedy." *Casey*, 669 F. Supp. at 417 (internal citations omitted).[3]

*No Private Right of Action*. Plaintiff's reference and reliance upon the Accreditation Council for Graduate Medical Education ("ACGME") guidelines fares no better. Plaintiff alleges that Defendants' alleged failure to provide a hostile-free work environment was "in violation of the obligations imposed upon the Defendants by the [ACGME] and all Residency Programs." SAC ¶ 65. Regardless, there is no private right of action for an individual resident to enforce ACGME guidelines and therefore it presents no justiciable controversy.

One court explained how issues arising under ACGME standards simply do not present a justiciable controversy between private parties:

> [S]tandards that ACGME has established for all of its accredited institutions ... are akin to regulations established by an administrative body, *rather than a contract governing a relationship between two entities*. If [the sponsoring institution] fails to substantially comply with ACGME's requirements, ACGME can revoke its accreditation; that would not be a "breach" of any "contract" by [the sponsoring institution], but rather a decision by ACGME, as a regulatory institution, that [the residency program] is no longer entitled to accreditation.

---

[3] Plaintiff also alleges that Defendants breached "([Section] 7) Accommodation for Disabilities; [and] ([Section] 9) Clinical Experience and Education Hours Policy" of the GME Agreement. SAC ¶ 73. Beyond conclusory reference to these contractual provisions, nowhere does the SAC allege or explain what actions and/or omissions by Defendants constituted breaches of these provisions. Absent Plaintiff's identification of any specific purported breach, the claims must fail.

*See Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*, No. 3:14-cv-3577-CMC, 2016 WL 3079466, at *49 (D.S.C. June 1, 2016), *aff'd sub nom. Irani v. Palmetto Health*, 767 F. App'x. 399 (4th Cir. 2019) (emphasis added).

Remarkably and with no citation to authority, Plaintiff claims that MSMC's act of providing her with the "Completion Documents" (Plaintiff's terminology, not Defendants') during the pendency of this litigation "is further evidence that the Surgical Residency Program, Defendants, and the GME Agreement provisions are subject to ACGME oversight and must abide by ACGME Guidelines." SAC ¶ 79. But there is no authority that an extracontractual accommodation Defendants provided to Plaintiff would somehow rewrite her GME Agreement notwithstanding its clear terms that do not incorporate such guidelines. *Cf. Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690, 46 N.E.3d 24, 40 (2016) (incorporating ACGME's nondiscrimination policy by clear reference thereto).

*The Purported Restrictive Covenant Is Not a Breach*. Plaintiff also alleges that Defendants attempted "to force her into signing a Non-Disclosure Agreement and General Release … [which] constituted a breach" of the GME Agreement. SAC ¶ 76.[4] But by her own allegations, any purported "restrictive covenant" was presented to Plaintiff *after* her "termination" and "constructive discharge" from the program in January 2021. *Id.* ¶¶ 9, 33. Section 1 of the GME Agreement states (emphasis added): "This appointment will be for a one-year period commencing on June 24, 2020 and terminating on June 23, 2021 *unless terminated as hereinafter stated*." Section 12 of the GME Agreement enumerates actions which may lead to early termination of the GME Agreement. Crucially, Section 17 states: "Upon termination of the [GME Agreement] by any of the mechanisms outlined above, *the only obligation of* [MSMC] shall be to pay [Plaintiff's] stipend earnings which may have accrued hereunder up to the date of such termination or suspension." *See Id.*, Ex. B.

It is well-established that termination of an agreement releases the parties from their *substantive* obligations thereunder, while only structural provisions (such as provisions governing

---

[4] Plaintiff repeatedly trumpets the use of a "non-disclosure agreement" by citing to Exhibit H attached to the SAC (as well as prior versions of the complaint) as purported evidence of such a document. Yet, Exhibit H is nothing of the sort. The document exchanged between respective counsel for MSMC and Plaintiff is simply a release of claims that does not in any manner set forth terms of non-disclosure. This is but one example of the false and reckless nature of Plaintiff's allegations.

arbitration, forum selection, and choice of law) may survive. *Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*, 641 F. App'x 849, 857 (11th Cir. 2016). MSMC's alleged obligation to not require Plaintiff to enter a "restrictive covenant" during her residency is not a "structural" provision that survives termination and may later constitute a breach; instead, MSMC's only surviving obligation is to "pay [Plaintiff's] stipend earnings which may have accrued hereunder." SAC, Ex. B ¶ 17.

*Dr. Ben-David is Not a Contracting Party*. In addition, Dr. Ben-David was not a party or signatory to the GME Agreement in his personal capacity, and thus there is no basis to assert a breach of contract claim against him. *See, e.g.*, *Noventa Ocho LLC v. PBD Properties LLC*, 284 F. App'x 726, 728 (11th Cir. 2008). Plaintiff herself pleads this basic tenet of contract law: "Dr. Ben-David's signature to the GME Agreement *was endorsed and assumed by MSMC* when Dr. Finkelstein joined the Surgical Residency Program." SAC ¶ 58 (emphasis added). Absent alleged fraud or some other basis for piercing the corporate veil, Dr. Ben-David did not, as a matter of law, assume liabilities in his personal capacity by signing the GME Agreement *on behalf of MSMC*. *See Fed. Deposit Ins. Corp. v. VRG Appraisels, Inc.*, 8:12-CV-1814-T-35TGW, 2013 WL 12156110, at *2 (M.D. Fla. Aug. 13, 2013) ("Akins might have been subjected to personal liability for contractual breaches if Plaintiff had alleged that the corporate veil should be pierced or the corporate entity ignored.").

*No Exhaustion of Contractual Remedies*. Last, this Court is without jurisdiction to entertain any claim related to termination of the GME Agreement. Florida law requires physicians challenging purported adverse actions to exhaust their administrative remedies prior to seeking relief in court. *Desai v. Lawnwood Med. Ctr., Inc.*, 219 So. 3d 869, 871-72 (Fla. 4th DCA 2017), *aff'd*, 260 So. 3d 218, 219 (Fla. 2018); *Keller v. Lawnwood Med. Ctr., Inc.*, 219 So. 3d 879 (Fla. 4th DCA 2017); *City of Miami v. Fraternal Order of Police Lodge No. 20 of City of Miami*, 378 So. 2d 20, 23 (Fla. 3d DCA 1979). Courts in multiple jurisdictions with similar law have applied the exhaustion requirement to actions brought by medical residents. *See, e.g., Nemazee v. Mt. Sinai Med. Ctr.*, 564 N.E.2d 477, 482 (Ohio 1990); *Knapik v. Mary Hitchock Mem'l Hosp.*, No. 5:12-cv-175, 2014 WL 12717446, at *3 (D. Vt. May 30, 2014).[5]

---

[5] Plaintiff's failure to exhaust her administrative remedies presents a jurisdictional defect. *Am. Acad. of Dermatology v. Dep't of Health & Human Services*, 118 F.3d 1495, 1497 (11th Cir. 1997).

Here, Plaintiff had the right to appeal her termination through an administrative process. That right is detailed in the GME Agreement, Section 12(4), which states that residents subjected to disciplinary action, including termination, "may petition the Chief Executive Officer of [MSMC] for an appeal hearing before a Disciplinary Hearing Committee …." SAC, Ex. B. Under this process, the Disciplinary Hearing Committee may later reverse a termination decision. *Id.* Ex. B, § 12(4).

Plaintiff concedes in the SAC that these contractual remedies existed and were available to her (SAC ¶ 64), and in point of fact, Plaintiff had been informed of these remedies but never used them.[6] Plaintiff's allegation that she was "intimidated" against using these remedies is of no moment. *See Dinehart v. Town of Palm Beach*, 728 So. 2d 360, 362 (Fla. 4th DCA 1999) ("Appellants do not dispute that they did not exhaust their administrative remedies, instead attacking the adequacy and flaws of the remedy available under the town's ordinance. Their conclusions that they cannot get a fair hearing and that the ordinance does not comply with the act are without merit."). At bottom, the SAC fails to point to any exception to exhaustion – such as exigent circumstances – that would justify Plaintiff coming to Court prior to availing herself of her contractual remedies (indeed, Plaintiff waited more than 18 months following her termination to file suit, *see* SAC ¶¶ 31-32). *See also Florida Carry, Inc. v. Thrasher*, 315 So. 3d 771, 772 (Fla. 1st DCA 2021), *reh'g denied* (May 4, 2021). Plaintiff's failure to exhaust her administrative remedies renders this claim (and lawsuit) subject to dismissal.

## III.    PLAINTIFF'S CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNTS III AND IV) FAIL AS A MATTER OF LAW

Plaintiff again asserts claims separately against Dr. Ben-David and MSMC, alleging identical "misconduct." Plaintiff specifically alleges she was the "victim of a relentless campaign

---

[6] Defendants attach the Declaration of Robert C. Goldszer, M.D., the Designated Institutional Official for MSMC's residency programs, who attests that no petition from Plaintiff was ever received by MSMC to appeal her termination. *See* Exhibit 1. Declarations and other materials outside the pleadings may be considered by courts to determine whether subject matter jurisdiction exists. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999) ("Factual attacks, ... challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." (internal quotation marks omitted)).

to discredit her," which was "shocking, atrocious, and utterly intolerable in civil society." SAC ¶¶ 86-87. Yet, Plaintiff alleges no independent tortious conduct on Defendants' part to support Count III and IV beyond those allegations purporting to support her discrimination, retaliation, harassment, and other claims—and certainly nothing sufficiently "outrageous" to make out a claim. Black letter law mandates the dismissal of these counts at the pleading stage.[7]

The exceedingly high pleading standard for this tort was explained in *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 956 (Fla. 3d DCA 2017). The Court found that while the conduct at issue may have been "wrong" and "tortious," it did not rise to the level of "outrageous," drawing a helpful comparison with a pair of Florida cases, *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007) and *Thomas v. Hosp. Bd. of Dirs. of Lee Cnty.*, 41 So. 3d 246 (Fla. 2d DCA 2010) , which involved "matters of life-and-death." *Id.* at 956.

Here, the alleged "campaign to discredit" Plaintiff is a far cry from the "matters of life-and-death" illustrated in the *Ward* case. *Id.* at 955. Accordingly, this Court must find, as a matter of law, that these actions, even assuming their truth, do not rise to the level of "outrageous" to sustain the tort. Further and equally important, beyond Plaintiff's allegations being insufficiently outrageous on their face, even colorable allegations of a hostile work environment almost *never* are sufficiently outrageous to sustain this tort. *Cf. Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1559 (S.D. Fla. 1996) (collecting cases from this Court illustrating the high bar to allege conduct to sustain the tort); *Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d 1129, 1152–53 (M.D. Fla. 2016); *Ingram v. Butter*, No. 14-21392-CV-Williams, 2015 WL 9911314, at \*5 (S.D. Fla. Dec. 23, 2015). Beyond her description of a few fleeting comments and use of other charged adjectives in her pleading (e.g., "lewd," "obscene," and "sexual"), the claim is conspicuously short on alleged conduct that rises to the level of "outrageous." *Cf. Vernon*, 912

---

[7] The tort of intentional infliction of emotional distress comprises four elements: "(1) [T]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Clemente v. Horne*, 707 So. 2d 865, 866 (Fla. 3d DCA 1998) (alterations in original). It is well-established that the question of "outrageousness" must be determined by the trial court, as a matter of law, and may warrant dismissal of the claim based on the pleadings. *LeGrande v. Emmanuel*, 889 So. 2d 991, 995 (Fla. 3d DCA 2004).

F. Supp. at 1559 (collecting cases from this Court illustrating actionable conduct such as "repeated groping and kissing, offensive touching and other physical abuse and attacks, as well as repeated verbal licentiousness").

## IV.   PLAINTIFF'S TORTIOUS INTERFERENCE CLAIMS (COUNTS V AND VI) FAIL AS A MATTER OF LAW[8]

Plaintiff alleges that she had "received an offer from [MSBI] in New York," and that she also had a separate application pending (but not yet approved) for "credentials" and "medical staff privileges" from MSBI. SAC ¶ 99. She alleges that Dr. Ben-David "either would not provide a reference or provided defamatory comments about her to [MSBI], resulting in [MSBI] rescinding its previous offer for that position." *Id.* The claims against MSMC and Dr. Ben-David fail for two reasons.

First, a claim of tortious interference requires "a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Sarkis v. Pafford Oil Co., Inc.*, 697 So. 2d 524, 526 (Fla. 1st DCA 1997) (emphasis added) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). Generally, a "mere offer" to enter a business relationship "does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship." *Ethan Allen, Inc.*, 647 So. 2d 812 at 814 (Fla. 1994) (citing *Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc.*, 361 So. 2d 769, 772 (Fla. 4th DCA 1978), *cert. denied*, 368 So. 2d 1370 (Fla. 1979)); *see also Int'l Sales & Serv., Inc. v. Austral Insulated Products, Inc.*, 262 F.3d 1152, 1156 (11th Cir. 2001) (applying *Ethan Allen*).

Here, Plaintiff's allegation of a *mere offer* for a moonlight position pending future approval of her credentialing application does not constitute an "actual and identifiable understanding" between Plaintiff and MSBI that would likely have been completed absent Defendants' alleged interference. By Plaintiff's own allegations, her offer was conditioned and contingent upon other

---

[8] In Florida, the elements of a claim for tortious interference are: "(1) the existence of a business relationship between the plaintiff and a third person, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant which induces or otherwise causes the third person not to perform; and (4) damage to the plaintiff resulting from the third person's failure to perform." *Seminole Tribe of Fla. v. Times Publ'g Co., Inc.*, 780 So. 2d 310, 315 (Fla. 4th DCA 2001).

occurrences. *See Marino v. Phaidon Int'l, Inc.*, No. 22-14027-CV-Cannon/McCabe, 2022 WL 1913266, at *5 (S.D. Fla. May 17, 2022), *report and recommendation adopted*, 2022 WL 1908977 (S.D. Fla. June 3, 2022) (dismissing tortious interference claim where third party "withdrew its job offer because Plaintiff never completed his degrees"); *Supinger v. Virginia*, 167 F. Supp. 3d 795, 822 (W.D. Va. 2016) (conditional offers of employment insufficient to state a claim of tortious interference which requires a "specific, existing contract or business expectancy or opportunity"). Stated simply, Plaintiff's prospective business relationship with MSBI was, at best, speculative and thus not actionable as a matter of law.

Second, communications between former and prospective employers regarding an applicant's performance are privileged. *See Boehm v. Am. Bankers Ins. Group, Inc.*, 557 So. 2d 91, 95 (Fla. 3d DCA 1990); *see also Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984). To overcome this privilege, a plaintiff must allege facts showing that the *sole* reason for the communications was malicious. *Boehm*, 557 So. 2d at 95. A trial court may determine both the existence of privilege and whether the defendant acted with malice at the motion to dismiss stage. *E.g.*, *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1267–68 (S.D. Fla. 2004). Here, Plaintiff only alleges Defendants' generalized animosity towards women in the workplace and the vague and conclusory allegation of "bad faith" and a desire to "discredit" Plaintiff. *See, e.g.*, SAC ¶ 16. Such conclusory assertions, unsupported by *any* facts from which one could infer that malice was the sole reason for the communication, are insufficient to plead this element of the claim. *See Allison v. Parise*, No. 8:12-CV-1313-T-17EAJ, 2013 WL 877111, at *2 (M.D. Fla. Mar. 8, 2013) ("A conclusory allegation unsupported by factual allegations that statements were made maliciously is not an allegation of express malice."); *see also Demby v. English*, 667 So. 2d 350, 354 (Fla. 1st DCA 1995).[9]

---

[9] Plaintiff cannot elaborate on these allegations to demonstrate "malice" for good reason: she *expressly authorized* MSBI to contact MSMC regarding her credentialing application, and also released MSMC and Dr. Ben-David from "any liability whatsoever in providing such information" requested by MSBI. While Defendants acknowledge this information exists outside the pleading, it is referenced here to provide further context for Plaintiff's failure to satisfy her pleading burden—namely, she cannot allege facts to support malice because she invited the alleged tortious communication. *See* Exhibit 2.

## V.  PLAINTIFF'S CLAIMS OF DEFAMATION (COUNTS VII AND VIII) FAIL AS A MATTER OF LAW

Plaintiff alleges that she was also "defamed" by both Dr. Ben-David (individually) and MSMC by making "misrepresentations pertaining to [Plaintiff's] lack of professionalism or abilities as a prospective resident or medical professional to residency programs or prospective employers." SAC ¶¶ 115, 121. Plaintiff attaches to the SAC several purportedly "positive" recommendations to show that anything uttered by Dr. Ben-David to the contrary must have been false and defamatory. *Id.*, Ex. I. But Plaintiff still does not identify *a single false statement of fact* provided by either Defendant to MSBI or to any other residency program or third party. This is fatal. Moreover, it is manifestly unfair to permit these claims to go forward because the allegations provide Defendants with no notice of the specific "defamatory" statements made. *See Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So. 2d 1025, 1028 (Fla. 3d DCA 1981).

And, as explained above, communications between Defendants and MSBI were privileged as a matter of law absent allegations that Defendants were motivated exclusively by malice, which Plaintiff cannot allege. *See Nodar*, 462 So. at 809; *supra* n. 11.

## VI.  PLAINTIFF'S CLAIM PURSUANT TO RICO (COUNT IX) FAILS

In her SAC, Plaintiff has re-tooled her ill-conceived common law "extortion" claim as a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim. Even in this new packaging, Plaintiff's allegations fail to state a claim as a matter of law. To make out a civil RICO claim, Plaintiff must allege that Defendants "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (quotation marks omitted). To meet the "enterprise" requirement, Plaintiff "must establish a distinction between the defendant 'person' and the 'enterprise' itself." *Id.* at 1355. And to demonstrate the requisite "racketeering activity," Plaintiff must allege "that the defendants committed two qualifying predicate acts," *i.e.*, "a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004).

Plaintiff's RICO claim fails for two independent reasons. First, "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation." *Ray*, 836 F.3d at 1357. Here, the only "enterprise" that Plaintiff alleges is the "common unit" of MSMC and Dr. Ben-David.  *See* SAC ¶

134. MSMC and Dr. Ben-David, as a defendant corporation and an employee "carrying on the normal work of the corporation," cannot constitute an enterprise for purposes of RICO. *See Ray*, 836 F.3d at 1356. To interpret RICO so broadly "would turn every claim of corporate fraud into a RICO violation." *Id.* Plaintiff's failure to demonstrate an enterprise is fatal to her claim.

Second, Plaintiff has not adequately alleged that Defendants committed extortion or any other qualifying predicate acts. To make out a claim for extortion sufficient to support a RICO claim, Plaintiff must show a violation of the federal Hobbs Act (18 U.S.C. § 1951(b)(2)). *See Raney*, 370 F.3d at 1087.[10] Extortion under the Hobbs Act requires "not only the deprivation but also the acquisition of property." *Scheidler v. Nat'l Org. for Women*, 537 U.S. 393, 404 (2003). Plaintiff nowhere alleges that Defendants attempted to acquire some property from her through the purported general release and nondisclosure agreement, so there is no extortionate act under federal law. *See id.* at 405 ("such acts did not constitute extortion because petitioners did not obtain respondents' property") (internal quotation marks omitted); *see also Crawford's Auto Cent., Inc. v. State Farm Mut. Auto. Ins. Co.*, 269 F. Supp. 3d 1344, 1355 (M.D. Fla. 2017) ("None of these alleged deprivations satisfy the requirements of the Hobbs Act, because the Defendants never obtained the thing(s) of which the Plaintiffs were allegedly deprived."). Without a sufficient predicate act, Plaintiff's RICO claim necessarily fails.

## VII. PLAINTIFF'S CLAIMS PURSUANT TO TITLE VII, THE FCRA, AND THE ADA (COUNTS X-XVI) ARE TIME-BARRED AND INDEPENDENTLY FAIL

Plaintiff alleges discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Florida Civil Rights Act of 1992 ("FCRA"), and the Americans with Disabilities Act ("ADA"), and a hostile work environment under Title VII. The claims fail for several independent reasons.

*Plaintiff's Claims Are Time-Barred*. Plaintiff points to two operative dates in her SAC when purported unlawful activity occurred: (i) her alleged "forced" resignation on January 13, 2021, and (ii) the date she received an "offer" from MSBI for a house surgeon position, in July

---

[10] Plaintiff does not identify any Florida extortion law that would qualify as a RICO violation. But to the extent Plaintiff relies on Florida's criminal extortion statute (Fla. Stat. § 836.05), her claim still fails because she has not sufficiently pled an "alleged threat or how the threat was malicious." *See Gibson v. Nocco*, No. 8:20-cv-2992-KKM-SPF, 2021 WL 4033893, at *6 (M.D. Fla. Sept. 3, 2021).

2021. SAC ¶¶ 31, 42. A plaintiff wishing to sue under Title VII, the FCRA, and/or ADA has 300 days from the last "unlawful employment practice" to file a charge with the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 2000e-5. Plaintiff filed a charge with the EEOC on July 22, 2022, thus placing both alleged events in the SAC outside the 300-day statute of limitations.[11] Plaintiff alleges no other events or activity within the 300-day limitations period.

By apparent sleight of hand or (at best) a misapprehension of the law, Plaintiff contends that her claims are timely because she commenced this lawsuit within the time prescribed by Fla. Stat. § 760.11. SAC ¶ 138. But the statute cited by Plaintiff governs the time for filing suit following resolution of a charge submitted to an administrative agency (such as the EEOC or state FCHR), not the time for filing a charge, which 42 U.S.C. § 2000e-5 governs. This latter deadline under 42 U.S.C. § 2000e-5 establishes the operative statute of limitation. While Plaintiff's lawsuit may have been timely commenced as measured from the date she submitted a charge to the EEOC, her charge was untimely filed with the EEOC in the first instance, thus precluding all of her Title VII, FCRA, and ADA claims.

*No Protected Activity Alleged*. Plaintiff's claims of retaliation (i.e., Counts XII, XIII, and XV) fail because she has not alleged she engaged in any protected activity beyond the most vague, unspecific, and conclusory allegations that she "voiced her concerns about the disparate treatment of female and male residents" (SAC ¶ 20), that she "reported" alleged unprofessional remarks made to female residents (*id.* ¶ 21) and "complain[ed] for how female residents were treated" (*id.* ¶ 26). For each complaint, Plaintiff does not specify to whom she complained, when she complained, and the substance of her complaints.[12] These allegations fall well short of "protected activity" under the statutes. *See Alexander v. Prendergrast*, No. 5:18-cv-519-Oc-30PRL, 2019 WL 10817143, at *9 (M.D. Fla. Jan. 24, 2019) ("[The] allegation is too conclusory and lacks any details about her complaint, to whom she complained, or when she complained. These are necessary facts

---

[11] The EEOC made the same determination on October 27, 2022, dismissing Plaintiff's July 22, 2022 charge as time-barred and issuing a Dismissal and Notice of Right to Sue. On January 17, 2023 (the same day that this action was removed to this Court), the EEOC decided to reopen its investigation on the merits, for reasons not explained in its Notice of Revocation. Both EEOC notices are attached together as Exhibit 3.

[12] To the extent Plaintiff attempts to provide more details about her purported "complaints" regarding sex discrimination, she relies upon Exhibit K to the SAC – an email chain that contains no reference whatsoever to any complaints or reports she made regarding discrimination.

needed to plead a protected activity and are relevant to determining whether the causation element of a retaliation claim is satisfied.").

*Inadequately Pled Claims under the ADA*. Plaintiff's ADA claims (Counts XIV and XV) are insufficiently pled. To sustain a cause of action under the ADA, a plaintiff must demonstrate, among other elements but at a minimum, that she was "disabled" and that she was "qualified" insofar she was able to perform the essential functions of her position with or without an accommodation. *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1226 (11th Cir. 2005). The ADA defines "disability" to include: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff's conclusory allegation that her ADHD constitutes a "disability" under the ADA does not make it so. SAC ¶ 18. Plaintiff has failed to specify how her purported ADHD substantially limited one or more major life activities beyond her commenting on the "nature of standardized tests such as the United States Medical Licensing Examination ("USMLE Step 1") and the ABSITE" (SAC ¶ 188), and further fails to specify how she was able to perform her essential functions as a surgical resident with or *without* the accommodation she identifies. The absence of these allegations is fatal to her ADA claims. *Harris v. Sch. Bd. of Broward Cnty.*, No. 11-62604-CIV, 2012 WL 882610, at *4 (S.D. Fla. Mar. 15, 2012).

*No Actionable Harassment*. Plaintiff does not allege facts demonstrating that her alleged harassment (Count XVI) was "severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010). To assess whether harassment objectively alters a plaintiff's terms and conditions of employment, courts consider: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). Teasing, offhand comments, and isolated incidents (unless extreme) will not amount to discriminatory changes in the terms and conditions of employment. *Id*. at 1245. Here, the conduct Plaintiff has alleged does not rise to the level of actionable harassment—allegations that female residents were referred to as "baby" and "sweetheart" and "acting hormonal." SAC ¶ 21; *see also* Part III *supra*.

15

## VIII.  PLAINTIFF FAILS TO STATE A CLAIM OF VICARIOUS LIABILITY (COUNT XVII) AGAINST MSMC

To recap, all of Plaintiff's claims (tort or otherwise) against Dr. Ben-David fail as a matter of law: (i) absent contractual privity with Plaintiff, Plaintiff has no breach of contract claim against him; (ii) Plaintiff fails to state a viable RICO claim against either Defendant; (iii) Plaintiff's allegations of isolated workplace harassment do not, as a matter of law, rise to the level of "outrageous conduct" to sustain the tort of intentional infliction of emotional distress; (iv) Dr. Ben-David's alleged "interference" with MSBI's purported "offer" to Plaintiff constituted nonactionable and privileged communication between former and prospective employers; and (v) Plaintiff alleges no false statement of fact made by Dr. Ben-David, to any third party, to anchor a claim of defamation.

Absent any viable underlying tort claim against Dr. Ben-David, there is no legal basis to impute tort liability to MSMC as Dr. Ben-David's employer. *See Bickel v. City of Coral Springs*, No. 17-cv-60606-BLOOM/Valle, 2017 WL 2439078, at *5 (S.D. Fla. June 6, 2017) (citing *Laster v. City of Tampa Police Dep't*, 575 Fed. Appx. 869, 873 (11th Cir. 2014)).

## IX.  PLAINTIFF'S NEGLIGENT SUPERVISION AND RETENTION CLAIMS (COUNTS XVIII AND XIX) FAIL

Florida law does not recognize claims for negligent supervision and negligent retention arising from an employee's purported sexual harassment, discrimination, or retaliation in the workplace. Under Florida law, "the underlying wrong allegedly committed by an employee in a negligent supervision or negligent retention claim must be based on an injury resulting from a tort which is recognized under common law." *See Freese v. Wuesthoff Health Sys., Inc.*, No. 6:06-cv-175-Orl-31JGG, 2006 WL 1382111, at *8 (M.D. Fla. May 19, 2006) (*quoting Scelta v. Delicatessen Support Servs., Inc.*, 57 F.Supp.2d 1327, 1348 (M.D. Fla. 1999)); *see also Gutman v. Quest Diagnostics Clinical Labs., Inc.*, 707 F. Supp. 2d 1327, 1332 (S.D. Fla. 2010) ("Thus, because the underlying injury in Count III and IV results from violation of the ADA, which is not a recognized common law tort, Plaintiff fails to state a claim for negligent supervision or training.").

Florida common law does not recognize causes of action for employment discrimination, retaliation, or sexual harassment in the workplace.[13] *See McElrath v. Burley*, 707 So. 2d 836, 839 (Fla. 1st DCA 1998) ("The claims of employment discrimination and retaliatory discharge raised by Ms. Burley did not exist at common law. Protection from employment discrimination and retaliatory discharge in Florida are statutory rights legislatively created in 1977.").

Plaintiff attempts to circumvent her forfeiture of Title VII, FCRA, and ADA remedies and resurrect these untimely claims by repackaging them as negligence-based torts. Plaintiff alleges MSMC acted "negligently" by placing and continuing to place employees under the supervision of its employee, Dr. Ben-David, who allegedly created a hostile work environment and discriminated against Plaintiff:

> Upon information and belief, several MCMC [sic] employees, including female physicians, nurses, and staff, have reported Dr. Ben-David to MSMC for inappropriate behavior *tantamount to discrimination and harassment*, only to later suffer retaliatory actions sanctioned by MSMC. Thus, MSMC negligently placed, and continued to place, employees, such as Plaintiff, under the supervision of a repeat offender when it either knew or should have known that Dr. Ben-David had the propensity *to create a hostile work environment due to continuous sexual harassment* of MSMC's female employees and other discriminatory practices.

SAC ¶¶ 226, 232 (emphasis added). It is well-established that these allegations are insufficient to state causes of action for negligent supervision or negligent retention as a matter of law. *See Harris v. Cellco P'ship*, No. 21-81129-CV-MIDDLEBROOKS/Matthewman, 2021 WL 8155331, at *3 (S.D. Fla. Dec. 29, 2021) (dismissing claims for negligent supervision and negligent retention based upon the failure to investigate and/or discharge harassers or act upon claims of employment discrimination because the underlying wrongful conduct – discrimination, harassment, and retaliation – did not consist of a common law tort); *Fernandez v. Bal Harbour Vill.*, 49 F. Supp. 3d 1144, 1153 (S.D. Fla. 2014) ("Florida does not recognize claims of retaliatory discharge and employment discrimination under common law. Thus, because the underlying injury with respect to Count Four involves claims that are not recognized common law torts, Plaintiff fails to state a claim for negligent retention.") (internal citation omitted); *Santandreu v. Miami-Dade Cnty.*, No.

---

[13] Plaintiff's attempt to tie her negligent supervision/retention claims to Defendants' alleged extortive conduct is also self-defeating, as the Florida common law recognizes no tort based on extortion. *See Bass v. Morgan, Lewis & Bockius*, 516 So. 2d 1011 (Fla. 3d DCA 1987) (("[W]e hold that no violation of the [criminal extortion] statute gives rise to a civil cause of action.").

10-24616-CIV-ALTONAGA/Simonton, 2011 WL 13136161, at *18 (S.D. Fla. Aug. 1, 2011), *aff'd*, 513 F. App'. 902 (11th Cir. 2013) (granting summary judgment on negligent retention and supervision claims because the plaintiff failed to allege the underlying wrongful conduct consisted of a common-law tort); *Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1030–31 (Fla. 1st DCA 2002) (affirming summary judgment on claims of negligent retention and negligent supervision based on the employer's "alleged actual or constructive knowledge of its employees' propensity to speak and act in a sexist, harassing, and retaliatory fashion").

Plaintiff's claims for negligent supervision and negligent retention arise from the same set of factual allegations giving rise to Plaintiff's Title VII and FCRA claims. Again, similar attempts to allege negligent supervision and negligent retention claims based on violations of Title VII and the FCRA have been rejected. *See Jackman v. 20th Judicial Circuit Court Admin.*, No. 2:19-cv-828-FtM-38MRM, 2020 WL 3895425, at *4 (M.D. Fla. July 10, 2020) ("Jackman maintains Wilsker failed to correct other supervisors and employees when they harassed and discriminated against him in violation of Title VII, 42 U.S.C. § 1981, and the FCRA. These statutes are not common law causes of action recognized by Florida law. Because Jackman does not allege an underlying injury based on a common law tort, his state negligence claims cannot move forward.") (internal citations omitted). At bottom, Plaintiff fails to allege an underlying common law tort necessary to support either cause of action.

## X. PLAINTIFF FAILS TO STATE A CLAIM FOR INJUNCTIVE RELIEF (COUNTS XX-XXII)

In her SAC, Plaintiff seeks an injunction (emphasis added):

*prohibiting* Dr. Ben-David from providing any information to Third Parties relating to the performance by Dr. Finkelstein as a General Surgery Resident at Mount Sinai and *requiring* another representative of MSMC to be agreed upon by Plaintiff and MSMC, to provide such information in a fair and objective way.

SAC ¶¶ 240, 260, 279.

This request cannot stand as a matter of law. First, *an order silencing Dr. Ben-David* would constitute an unconstitutional prior restraint on speech. *See Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013); *Santilli v. Van Erp*, No. 8:17-CV-1797-T-33MAP, 2018 WL 2152095, at *1 (M.D. Fla. May 10, 2018) ("Notably, in defamation cases, there is a strong presumption against injunctive relief. This is because a preliminary injunction against allegedly defamatory speech constitutes a prior restraint." (internal citations omitted)).

Second, because injunctive relief is a remedy, not a cause of action, the absence of any cognizable substantive claims in the SAC means that Plaintiff's claims for injunctive relief (Counts XX, XXI, and XXII) are defective as a threshold matter.[14] *See Klay v. United Healthgroup, Inc.* 376 F.3d 1092, 1097 (11th Cir. 2004); *Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1379 (S.D. Fla. 2019) ("The Eleventh Circuit has made clear that 'any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action....'").

Even though Plaintiff asks for an injunction that has both a mandatory and prohibitory component, Plaintiff cannot demonstrate that a clear right has been violated. Nowhere in her SAC does Plaintiff identify the source of the right she seeks to vindicate by injunctive relief; instead, she conclusorily announces that she will likely succeed on the merits of Counts I through XIX of the SAC. *See Organo Gold*, 416 F. Supp. 3d at 1379. Crucially, her request that this Court mandate someone other than Dr. Ben-David, "agreed upon by Plaintiff and MSMC, to provide such information in a fair and objective way," is also tied to no cause of action, legal right, or any feasible or practicable basis for this Court to even fashion the appropriate remedy. *See Artiga v. Garcia*, No. 05-61036-CIV, 2006 WL 8451593, at *1 (S.D. Fla. Jan. 10, 2006) (denying to enforce injunction over vague, unspecified, and speculative acts of multiple parties). In any event, Plaintiff's GME Agreement is silent as to MSMC's or Dr. Ben-David's provision of a reference following her re-application to another educational program or job, and thus there is no contractual right implicated. Because all of Plaintiff's substantive claims fail, so must any claim for injunctive relief.

Third, as the Court knows, injunctive relief is an extraordinary and drastic remedy. *Moon v. Med. Tech. Assocs., Inc.*, 577 F. App'x 934, 937 (11th Cir. 2014). Plaintiff must demonstrate: "(1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the

---

[14] At a status conference held on October 18, 2022, prior to removal to this Court, the presiding judge ruled, *ore tenus*, that he would not afford "emergency" treatment to Plaintiff's request for injunctive relief in this case. As such, Plaintiff's cause of action for "emergency" injunctive relief should be foreclosed and is due to be dismissed.

proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).[15]

*No Likelihood of Success on the Merits.* As discussed in Parts I-IX, *supra*, Plaintiff cannot demonstrate a likelihood of success on the merits of her claims because each claim fails, on its face, as a matter of law for a plethora of independent reasons**.**

*No Irreparable Harm.* Plaintiff fails to allege in her SAC what "harm" (much less whether the harm is irreparable) she will suffer absent issuance of an injunction, beyond her conclusory allegation of being "precluded" from finishing her surgical residency program at MSMC or starting a new residency. *E.g.*, SAC ¶¶ 285-286. But this simply points to a past harm and is not logically tied to the remedy she seeks—to enjoin Dr. Ben-David's future communication with third parties. *See Ne. Florida Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1286 (11th Cir. 1990); *Muck Miami, LLC v. United States*, No.14-24870-CIV, 2015 WL 12533140, at *4 (S.D. Fla. Feb. 13, 2015), *report and recommendation adopted,* No. 14-24870-CIV, 2015 WL 12533141 (S.D. Fla. Mar. 9, 2015). Nor does Dr. Ben-David's alleged *past* communications with MSBI serve as a basis to enjoin him going forward. The law is clear that injunctive relief is not available when based on "past incidents" which necessarily requires speculation regarding future harm. *Hamze v. Steele*, No. 09-60882-CIV, 2011 WL 13122736, at *2 (S.D. Fla. Aug. 4, 2011). And to the extent Plaintiff alleges that harm to her is "imminent," her recent affidavit supporting her refiled motion for temporary restraining order and preliminary injunction (ECF No. 40) belies this point. In her affidavit, Plaintiff contends that the application process for residency "matching" begins in June, and culminates with interviews in November – every year. ECF No. 40, ¶ 34. Thus, since her termination from the Program in January 2021, two such matching cycles have come and gone – yet Plaintiff now claims immediate and irreparable harm absent entry of an injunction.

---

[15] A mandatory injunction is subject to a heightened standard and "a particularly heavy burden of persuasion." *FHR TB, LLC v. TB Isle Resort, LP.*, 865 F. Supp. 2d 1172, 1192 (S.D. Fla. 2011). "A mandatory preliminary injunction should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party." *K.G. ex rel. Garrido v. Dudek*, 839 F. Supp. 2d 1254, 1261 (S.D. Fla. 2011). In addition to the above requirements for issuance of an injunction, one seeking a mandatory injunction must also show "a clear legal right has been violated." *Fernandez v. Bal Harbour Vill.*, 49 F. Supp. 3d 1144, 1151 (S.D. Fla. 2014).

Further to this point, Plaintiff delayed too long in seeking a temporary injunction. The law is well-established that a party who delays in seeking an injunction is precluded from obtaining relief as it vitiates a finding of irreparable harm. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *Pippin et al. v. Playboy Entm't Group, Inc. et al.*, No. 8:02-cv-2329-T-30EAJ, 2003 U.S. Dist. LEXIS 25415, *6 (M.D. Fla. 2003). (finding that delay reflects that a request for injunctive relief is more about gaining an advantage rather than protecting a party from irreparable harm).[16]

Here, Plaintiff alleges that her resignation from the residency program occurred in January 2021 (SAC ¶ 31), and that in July 2021, Dr. Ben-David failed to provide her a reference in connection with an "offer" she received from MSBI (*id.* ¶ 42). Thus, the last complained-of incident in the SAC allegedly occurred in July 2021, well over a year before Plaintiff first approached this Court to silence Dr. Ben-David and mandate MSMC select another "representative" to provide information about her residency. Plaintiff also fails point to any recent event that would justify this Court's equitable intervention.[17] Stated simply, Plaintiff's lengthy delay in seeking an injunction completely vitiates any claim of irreparable harm.

Lastly, Plaintiff contends that her failure to secure employment and a steady income will deprive her of the ability to benefit from the federal government's student loan forbearance program and 0% interest rate on repayment that began during the COVID-19 pandemic. SAC

---

[16] Other federal courts have held that a delay in seeking an injunction undermines the plaintiff's showing of irreparable harm. *See also Wireless Agents, LLC v. T-Mobile USA, Inc.*, Civ. No. 3:05-cv-0094, 2006 U.S. Dist. LEXIS 36590, 2006 WL 1540687, at *13 (N.D. Tex. June 6, 2006) (citing *High Tech Med. Instrumentation v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995)); *Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 438 (S.D. Tex. 2008) (denying injunctive relief after an alleged breach of a non-compete where movant unreasonably delayed to file suit, then requested multiple continuances to the injunction hearing); *Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc.*, No. 16-CV-5079 (JGK), 2016 U.S. Dist. LEXIS 107358, 2016 WL 4367990, at *3 (S.D.N.Y. Aug. 12, 2016); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996).

[17] Also tellingly, Plaintiff complained to the ACGME in June 2022 (SAC ¶ 35), but again, did not commence this lawsuit until late September 2022, over two months later, and did not amend her allegations and requests for injunctive relief until December 2022, three months after that. And most recently, Plaintiff pursued a charge with the EEOC on July 22, 2022, yet did not pursue her non-statutory allegations in court until several months later.

¶¶ 289-290. This is nonsense, and perfectly underscores harm that is the opposite of irreparable, but obviously quantifiable and compensable at law as damages.

*No Adequate Remedy at Law.* All relief sought by Plaintiff in her SAC is compensable at law. Loss of employment (such as Plaintiff's residency here), without more, is compensable through reinstatement, back pay, or damages. *Broward Cty. v. Meiklejohn*, 936 So. 2d 742, 745-46 (Fla. 4th DCA 2006); *see also Storves v. Island Water Ass'n, Inc.*, No. 210CV274FTM36SPC, 2010 WL 11622686, at *4 (M.D. Fla. Nov. 3, 2010).

*Harm to Defendants Outweighs Any Harm to Plaintiff.* The relief Plaintiff seeks would be outweighed by the harm it would do to MSMC and Dr. Ben-David, and to the institutional reputation and integrity of the Program. The injunction Plaintiff requests would force the Program to whitewash Plaintiff's history of remediations and other deficiencies with any inquiring residency program or other third party. On this point, and because Plaintiff has opened the door (*see* SAC ¶¶ 34-36), it bears mentioning that Plaintiff's complaint to the ACGME – wherein she raised all the same issues in this lawsuit – was recently and definitively closed without any action whatsoever against MSMC, *both* at the institutional level as well as with respect to the Program led by Dr. Ben-David. In closing the complaint, the ACGME specifically advised MSMC that no further action is required. Thus, the ACGME found that all actions taken against Plaintiff during her tenure in the Program were appropriate and did not run afoul of ACGME standards and guidelines. Yet, Plaintiff would have this Court upend the ACGME's decision by stripping Dr. Ben-David's essential responsibilities and altering MSMC's internal affairs.

*Not Against the Public Interest.* Plaintiff has not demonstrated that the public interest would be served by injunctive relief. In fact, Plaintiff does not address the public ramifications of her request, merely what she perceives as the negative impact on her: "Defendants' [sic] have effectively ended [Plaintiff's] career as a physician …." SAC ¶ 50. The reality is that the requested relief is decidedly against the public interest. Florida law recognizes that the public interest is served by rules ensuring that physicians are competent to practice, and that other physicians are best positioned to make competency determinations and recommendations regarding their peers' qualifications. *See, e.g.*, Fla. Stat. § 458.30 (recognizing that the practice of medicine is potentially dangerous to the public if conducted by unsafe and incompetent practitioners and that it is difficult for the public to make an informed choice when selecting a physician and that the consequences of a wrong decision could seriously harm the public health and safety).

One of Dr. Ben-David's most essential functions as Program Director is to graduate only competent surgical residents and to provide information to credentialing bodies or other institutions about the qualifications of the program's residents when they request it. Plaintiff now asks the Court to wrest this important function away from Dr. Ben-David and MSMC, issue a gag order, and permit Plaintiff to evade this important safeguard. Put simply, silencing Dr. Ben-David under these circumstances would put the community and patient population at risk.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, Defendants' Motion to Strike should be granted and the SAC stricken, or in the alternative, Defendants' Motion to Dismiss should be granted and the SAC dismissed in its entirety with prejudice.

Dated: March 3, 2023

Respectfully submitted,

**LASH GOLDBERG LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 347-4040
Fax: (305) 347-4050
*Counsel for Defendants*

By: */s/ Martin B. Goldberg*
    **MARTIN B. GOLDBERG**
    Florida Bar No. 0827029
    Email: mgoldberg@lashgoldberg.com
    **DAVID R. RUFFNER**
    Florida Bar No. 044874
    Email: druffner@lashgoldberg.com
    **CLARK S. SPLICHAL**
    Florida Bar No. 1010425
    Email: csplichal@lashgoldberg.com

**KRAMER LEVIN NAFTALIS**
**& FRANKEL LLP**
2000 K Street N.W., 4th Floor
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202)775-4510
Counsel for Defendant Kfir Ben-David, M.D.

By: */s/ Gary A. Orseck*
    **GARY A. ORSECK**
    Florida Bar No. 846015
    Primary Email: gorseck@kramerlevin.com
    **LAUREN CASSADY ANDREWS**
    Va. Bar No. 92149 (appearing *pro hac vice*)
    Primary Email: landrews@kramerlevin.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF on March 3, 2023, or in the manner specified on all counsel or parties of record on the Service List below.

By: */s/ Martin B. Goldberg*
**MARTIN B. GOLDBERG**

## SERVICE LIST

Richard H. Levenstein, Esq.
Gabrielle O. Sliwka, Esq.
**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
gsliwka@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com
*Attorneys for Plaintiff*