# Tab 43

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| PAIGE FINKELSTEIN, M.D., | ) |
| | ) |
| Plaintiff, | ) Case No. 1:23-CV-20188-RKA |
| | ) |
| v. | ) |
| | ) |
| MOUNT SINAI MEDICAL CENTER OF | ) |
| FLORIDA, INC., a Florida Not For Profit | ) |
| Corporation, and KFIR BEN-DAVID, M.D., | ) |
| | ) |
| Defendants. | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S EXPEDITED MOTION FOR ENTRY OF TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................ 4

    I.     Legal Standard .................................................................................................................. 4

    II.    Plaintiff Does Not Plead a Cognizable Right to Injunctive Relief ................................... 5

    III.   Plaintiff's Defamation and Tortious Interference Claims Provide No Right to Relief…………5

    IV.   The Relief Requested Is Unworkable and Falls Outside the Court's Equitable Powers .............. 6

    V.    No Irreparable Harm to Plaintiff Absent Issuance of an Injunction ............................................ 7

    VI.   Injunctive Relief Would Not Serve the Public Interest .................................................... 9

    VII.  The Harm to Defendants Outweighs Any Harm to Plaintiff .......................................... 11

    VIII. Plaintiff Has No Likelihood of Success on the Merits of Her Claims........................................ 11

CONCLUSION........................................................................................................................... 11

CERTIFICATE OF SERVICE .................................................................................................. 13

SERVICE LIST .......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*ABC Charters, Inc. v. Bronson*,
   08-21865-CIV, 2008 WL 11409039 (S.D. Fla. July 2, 2008) .................................................. 12

*Allawi v. State Univ. of N.Y. at Stony Brook*,
   No. 15830/2002, 2002 WL 31748836 (N.Y. Sup. Ct. Nov. 15, 2002) .................................... 10

*Artiga v. Garcia*,
   No. 05-61036-CIV, 2006 WL 8451593 (S.D. Fla. Jan. 10, 2006) ............................................ 7

*Baker v. Joseph*,
   938 F. Supp. 2d 1265 (S.D. Fla. 2013) ..................................................................................... 6

*Curvey v. Avante Grp., Inc.*,
   327 So. 3d 401 (Fla. 5th DCA 2021) ........................................................................................ 6

*Demby v. English*,
   667 So. 2d 350 (Fla. 1st DCA 1995) ........................................................................................ 6

*Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc.*,
   No. 16-CV-5079 (JGK), 2016 U.S. Dist. LEXIS 107358,
   2016 WL 4367990 (S.D.N.Y. Aug. 12, 2016) .......................................................................... 9

*Fernandez v. Bal Harbour Vill.*,
   49 F. Supp. 3d 1144 (S.D. Fla. 2014) ....................................................................................... 5

*FHR TB, LLC v. TB Isle Resort, LP.*,
   865 F. Supp. 2d 1172 (S.D. Fla. 2011) ..................................................................................... 4

*Hammer v. Bank of Am.*,
   8:13-CV-1910-T-33AEP, 2013 WL 3866532 (M.D. Fla. July 25, 2013) ................................. 4

*Hamze v. Steele*,
   No. 09-60882-CIV, 2011 WL 13122736 (S.D. Fla. Aug. 4, 2011) ........................................... 8

*K.G. ex rel. Garrido v. Dudek*,
   839 F. Supp. 2d 1254 (S.D. Fla. 2011) ..................................................................................... 5

*Klay v. United Healthgroup, Inc.*
   376 F.3d 1092 (11th Cir. 2004) ......................................................................................... 5, 12

*Minotti S.P.A. v. Belletti*,
   15-23365-CIV, 2016 WL 7508244 (S.D. Fla. June 30, 2016) .................................................. 7

*Moon v. Med. Tech. Assocs., Inc.*,
   577 F. App'x 934 (11th Cir. 2014) ............................................................................................ 4

*Muck Miami, LLC v. United States*,
   No.14-24870-2CIV, 2015 WL 12533140 (S.D. Fla. Feb. 13, 2015),
   *report and recommendation adopted,* No. 14-24870-CIV,
   2015 WL 12533141 (S.D. Fla. Mar. 9, 2015) ........................................................................... 8

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
   896 F.2d 1283 (11th Cir. 1990) ............................................................................................ 7, 8

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976) .................................................................................................... 6

*Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*,
    416 F. Supp. 3d 1369 (S.D. Fla. 2019) .......................................................................... 5

*Perel v. Brannan*,
    267 Va. 691, 594 S.E.2d 899 (2004) ............................................................................. 7

*Pinkston v. Univ. of S. Fla. Bd. of Trustees*,
    No. 8:15-CV-1724-T-33-TBM, 2016 WL 11469181 (M.D. Fla. May 18, 2016) ........ 4

*Pippin et al. v. Playboy Entm't Group, Inc.*,
    No. 8:02-cv-2329-T-30EAJ, 2003 U.S. Dist. LEXIS 25415 (M.D. Fla. 2003) ........... 8

*Polymer Techs., Inc. v. Bridwell*,
    103 F.3d 970 (Fed. Cir. 1996) ...................................................................................... 9

*Rimkus Consulting Grp., Inc. v. Cammarata*,
    255 F.R.D. 417 (S.D. Tex. 2008) ................................................................................. 9

*Santilli v. Van Erp*,
    8:17-CV-1797-T-33MAP, 2018 WL 2152095 (M.D. Fla. May 10, 2018) .................. 6

*Santilli v. Van Erp*,
    8:17-CV-1797-T-33MAP, 2018 WL 2172554 (M.D. Fla. Apr. 20, 2018),
    *report and recommendation adopted,* 8:17-CV-1797-T-33MAP,
    2018 WL 2152095 (M.D. Fla. May 10, 2018) ............................................................. 6

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2000) .................................................................................... 4

*Spatz v. Regents of the Univ. of California*,
    21-CV-09605-LB, 2023 WL 114230 (N.D. Cal. Jan. 4, 2023) .................................. 10

*United States v. Paramount Pictures*,
    334 U.S. 131 (1948) ..................................................................................................... 7

*Wireless Agents, LLC v. T-Mobile USA, Inc.*,
    Civ. No. 3:05-cv-0094, 2006 U.S. Dist. LEXIS 36590, 2006 WL 1540687 (N.D. Tex. June 6, 2006) ........................................................................................................................... 9

*Wreal, LLC v. Amazon.com, Inc.*,
    840 F.3d 1244 (11th Cir. 2016) .................................................................................... 8

**Rules**

S.D. Fla. L. R. 12(b)(6) ................................................................................................. 2, 12

S.D. Fla. L. R. 7.1(d)(2) ..................................................................................................... 1

**Treatises**

Restatement (2d) of Torts § 943 (1979) .............................................................................. 7

**Statutes**

Fla. Stat. § 458.30 ............................................................................................................... 10

Case No. 1:23-CV-20188-RKA

Defendants Mount Sinai Medical Center of Florida, Inc. ("MSMC" or the "Hospital") and Kfir Ben-David, M.D. ("Dr. Ben-David") (together "Defendants"), by and through their undersigned counsel, hereby submit this response in opposition to Plaintiff Paige Finkelstein, M.D.'s ("Plaintiff" or "Dr. Finkelstein") "Expedited"[1] Motion for Entry of a Temporary Restraining Order and Preliminary Injunction dated February 24, 2023 (the "Motion") (ECF No. 39).

## PRELIMINARY STATEMENT

Plaintiff, a former surgical resident, was terminated from MSMC's surgical residency program (the "Program") based on her persistent unprofessionalism and mistreatment of patients and peers. Seeking to blame everyone at MSMC but herself for her well-documented failures, she sues MSMC and the Program Director, Dr. Ben-David, in his personal capacity.

Now, nearly two years after her termination from the Program, Plaintiff asks this Court to step into the internal affairs of MSMC and the Program and enter an injunction:

> *Compelling* MSMC and Dr. Ben-David to consent that Dr. Finkelstein can designate a new faculty member of the Surgical Residency Program of her choice to serve as reference provider, which MSMC and Dr. Ben-David shall not unreasonably withhold consent or object without just cause; [and]
>
> *Restraining* and enjoining Defendants from continuing to employ Defendants' intimidation tactics and defamatory campaigns against Dr. Finkelstein[.]

Mot. at 19 (emphasis added). In other words, Plaintiff seeks an order that prospectively silences MSMC and Dr. Ben-David and restrains their speech, thereby impairing the Program's essential role of providing information about surgical residents to other residency programs, employers, and medical credentialing bodies. The point of this long-standing reference protocol and process, of course, is to avoid the appearance or suggestion that residents are obtaining references from those whom they self-choose. Yet, that is exactly what Plaintiff wants the Court to impose here by also seeking an order compelling Defendants to accept her unilateral selection of a "reference provider" to inquiring third parties. No other resident at the Hospital, now or ever, has had the authority to "designate" who within the Program may serve as a reference.

---

[1] Plaintiff denominates her Motion as seeking "expedited" review. However, Plaintiff failed to comply with Local Rule 7.1(d)(2), as her Motion does not set forth "in detail the date by which an expedited ruling is needed and the reason the ruling is needed by the stated date." As explained below, there is no urgent need for the use of judicial resources.

1

Case 1:23-cv-20188-RKA Document 62-4 Entered on FLSD Docket 10/30/2023 Page 7 of 18
Case 1:23-cv-20188-RKA Document 102-47 Entered on FLSD Docket 06/30/2023 Page 7 of 16

Case No. 1:23-CV-20188-RKA

Plaintiff's request for injunctive relief fails for seven independent reasons: (i) Plaintiff fails to plead a connection between her requests for injunctive relief and any viable cause of action or legal theory; (ii) to the extent Plaintiff's requests are tied to her defamation or tortious interference claims, they are barred as unconstitutional prior restraints on speech; (iii) there is no practicable or feasible means of enforcement and/or ensuring compliance with the injunction requested; (iv) Plaintiff cannot demonstrate irreparable harm where the purported "harm" is inherently too speculative and vitiated by Plaintiff's own delay in seeking relief; (v) public policy disfavors issuance of an injunction in this case because it would trench upon the judgment and wisdom of trained medical professionals in an educational setting who are best suited to evaluate a resident's qualifications; (vi) an injunction would jeopardize the institutional integrity of the Program and undermine the Accreditation Council for Graduate Medical Education ("ACGME"), which recently rejected the same allegations made by Plaintiff against MSMC; and (vii) Plaintiff has no likelihood of success on the merits of her claims, as each claim in her Second Amended Complaint ("SAC") is insufficient to withstand dismissal under Rule 12(b)(6). The Motion should be denied.

Although not pertinent to the Court's resolution of this Motion for the legally dispositive reasons discussed below, Defendants briefly address the misleading and incomplete portrayal of facts alleged in the Motion and in Plaintiff's Affidavit in support thereof (ECF No. 40) by setting forth background facts Defendants are prepared to present to the Court later in this proceeding, if at all necessary.

## **BACKGROUND**

Plaintiff joined the Program in 2018 as a first-year resident or "intern." Plaintiff was recognized in her first year as highly intelligent and enthusiastic about operating and learning. However, she was lacking in communication skills, struggling with professionalism, and having difficulty with time management. Plaintiff completed her intern year and was promoted to her second year of residency with reservations regarding her professionalism and aptitude. Her evaluations during this and subsequent periods are collected together as Exhibit E to Plaintiff's Affidavit (*see* ECF No. 40-7) and speak for themselves.

As a second-year resident, Plaintiff's conduct continued to be unprofessional. Specifically, she showed poor compassion toward patients, was disrespectful to residents and faculty, and struggled to work effectively as a member of a health care team. The Program's Clinical

2

Competency Committee ("CCC") conducted a mid-year review of Plaintiff in December 2019, noting serious concerns about Plaintiff's progress. *See* ECF No. 24-25, Ex. B.[2]

Notwithstanding these issues, Dr. Ben-David continued to work with Plaintiff and address her deficiencies so she could succeed in the Program. To this end, she was placed on a six-week academic probation, from December 26, 2019 through February 15, 2020. A copy of Plaintiff's first remediation plan is attached as Exhibit M to Plaintiff's Affidavit (ECF No. 40-15).

Plaintiff's behavior and interactions improved while she was on probation. Faculty and Dr. Ben-David recognized Plaintiff's efforts to improve and, despite continued reservations, were determined to promote Plaintiff to her third year based on the hope that she would maintain her focus and effort. But these efforts at remediation were ultimately unsuccessful. At the end of June 2020, a "code blue" was called within MSMC's psychiatric unit. Investigation of the incident revealed that Plaintiff had engaged in inappropriate behavior during the code, including yelling at allied health professionals and staff and calling staff "incompetent." In June and July 2020, Dr. Ben-David also received multiple complaints from other residents about Plaintiff. *See* ECF No 24-25, Ex. D.

Due to these complaints and the code blue incident, in July 2020, Plaintiff was placed on a second probation, from July 6, 2020 through August 14, 2020, with a new action/remediation plan, attached as Exhibit N to Plaintiff's Affidavit (ECF No. 40-16). During and subsequent to her second probation, Plaintiff continued to perform below expectations across multiple competencies.

Due to her continued failures, on October 26, 2020, Plaintiff received notice of the non-renewal of her residency contract for the 2021-2022 Program year. Nevertheless, despite MSMC's and the Program's misgivings about Plaintiff, she would be permitted to finish her third year.

Following her non-renewal, Plaintiff's behavior continued to be a serious concern. Several additional incidents arose that directly implicated patient safety, further demonstrating Plaintiff's poor clinical judgment. *See* ECF No. 24-25, Ex. F. Despite MSMC's and the Program's desire for Plaintiff to complete her third year, considering these incidents, Plaintiff was terminated from the Program. Plaintiff ultimately resigned, effective January 11, 2021.

---

[2] Defendants refer to the exhibits attached to their response in opposition to Plaintiff's motion for temporary injunction originally filed in state court, which are now part of the federal court record. *See generally* ECF No. 24 ("Notice of Filing Copies of All Records and Proceedings Before the State Court").

3

In the fall of 2021, MSMC received a single request for verification of Plaintiff's progress in her residency at MSMC from Mount Sinai Beth Israel in New York City ("MSBI"). Dr. Ben-David provided truthful information in response to the request, including the fact that Plaintiff had not completed the full surgical residency program at MSMC. Since that time, MSMC has received no other verification requests from any educational institution or credentialing body regarding Plaintiff.

## ARGUMENT

I.  Legal Standard

Preliminary injunctive relief is an extraordinary and drastic remedy. *Moon v. Med. Tech. Assocs., Inc.*, 577 F. App'x 934, 937 (11th Cir. 2014) ("In this Circuit, a preliminary injunction is an extraordinary and drastic remedy."). To establish the right to a preliminary injunction, the moving party must demonstrate *all* of the following elements: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).[3]

An injunction that would *change or alter* the status quo is known as a mandatory injunction. *See Pinkston v. Univ. of S. Fla. Bd. of Trustees*, No. 8:15-CV-1724-T-33-TBM, 2016 WL 11469181, at *2 (M.D. Fla. May 18, 2016). A mandatory injunction is subject to a heightened standard and "a particularly heavy burden of persuasion." *FHR TB, LLC v. TB Isle Resort, LP.*, 865 F. Supp. 2d 1172, 1192 (S.D. Fla. 2011). "A mandatory preliminary injunction should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party." *K.G. ex rel. Garrido v. Dudek*, 839 F. Supp. 2d 1254, 1261 (S.D. Fla. 2011). In addition to the above requirements for issuance of an injunction, one seeking a mandatory injunction must also show "a clear legal right has been violated." *Fernandez v. Bal Harbour Vill.*, 49 F. Supp. 3d 1144, 1151 (S.D. Fla. 2014).

---

[3] These are the same elements that a plaintiff must satisfy for issuance of a temporary restraining order ("TRO"). However, a TRO is unwarranted here as Defendants' counsel has appeared in the case (negating the need for any *ex parte* relief), and Plaintiff has also failed to satisfy the requirements under Rule 65(b)(1)(A). *See, e.g.*, *Hammer v. Bank of Am.*, 8:13-CV-1910-T-33AEP, 2013 WL 3866532, at *4 (M.D. Fla. July 25, 2013) ("The Court is also justified in denying the Motion [for TRO] because it fails to comply with the Local Rules and the Federal Rules.").

II.     Plaintiff Does Not Plead a Cognizable Right to Injunctive Relief

There is no such thing as a free-standing cause of action for injunctive relief. Rather, the law is clear that the extraordinary remedy of an injunction must be tied to a substantive right to relief. *See Klay v. United Healthgroup, Inc.* 376 F.3d 1092, 1097 (11th Cir. 2004); *Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1379 (S.D. Fla. 2019) ("The Eleventh Circuit has made clear that 'any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action....'").

But Plaintiff does not plead any cause of action that might provide the basis for the injunction she seeks. Indeed, nowhere in her Motion or in her Second Amended Complaint ("SAC") does Plaintiff even *identify* the source of the right(s) she seeks to vindicate by way of mandatory or prohibitory injunctive relief. Plaintiff simply appends her requests for injunctive relief to this lawsuit without pleading or arguing that such requests are tied to any of the numerous substantive claims set forth in the SAC. In fact, the SAC merely states, in conclusory fashion, that Plaintiff is likely to succeed on *all* of her substantive claims, but never actually explains how any of her claims is the basis for injunctive relief. SAC ¶ 242. Similarly, each claim of injunctive relief in the SAC "incorporates, reiterates, and restates all of the Allegations Common to All Counts" without further elaboration. *Id.* ¶¶ 236, 256, 278. Plaintiff's Motion is likewise silent as to any connection between claim(s) and injunction, merely asserting in circular fashion that Plaintiff is "entitled to Injunctive Relief because, based on the records [sic], she is likely to prevail on the merits of this case." Mot. ¶ 10.

Plaintiff's failure to plead (or even point to) any substantive basis for the requested injunctive relief is fatal to her Motion.

III.    Plaintiff's Defamation and Tortious Interference Claims Provide No Right to Relief

To the extent Plaintiff responds that her defamation claims (Counts VII and VIII of the SAC) provide the necessary hook for an injunction, that is foreclosed by black letter law. "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Consistent with this principle, courts may not enjoin defamation or threatened defamation as it would constitute an unconstitutional prior restraint on speech. *See Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013) (collecting cases and observing the "rule … that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages"); *Santilli v. Van*

*Erp*, 8:17-CV-1797-T-33MAP, 2018 WL 2152095, at *1 (M.D. Fla. May 10, 2018) ("Notably, in defamation cases, there is a strong presumption against injunctive relief."). This is so regardless of the alleged falsity of the speech sought to be enjoined. *See Curvey v. Avante Group, Inc.*, 327 So. 3d 401, 403 (Fla. 5th DCA 2021); *Demby v. English*, 667 So. 2d 350, 355 (Fla. 1st DCA 1995) ("It is a well-established rule that equity will not enjoin either an actual or a threatened defamation." (internal quotations omitted)).

For the same reason, Plaintiff's tortious interference claims (Counts V and VI) fail to provide any right to injunctive relief where the claim is based on purported "defamatory" statements. Here, Plaintiff alleges that Defendants "provided defamatory comments about her" (SAC ¶ 99) and engaged in a "defamatory campaign" against her (Mot. ¶¶ 40, 43). An injunction should not issue to enjoin "interference" where, as here, the gravamen of the claim involves speech. As one court explained:

> It is clear from Plaintiffs' second amended complaint that they only nominally sue for tortious interference with a business relationship; *defamation is the crux of their case*. Most of their complaint alludes to Van Erp's allegedly "false," "malicious," and "disparaging" statements about Santilli on his blog.

*Santilli v. Van Erp*, 8:17-CV-1797-T-33MAP, 2018 WL 2172554, at *4 (M.D. Fla. Apr. 20, 2018), *report and recommendation adopted,* 8:17-CV-1797-T-33MAP, 2018 WL 2152095 (M.D. Fla. May 10, 2018) (emphasis added). Thus, even if Plaintiff tries to tie her request for injunctive relief to her claims for defamation or tortious interference, that argument fails as a matter of law.

IV. <u>The Relief Requested Is Unworkable and Falls Outside the Court's Equitable Powers</u>

In addition to enjoining speech, Plaintiff seeks to compel Defendants to "consent that [Plaintiff] can designate a new faculty member of the Surgical Residency Program of her choice to serve as reference provider" and not to "unreasonably withhold consent or object without just cause." Mot. at 19.

This request for injunctive relief is laden with unintelligible standards for Defendants' compliance (e.g., "unreasonable" and "just cause") that evade practical enforcement by a Court. How would the Court evaluate whether Defendants – on pain of contempt, no less – "unreasonably" withheld their consent? How would the Court determine if Defendants objected to Plaintiff's selection with "just cause"? How would the Court ensure the cooperation of the "reference provider" unilaterally selected by Plaintiff? Even if Plaintiff were so entitled, the Court cannot feasibly fashion such an injunctive remedy without substantial remaining questions,

6

necessitating future litigation before, and management by, the Court. *E.g.*, *Minotti S.P.A. v. Belletti*, 15-23365-CIV, 2016 WL 7508244, at *3 (S.D. Fla. June 30, 2016) (discussing the prohibition on injunctions that invite the "question of what behaviors would constitute a violation of the injunction"); *Artiga v. Garcia*, No. 05-61036-CIV, 2006 WL 8451593, at *1 (S.D. Fla. Jan. 10, 2006) (denying to enforce injunction over unspecified and speculative acts of multiple parties); Restatement (2d) of Torts § 943 (1979) ("[T]he court must delineate with reasonable precision the action that is to be prohibited or required, and must *envisage the practicability of enforcement measures* if the defendant should refuse to comply…." (emphasis added)).[4]

V.  No Irreparable Harm to Plaintiff Absent Issuance of an Injunction

"A showing of irreparable harm is the *sine qua non* of injunctive relief." *Ne. Florida Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1286 (11th Cir. 1990). In her Motion, Plaintiff alleges she has been irreparably harmed by not being able to continue her medical training or earn an income. Mot. ¶¶ 38, 40. In support, Plaintiff points to purported communications in 2021 between Defendants and MSBI in which Defendants "continued to hinder [her] future career and educational prospects by conducting a defamatory campaign to tarnish [her] reputation." ECF No. 40, ¶ 39 (hereinafter "Pl. Aff.) None of this supports a finding of imminent, irreparable harm.

Far from being actual and imminent, the alleged harm Plaintiff fears is utterly speculative. *See Ne. Florida Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1286 (11th Cir. 1990) (a preliminary injunction may only issue where the harm is "neither remote nor speculative, but actual and imminent"); *Muck Miami, LLC v. United States*, No.14-24870-2CIV, 2015 WL 12533140, at *4 (S.D. Fla. Feb. 13, 2015), *report and recommendation adopted,* No. 14-24870-CIV, 2015 WL 12533141 (S.D. Fla. Mar. 9, 2015) (same). Plaintiff's allegation that a *2021* communication caused her harm is no basis for a finding of imminence; the

---

[4] As noted, such an injunction would mire the Court in the continued monitoring and supervision of the internal affairs of the Hospital, a position well outside the appropriate province of the judiciary. *See United States v. Paramount Pictures*, 334 U.S. 131, 163 (1948) ("The judiciary is unsuited to affairs of business management; and control through the power of contempt is crude and clumsy and lacking in the flexibility necessary to make continuous and detailed supervision effective."). The supervision of such routine affairs as the provision of academic references and handling of verification requests would "unreasonably tax the time, attention and resources of the court." *Perel v. Brannan*, 267 Va. 691, 701, 594 S.E.2d 899, 905 (2004).

law is clear that injunctive relief is not available when based on "past incidents" which necessarily requires speculation and uncertainty regarding future harm. *Hamze v. Steele*, No. 09-60882-CIV, 2011 WL 13122736, at *2 (S.D. Fla. Aug. 4, 2011).

Plaintiff's allegations of imminent harm are further belied by averments in her own Affidavit. She contends that the application process for residency "matching" begins in June and culminates with interviews in November – every year. Pl. Aff. ¶ 34. Thus, since her termination from the Program in January 2021, two such matching cycles have come and gone – yet Plaintiff now claims immediate and irreparable harm absent entry of an injunction. Plaintiff's delay in seeking a temporary injunction gives the lie to her assertion that she stands to suffer imminent, irreparable harm. The law is well-established that a party who delays in seeking an injunction is precluded from obtaining relief as it vitiates a finding of irreparable harm. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *Pippin et al. v. Playboy Entm't Group, Inc. et al.*, No. 8:02-cv-2329-T-30EAJ, 2003 U.S. Dist. LEXIS 25415, *6 (M.D. Fla. 2003) (finding that delay reflects that a request for injunctive relief is more about gaining an advantage rather than protecting a party from irreparable harm).[5] Here, Plaintiff alleges that her resignation from the residency program occurred in January 2021 (SAC ¶ 31), and that in July 2021, Dr. Ben-David failed to provide her a reference in connection with an "offer" she received from MSBI (*id.* ¶ 42).[6] Thus, the last complained-of incident in this action allegedly occurred in July 2021, well over a year before Plaintiff approached this Court to enjoin Defendants and mandate that they accept Plaintiff's "reference provider." Since initiating this action in state court in October 2022,

---

[5] Other federal courts have held that a delay in seeking an injunction undermines the plaintiff's showing of irreparable harm. *See also Wireless Agents, LLC v. T-Mobile USA, Inc.*, Civ. No. 3:05-cv-0094, 2006 U.S. Dist. LEXIS 36590, 2006 WL 1540687, at *13 (N.D. Tex. June 6, 2006) (citing *High Tech Med. Instrumentation v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995)); *Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 438 (S.D. Tex. 2008) (denying injunctive relief after an alleged breach of a non-compete where movant unreasonably delayed to file suit, then requested multiple continuances to the injunction hearing); *Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc.*, No. 16-CV-5079 (JGK), 2016 U.S. Dist. LEXIS 107358, 2016 WL 4367990, at *3 (S.D.N.Y. Aug. 12, 2016); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996).

[6] Apparently to obfuscate the relevant timeline of events and downplay her delay, Plaintiff does not include these key dates in her Motion or Affidavit. But they remain in the SAC.

Plaintiff has yet to point to any recent event that would justify this Court acting urgently or would trigger the right to injunctive relief *ab initio*.

Lastly, Plaintiff contends that her failure to secure employment and a steady income will deprive her of the ability to benefit from the federal government's student loan forbearance program and 0% interest rate on repayment that began during the COVID-19 pandemic. Mot. ¶ 42. This argument underscores that her harm is the opposite of irreparable, but obviously quantifiable and compensable at law as damages. *See United States v. Jefferson Cnty.*, 720 F.2d 1511, 1520 (11th Cir. 1983) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

VI. <u>Injunctive Relief Would Not Serve the Public Interest</u>

Plaintiff has not demonstrated that the public interest would be served by injunctive relief. In fact, Plaintiff does not address the public ramifications of her request in her Motion, save for the following non-sequitur: "[T]he public interest in precluding the chilling effect that the defamatory campaigns perpetuated as retaliation for reporting discriminatory practices can cause weighs in favor of enjoining Defendants from any further violation of [Plaintiff's] rights." Mot. ¶ 47. Of course, the only "chilling effect" created by issuance of an injunction would beset the speech and activities of Dr. Ben-David and the Program (and likely other residency programs), not Plaintiff.

The requested relief is decidedly against the public interest. Florida law recognizes that the public interest is served by rules ensuring that physicians, such as Plaintiff, are competent to practice, and that fellow physicians are best positioned to make competency determinations and recommendations regarding their peers' qualifications. For instance, Chapter 458 of the Florida Statutes establishes licensure requirements and procedures for physicians and states:

> The Legislature recognizes that the practice of medicine is potentially dangerous to the public if conducted by unsafe and incompetent practitioners. The Legislature finds further that it is difficult for the public to make an informed choice when selecting a physician and that the consequences of a wrong decision could seriously harm the public health and safety. The primary legislative purpose in enacting this chapter is to ensure that every physician practicing in this state meets minimum requirements for safe practice. It is the legislative intent that physicians who fall below minimum competency or who otherwise present a danger to the public shall be prohibited from practicing in this state.

9

*See* Fla. Stat. § 458.30.

Indeed, courts have specifically cautioned against judicial intrusion into the decision-making of educational institutions, particularly graduate medical education, as a matter of public policy. *See, e.g.*, *Spatz v. Regents of the Univ. of California*, 21-CV-09605-LB, 2023 WL 114230, at *7 (N.D. Cal. Jan. 4, 2023) (injunctive relief not in the public interest where it "implicates public safety involving the training of doctors in a competitive and technical field" which is better suited to be tested through litigation rather than through preliminary injunctive relief); *Allawi v. State Univ. of New York at Stony Brook*, No. 15830/2002, 2002 WL 31748836, at *1 (N.Y. Sup. Ct. Nov. 15, 2002) (denying an injunction and noting "[s]trong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance").

One of the Program's and Dr. Ben-David's essential functions is to graduate only *competent* surgical residents and to provide information to credentialing bodies or other institutions about the qualifications of the Program's residents when they request it. Plaintiff now asks the Court to permit Plaintiff to evade this critical safeguard. Put simply, silencing the Program and/or Dr. Ben-David under these circumstances, or permitting Plaintiff to self-select her "reference provider" contrary to ordinary protocols, would put the community and patient population at risk – a result that runs counter to public policy considerations.

Of course, Plaintiff remains free to explain her time at MSMC to potential employers in any manner she deems appropriate and can proffer any and all recommendations she has garnered in her favor. The sole interest being furthered by the request is Plaintiff's personal interest in utilizing the Court to put a better spin on her departure from MSMC.

Finally, beyond its affront to public policy, granting an injunction would not change the facts that Plaintiff seeks to paper over by virtue of this entire lawsuit: that she was subject to multiple probations and remediations that culminated in her termination and failure to complete her residency. A "reference provider" of Plaintiff's choice would not alter that reality, and such an individual would be constrained to truthfully report to other institutions or third parties Plaintiff's academic history. While Plaintiff may dispute the reasons she was placed on multiple probations and terminated, an injunction cannot undo these facts.

VII. <u>The Harm to Defendants Outweighs Any Harm to Plaintiff</u>

The relief Plaintiff seeks is outweighed by the harm it would do to MSMC and Dr. Ben-David. As discussed above, the proposed injunctive relief is designed to force the Program to whitewash Plaintiff's history of remediations and other deficiencies with any inquiring residency program or other third party. On this point, and because Plaintiff has opened the door in her SAC (*see* SAC ¶¶ 34-36), it bears mentioning again that Plaintiff's complaint to the ACGME – wherein she raised all the same issues in this lawsuit – was recently and definitively closed without any action against MSMC, *both* at the institutional level as well as with respect to the Program led by Dr. Ben-David. In closing the complaint, the ACGME specifically advised MSMC that no further action is required. Yet, Plaintiff would have this Court rewrite the ACGME's decision, override its judgment, and wrest important decisions away from the Program and Dr. Ben-David due to the whims of a single resident.

VIII. <u>Plaintiff Has No Likelihood of Success on the Merits of Her Claims</u>

For the reasons stated in Defendants' pending Motion to Dismiss the Second Amended Complaint (ECF No. 52), none of Plaintiff's claims in the SAC can survive dismissal under Rule 12(b)(6), Federal Rules of Civil Procedure. Accordingly, Plaintiff cannot demonstrate a likelihood of success on the merits of her claims. *See ABC Charters, Inc. v. Bronson*, 08-21865-CIV, 2008 WL 11409039, at *2 (S.D. Fla. July 2, 2008), quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) ("In order for a plaintiff to show that it has a substantial likelihood of success on the merits, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)."). Without any claims upon which relief can be granted, Plaintiff has no basis to seek injunctive relief.

**CONCLUSION**

For all the foregoing reasons, the Motion should be denied.

Dated: March 10, 2023

        Respectfully submitted,

        **LASH GOLDBERG LLP**
        Miami Tower, Suite 1200
        100 S.E. Second Street
        Miami, Florida 33131
        *Counsel for Defendants Mount Sinai Medical Center and Kfir Ben-David, M.D.*
        Tel: (305) 347-4040
        Fax: (305) 347-4050

        By: */s/ Martin B. Goldberg*
            **MARTIN B. GOLDBERG**
            Florida Bar No. 0827029
            Email: mgoldberg@lashgoldberg.com
            **CLARK S. SPLICHAL**
            Florida Bar No. 1010425
            Email: csplichal@lashgoldberg.com

        **KRAMER LEVIN NAFTALIS**
        **& FRANKEL LLP**
        2000 K Street N.W., 4th Floor
        Washington, DC 20006
        Tel: (202) 775-4500
        Fax: (202)775-4510
        Counsel for Defendant Kfir Ben-David, M.D.

        By: */s/ Gary A. Orseck*
            **GARY A. ORSECK**
            Florida Bar No. 846015
            Primary Email: gorseck@kramerlevin.com
            **LAUREN CASSADY ANDREWS**
            Va. Bar No. 92149 (appearing *pro hac vice*)
            Primary Email: landrews@kramerlevin.com

Case No. 1:23-CV-20188-RKA

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF on March 10, 2023, or in the manner specified on all counsel or parties of record on the Service List below.

By: */s/ Martin B. Goldberg*
**MARTIN B. GOLDBERG**

## SERVICE LIST

Richard H. Levenstein, Esq.
Gabrielle O. Sliwka, Esq.
**NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
gsliwka@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com
*Attorneys for Plaintiff*