IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| PAIGE FINKELSTEIN, M.D., | ) |
| | ) |
|     Plaintiff, | ) Case No. 1:23-CV-20188-RKA |
| | ) |
| v. | ) |
| | ) |
| MOUNT SINAI MEDICAL CENTER OF | ) |
| FLORIDA, INC., a Florida Not For Profit | ) |
| Corporation, and KFIR BEN-DAVID, M.D., | ) |
| | ) |
|     Defendants. | |

_____/

**PLAINTIFF'S, PAIGE FINKELSTEIN, M.D., M.P.H., M.B.A., OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION BE DENIED, AND MOTION TO STRICKE IT FROM THE RECORD**

1

*"[N]o witnesses, on June 21st, so that I can, first of all, resolve these issues. Now, if after that, I determine somehow, "Oh, yes, we need more," we can go from there."* [1]

   Plaintiff, PAIGE FINKELSTEIN, M.D., M.P.H., M.B.A., pursuant to Rule 72 of the Federal Rules of Civil Procedure, 28 U.S.C. § 636(b)(1)(C), Local Rules, and the Report and Recommendation on Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 113] (the "Report"), and files Plaintiff's Objections to the Magistrate Judge's Report and Recommendation that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction be Denied, and Motion to Strike it from the Record, and grant and/or rehear Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction on the merits, and in support thereof, states:

## BACKGROUND

   1.  On February 24, 2023, Plaintiff filed her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction against Defendants, Mount Sinai Medical Center and Kfir Ben-David, M.D [ECF NO. 39] (the "Motion"). A copy of the Motion and its accompanying exhibits is attached hereto as **"Exhibit 1."** Copies of Plaintiff's subsequent briefings filed with this Court [ECF No. 72, 94, and 97], as well as accompanying exhibits, are attached hereto as **"Exhibit 2," "Exhibit 3,"** and **"Exhibit 4."**

   2.  On May 19, 2023, counsel for Plaintiff and Defendants Mount Sinai Medical Center ("MSMC") and Kfir Ben-David, M.D. ("Dr. Ben-David") (collectively "Defendants"), (collectively, the "Parties") appeared via Zoom for a hearing set by the Honorable Magistrate Judge Lisette M. Reid ("Magistrate Judge" or "Judge Reid") to address separate discovery disputes. A copy of the May 19, 2023, Hearing Transcript is attached hereto as **"Exhibit 5." (**"05/29/23 Hearing Transcript").

   3.  Having reviewed the parties' written communications and hearing the arguments the Parties were allowed to prepare in anticipation of this hearing, Magistrate Judge Reid issued her recommendations and prepared to end the hearing.

   4.  Nonetheless, Defendants' counsel addressed the Court, without advising Plaintiff's counsel or the Magistrate Judge of his intention, making several representations pertaining to the

---

[1] 05/29/23 Hearing at 53 at 1-8

2

injunction hearing set for June 21, 2023, and asking the Magistrate Judge to materially limit Plaintiff's ability to satisfy her burden as movant.[2]

5. The injunction hearing, initially scheduled to take place on April 26, 2023, was rescheduled by the Magistrate Judge, upon Defendants' request, to June 21, 2023. Still, the injunction hearing was expected to be a full evidentiary hearing lasting an entire day, and originally scheduled as such, thus allowing the parties to present evidence, including the testimony of witnesses with a direct personal knowledge pertaining to Plaintiff's Motion.

6. However, based on the Defendants' counsel's impromptu and inappropriate "motion," Judge Reid decided, without allowing the Parties to submit legal authority or prepare arguments, on the record, that the injunction hearing was no longer going to last an entire day, would be based solely on legal arguments without the use of documents and/or witnesses' testimony, and ordered the Parties to submit additional legal memoranda addressing the Court's authority to issue the requested relief, and no testimony or evidence would be taken or submitted.[3]

7. The Magistrate Judge's imposed restrictions and directions severely impacted Plaintiff's ability to demonstrate the elements required to succeed in a motion for injunctive relief in several different ways: (1) by mandating that the parties submit complex legal memoranda shortly before the scheduled hearing; (2) by providing unclear directions as to whether the parties were allowed to include exhibits to the legal memoranda or to their hearing presentations[4], and (3) by imposing the restriction disallowing witnesses testimony at the hearing.[5]

---

[2] 05/29/23 Hearing Transcript, 37 at 2-25 and 38 at 1-11.

[3] 05/29/23 Hearing Transcript, 47 at 16-20 ("But I don't see why it should require the testimony of witnesses. It's a legal argument, and that's what I'm expecting to hear on June 21st, a legal argument with respect to – with respect to both – the issues that you're talking about, Mr. Levenstein."); 48 at 9-10 ("And there should be no witnesses. It sounds like a purely legal argument that you have described to me."); 52 at 9-10 ("And then we're into the hearing on the 21st, which, as I said, will not need any witnesses."); and 52-53 at 24-2 ("And no more – no more than a half-day hearing, which is more of an evidentiary hearing, no witnesses, on June 21st, so that I can, first of all, resolve these issues.")

[4] Plaintiff's counsel also represents that his office contacted the Magistrate Judge's chambers for clarification on this specific topic, receiving instructions restricting the use of exhibits.

[5] 05/29/23 Hearing Transcript, 47 at 16-20; 48 at 9-10; 52 at 9-10; and 52-53 at 24-2.

8.      The Magistrate Judge's remarks during the May 19, 2023 hearing, at times representing that the June 21 hearing would focus solely on legal issues with no witnesses or documents while also representing that limited documents could be allowed, left substantial unanswered issues pertaining to the hearing's focus and the tools available to the Parties, severely impacting Plaintiff's ability to fulfill her burden of proof.

9.      At the injunction hearing, and against the Magistrate Judge's instructions during the May 19, 2023 hearing, Defendants' counsel introduced an entire binder containing multiple documents, with several inaccuracies, which Plaintiff's counsel was not able to address due to the limitations previously imposed by the Magistrate Judge's remarks, and the fact that the binder had not been produced to Plaintiff's counsel prior to the hearing.  This had an impact on the Magistrate Judge's report, which focused on the documents produced by Defendants' counsel at the injunction hearing in reaching her decision.

10.     On July 17, 2023, the Magistrate Judge issued her Report and Recommendation that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 113] (the "Report") recommending that Plaintiff's Motion be denied. A copy of the Report is attached hereto as **Exhibit 6."** The Report justifies the Magistrate Judge's recommendation stating: (1) that Plaintiff had not demonstrated a threat of continuing harm; (2) that Plaintiff failed to establish a likelihood to succeed on the merits; and (3) that Plaintiff had not shown that the balance of harms favored the entry of a preliminary injunction. *See* Report at at 5-9

11.     Even though Plaintiff had submitted information demonstrating that she has continuously applied to residency programs and other medical positions since leaving MSMC, and Plaintiff herself was present at the June 21, 2023 hearing, ready to testify and clarify any questions Magistrate Judge may have had, the Report appears to focus on Defendants' unsubstantiated assertions that Plaintiff has been seating idly since 2021, a factual assertion with no evidentiary support, since evidence or testimony were not allowed to be taken or submitted at the Injunction Hearing.

12.     At a minimum, the Magistrate Judge's concerns, seemingly based on Defendants' unsubstantiated contentions, could have been addressed by Plaintiff's counsel through documents and witnesses' testimony which, on its own, warrants the rejection of the Report.

13.     The Magistrate Judge's limitations to Plaintiff's ability to demonstrate the elements of her claim for injunctive relief by not being able to present witnesses' testimony and evidence is

even more troublesome when considering that the Magistrate Judge's Report and Recommendation that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction be Denied entirely ignores the legal arguments and exhibits[6] submitted through Plaintiff's four (4) comprehensive briefings filed in connection with Plaintiff's Motion, disproportionately impacting Plaintiff, and makes findings of fact without the presentation of any testimony or evidence, both of which were prohibited from use at the hearing by the Magistrate Judge.

## STANDARD OF REVIEW

A party challenging the findings and recommendations of a magistrate judge must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *see also Affordable Aerial Photography, Inc. v. Prop. Matters USA, LLC*, No. 22-14296-CIV, 2023 WL 4345337, at *1 (S.D. Fla. July 5, 2023). The district Court reviews these objections *de novo* and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. *Id.*; *see also* 28 U.S.C.A. § 636(b)(1). To the extent a party fails to object to parts of the Magistrate Judge's Report, the Court may accept the recommendation so long as there is no clear error of law or fact on the face of the record. *Id*.

If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Casa Express Corp. as Tr. of Casa Express Tr. v. Bolivarian Republic of Venezuela*, No. 21-CV-23103, 2023 WL 4558962, at *2 (S.D. Fla. July 17, 2023).

It is critical that the objection be sufficiently specific and not a general objection to the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (citing *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).) *De novo* review implies that "the district court's consideration of the factual issue ... be independent and based upon the record before the court. *Id*.

## PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

**I.   The Report's Findings Regarding Plaintiff's Factual Allegations Should Not be Deemed Conclusive**

---

[6] Plaintiff submitted 28 exhibits and a lengthy declaration by Plaintiff in connection with her Expedited Motion For Entry Of Temporary Restraining Order And Preliminary Injunction, which the Magistrate Judge's Report completely overlooks. Similarly, Plaintiff's subsequent Legal Memoranda also makes several legal arguments, specifically, addressing Defendants contentions pertaining to speech restrain that the Report neglects to address.

The Report recites facts that were not established during any evidentiary hearing, as the Magistrate Judge precluded the parties from relying on or even introducing witnesses' testimony and/or documents as evidence during the Injunction Hearing. Plaintiff further objects to each of the factual assertions noted in the Report (i.e., that Plaintiff has not shown a threat of imminent irreparable harm; that MSMC has no duty to provide Plaintiff with a Program Director Letter; that Plaintiff sought to mandate Defendants to express views with which they disagreed; that Defendants are not actively interfering with Plaintiff's current employment opportunities; that Plaintiff's six-month evaluations directly refute her defamation and wrongful termination claims; that Defendants are not destroying evidence.) to the extent those assertions are to be construed as determination of each of those facts. *See* Report at 5-9. The Report relies on facts as portrayed solely by Defendants' counsel, many of which are outside the pleadings and unsupported by competent evidence, most of which could be directly contradicted by witnesses' testimony or documents, had the Magistrate Judge not precluded their use at the Injunction Hearing, which the Report seems to overlook.

More importantly, the Magistrate Judge's factual findings should not have a preclusive effect on Plaintiff given that these findings are based solely upon Defendants' bare assertions, incomplete discovery, and no consideration of factual evidence submitted by or that could have been introduced by Plaintiff during the Injunction Hearing, due to the Magistrate Judge's determination that only legal argument could be presented to the Court at the Hearing. Indeed, the Injunction Hearing was not an evidentiary hearing on the underlying facts or merits of Plaintiff's Motion. A copy of the Injunction Hearing Transcript is attached hereto as **"Exhibit 7."** Therefore, Plaintiff objects to the findings of fact contained in the Report and Recommendations, which may unjustly limit Plaintiff's rights and remedies, as any findings of fact at this juncture are premature given the absence of any evidentiary hearing.

II. **Plaintiff does not ask the Court to compel Defendants to express views with which they disagree because Defendants were willing to provide the Program Director Letter in exchange for Plaintiff's signing the Release of All Claims Agreement**

As further discussed in Plaintiff's Reply Memorandum of Law filed on June 16, 2023 [ECF No. 97], the remedy sought by Plaintiff with her Motion, far from compelling Defendants to express views with which they disagree, sought to preclude Defendants from withholding a Program Director's letter, a letter which contains no claims based on communications or professionalism issues, which Defendants were willing to and ready to provide in exchange for

6

Dr. Finkelstein signing a Release of All Claims Agreement. *See* Finkelstein 001372-74, attached as Exhibit 1 to Exhibit 4.

### III. Plaintiff Objects to the Report's findings that Plaintiff Has not Sufficiently Shown Likelihood To Succeed On The Merits

Plaintiff further objects to the Report's assertion that she has failed to establish a likelihood to succeed on the merits because (1) the Injunction Hearing was not an evidentiary hearing on the underlying facts or merits of Plaintiff's Motion; (2) the Report findings are based solely upon Defendants' bare assertions, incomplete discovery, and without any consideration of factual evidence submitted by, or that could have been introduced by, Plaintiff during the Injunction Hearing; and (3) even though Plaintiff's briefing clearly specified that Plaintiff's Motion was based on Plaintiff's Tortious Interference and Extortion Claims, the Report focused solely on perceived deficiencies related to Plaintiff's defamation and retaliation claims.

The determination of whether there is a substantial likelihood of success on the merits "does not contemplate a finding of fixed quantitative value. Rather, a sliding scale can be employed, balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits." *Fac. Senate of Fla. Int'l Univ. v. Winn*, 477 F. Supp. 2d 1198, 1203 (S.D. Fla. 2007) (quoting *Fla. Med. Ass'n, Inc. v. U. S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 203 (5th Cir. 1979).) For example, where " 'the balance of equities weighs heavily in favor of granting the [injunction],' the movant[s] need only show a substantial case on the merits." *Faculty Senate of Florida Intern. University*, 477 F. Supp. 2d at 1203 (quoting *Gonzalez ex rel. Gonzalez v. Reno*, No. 00-11424-D, 2000 WL 381901, at *1 (11th Cir. Apr. 19, 2000) (citation omitted).)

To date, Plaintiff has submitted evidence to her Tortious Interference and Extortion Claims, which Defendants have not yet been able to contradict. *See* Exhibit A to Exhibit 2, Dr. Goodman's Declaration. ("Goodman Decl.") *See also* Exhibit X to Exhibit 1 ("Arnold Jaffe Jan 27, 2023"). It is cause for great concern that the Report seemingly disregards these documents and legal analysis, and further that the Report apparently represents that Plaintiff's six-month evaluation somehow directly refutes Plaintiff's twenty-two (22) claims.

First, as described in the Goodman Declaration, in July 2021, Dr. Finkelstein received an offer from Mount Sinai Beth Israel ("MSBI") Hospital in New York to serve as a House Surgeon. *See* Plaintiff's Second Amended Complaint ("SAC") (ECF No.125) at ¶99; *see also* Goodman

7

Decl. at ¶¶ 5-7. MSBI's surgical staff was excited to have Dr. Finkelstein join their team, as she had sufficient experience and was qualified for the house surgeon position. *See* SAC at ¶99, Ex. E-G; *see also* Goodman Decl. at ¶¶ 5-7.

Second, the facts and circumstances here clearly demonstrate that Defendants knew that Dr. Finkelstein had received an offer from MSBI, as Dr. Goodman contacted professionals involved with MSMC's General Surgery Residency Program, including Dr. Ayad, Dr. Lee, Dr. Bao, Dr. Burt, and Defendant, Dr. Ben-David, to obtain further information regarding Dr. Finkelstein's tenure at MSMC's General Surgery Residency Program. *See* Goodman Decl. at ¶¶ 8-9.

Third, Defendants' interference with Dr. Finkelstein's relationship with MSBI is clearly intentional and unjustified. Defendants, through Dr. Ben-David, as the Program Director, are specifically directing to Dr. Finkelstein's prospective employers and residency programs false statements calling into question Dr. Finkelstein's professionalism. Defendants do this solely to damage Dr. Finkelstein's reputation as a means to extort from her a General Release of all Claims and Non-Disclosure Agreement, agreeing not to divulge any events or facts concerning the Surgical Residency Program, and releasing both Defendants from liability with respect to any and all claims related to her Surgical Residency Program experience.

Fourth, it is obvious that Defendants' statements pertaining to Dr. Finkelstein, specifically when coming from Dr. Ben-David, as the Program Director, have and continue to irreparably harm Dr. Finkelstein. Here, Dr. Ben-David made representations so disparaging of Dr. Finkelstein's professionalism, which, although not based on factual evidence, and contradicted by Dr. Ayad, Dr. Lee, Dr. Bao, and Dr. Burt's positive references, resulted in Dr. Finkelstein losing her position as MSBI house surgeon. This is easily verifiable by comparing Dr. Ben-David's assessment, who had observed Dr. Finkelstein as a resident only a handful of times, to the assessment made by Dr. Finkelstein's faculty and mentors, as she has received several recommendation letters which debunk the falsities divulged by Dr. Ben-David with the purpose of tarnishing Dr. Finkelstein's reputation. *See* SAC ¶¶ 115- 116 and Ex. G and I; *see also* Finkelstein Decl. at ¶ 27, Ex. V. Thus, Dr. Ben-David created this narrative pertaining to Dr. Finkelstein's unspecified professionalism issues which are, until now, unverified but which served the purpose of sabotaging Plaintiff's attempts to resume her surgical education, thus causing Dr. Finkelstein to suffer irreparable harm.

Further, any inquiries the Magistrate Judge could still have would have been addressed by

8

the evidence and the testimony of witnesses whom Plaintiff's counsel would have introduced at the injunction hearing but for the Magistrate Judge's orders during the May 19, 2023 hearing.

### IV. Plaintiff Objects to the Report's findings that The Balance Of Harms Does Not Favor The Entry Of A Preliminary Injunction

Plaintiff further objects to the Report's assertion that limiting or controlling Defendant's protected speech outweighs the harm to Plaintiff. First, and as further discussed above, Plaintiff was not allowed to testify or otherwise introduce evidence establishing the harm previously or currently being inflicted upon Plaintiff due to the Magistrate Judge's Orders During The May 19, 2023 Hearing. Further, and as more extensively discussed at ECF No. 72, the relief sought did not limit or controlled Defendants' protected speech because, by focusing exclusively on Plaintiff's defamation claims, the Report entirely disregards Plaintiff's additional claims, including the tortious interference with business relationship claims.

Defendants' underlying conduct, as alleged by the SAC and the Motion, involves malicious, defamatory speech that does not prevent this Court from ultimately issuing the requested injunctive relief, for, in this case, the defamatory statements are verbal acts in aid of another tort, and Defendants' sole goal was not to persuade public opinion, but to damage Dr. Finkelstein's business relationships, of which Defendants were acutely aware, and to extort a non-disclosure agreement and release of all claims from Dr. Finkelstein. Likewise, an order restraining defendants from disseminating disparaging and defamatory statements about Dr. Finkelstein does not interfere with protected speech. *See Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So. 2d 1371, 1376 (Fla. Dist. Ct. App. 1987); *Murtagh v. Hurley*, 40 So. 3d 62, 66 (Fla. Dist. Ct. App. 2010).

Here, like in *Zimmerman*, Dr. Finkelstein makes a prima facie case for the appropriateness of the temporary injunctive relief, as the record supports an inference that Defendants' dissemination of falsities had a deleterious effect on Dr. Finkelstein securing a new employment or position at a new residency program. *See Zimmerman*, 505 So. 2d at 1373; *see also* SAC at ¶99, Ex. E-G; Goodman Decl. at ¶¶ 5-7. Injunctions comparable to the requested injunctive relief have been repeatedly upheld. *See, e.g., San Antonio Cmty. Hosp. v. S. California Dist. Council of Carpenters*, 125 F.3d 1230, 1233 (9th Cir. 1997) (upholding a preliminary injunction preventing defendants from making the fraudulent and defamatory statement that a non-union hospital was "FULL OF RATS," where the court found the statement was likely to lead patients to believe the hospital had a rodent problem); *Vondran v. McLinn*, No. C 95-20296 RPA, 1995 WL 415153 (N.D.

Cal. July 5, 1995) (granting preliminary injunction motion where plaintiff alleged claims for trade libel, defamation, and interference with prospective economic advantage, and enjoining false or misleading statements regarding plaintiff and its product and articles concerning the product).

Further, it is not in the public interest for Defendants to spread false and misleading statements about Dr. Finkelstein's uncorroborated and unspecified professionalism issues. It is also not in the public interest for Defendants to utilize a pattern of misconduct designed to force former residents and employees into signing Release of All Claims Agreements benefitting Defendants. The record to date sufficiently shows that Dr. Finkelstein has never presented professionalism issues, and Defendants this false narrative to interfere with Dr. Finkelstein's business relationships as a stratagem to extort a Release of All Claims Agreement from Plaintiff. Likewise, Defendants' knowingly false statements may be enjoined.

Additionally, any inquiries the Magistrate Judge could still have would have been addressed by the evidence and the testimony of witnesses whom Plaintiff's counsel would have introduced at the injunction hearing but for the Magistrate Judge's orders during the May 19, 2023 hearing.

## CONCLUSION

For the foregoing reasons, Plaintiff, PAIGE FINKELSTEIN, M.D., M.P.H., M.B.A., requests that the Court reject the Magistrate Judge's Report and Recommendation that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction be Denied, strike it from the record, and grant Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction or enter any other appropriate order directed to the Report and Recommendation.

Dated: July 31, 2023.                    Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ *Richard H. Levenstein*

Richard H. Levenstein
Florida Bar No. 235296
Gabrielle O. Sliwka
Florida Bar No. 1022654
Abby M. Spears
Florida Bar No. 44662
Primary E-mail: rlevenstein@nasonyeager.com
gsliwka@nasonyeager.com;
aspears@nasonyeager.com

        Secondary E-mail: ptreadway@nasonyeager.com;
creyes@nasonyeager.com
NASON, YEAGER, GERSON,
HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:     (561) 686-3307
*Attorneys for Plaintiff, Paige Finkelstein, M.D.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court and served by E-Mail through the Florida Courts E-Filing Portal on January 31, 2023 to the following:

***Attorneys for Defendant, Mount Sinai Medical Center of Florida and Defendant, Kfir Ben-David, MD***
Martin B. Goldberg, Esq.
David R. Ruffner, Esq.
Clark Splichal, Esq.
Ashley P. Singrossi, Esq.
Benjamin R. Shiekman, Esq.
Lash & Goldberg LLP
Miami Tower
100 S.E. 2nd Street
Suite 1200
Miami, Florida 33131
Primary Email: mgoldberg@lashgoldberg.com; csplichal@lashgoldberg.com
druffner@lashgoldberg.com; asingrossi@lashgoldberg.com; bshiekman@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com; mwallace@lashgoldberg.com

***Attorneys for Defendant, Kfir Ben-David, MD***
Gary A. Orseck, Esq.
Lauren Cassady Andrews, Esq.
Kramer, Levin, Naftalis, & Frankel, LLP
2000 K Street, NW, 4th Floor
Washington, DC  20006
Primary Email: gorseck@kramerlevin.com; landrews@kramerlevin.com

11

By: /s/ Richard H. Levenstein
    Richard H. Levenstein
    Florida Bar No. 235296
    Gabrielle O. Sliwka
    Florida Bar No. 1022654
    Abby M. Spears
    Florida Bar No. 44662