IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF FLORIDA MIAMI
DIVISION

| | |
|---|---|
| PAIGE FINKELSTEIN, M.D., ) | |
| ) | |
| Plaintiff, ) | Case No. 1:23-CV-20188-RKA |
| ) | |
| v. ) | |
| ) | |
| MOUNT SINAI MEDICAL CENTER OF ) | |
| FLORIDA, INC., a Florida Not For Profit ) | |
| Corporation, and KFIR BEN-DAVID, M.D., ) | |
| ) | |
| Defendants. | |

**PLAINTIFF'S, PAIGE FINKELSTEIN, REPLY MEMORANDUM OF LAW IN
SUPPLEMENTARY SUPPORT OF HER EXPEDITED MOTION FOR ENTRY OF
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

1

*"All I ask of our brethren is that they take their feet off our necks."*[1]

COMES NOW the Plaintiff, PAIGE FINKELSTEIN, MD, MPH ("Dr. Finkelstein" or "Plaintiff"), by and through her undersigned counsel of record, hereby submit this reply to Defendants' MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC. ("MSMC"), a Florida Not for Profit Corporation, and KFIR BEN-DAVID, M.D. ("Dr. Ben David" or "Residency Program Director") (together, "Defendants"), Response in Opposition (the "Response") (ECF No. 96) to Plaintiff's Memorandum of Law in Supplementary Support of her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction (the "Memorandum of Law") (ECF No. 94).

Being unable to demonstrate that Dr. Finkelstein is not entitled to the relief she seeks, Defendants filed their Response on June 12, 2023, now maintaining that this Court has no authority to issue the injunctive relief as requested. Defendants' new position is their latest effort to conflate issues, obstruct and deflect, and misrepresent facts and the legal authority of this Court to grant the injunctive relief as requested, while concocting wild scenarios in which the Defendants are somehow helpless pawns being pressured by Dr. Finkelstein into negotiating "out negative events on her academic record, including her probations and remediation plans."[2]

Contrary to the Defendants' assertions, the relief requested by Dr. Finkelstein is within the Court's Equitable Powers, does not require that the Court unlawfully Regulate Speech, nor is it unworkable or otherwise places Defendants in legal peril. Through this Reply, Dr. Finkelstein seeks to set the record straight and show that Defendants, far from being the David as Defendants' previous filings seem to indicate, are actually the Goliath in this case. MSMC is the largest private, independent, not for profit, teaching hospital in Florida, MSMC and Dr. Ben-David, as chairman of MSMC's Department of Surgery and the Program Director, both went to great lengths to extort a General Release of all claims from Dr. Finkelstein, including employing intimidation tactics

---

[1] Transcript of Oral Argument at 20, *Frontiero v. Richardson*, 411 U.S. 677, 93 S. Ct. 1764, 36 L. Ed. 2d 583 (1973) (No. 71-1694) (argument by Ruth Bader Ginsburg) ("I ask no favor for my sex. All I ask of our brethren is that they take their feet off our necks." (quoting Sarah Grimké)).

[2] *See* Plaintiff's Expedited Motion for Entry of Temporary restraining Order and Preliminary Injunction (ECF No. 39) (the "Motion"), at ¶¶ 7-11, ¶¶ 38-48; Plaintiff's Reply Memorandum of Law in Further Support of her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction ("Reply") (ECF No. 72), at 3-13; Memorandum of Law, at 9-21. Response, at 4.

against Plaintiff, and her efforts to continue her medical career, as well as tortiously interfering with Dr. Finkelstein's business relationships, all to the irreparable harm of her reputation, career, and professional pursuits.

**I. Plaintiff has provided the Court with Several Legal Authority or Basis Pertaining to the Relief Requested**

Contrary to Defendants assertions, Plaintiff has, this far, provided multiple legal bases to substantiate and justify this Court's power to issue the injunctive relief requested, including: (i) Rule 65(d) of the Federal Rules of Civil Procedure; (ii) case law requiring injunctive relief to prevent the destruction, transfer or concealment of records necessary for the Court to render a meaningful final decision on the merits, (iii) the Court's broad equity powers allowing It to fashion injunctive relief necessary to stop infringing activities, and (iv) case law authorizing injunctive relief to prevent irreparable injury where libelous or slanderous statements with respect to a person, his property or business are published or made as a part and parcel of a course of conduct deliberately carried on to further a fraudulent or other unlawful purpose.[3] Likewise, as stated in Plaintiff's previous filings, this Court has multiple legal bases upon which to enter a Temporary Restraining Order with the injunctive relief requested or, in the alternative, to fashion such relief as necessary to enjoin Defendants' infringing and/or tortious activities.[4]

The relief requested by Dr. Finkelstein is necessary to prevent further irreparable harm to Dr. Finkelstein's career and medical training caused by the unlawful and/or illegal conduct of Defendants, individually and/or as agents and co-conspirators. Without the relief requested, Defendants' unlawful conduct will continue through the pendency of this action, and the

---

[3] *See* Fed. R. Civ. P. 65(d) and *E. Air Lines, Inc. v. Air Line Pilots Ass'n Int'l*, 920 F.2d 722, 730 (11th Cir. 1990); *Storer Commc'ns, Inc. v. Mogel*, 625 F. Supp. 1194, 1203–04 (S.D. Fla. 1985);

*Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016); *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15, 91 S. Ct. 1267, 28 L. Ed. 2d 554 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for ... [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case." (alterations added; citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724, 64 S. Ct. 805, 88 L. Ed. 1024 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole." (citations omitted)); *Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So. 2d 1371, 1375 (Fla. Dist. Ct. App. 1987).

[4] *See* Motion, at ¶ 7-11, ¶¶ 38-48; Reply at 3-14; Memorandum of Law, at 9-21.

Defendants will continue to employ their intimidation tactics against Dr. Finkelstein, and her efforts to continue her medical career, as well as tortiously interfering with Dr. Finkelstein's business relationships, all to the irreparable harm of Dr. Finkelstein's reputation and ability to pursue her career and training as a physician.

## II. Defendants Were Willing To Provide The Relief Requested In Exchange For Dr. Finkelstein Signing A Release Of All Claims Agreement

Being unable to deny this Court's authority to issue the relief requested, Defendants now have chosen to focus on one single element of the injunctive relief, the Program Director letter. Defendants' assertions paint a stark picture in which they are allegedly being mandated to provide an "unworkable relief", and a "potential liability." However, Defendants' latest position is fundamentally compromised by Defendants' own hypocrisy and the very fact that MSMC and Dr. Ben-David were willing and ready to provide a Program Director's letter in exchange for Dr. Finkelstein signing the Release of All Claims Agreement, a letter which contains no claims based on communications or professionalism issues.[5] Even that letter was not objective or accurate. Likewise, the Court should not allow Defendants to weaponize this Program Director's Letter and use it as a sword when it is to Defendants' own benefit, and as a shield when Defendants attempt to justify its own misconduct by pretending to be an honest broker when it comes to Dr. Finkelstein, while nothing is further from the truth.

## III. Defendants are legally bound to provide the relief requested based on The Accreditation Council for Graduate Medical Education ("ACGME") Common Program Requirements (Residency)

Not being able to attack Dr. Finkelstein's clear right to request the injunctive relief or this Court's powers to grant the relief as requested in multiple Court filings, Defendants now attempt to confuse the basis for Dr. Finkelstein' Motion with legal requirements which are imposed upon

---

[5] *See* Finkelstein 001372-74, attached hereto as Exhibit 1. Further, Plaintiff objects to Defendants' use of Dr. Finkelstein's counsel', Barry Wax, testimony, as it understands this Court directed the parties to focus on the legal issues, and no testimony would be taken. Plaintiff further objects to the characterization of Mr. Wax's testimony being used to indicate Dr. Finkelstein has no legal right to the injunctive relief requested as inaccurate and misleading. Mr. Wax has stated, in no uncertain terms, that Dr. Finkelstein had a legal right to the Completion Documents, which Mr. Wax requested that Defendants produce numerous times, to no avail. *See* Wax Depo. 169:1-181:12, attached hereto as Exhibit 2. Lastly, pertaining to Defendants indicating that Plaintiff's counsel took the "unusual step of deposing her own attorney," Plaintiff's counsel clarifies that the Defendants issued a notice of intent to depose Mr. Wax. *See* Clark Splichal's April 21, 2023, communications indicating this, attached hereto as Exhibit 3.

Defendants by the ACGME, in a last attempt to confuse this Court and conflate the requested relief with Dr. Finkelstein's Breach of Contract claim. *See* Response, at 3. However, and as a means to address the Defendants' latest misleading effort, Dr. Finkelstein offers further evidence of Defendants' continuous violations of their legal obligations under the ACGME Common Program Requirements (Residency) ("ACGME Requirements"), to which they are a party, requirements with which MSMC and Dr. Ben-David are obligated to comply, and which by in their operation of the Residency Program.[6]

The ACGME is an independent organization that sets and monitors professional educational standards of resident and fellow physicians' education, overseeing the accreditation of residency and fellowship programs in the US, imposing obligations on Sponsoring Institutions, such as MSMC, and upon Program Directors, such as and including Dr. Ben-David.[7]

| II.A.4. | Program Director Responsibilities |
|---|---|
| | The program director must have responsibility, authority, and accountability for: administration and operations; teaching and scholarly activity; resident recruitment and selection, evaluation, and promotion of residents, and disciplinary action; supervision of residents; and resident education in the context of patient care. (Core) |
| II.A.4.a) | The program director must: |
| II.A.4.a).(1) | be a role model of professionalism; (Core) |
| II.A.4.a).(15) | provide verification of an individual resident's completion upon the resident's request, within 30 days; and, (Core) |
| | Background and Intent: Primary verification of graduate medical education is important to credentialing of physicians for further training and practice. Such verification must be accurate and timely. Sponsoring Institution and program policies for record retention are important to facilitate timely documentation of residents who have previously completed the program. Residents who leave the program prior to completion also require timely documentation of their summative evaluation. |

[8]

As such, when Dr. Finkelstein requested a Program Director's Letter, a Summative Evaluation, Proof of Completion for at least two years of surgical residency, and her Diploma for completing the intern year of the General Surgery Residency ("Completion Documents"), Defendants were unconditionally and unequivocally legally required to timely provide accurate primary verification

---

[6] *See* ACGME, COMMON PROGRAM REQUIREMENTS (RESIDENCY), at 9-12 (Jul 1, 2022) (available at https://www.acgme.org/globalassets/pfassets/programrequirements/cprresidency_2022v3.pdf

[7] *See* ACGME, OVERVIEW. (Available at https://www.acgme.org/about/overview/).

[8] *See* ACGME REQUIREMENTS.

of Dr. Finkelstein's graduate medical education, without the execution of the General Release they demanded Dr. Finkelstein sign.

### IV. Defendants Recent Conduct Warrants The Granting Of The Requested Relief

While Dr. Finkelstein's previous filings describe in length the means utilized by Defendants to force her into signing the Release of All Claims Agreement, Defendants' latest pattern of behavior is troublesome as it indicates steps being taken to potentially pressure or intimidate reference providers and witnesses to either withhold or change truthful letters of recommendation and/or testimony in this matter.[9] This alone warrants this Court's authority to enjoin Defendants' conduct so that it can render a meaningful final decision on the merits.[10]

Additionally, while Dr. Finkelstein continues to try to mitigate the damages caused by Defendants by securing a position with a new residency program, or other positions as a physician, she finds herself at risk, once again, of missing out on opportunities because present and past attending physicians and faculty in the General Surgery Residency Program at MSMC, who have previously provided positive letters of recommendation, now refuse to respond to Dr. Finkelstein's request to update them.

### CONCLUSION

Dr. Finkelstein requests that an acting program director letter be provided by an objective individual, agreed upon by the parties, together with all further relief deemed just and proper by this Court. Dr. Paige Finkelstein, is entitled to the requested emergency injunctive relief and other equitable relief deemed just and proper by this Court, in order to ensure and preserve the *status quo* by preventing the Defendants from further tortiously interfering with Dr. Finkelstein's business relationships, and preventing her from pursuing her career as a physician.

---

[9] *See* Composite Exhibit A to Memorandum of Law, indicating that Jonathan Zadeh, M.D., ("Dr. Zadeh") was likely pressured to submit an online reference to a Mount Sinai Beth Israel ("MSBI"), a prospective employer, which purportedly contradicted a favorable Letter of Reference Dr. Zadeh had previously provided to Dr. Finkelstein. *See also* Hearing Tr. (May 19, 2023) 4:16-24, 6:19-25, 7:1-5, 8:1-25, 9:1-3, (:12-17, 9:25, 10:1-25, 11:1-8, 11:17-21, 13:19-8, 15:1-25, 16:1-20, 17:15-18, 19:1-25, 20:1-25, 21:1-6 (Martin Goldberg addresses this Court disclosing communications with non-party Mount Sinai Beth Israel (MSBI) which indicate Defendants counsel sought to engage Defendant MSMC's sister hospital's legal department into pressuring a pivotal witness, Elliott Goodman, M.D., into recanting his freely given declaration based on his personal recollection). Excerpt of the Hearing Tr. (May 19, 2023) with the relevant portions is attached hereto as Exhibit 4.

[10] *See Storer Commc'ns, Inc. v. Mogel*, 625 F. Supp. 1194, 1203–04 (S.D. Fla. 1985).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was emailed on June 16, 2023, or in the manner specified on all counsel or parties of record on the Service List below:

***Attorneys for Defendant, Mount Sinai Medical Center of Florida
and Defendant, Kfir Ben-David, MD***
Martin B. Goldberg, Esq.
David R. Ruffner, Esq.
Clark Splichal, Esq.
Lash & Goldberg LLP
Miami Tower
100 S.E. 2nd Street
Suite 1200
Miami, Florida 33131
Primary Email: mgoldberg@lashgoldberg.com; csplichal@lashgoldberg.com
druffner@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com; mwallace@lashgoldberg.com

***Attorneys for Defendant, Kfir Ben-David, MD***
Gary A. Orseck, Esq.
Lauren Cassady Andrews, Esq.
Kramer, Levin, Naftalis, & Frankel, LLP
2000 K Street, NW, 4th Floor
Washington, DC 20006
Primary Email: gorseck@kramerlevin.com; landrews@kramerlevin.com

            Respectfully submitted,
            /s/ *Richard H. Levenstein*
            Richard H. Levenstein
            Florida Bar No. 235296
            Gabrielle O. Sliwka
            Florida Bar No. 1022654
            Abby M. Spears
            Florida Bar No. 44662
            Primary E-mail: rlevenstein@nasonyeager.com
            gsliwka@nasonyeager.com;
            aspears@nasonyeager.com
            Secondary E-mail: ptreadway@nasonyeager.com;
            creyes@nasonyeager.com
            NASON, YEAGER, GERSON,
            HARRIS & FUMERO, P.A.
            3001 PGA Boulevard, Suite 305
            Palm Beach Gardens, Florida 33410
            Telephone: (561) 686-3307
            *Attorneys for Plaintiff, Paige Finkelstein, M.D.*