Page 1

1                   UNITED STATES DISTRICT COURT

                    SOUTHERN DISTRICT OF FLORIDA

2                         MIAMI DIVISION

3                   CASE NO.:  1:23-cv-20188-RKA

4

5     PAIGE FINKELSTEIN, M.D.,

6              Plaintiff,

      vs.

7

      MOUNT SINAI MEDICAL CENTER OF

8     FLORIDA, INC, a Florida Not For Profit

      Corporation, and KFIR BEN-DAVID, M.D.,

9

               Defendants.

10    _____/

11

12

13

14                      Monday, June 5, 2023

                        9:40 a.m. - 4:22 p.m.

15

16

17      HYBRID ZOOM VIDEOCONFERENCE DEPOSITION OF BARRY WAX,

                            ESQUIRE

18

19

20

21            Taken on behalf of the Defendants before

22    Christine Savoureux-Mariner, Florida Professional

23    Reporter and Notary Public in and for the State of

24    Florida at Large, pursuant to Notice of Taking

25    Deposition in the above cause.

```
1    APPEARANCES:
2             RICHARD H. LEVENSTEIN, ESQUIRE
              GABRIELLE O. SLIWKA, ESQUIRE
3             NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.
              3001 PGA Boulevard
4             Suite 305
              Palm Beach Gardens, Florida 33410
5             (561) 686-3307
              rlevenstein@nasonyeager.com
6             ON BEHALF OF PLAINTIFF
7
8             DAVID R. RUFFNER, ESQUIRE
              LASH GOLDBERG, LLP
9             Suite 1200, Miami Tower
              100 Southeast Second Street
10            Miami, Florida 33131
              (305) 347-4040
11            druffner@lashgoldberg.com.
              ON BEHALF OF DEFENDANTS
12
13   ALSO PRESENT:
14       Edwin Aragon, Videographer
15       Arnold Jaffee, Mount Sinai Medical Center
16       Paige Finkelstein (Via Zoom)
17       David Finkelstein (Via Zoom)
18
19
20
21
22
23
24
25
```

Page 3

```
 1                     I N D E X
 2  WITNESS                                    PAGE
 3  BARRY WAX, ESQUIRE
 4     Direct Examination By MR. LEVENSTEIN       7
 5     Cross-Examination By MR. RUFFNER          47
 6     Redirect Examination By MR. LEVENSTEIN   168
 7     Cross-Examination By MR. RUFFNER         186
 8  Read and Sign Letter                        196
 9  Errata Sheet                                197
10
11                   E X H I B I T S
12  PLAINTIFF'S          DESCRIPTION            PAGE
13  Exhibit P1           January 27, 2021 Email   20
14  Exhibit P2           January 18, 2021 Email   23
15  Exhibit P3           January 27th Email       25
16  Exhibit P4           March 31st Emails        27
17  Exhibit P5           April 1, 2021 Letter     28
18  Exhibit P6           Letter of Resignation    34
19  Exhibit P7           March 2, 2021 Letter     36
20  Exhibit P8           January 11, 2021
                         Disciplinary Action      38
21  Exhibit P9           ACGME Document           40
22  Exhibit P10          Letters of Recommendation 44
23
24  DEFENDANTS'          DESCRIPTION            PAGE
25  Exhibit 1            Subpoena Duces Tecum     48
```

Page 4

1                    I N D E X (Continued)

2

3    DEFENDANTS'            DESCRIPTION                    PAGE

4    Exhibit 2              Website Printout               75

5    Exhibit 3              Email                          89

6    Exhibit 4              Emails                         96

7    Exhibit 5              Email                          97

8    Exhibit 6              January 18, 2021 Email         99

9    Exhibit 7              January 20th Email             100

10   Exhibit 8              January 27th Email             104

11   Exhibit 9              January 27th Email             111

12   Exhibit 10             CM/ECF Filing                  116

13   Exhibit 11             March 2nd Email                127

14   Exhibit 12             March 22, 2021 Email           133

15   Exhibit 13             March 31st Email               143

16   Exhibit 14             April 2nd Letter               163

17   Exhibit 15             April 7th Email                166

18   Exhibit 16             Thumb Drive                    186

19

20

21

22

23

24

25

1  BY MR. LEVENSTEIN:

2      Q    All right.  I'd like you to take a look at

3  Plaintiff's Exhibit 2.

4          You'll see that is an email dated January 18,

5  2021 from Mr. Jaffee to you.

6      A    Yes.

7      Q    All right.  I just want to set up a timeline

8  here.  On January 18, 2021, you became aware, did you

9  not, that a release had been requested to be executed by

10  Dr. Finkelstein as a result of this email from

11  Mr. Jaffee?

12      A    I'm sorry?

13      Q    Let me ask it again.

14      A    Yeah, please.

15      Q    On January 18th, Mr. Jaffee wrote to you and

16  mentions the language of a release.  Do you see that?

17      A    Yes.

18      Q    Had you had a conversation with him before

19  January 18th about a release?

20      A    Yes, we would have had to have.

21      Q    All right.  And your conversations with him

22  began, based upon your testimony and the documentation,

23  on or about January the 13th of 2021?

24      A    Yes, that's correct.

25      Q    So within five days after you began your

1   discussions with Mr. Jaffee, he wrote to you to confirm

2   the discussions you had about the need for a release to

3   be executed by Dr. Finkelstein?

4        A    That's correct.

5             MR. RUFFNER:   Object to form.

6   BY MR. LEVENSTEIN:

7        Q    And, in fact, this email of January 18th, 2021

8   attached this proposed letter of January 18, 2021 signed

9   by Dr. Ben-David, didn't it?

10       A    Yes.

11       Q    And was it your understanding that in order to

12   have a letter prepared by Dr. Ben-David for

13   Dr. Finkelstein similar to the one that was attached,

14   she would have to sign a general release?

15       A    That's correct.

16            MR. RUFFNER:   Object to the form.

17   BY MR. LEVENSTEIN:

18       Q    Did that understanding of yours, that a

19   general release would be required to be executed by

20   Dr. Finkelstein in order to obtain a letter from

21   Dr. Ben-David, ever change?

22       A    No.

23            MR. RUFFNER:   Object to form.

24   BY MR. LEVENSTEIN:

25       Q    Did you ever receive any -- what

1  correspondence, if any, did you ever receive from

2  Mr. Jaffee that varied from the terms of the release

3  that he initially sent to you?

4       A    Nothing.

5       Q    Now, I know you think highly of Mr. Jaffee,

6  but I just want you to focus on the facts of this case,

7  and Mr. Jaffee represented a client in connection with

8  these interactions you had with him, didn't he?

9       A    Yes.

10      Q    And when he was his client?

11      A    Mount Sinai Medical Center.

12      Q    Is he the chairman of the board of that

13  company?

14      A    No, he is not.

15      Q    All right.  Is he the chief executive officer

16  of that company?

17      A    No, he is not.

18      Q    And what did you understand his position to

19  be?

20      A    General counsel.

21      Q    What did you understand him to be relating to

22  you in his correspondence to you with regard to these

23  issues concerning Dr. Finkelstein?

24      A    The requirements that were given to him by his

25  employers.

```
                                              Page 172

 1        Q     I want you to next take a look at Plaintiff's
 2   Exhibit 3.
 3        A     Okay.
 4        Q     That should be the email from Mr. Jaffee --
 5        A     Yes.
 6        Q     -- to you dated January 27, 2021 --
 7        A     Correct.
 8        Q     -- with the attached release.  Do you have
 9   that?
10        A     Yes, I do.
11        Q     All right.  Does Mr. Jaffee's letter to you
12   indicate that that release is a draft?
13        A     No.
14              MR. RUFFNER:  Object to form.
15   BY MR. LEVENSTEIN:
16        Q     And look at the full and final release of
17   claims attached to it.  Can you read through there and
18   tell me if the word "draft" appears anywhere on that
19   document.
20        A     It does not.
21        Q     Now, aside from this full and final release of
22   all claims that's attached to Plaintiff's Exhibit 3,
23   correspondence of January 27, 2021 from Mr. Jaffee to
24   you, did you ever receive another draft of a release
25   that differed or varied from the one attached to
```

Page 173

1    Exhibit 3?

2         A    No.

3         Q    During the times that you were having

4    discussions -- let me ask it a different way.  I'll use

5    the document instead.

6              We'll take a look at Defendants' Exhibit 7.

7    That's the email you sent to Mr. Wax on January 20th --

8    that you sent to Mr. Jaffee on January 20, 2021.

9         A    Yes.

10             MR. RUFFNER:  I'm sorry, you said Defendant's

11        Exhibit 7?

12             THE WITNESS:  Defendant's 7.

13             MR. LEVENSTEIN:  Defendant's Exhibit 7, yes.

14   BY MR. LEVENSTEIN:

15        Q    You wrote, "A letter like this Paige's chances

16   of being accepted into another program rather than

17   help."

18             What was the letter that you were referring to

19   there?

20        A    The January 18th letter from Dr. Ben-David.

21        Q    You wrote, "If this is the best Dr. Ben-David

22   is willing to write on behalf of my client, I

23   respectfully decline."

24             Do you see that?

25        A    Yes.

1    Q    Did Mr. Jaffee ever provide you with another

2  letter from -- proposed letter from Dr. Ben-David with

3  different terms than the one that we just looked at?

4    A    No.

5    Q    And you also wrote, "For what it's worth, I

6  have spoken with several former residents who worked

7  with Paige, and this letter does not accurately reflect

8  her true contributions to the Mount Sinai community.  If

9  Dr. Ben-David is willing to be honest about Paige's

10  medical abilities and assist her in obtaining another

11  residency, I will reconsider my decision."

12         After you sent that email to Mr. Jaffee on

13  January 20th of 2021, did he ever write back and respond

14  to this email and your comments about the letter and

15  Dr. Finkelstein's contributions to the program?

16    A    Not in writing.

17    Q    Did you have a discussion with him about that?

18    A    Yes.

19    Q    And what did he tell you in response to this

20  email of January 20, 2021?

21    A    I would have to paraphrase, but what I recall

22  him saying to me is that Paige's -- or Dr. Finkelstein's

23  performance is not what you believe it to be, that we're

24  going to -- anything that we write is going to be

25  truthful, and that's what we believe we are able to

Page 175

1  write.

2      Q    Yet the letter that Dr. Ben-David signed as

3  the draft letter, which we just looked at and is

4  attached to various exhibits, including Defendants'

5  Exhibit 7 makes no mention of any of the issues with

6  Dr. Finkelstein's performance as a resident, does it?

7      A    No, it does not.

8      Q    And it makes no mention of any professionalism

9  issues in it, does it?

10      A    It does not.

11      Q    All right.  So they were willing to provide

12  this letter, which omitted all of that information which

13  Mr. Jaffee provided you with, if, and only if,

14  Dr. Finkelstein signed a general release of all claims?

15           MR. RUFFNER:  Object to form.

16           THE WITNESS:  Well, it would include the

17       things that are in the letter that was presented on

18       January 18th if she provided a release.  That was

19       the extent of what the letter would be.

20  BY MR. LEVENSTEIN:

21      Q    Right.  So the letter that did not reference

22  the professionalism issues and Dr. Finkelstein's

23  performance as a resident would only be provided if

24  Dr. Finkelstein signed the general release?

25           MR. RUFFNER:  Object to form.

```
 1           MR. LEVENSTEIN:  Let me ask it a different
 2      way.
 3           THE WITNESS:  My understanding, to be clear,
 4      was if you give us a release, this is the letter
 5      that we will provide.  We are not going to provide
 6      a letter which, from our perspective, is
 7      inaccurate.
 8           That was theirs because we did not agree on --
 9      if I recall correctly, we did not agree on the
10      specific facts and circumstances surrounding her
11      separation from Mount Sinai.
12 BY MR. LEVENSTEIN:
13      Q    But none of that was contained -- no reference
14 to any of those issues is contained in the letter
15 dated -- the draft letter dated January 18, 2021?
16      A    That's correct.
17      Q    Now, if you'll take a look at Defendants'
18 Exhibit Number 8.
19      A    Okay.
20      Q    This is a letter/email that you sent to
21 Mr. Jaffee on January 27, 2021?
22      A    Yes.
23      Q    And these three documents that you requested
24 in this correspondence, were any of those documents ever
25 provided by Mr. Jaffee or Mount Sinai to you in response
```

Page 177

1    to this letter?

2        A    No.

3        Q    Now, let's take a look at Defendants'

4    Exhibit 11, which is the March 2, 2021 letter you sent

5    to Mr. Jaffee.

6        A    Okay.

7        Q    And you had extensive discussions with

8    counsel, Mr. Ruffner, about this letter, and I'm not

9    going to go back into them, I'm just going to ask a

10   couple of quick questions.

11       A    Sure.

12       Q    You wrote that in the second paragraph, "You,"

13   meaning Mr. Jaffee, "have indicated Mount Sinai will

14   only provide these documents if Dr. Finkelstein will

15   sign a general release from all claims, damages, and

16   administrative actions."

17            Did Mr. Jaffee ever write back to respond to

18   that statement by denying it?

19       A    No.

20       Q    Then you wrote, "I am in receipt of the

21   proposed draft release you provided on January 18,

22   2021."

23            And you wrote, "Please be advised that

24   Dr. Finkelstein will not be signing any releases to

25   obtain documents to which she is entitled."

Page 178

1          Do you see that?

2     A     Yes.

3     Q     At this time, you believed that all of the

4 documents that you were requesting were documents to

5 which Dr. Finkelstein had a legal entitlement?

6     A     Yes.

7     Q     And the release from Mr. Jaffee that

8 Dr. Finkelstein was requested to provide would have

9 extinguished the legal rights that she had to bring

10 claims against Mount Sinai and Dr. Ben-David, wouldn't

11 it?

12          MR. RUFFNER:  Object to form.

13          THE WITNESS:  That's correct.

14 BY MR. LEVENSTEIN:

15     Q     Do you understand that the execution of that

16 release was being demanded in exchange for

17 Dr. Finkelstein giving up legal rights that she

18 otherwise had?

19     A     Yes.

20          MR. RUFFNER:  Object to form.

21 BY MR. LEVENSTEIN:

22     Q     And that is the definition of extortion, isn't

23 it?

24          MR. RUFFNER:  Object to form.

25          THE WITNESS:  I'm not going to answer

Page 179

1      questions about definitions and legal opinion.

2  BY MR. LEVENSTEIN:

3      Q    You would agree with me that Dr. Finkelstein,

4  from your perspective had a legal right to all the

5  documents you requested Mr. Jaffee provide?

6           MR. RUFFNER:  Object to form, as well as asked

7      and answered.

8           THE WITNESS:  Yes.

9  BY MR. LEVENSTEIN:

10     Q    And you've already testified, I just want to

11 confirm --

12          MR. RUFFNER:  Mr. Levenstein, can you speak

13     up?

14          MR. LEVENSTEIN:  I'm sorry.

15 BY MR. LEVENSTEIN:

16     Q    You've already testified, and I just want to

17 confirm the timeline here, that at no time was the

18 demand for an executed general release by Paige

19 Finkelstein in exchange for those documents ever

20 withdrawn?

21     A    That's correct.

22     Q    Now, Mr. Ruffner asked you a number of

23 questions about whether you accused Mr. Jaffee of

24 committing a crime.  Do you remember that?

25     A    Yes.  Well, I don't know if it was

Page 180

1   Mr. Jaffee --

2        Q    Or Mount Sinai?

3        A    -- or Mount Sinai.

4        Q    What obligation, if any, did you have to

5   accuse anyone of committing a crime under these

6   circumstances?

7             MR. RUFFNER:  Object to form.

8             THE WITNESS:  None.

9   BY MR. LEVENSTEIN:

10       Q    And what impact on the facts that we've

11  discussed here today and the documents that we've

12  reviewed today would your accusing Mount Sinai Medical

13  Center of having committed a crime have?

14            MR. RUFFNER:  Object to form.

15            THE WITNESS:  None.

16  BY MR. LEVENSTEIN:

17       Q    How many times were you required to request or

18  demand, which you've testified were equivalent,

19  documents from Mount Sinai to which she was legally

20  entitled?

21            MR. RUFFNER:  I'm sorry, I couldn't hear the

22       question.

23            MR. LEVENSTEIN:  Sure.

24  BY MR. LEVENSTEIN:

25       Q    How many times as a lawyer were you required

Page 181

1  to request or demand the provision of documents to which
2  Dr. Finkelstein was legally entitled to receive?
3          MR. RUFFNER:  Object to form.
4          THE WITNESS:  Once.
5  BY MR. LEVENSTEIN:
6      Q    And how many times did you make that request
7  during the time of this interaction with Mr. Jaffee?
8      A    More than once.
9      Q    Was there ever a change in Mount Sinai's
10  position following the multiple requests or demands for
11  those documents that you made?
12      A    No, there was not.
13      Q    Let's take a look next at Defendant's
14  Exhibit 12, please.
15      A    Okay.
16      Q    And this is the email you sent to Mr. Jaffee
17  with regard to Mr. Finkelstein?
18      A    Yes.
19      Q    Okay.  Did Mr. Jaffee ever agree to hold the
20  meeting that Mr. Finkelstein requested between he, you,
21  Dr. Finkelstein, Mr. Jaffee, and the CEO of the
22  hospital?
23      A    He didn't agree to hold the meeting and
24  include the CEO, but I would have to look back on the
25  April 1st letter to determine whether he agreed to the

```
                                              Page 193

 1   RE       : Finkelstein, M.D. vs. Mount Sinai Medical
     Center of Florida
 2   DEPO OF: BARRY WAX, ESQUIRE
     TAKEN    : June 5, 2023
 3
 4                         EXCEPT FOR ANY CORRECTIONS
                           MADE ON THE ERRATA SHEET BY
 5                         ME, I CERTIFY THIS IS A TRUE
                           AND ACCURATE TRANSCRIPT.
 6                         FURTHER DEPONENT SAYETH NOT.
 7                         _____
                           BARRY WAX, ESQUIRE
 8
     STATE OF FLORIDA    )
 9                       )  SS:
     COUNTY OF MIAMI-DADE)
10
11           Sworn and subscribed to before me this
12           _____ day of _____, 2023.
13   PERSONALLY KNOWN _____ OR I.D._____
14                         _____
                           Notary Public in and for
15                         the State of Florida at
                           Large.
16
17   Notary #GG345792
18   My commission expires: 06/17/2023
19
20
21
22
23
24
25
```

Page 194

1         CERTIFICATE OF OATH OF WITNESS

2

3    STATE OF FLORIDA      )
                          ) SS:
4    COUNTY OF MIAMI-DADE)

5

6          I, CHRISTINE SAVOUREUX-MARINER, Florida

7    Professional Reporter and Notary Public in and for

8    the State of Florida at Large, certify that the

9    witness, BARRY WAX, ESQUIRE, personally appeared

10   before me on June 5, 2023 and was duly sworn by me.

11          WITNESS my hand and official seal this 9th

12   day of June, 2023.

13

14

15                   CHRISTINE SAVOUREUX-MARINER
                     Notary Public, State of Florida
16                   at Large

17

18   Notary #GG345792

19   My commission expires: 06/17/2023

20

21

22

23

24

25

Page 195

1                    REPORTER'S DEPOSITION CERTIFICATE

2

3            I, CHRISTINE SAVOUREUX-MARINER, Florida

4    Professional Reporter, certify that I was authorized

5    to and did stenographically report the deposition of

6    BARRY WAX, ESQUIRE, the witness herein on June 5,

7    2023; that a review of the transcript was requested;

8    that the foregoing pages numbered from 1 to 197

9    inclusive is a true and complete record of my

10   stenographic notes of the deposition by said

11   witness; and that this computer-assisted transcript

12   was prepared under my supervision.

13           I further certify that I am not a

14   relative, employee, attorney or counsel of any of

15   the parties, nor am I a relative or employee of any

16   of the parties' attorney or counsel connected with

17   the action.

18           DATED this 9th day of June, 2023.

19

20

                   CHRISTINE SAVOUREUX-MARINER

21                 Florida Professional Reporter

22

23

24

25

```
                                          Page 196

 1           Richard H. Levenstein, Esquire
                relevenstein@nasonyeager.com
 2
                                    June 9, 2023
 3

 4   RE     : Finkelstein, M.D. vs. Mount Sinai Medical
     Center of Florida
 5   DEPO OF: Barry Wax, Esquire
     TAKEN  : June 5, 2023
 6   JOB #  : 5914013

 7

 8           The above-referenced transcript is available
 9   for review.  Barry Wax, Esquire should read the
10   testimony to verify its accuracy.  If there are any
11   changes, Barry Wax, Esquire should note those with the
12   reason on the attached Errata Sheet.
13           Barry Wax, Esquire should, please, date and
14   sign the Errata Sheet and email to the deposing attorney
15   as well as to Veritext at Transcripts-fl@veritext.com
16   and copies will be emailed to all ordering parties.
17           It is suggested that the completed errata be
18   returned 30 days from receipt of testimony, as
19   considered reasonable under Federal rules*, however,
20   there is no Florida statute to this regard.
21           If the witness fails to do so, the transcript
22   may be used as if signed.
23                     Yours,
24                     Veritext Legal Solutions
25   *Federal Civil Procedure Rule 30(e)/Florida Civil
     Procedure Rule 1.310(e).
```

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2) Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.


DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.