Pages 1 - 54

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Before The Honorable Lisette M. Reid, Magistrate Judge

PAIGE FINKELSTEIN, M.D.,          )
                                  )
            Plaintiff,            )
                                  )
   VS.                            )          NO. 23-CV-20188-RKA
                                  )
MOUNT SINAI MEDICAL CENTER OF     )
FLORIDA, et al.,                  )
                                  )
            Defendants.           )
_____   )

Miami, Florida
Friday, May 19, 2023

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:

        NASON YEAGER GERSON HARRIS & FUMERO, P.A.
        3001 PGA Boulevard, Suite 305
        Palm Beach Gardens, Florida 33410
  BY:  **RICHARD H. LEVENSTEIN, ESQ.**
     **GABRIELLE OLIVIERI SLIWKA, ESQ.**

For Defendants:

        LASH & GOLDBERG LLP
        100 Southeast Second Street, Suite 1200
        Miami, Florida 33131
  BY:  **MARTIN B. GOLDBERG, ESQ.**
     **CLARK SIGMAN SPLICHAL, ESQ.**
     **ASHLEY PAIGE SINGROSSI, ESQ.**

Transcribed By:  James C. Pence-Aviles, RMR, CRR, CSR No. 13059
              Official Court Reporter

1    as well?

2          **MR. GOLDBERG:**  Yes, ma'am.

3          **THE COURT:**  Okay.  Very good.

4      All right.  So let's start with the issue of the

5    deposition of Dr. Goodman.  Why has that been problematic?  I

6    see his affidavit saying that he's not available on the 23rd,

7    but there are dates on which he is available.

8          **MR. GOLDBERG:**  So I'll address that, Judge -- and,

9    again, Martin Goldberg -- and let me do it in two parts.  I

10   think the second part will make your -- your job a little bit

11   easier today.

12     But the first part I have to address is we wholly disagree

13   with the -- the motion for protective order and the recitation

14   of events both by Mr. Levenstein and Dr. Goodman in his

15   declaration.

16     And just by way of background, as you may recall,

17   Dr. Goodman executed a declaration that Mr. Levenstein filed in

18   a reply in the motion for injunction briefing.  And then

19   Mr. Levenstein said he would call Dr. Goodman as a witness in

20   the forthcoming injunction hearing on June 21st.

21     We spoke.  I -- Mr. Splichal and I reached out to

22   Dr. Goodman, spoke to him on the phone.  We realized, during

23   that discussion, that there were material misrepresentations in

24   the declaration.

25     We asked when he'd be able to be deposed.  He said to

1    a -- a deposition unavailability of a nonparty witness,
2    particularly in a circumstance where both -- both parties are
3    available.  The real issue, again, is Mr. Levenstein's
4    assertion that he does not want to have his witnesses deposed
5    first.
6         You asked about the alternative dates.  I will also say
7    that Mr. Levenstein initially took a position -- and we have
8    emails to this effect -- that Dr. Goodman is not available
9    until June 15th, completely contrary to what Dr. Goodman told
10   us.
11        We have corresponded with Dr. Goodman and asked him if he
12   had any issues.  He never wrote back to us saying he had a
13   conflict.  He wouldn't explain it.  During a meet-and-confer
14   with Mr. Levenstein, Mr. Levenstein said, "I'll reach out to
15   Dr. Goodman and ask him to call you to explain why he's not
16   available."  We got no call.
17        So I disagree with the -- the characterizations and the --
18   and the posture that Mr. Levenstein, on behalf of Dr. Goodman,
19   is making.  Now, let me get to the second part, which I think
20   will somewhat moot this issue.
21        As you -- as you know, and I've said before, Dr. Goodman
22   is contending in his declaration that Dr. Ben-David's
23   reference, a provision of information to Mount Sinai
24   Beth Israel -- I'll refer to it as "Beth Israel" -- caused
25   Dr. Paige Finkelstein to not get a job there.  We wholly

```
 1   disagree with that premise, but that is their position.

 2       We served a subpoena on Beth Israel in New York to get the

 3   underlying documents.  We have been waiting to get those

 4   documents.  I had a call with an in-house counsel for

 5   Beth Israel yesterday, and they --

 6           MR. LEVENSTEIN:  Your Honor, I don't mean to

 7   interrupt, but this is --

 8           THE COURT:  No.

 9           MR. LEVENSTEIN:  This --

10       MR. GOLDBERG:  Your Honor --

11           MR. LEVENSTEIN:  This is --

12       MR. GOLDBERG:  -- I need to get into this --

13           MR. LEVENSTEIN:  Your Honor, this is --

14           THE COURT:  Excuse me, Mr. Levenstein.  Excuse me.

15   Please --

16           MR. LEVENSTEIN:  I'm sorry.  I'm sorry to interrupt.

17           THE COURT:  Okay.  Then don't, please.  I want to give

18   him --

19           MR. LEVENSTEIN:  Yes.

20           THE COURT:  -- just a few minutes more to explain his

21   position, and I definitely will listen to everything you have

22   to say.

23           MR. LEVENSTEIN:  Thank you, Your Honor.

24           THE COURT:  Okay.  Don't worry.

25       All right.  Mr. Goldberg?
```

1      **MR. GOLDBERG:**  I spoke to in-house counsel,

2   Ms. Erica Liu, yesterday with respect to our subpoena and with

3   respect to the declaration that Mr. [sic] Goodman filed.

4      Beth Israel has told me that they believe that, and they

5   know that, the declaration that Mr. -- Dr. Goodman filed is

6   false.  He was not authorized to file it, and it impacts

7   privileges that Beth Israel has.  They made a demand, as I

8   understand it, last night to Dr. Goodman to withdraw that

9   affidavit.

10     And they have also asked me, as of last night and again

11  this morning, if I would give them time to work out the issue

12  with Dr. Goodman to have him withdraw the affidavit and/or

13  address it in another way perhaps with you, Judge, or this

14  Court.  And if he is to be deposed, they would need time to --

15  they would want to be there to address these issues.

16     So I agreed, at 9:45 this morning, to let them have that

17  time, of course.  I will want to let you know that we will move

18  off our position that Dr. Goodman should be deposed Tuesday, in

19  deference to Beth Israel, and allow them to work out the issues

20  with Dr. Goodman.

21     I do, however -- I have to say, I will probably need to

22  depose him at some point.  I don't know how that's going to

23  work out, and we're going to have to address it between now and

24  the injunction hearing.

25     But I am amenable, and I have agreed with Beth Israel,

```
 1   to -- to not go forward with a deposition.  And I think it
 2   behooves everybody, including this Court, not to have a false
 3   declaration in the record.
 4        THE COURT:  Okay.  So let me make sure I understand.
 5   You are withdrawing your motion at this time?
 6        MR. GOLDBERG:  I don't -- it wasn't my motion for a
 7   protective order.  It was Mr. Levenstein's.
 8        THE COURT:  Thank you.  It's their motion for a
 9   protective order.
10   Okay.  So you're withdrawing your objection to their
11   motion at this time.  Okay.
12        MR. GOLDBERG:  Yeah.  I -- I am saying right now I
13   will after this hearing, and we will file a -- a notice of
14   cancellation with an intent to reschedule to give Beth Israel
15   time to work their position out with Dr. Goodman.  And I think
16   they're going to make the same request to Mr. Levenstein not to
17   have a false record.
18        THE COURT:  Okay.  All right.  So -- very good.
19   Let me hear from you, Mr. Levenstein.
20        MR. LEVENSTEIN:  Thank you.
21   And I apologize for -- for interrupting before, but this
22   is way beyond the pale of a motion for a protective order
23   directed to a deposition of a third-party witness who submitted
24   an affidavit of his unavailability.
25   Now, for Mr. Goldberg to comment to the Court, on this
```

1    issue, that there's some material misrepresentations in the

2    affidavit and that -- referencing some conversation that he had

3    with Dr. Goodman, where there's no affidavit contradicting what

4    Dr. Goodman says in his affidavit, is nothing short of an

5    outrage and, I believe, way beyond the pale of what should have

6    been addressed in this motion.

7         And if there is some conversation that Mr. Goldberg had

8    that contradicts the terms of the affidavit, I would request

9    that the Court require him, under oath, to submit an affidavit

10   and his notes and everything else he just referred to and allow

11   me to depose him not only as to his conversation with

12   Dr. Goodman that he's now represented that he had to the Court

13   but the conversations that he indicated he's had with counsel

14   for the hospital as well.

15        He's now put all that at issue with regard to Dr. Goodman.

16   I want the right to depose him under oath and ask him about

17   those conversations because I believe this is close to witness

18   tampering, Your Honor.  This man is not employed by

19   Mount Sinai.  He was employed by a third party, the

20   City University of New York.  They have no control or

21   jurisdiction over him any longer.

22        And for Dr. -- Mr. Goldberg to represent to the Court

23   these ex parte communications he's having with counsel for the

24   hospital in connection with Dr. Goodman is inappropriate and

25   now -- has now put what he has said to the Court, and

1  represented to the Court, at issue not only with regard to the

2  deposition but with regard to the merits of the affidavit.

3       And he's made those representation -- representations to

4  Your Honor, and he should be required now to stand up and

5  justify them under oath in a deposition because I've had no

6  correspondence or communication with any counsel from

7  Mount Sinai in response -- in respect to those documents that

8  have been requested.

9       Additionally, I never asked or told Mr. -- Mr. Good- --

10  Mr. Goldberg that I would ask Dr. Goodman to call him with

11  additional dates.  I said I would contact Dr. Goodman and

12  obtain additional dates, which I did.

13       I submitted those June 1st and June 2nd dates to

14  Mr. Goldberg and Mr. Splichal.  They never have responded to

15  whether they are available on those dates or whether they will

16  agree to take the deposition on those dates.

17       This is the first we have heard of any contact with

18  Mount Sinai's counsel in New York or anything of what

19  Mr. Goldberg just referenced.  I would strongly object to this.

20  It's inappropriate, and the Court needs to now, I believe, get

21  to the bottom of what Mr. Goldberg just represented.

22       So we want to continue and take the deposition of

23  Dr. Goodman.  He's unavailable.  He submitted an affidavit that

24  he's unavailable.  That -- he's a third-party witness.  We've

25  given them alternative dates.  I don't know what else we could

1 counsel --

2        **THE COURT:** Okay.

3        **MR. LEVENSTEIN:** -- with respect to that. They have

4 never responded to those emails with regard to those two dates.

5        **THE COURT:** Okay. So, Mr. Goldberg, when at this

6 point do you want to make him available for this deposition?

7        **MR. GOLDBERG:** Okay. So, Your Honor, first of all, he

8 said -- I can't make him available. He's not --

9        **THE COURT:** Well, that is true. He's not a party;

10 right? So he --

11        **MR. GOLDBERG:** He's not a party, and he's actually an

12 adverse witness because he's aligned with Dr. Finkelstein and

13 Mr. Levenstein -- Finkelstein [sic].

14        **THE COURT:** Okay. And he doesn't work for

15 Mount Sinai?

16        **MR. GOLDBERG:** So he -- for my Mount Sinai in

17 Miami Beach? No.

18        **THE COURT:** Okay.

19        **MR. GOLDBERG:** He was a -- he was a doctor -- and I

20 know it's a little confusing, but I want to explain this to

21 you.

22        **THE COURT:** Yeah. I really want to understand.

23        **MR. GOLDBERG:** Yeah. So he was a doctor who was

24 working at Beth -- I'm going to call it "Beth Israel in

25 New York."

1  to refer -- from now until we leave you at some point, I'll

2  refer to the New York hospital as "Beth Israel."

3           THE COURT:  Got it.

4           MR. GOLDBERG:  Okay.

5           THE COURT:  Okay.  And so Goodman doesn't work there,

6  either?

7           MR. GOLDBERG:  So he did --

8           THE COURT:  He did.

9           MR. GOLDBERG:  -- during all -- he did.

10           THE COURT:  Okay.

11           MR. GOLDBERG:  He was a doctor during all the relevant

12  times involved here, where Dr. Finkelstein enlisted his help to

13  try and get a job as an assistant physician extender, it's

14  called, at Beth Israel.

15      And Dr. Goodman took up her cause and -- and promoted her

16  within the system and put her before the credentials committee

17  to try and get her credentialed.  And that --

18           THE COURT:  Okay.

19           MR. GOLDBERG:  -- is where a lot of the -- you know, a

20  lot of discussion occurred at Beth Israel about her background.

21  Dr. Goodman has since left --

22           THE COURT:  I see.

23           MR. GOLDBERG:  -- Beth Israel and now is at another

24  institution in New York called the City University of

25  New York --

1          **THE COURT:**  Okay.

2          **MR. GOLDBERG:**  -- Health System.

3      And -- but Beth Israel, in their discussions -- I want to

4  make it clear that I told Beth Israel's in-house counsel I

5  would be making these representations to you today, and they

6  approved them.  So -- and that -- and that attorney, for

7  Mr. Levenstein's benefit, is Ms. Erica Liu, and I know that she

8  was also working with their general counsel.

9      So during all the relevant times that Beth Israel now has

10  an issue with the declaration that was filed by Dr. Goodman, it

11  was done referencing his responsibilities when he was at

12  Beth Israel and referencing purportedly what occurred there.

13  But Beth Israel is of the belief that that is not accurate, and

14  they asked last night to -- for Dr. Goodman to withdraw it.

15      I understand that Dr. Goodman spoke to Mr. Levenstein last

16  night about that.  So his suggestion that he doesn't know

17  anything is up to him, but I am going to wait for Beth Israel

18  to get back to me about how that's going to get worked out.

19  That will depend on when I think that we should schedule

20  Dr. Goodman's deposition.

21      As to the specific dates --

22          **THE COURT:**  Okay.

23          **MR. GOLDBERG:**  Let me just do one thing, and I

24  apologize to go on.

25      As to the specific dates that Mr. Levenstein sent, I think

 1    they're somewhat illusory.  So June 1st, he sent over.  He

 2    knows that he and I have another case where we have hearings

 3    all day.

 4         On the -- on the 2nd, there's two hearings, a motion to

 5    dismiss hearing and another discovery hearing.  So that date

 6    doesn't work.

 7              **THE COURT:**  I see.

 8              **MR. GOLDBERG:**  June 2nd, I have other conflicts.  But

 9    I think more importantly is the dates he sent over were only

10    for four-hour blocks --

11              **THE COURT:**  I see.

12              **MR. GOLDBERG:**  -- and -- and I can't agree to just

13    four hours when he's cross-noticing the deposition.  We both

14    want to take the deposition.

15         And Beth Israel, you know, has represented to me they have

16    documents they're going to produce that bear on these issues.

17    And I'll tell you, I think they're very favorable for us.  So I

18    want to get those documents before we depose Dr. Goodman.

19              **THE COURT:**  Makes sense.  Okay.

20              **MR. GOLDBERG:**  Thank you, Your Honor.

21              **THE COURT:**  All right.  So -- so, Mr. Levenstein,

22    basically, you win.  He's not going to depose Mr. Goodman on

23    the 23rd.  The 1st and 2nd are not available.  Counsel's not

24    available, including you, as I understand it.

25         And -- tell me what I'm missing.

1      **MR. LEVENSTEIN:**  All right.  Your Honor, on June 1st,

2  we have hearings scheduled.  We both have other lawyers in our

3  firms who are on those cases, who have argued motions in that

4  case.

5      So I gave June 1st because I was going to have another

6  attorney in my firm, who's working with me on that case, argue

7  if that was the date of the deposition, as Mr. Goldberg has

8  done in other cases we have together, had other lawyers in his

9  office handle matters such as that.

10     June 2nd -- this is the first we've heard, since we

11  supplied those dates a week ago or more to Mr. Goldberg, that

12  he's unavailable on June 2nd.  So we had no knowledge of what

13  his schedule is on June 2nd or what his conflict is until just

14  now.

15     And I feel compelled to just correct a couple of things

16  here.  Dr. Finkelstein was not being credentialed for hospital

17  privileges at Mount Sinai Beth Israel in New York.  She was

18  being vetted for a position not as a physician extender but as

19  a house surgeon.  A physician extender is a nonphysician

20  position.  A house surgeon is a physician position.

21     That's what she was offered conditionally by Dr. Goodman.

22  And there are documents that will confirm that they were

23  excited to have her, subject to the documents that she was to

24  have produced with respect to her residency at Mount Sinai,

25  which she did not have at that time because Mount Sinai refused

1   to provide them to her.

2        That's one of the counts of this complaint, for tortious

3   interference, among other things, but what took place in that

4   is not the hospital credentialing.  It was a position of

5   employment that Dr. Goodman was the point person on and made

6   the decision as to offer her that position.

7        He is a very important witness.  His affidavit will be

8   borne out by documents that support what actions he took, and

9   there's even an offer letter to her confirming that she will be

10  employed by them when she sought a place to rent, telling the

11  third parties what she was going to earn.

12       So there's much more to the story than can be told in this

13  hearing, but I need to fill in the blanks here because there

14  are too many.

15       And as far as Beth Israel in New York is concerned, if

16  they have some concerns that they want to raise, they should

17  raise them in this case themselves.  Mr. Goldberg is not their

18  mouthpiece and doesn't represent them.  He didn't share with

19  me, prior to this hearing, that he had had contact with them.

20       This hearing has been set for several days, when the Court

21  set it.  If there was going to be representations such as the

22  ones that were just made, it would have been at least courteous

23  to advise what to expect.

24       Or if there was going to be a -- a position taken that

25  there was some material misrepresentations by Dr. Goodman under

 1  oath in his affidavits, two of them, not just one, then there

 2  should have been something under oath to contravene them rather

 3  than bare representations of counsel, which we've heard this

 4  morning.

 5       So I understand that the deposition will not take place,

 6  but we need to get that deposition taken before the hearing.

 7  And the last point I want to make is this, Your Honor.

 8       **THE COURT:**  Well, I wonder -- I wonder if, in getting

 9  that deposition taken -- that you shouldn't just either

10  contact -- or contact Beth Israel, I guess, his former

11  employer, because that's who he would be sort of representing,

12  in a sense, since that's where -- when he would be -- in other

13  words, that was his employer at the time.

14       Maybe you should contact them --

15       **MR. LEVENSTEIN:**  Yes.

16       **THE COURT:**  -- as well, since Mr. Goldberg certainly

17  did, and Mr. [sic] Goodman personally, and go ahead and get

18  some more dates and get that set up.

19       **MR. LEVENSTEIN:**  I will be happy to do that.  I have

20  not had any contact with counsel from Beth Israel.  I don't

21  have any information as to how to contact that person.

22       **THE COURT:**  Well, not -- I think Mr. Goldberg just

23  gave you the name.

24       **MR. LEVENSTEIN:**  I have the name.  I'm happy to

25  contact them --

```
 1              THE COURT:  Yes.

 2         MR. LEVENSTEIN:  -- but they have not reached out to

 3    me in the same way --

 4              THE COURT:  Okay.

 5         MR. LEVENSTEIN:  -- that they reached out to

 6    Mr. Goldberg.

 7              THE COURT:  Okay.  So -- very good.

 8       Let me then ask:  Should I then deny the motion as moot --

 9    your motion as moot?

10         MR. GOLDBERG:  Yes.  From my perspective, that would

11    be the correct ruling.

12         MR. LEVENSTEIN:  And, Your Honor, we would rather have

13    you grant the motion because we went to -- to great lengths to

14    deal with this issue.

15       And now, all of a sudden, Mr. Goldberg is withdrawing it

16    after taking a position that, notwithstanding the fact that a

17    witness, under oath, had said he was unavailable on a given

18    date -- that he was going to proceed with the deposition

19    nonetheless, which is an unreasonable position and, in my view,

20    warrants an award of attorney's fees and costs as a result of

21    taking it.

22              THE COURT:  Well, I have to tell you, granting a

23    motion -- it doesn't move the case forward, especially since

24    Mr. Goldberg doesn't even want to depose him on the 23rd.

25       As far as attorney's fees and costs, there is, you know,
```