1
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
2
CASE NO. 23-cv-20188-PAS

3

4       PAIGE FINKELSTEIN, M.D.,                    )   Pages 1-105
                                                    )
5                       Plaintiff,                  )
                                                    )
6                   vs.                             )   Miami, Florida
                                                    )
7       MOUNT SINAI MEDICAL CENTER OF               )
        FLORIDA, INC., KFIR BEN-DAVID, M.D.,        )   June 21, 2023
8                                                   )   9:00 A.M.
                        Defendants.
9

10                   TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE LISETTE M. REID
11                    U.S. MAGISTRATE JUDGE

12      APPEARANCES:

13      For the Plaintiff:      RICHARD H. LEVENSTEIN, ESQ.
                                GABRIELLE OLIVIERI SLIWKA, ESQ.
14                              Nason Yeager Gerson Harris
                                & Fumero, P.A.
15                              3001 PGA Boulevard, Suite 305
                                Palm Beach Gardens, Florida  33410
16
        For the Defendant:      MARTIN B. GOLDBERG, ESQ.
17                              CLARK SIGMAN SPLICHAL, ESQ.
                                Lash & Goldberg LLP
18                              100 Southeast 2nd Street, Suite 1200
                                Miami, Florida  33131
19

20

21

22      Reported by:            VERNITA ALLEN-WILLIAMS
        Vernita_Allen-Williams  Official Court Reporter
23      @flsd.uscourts.gov      United States District Court
        305.523.5048            400 North Miami Avenue
24                              Miami, Florida  33128

25

1            EXHIBITS ADMITTED

2    Defendants' Exhibit 1.........................Page 88

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (Call to order of the court at 9:04 A.M.)
 2       THE COURT:  Good morning.  Please be seated, everyone.
 3       So we're here this morning on Case No. 23-20188.
 4       Let me get my computer started here.  Let's get
 5  appearances from counsel, starting with plaintiff.
 6       MR. LEVENSTEIN:  Good morning, Your Honor.  Richard
 7  Levenstein, Nason Yeager, for the plaintiff.
 8       THE COURT:  Okay.
 9       MS. SLIWKA:  Good morning, Your Honor.  Gabrielle Sliwka
10  on behalf of plaintiff, Paige Finkelstein.
11       THE COURT:  Okay.
12       MR. LEVENSTEIN:  And, Your Honor, we have Dr. Paige
13  Finkelstein sitting at the table with us, the plaintiff.
14       THE COURT:  Very good.
15       MR. GOLDBERG:  Good morning, Your Honor.  Martin Goldberg
16  and Clark Splichal, from the law firm Lash Goldberg, on behalf of
17  the defendants, Mount Sinai Medical Center and Dr. Kfir Ben-David.
18       Also with us at counsel's table is Arnold Jaffee, who is
19  the senior vice president and general counsel of the medical
20  center, and Dr. Kfir Ben-David.
21       THE COURT:  Very good.  Are our microphones working well?
22       THE COURTROOM DEPUTY:  I think it's the computer.  We
23  were trying to make it work.
24              (Brief pause for technology.)
25       THE COURT:  Okay.  So this is a hearing on the
```

09:06AM  1  preliminary injunction that plaintiff has requested in this case

09:06AM  2  and I had asked for some additional briefing to understand exactly

09:06AM  3  what the plaintiff wants, and then we got a response from the

09:06AM  4  defendant.

09:06AM  5          I reviewed your pleading, plaintiff, and I still do not

09:06AM  6  see any authority for the district court to do what the plaintiff

09:06AM  7  asks.

09:06AM  8          So if I understand correctly -- and I'm going to pull up

09:06AM  9  the plaintiff's pleadings -- the plaintiff is asking the Court to

09:07AM  10  require the defendant to allow the plaintiff to determine who will

09:07AM  11  write a letter of recommendation on her behalf; and to submit this

09:07AM  12  letter.  And I'm not sure how this works, and you've told me there

09:07AM  13  is some agreement between the parties as to how or between the

09:07AM  14  medical -- Mount Sinai and the plaintiff as to how a

09:07AM  15  recommendation should be done, but how does the Court have

09:07AM  16  authority?

09:07AM  17          So I'd like to hear exactly -- from the plaintiff exactly

09:07AM  18  what you want the Court to do --

09:07AM  19          MR. LEVENSTEIN:  Yes, ma'am.

09:07AM  20          THE COURT:  -- and why I have authority to do it.

09:07AM  21          MR. LEVENSTEIN:  Yes, ma'am.

09:07AM  22          THE COURT:  Okay.  So let's start with that, and then

09:08AM  23  we'll get a response from the defendant.

09:08AM  24          MR. LEVENSTEIN:  And may I clarify something that Your

09:08AM  25  Honor said?

| | |
|---|---|
| 09:08AM | 1 |
| 09:08AM | 2 |
| 09:08AM | 3 |
| 09:08AM | 4 |
| 09:08AM | 5 |
| 09:08AM | 6 |
| 09:08AM | 7 |
| 09:08AM | 8 |
| 09:08AM | 9 |
| 09:08AM | 10 |
| 09:08AM | 11 |
| 09:08AM | 12 |
| 09:08AM | 13 |
| 09:08AM | 14 |
| 09:08AM | 15 |
| 09:08AM | 16 |
| 09:08AM | 17 |
| 09:09AM | 18 |
| 09:09AM | 19 |
| 09:09AM | 20 |
| 09:09AM | 21 |
| 09:09AM | 22 |
| 09:09AM | 23 |
| 09:09AM | 24 |
| 09:09AM | 25 |

1    THE COURT:  You are free to do so.

2    MR. LEVENSTEIN:  All right.  The relief that we're asking

3 is in light of the events that have occurred between Dr.

4 Finkelstein and Dr. Ben-David as alleged in our pleadings and why

5 we are here, for Dr. Finkelstein to suggest an individual at Mount

6 Sinai Medical Center to prepare what is commonly known as the

7 program director letter for her based upon her two and a half

8 years of residency as a general surgery resident at Mount Sinai --

9    THE COURT:  Okay.

10    MR. LEVENSTEIN:  -- with the consent --

11    THE COURT:  Let's start with that.

12    MR. LEVENSTEIN:  But I have to finish the sentence in

13 order for you to fully understand.

14    THE COURT:  Okay.

15    MR. LEVENSTEIN:  -- with the consent as to the selection

16 of the person by Mount Sinai Medical Center, which shall not be

17 unreasonably withheld.

18    What we are seeking is an objective and fair and

19 impartial letter, program director letter from Mount Sinai Medical

20 Center with regard to Dr. Finkelstein.  That is the relief

21 primarily that we seek.  And the Court also needs to understand

22 that at the early stages of this matter, prelitigation there was a

23 program director letter drafted and signed by Dr. Ben-David --

24    THE COURT:  I understand.

25    MR. LEVENSTEIN:  -- and presented to prior counsel with

09:09AM  1   the proviso and condition and requirement that it only be

09:09AM  2   furnished in final form for release if Dr. Finkelstein signed a

09:09AM  3   general release of all claims that she may have had against Mount

09:09AM  4   Sinai Medical Center, Dr. Ben-David, or anyone else connected with

09:09AM  5   the program.

09:09AM  6         That letter, while it was not adequate, did not contain

09:10AM  7   any negative comments about Dr. Finkelstein; it did not provide

09:10AM  8   any specific information about her either, so it would have

09:10AM  9   generated many, many questions about her and follow-up questions

09:10AM  10  because of the brevity of that letter.  And she, based upon her

09:10AM  11  then counsel's advice, refused to sign a general release to obtain

09:10AM  12  a letter to which she was entitled; and to which if she had

09:10AM  13  received -- executed that general release, the hospital was

09:10AM  14  willing to provide, even though it did not contain negative

09:10AM  15  comments about her.

09:10AM  16        If Your Honor recalls, in the response that has been

09:10AM  17  filed by the defendants, one of the things that they say is that

09:10AM  18  if you grant the relief, they may be forced to whitewash -- their

09:10AM  19  term, not mine -- whitewash Dr. Finkelstein's true performance in

09:11AM  20  her residency or make false statements about her, which might

09:11AM  21  create liability for them in the future or for Dr. Finkelstein.

09:11AM  22        Yet they were able -- willing and able to provide such a

09:11AM  23  letter that did not contain any of that information if Dr.

09:11AM  24  Finkelstein provided and executed a general release of all claims

09:11AM  25  and we would not be sitting here if that had occurred and she was

09:11AM  1   not required to sign a general release to obtain something that

09:11AM  2   she was entitled to receive and required to receive pursuant to

09:11AM  3   the American Commission -- ACGME, American accreditation of

09:11AM  4   Graduate Medical Education Program -- Accreditation Council for

09:11AM  5   Graduate Medical Education, which governs residency programs at

09:11AM  6   every institution in the United States that is certified by that

09:11AM  7   organization.  That's the relief that we're asking for, in a

09:12AM  8   nutshell.

09:12AM  9        Now, other members of the general surgery program at

09:12AM  10  Mount Sinai Medical Center, including the assistant program

09:12AM  11  director, have provided positive references for Dr. Finkelstein.

09:12AM  12  We've attached those to our pleadings previously.  One in

09:12AM  13  particular Dr. Bao, B-a-o, who was the assistant program director,

09:12AM  14  has furnished a detailed letter in which he recommended her to

09:12AM  15  transfer to another residency program.  Unfortunately, without the

09:12AM  16  letter from the program director or some agreement from the

09:12AM  17  hospital that Dr. Bao's letter can serve as the program director's

09:12AM  18  letter, Dr. Finkelstein career has been stymied because every

09:12AM  19  application she has filed and every position she has sought has

09:12AM  20  required a program director letter and -- or a reference from the

09:13AM  21  program director.  And the reference from Dr. Ben-David, from our

09:13AM  22  perspective, to one of her most recent applications at Mount Sinai

09:13AM  23  Beth Israel -- if you recall, we talked about that last time --

09:13AM  24  she was given a conditional job offer, conditioned upon her

09:13AM  25  references.  And after the person in charge of that hiring

| | |
|---|---|
| 09:13AM | 1 |
| 09:13AM | 2 |
| 09:13AM | 3 |
| 09:13AM | 4 |
| 09:13AM | 5 |
| 09:13AM | 6 |
| 09:13AM | 7 |
| 09:13AM | 8 |
| 09:13AM | 9 |
| 09:14AM | 10 |
| 09:14AM | 11 |
| 09:14AM | 12 |
| 09:14AM | 13 |
| 09:14AM | 14 |
| 09:14AM | 15 |
| 09:14AM | 16 |
| 09:14AM | 17 |
| 09:14AM | 18 |
| 09:14AM | 19 |
| 09:14AM | 20 |
| 09:14AM | 21 |
| 09:14AM | 22 |
| 09:14AM | 23 |
| 09:15AM | 24 |
| 09:15AM | 25 |

process, Dr. Elliott Goodman -- who the Court will also recall we had discussions about -- spoke to Dr. Ben-David, he was forced to withdraw that offer as a result of comments he had to relay to others who were making the decisions regarding Dr. Finkelstein's employment.

So we're only interested in allowing Dr. Finkelstein at this point to try to continue her medical career, which she cannot do in the present state because of the lack of this program director letter. And if can -- we're asking the Court to give this relief because this is relief to which she's entitled, it's within the Court's equitable powers. Honestly, I have not found a case similar to this where a court has addressed the issue of a program director letter. This is a unique set of circumstances, so I can't provide the Court with a specific case that addresses this issue. However, under these facts -- and I want to go into them in much more detail when I make the rest of my presentation, and give the Court the real background of the relationship between the Mount Sinai Medical Center residency program like every other residency program in the United States and the ACGME, and why the ACGME relationship with residency programs is not only mandatory and contractual but is required because the American Board of Medical Specialties, which issues board certifications to physicians in their areas of specialization -- so when you go to see a physician, on the wall we see the certificates from the board of certification of that physician specialty -- in order to

| | |
|---|---|
| 09:15AM | 1 |
| 09:15AM | 2 |
| 09:15AM | 3 |
| 09:15AM | 4 |
| 09:15AM | 5 |
| 09:15AM | 6 |

09:15AM   1   obtain that board certification, a physician has to be a graduate

09:15AM   2   of a residency program certified and accredited by the ACGME.  So

09:15AM   3   this is not some gratuitous relationship between these

09:15AM   4   organizations; they're mandatory.  They're required in order to be

09:15AM   5   accredited for a physician to go on, become board certified,

09:15AM   6   and --

09:15AM   7          THE COURT:  All right.  Give me a moment --

09:15AM   8          MR. LEVENSTEIN:  Yes, sir -- yes, ma'am.

09:15AM   9          THE COURT:  -- so that I can help you frame my concerns.

09:15AM   10          MR. LEVENSTEIN:  Yes, ma'am.

09:15AM   11          THE COURT:  So the ACGME is -- seems to be a contractual

09:15AM   12   agreement between the resident and the hospital.  And if I

09:15AM   13   understand you correctly, that agreement this ACGME or this

09:16AM   14   organization that somehow is the governing body for this type of

09:16AM   15   agreement, allows Dr. Finkelstein to choose who she wants to write

09:16AM   16   a program director letter.

09:16AM   17          MR. LEVENSTEIN:  No, ma'am.  No, ma'am.

09:16AM   18          THE COURT:  Okay.  So this is not a contract dispute?

09:16AM   19          MR. LEVENSTEIN:  It's not a contract dispute in any

09:16AM   20   traditional sense.  And let me just correct the Court, if I might.

09:16AM   21   ACGME --

09:16AM   22          THE COURT:  Excuse me.  Let me ask a few questions so

09:16AM   23   that --

09:16AM   24          MR. LEVENSTEIN:  Okay.

09:16AM   25          THE COURT:  I'm trying to understand.

09:16AM  1       MR. LEVENSTEIN:  One thing you said was not accurate --

09:16AM  2       THE COURT:  Okay.

09:16AM  3       MR. LEVENSTEIN:  -- and it is the foundation of your

09:16AM  4  questions.

09:16AM  5       The ACGME contract is with the residency program itself.

09:16AM  6       THE COURT:  Okay.  Who was her program director?

09:16AM  7       MR. LEVENSTEIN:  Dr. Ben-David, the defendant.

09:16AM  8       THE COURT:  Why wouldn't the program director write the

09:17AM  9  program director letter?

09:17AM  10      MR. LEVENSTEIN:  In this case, Dr. Ben-David, because of

09:17AM  11  the relationship that he has with my client as we allege has

09:17AM  12  indicated that he is not impartial, fair, or objective towards

09:17AM  13  her, and required her to sign a general release in exchange for

09:17AM  14  that letter, which in our view is prima facie evidence of the bad

09:17AM  15  faith nature of that entire operation.  And then when she did not

09:17AM  16  sign the general release, withdrew that program director letter.

09:17AM  17  And since that time, whatever comments have been made by Dr.

09:17AM  18  Ben-David with respect to Dr. Finkelstein have been negative in

09:17AM  19  his contacts with individuals about her efforts to move on with

09:17AM  20  her career.  And there has been no program director letter

09:17AM  21  furnished by anyone from that program, nor could one be furnished

09:17AM  22  in the sense of a fair and objective evaluation of her based upon

09:17AM  23  the facts as we've alleged in this case.

09:18AM  24      What we are asking -- I'm sorry.

09:18AM  25      THE COURT:  Assuming this is a legal issue and this is

09:18AM   1   something that the courts even have authority over, if he is the

09:18AM   2   program director and he has written a program director letter and

09:18AM   3   she doesn't like that letter for whatever reason, where does the

09:18AM   4   Court get the authority to require the defendant to get a

09:18AM   5   different letter from a different person?  Where am I finding this

09:18AM   6   authority?  And if I understand correctly, you're saying I find

09:18AM   7   that authority in the ACGME.

09:18AM   8          MR. LEVENSTEIN:  You find that authority in the

09:18AM   9   relationship between the ACGME and the institution, Mount Sinai

09:18AM   10  Medical Center, and the relationship --

09:18AM   11         THE COURT:  Can you point to the paragraph?

09:18AM   12         MR. LEVENSTEIN:  Can I take the Court through --

09:19AM   13         My presentation was going to take the Court through the

09:19AM   14  documents between the hospital, Mount Sinai Medical Center, and

09:19AM   15  the ACGME, and point out provisions that bear directly on what

09:19AM   16  we're asking for.

09:19AM   17         THE COURT:  Okay.  So then it sounds like a contract

09:19AM   18  dispute; right?  There is some sort of -- in your presentation,

09:19AM   19  you're going to show me that there is an agreement between the

09:19AM   20  hospital and the resident or the hospital and ACGME --

09:19AM   21         MR. LEVENSTEIN:  Both.

09:19AM   22         THE COURT:  -- and that agreement will give the Court

09:19AM   23  authority to enforce this relationship.

09:19AM   24         MR. LEVENSTEIN:  Yes, ma'am.

09:19AM   25         THE COURT:  Okay.  Assuming all that is true, isn't that

09:19AM 1    just a contract dispute?

09:19AM 2              MR. LEVENSTEIN:  It would be a contract dispute absent

09:20AM 3    the events that have transpired between Mount Sinai Medical Center

09:20AM 4    and Dr. Ben-David and Dr. Finkelstein.

09:20AM 5              THE COURT:  Okay.

09:20AM 6              MR. LEVENSTEIN:  But with the events that have

09:20AM 7    transpired, it takes it out of a contract dispute and puts it into

09:20AM 8    the equitable jurisdiction of the Court.

09:20AM 9              THE COURT:  So that's the next step.  It is a contract

09:20AM 10   dispute.  I understand that's what you filed.  Now you're asking

09:20AM 11   for a preliminary injunction.

09:20AM 12             How am I to have authority under the Rules of Civil

09:20AM 13   Procedure to enjoin the hospital in this case?

09:20AM 14             And that's where we're having the gap.  Okay?  Assuming

09:20AM 15   what you've filed is something that the courts can settle, handle,

09:20AM 16   where is the preliminary injunction?

09:20AM 17             MR. LEVENSTEIN:  The preliminary injunction comes in the

09:21AM 18   court's broad powers to enter injunctive relief in its equity

09:21AM 19   jurisdiction.

09:21AM 20             THE COURT:  So the injunctive relief is generally to stop

09:21AM 21   the defendant from doing something.

09:21AM 22             MR. LEVENSTEIN:  Yes.

09:21AM 23             THE COURT:  In a patent case I stop the defendant from

09:21AM 24   selling the plaintiff's product without their authority.  In a

09:21AM 25   traditional preliminary injunction I'm asking the defendant to

09:21AM 1   stop doing something that they're not allowed to do by law or

09:21AM 2   statute.

09:21AM 3           What is it you want me to stop the defendant from doing

09:21AM 4   that they're not allowed to do by law or statute?  Let's start

09:21AM 5   with that.

09:21AM 6           MR. LEVENSTEIN:  All right.

09:21AM 7           THE COURT:  And then we'll go through the other

09:21AM 8   prerequisites, elements, requirements for preliminary injunction

09:22AM 9   but let's start with; what do you want me to stop them from doing?

09:22AM 10          MR. LEVENSTEIN:  In those terms, to stop them from

09:22AM 11  allowing Dr. Ben-David to provide any information about Dr.

09:22AM 12  Finkelstein, because he cannot be objective or fair in doing so

09:22AM 13  based upon their relationship.  And because of the authority that

09:22AM 14  he has as program director, he is, in effect, preventing her from

09:22AM 15  carrying on her medical career.

09:22AM 16          She is unable to transfer to another residency program,

09:22AM 17  she has been unable to obtain positions even as a house physician,

09:22AM 18  a house surgeon at Mount Sinai Beth Israel.  That's what we want

09:22AM 19  to have stopped; but it has to go beyond stopping that from

09:22AM 20  occurring and allowing a substitute for that program director

09:22AM 21  letter so she can go on with her career.

09:22AM 22          THE COURT:  Right.  So I understand how your allegation

09:23AM 23  against Dr. Ben-David would mean that you have some sort of

09:23AM 24  lawsuit for defamation or a lawsuit for some sort of character

09:23AM 25  assassination or something of that nature against Dr. Ben-David.

09:23AM  1      How, however, does that require the Court or permit the
09:23AM  2  Court to then go to the hospital and say:  Well, you must allow
09:23AM  3  some other person to write the letter of recommendation?
09:23AM  4      MR. LEVENSTEIN:  We also have claims for RICO violation
09:23AM  5  based upon these acts that we've alleged between Mount Sinai and
09:23AM  6  Dr. Ben-David, and we also have claims for tortious interference
09:23AM  7  in business relationships, meaning her efforts to obtain and
09:23AM  8  successfully obtain conditional employment, which are then
09:24AM  9  withdrawn after Dr. Ben-David is consulted by those potential
09:24AM  10  employers.
09:24AM  11      THE COURT:  Your tortious interference claim is against
09:24AM  12  who?
09:24AM  13      MR. LEVENSTEIN:  Both Dr. Ben-David and Mount Sinai.
09:24AM  14      THE COURT:  And this RICO claim, that's in your initial
09:24AM  15  lawsuit?
09:24AM  16      MR. LEVENSTEIN:  It is, and the second amended complaint,
09:24AM  17  Your Honor.  It's part of the extortion count, based upon the
09:24AM  18  withholding of these documents; not only the program director
09:24AM  19  letter, but other documents which are required to be provided to
09:24AM  20  Dr. Finkelstein by the ACGME institutional contract with Mount
09:24AM  21  Sinai, which I will go through with the Court specifically.
09:24AM  22      THE COURT:  Okay.
09:24AM  23      MR. LEVENSTEIN:  And all of those documents were not
09:24AM  24  provided to her because she didn't sign a release.  Only after
09:24AM  25  this lawsuit was filed and a complaint was filed with the ACGME

09:24AM  1   itself by Dr. Finkelstein -- which she has the right to do, so if

09:24AM  2   there is any doubt about her relationship with the ACGME, the fact

09:25AM  3   that she can file a complaint related to her treatment as a

09:25AM  4   resident overcomes that in and of itself -- only after those

09:25AM  5   complaints were filed were those documents released by Mount Sinai

09:25AM  6   to Dr. Finkelstein.  It took all of that to get those documents.

09:25AM  7           THE COURT:  So assuming that I have the authority to --

09:25AM  8   the equitable power to do this, generally equity only works when

09:25AM  9   there is no adequate remedy at law.

09:25AM  10          Why isn't there an adequate remedy at law for what you've

09:25AM  11  just described?

09:25AM  12          MR. LEVENSTEIN:  There's no adequate remedy at law

09:25AM  13  because Dr. Finkelstein went to four years of medical school, two

09:25AM  14  and a half years of residency to train to be a general surgeon,

09:25AM  15  and beyond for a surgical subspecialty.  She is unable to pursue

09:25AM  16  that career now, which she spent many years of her life to

09:26AM  17  accomplish, because of what has happened between she and Dr.

09:26AM  18  Ben-David and Mount Sinai.

09:26AM  19          Now, money can furnish compensation for lost earnings and

09:26AM  20  earning capacity, but it cannot compensate her for the lost

09:26AM  21  opportunity to care for patients and be a physician at the level

09:26AM  22  which she trained -- started her training for and no longer can

09:26AM  23  continue that training.  Is there an element of the claim that

09:26AM  24  includes money damages alternatively?  Yes, there are.  But if she

09:26AM  25  is able to move forward with her career, certainly those money

09:26AM   1   damages end and she moves on as if she would have absent this

09:26AM   2   interruption.

09:26AM   3          But without this relief, she is deprived of the

09:26AM   4   opportunity to pursue a career which she finished half of the

09:27AM   5   required training for post-medical school graduation.  And this is

09:27AM   6   a physician who went to MIT undergraduate, graduated with high --

09:27AM   7   high in her class in medical school at the University of Miami,

09:27AM   8   and then went on to this general surgery residency program for two

09:27AM   9   and a half years before she was first terminated and then forced

09:27AM   10  to resign.

09:27AM   11         THE COURT:  And then my next question is:  You're asking

09:27AM   12  that she get the opportunity to pick the person who writes the

09:27AM   13  program director letter?

09:27AM   14         MR. LEVENSTEIN:  Only with the consent of Mount Sinai and

09:27AM   15  Ben-David to that person, which should not be unreasonably

09:27AM   16  withheld; or, in the alternative, if Mount Sinai and Dr. Ben-David

09:27AM   17  would stipulate that Dr. Bao's letter, which has already been

09:27AM   18  written and circulated by Dr. Finkelstein to other employers,

09:28AM   19  would serve as the program director letter by stipulation, then

09:28AM   20  that would also address that issue.

09:28AM   21         THE COURT:  And all of this -- the authority for all of

09:28AM   22  this is in the agreement in the ACGME?

09:28AM   23         MR. LEVENSTEIN:  The basic authority that I'm going to

09:28AM   24  point out to the Court, yes, ma'am.  The specific -- will I be

09:28AM   25  able to point you to something that says when a program director

09:28AM  1   and a resident in the program are involved in litigation or in a

09:28AM  2   dispute such as this one, that the resident has the right to

09:28AM  3   suggest someone else writes the letter?  I can't point you to

09:28AM  4   that, but I can point you to the requirements with regard to what

09:28AM  5   is required of the institution as to what evaluations are required

09:28AM  6   of a resident, how they are to be evaluated, and what the program

09:28AM  7   director's responsibilities are pursuant to these documents.

09:28AM  8            And just so --

09:29AM  9            THE COURT:  So then if the program director has written a

09:29AM 10   letter, the breach of responsibility you say is requiring the

09:29AM 11   general release.

09:29AM 12            If they didn't require the general release and simply

09:29AM 13   provided "Here is your program letter," then they will have

09:29AM 14   fulfilled the requirements?

09:29AM 15            MR. LEVENSTEIN:  Technically.  Technically if that letter

09:29AM 16   was a fair and objective evaluation of Dr. Finkelstein, yes,

09:29AM 17   ma'am.  But to condition it upon a general release of all claims

09:29AM 18   was not only inappropriate, but in our view extorting her into

09:29AM 19   signing a document by giving up legal rights that she had

09:29AM 20   unlawfully, because she was entitled to receive the program

09:29AM 21   documents, the evidence of the completion of the two and a half

09:29AM 22   years of a residency, her diploma with regard to completing her

09:29AM 23   internship and the two and a half years, and a summative

09:29AM 24   evaluation, which is the evaluation of her performance as a

09:30AM 25   resident, the program director letter was a fourth element of

09:30AM 1  that, and those documents were not provided that I just mentioned,

09:30AM 2  nor would they be provided, nor with the program director letter,

09:30AM 3  absent signing the general release.  And until we filed this

09:30AM 4  lawsuit and the complaint with the ACGME, they were not provided

09:30AM 5  to her.

09:30AM 6       THE COURT:  So if the preliminary injunction simply said

09:30AM 7  that based on ACGME requirements and the agreement between the

09:30AM 8  resident, the hospital, and the doctor, that the doctor does not

09:30AM 9  have or the hospital does not have the authority to ask for a

09:30AM 10 general release then in exchange for a program letter --

09:30AM 11      MR. LEVENSTEIN:  Yes, ma'am.

09:30AM 12      THE COURT:  -- then I'm done; right?  That's all that I

09:30AM 13 can do at the preliminary injunction stage; correct?

09:30AM 14      MR. LEVENSTEIN:  I think you can go beyond that by

09:30AM 15 requiring --

09:30AM 16      THE COURT:  So you're asking for the affirmative act?

09:30AM 17      MR. LEVENSTEIN:  We are.  The affirmative act is to, in

09:31AM 18 light of the fact that this program director letter has proven not

09:31AM 19 to be, from our perspective, a fair or objective evaluation of Dr.

09:31AM 20 Finkelstein.

09:31AM 21      THE COURT:  No.  And that may be true.  I'm not disputing

09:31AM 22 that.

09:31AM 23      But isn't that a case for another day?  Or a decision to

09:31AM 24 be made in the case in tortious interference?  In the case, in

09:31AM 25 fact; not in a preliminary injunction?

| | |
|---|---|
| 09:31AM | 1 |
| 09:31AM | 2 |
| 09:31AM | 3 |
| 09:31AM | 4 |
| 09:31AM | 5 |
| 09:31AM | 6 |
| 09:31AM | 7 |
| 09:31AM | 8 |
| 09:31AM | 9 |
| 09:31AM | 10 |
| 09:32AM | 11 |
| 09:32AM | 12 |
| 09:32AM | 13 |
| 09:32AM | 14 |
| 09:32AM | 15 |
| 09:32AM | 16 |
| 09:32AM | 17 |
| 09:32AM | 18 |
| 09:32AM | 19 |
| 09:32AM | 20 |
| 09:32AM | 21 |
| 09:32AM | 22 |
| 09:32AM | 23 |
| 09:32AM | 24 |
| 09:32AM | 25 |

1    I just don't see the connection of requiring this
2 affirmative action, when I'm enjoining in the preliminary
3 injunction.  Do you understand the difference?
4    MR. LEVENSTEIN:  I do.  It's a mandatory injunction.
5 It's the portion of the injunction that would be mandatory relief
6 is what we're speaking of.
7    THE COURT:  Okay.  And you can find no authority for
8 this?
9    MR. LEVENSTEIN:  I cannot give you -- I have not found a
10 case that deals with this fact pattern, Your Honor, for whatever
11 reason.
12    THE COURT:  Oh, no, I'm not saying it should have the
13 same exact fact pattern; but any case in which the breach of an
14 agreement required the court to do anything more than enjoin the
15 party from not complying with the agreement.
16    MR. LEVENSTEIN:  If you enjoin the defendants from
17 providing the --
18    THE COURT:  From requiring a general release?
19    MR. LEVENSTEIN:  Right, then they would still be free to
20 provide any program director letter that they choose from Dr.
21 Ben-David.
22    THE COURT:  There is a First Amendment right.  But then
23 you have your tortious interference claim, you have your
24 defamation claim, you can pursue that if what he is doing is
25 unjust.

09:32AM    1       MR. LEVENSTEIN:  We can.  But what we're here to try to

09:32AM    2   do is protect Dr. Finkelstein and allow her to continue with her

09:32AM    3   career --

09:32AM    4       THE COURT:  I understand.

09:32AM    5       MR. LEVENSTEIN:  -- notwithstanding the claims that we've

09:32AM    6   brought so that she doesn't stagnate.

09:33AM    7       THE COURT:  I understand.  But what you're doing is

09:33AM    8   novel, and then the Court has to make sure that I understand your

09:33AM    9   authority for it.  It will be a completely novel issue; and anyone

09:33AM   10   who then finds that that is the case within their career, that

09:33AM   11   they get a letter of recommendation essentially that they feel is

09:33AM   12   unfair or has been written by someone who is unjust, not only can

09:33AM   13   they pursue defamation tortious interference, but now they're able

09:33AM   14   to reach into the company and require the company to allow the

09:33AM   15   plaintiff to decide who writes their letter of recommendation, and

09:33AM   16   that's a horse of a different color; isn't it?

09:33AM   17       MR. LEVENSTEIN:  It is.  But we're not saying that she

09:33AM   18   gets the right to pick and choose who writes the letter; it has to

09:33AM   19   be by agreement of both parties, which shall not be unreasonably

09:34AM   20   withheld.  We're not saying that she has the unilateral ability to

09:34AM   21   pick the person to write it.  She has the right to suggest who

09:34AM   22   would write it and the defendants would have to agree to that

09:34AM   23   suggestion, but they couldn't unreasonably withhold their consent.

09:34AM   24       THE COURT:  What would be unreasonable?  Maybe their

09:34AM   25   reason is that person's not the program director.

09:34AM  1          MR. LEVENSTEIN:  But Dr. Bao, who is the assistant

09:34AM  2    program director, would be a logical choice.  And to not consent

09:34AM  3    to him providing such a letter would be unreasonable, because he

09:34AM  4    would be the second in command.

09:34AM  5          THE COURT:  And who would get to decide whether it's

09:34AM  6    reasonable or unusual?  The court?

09:34AM  7          MR. LEVENSTEIN:  You would, Your Honor.

09:34AM  8          THE COURT:  Okay.

09:34AM  9          MR. LEVENSTEIN:  And the reasonable standard is certainly

09:34AM  10    a standard that all courts are familiar with because it's used in

09:34AM  11    so many different ways and in so many different factual

09:34AM  12    circumstances.

09:34AM  13          THE COURT:  Yes, I think the -- you know, the court can

09:35AM  14    do certain things, but there are limits to what the court can do,

09:35AM  15    but okay.

09:35AM  16          So now I'd like to hear from defendants with the same

09:35AM  17    questions so that I can understand.

09:35AM  18          Is there something else you wanted to add?

09:35AM  19          MR. LEVENSTEIN:  Your Honor, will I have the opportunity

09:35AM  20    to take the Court through the ACGME guidelines and the specific

09:35AM  21    provisions of it so the Court can see where this authority that we

09:35AM  22    are urging the Court to exercise would come from?

09:35AM  23          THE COURT:  Let me hear from defendants first.

09:35AM  24          MR. LEVENSTEIN:  Thank you.

09:35AM  25          THE COURT:  I don't want to have you go down the path

09:35AM  1   that in the end doesn't work for preliminary injunction.  I am not

09:35AM  2   saying you don't have a good case on your other counts; I'm just

09:35AM  3   wondering why we're here on preliminary injunction.

09:35AM  4          So I want to hear from defendants first, and then we can

09:35AM  5   proceed.  Counsel.

09:35AM  6          MR. GOLDBERG:  Thank you, Your Honor.  I think to educate

09:36AM  7   the Court on the questions that you've asked, I would like to walk

09:36AM  8   you through some documents that go to the relationship between a

09:36AM  9   --

09:36AM  10          I don't think this is working.

09:36AM  11          THE COURT:  Yes.  Can you hear okay though?

09:36AM  12          THE COURT REPORTER:  Yes.

09:36AM  13          MR. GOLDBERG:  So Martin Goldberg on behalf of the

09:36AM  14   hospital.  I have a binder that I'd like to hand up to you.  It

09:36AM  15   will illuminate the relationships that Mr. Levenstein has spoken

09:36AM  16   about.  And, to be frank, he is wrong on really all the counts

09:36AM  17   that he's set forth to you.  So if I could hand the notebook up --

09:36AM  18          THE COURT:  Well --

09:36AM  19          MR. GOLDBERG:  -- it will help me answer the specific

09:36AM  20   questions.  There are certain things in here that I can walk you

09:36AM  21   through that will answer the specific questions.

09:36AM  22          THE COURT:  I understand that.  But let me make sure that

09:36AM  23   I first understand --

09:36AM  24          MR. GOLDBERG:  Sure.

09:36AM  25          THE COURT:  -- what the facts are.

```
09:36AM    1          So did Dr. Ben-David, in fact -- he's the program
09:37AM    2  director; is that correct?
09:37AM    3          MR. GOLDBERG:  He is.
09:37AM    4          THE COURT:  And he has prepared a program director
09:37AM    5  letter.  And it's your position that that's what he's required to
09:37AM    6  do under the agreement between the resident, the hospital, and the
09:37AM    7  doctor?
09:37AM    8          MR. GOLDBERG:  Absolutely not.
09:37AM    9          THE COURT:  So you even disagree on --
09:37AM   10          MR. GOLDBERG:  Yes.
09:37AM   11          THE COURT:  -- what's required?
09:37AM   12          MR. GOLDBERG:  Yes, absolutely.  There is no -- sorry.
09:37AM   13          THE COURT:  There is no requirement --
09:37AM   14          MR. GOLDBERG:  No.
09:37AM   15          THE COURT:  -- for the program director?
09:37AM   16          MR. GOLDBERG:  No, there is no such thing as a program
09:37AM   17  director letter even under the ACGME.  What that means, and I
09:37AM   18  raised this with you the last conference we had, is that is really
09:37AM   19  a letter of recommendation.  Okay?  It is a letter of
09:37AM   20  recommendation that any applicant who wants to go to a residency
09:37AM   21  program has to ask for through a setup process called ERAS,
09:38AM   22  E-R-A-S, and that's what I wanted to show you in the documents.
09:38AM   23          That letter of recommendation -- and I want to highlight
09:38AM   24  this for you -- is completely voluntary.  It does not have to be
09:38AM   25  provided by a program director or anybody else.  It is completely
```

09:38AM  1   up to the program director to either decide to write it or not to

09:38AM  2   write it, and to -- what the program director is going to say.

09:38AM  3           In fact, I can walk you through in more detail, anytime a

09:38AM  4   resident wants a letter of recommendation to be sent to a possible

09:38AM  5   residency program that they're trying to get into, they have to

09:38AM  6   fill out through ERAS, which is a secure system run by the ACGME,

09:38AM  7   a letter of request form.  And that form gets electronically

09:38AM  8   submitted to the authors -- potential authors of the letter of

09:38AM  9   recommendation that that applicant wants to have write a letter

09:39AM  10  for them.  And through that system, that applicant asks that

09:39AM  11  proposed author to write a letter of recommendation to specific

09:39AM  12  institutions.

09:39AM  13          That applicant also through that system has to designate

09:39AM  14  whether they waive the right to read that letter, so it brings

09:39AM  15  more integrity to the process; or they don't waive that right.

09:39AM  16  And so when the author -- proposed author gets the letter of

09:39AM  17  request form, he or she will know whether the applicant has waived

09:39AM  18  or not waived their right, and whether that affects what he or she

09:39AM  19  may write.  Okay?

09:39AM  20          The letter of recommendation is either written or not

09:39AM  21  written by the person who gets that form, and it is sent directly

09:39AM  22  to the institution or the residency program that that applicant

09:39AM  23  wants to go to.

09:39AM  24          THE COURT:  Okay.

09:39AM  25          MR. GOLDBERG:  Here in this case Dr. Finkelstein never

09:40AM  1  made -- and she actually pleads -- if I could just, you know,

09:40AM  2  without going to the notebook -- paragraph 129 of her second

09:40AM  3  amended complaint, the gravamen of this issue that she can't get a

09:40AM  4  letter of recommendation, she actually pleads that:  The

09:40AM  5  Electronic Residency Application Service matches once per year.

09:40AM  6  And then she says that we, Mount Sinai and Dr. Ben-David, have

09:40AM  7  frustrated her ability to get a residency position through the

09:40AM  8  ERAS -- this electronic service that I've just explained how it

09:40AM  9  happens.

09:40AM  10         The fact of the matter is, and my colleague across the

09:40AM  11  aisle will not be able to contest this, is that she never

09:40AM  12  submitted an application to ERAS to get a letter of recommendation

09:40AM  13  from Mount Sinai.  What she did was two things.  And I will back

09:40AM  14  up for a second and just highlight that this is a resident who,

09:41AM  15  unfortunately, did not succeed in our program.  She was placed on

09:41AM  16  probation twice, she was given every opportunity to succeed, but

09:41AM  17  she had chronic professionalism issues that resulted at the end

09:41AM  18  with patient safety issues that led to her nonrenewal and then

09:41AM  19  termination.

09:41AM  20         So you have this resident, Dr. Finkelstein, who doesn't

09:41AM  21  ever make the letter of recommendation request to the hospital,

09:41AM  22  but she hires a local lawyer, Mr. Barry Wax -- you may be familiar

09:41AM  23  with him -- and he goes to Mr. Jaffee around this process and

09:41AM  24  says:  I -- I want a letter of recommendation.  Would Dr.

09:41AM  25  Ben-David be willing to write it?  This is not a required issue.

09:41AM   1   And so Mr. Jaffee and Dr. Ben-David say:  Yes.  Well, here's what

09:41AM   2   we're willing to submit to residency programs, not give it to her

09:42AM   3   but through ERAS if she were to make a request, and we want a

09:42AM   4   release.  Because I think, in fact, if you go through ERAS, you

09:42AM   5   not only waive your right to see it or don't waive your right to

09:42AM   6   see it, I think you release any claims.

09:42AM   7          But, in any event, they let her see what was written, but

09:42AM   8   it wasn't satisfactory to her.  Mr. Levenstein is correct:  That

09:42AM   9   letter was short, we didn't go into any of the negative issues,

09:42AM   10  but we wanted a release from her because we weren't required to

09:42AM   11  give it.  And, in fact, it was a good decision by Mr. Jaffee

09:42AM   12  because even the plaintiff in this case in a filing for you just

09:42AM   13  recently said that that letter was inaccurate and not sufficient,

09:42AM   14  so we would have been sued for defamation had he not asked for a

09:42AM   15  release.  In any event, they rejected that letter.  Okay?

09:42AM   16         And so what they've done is -- and I won't go through all

09:42AM   17  the threats -- but they made threats about ACGME complaints and so

09:43AM   18  forth trying to extract a better letter from the hospital.  The

09:43AM   19  hospital said no, so they filed this lawsuit.  And through this

09:43AM   20  lawsuit my view is that they're asking the Court to pick up where

09:43AM   21  Mr. Wax left off unsuccessfully to try to negotiate the contents

09:43AM   22  of a letter of recommendation that Dr. Ben-David never has to sign

09:43AM   23  to begin with.  Okay?

09:43AM   24         So now what my colleague has done, to answer your -- I

09:43AM   25  think your next question, but also to address what Mr. Levenstein

09:43AM  1    has said, is he now suggests to you that any authority is really

09:43AM  2    twofold; one, in the Court's equity powers that I'll get to in a

09:43AM  3    second; but more specifically he claims that the ACGME -- and I

09:43AM  4    think he got it wrong.  It's the Accreditation Council for

09:43AM  5    Graduate Medical Education -- that that somehow provides a hook or

09:43AM  6    a legal basis or a cognizable right for you as a Court to anchor

09:44AM  7    the equitable relief that you would be providing.  And yes, he's

09:44AM  8    asking to be provided not only traditional injunctive relief but

09:44AM  9    mandatory injunctive relief, which there's a whole other set of

09:44AM  10   problems with.  But I need to go through the ACGME with you,

09:44AM  11   because it does not provide in any way, shape, or form any anchor

09:44AM  12   for the Court.

09:44AM  13          And if -- well, I'll keep my notebook here.  It would be

09:44AM  14   a lot easier if I could give it to you.

09:44AM  15          THE COURT:  Well, I will let the plaintiff do that since

09:44AM  16   it's his burden to start with and he wants to go through it with

09:44AM  17   me.

09:44AM  18          MR. GOLDBERG:  Okay.

09:44AM  19          THE COURT:  But then, of course, you will get an

09:44AM  20   opportunity to respond.  But let me ask you another question.

09:44AM  21          So I understand there is a letter that's already been

09:44AM  22   written by the assistant program director.

09:44AM  23          MR. GOLDBERG:  I'd love to discuss that with you.

09:44AM  24          THE COURT:  Is that the case?

09:44AM  25          MR. GOLDBERG:  So what Dr. Finkelstein did after she was

09:44AM   1   unable to secure a letter of recommendation -- I don't want to

09:44AM   2   call it a program director letter, because there is no such thing.

09:45AM   3           THE COURT:  Okay.

09:45AM   4           MR. GOLDBERG:  -- a letter of recommendation from Mount

09:45AM   5   Sinai, she went to various faculty and other people at Mount Sinai

09:45AM   6   and asked outside of any ERAS process just:  I want to go back and

09:45AM   7   try and get my career started again.  Will you write me a letter

09:45AM   8   of recommendation?  And she went to Dr. Bao, the assistant program

09:45AM   9   director, she went to others.  And the testimony would be that,

09:45AM  10   yeah, they did write her letters.  They weren't fully truthful.

09:45AM  11   They spun it to avoid negative, you know, the negative information

09:45AM  12   at the hospital.  Dr. Bao's letter actually does say that, you

09:45AM  13   know:  There are professionalism issues.  She needs to mature.

09:45AM  14   She deserves a second chance, and they gave her those letters.

09:45AM  15           Now, you know, that's up to those individual authors.

09:45AM  16   They could either write it or not write it.  It wasn't an

09:45AM  17   official -- these are not official, you know, letters of

09:45AM  18   recommendation from the program.  But what I think that --

09:46AM  19           THE COURT:  So because they are not written by the

09:46AM  20   program director, they're not official?

09:46AM  21           What made them unofficial?  I just want to clarify.

09:46AM  22           MR. GOLDBERG:  I think she has and can take those letters

09:46AM  23   and submit them to whomever she wants by herself.

09:46AM  24           Does it carry the weight that an ERAS letter of

09:46AM  25   recommendation would where she waives her right to review it?  She

09:46AM  1    had a role in crafting these recommendation letters, which is part

09:46AM  2    of what's coming up in discovery.

09:46AM  3         THE COURT:  So what makes them unofficial is they didn't

09:46AM  4    go through ERAS?

09:46AM  5         MR. GOLDBERG:  They didn't go through ERAS, but they're

09:46AM  6    not approved by, you know, the program.  They can stand

09:46AM  7    whatever -- we don't have a problem if she wants to use those

09:46AM  8    letters and go to any employer or particularly a residency program

09:46AM  9    and use them, she can do it.

09:46AM  10        What happened though is when she filed this lawsuit, a

09:47AM  11   gravamen of her claim is to use those letters of recommendation

09:47AM  12   and say:  Look, here's what proves my point.  Here is what proves

09:47AM  13   that everything that Dr. Ben-David or the program or my

09:47AM  14   termination and my probations were not accurate, look at what

09:47AM  15   these other people said.  Okay?

09:47AM  16        We have actually gone to the people who wrote those

09:47AM  17   letters, including Dr. Bao -- and Dr. Bao filed declaration in

09:47AM  18   this case, I have it for you, and -- yeah.  And that -- let me

09:47AM  19   read what he says.  It's at ECF 86.1.  He says:  I also understand

09:47AM  20   that Dr. Finkelstein has introduced in this litigation a letter of

09:47AM  21   recommendation I prepared for her in 2021 as purported proof of

09:47AM  22   wrongdoing by Mount Sinai and/or Dr. Ben-David.  I am disappointed

09:47AM  23   by and do not accept her use of my letter of recommendation in

09:48AM  24   this regard.

09:48AM  25        In paragraph 6 he says:  My letter of recommendation was

09:48AM  1   an attempt to help Dr. Finkelstein continue in the medical

09:48AM  2   profession by focusing on her positive qualities, such as her

09:48AM  3   enthusiasm for medicine and strength in clinical knowledge.  I

09:48AM  4   believe strongly everybody is entitled to a second chance.

09:48AM  5          And he goes on to say:  The letter was not written in any

09:48AM  6   way to take back, downplay, or do anything that occurred with

09:48AM  7   respect to the program's evaluation of Dr. Finkelstein's

09:48AM  8   performance during her residency or the program's decision to

09:48AM  9   terminate her.

09:48AM  10         And then he discusses that during the course of her

09:48AM  11  residency he chaired the clinical competency committee, it's

09:48AM  12  called CCC, and that committee is a requirement in almost every

09:48AM  13  residency program, and that committee is set up to identify early

09:48AM  14  on for the resident's benefit residents who are struggling.  He

09:48AM  15  chaired that committee.  And during her second year, he wrote an

09:49AM  16  evaluation of her that's also in the record that he attaches to

09:49AM  17  his declaration, saying that:  The practice domains and

09:49AM  18  competencies by Dr. Finkelstein still show deficiencies and a lack

09:49AM  19  of progress, including professionalism and interpersonal

09:49AM  20  communication, as well as to some extent emotional health.

09:49AM  21  Unfortunately, these continued deficiencies speak as much to being

09:49AM  22  a good physician and as a good surgeon and may not be remediable.

09:49AM  23         THE COURT:  Okay.  I do understand that, Mr. Goldberg.

09:49AM  24  What I don't want to turn this into is the trial.

09:49AM  25         MR. GOLDBERG:  Understood.

09:49AM   1         THE COURT:  And there is going to be a trial, I'm

09:49AM   2   assuming, in the future.

09:49AM   3         MR. GOLDBERG:  We don't think so, but yes.

09:49AM   4         THE COURT:  Assuming there is, what I want to talk about

09:49AM   5   is stay within the framework of what we're asking for is

09:49AM   6   preliminary injunction.

09:49AM   7         Wouldn't there be an adequate remedy at law if, in fact,

09:49AM   8   the letter that she received is not what she would like to get?

09:50AM   9         MR. GOLDBERG:  Well, I mean yes.  I mean obviously, I

09:50AM  10   mean she sued for defamation, she sued for tortious interference.

09:50AM  11   I don't see why any of this is a product of injunctive relief; it

09:50AM  12   just isn't.  So, yeah, one of our major positions is there is an

09:50AM  13   adequate remedy at law.

09:50AM  14         But I say that also with the premise that I want to urge

09:50AM  15   upon you that for any injunctive relief, there has to be a

09:50AM  16   cognizable right that attaches to that relief.  And the ACGME

09:50AM  17   requirements, if you remember the last status conference, Mr.

09:50AM  18   Levenstein stood before you and he said that the ACGME

09:50AM  19   requirements absolutely require this letter of recommendation.  He

09:50AM  20   said she can't transfer to any institution without a letter of

09:50AM  21   recommendation.  And so I -- in whatever time you allow me, I want

09:51AM  22   to walk you through that ACGME is just an accreditation body to

09:51AM  23   the hospital.  It creates no contractual or cognizable rights that

09:51AM  24   a resident can take advantage of.  In other words, there is no

09:51AM  25   private right of action for an alleged violation of an ACGME

```
09:51AM    1   standard, and that's true throughout the law when it comes to
09:51AM    2   accrediting bodies.  And we have cited two cases; the Alloni
09:51AM    3   (phonetic) case and the Rice case in our briefs.  And when my time
09:51AM    4   comes, I'll walk you through them.  But they are cases of
09:51AM    5   residents who have claimed that they have some cognizable right
09:51AM    6   through breach of contract or otherwise to be the enforcement of
09:51AM    7   ACGME standards.  And the courts have rejected those theories
09:52AM    8   because all the courts say when it comes to ACGME and an
09:52AM    9   accrediting body is that is something that the sole remedy for is
09:52AM   10   the ACGME can take away the hospital's accreditation if there is a
09:52AM   11   violation.
09:52AM   12         And Mr. Levenstein, my colleague, is absolutely right;
09:52AM   13   she has the right to make a complaint to ACGME.  She did in this
09:52AM   14   case.  She complained that there was no letter of recommendation
09:52AM   15   provided, and the ACGME closed the case without any action against
09:52AM   16   the hospital; so she went through that process.  But the courts
09:52AM   17   are very, very steadfast in saying that ACGME does not give a
09:52AM   18   cognizable right; so they don't even get out of the gate.
09:52AM   19         But also -- and I'll wait till Mr. Levenstein makes his
09:52AM   20   presentation.  I don't want to, you know, cut you or him off.  But
09:52AM   21   I want to say very clearly there is no ACGME standard that
09:53AM   22   dictates the provision of any letter of recommendation or any of
09:53AM   23   the other documents that he says.  What he says is just plain
09:53AM   24   wrong.
09:53AM   25         And what they've done in the reply, they finally -- in
```

09:53AM 1    their 22 pages of initial briefing, didn't mention any ACGME

09:53AM 2    standards, even when Mr. Levenstein had spoken before you at the

09:53AM 3    status conference and promised that's the root of all.  Then in

09:53AM 4    the reply they have in the middle of page 5, I think, one standard

09:53AM 5    that they actually cut and pasted and it's misleading, and I want

09:53AM 6    to walk you through why it's misleading.  But the upshot is that

09:53AM 7    standard only applies -- we have to document internally a

09:53AM 8    graduating resident's completion.  And then upon the individual

09:53AM 9    resident's request, we have 30 days to provide verification of

09:53AM 10   their graduation.  Okay?  Dr. Finkelstein never graduated.  That

09:53AM 11   standard, even if it was cognizable, is not a root for equity

09:54AM 12   power, and I can walk you through that.  But it is misleading, and

09:54AM 13   I don't want to get -- go -- overcharge with my language, but it

09:54AM 14   is misleading and it is wrong to suggest in any way there is an

09:54AM 15   ACGME standard that required us to give a letter of

09:54AM 16   recommendation.

09:54AM 17          It also didn't require us to provide a diploma.  It also

09:54AM 18   didn't require us to give her the dean's letter that she asked for

09:54AM 19   through her lawyer.  That stuff is done from medical school, to

09:54AM 20   residency.  It never -- it doesn't go outside that.

09:54AM 21          THE COURT:  Okay.

09:54AM 22          MR. GOLDBERG:  So unless you have any other questions,

09:54AM 23   I'll defer till --

09:54AM 24          THE COURT:  That's very helpful, so now I understand what

09:54AM 25   the parties are going to present.  Thank you very much.

09:54AM 1    MR. GOLDBERG:  Thank you.

09:54AM 2    THE COURT:  And again I want to make sure that everyone

09:54AM 3    understands, we're narrowing this issue to:  What's my authority?

09:54AM 4    What is the law, the statute, the regulation that's been violated

09:55AM 5    here that I am going to be enjoining behavior to correct?  Okay?

09:55AM 6    MR. GOLDBERG:  Okay.

09:55AM 7    THE COURT:  Let's talk about that.

09:55AM 8    MR. GOLDBERG:  Two final points if I can, and I will sit

09:55AM 9    down.

09:55AM 10    One is on that point; they did not present any rule,

09:55AM 11   statute, or regulation.

09:55AM 12    Second, in their reply brief to cite to your equitable

09:55AM 13   powers they had two cases primarily, and I think you may not be

09:55AM 14   familiar with them; Swann vs. City of Mecklenburg, which was Chief

09:55AM 15   Justice Burger's famous decision in 1971, and they cite that as an

09:55AM 16   analog to what they want you to do here.  And if you recall

09:55AM 17   through history, that was Chief Justice Burger using the Supreme

09:55AM 18   Court's equity powers to prospectively make sure that the City of

09:55AM 19   Mecklenburg in South (sic) Carolina did not violate the dictates

09:55AM 20   of Brown vs. Board of Education in terms of segregation.  And the

09:56AM 21   root of that decision that they cite in their favor here was Brown

09:56AM 22   vs. Board of Education and all its progeny, and that is why the

09:56AM 23   court uses equitable powers, because they had a constitutional

09:56AM 24   basis to do so.

09:56AM 25    And the other case locally they cite is Store vs.

09:56AM  1    Communications -- I forgot the exact name.  It's a 1985 decision

09:56AM  2    by Judge Spellman, who used to be here on the seventh floor in

09:56AM  3    this building, and in that case, as you mentioned -- this is why I

09:56AM  4    wanted to point it out -- because you rightly said that you are

09:56AM  5    able through your equity powers to stop a violation of the law.

09:56AM  6    That case they cite is exactly what Judge Spellman did.  They had

09:56AM  7    a defendant who was stealing cable TV signals, repackaging them,

09:56AM  8    and then selling them, and that violated the Electronic

09:56AM  9    Communications Act in that case.  And Judge Spellman said:  Look,

09:56AM  10   here is the root of my equity power.  You have violated the law,

09:57AM  11   so my injunction is going to stop you from violating the law; even

09:57AM  12   though in that case he recognized it will shut down the business,

09:57AM  13   but he said civilly he has the authority to do it from an

09:57AM  14   equitable standpoint.

09:57AM  15          And my point is there's no root here, there's no plant,

09:57AM  16   there's no tree, and it would be, I think, just wrong to even

09:57AM  17   suggest the Court should use equity powers in this type of

09:57AM  18   circumstance.

09:57AM  19          THE COURT:  All right.  Thank you, Mr. Goldberg.

09:57AM  20   Counsel, make your case.

09:57AM  21          MR. LEVENSTEIN:  I will.  Your Honor, I'm compelled to

09:57AM  22   respond to several statements that were made because --

09:57AM  23          THE COURT:  But you're better off just giving me your

09:57AM  24   case.

09:57AM  25          What is your regulation, law, statute --

|          |    |                                                                    |
|----------|----|--------------------------------------------------------------------|
| 09:57AM  | 1  | MR. LEVENSTEIN:  All right.                                         |
| 09:57AM  | 2  | THE COURT:  -- that I need to enforce?                             |
| 09:57AM  | 3  | MR. LEVENSTEIN:  With regard to the root and the tree              |
| 09:57AM  | 4  | argument that was just made, in our memorandum at page 12, which   |
| 09:57AM  | 5  | we have filed in this case, Document 94, we stated:  Dr.            |
| 09:58AM  | 6  | Finkelstein respectfully moves this Court to enjoin defendants     |
| 09:58AM  | 7  | from continuing to engage in conduct in violation of RICO or in    |
| 09:58AM  | 8  | furtherance of Defendants' illegal enterprise as alleged in the    |
| 09:58AM  | 9  | second amended complaint.  Simply put, by granting the requested   |
| 09:58AM  | 10 | relief as stated, the Court would be enjoining defendants from any |
| 09:58AM  | 11 | practices that are in violation of RICO's provisions which         |
| 09:58AM  | 12 | previous decisions have determined to be within the powers         |
| 09:58AM  | 13 | conferred to the court.  And we cite the SEC vs. Solow case, at     |
| 09:58AM  | 14 | 554 F.2d, 1356, from the Southern District of Florida in 2008,     |
| 09:58AM  | 15 | affirmed by the Eleventh Circuit in 308 Federal Appellate 364 in   |
| 09:58AM  | 16 | 2009:  (holding that an injunction that tracks the language of the |
| 09:58AM  | 17 | sections of a statute or permit defendant was found to have        |
| 09:58AM  | 18 | violated is neither an impermissible obey-the-law injunction nor   |
| 09:58AM  | 19 | an overly broad and vague injunction.)  So I just wanted to answer |
| 09:59AM  | 20 | that one point.                                                    |
| 09:59AM  | 21 | Now, with regard to the comments about Dr. Boa's                   |
| 09:59AM  | 22 | recommendation, I understand that's for another day.  But suffice  |
| 09:59AM  | 23 | it to say that we vehemently disagree with the analysis of that.   |
| 09:59AM  | 24 | THE COURT:  Of course.  But I want to talk about this              |
| 09:59AM  | 25 | ACGME program.                                                     |

09:59AM    1          MR. LEVENSTEIN:  Okay.  And before -- I'm going to get to

09:59AM    2    that, but I also want the Court to understand too that when we

09:59AM    3    talk about program director letters, because that's what is at the

09:59AM    4    heart of this.   In our memorandum of law in supplementary support

09:59AM    5    of our expedited motion, again Document 94, on page 11, we have

09:59AM    6    presented a listing -- a posting by the Mount Sinai Medical Center

10:00AM    7    general surgery residency program for a PGY-2 resident that is a

10:00AM    8    transfer resident that they are seeking for their program.

10:00AM    9          And in looking at it you'll see it states:  The general

10:00AM   10    surgery residency program at Mount Sinai Medical Center in Miami

10:00AM   11    Beach has a preliminary PGY-2 vacancy beginning June 24, 2023; so

10:00AM   12    this is absolutely current.  Applicants must have completed one

10:00AM   13    year of ACGME accredited surgical residency -- so there is that

10:00AM   14    ACGME residency accreditation coming into play again -- training

10:00AM   15    within the last academic year and have been in good standing.

10:00AM   16          And then under how to apply, and this is the most

10:00AM   17    important part:  The following items must be provided in one PDF.

10:00AM   18    And this is not ERAS because ERAS is not for residents who are

10:00AM   19    transferring programs; this is a transfer that is a direct

10:00AM   20    application, which is what Dr. Finkelstein has attempted to do as

10:01AM   21    well:  The following items must be provided in one PDF via the

10:01AM   22    e-mail to April Chisolm -- who is at Mount Sinai Medical Center --

10:01AM   23    to be considered; current CV, three letters of recommendation,

10:01AM   24    including one from current or most recent program director, and

10:01AM   25    USMLE Step 1, 2, and 3 scores, ABSITE scores from PGY-1,

10:01AM  1    semi-evaluations, ACGME operative case logs, certification of

10:01AM  2    ACLS, and other requirements that are listed there.

10:01AM  3          But that letter from the program director that is so

10:01AM  4    mythical and it's not required and it is some white elephant as

10:01AM  5    far as they're concerned is right there in their listing as a

10:01AM  6    requirement to apply for their position.  And I just wanted to

10:01AM  7    point that out to the Court for context, because this comes out of

10:01AM  8    their listing for a position in June 2023.

10:01AM  9          Now I'd like to get on to what the Court asked about the

10:02AM  10   ACGME background.  Now, just for context, Your Honor, the ACGME

10:02AM  11   documents we're talking about are contained in this notebook, this

10:02AM  12   large notebook, and they're made up of three documents; the ACGME

10:02AM  13   institutional requirements is one, the ACGME common program

10:02AM  14   requirements of residency is another, and the third one is the

10:02AM  15   ACGME program director guide to the common program requirements of

10:02AM  16   residency, which gives the guidance and requirements of the

10:02AM  17   program director who has to comply with those requirements for the

10:02AM  18   program to be accredited.

10:02AM  19         Now, when Dr. Finkelstein submitted her complaint to the

10:02AM  20   ACGME that you heard about, she didn't complain about the program

10:02AM  21   director letter per se; she complained about how she was treated

10:02AM  22   while she was a resident by Dr. Ben-David and the program, and

10:03AM  23   asked them to investigate what had transpired with regard to her

10:03AM  24   while she was in the residency program, similar to what we have

10:03AM  25   alleged in our complaint.

10:03AM  1      The ACGME reviews those complaints to determine whether

10:03AM  2   the accreditation of the program should be removed or somehow

10:03AM  3   audited or limited.  They only advised us that they were not

10:03AM  4   taking any action to remove the accreditation against the program;

10:03AM  5   they would not disclose to us any other action they took or didn't

10:03AM  6   take, so we don't know what action they took other than that,

10:03AM  7   except that there was no loss of accreditation but there was an

10:03AM  8   investigation.  So that was the gravamen of her complaint and they

10:03AM  9   investigated how she was treated while she was in that residency

10:03AM  10  program.

10:03AM  11      THE COURT:  Okay.

10:03AM  12      MR. LEVENSTEIN:  Now turning to the requirements of the

10:03AM  13  ACGME as they apply to our case.

10:03AM  14      THE COURT:  Okay.

10:04AM  15      MR. LEVENSTEIN:  All right.

10:04AM  16      And I'm going to first quote from the first document

10:04AM  17  which is the ACGME institutional requirement, these are

10:04AM  18  requirements placed upon an institution such as Mount Sinai

10:04AM  19  Medical Center which operates a residency program in order to be

10:04AM  20  accredited.

10:04AM  21      Professionalism -- this is page 10 of 17 of that document

10:04AM  22  -- the sponsoring institution in partnership with the program must

10:04AM  23  provide a culture of professionalism and supports patient safety

10:04AM  24  and personal responsibility.  Can you hear me okay if I read this

10:04AM  25  way?

10:04AM 1    THE COURT:  Yes, I can.  And maybe a little bit slower

10:04AM 2    for the court reporter.  She will tell me when you need breaks.

10:04AM 3    MR. LEVENSTEIN:  I apologize if I'm reading too fast,

10:04AM 4    Your Honor.

10:04AM 5    The sponsoring institution, in partnership with its ACGME

10:04AM 6    accredited program must educate residents and fellows and faculty

10:04AM 7    members concerning the professional responsibilities of

10:04AM 8    physicians, including their obligations to be appropriately rested

10:05AM 9    and fit to provide the care required by their patients.  In other

10:05AM 10   words, these are requirements not only for the program director

10:05AM 11   and faculty but the residents as well in the program.

10:05AM 12   The sponsoring institution must provide systems for

10:05AM 13   education and in monitoring of residents and fellows and core

10:05AM 14   faculty members fulfillment of educational and professional

10:05AM 15   responsibilities, including scholarly pursuits and accurate

10:05AM 16   completion of the required documentation by residents and fellows.

10:05AM 17   It goes on to state the sponsoring institution must

10:05AM 18   ensure that its ACGME accredited programs provide a professional,

10:05AM 19   equitable, respectful, and civil environment that is free from

10:05AM 20   unprofessional behavior, including mistreatment, abuse, and/or

10:05AM 21   coercion of residents and fellows, other learners, faculty

10:05AM 22   members, and staff members.  Now, these are not guidelines; these

10:05AM 23   are requirements of accreditation of a program to which Dr.

10:06AM 24   Finkelstein was a member and a participant and was also governed

10:06AM 25   by these requirements as well and the beneficiary of them.

10:06AM  1    The sponsoring institution in partnership with its ACGME

10:06AM  2  accredited program -- I think I read that already, Your Honor.

10:06AM  3  I'm sorry.

10:06AM  4    The sponsoring institution must oversee its ACGME

10:06AM  5  accredited program fulfillment of responsibility to address

10:06AM  6  well-being of residents and fellows and faculty members consistent

10:06AM  7  with the common and specialty -- subspecialty specific program

10:06AM  8  requirements addressing areas of noncompliance in a timely

10:06AM  9  fashion.

10:06AM  10    The next portion I want to read is from Section 4-C on

10:06AM  11  page 13 of 17 of that document, which states that the sponsoring

10:06AM  12  institution must ensure that residents and fellows are provided

10:06AM  13  with a written agreement of appointment/contract outlining the

10:07AM  14  terms and conditions of their appointment to a program.  In other

10:07AM  15  words, the contract that Dr. Finkelstein signed with the residency

10:07AM  16  program, of which she was a member, was mandated by the ACGME; not

10:07AM  17  some option that they had to control or furnish or not at their

10:07AM  18  whim, and it goes on to state:  The sponsoring institution must

10:07AM  19  monitor each of the programs with regard to implementation of

10:07AM  20  terms and conditions of appointment.

10:07AM  21    On page 14 of 17, at Section 4-D, it provides under

10:07AM  22  promotion, appointment, renewal, and dismissal:  The sponsoring

10:07AM  23  institution must have a policy that requires each of its ACGME

10:07AM  24  accredited programs to determine the criteria for promotion and/or

10:07AM  25  renewal of a resident fellow's appointment, so that there are

10:07AM  1   specific requirements that have to be applied.

10:08AM  2          And then on page 17 of 17, Section 4.M, under

10:08AM  3   noncompetition, it states:  The sponsoring institution must

10:08AM  4   maintain a policy which states that neither the sponsoring

10:08AM  5   institution nor any of its ACGME accredited programs will require

10:08AM  6   a resident fellow to sign a noncompetition guarantee or

10:08AM  7   restrictive covenant.

10:08AM  8          Our position is that a general release is certainly a

10:08AM  9   restricted covenant because it restricts the rights of the

10:08AM  10  resident and requires that resident to give up rights that she or

10:08AM  11  he otherwise had.  And when they required Dr. Finkelstein to sign

10:08AM  12  a general release to obtain the documents I'm going to speak of in

10:08AM  13  a minute, which were required to be provided to her, they violated

10:08AM  14  that requirement, and is evidence of their bad faith in doing so

10:08AM  15  because it was specifically prohibited by the ACGME's guidelines

10:09AM  16  of what goes into a contract and what a program can or can't do

10:09AM  17  vis-a-vis its residents.

10:09AM  18         And, Your Honor, also for clarity, when you heard Mr.

10:09AM  19  Goldberg talk about what was in our memorandum that we recently

10:09AM  20  filed concerning what the obligations are of program director

10:09AM  21  responsibilities, if you recall, he stated that what we quoted

10:09AM  22  only applied to individuals who completed the program.  And this

10:09AM  23  is at page 5 of 7 of Document 97, it also provides:  Sponsoring

10:09AM  24  institution and program policies for record retention are

10:09AM  25  important to facilitate timely documentation of residents who have

10:09AM  1   previously completed the program.

10:09AM  2          And then it goes on to state, which he didn't tell you:

10:09AM  3   Residents who leave the program -- specifically as did Dr.

10:09AM  4   Finkelstein -- prior to completion also require timely

10:10AM  5   documentation of their summative evaluation, which I spoke to

10:10AM  6   earlier.  So this is not some requirement that we are creating out

10:10AM  7   of thin air; it comes right out of these responsibilities.

10:10AM  8          Then if we go back to the next document, Your Honor, to

10:10AM  9   establish this relationship, and these are the common program

10:10AM  10  requirements which we just mentioned in that portion of our

10:10AM  11  memorandum, and this is at page 11 of 56, it states, background

10:10AM  12  and intent:  A program does not operate independently of its

10:10AM  13  sponsoring institution.  It is expected that the program director

10:10AM  14  will be aware of the sponsoring institution's policies and

10:10AM  15  procedures and will ensure they are followed by the program's

10:10AM  16  leadership, faculty members, support personnel, and residents.

10:10AM  17         And it goes on to state that:  The program director shall

10:10AM  18  ensure the program's compliance with the sponsoring institution's

10:10AM  19  policies and procedures, unemployment, and nondiscrimination --

10:11AM  20  one of the things we have alleged did occur, she was discriminated

10:11AM  21  against -- document verification of program completion for all

10:11AM  22  graduating residents within 30 days, provide verification of an

10:11AM  23  individual resident's completion upon the resident's request

10:11AM  24  within 30 days; again coming back to those who did not finish the

10:11AM  25  program.

10:11AM    1         And then it goes on to state:  Primary verification of

10:11AM    2    graduate medical education is important to credentialing of

10:11AM    3    physicians for further training and practice; exactly what we're

10:11AM    4    speaking of today.  Such verification must be accurate and timely.

10:11AM    5    Sponsoring institution and program policies for record retention

10:11AM    6    are important to facilitate timely documentation of residents who

10:11AM    7    have previously completed the program.  Residents who leave the

10:11AM    8    program prior to completion also require timely documentation of

10:11AM    9    their summative evaluation.

10:12AM    10        So that this document emphasizes the importance, not only

10:12AM    11   to those who complete the program of these documents being

10:12AM    12   provided, but those who did not and try to move on with their

10:12AM    13   careers, which is exactly where we are today.

10:12AM    14        So these are not general concepts or principles that can

10:12AM    15   be said to not be binding on all parties; they are specific and

10:12AM    16   applicable to these very facts that we are bringing to the Court's

10:12AM    17   attention.

10:12AM    18        Continuing with the ACGME document which I'm referring

10:12AM    19   to, for the record, is the common program requirements of

10:12AM    20   residency, on page 29 of 56, at Section 5.8.1(e):  At least

10:12AM    21   annually there must be a summative evaluation of each resident

10:12AM    22   that includes their readiness to progress to the next year of the

10:12AM    23   program if applicable.  The evaluation of a resident's performance

10:12AM    24   must be accessible for review by the resident.  That was part of

10:12AM    25   the documentation that Dr. Finkelstein attempted to obtain, and

10:13AM  1    basically was told she could get if she signed a general release;

10:13AM  2    these documents which are required by these requirements of the

10:13AM  3    ACGME to be provided to the resident.

10:13AM  4         And then it goes on to state, final evaluation, and this

10:13AM  5    is on page 30 of 56, the program director -- at Section 5.8.2:

10:13AM  6    The program director must provide a final evaluation for each

10:13AM  7    resident upon completion of the program.  The specific

10:13AM  8    specialty-specific milestones and when applicable the

10:13AM  9    specialty-specific case log must be used as tools to ensure

10:13AM  10   residents are able to engage in autonomous practice upon

10:13AM  11   completion of the program.  The final evaluation must become part

10:13AM  12   of the resident's permanent record maintained by the institution

10:13AM  13   and must be accessible for review by the resident in accordance

10:13AM  14   with institutional policy.

10:14AM  15        So certainly upon final graduation from the program there

10:14AM  16   is a requirement to provide this program director letter; and

10:14AM  17   under the previous provisions that I mentioned, those who leave

10:14AM  18   the program should have a similar right under these principles.

10:14AM  19        Next is documents that I am -- provisions I'm going to

10:14AM  20   cite to the Court from the program director guide of the ACGME,

10:14AM  21   and this is the document that governs how a program director must

10:14AM  22   operate his or her program in order for it to continue to be

10:14AM  23   accredited.  And if the Court recalls, as I said in my opening

10:14AM  24   remarks, accreditation is absolutely necessary because if a

10:14AM  25   physician does not attend an accredited graduate medical education

1    residency program, they are not eligible for board certification,

2    because board certification requires graduation from an accredited

3    program, a program recognized by the American Board of Medical

4    Specialties, the ABMS; and the ABMS only recognizes residency

5    programs that are accredited by the ACGME for purposes of board

6    certification.

7         THE COURT:  But why isn't this also then just another

8    remedy that Dr. Finkelstein has; the hospital could lose its

9    accreditation if it fails to comply with the program director's

10   guide or the program requirements; correct?

11        MR. LEVENSTEIN:  She can only submit a complaint to the

12   ACGME, bringing to its attention what transpired while she was a

13   resident, which she did.

14        THE COURT:  Which she did.

15        MR. LEVENSTEIN:  We are unaware of what action, other

16   than the fact that the ACGME closed this matter without removing

17   accreditation from this program.  They would not advise us as to

18   whether or not any other action was taken, so we don't know that.

19   At some point we may know that.

20        THE COURT:  I understand.  But I don't think the

21   plaintiff's dissatisfaction with the remedy is the key; it's:  Is

22   there a remedy?

23        And I'm concerned that all I'm hearing is, well, she's

24   dissatisfied with that remedy and that remedy didn't work out the

25   way she wanted.

```
10:16AM    1          MR. LEVENSTEIN:  Let me address that issue.  It's not a
10:16AM    2   matter of her being dissatisfied; it's a matter of whether or
10:16AM    3   not -- not whether.  She is entitled to an honest evaluation of
10:16AM    4   her performance --
10:16AM    5          THE COURT:  Absolutely.
10:16AM    6          MR. LEVENSTEIN:  -- by these -- not by guidelines.  These
10:16AM    7   are not guidelines.  These are requirements for accreditation of a
10:16AM    8   program to which she is a member and to which these requirements
10:16AM    9   specifically reference the residents in their text.
10:16AM   10          THE COURT:  I don't doubt that she's entitled to that.
10:16AM   11   The question is:  What happens if she doesn't get it?
10:16AM   12          MR. LEVENSTEIN:  I agree.  And what happens if she can't
10:17AM   13   get it?  That's the real question.  She cannot get it under these
10:17AM   14   circumstances.  When she cannot get it under these circumstances,
10:17AM   15   that's when we request the Court to exercise its equitable
10:17AM   16   jurisdiction to correct that so that she can at least have a shot
10:17AM   17   at going forward with her career by having somebody other than the
10:17AM   18   program director who will not be objective with her and has not
10:17AM   19   been objective with her, provide that letter which is keeping her
10:17AM   20   from moving on.
10:17AM   21          You can see from the listing that -- the posting that I
10:17AM   22   read from that Mount Sinai Medical Center required a program
10:17AM   23   director letter for its transfer of the PGY-2 resident it's
10:17AM   24   seeking.  Every, every program that she sought to or any resident
10:17AM   25   seeks to transfer to, no matter whether it's the ERAS or director
```

10:17AM   1   or otherwise doesn't matter, without a program director letter,

10:17AM   2   the difficulties are potentially insurmountable without it.  We're

10:17AM   3   saying she cannot get that letter.

10:17AM   4          The assistant program director and nine others have

10:18AM   5   provided favorable recommendations for Dr. Finkelstein.  Now, Mr.

10:18AM   6   Goldberg would have you believe that these people lied in their

10:18AM   7   recommendations, they just made stuff up to put in there.  He

10:18AM   8   would have you believe that somehow they just did it as a favor to

10:18AM   9   Dr. Finkelstein but they really didn't mean it.  Now, Dr. Bao --

10:18AM  10   and I hate to go back to this, but I need to because it's

10:18AM  11   important -- Dr. Bao signed an affidavit for us at our request as

10:18AM  12   well.  The affidavit that he signed was on the style of this case.

10:18AM  13   He knew from the beginning that we were involved in litigation and

10:18AM  14   that that affidavit was going to be used in the litigation.

10:18AM  15          Now, if he's changed his mind about that, it's because of

10:18AM  16   his contact with counsel for the defendants, which we're going to

10:18AM  17   address in another session, because we believe that's happened;

10:18AM  18   not only with Dr. Bao, but if you recall when we were here before

10:18AM  19   you last time, Dr. Goodman also was questioned about the veracity

10:19AM  20   of what he had written under oath as well.  And we're going to

10:19AM  21   address that in a subsequent hearing, because we think things have

10:19AM  22   been going on with regard to this case that are very, very below

10:19AM  23   the line and need to be brought to the Court's attention; and when

10:19AM  24   the time is appropriate, we will.

10:19AM  25          But getting back to what I'm saying here, Dr. Bao's

10:19AM   1   letter -- and I have a copy of it for you if you want to see it,

10:19AM   2   Your Honor, and it's in our pleadings.  Can I present that to the

10:19AM   3   Court?

10:19AM   4          THE COURT:  You can give it to my courtroom deputy.

10:19AM   5          MR. LEVENSTEIN:  May I approach?

10:19AM   6          THE COURT:  And I'm assuming counsel for defendants have

10:19AM   7   this letter.

10:19AM   8          MR. GOLDBERG:  We do.  Thank you.

10:19AM   9          THE COURT:  Is this letter part of the record already?

10:19AM  10          MR. LEVENSTEIN:  It is, Your Honor.

10:19AM  11          THE COURT:  Okay.  Where do I find it in the record?  Is

10:19AM  12   it attached to the complaint?

10:19AM  13          MR. LEVENSTEIN:  It's attached to our pleadings and to

10:19AM  14   the affidavits -- the second amended complaint, as well as the

10:19AM  15   declaration of Dr. Finkelstein --

10:19AM  16          THE COURT:  Okay.

10:19AM  17          MR. LEVENSTEIN:  -- together with other similar letters.

10:20AM  18   Exhibit A to the second amended complaint, I believe, is where I

10:20AM  19   believe it is, Your Honor.

10:20AM  20          THE COURT:  Okay.

10:20AM  21          MR. LEVENSTEIN:  So Dr. Bao's letter is a detailed letter

10:20AM  22   of recommendation about Dr. Finkelstein, in which he recommends

10:20AM  23   that she be given a second chance at another program.

10:20AM  24          THE COURT:  So all this proves to me is that she has

10:20AM  25   received the letter of recommendation that the ACGME allows her to

10:20AM   1   get as someone who has not completed the program.

10:20AM   2        MR. LEVENSTEIN:  No, it's not, Your Honor.

10:20AM   3        THE COURT:  It's different?

10:20AM   4        MR. LEVENSTEIN:  Because it's the assistant program

10:20AM   5   director's letter; it's not the program director's letter.

10:20AM   6        THE COURT:  I understand.  But what I heard you read was

10:20AM   7   that the program director must provide an evaluation upon

10:20AM   8   completion.  But the other paragraph that you read when you were

10:20AM   9   talking about evaluations for someone who has not completed a

10:20AM   10  residency didn't use the term program director.

10:21AM   11       MR. LEVENSTEIN:  No, not in that context, but I believe

10:21AM   12  it will in other provisions I'm going to read to the Court.

10:21AM   13       THE COURT:  Okay.  So let's move on to those provisions.

10:21AM   14       MR. LEVENSTEIN:  Yes, ma'am.  I'm now still referring to

10:21AM   15  the document entitled, for the record so I'm clear, program

10:21AM   16  director guide to the common program requirements of residency.

10:21AM   17  And this is from Section 2, personnel, with regard to the program

10:21AM   18  director, and I think this will emphasize the importance of the

10:21AM   19  program director to the Court, what I'm about to read:  There must

10:21AM   20  be one faculty member appointed as program director with authority

10:21AM   21  and accountability for the overall program, including compliance

10:21AM   22  with all applicable program requirements.  The sponsoring

10:21AM   23  institution's ACGME must approve a change in the program director.

10:22AM   24  Final approval of the program director resides with the review

10:22AM   25  committee.

10:22AM  1        And under background and intent, it says:  While the

10:22AM  2  ACGME recognizes the value of input from numerous individuals in

10:22AM  3  the management of a residency, a single individual must be

10:22AM  4  designated as program director and made responsible for the

10:22AM  5  program.  This individual will have dedicated time for the

10:22AM  6  leadership of the residency, and it is this individual's

10:22AM  7  responsibility to communicate with the residents, faculty members,

10:22AM  8  DIO -- which is the designated institutional official who

10:22AM  9  interacts with the ACGME, the GMEC, which is the graduate medical

10:22AM  10  evaluation education or evaluation committee, and the ACGME.  The

10:22AM  11  program's director nomination is reviewed and approved by the

10:22AM  12  ACGME.  Final approval of the program director resides with the

10:22AM  13  review committee.  So it sets out the importance of a program

10:23AM  14  director in the scheme of the residency program that is accredited

10:23AM  15  by the ACGME.

10:23AM  16        Then at page 45 of this same document, at 2.8.3(d), it

10:23AM  17  provides background and intent:  A program director is a role

10:23AM  18  model for faculty members and residents.  The program director

10:23AM  19  must participate in clinical activity consistent with the

10:23AM  20  specialty.  This activity will allow the program director to role

10:23AM  21  model the core competencies for the faculty members and residents.

10:23AM  22        Then it goes again in this same document under program

10:23AM  23  director responsibilities, Roman numeral II A.4:  The program

10:23AM  24  director must -- I need to take a drink of water for a moment,

10:23AM  25  Your Honor.

10:23AM  1        THE COURT:  I understand.  I've been talking a lot

10:23AM  2    myself.

10:23AM  3        MR. LEVENSTEIN:  The program director must have

10:24AM  4    responsibility, authority, and accountability for administration

10:24AM  5    and operations, teaching and scholarly activity, resident

10:24AM  6    recruitment and selection, evaluation -- most importantly for our

10:24AM  7    purposes -- and promotion of residents -- most importantly for our

10:24AM  8    purposes -- and disciplinary action, supervision of residents, and

10:24AM  9    resident education in the context of patient care.  Program

10:24AM  10   director must be a role model of professionalism.

10:24AM  11       And in the background and intent it states:  The program

10:24AM  12   director as the leader of the program must serve as a role model

10:24AM  13   to residents in addition to fulfilling the technical aspects of

10:24AM  14   the role.  As residents are expected to demonstrate compassion,

10:24AM  15   integrity, and respect for others, they must be able to look to

10:24AM  16   the program director as an exemplar.  It is of utmost importance

10:24AM  17   therefore that the program director model outstanding

10:24AM  18   professionalism, high-quality patient care, educational excellent,

10:25AM  19   and a scholarly approach to work.  The program director creates an

10:25AM  20   environment where respectful discussion is welcomed with the goal

10:25AM  21   of continued improvement of the educational experience.

10:25AM  22       One of the things we have alleged is that none of that

10:25AM  23   was in existence at this program as far as Dr. Finkelstein was

10:25AM  24   concerned when she was subjected to the conduct that we have

10:25AM  25   alleged, in violation of all of those requirements, in violation

10:25AM   1   of all of those duties and responsibilities not only did Dr.

10:25AM   2   Ben-David have to the ACGME, but to the residents of the program

10:25AM   3   as well which are spelled out in this document.

10:25AM   4           And the last excerpt I'd like to read is as follows, Your

10:25AM   5   Honor, under common program requirements, Section -- Section 2

10:25AM   6   under personnel, program director, program director

10:26AM   7   responsibilities:  Program director must document verification of

10:26AM   8   program completion for all graduating residents within 30 days,

10:26AM   9   provide verification of an individual resident's completion upon

10:26AM   10  the resident's request within 30 days.  And the individual

10:26AM   11  resident's completion would be Dr. Finkelstein's situation because

10:26AM   12  it's not program completion; but it is completion of whatever time

10:26AM   13  she spent within the program.  Part of the documents that she

10:26AM   14  requested through her prior counsel and which were not released to

10:26AM   15  her without the signing of a general release and only released to

10:26AM   16  her after the filing of this action and her complaint with the

10:26AM   17  ACGME.

10:26AM   18          And it states that, background and intent:  Primary

10:26AM   19  verification, graduate medical education is important to

10:26AM   20  credentialing of physicians for further training and practice.

10:26AM   21  Such verification must be accurate and timely.  Accurate and

10:26AM   22  timely, I emphasize for purposes of why we are here.

10:27AM   23          Sponsoring institutions and program policies for record

10:27AM   24  retention are important to facilitate timely documentation of

10:27AM   25  residents who have previously completed the program.  Residents

10:27AM  1   who leave the program prior to completion also require timely

10:27AM  2   documentation of their summative evaluation.

10:27AM  3           And then under guidance on the next page, it states:  It

10:27AM  4   is important to the resident who has completed a program, to the

10:27AM  5   program itself, and to the sponsoring institution that program

10:27AM  6   completion be verified in a timely manner.  The ACGME does not

10:27AM  7   specify exactly what must be included in such verification, nor

10:27AM  8   does it require that any particular format be used for such

10:27AM  9   verification.

10:27AM 10           But what I've gone through already clearly states what is

10:27AM 11   required to be part of any such verification; not only with regard

10:27AM 12   to those who complete the program, but those who don't, similar to

10:27AM 13   Dr. Finkelstein.

10:27AM 14           Looked at in their totality, and looked at from the

10:28AM 15   context of these documents do not only govern the responsibilities

10:28AM 16   and requirements between the ACGME and the institution, but also

10:28AM 17   between the institution and the resident, they clearly govern the

10:28AM 18   relationship between Mount Sinai Medical Center and Dr.

10:28AM 19   Finkelstein.  And the verification and program letter that we're

10:28AM 20   speaking of is clearly part of, in our view, the obligation that

10:28AM 21   this program had to her to provide her with an accurate program

10:28AM 22   letter.  And there is no better proof of the need for that program

10:28AM 23   director letter than Mount Sinai Medical Center's own posting for

10:28AM 24   a PGY-2 transfer resident, keeping in mind that Dr. Finkelstein

10:28AM 25   will be transferring as a PGY-2 or 3, depending on where she is

10:29AM   1   going, similar to this posting, requiring a letter from the

10:29AM   2   program director.  Program director letter, letter from the

10:29AM   3   program director, exactly the same.

10:29AM   4          So this framework that I just went through, Your Honor,

10:29AM   5   in our view clearly requires that Dr. Finkelstein receive a

10:29AM   6   program director letter or equivalent that is accurate, fair, and

10:29AM   7   objective.  And our position is she cannot receive that from Dr.

10:29AM   8   Ben-David.  And all she is asking from this Court is the

10:29AM   9   opportunity to have a letter that is fair and objective from

10:29AM   10  someone other than Dr. Ben-David.  And it can be Dr. Bao, who has

10:29AM   11  already provided a letter, if it was stipulated that that letter

10:29AM   12  would substitute as the program director letter instead of Dr.

10:29AM   13  Ben-David's.  We're not asking to have her dictate what's in it;

10:29AM   14  we're only asking her to have the opportunity to have someone who

10:30AM   15  is fair and impartial and objective to provide it, and that's the

10:30AM   16  framework from which we come.

10:30AM   17         And if there's any other information that the Court

10:30AM   18  requires now, I'm happy to provide it.  I have an additional

10:30AM   19  presentation for the Court, but I hope I've answered the Court's

10:30AM   20  questions.

10:30AM   21         And does the Court require further information from me?

10:30AM   22         THE COURT:  No.  That helps me very much understand where

10:30AM   23  you're getting the authority from.

10:30AM   24         MR. LEVENSTEIN:  Thank you, Your Honor.

10:30AM   25         THE COURT:  So those documents, I will find them in the

10:30AM 1 record; the program requirements?

10:30AM 2         MR. LEVENSTEIN:  You will.  You'll find all --

10:30AM 3         THE COURT:  And that's attached to?

10:30AM 4         MR. LEVENSTEIN:  I can provide the Court with copies for

10:30AM 5 convenience.

10:30AM 6         THE COURT:  Okay.  That's fine.  I just want to know

10:30AM 7 exactly where they are.

10:30AM 8         MR. LEVENSTEIN:  We'll check the record and get those to

10:30AM 9 you at break.

10:30AM 10         THE COURT:  If you could get me the CM/ECF numbers.

10:30AM 11         MR. LEVENSTEIN:  Thank you.

10:30AM 12         THE COURT:  Okay.  I'd like to hear from defendant.

10:30AM 13         MR. GOLDBERG:  Great.

10:30AM 14         MR. LEVENSTEIN:  Your Honor, before we do that, would it

10:30AM 15 be possible to take a restroom break?

10:31AM 16         THE COURT:  That's a good idea, and it also gives the

10:31AM 17 court reporter an opportunity to stretch her fingers.

10:31AM 18         MR. LEVENSTEIN:  Thank you, Your Honor.

10:31AM 19         THE COURT:  So we will take a ten-minute break -- well,

10:31AM 20 let's take 15 minutes.  10:45.

10:31AM 21         MR. LEVENSTEIN:  Thank you, Your Honor.

10:47AM 22 (Recess at 10:31 A.M.)

10:47AM 23         THE COURT:  Please be seated.  All right.  Proceed,

10:47AM 24 counsel.

10:47AM 25         MR. GOLDBERG:  May I proceed, Judge?

10:47AM 1       THE COURT:  Yes, you may.

10:47AM 2       MR. GOLDBERG:  Thank you.

10:47AM 3       I'll hand you up a binder that I will be referring to.

10:47AM 4  Do not let the thickness of that document evidence any length that

10:47AM 5  I will be going.  I will disabuse you of that notion.

10:47AM 6       THE COURT:  All right.  I'll let you know.

10:47AM 7       MR. GOLDBERG:  All right.  Thanks.  Let me jump in.

10:47AM 8  Again, Martin Goldberg for Mount Sinai Medical Center and Dr.

10:47AM 9  Ben-David.  I want to, you know, respond to my colleague's

10:48AM 10 arguments, and I want to jump in.

10:48AM 11      If I could direct your attention to Tab 8 of the

10:48AM 12 notebook, and I'm going to go through these things briefly because

10:48AM 13 I spoke about them earlier.  But I wanted to point out, this is

10:48AM 14 the part of the second amended complaint, paragraph 129, the

10:48AM 15 gravamen where she says that through ERAS, which is the acceptable

10:48AM 16 process to apply for residencies, that we interfered with that

10:48AM 17 process.

10:48AM 18      Tabs 9, 10, and 11 are publicly available documents just

10:48AM 19 to help the Court understand what ERAS is.  And if you look at

10:48AM 20 Tab 10, in the middle of the page about how to apply for residency

10:48AM 21 positions, it makes clear that the letters of recommendation that

10:48AM 22 a resident seeks is the burden of the applicant to obtain them; it

10:48AM 23 is not on any -- it's not required.  It's, as I said before, it's

10:49AM 24 on the applicant for assembling the first three components, which

10:49AM 25 includes a letter of recommendation.

10:49AM   1        Tab 11 is actually a guide for the portal of how letters

10:49AM   2   of recommendation are to be requested and uploaded and provided in

10:49AM   3   the residency process.  And if you turn to the second page of that

10:49AM   4   document, it makes clear in the first highlighted sentence that

10:49AM   5   letters of recommendation are to be done at the request of

10:49AM   6   applicants.  And there is actually a letter of request form that's

10:49AM   7   filled out, and I won't repeat that.

10:49AM   8        But Tab 12 is a PowerPoint from the Association of

10:49AM   9   American Medical Colleges that highlights the letter of

10:49AM  10   recommendation process and makes the points that I've already made

10:49AM  11   before, which I will not restate.

10:49AM  12        And then Tab 13 is actually an example of what Dr.

10:49AM  13   Ben-David or other program directors at Mount Sinai actually

10:50AM  14   receive when a letter of recommendation is requested.  And you can

10:50AM  15   see that -- and we've redacted the name of the applicant, because

10:50AM  16   Dr. Finkelstein never requested such a recommendation -- you know,

10:50AM  17   the applicant says:  I'm requesting you submit a letter of

10:50AM  18   recommendation for my fellowship programs.  Thank you, Dr.

10:50AM  19   Ben-David.  I will send you my CV and updated personal statement.

10:50AM  20   And at the bottom, as I told you before, they have to indicate --

10:50AM  21   and I'm at Tab 13 if you're with me --

10:50AM  22        THE COURT:  I am.

10:50AM  23        MR. GOLDBERG:  -- at the bottom whether they waive their

10:50AM  24   right or not waive their right to review that.

10:50AM  25        Tab 14 goes into communications between Mr. Wax and Mr.

10:50AM 1  Jaffee.  At the bottom of Tab 14 on the second page, you'll see

10:50AM 2  that he asks, as I said before, for a letter of recommendation.

10:50AM 3       And then Tab 15 is where Mr. Jaffee sends back in January

10:51AM 4  of 2021 where he says:  Barry, I've attached the text of a letter

10:51AM 5  that Mount Sinai surgical residency program director could send in

10:51AM 6  response to inquiries regarding Dr. Finkelstein if our clients

10:51AM 7  agree on the attached language and language of a release.  Be

10:51AM 8  well.

10:51AM 9       Now, my colleague, Mr. Levenstein, said in his argument

10:51AM 10 to you that the letter of recommendation that was provided by Mr.

10:51AM 11 Jaffee to Mr. Wax had no negative information, it was all

10:51AM 12 positive, and so why can't they do that again here.  If you read

10:51AM 13 the text of this letter, that concept is disabused very quickly.

10:51AM 14 Look, we were dealing with a resident that was on probation twice,

10:51AM 15 terminated, had very low ABSITE scores.  And, quite frankly, it is

10:51AM 16 a thorny issue in terms of recommending such a person to any other

10:51AM 17 institution as we briefed in our papers, and this letter did

10:52AM 18 objectively lay out that information.  It said that she was placed

10:52AM 19 on probation in 2019 and '20, and she resigned from the center.

10:52AM 20 It talks about her procedures and what her ABSITE scores are;

10:52AM 21 objective information.  So I don't want you to be under the

10:52AM 22 impression we, you know, offered for this release this glowing

10:52AM 23 information.  But if we were going to do anything with respect to

10:52AM 24 this patient (sic), Mr. Jaffee was well intended and correct to

10:52AM 25 ask for a release because of what we're even here for today;

10:52AM  1    getting sued for defamation.

10:52AM  2         THE COURT:  But I don't think that the plaintiff is wrong

10:52AM  3    in saying the ACGME documents seem to require at least the

10:52AM  4    hospital give a letter of recommendation.  Is that wrong?

10:52AM  5         MR. GOLDBERG:  Absolutely, so wrong.  They have conflated

10:52AM  6    issues, and let me just walk you through it.  It is so wrong.

10:52AM  7         THE COURT:  Okay.

10:52AM  8         MR. GOLDBERG:  Okay.  So let's jump to that point.  If I

10:53AM  9    could ask you to fast-forward to Tab 23.  And let me know when

10:53AM 10    you're there.

10:53AM 11         THE COURT:  I'm there.

10:53AM 12         MR. GOLDBERG:  Okay.  This is from the ACGME, and it

10:53AM 13    provides an overview.  And I just want to start from the beginning

10:53AM 14    to educate the Court.  If you turn the page, the ACGME is a

10:53AM 15    private 501(c)(3) not-for-profit organization that sets standards

10:53AM 16    for U.S. graduate medical education, and you can read the rest of

10:53AM 17    it.  But importantly it says:  Accreditation is achieved through a

10:53AM 18    voluntary process of evaluation and review.  Okay?  And then on

10:53AM 19    the right side of the page it sets forth common program

10:53AM 20    requirements that are really standards.  It is something that --

10:53AM 21    the relationship is between the hospital and ACGME, and the law

10:53AM 22    squarely says there are no rights intended or unintended that flow

10:53AM 23    to the resident to enforce that.

10:53AM 24         And if I can make that point a little bit more clear, I'd

10:54AM 25    ask you to turn to Tab 24, which is a case, 2016, not too long

| | |
|---|---|
| 10:54AM | 1 | ago, out of the United States District Court in South Carolina, by |
| 10:54AM | 2 | Judge Cameron McGowan, and it's called the Irani case vs. |
| 10:54AM | 3 | University of South Carolina School of Medicine.  And in that |
| 10:54AM | 4 | case, which, you know, has parallels here, the doctor was an |
| 10:54AM | 5 | orthopedic surgery resident and was terminated from the program. |
| 10:54AM | 6 | The program was South Carolina, and the doctor claimed that since |
| 10:54AM | 7 | the program was accredited by ACGME and agreed to comply with the |
| 10:54AM | 8 | ACGME standards, that the resident was an intended beneficiary; |
| 10:54AM | 9 | somewhat akin to what Dr. Finkelstein is arguing here today.  The |
| 10:54AM | 10 | court squarely rejected that argument, finding that:  The nature |
| 10:54AM | 11 | of the promises between the ACGME and the hospital or program do |
| 10:55AM | 12 | not give rise to such a theory.  And the court said that the |
| 10:55AM | 13 | doctor in that case failed to cite a single case holding that |
| 10:55AM | 14 | agreements of a similar nature may be enforced by a resident under |
| 10:55AM | 15 | a theory.  Likewise, Dr. Finkelstein here, Judge, has failed to |
| 10:55AM | 16 | cite a single case. |
| 10:55AM | 17 | And I want to point your attention to -- and I want to |
| 10:55AM | 18 | disclose that this is like a 50-page opinion, so I only put the |
| 10:55AM | 19 | relevant parts in here -- |
| 10:55AM | 20 | THE COURT:  Okay. |
| 10:55AM | 21 | MR. GOLDBERG:  -- to save a little -- some trees. |
| 10:55AM | 22 | But if I take you to the third page, on page 33 of the |
| 10:55AM | 23 | opinion, and I've highlighted at Pinpoint 49, I just would like to |
| 10:55AM | 24 | read that to you, because it really goes to your -- the |
| 10:55AM | 25 | fundamental question; they don't even get out of the gate. |

10:55AM  1      So the court wrote:  The standards that ACGME has

10:55AM  2  established for all of its accredited institutions are akin to

10:56AM  3  regulations established by an administrative body rather than a

10:56AM  4  contract governing a relationship between two entities.  If the

10:56AM  5  program fails to substantially comply with ACGME's requirements,

10:56AM  6  ACGME can revoke its accreditation, and that would not be a breach

10:56AM  7  of any contract between the resident and the program, and I'm

10:56AM  8  summarizing.  In other words, and they cite this case -- this

10:56AM  9  language is from another case, the Castrodian (phonetic) case, it

10:56AM  10  says:  The doctor in that case produced nothing that demonstrates

10:56AM  11  that the sponsoring institution promised -- or the doctor produced

10:56AM  12  nothing that the sponsoring institution promised ACGME that it

10:56AM  13  would follow its requirements as it related to the doctor.

10:56AM  14  Rather, it's just a set of regulations.

10:56AM  15      And it goes on to say that accrediting bodies are not

10:56AM  16  engaged in commercial transactions and the contract theory doesn't

10:56AM  17  apply.

10:56AM  18      A very similar case, if I could turn to Tab 25, is the

10:57AM  19  Rice case, involving St. Louis University.  It's dated June 4,

10:57AM  20  2020, so even more recent than the Irani case.  And in that case

10:57AM  21  the same result holds.  And I'll summarize.  Dr. Rice -- and the

10:57AM  22  facts are pretty similar to what we have here, so there are cases

10:57AM  23  with similar facts.  Dr. Rice was offered a position in a surgical

10:57AM  24  residency program and he signed a resident agreement with St.

10:57AM  25  Louis University.  The court said that by all accounts Dr. Rice

10:57AM 1  did well during her first few years, but by her third year and

10:57AM 2  going into her fourth year problems arose; similar to what

10:57AM 3  happened to Dr. Finkelstein.  She received poor test scores on the

10:57AM 4  ABSITE and she was placed on probation.  The doctor reported being

10:57AM 5  mistreated by attending physicians and faculty and the

10:57AM 6  relationship deteriorated.  Several additional incidents occurred,

10:57AM 7  and the CCC committee at that institution, similar to the one I've

10:58AM 8  mentioned here, met at the end of her fourth contract year and

10:58AM 9  decided to terminate Dr. Rice's contract.  So she sued for breach

10:58AM 10 of contract, defamation, and other claims, including the failure

10:58AM 11 of the program to comply with the ACGME requirements; exactly what

10:58AM 12 my colleague, Mr. Levenstein, is suggesting is important here.

10:58AM 13     The court, after long litigation and after she amended to

10:58AM 14 add a discrimination claim, the court found that the ACGME

10:58AM 15 requirements were not cognizable; what I've told you before.  In

10:58AM 16 fact, the court found that nowhere in her contract -- the doctor's

10:58AM 17 contract with the hospital or the ACGME standards even

10:58AM 18 incorporated to give a possibility that that could be cognizable.

10:58AM 19 But they found as a matter of law that -- and I'm reading here:

10:58AM 20 The court also found as a matter of law that St. Louis University,

10:59AM 21 like all other accredited institutions -- sorry.  I know.  I had

10:59AM 22 an agreement not to read too fast with your court reporter -- must

10:59AM 23 comply with certain requirements to maintain accreditation and

10:59AM 24 that would not sustain any identifiable contractual promise.  So

10:59AM 25 the court ruled against Dr. Rice, for the same reasons you should

Case 1:23-cv-20188-RKA   Document 127-12   Entered on FLSD Docket 07/31/2023   Page 64 of
105

10:59AM 1    find there is no trigger or plant or seed to trigger injunctive

10:59AM 2    relief here.  There is just no private right of action.

10:59AM 3         Tab 26 I have included Dr. Finkelstein's agreement.  So

10:59AM 4    when a resident matriculates into a categorical residency, which

10:59AM 5    means -- and we haven't even told you this and I feel bad, but

10:59AM 6    residencies are five years, okay, and the years are PGY-1 through

10:59AM 7    PGY-5, that's program graduate year.  When they enter into the

10:59AM 8    program, they sign an agreement, a contract.  And in the Rice

11:00AM 9    case, they tried to convince the court that the contract, you

11:00AM 10   know, adopted or put in ACGME standards that would be part of a

11:00AM 11   contract.

11:00AM 12        You have asked, Judge Reid, whether there is a contract

11:00AM 13   at issue here.  There is no contract.  There is nothing in this

11:00AM 14   agreement that adopts or makes a part of our agreement to comply

11:00AM 15   with the accreditation standards for Dr. Finkelstein.  Okay?  And

11:00AM 16   the proof is in the pudding.  She has a breach of contract count

11:00AM 17   in this case, and she has not even alleged that we violated her

11:00AM 18   own contract because we didn't provide her with a letter of

11:00AM 19   recommendation or any of these other documents.  It's not in the

11:00AM 20   case.

11:00AM 21        And I want to make clear that they haven't even alleged a

11:00AM 22   breach of contract case.  We're so far removed from any cognizable

11:00AM 23   claim, it's not there.  And the only mention of ACGME in her

11:01AM 24   contract, if I could ask you to turn to the last page, page 6,

11:01AM 25   which is the signature page, is it says:  If Mount Sinai -- which

11:01AM    1    has been doing residency programs and academic teaching since 1954

11:01AM    2    -- if they were to close -- then it says:  the medical center will

11:01AM    3    allow appointees to either complete the educational program or

11:01AM    4    will assist the appointees in enrolling in an ACGME accredited

11:01AM    5    program in which the appointee can continue his or her education.

11:01AM    6    That is the only reference to ACGME, which doesn't apply here.

11:01AM    7         I also want to point out the one thing I will agree with

11:01AM    8    Mr. Levenstein on is ACGME guidelines say for our accreditation

11:01AM    9    purposes we should not put a resident -- a current resident under

11:01AM   10    any restrictive covenant.  Okay?  And so you can see we actually

11:02AM   11    adopted that language without reference to the ACGME; but right

11:02AM   12    below the closure provision we say:  Neither the medical center

11:02AM   13    nor its programs may require residents to sign a noncompetition

11:02AM   14    guarantee or restrictive covenant.  That did not happen here.  I

11:02AM   15    want to make it very clear, Mr. Levenstein said it's like a matter

11:02AM   16    of law that a release is a restrictive covenant.  It is not, and I

11:02AM   17    think the Court knows that.

11:02AM   18         What they have also alleged in this case, and

11:02AM   19    frivolously, is that Mr. Jaffee imposed a nondisclosure agreement;

11:02AM   20    that as part of these discussions there was some restrictive

11:02AM   21    covenant or nondisclosure agreement.  That is nowhere in the

11:02AM   22    documents.  You know, Mr. Wax testified that Mr. Jaffee never

11:02AM   23    asked for a nondisclosure agreement.  It's mentioned 55 times,

11:02AM   24    however, in their papers; and we have a motion out on that to Mr.

11:02AM   25    Levenstein to withdraw that, but that's as far as I'm going to say

| | |
|---|---|
| 11:02AM | 1 |
| 11:03AM | 2 |
| 11:03AM | 3 |
| 11:03AM | 4 |
| 11:03AM | 5 |
| 11:03AM | 6 |
| 11:03AM | 7 |
| 11:03AM | 8 |
| 11:03AM | 9 |
| 11:03AM | 10 |
| 11:03AM | 11 |
| 11:03AM | 12 |
| 11:03AM | 13 |
| 11:03AM | 14 |
| 11:03AM | 15 |
| 11:03AM | 16 |
| 11:04AM | 17 |
| 11:04AM | 18 |
| 11:04AM | 19 |
| 11:04AM | 20 |
| 11:04AM | 21 |
| 11:04AM | 22 |
| 11:04AM | 23 |
| 11:04AM | 24 |
| 11:04AM | 25 |

now.  My point being, there is no restrictive covenant at issue in this case, and there is no claim for one.

THE COURT:  Okay.

MR. GOLDBERG:  So if you would turn to Tab 27, this is the ACGME saying, look, to a resident or anybody, we govern and enforce our own accreditation standards, and you can make a complaint and there's two ways to do it; you go to an office of ombudsman that's on the second page, or to the office of complaints.  As I said, I won't belabor it, Dr. Finkelstein made an extensive complaint, raising a whole host of issues that sort of mirror her lawsuit.  It is not correct for Mr. Levenstein to suggest that a letter of recommendation or these completion documents, however they phrased it, were not raised.  They were.

And I will represent to the Court that although he doesn't know yet, we will produce it in discovery subject to a 502(d) order, there was no action taken, none.  I mean of course not a loss of accreditation.  But as you read this page, they actually -- if there is a significant issue or they think there is an issue, they can come in and conduct what's called a site visit at the hospital.  They never did that; they just closed it in writing to us and took no action.  So I will represent that to the Court and so forth.

THE COURT:  Okay.

MR. GOLDBERG:  So now let me go to Tab 28.  And again, these -- I just wanted to give this to you and your chambers.

11:04AM   1   This is where Mr. Levenstein represented to the Court about the

11:04AM   2   ACGME requirements; that he needs this letter and these documents

11:04AM   3   and so forth to transfer, and that the program director letter is

11:04AM   4   not optional, et cetera, like he's argued here today.  And that's

11:04AM   5   where I need to slow down for a second and tell you he is

11:04AM   6   absolutely wrong.

11:04AM   7          And let me start by saying what he's done is he's

11:04AM   8   conflated several different concepts.  Okay?  You have a concept,

11:04AM   9   number one, of a letter of recommendation, which I've already gone

11:05AM   10  over with you is not required and it's voluntary.  There is

11:05AM   11  another concept called verification, and that is what the program

11:05AM   12  has to verify internally and give to any third parties who ask

11:05AM   13  about what the status is of a resident's education, and it's

11:05AM   14  usually done right now for graduating residents, and I'll get to

11:05AM   15  that.

11:05AM   16         And then he also talks about the summative evaluations

11:05AM   17  and a diploma.  Totally separate issues.  Summative evaluations

11:05AM   18  are not at issue in this injunction.  She actually got them.  The

11:05AM   19  verification is not at issue in this injunction; although he is

11:05AM   20  citing the rules to you to make it seem like it's applicable to a

11:05AM   21  letter of recommendation, but it's not, and she got a

11:06AM   22  verification.  Okay?  So let me walk you through.  I wanted to

11:06AM   23  just give you a big picture.

11:06AM   24         And where does this conflation and misleading, where is

11:06AM   25  it shown?  If you go to Tab 29, this is their submission at ECF

11:06AM  1   97, just a few days ago in their reply memo.  And finally in their

11:06AM  2   reply, so I would not have an opportunity, they didn't mention

11:06AM  3   anything about ACGME standards.  And by the way, in the

11:06AM  4   transcript, at the end of the last status conference, just to

11:06AM  5   remind you, you said:  What I need to know is what those

11:06AM  6   guidelines are; the ACGME guidelines.  You asked that.  You were

11:06AM  7   right on point before.

11:06AM  8         Now, I didn't have an opportunity to tell you there is no

11:06AM  9   (unintelligible) action, and it really doesn't matter anyway.  But

11:06AM  10  in their first memo of law to you in the briefing schedule, they

11:06AM  11  didn't mention anything about ACGME guidelines.  We called them to

11:06AM  12  task in our response, and now in their reply this is what you get.

11:07AM  13  Now, this is pasted into their brief, and you would think that

11:07AM  14  it's taken, you know, accurately from the ACGME guidelines.  I

11:07AM  15  want to highlight that it's not.  It's a merger of a couple

11:07AM  16  different provisions, again conflation, and there is a 14, you

11:07AM  17  know, 1 and 15 -- it's actually 14 and 15 go to this issue that

11:07AM  18  they're trying to argue.  They leave out 14, and let me show you

11:07AM  19  why.

11:07AM  20        If you turn to Tab 30, this is just another little

11:07AM  21  education for the Court.  There is a way to read these guidelines

11:07AM  22  when you go back into chambers.  The bold text is the common

11:07AM  23  program requirement.  The regular text goes to a specific

11:07AM  24  specialty.  But importantly, anything in italics or in a box is

11:07AM  25  statements of philosophy, and they're not citable.  So even if we

11:08AM   1   were to violate something in a box, and you'll see it's not even

11:08AM   2   citable to the ACGME; it's just philosophic, so I wanted to point

11:08AM   3   that out.  And actually this comes from a program director boot

11:08AM   4   camp from another institution, but I wanted to use it to educate

11:08AM   5   the Court.

11:08AM   6        So now let's get to the heart of the matters.  Tab 31,

11:08AM   7   what I've done is I've taken the cover page of the program

11:08AM   8   director guide that my colleague made reference to, and I have put

11:08AM   9   on the back of that the common program requirement that they want

11:08AM   10   to argue gives rise to a letter of recommendation.  So as I showed

11:08AM   11   you before, the key part of this is 14 and 15.  They left 14 off

11:08AM   12   in their presentation to you.  Why?  Because if you read 14 -- and

11:08AM   13   remember, this goes to verification, by the way.  This is not

11:08AM   14   speaking to a letter of recommendation; this goes to this

11:09AM   15   verification concept; wholly different and not at issue in this

11:09AM   16   case.  But it says:  Document verification of program completion

11:09AM   17   for all graduating residents within 30 days.

11:09AM   18        And then directly after that, reading the guidelines

11:09AM   19   together -- and that really means, just so internally we are

11:09AM   20   required for any graduating resident to make sure our records are

11:09AM   21   updated as to the graduation and the criteria that they met for

11:09AM   22   graduation; that's if we are surveyed or ACGME comes in to look at

11:09AM   23   our records, we have to have that in our internal records.

11:09AM   24        And then reading it together, it says:  Provide

11:09AM   25   verification of an individual resident's completion upon the

11:09AM  1   resident's request within 30 days.  Completion -- and this is why

11:09AM  2   they left off 14 -- means when they graduate.  All right?  So

11:09AM  3   there is no even requirement for verification prior to graduation

11:10AM  4   as of today.

11:10AM  5        Now I want to -- I'm always very transparent to you and,

11:10AM  6   you know, in my practice.  So what happened last September is

11:10AM  7   ACGME notified all institutions that they were going to amend

11:10AM  8   their whole book and make changes.  So if you go to 32, yes, I was

11:10AM  9   right, on September 17th they did an interim revision that would

11:10AM  10  be effective July 1st of 2023.  So it's not even effective as we

11:10AM  11  sit here today, and certainly was not effective as relates to Dr.

11:10AM  12  Finkelstein.  And what I've done is shown you the redline for this

11:10AM  13  provision, again just verification, and it's going to be broader

11:10AM  14  now.  It's going to say:  Document verification of education for

11:10AM  15  all residents within 30 days of completion or departure from the

11:11AM  16  program.

11:11AM  17       And, likewise, 15 is being broader, not just tied to

11:11AM  18  graduation, it's verification of education.

11:11AM  19       So if we were even talking about verification, which

11:11AM  20  we're not, and we've already provided her with that, then I just

11:11AM  21  want to highlight that it doesn't apply to her now, and it may

11:11AM  22  have applied to her in July when these guidelines get amended.

11:11AM  23       And to further vitiate the concept that verification

11:11AM  24  includes any other type of documentation, like they're trying to

11:11AM  25  fit in their diploma or a dean's letter or a letter of

11:11AM   1   recommendation into a verification, the guidance from ACGME says

11:11AM   2   no.  And if you turn to Tab 33, it says in the highlighted

11:12AM   3   portion, second sentence:  The ACGME does not specify exactly what

11:12AM   4   may be included in such verification, nor does it require that any

11:12AM   5   particular format be used for such verification.

11:12AM   6        And I will represent to you that verifications are

11:12AM   7   usually two or three sentences, and I'll show you the one we gave

11:12AM   8   Dr. Finkelstein in a minute.

11:12AM   9        But I want to highlight this issue of transfers before I

11:12AM   10  get there, because it comes into play in a couple of respects.  At

11:12AM   11  our last status conference and the transcript that I excerpted for

11:12AM   12  you, Mr. Levenstein wants to portray his client as transferring;

11:12AM   13  she wants to transfer to another institution and some ACGME

11:12AM   14  guidelines implicate transfers.  He's also made that point in

11:12AM   15  writing, and he's made that argument here today.

11:12AM   16        Dr. Finkelstein is not a transfer at all.  First, she was

11:13AM   17  terminated.  You are not a transfer resident after you've been

11:13AM   18  terminated from a program; okay?  You have to apply anew; so the

11:13AM   19  whole concept that transfer applies to her is not accurate.

11:13AM   20        Second, just to drive the point home, at Tab 33 I've

11:13AM   21  put -- and this is at ECF 40.21 as well, here is the definition of

11:13AM   22  transfer from the ACGME.  I'm not going to read them to you, but

11:13AM   23  she doesn't qualify.

11:13AM   24        Also I will highlight on transfers that in order to

11:13AM   25  transfer from one institution to another -- and certain residents

11:13AM   1   do that and Dr. Ben-David has facilitated transfers at times --

11:13AM   2   and the ACGME says even if a resident wants to transfer to another

11:13AM   3   residency program, they have to, one, be in good standing.  And

11:13AM   4   Dr. Finkelstein was not in good standing because she was placed on

11:14AM   5   probation, so she wouldn't even qualify for that reason.

11:14AM   6           But, secondly, the institutions have to work together and

11:14AM   7   cooperate about when that transfer is appropriate.  Like Mount

11:14AM   8   Sinai could say:  Look, to the resident and the second

11:14AM   9   institution, we can't have her transfer this month because she's

11:14AM  10   on a rotation that we need her for, for patient care.  So we need

11:14AM  11   to delay the transfer, if you don't mind, and they work it out,

11:14AM  12   and the ACGME wants transfers to be worked out.  The point being,

11:14AM  13   and I can't have this lost on you again, is she's not a transfer;

11:14AM  14   and in no way, shape, or form could she be.

11:14AM  15           And actually in the last highlighted portion on this

11:14AM  16   document, it says:  Documents for eligibility and resident

11:14AM  17   transfers, they can't go to her anyway.  It says it has to be

11:14AM  18   submitted through ADS, similar to ERAS.  And ADS, if you turn to

11:14AM  19   Tab 34, is -- I just gave you an explanation of it -- that's the

11:14AM  20   -- ACGME's secure electronic portal, for lack of a better word.

11:15AM  21           35 is the response to Dr. Finkelstein when she filed a

11:15AM  22   complaint with the ACGME, and for the first time said:  I don't

11:15AM  23   have my summative evaluations.  She never raised that through

11:15AM  24   Mr. Wax at all.  It was when we found out that in her complaint

11:15AM  25   she was alleging that she hadn't gotten her summative evaluations.

11:15AM   1   And her summative evaluations are actually filed in court by the

11:15AM   2   plaintiff at Tab 10 of my notebook at ECF 47 -- 40-7.  Sorry.

11:15AM   3          And so we gave her, her summative evaluations, and we

11:15AM   4   gave her, although not required, a verification on the second page

11:15AM   5   dated November 9th by Dr. Goldszer, and that is what a

11:15AM   6   verification looks like, you know.  It's not a letter of

11:16AM   7   recommendation, and that's why it's not part of any injunctive

11:16AM   8   relief that they're seeking.  But I do strongly object to them

11:16AM   9   conflating these issues and trying to have the Court believe that

11:16AM   10  a letter of recommendation is part of a verification or some other

11:16AM   11  requirement; it's just not.

11:16AM   12         And if you don't mind, I just want to -- I don't want to

11:16AM   13  go backwards.  So I think I've adequately addressed what I want to

11:16AM   14  address.  I'd like to give, if it's okay with you, Mr. Splichal a

11:16AM   15  few minutes just to finish our argument on the other legal issues

11:16AM   16  you raised a few minutes ago, unless there's any questions you

11:16AM   17  have about what I've presented.

11:16AM   18         THE COURT:  No, this is very clear.  Thank you very much.

11:16AM   19         MR. GOLDBERG:  Thank you.

11:17AM   20         MR. SPLICHAL:  Thank you, Your Honor.  Good morning.  I'm

11:17AM   21  Clark Splichal for the defendants Mount Sinai Medical Center and

11:17AM   22  Dr. Ben-David.

11:17AM   23         As Mr. Goldberg alluded to and we spent, I think, all

11:17AM   24  morning addressing in detail, is sort of this notion of getting

11:17AM   25  out of the gate, you know.  What is the hook for the remedy

11:17AM   1    sought?  It's certainly not the ACGME because it provides no

11:17AM   2    private right of action.  And even if it were somewhere in the

11:17AM   3    ACGME, which it is not, as Mr. Goldberg explained, that does not

11:17AM   4    -- a contractual right does not spring from that.

11:17AM   5            But just allowing I think for the sake of argument that

11:17AM   6    plaintiff gets out of the gate, her request for injunction fails

11:17AM   7    for a number of other reasons.  And we've put this in our briefing

11:17AM   8    with our original response to the preliminary injunction motion

11:17AM   9    and in the most recent memorandum submitted to you last week that,

11:18AM   10   you know, a fundamental -- a fundamental attribute of an

11:18AM   11   injunction is it has to be tied to some substantive, as you put

11:18AM   12   it, law, rule, regulation, or spring or be authorized under some

11:18AM   13   claim.  And from the get-go in this litigation plaintiff has never

11:18AM   14   identified what that claim or legal theory is.  And I think

11:18AM   15   underscoring the unwillingness to identify a legal or cognizable

11:18AM   16   legal theory that she could tie the requested injunction to is

11:18AM   17   that the request for injunction has changed.  It's been very

11:18AM   18   amorphous since this action was first initiated in state court.

11:18AM   19           Plaintiff was initially asking the court to enjoin Dr.

11:18AM   20   Ben-David from speaking to anyone, to any third parties about

11:18AM   21   plaintiff.  Once we -- and we moved to dismiss and we opposed that

11:18AM   22   on the grounds, well, okay, that's fine and dandy, but what claim

11:18AM   23   supports that form of injunctive relief?  She hasn't pled any

11:19AM   24   substantive cause of action that would allow the Court to, in

11:19AM   25   effect, silence, you know, a party from speaking about another

11:19AM  1  party.

11:19AM  2          Once this Court was removed, plaintiff slightly altered

11:19AM  3  the request for injunctive relief.  Now it was no longer about

11:19AM  4  silencing Dr. Ben-David per se, but appointing someone else at the

11:19AM  5  organization to speak on the organization's behalf.  A program

11:19AM  6  director letter was never mentioned.  A letter of recommendation

11:19AM  7  concept had not been introduced at that time.

11:19AM  8          And then of course for the first time plaintiff adds a

11:19AM  9  RICO claim, knowing that a state law extortion claim is not a

11:19AM  10  cognizable cause of action, so they added the civil RICO count.

11:19AM  11  So again we briefed that in federal court and pointed out again,

11:19AM  12  well, you know, what cause of action, what substantive claim is

11:19AM  13  this tied to?  And sort of belt and suspenders fashion, well,

11:19AM  14  maybe it's tied to the tortious interference or maybe it's tied to

11:19AM  15  the defamation, and we went through those.

11:19AM  16          And then for the first time in their reply in their

11:20AM  17  briefing they suggested:  Oh, it probably springs from these

11:20AM  18  torts.  And we responded to that because, you know, when you're

11:20AM  19  enjoining speech, be it a claim of defamation or tortious

11:20AM  20  interference, there are serious constitutional and First Amendment

11:20AM  21  implications to that.  And courts in equity typically, if not

11:20AM  22  universally, do not enjoin speech.  Whether that's packaged as a

11:20AM  23  defamation count or a tortious interference count, we cited a

11:20AM  24  number of cases for the proposition that courts will not enjoin

11:20AM  25  speech in that fashion.

```
11:20AM   1          So then yet again for the first time -- and we appeared
11:20AM   2     before you, I think, in April, this notion of a program director
11:20AM   3     letter was floated by plaintiff's counsel for the first time.  And
11:20AM   4     then again in May when you pressed counsel for authority
11:20AM   5     supporting entry of an injunction, we got yet a new theory of
11:20AM   6     liability, which is that this entire thing is tied to the RICO
11:21AM   7     claim.  And as we have briefed in our supplemental memoranda, that
11:21AM   8     can't be the case because, one, RICO doesn't authorize injunctive
11:21AM   9     relief; and, two, the underlying elements of a RICO claim aren't
11:21AM  10     even satisfied.
11:21AM  11          So the fact that this has been a moving target since the
11:21AM  12     get-go, I think, further underscores that there is just not a
11:21AM  13     clear right to injunctive relief that's been established in the
11:21AM  14     first instance.
11:21AM  15          The other element of an injunction that we've talked a
11:21AM  16     little bit about today but I want to hit a few important points
11:21AM  17     on, is the notion of irreparable harm.  This is a fundamental
11:21AM  18     element of an injunction.  It's usually where most injunctions
11:21AM  19     fail.  Take the patent case you mentioned earlier, Your Honor.  In
11:21AM  20     that case, there's a clear statutory right to relief.  That almost
11:21AM  21     goes without saying.  But then we have to get into:  Okay.  Well,
11:22AM  22     what is the irreparable harm?  Can it be remedied at law?  Et
11:22AM  23     cetera.
11:22AM  24          In this case the harm is entirely speculative, and it's
11:22AM  25     speculative for a couple reasons.  First, plaintiff waited a very
```

11:22AM 1   long time to file action from the last alleged injury caused by

11:22AM 2   Mount Sinai Medical Center and Dr. Ben-David.  She was terminated

11:22AM 3   from the residency in January of 2021.  She alleges -- and this is

11:22AM 4   just going off what's in other pleading -- she alleges that in

11:22AM 5   June of that year, 2021, she had a conditional offer from Mount

11:22AM 6   Sinai Beth Israel in New York City, not affiliated with our

11:22AM 7   clients, I'll call it Beth Israel -- for a part-time employment

11:22AM 8   position, and those are the only operative dates provided.  She

11:22AM 9   does not file suit for another year and change; coming into court

11:22AM 10  claiming immediate irreparable harm.

11:22AM 11          The fact of the matter is -- and as Mr. Goldberg

11:22AM 12  underscored -- is that she hasn't applied to any new residencies

11:23AM 13  since she left Mount Sinai.  She has applied to a moonlight

11:23AM 14  employment position in New York.  As we understand it, she's

11:23AM 15  applied to another position at CUNY in New York.  But the fact

11:23AM 16  that the Court is supposed to extrapolate from these past

11:23AM 17  applications for employment that she will be irreparably harmed in

11:23AM 18  seeking a future residency, it just -- it's not apples to apples,

11:23AM 19  and it really dooms that claim.  So I think on one hand you have

11:23AM 20  the delay in seeking the relief that undermines any claim for

11:23AM 21  irreparable harm.  If it was truly irreparable, you know, and the

11:23AM 22  application cycle in her own allegations is once a year, the ERAS

11:23AM 23  cycle, the matching cycle, the fact that she wasn't in court

11:23AM 24  immediately after she was terminated to try to remedy this, shows

11:23AM 25  that there really isn't any irreparable harm that can't be

11:23AM   1   remedied through law, through monetary damages, which we did talk

11:23AM   2   about earlier.

11:23AM   3          And again the past harm that she points to, the Beth

11:24AM   4   Israel opportunity cannot necessarily serve as prolog for future

11:24AM   5   harm, particularly in this case where it's an employment

11:24AM   6   opportunity that's really dissimilar to the continuation of her

11:24AM   7   medical education, which is why she's in court today.

11:24AM   8          You alluded to this, Judge, and I want to go back to it,

11:24AM   9   and it has to do with the feasibility of an injunction.  It is a

11:24AM   10  bedrock element of injunctive relief that the relief must be

11:24AM   11  feasible, practical, workable, and manageable by the court.  And

11:24AM   12  here if the Court were to enter an injunction as it's been framed

11:24AM   13  by plaintiff, it would be none of those things.  And it would do

11:24AM   14  little to resolve the issues at hand and it would spawn 20 new

11:24AM   15  issues.

11:24AM   16         You, Your Honor, mentioned, you know:  What do we do if

11:25AM   17  you're not satisfied with the language?  Or what do we do if

11:25AM   18  consent is unreasonably withheld?  Am I deciding that?  I mean it

11:25AM   19  seems under their regime that they're proposing, we would be back

11:25AM   20  in court every week, you know, trying to manage it and make this

11:25AM   21  injunction workable.

11:25AM   22         It raises more questions than it resolves, and we have

11:25AM   23  listed these sort of hypothetical questions in our most recent

11:25AM   24  memo.  What if the selection of a reference provider at Mount

11:25AM   25  Sinai refuses?  What do we do?  Again, who decides whether our

11:25AM   1   consent is unreasonably withheld?  They've asked that the

11:25AM   2   reference be accurate.  That's a loaded term.  Who decides what's

11:25AM   3   accurate?  Who decides what's fair?  You know, does it put the

11:25AM   4   program in a position of having to obfuscate or having to mislead;

11:26AM   5   exposing the program to liability and Dr. Ben-David to liability

11:26AM   6   based on giving incomplete or untruthful answers to inquiring

11:26AM   7   third parties?

11:26AM   8          You know, it is a fact that plaintiff was placed on

11:26AM   9   probations and remediations.  Are we supposed to lie about that?

11:26AM  10   What if we face liability?  And as you know, there is a Florida

11:26AM  11   statute that actually immunizes, you know, certain

11:26AM  12   employer-to-employer communications based on references for this

11:26AM  13   purpose.  But again under plaintiff's proposed regime, we have

11:26AM  14   sort of limitless liability based on what is said and what is not

11:26AM  15   said to inquiring third parties.

11:26AM  16          And I think the very last point, to kind of put a bow on

11:26AM  17   all of this, is the public interests element.  You know, here

11:26AM  18   we're dealing with a residency program that has extraordinary duty

11:27AM  19   to the public, and that duty is to ensure the graduation of

11:27AM  20   competent and well-qualified physicians and sort of release them

11:27AM  21   into the community.

11:27AM  22          As we cite in our brief, both the -- our first response

11:27AM  23   to the PI motion and the memorandum submitted last week, there are

11:27AM  24   cases that have sort of dealt with this issue that courts really

11:27AM  25   should not be trenching into areas of academic discretion,

11:27AM   1    academic decision-making, should not substitute their judgment for

11:27AM   2    those of educators and people with experience, and in particular

11:27AM   3    with medical residency programs that act as the gatekeepers to the

11:27AM   4    medical profession and to the patient population.

11:27AM   5         The notion that an injunction if it were to issue would

11:27AM   6    essentially usurp that important role from a medical residency

11:27AM   7    program and allow the court to basically rewrite a plaintiff's

11:28AM   8    academic history.  That's what they're asking to do there.

11:28AM   9         So I'll rest on what's left in our briefing.  I'm happy

11:28AM   10   to answer any questions.  I'm sure Mr. Goldberg is happy to answer

11:28AM   11   any questions you have as well, but we'll rest on that.

11:28AM   12        THE COURT:  All right.  Thank you.

11:28AM   13        So, plaintiff, I do have a few questions for you.  And

11:28AM   14   let's start with:  How would you distinguish the cases in which

11:28AM   15   the ACGME has been determined to not be a contract between the

11:28AM   16   resident and the hospital?

11:28AM   17        MR. LEVENSTEIN:  Those cases are out-of-state cases, so

11:28AM   18   they're only persuasive at best.  The facts of those situations

11:28AM   19   were different.

11:28AM   20        Here we have a breach of employment agreement, a claim

11:28AM   21   under the employment agreement between the hospital residency

11:28AM   22   program and Dr. Finkelstein.  Our request for injunctive relief is

11:29AM   23   based upon this process that they refused to participate in

11:29AM   24   without a general release.

11:29AM   25        As I went through all of the provisions of the various

11:29AM 1    ACGME documents, I don't believe those cases were decided

11:29AM 2    correctly.  If we look at what those documents say in the context

11:29AM 3    of this case, which is not the same, Dr. Finkelstein is not using

11:29AM 4    the ACGME guidance and requirements and documents as the basis for

11:29AM 5    her defamation claim, for her tortious interference claim, for her

11:29AM 6    breach of contract claim; she is using it in terms of what should

11:29AM 7    have been provided to her from the extorsion position under these

11:29AM 8    documents certainly because I think from my reading of those

11:29AM 9    provisions, it's crystal clear that the contract between the

11:29AM 10   hospital and Dr. Finkelstein contains provisions that are

11:30AM 11   specifically required by the ACGME and come out of that set of

11:30AM 12   documents which I referred to.  And it is crystal clear that those

11:30AM 13   documents which they withheld from her, she had a right to receive

11:30AM 14   under those ACGME documents to which, while she's not a named

11:30AM 15   party individually, she's a named party generally, because it

11:30AM 16   refers to residents in its text.

11:30AM 17          And to say that somehow they're a voluntary organization

11:30AM 18   and that this residency program doesn't have to belong to them is

11:30AM 19   to stretch the imagination thin because, as I stated earlier, Your

11:30AM 20   Honor, no residency program which is unaccredited can graduate

11:30AM 21   residents who qualify for board certification recognition.  And in

11:30AM 22   these days and times, without board certification, a physician is

11:31AM 23   prohibited from obtaining medical staff privileges in virtually

11:31AM 24   every hospital in the United States without being certified in

11:31AM 25   their specialty.  So to say that somehow this is all a voluntary

11:31AM   1   scheme that they can opt in and out of is a stretch of the

11:31AM   2   imagination way too far and way too thin.

11:31AM   3          So I think it's distinguishable because of our facts and

11:31AM   4   this particular fact situation where we're asking the Court to

11:31AM   5   hold this program to the requirements to which it is bound and my

11:31AM   6   client is bound by the ACGME to provide fair and accurate

11:31AM   7   information evaluating her.  We've made allegations in the RICO

11:31AM   8   count of the conduct which clearly indicates that that can never

11:31AM   9   happen with Dr. Ben-David.

11:31AM   10          And when we get to the point in time where there is an

11:32AM   11   argument that somehow they're going to have to lie or whitewash or

11:32AM   12   make statements that aren't true, remember that the letter which

11:32AM   13   we attached as Exhibit 1 to our response -- our reply memorandum

11:32AM   14   states that:  Dr. Paige Finkelstein enrolled in our general

11:32AM   15   surgery residency in June 2018 and resigned in January 2021.  She

11:32AM   16   has logged about 450 surgical procedures during her training with

11:32AM   17   us.  Her annual ABSITE exam scores were 32 in 2019 and 21

11:32AM   18   percentile in 2020.  She has participated in scholarly activity

11:32AM   19   and been involved in one publication.  She was placed on probation

11:32AM   20   in 2019 and 2020.  Dr. Finkelstein resigned from Mount Sinai

11:32AM   21   Medical Center in January of 2021.

11:32AM   22          That's what the letter said.  It says nothing about

11:32AM   23   professionalism issues or competency issues or patient care issues

11:33AM   24   or anything of the nature now they say that somehow they would be

11:33AM   25   required to whitewash.  The only difference is they were only

11:33AM 1  willing to give her that letter in exchange for a general release

11:33AM 2  of all claims; then it was okay.  Give us a release, it was all

11:33AM 3  right to put that letter out in the public.

11:33AM 4       Now that she didn't give them the release and they

11:33AM 5  wouldn't give her the letter without it, then perhaps if they had

11:33AM 6  given her the letter without it, we wouldn't be here, because

11:33AM 7  perhaps we would have had a chance to move on to another position,

11:33AM 8  which I'll get to in just a moment.

11:33AM 9       But they unequivocally refused to give any of these

11:33AM 10 documents we're talking about unless she signed that general

11:33AM 11 release.  Her attorney has been deposed, Mr. Wax.  He has said

11:33AM 12 repeatedly that's what he was told by Mr. Jaffee; that there was

11:33AM 13 never an offer to provide a single piece of paper for her unless

11:33AM 14 she signed that release.  It's not disputed.  And there is

11:33AM 15 correspondence which we attached to that exhibit, which says:

11:34AM 16 Barry, I have attached the text of the letter that Mount Sinai

11:34AM 17 surgical residency program director could send in response to

11:34AM 18 inquiries regarding Dr. Finkelstein if our clients agree on the

11:34AM 19 attached language and the language of a release.  Be well, Arne.

11:34AM 20 And this letter that was sent contains Dr. Ben-David's signature

11:34AM 21 on it, this draft letter.  So he was aware of what he was signing;

11:34AM 22 it wasn't just Mount Sinai Medical Center's lawyer who had

11:34AM 23 prepared it; it has his signature on it.

11:34AM 24       So when we talk about what's happened in this case as

11:34AM 25 opposed to those other cases, we're here solely to make the

11:34AM   1   playing field level.  And I want to address some of the things

11:34AM   2   that were mentioned by Mr. Goldberg and Mr. Splichal.

11:34AM   3          What I read from the documents that I read to the Court

11:34AM   4   came right out of the text.  Nothing was omitted, nothing was

11:34AM   5   changed, and nothing was ad lib'd in any way.  It was the exact

11:35AM   6   language of every provision that I read.  And in our brief the

11:35AM   7   language that you'll find in our most recent memo came right out

11:35AM   8   of those documents too.  And if the Court will review them, you'll

11:35AM   9   see that there is nothing changed and nothing edited and nothing

11:35AM  10   left out of substance.

11:35AM  11          Dr. Finkelstein filed suit quite some time ago in state

11:35AM  12   court.  We had a hearing scheduled before the state court in

11:35AM  13   November of 2022.  It was canceled by the court.  We at the time

11:35AM  14   had Equal Employment Opportunity Commission charges pending, and a

11:35AM  15   letter -- ultimately a letter granting us the right to sue was

11:35AM  16   issued while that investigation is still ongoing on one element of

11:35AM  17   it, and we have not received a final letter from them on that

11:35AM  18   issue.

11:35AM  19          After that, we filed our amended complaint, including

11:35AM  20   those federal related discrimination, harassment, and retaliation

11:36AM  21   charges, this case was removed.  We had asked for the injunction

11:36AM  22   at a time after Dr. Finkelstein had exhausted efforts to try to

11:36AM  23   find employment, to try to match to obtain an anesthesiology

11:36AM  24   residency to try to change her specialty to move on in the

11:36AM  25   profession, and made efforts to try to mitigate her damages and

11:36AM  1    continue her career.  They were all unsuccessful because she

11:36AM  2    didn't have these documents that were not provided until the

11:36AM  3    lawsuit was filed and the ACGME complaint was filed.  Only after

11:36AM  4    that were those documents provided.

11:36AM  5         So she was trying to mitigate her damages.  She has not

11:36AM  6    been able to do that, was not able to do that in that interim

11:36AM  7    period, and suit was then filed.  So there was no delay that

11:36AM  8    wasn't caused -- that was caused by anything to argue against

11:36AM  9    irreparable harm.  In fact, the fact that she is unable to obtain

11:36AM  10   employment or transfer during that interim period is even more in

11:36AM  11   support of the argument that there is irreparable harm, because

11:37AM  12   she can't continue with her career.  So the delay is not because

11:37AM  13   of any lack of irreparable harm; it's because of the fact that her

11:37AM  14   inability to obtain employment or transfer -- not just transfer to

11:37AM  15   another residency but obtain another specialty residency at all.

11:37AM  16        As far as being a transfer, she's looking to enroll in

11:37AM  17   another residency program in general surgery.  No matter what you

11:37AM  18   call it, whether she's a transfer, whether she is an applicant,

11:37AM  19   all she has tried to do is continue with her medical education and

11:37AM  20   training, because of the actions of the defendants as we've

11:37AM  21   alleged.

11:37AM  22        And our complaint has predicate acts in RICO, tortious

11:37AM  23   interference, defamation, retaliation, harassment, sexual

11:37AM  24   discrimination.  All of those counts, based on the conduct that

11:37AM  25   these defendants have engaged in towards her, and in particular

11:38AM 1   with regard to her efforts to seek employment.  She has been

11:38AM 2   unable to successfully in any way obtain employment similar to

11:38AM 3   that which she had to advance her career.  She is still working on

11:38AM 4   that now.

11:38AM 5        THE COURT:  I understand.  So, counsel, I think I have

11:38AM 6   your argument.  I think I understand the Defendants' argument as

11:38AM 7   well on this injunction issue.

11:38AM 8        I'll review the documents again, your supplemental

11:38AM 9   pleadings in light of the argument and the evidence I've received,

11:38AM 10  and I will go ahead and issue an order.

11:38AM 11       I can tell you my initial thoughts are still that -- my

11:38AM 12  concern is that the agreement on which your request for

11:38AM 13  preliminary injunction rests, this ACGME agreement, isn't

11:38AM 14  sufficient for the Court to enjoin behavior of the defendants.

11:39AM 15  But I will carefully again read all of your pleadings and the

11:39AM 16  cases and render a report and recommendation to Judge Altman.

11:39AM 17       MR. LEVENSTEIN:  Your Honor, could I provide the Court

11:39AM 18  with hard copies of what I read from so you will have them?

11:39AM 19       THE COURT:  Yes.  But if they're attached to the

11:39AM 20  complaint, all you need to do is let me know.

11:39AM 21       MR. LEVENSTEIN:  I think the excerpts have been referred

11:39AM 22  to and attached; I don't know that the entire documents have.  So

11:39AM 23  just to be safe, can we send those to you?

11:39AM 24       THE COURT:  Yes, that would be fine.  Do you want to

11:39AM 25  provide copies today?

| | |
|---|---|
| 11:39AM | 1 |
| 11:39AM | 2 |
| 11:39AM | 3 |
| 11:39AM | 4 |
| 11:39AM | 5 |
| 11:39AM | 6 |
| 11:39AM | 7 |
| 11:39AM | 8 |

MR. LEVENSTEIN:  Yes.

MR. GOLDBERG:  The whole document is at ECF 40-21.

THE COURT:  The whole document being?

MR. GOLDBERG:  All the guidelines.

THE COURT:  Okay.  Is at?  Say it again, please.

MR. GOLDBERG:  40-21.

THE COURT:  Okay.

MS. SLIWKA:  Your Honor, if I am allowed, we would prefer to resubmit copies of these guidelines for the simple fact that, like my cocounsel referred, we have been litigating this case for some time, so some of the exhibits that have been attached to the record might not be still current, so we would prefer that Your Honor has access to current versions of the common program requirement guidelines and the program director guidelines as well.

MR. LEVENSTEIN:  And the ones that I read from.

THE COURT:  My concern is I just need the ones that are current when the case was filed.

MR. LEVENSTEIN:  And that's what we're referring to; the ones I read from today, Your Honor.

THE COURT:  So if you would like to give me those copies, we can mark them as exhibits and we'll take them.  My courtroom deputy will do that.

MS. SLIWKA:  Absolutely.

THE COURT:  And I have your notebook, defense.

| | |
|---|---|
| 11:40AM | 1 |
| 11:40AM | 2 |
| 11:40AM | 3 |
| 11:40AM | 4 |
| 11:40AM | 5 |
| 11:40AM | 6 |
| 11:40AM | 7 |
| 11:40AM | 8 |
| 11:40AM | 9 |
| 11:41AM | 10 |
| 11:41AM | 11 |
| 11:41AM | 12 |
| 11:41AM | 13 |
| 11:41AM | 14 |
| 11:41AM | 15 |
| 11:41AM | 16 |
| 11:41AM | 17 |
| 11:41AM | 18 |

1    Have you given a copy of this notebook to opposing
2    counsel?
3         MR. GOLDBERG:  Yes, Your Honor.  And if I could ask that
4    that be marked as an exhibit just so it's on the record, maybe as
5    Defendants' 1 for purposes of this hearing?
6         THE COURT:  I will do that.  So your entire notebook will
7    be Defendants' Exhibit 1?
8         MR. GOLDBERG:  Yes, ma'am.
9         THE COURT:  All right.  Thank you.
10        (Defendants' Exhibit 1 received.)
11        MR. GOLDBERG:  Thank you very much for your time.
12        THE COURT:  Thank you, counsel.
13        MR. GOLDBERG:  I know we've taken a lot of time.
14        MR. LEVENSTEIN:  Thank you, Your Honor.
15        THE COURT:  It's an important issue, and I appreciate all
16   of the effort that both sides have put in.
17        MR. LEVENSTEIN:  Thank you very much, Your Honor.
18        (Proceedings adjourned at 11:41 A.M.)
19
20
21
22
23
24
25

1                    C E R T I F I C A T E

2            I, VERNITA ALLEN-WILLIAMS, do hereby certify that

3    the foregoing is a complete, true, and accurate transcript of

4    the proceedings had in the above-entitled case before the

5    Honorable LISETTE M. REID, one of the judges of said court, at

6    Miami, Florida, on June 21, 2023.

7

8                            s/Vernita Allen-Williams_____
                             Official Court Reporter
9                            United States District Court
                             Southern District of Florida
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

'

'20 [1] - 59:19

# 1

1 [6] - 37:25, 68:17, 82:13, 88:5, 88:7, 88:10
1-89 [1] - 1:4
1.......................
Page [1] - 2:2
10 [4] - 39:21, 57:18, 57:20, 73:2
100 [1] - 1:18
10:31 [1] - 56:22
10:45 [1] - 56:20
11 [4] - 37:5, 43:11, 57:18, 58:1
11:41 [1] - 88:18
12 [2] - 36:4, 58:8
1200 [1] - 1:18
129 [2] - 25:2, 57:14
13 [3] - 41:11, 58:12, 58:21
1356 [1] - 36:14
14 [10] - 41:21, 58:25, 59:1, 68:16, 68:17, 68:18, 69:11, 69:12, 70:2
15 [6] - 56:20, 59:3, 68:17, 69:11, 70:17
17 [5] - 39:21, 41:11, 41:21, 42:2
17th [1] - 70:9
1954 [1] - 65:1
1971 [1] - 34:15
1985 [1] - 35:1
1st [1] - 70:10

# 2

2 [3] - 37:25, 50:17, 53:5
2.8.3(d [1] - 51:16
20 [1] - 78:14
2008 [1] - 36:14
2009 [1] - 36:16
2016 [1] - 60:25
2018 [1] - 82:15
2019 [3] - 59:19, 82:17, 82:20
2020 [3] - 62:20, 82:18, 82:20
2021 [6] - 29:21, 59:4, 77:3, 77:5, 82:15, 82:21
2022 [1] - 84:13
2023 [5] - 1:7, 37:11, 38:8, 70:10, 89:6

21 [3] - 1:7, 82:17, 89:6
22 [1] - 33:1
23 [1] - 60:9
23-20188 [1] - 3:3
23-cv-20188-PAS [1] - 1:2
24 [2] - 37:11, 60:25
25 [1] - 62:18
26 [1] - 64:3
27 [1] - 66:4
28 [1] - 66:24
29 [2] - 44:20, 67:25
2nd [1] - 1:18

# 3

3 [2] - 37:25, 54:25
30 [10] - 33:9, 43:22, 43:24, 45:5, 53:8, 53:10, 68:20, 69:17, 70:1, 70:15
3001 [1] - 1:15
305 [1] - 1:15
305.523.5048 [1] - 1:23
308 [1] - 36:15
31 [1] - 69:6
32 [2] - 70:8, 82:17
33 [3] - 61:22, 71:2, 71:20
33128 [1] - 1:24
33131 [1] - 1:18
33410 [1] - 1:15
34 [1] - 72:19
35 [1] - 72:21
364 [1] - 36:15

# 4

4 [1] - 62:19
4-C [1] - 41:10
4-D [1] - 41:21
4.M [1] - 42:2
40-21 [2] - 87:2, 87:6
40-7 [1] - 73:2
40.21 [1] - 71:21
400 [1] - 1:23
45 [1] - 51:16
450 [1] - 82:16
47 [1] - 73:2
49 [1] - 61:23

# 5

5 [2] - 33:4, 42:23
5.8.1(e [1] - 44:20
5.8.2 [1] - 45:5
50-page [1] - 61:18
501(c)(3 [1] - 60:15

502(d [1] - 66:16
55 [1] - 65:23
554 [1] - 36:14
56 [3] - 43:11, 44:20, 45:5

# 6

6 [2] - 29:25, 64:24

# 7

7 [1] - 42:23

# 8

8 [1] - 57:11
86.1 [1] - 29:19
88 [1] - 2:2

# 9

9 [1] - 57:18
94 [2] - 36:5, 37:5
97 [2] - 42:23, 68:1
9:00 [1] - 1:8
9:04 [1] - 3:1
9th [1] - 73:5

# A

A.4 [1] - 51:23
A.M [4] - 1:8, 3:1, 56:22, 88:18
ability [2] - 20:20, 25:7
able [11] - 6:22, 15:25, 16:25, 20:13, 25:11, 35:5, 45:10, 52:15, 85:6
ABMS [2] - 46:4
above-entitled [1] - 89:4
absent [3] - 12:2, 16:1, 18:3
ABSITE [5] - 37:25, 59:15, 59:20, 63:4, 82:17
absolutely [10] - 23:8, 23:12, 31:19, 32:12, 37:12, 45:24, 47:5, 60:5, 67:6, 87:24
abuse [1] - 40:20
academic [5] - 37:15, 65:1, 79:25, 80:1, 80:8
accept [1] - 29:23
acceptable [1] - 57:15
access [1] - 87:13
accessible [2] - 44:24, 45:13

accomplish [1] - 15:17
accordance [1] - 45:13
accountability [2] - 50:21, 52:4
accounts [1] - 62:25
accreditation [19] - 7:3, 31:22, 32:10, 37:14, 39:2, 39:4, 39:7, 40:23, 45:24, 46:9, 46:17, 47:7, 60:17, 62:6, 63:23, 64:15, 65:8, 66:6, 66:17
Accreditation [2] - 7:4, 27:4
accredited [20] - 9:2, 9:5, 37:13, 38:18, 39:20, 40:6, 40:18, 41:2, 41:5, 41:24, 42:5, 45:23, 45:25, 46:2, 46:5, 51:14, 61:7, 62:2, 63:21, 65:4
accrediting [3] - 32:2, 32:9, 62:15
accurate [13] - 10:1, 29:14, 40:15, 44:4, 53:21, 54:21, 55:6, 71:19, 79:2, 79:3, 82:6, 89:3
accurately [1] - 68:14
ACGME [119] - 7:3, 8:19, 8:20, 9:2, 9:11, 9:13, 9:21, 10:5, 11:7, 11:9, 11:15, 11:20, 14:20, 14:25, 15:2, 16:22, 18:4, 18:7, 21:20, 23:17, 24:6, 26:17, 27:3, 27:10, 31:16, 31:18, 31:22, 31:25, 32:7, 32:8, 32:10, 32:13, 32:15, 32:17, 32:21, 33:1, 33:15, 36:25, 37:13, 37:14, 38:1, 38:10, 38:12, 38:13, 38:15, 38:20, 39:1, 39:13, 39:17, 40:5, 40:18, 41:1, 41:4, 41:16, 41:23, 42:5, 44:18, 45:3, 45:20, 46:5, 46:12, 46:16, 49:25, 50:23, 51:2, 51:9, 51:10, 51:12, 51:15, 53:2, 53:17, 54:6, 54:16, 60:3, 60:12, 60:14, 60:21, 61:7, 61:8, 61:11,

62:1, 62:6, 62:12, 63:11, 63:14, 63:17, 64:10, 64:23, 65:4, 65:6, 65:8, 65:11, 66:5, 67:2, 68:3, 68:6, 68:11, 68:14, 69:2, 69:22, 70:7, 71:1, 71:3, 71:13, 71:22, 72:2, 72:12, 72:22, 74:1, 74:3, 80:15, 81:1, 81:4, 81:11, 81:14, 82:6, 85:3, 86:13
ACGME's [3] - 42:15, 62:5, 72:20
achieved [1] - 60:17
ACLS [1] - 38:2
act [3] - 18:16, 18:17, 80:3
Act [1] - 35:9
action [20] - 19:2, 31:25, 32:15, 39:4, 39:5, 39:6, 46:15, 46:18, 52:8, 53:16, 64:2, 66:16, 66:21, 68:9, 74:2, 74:18, 74:24, 75:10, 75:12, 77:1
actions [1] - 85:20
activity [4] - 51:19, 51:20, 52:5, 82:18
acts [2] - 14:5, 85:22
ad [1] - 84:5
add [2] - 21:18, 63:14
added [1] - 75:10
addition [1] - 52:13
additional [3] - 4:2, 55:18, 63:6
address [8] - 16:20, 26:25, 41:5, 47:1, 48:17, 48:21, 73:14, 84:1
addressed [2] - 8:12, 73:13
addresses [1] - 8:14
addressing [2] - 41:8, 73:24
adds [1] - 75:8
adequate [6] - 6:6, 15:9, 15:10, 15:12, 31:7, 31:13
adequately [1] - 73:13
adjourned [1] - 88:18
administration [1] - 52:4
administrative [1] - 62:3
ADMITTED [1] - 2:1
adopted [2] - 64:10, 65:11

**adopts** [1] - 64:14
**ADS** [2] - 72:18
**advance** - 86:3
**advantage** [1] - 31:24
**advice** - 6:11
**advise** [1] - 46:17
**advised** - 39:3
**affects** - 24:18
**affidavit** [3] - 48:11, 48:12, 48:14
**affidavits** [1] - 49:14
**affiliated** [1] - 77:6
**affirmed** [1] - 36:15
**ago** [4] - 61:1, 68:1, 73:16, 84:11
**agree** [5] - 20:22, 47:12, 59:7, 65:7, 83:18
**agreed** [1] - 61:7
**agreement** [27] - 4:13, 7:16, 9:12, 9:13, 9:15, 11:19, 11:22, 16:22, 18:7, 19:14, 19:15, 20:19, 23:6, 41:13, 62:24, 63:22, 64:3, 64:8, 64:14, 65:19, 65:21, 65:23, 80:20, 80:21, 86:12, 86:13
**agreements** [1] - 61:14
**ahead** [1] - 86:10
**air** [1] - 43:7
**aisle** [1] - 25:11
**akin** [2] - 61:9, 62:2
**allegation** [1] - 13:22
**allegations** [2] - 77:22, 82:7
**allege** [1] - 10:11
**alleged** [14] - 5:4, 10:23, 14:5, 31:25, 36:8, 38:25, 43:20, 52:22, 52:25, 64:17, 64:21, 65:18, 77:1, 85:21
**alleges** [2] - 77:3, 77:4
**alleging** [1] - 72:25
**Allen** [1] - 89:8
**ALLEN** [2] - 1:22, 89:2
**Allen-Williams** [1] - 89:8
**ALLEN-WILLIAMS** [1] - 1:22, 89:2
**Alloni** [1] - 32:2
**allow** [9] - 4:10, 14:2, 20:2, 20:14, 31:21, 51:20, 65:3, 74:24, 80:7
**allowed** [3] - 13:1, 13:4, 87:8

**allowing** [4] - 8:6, 13:11, 13:20, 74:5
**allows** [2] - 9:15, 49:25
**alluded** [2] - 73:23, 78:8
**almost** [2] - 30:12, 76:20
**altered** [1] - 75:2
**alternative** [1] - 16:16
**alternatively** [1] - 15:24
**Altman** [1] - 86:16
**amend** [1] - 70:7
**amended** [9] - 14:16, 25:3, 36:9, 49:14, 49:18, 57:14, 63:13, 70:22, 84:19
**Amendment** [2] - 19:22, 75:20
**American** [2] - 7:3, 8:21, 46:3, 58:9
**amorphous** [1] - 74:18
**analog** [1] - 34:16
**analysis** [1] - 36:23
**anchor** [2] - 27:6, 27:11
**anesthesiology** [1] - 84:23
**anew** [1] - 71:18
**annual** [1] - 82:17
**annually** [1] - 44:21
**answer** [6] - 22:19, 22:21, 26:24, 36:19, 80:10
**answered** [1] - 55:19
**answers** [1] - 79:6
**anytime** [1] - 24:3
**anyway** [2] - 68:9, 72:17
**apologize** [1] - 40:3
**APPEARANCES** [1] - 1:12
**appearances** [1] - 3:5
**appeared** [1] - 76:1
**Appellate** [1] - 36:15
**apples** [2] - 77:18
**applicable** [5] - 44:16, 44:23, 45:8, 50:22, 67:20
**applicant** [11] - 23:20, 24:9, 24:10, 24:13, 24:17, 24:22, 57:22, 57:24, 58:15, 58:17, 85:18
**applicants** [2] - 37:12, 58:6
**application** [4] - 7:19, 25:12, 37:20, 77:22

**Application** [1] - 25:5
**applications** [2] - 7:22, 77:17
**applied** [6] - 42:1, 42:22, 70:22, 77:12, 77:13, 77:15
**applies** [2] - 33:7, 71:19
**apply** [9] - 37:16, 38:6, 39:13, 57:16, 57:20, 62:17, 65:6, 70:21, 71:18
**appointed** [1] - 50:20
**appointee** [1] - 65:5
**appointees** [2] - 65:3, 65:4
**appointing** [1] - 75:4
**appointment** [4] - 41:14, 41:20, 41:22, 41:25
**appointment/ contract** [1] - 41:13
**appreciate** [1] - 88:15
**approach** [2] - 49:5, 52:19
**appropriate** [2] - 48:24, 72:7
**appropriately** [1] - 40:8
**approval** [2] - 50:24, 51:12
**approve** [1] - 50:23
**approved** [2] - 29:6, 51:11
**April** [2] - 37:22, 76:2
**areas** [3] - 8:23, 41:8, 79:25
**argue** [3] - 68:18, 69:10, 85:8
**argued** [1] - 67:4
**arguing** [1] - 61:9
**argument** [11] - 36:4, 59:9, 61:10, 71:15, 73:15, 74:5, 82:11, 85:11, 86:6, 86:9
**arguments** [1] - 57:10
**Arne** [1] - 83:19
**Arnold** [1] - 3:18
**arose** [1] - 63:2
**aspects** [1] - 52:13
**assassination** [1] - 13:25
**assembling** [1] - 57:24
**assist** [1] - 65:4
**assistant** [7] - 7:10, 7:13, 21:1, 27:22, 28:8, 48:4, 50:4
**Association** [1] - 58:8
**assuming** [7] - 10:25,

11:25, 12:14, 15:7, 31:2, 31:4, 49:6
**attached** [13] - 7:12, 49:12, 49:13, 56:3, 59:4, 59:7, 82:13, 83:15, 83:16, 83:19, 86:19, 86:22, 87:11
**attaches** [2] - 30:16, 31:16
**attempt** [1] - 30:1
**attempted** [2] - 37:20, 44:25
**attend** [1] - 45:25
**attending** [1] - 63:5
**attention** [5] - 44:17, 46:12, 48:23, 57:11, 61:17
**attorney** [1] - 83:11
**attribute** [1] - 74:10
**audited** [1] - 39:3
**author** [3] - 24:11, 24:16
**authority** [26] - 4:6, 4:16, 4:20, 11:1, 11:4, 11:6, 11:7, 11:8, 11:23, 12:12, 12:24, 13:13, 15:7, 16:21, 16:23, 18:9, 19:7, 20:9, 21:21, 27:1, 34:3, 35:13, 50:20, 52:4, 55:23, 76:4
**authorize** [1] - 76:8
**authorized** [1] - 74:12
**authors** [3] - 24:8, 28:15
**autonomous** [1] - 45:10
**available** [1] - 57:18
**Avenue** [1] - 1:23
**avoid** [1] - 28:11
**aware** [2] - 43:14, 83:21

## B

**background** [7] - 8:17, 38:10, 43:11, 51:1, 51:17, 52:11, 53:18
**backwards** [1] - 73:13
**bad** [3] - 10:14, 42:14, 64:5
**Bao** [9] - 7:13, 21:1, 28:8, 29:17, 48:9, 48:11, 48:18, 55:10
**BAO** [1] - 7:13
**Bao's** [7] - 7:17, 16:17, 28:12, 48:25, 49:21

**Barry** [3] - 25:22, 59:4, 83:16
**based** [5] - 5:7, 6:10, 10:22, 13:13, 14:5, 14:17, 18:7, 79:6, 79:12, 79:14, 80:23, 85:24
**basic** [1] - 16:23
**basis** [3] - 27:6, 34:24, 81:4
**Beach** [2] - 1:15, 37:11
**bear** [1] - 11:15
**become** [2] - 9:5, 45:11
**bedrock** [1] - 78:10
**BEFORE** [1] - 1:10
**begin** [1] - 26:23
**beginning** [3] - 37:11, 48:13, 60:13
**behalf** [5] - 3:10, 3:16, 4:11, 22:13, 75:5
**behavior** [3] - 34:5, 40:20, 86:14
**belabor** [1] - 66:9
**belong** [1] - 81:18
**below** [2] - 48:22, 65:12
**belt** [1] - 75:13
**BEN** [1] - 1:7
**Ben** [44] - 3:17, 3:20, 5:4, 5:23, 6:4, 7:21, 8:2, 10:7, 10:10, 10:18, 12:4, 13:11, 13:23, 13:25, 14:6, 14:9, 14:13, 15:18, 16:15, 16:16, 19:21, 23:1, 25:6, 25:25, 26:1, 26:22, 29:13, 29:22, 38:22, 53:2, 55:8, 55:10, 55:13, 57:9, 58:13, 58:19, 72:1, 73:22, 74:20, 75:4, 77:2, 79:5, 82:9, 83:20
**BEN-DAVID** [1] - 1:7
**Ben-David** [42] - 3:17, 3:20, 5:4, 5:23, 6:4, 7:21, 8:2, 10:7, 10:10, 10:18, 12:4, 13:11, 13:23, 13:25, 14:6, 14:9, 14:13, 15:18, 16:15, 16:16, 19:21, 23:1, 25:6, 25:25, 26:1, 26:22, 29:13, 29:22, 38:22, 53:2, 55:8, 55:10, 57:9, 58:13, 58:19, 72:1, 73:22, 74:20, 75:4, 77:2, 79:5,

82:9
**Ben-David's** [2] - 55:13, 83:20
**beneficiary** [2] - 40:25, 61:8
**benefit** [1] - 30:14
**best** [1] - 80:18
**Beth** [5] - 7:23, 13:18, 77:6, 77:7, 78:3
**better** [4] - 26:18, 35:23, 54:22, 72:20
**between** [26] - 4:13, 5:3, 8:17, 9:3, 9:12, 11:9, 11:14, 11:19, 12:3, 14:5, 15:17, 18:7, 22:8, 23:6, 54:16, 54:17, 54:18, 58:25, 60:21, 61:11, 62:4, 62:7, 80:15, 80:21, 81:9
**beyond** [3] - 13:19, 15:15, 18:14
**big** [1] - 67:23
**binder** [2] - 22:14, 57:3
**binding** [1] - 44:15
**bit** [3] - 40:1, 60:24, 76:16
**Boa's** [1] - 36:21
**Board** [3] - 8:21, 34:22, 46:3
**board** [10] - 8:22, 8:25, 9:1, 9:5, 34:20, 46:1, 46:2, 46:5, 81:21, 81:22
**bodies** [2] - 32:2, 62:15
**body** [4] - 9:14, 31:22, 32:9, 62:3
**bold** [1] - 68:22
**book** [1] - 70:8
**boot** [1] - 69:3
**bottom** [3] - 58:20, 58:23, 59:1
**Boulevard** [1] - 1:15
**bound** [2] - 82:5, 82:6
**bow** [1] - 79:16
**box** [2] - 68:24, 69:1
**breach** [9] - 17:10, 19:13, 32:6, 62:6, 63:9, 64:16, 64:22, 80:20, 81:6
**break** [3] - 56:9, 56:15, 56:19
**breaks** [1] - 40:2
**brevity** [1] - 6:10
**brief** [5] - 3:24, 34:12, 68:13, 79:22, 84:6
**briefed** [3] - 59:17, 75:11, 76:7

**briefing** [6] - 4:2, 33:1, 68:10, 74:7, 75:17, 80:9
**briefly** [1] - 57:12
**briefs** [1] - 32:3
**bringing** [2] - 44:16, 46:12
**brings** [1] - 24:14
**broad** [2] - 12:18, 36:19
**broader** [2] - 70:13, 70:17
**brought** [2] - 20:6, 48:23
**Brown** [2] - 34:20, 34:21
**building** [1] - 35:3
**burden** [2] - 27:16, 57:22
**Burger** [1] - 34:17
**Burger's** [1] - 34:15
**business** [2] - 14:7, 35:12

## C

**cable** [1] - 35:7
**Cameron** [1] - 61:2
**camp** [1] - 69:4
**canceled** [1] - 84:13
**cannot** [9] - 8:7, 13:12, 15:20, 19:9, 47:13, 47:14, 48:3, 55:7, 78:4
**capacity** [1] - 15:20
**care** [6] - 15:21, 40:9, 52:9, 52:18, 72:10, 82:23
**career** [15] - 7:18, 8:7, 10:20, 13:15, 13:21, 15:16, 15:25, 16:4, 20:3, 20:10, 28:7, 47:17, 85:1, 85:12, 86:3
**careers** [1] - 44:13
**carefully** [1] - 86:15
**Carolina** [4] - 34:19, 61:1, 61:3, 61:6
**carry** [1] - 28:24
**carrying** [1] - 13:15
**Case** [1] - 3:3
**case** [68] - 4:1, 8:12, 8:14, 10:10, 10:23, 12:13, 12:23, 18:23, 18:24, 19:10, 19:13, 20:10, 22:2, 24:25, 26:12, 27:24, 29:18, 32:3, 32:14, 32:15, 34:25, 35:3, 35:6, 35:9, 35:12, 35:20,

35:24, 36:5, 36:13, 38:1, 39:13, 45:9, 48:12, 48:22, 60:25, 61:2, 61:4, 61:13, 61:16, 62:8, 62:9, 62:10, 62:18, 62:19, 62:20, 64:9, 64:17, 64:20, 64:22, 65:18, 66:2, 69:16, 76:8, 76:19, 76:20, 76:24, 78:5, 81:3, 83:24, 84:21, 87:10, 87:18, 89:4
**CASE** [1] - 1:2
**cases** [12] - 32:2, 32:4, 34:13, 62:22, 75:24, 79:24, 80:14, 80:17, 81:1, 83:25, 86:16
**Castrodian** [1] - 62:9
**categorical** [1] - 64:4
**caused** [3] - 77:1, 85:8
**CCC** [2] - 30:12, 63:7
**Center** [20] - 3:17, 5:6, 5:16, 5:20, 6:4, 7:10, 8:18, 11:10, 11:14, 12:3, 37:6, 37:10, 37:22, 39:19, 47:22, 54:18, 57:8, 73:21, 77:2, 82:21
**CENTER** [1] - 1:7
**center** [4] - 3:20, 59:19, 65:2, 65:12
**Center's** [2] - 54:23, 83:22
**certain** [5] - 21:14, 22:20, 63:23, 71:25, 79:11
**certainly** [7] - 15:25, 21:9, 42:8, 45:15, 70:11, 74:1, 81:8
**certificates** [1] - 8:24
**certification** [8] - 8:25, 9:1, 38:1, 46:1, 46:2, 46:6, 81:21, 81:22
**certifications** [1] - 8:22
**certified** [4] - 7:6, 9:2, 9:5, 81:24
**certify** [1] - 89:2
**cetera** [2] - 67:4, 76:23
**chaired** [2] - 30:11, 30:15
**chambers** [2] - 66:25, 68:22
**chance** [4] - 28:14, 30:4, 49:23, 83:7
**change** [3] - 50:23, 77:9, 84:24
**changed** [4] - 48:15, 74:17, 84:5, 84:9

**changes** [1] - 70:8
**character** [1] - 13:24
**charge** [1] - 7:25
**charges** [2] - 84:14, 84:21
**check** [1] - 56:8
**Chief** [2] - 34:14, 34:17
**Chisolm** [1] - 37:22
**choice** [1] - 21:2
**choose** [3] - 9:15, 19:20, 20:18
**chronic** [1] - 25:17
**Circuit** [1] - 36:15
**circulated** [1] - 16:18
**circumstance** [1] - 35:18
**circumstances** [4] - 8:13, 21:12, 47:14
**citable** [2] - 68:25, 69:2
**cite** [11] - 34:12, 34:15, 34:21, 34:25, 35:6, 36:13, 45:20, 61:13, 61:16, 62:8, 79:22
**cited** [2] - 32:2, 75:23
**citing** [1] - 67:20
**City** [3] - 34:14, 34:18, 77:6
**Civil** [1] - 12:12
**civil** [2] - 40:19, 75:10
**civilly** [1] - 35:13
**claim** [24] - 14:11, 14:14, 15:23, 19:23, 19:24, 29:11, 63:14, 64:23, 66:2, 74:13, 74:14, 74:22, 75:9, 75:12, 75:19, 76:7, 76:9, 77:19, 77:20, 80:20, 81:5, 81:6
**claimed** [2] - 32:5, 61:6
**claiming** [1] - 77:10
**claims** [10] - 6:3, 6:24, 14:4, 14:6, 17:17, 20:5, 26:6, 27:3, 63:10, 83:2
**clarify** [4] - 4:24, 28:21
**clarity** [1] - 42:18
**CLARK** [1] - 1:17
**Clark** [2] - 3:16, 73:21
**class** [1] - 16:7
**clear** [11] - 50:15, 57:21, 58:4, 60:24, 64:21, 65:15, 73:18, 76:13, 76:20, 81:9, 81:12
**clearly** [6] - 32:21, 54:10, 54:17, 54:20,

55:5, 82:8
**client** [3] - 10:11, 71:12, 82:6
**clients** [3] - 59:6, 77:7, 83:18
**clinical** [3] - 30:3, 30:11, 51:19
**close** [1] - 65:2
**closed** [3] - 32:15, 46:16, 66:20
**closure** [1] - 65:12
**CM/ECF** [1] - 56:10
**cocounsel** [1] - 87:10
**coercion** [1] - 40:21
**cognizable** [11] - 27:6, 31:16, 31:23, 32:5, 32:18, 33:11, 63:15, 63:18, 64:22, 74:15, 75:10
**colleague** [6] - 25:10, 26:24, 32:12, 59:9, 63:12, 69:8
**colleague's** [1] - 57:9
**Colleges** [1] - 58:9
**color** [1] - 20:16
**coming** [4] - 29:2, 37:14, 43:24, 77:9
**command** [1] - 21:4
**comments** [5] - 6:7, 6:15, 8:3, 10:17, 36:21
**commercial** [1] - 62:16
**Commission** [2] - 7:3, 84:14
**committee** [8] - 30:11, 30:12, 30:13, 30:15, 50:25, 51:10, 51:13, 63:7
**common** [11] - 38:13, 38:15, 41:7, 43:9, 44:19, 50:16, 53:5, 60:19, 68:22, 69:9, 87:13
**commonly** [1] - 5:6
**communicate** [1] - 51:7
**communication** [1] - 30:20
**communications** [3] - 35:1, 58:25, 79:12
**Communications** [1] - 35:9
**community** [1] - 79:21
**company** [2] - 20:14
**compassion** [1] - 52:14
**compelled** [1] - 35:21
**compensate** [1] - 15:20

**compensation** [1] - 15:19
**competencies** [2] - 30:18, 51:21
**competency** [2] - 30:11, 82:23
**competent** [1] - 79:20
**complain** [1] - 38:20
**complained** [2] - 32:14, 38:21
**complaint** [24] - 14:16, 14:25, 15:3, 18:4, 25:3, 32:13, 36:9, 38:19, 38:25, 39:8, 46:11, 49:12, 49:14, 49:18, 53:16, 57:14, 66:7, 66:10, 72:22, 72:24, 84:19, 85:3, 85:22, 86:20
**complaints** [4] - 15:5, 26:17, 39:1, 66:9
**complete** [4] - 44:11, 54:12, 65:3, 89:3
**completed** [8] - 37:12, 42:22, 43:1, 44:7, 50:1, 50:9, 53:25, 54:4
**completely** [3] - 20:9, 23:24, 23:25
**completing** [1] - 17:22
**completion** [22] - 17:21, 33:8, 40:16, 43:4, 43:21, 43:23, 44:8, 45:7, 45:11, 50:8, 53:8, 53:9, 53:11, 53:12, 54:1, 54:6, 66:12, 69:16, 69:25, 70:1, 70:15
**compliance** [2] - 43:18, 50:21
**comply** [7] - 38:17, 46:9, 61:7, 62:5, 63:11, 63:23, 64:14
**complying** [1] - 19:15
**components** [1] - 57:24
**computer** [2] - 3:4, 3:22
**concept** [7] - 59:13, 67:8, 67:11, 69:15, 70:23, 71:19, 75:7
**concepts** [2] - 44:14, 67:8
**concern** [2] - 86:12, 87:17
**concerned** [3] - 38:5, 46:23, 52:24
**concerning** [2] - 40:7, 42:20
**concerns** [1] - 9:9

**condition** [2] - 6:1, 17:17
**conditional** [3] - 7:24, 14:8, 77:5
**conditioned** [1] - 7:24
**conditions** [2] - 41:14, 41:20
**conduct** [5] - 36:7, 52:24, 66:19, 82:8, 85:24
**conference** [5] - 23:18, 31:17, 33:3, 68:4, 71:11
**conferred** [1] - 36:13
**conflated** [2] - 60:5, 67:8
**conflating** [1] - 73:9
**conflation** [2] - 67:24, 68:16
**connected** [1] - 6:4
**connection** [1] - 19:1
**consent** [7] - 5:10, 5:15, 16:14, 20:23, 21:2, 78:18, 79:1
**considered** [1] - 37:23
**consistent** [2] - 41:6, 51:19
**constitutional** [2] - 34:23, 75:20
**consulted** [1] - 14:9
**contact** [1] - 48:16
**contacts** [1] - 10:19
**contain** [3] - 6:6, 6:14, 6:23
**contained** [1] - 38:11
**contains** [2] - 81:10, 83:20
**contents** [1] - 26:21
**contest** [1] - 25:11
**context** [6] - 38:7, 38:10, 50:11, 52:9, 54:15, 81:2
**continuation** [1] - 78:6
**continue** [9] - 8:7, 15:23, 20:2, 30:1, 45:22, 65:5, 85:1, 85:12, 85:19
**continued** [2] - 30:21, 52:21
**continuing** [2] - 36:7, 44:18
**contract** [32] - 9:18, 9:19, 10:5, 11:17, 12:1, 12:2, 12:7, 12:9, 14:20, 32:6, 41:15, 42:16, 62:4, 62:7, 62:16, 63:8, 63:9, 63:10, 63:16, 63:17, 64:8, 64:9,

64:11, 64:12, 64:13, 64:16, 64:18, 64:22, 64:24, 80:15, 81:6, 81:9
**contractual** [5] - 8:21, 9:11, 31:23, 63:24, 74:4
**control** [1] - 41:17
**convenience** [1] - 56:5
**convince** [1] - 64:9
**cooperate** [1] - 72:7
**copies** [5] - 56:4, 86:18, 86:25, 87:9, 87:21
**copy** [2] - 49:1, 88:1
**core** [2] - 40:13, 51:21
**correct** [9] - 9:20, 18:13, 23:2, 26:8, 34:5, 46:10, 47:16, 59:24, 66:11
**correctly** [4] - 4:8, 9:13, 11:6, 81:2
**correspondence** [1] - 83:15
**Council** [2] - 7:4, 27:4
**counsel** [14] - 3:5, 3:19, 5:25, 22:5, 35:20, 48:16, 49:6, 53:14, 56:24, 76:3, 76:4, 86:5, 88:2, 88:12
**counsel's** [2] - 3:18, 6:11
**count** [6] - 14:17, 64:16, 75:10, 75:23, 82:8
**counts** [3] - 22:2, 22:16, 85:24
**couple** [3] - 68:15, 71:10, 76:25
**course** [5] - 27:19, 30:10, 36:24, 66:16, 75:8
**Court** [66] - 1:22, 1:23, 4:9, 4:15, 4:18, 5:21, 8:1, 8:9, 8:14, 8:17, 9:20, 11:4, 11:12, 11:13, 11:22, 12:8, 14:1, 14:2, 14:21, 16:24, 20:8, 21:20, 21:21, 21:22, 22:7, 26:20, 27:6, 27:12, 35:17, 36:6, 36:10, 37:2, 38:7, 38:9, 45:20, 45:23, 47:15, 49:3, 50:12, 50:19, 55:8, 55:17, 55:19, 55:21, 56:4, 57:19, 60:14, 61:1, 65:17,

66:14, 66:22, 67:1, 68:21, 69:5, 73:9, 74:24, 75:2, 77:16, 78:12, 82:4, 84:3, 84:8, 86:14, 86:17, 89:8, 89:9
**COURT** [137] - 1:1, 3:2, 3:8, 3:11, 3:14, 3:21, 3:25, 4:20, 4:22, 5:1, 5:9, 5:11, 5:14, 5:24, 9:7, 9:9, 9:11, 9:18, 9:22, 9:25, 10:2, 10:6, 10:8, 10:25, 11:11, 11:17, 11:22, 11:25, 12:5, 12:9, 12:20, 12:23, 13:7, 13:22, 14:11, 14:14, 14:22, 15:7, 16:11, 16:21, 17:9, 18:6, 18:12, 18:16, 18:21, 19:7, 19:12, 19:18, 19:22, 20:4, 20:7, 20:24, 21:5, 21:8, 21:13, 21:23, 21:25, 22:11, 22:12, 22:18, 22:22, 22:25, 23:4, 23:9, 23:11, 23:13, 23:15, 24:24, 27:15, 27:19, 27:24, 28:3, 28:19, 29:3, 30:23, 31:1, 31:4, 33:21, 33:24, 34:2, 34:7, 35:19, 35:23, 36:2, 36:24, 39:11, 39:14, 40:1, 46:7, 46:14, 46:20, 47:5, 47:10, 49:4, 49:6, 49:9, 49:11, 49:16, 49:20, 49:24, 50:3, 50:6, 50:13, 52:1, 55:22, 55:25, 56:3, 56:6, 56:10, 56:12, 56:16, 56:19, 56:23, 57:1, 57:6, 58:22, 60:2, 60:7, 60:11, 61:20, 66:3, 66:23, 73:18, 80:12, 86:5, 86:19, 86:24, 87:3, 87:5, 87:7, 87:17, 87:21, 87:25, 88:6, 88:9, 88:12, 88:15
**court** [36] - 3:1, 4:6, 8:12, 19:14, 21:6, 21:13, 21:14, 34:23, 36:13, 40:2, 56:17, 61:10, 61:12, 62:1, 62:25, 63:13, 63:14, 63:16, 63:20, 63:22, 63:25, 64:9, 73:1, 74:18, 74:19, 75:11,

77:9, 77:23, 78:7, 78:11, 78:20, 80:7, 84:12, 84:13, 89:5
**Court's** [6] - 8:11, 27:2, 34:18, 44:16, 48:23, 55:19
**court's** [1] - 12:18
**COURTROOM** [1] - 3:22
**courtroom** [2] - 49:4, 87:22
**courts** [9] - 11:1, 12:15, 21:10, 32:7, 32:8, 32:16, 75:21, 75:24, 79:24
**covenant** [7] - 42:7, 42:9, 65:10, 65:14, 65:16, 65:21, 66:1
**cover** [1] - 69:7
**crafting** [1] - 29:1
**create** [1] - 6:21
**creates** [2] - 31:23, 52:19
**creating** [1] - 43:6
**credentialing** [2] - 44:2, 53:20
**criteria** [2] - 41:24, 69:21
**crystal** [2] - 81:9, 81:12
**culture** [1] - 39:23
**CUNY** [1] - 77:15
**current** [7] - 37:12, 37:23, 37:24, 65:9, 87:12, 87:13, 87:18
**cut** [2] - 32:20, 33:5
**CV** [2] - 37:23, 58:19
**cycle** [3] - 77:22, 77:23

**D**

**damages** [5] - 15:24, 16:1, 78:1, 84:25, 85:5
**dandy** [1] - 74:22
**dated** [2] - 62:19, 73:5
**dates** [1] - 77:8
**David** [42] - 3:17, 3:20, 5:4, 5:23, 6:4, 7:21, 8:2, 10:7, 10:10, 10:18, 12:4, 13:11, 13:23, 13:25, 14:6, 14:9, 14:13, 15:18, 16:15, 16:16, 19:21, 23:1, 25:6, 25:25, 26:1, 26:22, 29:13, 29:22, 38:22, 53:2, 55:8, 55:10, 57:9, 58:13, 58:19, 72:1,

73:22, 74:20, 75:4, 77:2, 79:5, 82:9
**DAVID** [1] - 1:7
**David's** [2] - 55:13, 83:20
**days** [10] - 33:9, 43:22, 43:24, 53:8, 53:10, 68:1, 69:17, 70:1, 70:15, 81:22
**dealing** [2] - 59:14, 79:18
**deals** [1] - 19:10
**dealt** [1] - 79:24
**dean's** [2] - 33:18, 70:25
**decide** [3] - 20:15, 21:5, 24:1
**decided** [2] - 63:9, 81:1
**decides** [3] - 78:25, 79:2, 79:3
**deciding** [1] - 78:18
**decision** [2] - 18:23, 26:11, 30:8, 34:15, 34:21, 35:1, 80:1
**decision-making** [1] - 80:1
**decisions** [2] - 8:4, 36:12
**declaration** [3] - 29:17, 30:17, 49:15
**dedicated** [1] - 51:5
**defamation** [12] - 13:24, 19:24, 20:13, 26:14, 31:10, 60:1, 63:10, 75:15, 75:19, 75:23, 81:5, 85:23
**Defendant** [1] - 1:16
**defendant** [12] - 4:4, 4:10, 4:23, 10:7, 11:4, 12:21, 12:23, 12:25, 13:3, 35:7, 36:17, 56:12
**defendants** [16] - 1:8, 3:17, 6:17, 19:16, 20:22, 21:16, 21:23, 22:4, 36:6, 36:10, 48:16, 49:6, 73:21, 85:20, 85:25, 86:14
**Defendants'** [6] - 2:2, 36:8, 86:6, 88:5, 88:7, 88:10
**defense** [1] - 87:25
**defer** [1] - 33:23
**deficiencies** [2] - 30:18, 30:21
**definition** [1] - 71:21
**delay** [4] - 72:11, 77:20, 85:7, 85:12
**demonstrate** [1] -

52:14
**demonstrates** [1] - 62:10
**departure** [1] - 70:15
**deposed** [1] - 83:11
**deprived** [1] - 16:3
**DEPUTY** [1] - 3:22
**deputy** [2] - 49:4, 87:23
**described** [1] - 15:11
**deserves** [1] - 28:14
**designate** [1] - 24:13
**designated** [2] - 51:4, 51:8
**detail** [3] - 8:16, 24:3, 73:24
**detailed** [2] - 7:14, 49:21
**deteriorated** [1] - 63:6
**determine** [3] - 4:10, 39:1, 41:24
**determined** [2] - 36:12, 80:15
**dictate** [1] - 55:13
**dictates** [2] - 32:22, 34:19
**difference** [2] - 19:3, 82:25
**different** [10] - 11:5, 20:16, 21:11, 50:3, 67:8, 68:16, 69:15, 80:19
**difficulties** [1] - 48:2
**DIO** [1] - 51:8
**diploma** [4] - 17:22, 33:17, 67:17, 70:25
**direct** [2] - 37:19, 57:11
**directly** [3] - 11:15, 24:21, 69:18
**director** [102] - 5:7, 5:19, 5:23, 7:11, 7:13, 7:16, 7:20, 7:21, 8:9, 8:13, 9:16, 10:6, 10:8, 10:9, 10:16, 10:20, 11:2, 13:14, 13:20, 14:18, 16:13, 16:19, 16:25, 17:9, 17:25, 18:2, 18:18, 19:20, 20:25, 21:2, 23:2, 23:4, 23:15, 23:17, 23:25, 24:1, 24:2, 27:22, 28:2, 28:9, 28:20, 37:3, 37:24, 38:3, 38:15, 38:17, 38:21, 40:10, 42:20, 43:13, 43:17, 45:5, 45:6, 45:16, 45:20, 45:21, 47:18, 47:23, 47:25,

48:1, 48:4, 50:7, 50:10, 50:16, 50:18, 50:19, 50:20, 50:23, 50:24, 51:4, 51:11, 51:12, 51:14, 51:17, 51:18, 51:20, 51:23, 51:24, 52:3, 52:10, 52:12, 52:16, 52:17, 52:19, 53:6, 53:7, 54:23, 55:2, 55:3, 55:6, 55:12, 59:5, 67:3, 69:3, 69:8, 75:6, 76:2, 83:17, 87:14
**director's** [5] - 7:17, 17:7, 46:9, 50:5
**directors** [1] - 58:13
**disabuse** [1] - 57:5
**disabused** [1] - 59:13
**disagree** [2] - 23:9, 36:23
**disappointed** [1] - 29:22
**disciplinary** [1] - 52:8
**disclose** [2] - 39:5, 61:18
**discovery** [2] - 29:2, 66:15
**discretion** [1] - 79:25
**discriminated** [1] - 43:20
**discrimination** [3] - 63:14, 84:20, 85:24
**discuss** [1] - 27:23
**discusses** [1] - 30:10
**discussion** [1] - 52:20
**discussions** [2] - 8:2, 65:20
**dismiss** [1] - 74:21
**dismissal** [1] - 41:22
**dispute** [8] - 9:18, 9:19, 11:18, 12:1, 12:2, 12:7, 12:10, 17:2
**disputed** [1] - 83:14
**disputing** [1] - 18:21
**dissatisfaction** [1] - 46:21
**dissatisfied** [2] - 46:24, 47:2
**dissimilar** [1] - 78:6
**distinguish** [1] - 80:14
**distinguishable** [1] - 82:3
**district** [1] - 4:6
**DISTRICT** [2] - 1:1, 1:1
**District** [5] - 1:23, 36:14, 61:1, 89:9, 89:9
**doctor** [10] - 18:8,

23:7, 61:4, 61:6, 61:13, 62:10, 62:11, 62:13, 63:4
**doctor's** [1] - 63:16
**Document** [3] - 36:5, 37:5, 42:23
**document** [22] - 17:19, 33:7, 39:16, 39:21, 41:11, 43:8, 43:21, 44:10, 44:18, 45:21, 50:15, 51:16, 51:22, 53:3, 53:7, 57:4, 58:4, 69:16, 70:14, 72:16, 87:2, 87:3
**documentation** [9] - 40:16, 42:25, 43:5, 44:6, 44:8, 44:25, 53:24, 54:2, 70:24
**documents** [42] - 11:14, 14:18, 14:19, 14:23, 15:5, 15:6, 17:7, 17:21, 18:1, 22:8, 23:22, 32:23, 38:11, 38:12, 42:12, 44:11, 45:2, 45:19, 53:13, 54:15, 55:25, 57:18, 60:3, 64:19, 65:22, 66:13, 67:2, 72:16, 81:1, 81:2, 81:4, 81:8, 81:12, 81:13, 81:14, 83:10, 84:3, 84:8, 85:2, 85:4, 86:8, 86:22
**domains** [1] - 30:17
**done** [11] - 4:15, 18:12, 26:16, 26:24, 32:25, 33:19, 58:5, 67:7, 67:14, 69:7, 70:12
**dooms** [1] - 77:19
**doubt** [2] - 15:2, 47:10
**down** [4] - 21:25, 34:9, 35:12, 67:5
**downplay** [1] - 30:6
**Dr** [139] - 3:12, 3:17, 3:20, 5:3, 5:4, 5:5, 5:20, 5:23, 6:2, 6:4, 6:7, 6:19, 6:21, 6:23, 7:11, 7:13, 7:17, 7:18, 7:21, 8:1, 8:2, 8:4, 8:6, 9:15, 10:7, 10:10, 10:17, 10:18, 12:4, 13:11, 13:23, 13:25, 14:6, 14:9, 14:13, 14:20, 15:1, 15:6, 15:13, 15:17, 16:16, 16:17, 16:18, 17:16, 18:19, 19:20, 20:2, 21:1, 23:1,

24:25, 25:6, 25:20, 25:24, 26:1, 26:22, 27:25, 28:8, 28:12, 29:13, 29:17, 29:20, 29:22, 30:1, 30:7, 30:18, 33:10, 36:5, 36:21, 37:20, 38:19, 38:22, 40:23, 41:15, 42:11, 43:3, 44:25, 46:8, 48:5, 48:9, 48:11, 48:18, 48:19, 48:25, 49:15, 49:21, 49:22, 52:23, 53:1, 53:11, 54:13, 54:18, 54:24, 55:5, 55:7, 55:10, 55:12, 57:8, 58:12, 58:16, 58:18, 59:6, 61:9, 61:15, 62:21, 62:23, 62:25, 63:3, 63:9, 63:25, 64:3, 64:15, 66:9, 70:11, 71:8, 71:16, 72:1, 72:4, 72:21, 73:5, 73:22, 74:19, 75:4, 77:2, 79:5, 80:22, 81:3, 81:10, 82:9, 82:14, 82:20, 83:18, 83:20, 84:11, 84:22
**draft** [1] - 83:21
**drafted** [1] - 5:23
**drink** [1] - 51:24
**drive** [1] - 71:20
**during** [6] - 30:8, 30:10, 30:15, 63:1, 82:16, 85:10
**duties** [1] - 53:1
**duty** [2] - 79:18, 79:19

**E**

**e-mail** [1] - 37:22
**early** [2] - 5:22, 30:13
**earning** [1] - 15:20
**earnings** [1] - 15:19
**easier** [1] - 27:14
**ECF** [5] - 29:19, 67:25, 71:21, 73:2, 87:2
**edited** [1] - 84:9
**educate** [4] - 22:6, 40:6, 60:14, 69:4
**Education** [5] - 7:4, 7:5, 27:5, 34:20, 34:22
**education** [14] - 40:13, 44:2, 45:25, 51:10, 52:9, 53:19, 60:16, 65:5, 67:13, 68:21, 70:14, 70:18, 78:7, 85:19

**educational** [4] - 40:14, 52:18, 52:21, 65:3
**educators** [1] - 80:2
**effect** [2] - 13:14, 74:25
**effective** [3] - 70:10, 70:11
**effort** [1] - 88:16
**efforts** [5] - 10:19, 14:7, 84:22, 84:25, 86:1
**either** [5] - 6:8, 24:1, 24:20, 28:16, 65:3
**Electronic** [2] - 25:5, 35:8
**electronic** [2] - 25:8, 72:20
**electronically** [1] - 24:7
**element** [7] - 15:23, 17:25, 76:15, 76:18, 78:10, 79:17, 84:16
**elements** [2] - 13:8, 76:9
**elephant** [1] - 38:4
**Eleventh** [1] - 36:15
**eligibility** [1] - 72:16
**eligible** [1] - 46:1
**Elliott** [1] - 8:1
**emotional** [1] - 30:20
**emphasize** [2] - 50:18, 53:22
**emphasizes** [1] - 44:10
**employer** [3] - 29:8, 79:12
**employer-to-employer** [1] - 79:12
**employers** [2] - 14:10, 16:18
**Employment** [1] - 84:14
**employment** [13] - 8:5, 14:8, 77:7, 77:14, 77:17, 78:5, 80:20, 80:21, 84:23, 85:10, 85:14, 86:1, 86:2
**end** [5] - 16:1, 22:1, 25:17, 63:8, 68:4
**enforce** [4] - 11:23, 36:2, 60:23, 66:6
**enforced** [1] - 61:14
**enforcement** [1] - 32:6
**engage** [2] - 36:7, 45:10
**engaged** [2] - 62:16, 85:25
**enjoin** [8] - 12:13,

19:14, 19:16, 36:6, 74:19, 75:22, 75:24, 86:14
**enjoining** [4] - 19:2, 34:5, 36:10, 75:19
**enroll** [1] - 85:16
**enrolled** [1] - 82:14
**enrolling** [1] - 65:4
**ensure** [6] - 40:18, 41:12, 43:15, 43:18, 45:9, 79:19
**enter** [3] - 12:18, 64:7, 78:12
**enterprise** [1] - 36:8
**enthusiasm** [1] - 30:3
**entire** [4] - 10:15, 76:6, 86:22, 88:6
**entirely** [1] - 76:24
**entities** [1] - 62:4
**entitled** [9] - 6:12, 7:2, 8:10, 17:20, 30:4, 47:3, 47:10, 50:15, 89:4
**entry** [1] - 76:5
**environment** [2] - 40:19, 52:20
**Equal** [1] - 84:14
**equitable** [9] - 8:11, 12:8, 15:8, 27:7, 34:12, 34:23, 35:14, 40:19, 47:15
**equity** [9] - 12:18, 15:8, 27:2, 33:11, 34:18, 35:5, 35:10, 35:17, 75:21
**equivalent** [1] - 55:6
**ERAS** [18] - 23:21, 23:22, 24:6, 25:8, 25:12, 26:3, 26:4, 28:6, 28:24, 29:4, 29:5, 37:18, 47:25, 57:15, 57:19, 72:18, 77:22
**ESQ** [4] - 1:13, 1:13, 1:16, 1:17
**essentially** [2] - 20:11, 80:6
**establish** [1] - 43:9
**established** [3] - 62:2, 62:3, 76:13
**et** [2] - 67:4, 76:22
**evaluated** [1] - 17:6
**evaluating** [1] - 82:7
**evaluation** [21] - 10:22, 17:16, 17:24, 18:19, 30:7, 30:16, 43:5, 44:9, 44:21, 44:23, 45:4, 45:6, 45:11, 47:3, 50:7, 51:10, 52:6, 54:2,

60:18
**evaluations** [9] - 17:5, 38:1, 50:9, 67:16, 67:17, 72:23, 72:25, 73:1, 73:3
**event** [2] - 26:7, 26:15
**events** [3] - 5:3, 12:3, 12:6
**evidence** [5] - 10:14, 17:21, 42:14, 57:4, 86:9
**exact** [3] - 19:13, 35:1, 84:5
**exactly** [11] - 4:2, 4:17, 35:6, 44:3, 44:13, 54:7, 55:3, 56:7, 63:11, 71:3
**exam** [1] - 82:17
**example** [1] - 58:12
**excellent** [1] - 52:18
**except** [1] - 39:7
**excerpt** [1] - 53:4
**excerpted** [1] - 71:11
**excerpts** [1] - 86:21
**exchange** [3] - 10:13, 18:10, 83:1
**excuse** [1] - 9:22
**executed** [2] - 6:13, 6:24
**exemplar** [1] - 52:16
**exercise** [2] - 21:22, 47:15
**exhausted** [1] - 84:22
**Exhibit** [4] - 2:2, 82:13, 88:7, 88:10
**exhibit** [3] - 49:18, 83:15, 88:4
**exhibits** [2] - 87:11, 87:22
**EXHIBITS** [1] - 2:1
**existence** [1] - 52:23
**expected** [2] - 43:13, 52:14
**expedited** [1] - 37:5
**experience** [2] - 52:21, 80:2
**explained** [2] - 25:8, 74:3
**explanation** [1] - 72:19
**exposing** [1] - 79:5
**extensive** [1] - 66:10
**extent** [1] - 30:20
**extorsion** [1] - 81:7
**extorting** [1] - 17:18
**extortion** [2] - 14:17, 75:9
**extract** [1] - 26:18
**extraordinary** [1] - 79:18

**extrapolate** [1] - 77:16

## F

**F.2d** [1] - 36:14
**face** [1] - 79:10
**facie** [1] - 10:14
**facilitate** [3] - 42:25, 44:6, 53:24
**facilitated** [1] - 72:1
**fact** [23] - 15:2, 18:18, 18:25, 19:10, 19:13, 23:1, 24:3, 25:10, 26:4, 26:11, 31:7, 46:16, 63:16, 76:11, 77:11, 77:15, 77:23, 79:8, 82:4, 85:9, 85:13, 87:9
**facts** [8] - 8:15, 10:23, 22:25, 44:16, 62:22, 62:23, 80:18, 82:3
**factual** [1] - 21:11
**faculty** [12] - 28:5, 40:6, 40:11, 40:14, 40:21, 41:6, 43:16, 50:20, 51:7, 51:18, 51:21, 63:5
**fail** [1] - 76:19
**failed** [2] - 61:13, 61:15
**fails** [3] - 46:9, 62:5, 74:6
**failure** [1] - 63:10
**fair** [11] - 5:18, 10:12, 10:22, 13:12, 17:16, 18:19, 55:6, 55:9, 55:15, 79:3, 82:6
**faith** [2] - 10:15, 42:14
**false** [1] - 6:20
**familiar** [3] - 21:10, 25:22, 34:14
**famous** [1] - 34:15
**far** [6] - 38:5, 52:23, 64:22, 65:25, 82:2, 85:16
**fashion** [3] - 41:9, 75:13, 75:25
**fast** [3] - 40:3, 60:9, 63:22
**fast-forward** [1] - 60:9
**favor** [3] - 34:21, 48:8
**favorable** [1] - 48:5
**feasibility** [1] - 78:9
**feasible** [1] - 78:11
**Federal** [1] - 36:15
**federal** [2] - 75:11, 84:20
**fellow** [1] - 42:6
**fellow's** [1] - 41:25
**fellows** [6] - 40:6,

40:13, 40:16, 40:21, 41:6, 41:12
**fellowship** [1] - 58:18
**few** [7] - 9:22, 63:1, 68:1, 73:15, 73:16, 76:16, 80:13
**field** [1] - 84:1
**file** [3] - 15:3, 77:1, 77:9
**filed** [21] - 6:17, 7:19, 12:10, 12:15, 14:25, 15:5, 18:3, 26:19, 29:10, 29:17, 36:5, 42:20, 72:21, 73:1, 84:11, 84:19, 85:3, 85:7, 87:18
**filing** [2] - 26:12, 53:16
**fill** [1] - 24:6
**filled** [1] - 58:7
**final** [9] - 6:2, 34:8, 45:4, 45:6, 45:11, 45:15, 50:24, 51:12, 84:17
**finally** [2] - 32:25, 68:1
**fine** [3] - 56:6, 74:22, 86:24
**fingers** [1] - 56:17
**finish** [3] - 5:12, 43:24, 73:15
**finished** [1] - 16:4
**FINKELSTEIN** [1] - 1:4
**Finkelstein** [69] - 3:10, 3:13, 5:4, 5:5, 5:20, 6:2, 6:7, 6:21, 6:24, 7:11, 7:18, 8:6, 9:15, 10:18, 12:4, 13:12, 14:20, 15:1, 15:6, 15:13, 16:18, 17:16, 18:20, 20:2, 24:25, 25:20, 27:25, 29:20, 30:1, 30:18, 33:10, 36:6, 37:20, 38:19, 40:24, 41:15, 42:11, 43:4, 44:25, 46:8, 48:5, 48:9, 49:15, 49:22, 52:23, 54:13, 54:19, 54:24, 55:5, 58:16, 59:6, 61:9, 61:15, 63:3, 64:15, 66:9, 70:12, 71:8, 71:16, 72:4, 72:21, 80:22, 81:3, 81:10, 82:14, 82:20, 83:18, 84:11, 84:22
**Finkelstein's** [5] - 6:19, 8:24, 30:7, 53:11, 64:3
**firm** [1] - 3:16

**First** [2] - 19:22, 75:20
**first** [20] - 16:9, 21:23, 22:4, 22:23, 39:16, 57:24, 58:4, 63:1, 68:10, 71:16, 72:22, 74:18, 75:8, 75:16, 76:1, 76:3, 76:14, 76:25, 79:22
**fit** [2] - 40:9, 70:25
**five** [1] - 64:6
**floated** [1] - 76:3
**floor** [1] - 35:2
**FLORIDA** [2] - 1:1, 1:7
**Florida** [8] - 1:6, 1:15, 1:18, 1:24, 36:14, 79:10, 89:6, 89:9
**flow** [1] - 60:22
**flsd.uscourts.gov** [1] - 1:23
**focusing** [1] - 30:2
**follow** [2] - 6:9, 62:13
**follow-up** [1] - 6:9
**followed** [1] - 43:15
**following** [2] - 37:1, 37:21
**follows** [1] - 53:4
**forced** [3] - 6:18, 8:2, 16:9
**foregoing** [1] - 89:3
**forgot** [1] - 35:1
**form** [9] - 6:2, 24:7, 24:17, 24:21, 27:11, 58:6, 72:14, 74:23
**format** [2] - 54:8, 71:5
**forth** [5] - 22:17, 26:18, 60:19, 66:22, 67:3
**forward** [3] - 15:25, 47:17, 60:9
**foundation** [1] - 10:3
**four** [1] - 15:13
**fourth** [3] - 17:25, 63:2, 63:8
**frame** [1] - 9:9
**framed** [1] - 78:12
**framework** [3] - 31:5, 55:4, 55:16
**frank** [1] - 22:16
**frankly** [1] - 59:15
**free** [3] - 5:1, 19:19, 40:19
**frivolously** [1] - 65:19
**frustrated** [1] - 25:7
**fulfilled** [1] - 17:14
**fulfilling** [1] - 52:13
**fulfillment** [2] - 40:14, 41:5
**fully** [2] - 5:13, 28:10
**Fumero** [1] - 1:14
**fundamental** [4] -

61:25, 74:10, 76:17
**furnish** [2] - 15:19, 41:17
**furnished** [4] - 6:2, 7:14, 10:21
**furtherance** [1] - 36:8
**future** [4] - 6:21, 31:2, 77:18, 78:4

## G

**Gabrielle** [1] - 3:9
**GABRIELLE** [1] - 1:13
**gap** [1] - 12:14
**Gardens** [1] - 1:15
**gate** [4] - 32:18, 61:25, 73:25, 74:6
**gatekeepers** [1] - 80:3
**general** [30] - 3:19, 5:8, 6:3, 6:11, 6:13, 6:24, 7:1, 7:9, 10:13, 10:16, 15:14, 16:8, 17:11, 17:12, 17:17, 18:3, 18:10, 19:18, 37:7, 37:9, 42:8, 42:12, 44:14, 45:1, 53:15, 80:24, 82:14, 83:1, 83:10, 85:17
**generally** [3] - 12:20, 15:8, 81:15
**generated** [1] - 6:9
**Gerson** [1] - 1:14
**get-go** [2] - 74:13, 76:12
**given** [5] - 7:24, 25:16, 49:23, 83:6, 88:1
**glowing** [1] - 59:22
**GMEC** [1] - 51:9
**goal** [1] - 52:20
**GOLDBERG** [46] - 1:16, 3:15, 22:6, 22:13, 22:19, 22:24, 23:3, 23:8, 23:10, 23:12, 23:14, 23:16, 24:25, 27:18, 27:23, 27:25, 28:4, 28:22, 29:5, 30:25, 31:3, 31:9, 33:22, 34:1, 34:6, 34:8, 49:8, 56:13, 56:25, 57:2, 57:7, 58:23, 60:5, 60:8, 60:12, 61:21, 66:4, 66:24, 73:19, 87:2, 87:4, 87:6, 88:3, 88:8, 88:11, 88:13
**Goldberg** [14] - 1:17, 3:15, 3:16, 22:13, 30:23, 35:19, 42:19, 48:6, 57:8, 73:23,

74:3, 77:11, 80:10, 84:2
**Goldszer** [1] - 73:5
**Goodman** [2] - 8:1, 48:19
**govern** [2] - 54:15, 54:17, 66:5
**governed** [1] - 40:24
**governing** [2] - 9:14, 62:4
**governs** [2] - 7:5, 45:21
**graduate** [9] - 9:1, 44:2, 45:25, 51:9, 53:19, 60:16, 64:7, 70:2, 81:20
**Graduate** [3] - 7:4, 7:5, 27:5
**graduated** [2] - 16:6, 33:10
**graduating** [6] - 33:8, 43:22, 53:8, 67:14, 69:17, 69:20
**graduation** [9] - 16:5, 33:10, 45:15, 46:2, 69:21, 69:22, 70:3, 70:18, 79:19
**grant** [1] - 6:18
**granting** [2] - 36:9, 84:15
**gratuitous** [1] - 9:3
**gravamen** [4] - 25:3, 29:11, 39:8, 57:15
**great** [1] - 56:13
**grounds** [1] - 74:22
**guarantee** [2] - 42:6, 65:14
**guidance** [4] - 38:16, 54:3, 71:1, 81:4
**guide** [6] - 38:15, 45:20, 46:10, 50:16, 58:1, 69:8
**guidelines** [18] - 21:20, 40:22, 42:15, 47:6, 47:7, 65:8, 68:6, 68:11, 68:14, 68:21, 69:18, 70:22, 71:14, 87:4, 87:9, 87:14

## H

**half** [6] - 5:7, 15:14, 16:4, 16:9, 17:21, 17:23
**hand** [5] - 22:14, 22:17, 57:3, 77:19, 78:14
**handle** [1] - 12:15
**happy** [3] - 55:18,

80:9, 80:10
**harassment** [2] - 84:20, 85:23
**hard** [1] - 86:18
**harm** [11] - 76:17, 76:22, 76:24, 77:10, 77:21, 77:25, 78:3, 78:5, 85:9, 85:11, 85:13
**harmed** [1] - 77:17
**Harris** [1] - 1:14
**hate** [1] - 48:10
**health** [1] - 30:20
**hear** [7] - 4:17, 21:16, 21:23, 22:4, 22:11, 39:24, 56:12
**heard** [3] - 38:20, 42:18, 50:6
**HEARING** [1] - 1:10
**hearing** [5] - 3:25, 46:23, 48:21, 84:12, 88:5
**heart** [2] - 37:4, 69:6
**help** [4] - 9:9, 22:19, 30:1, 57:19
**helpful** [1] - 33:24
**helps** [1] - 55:22
**hereby** [1] - 89:2
**herself** [1] - 28:23
**high** [3] - 16:6, 16:7, 52:18
**high-quality** [1] - 52:18
**highlight** [6] - 23:23, 25:14, 68:15, 70:21, 71:9, 71:24
**highlighted** [4] - 58:4, 61:23, 71:2, 72:15
**highlights** [1] - 58:9
**hires** [1] - 25:22
**hiring** [1] - 7:25
**history** [2] - 34:17, 80:8
**hit** [1] - 76:16
**hold** [1] - 82:5
**holding** [2] - 36:16, 61:13
**holds** [1] - 62:21
**home** [1] - 71:20
**honest** [1] - 47:3
**honestly** [1] - 8:11
**Honor** [39] - 3:6, 3:9, 3:12, 3:15, 4:25, 6:16, 14:17, 19:10, 21:7, 21:19, 22:6, 35:21, 38:10, 40:4, 41:2, 42:18, 43:8, 49:2, 49:10, 49:19, 50:2, 51:25, 53:5, 55:4, 55:24, 56:14,

56:18, 56:21, 73:20, 76:19, 78:16, 81:20, 86:17, 87:8, 87:13, 87:20, 88:3, 88:14, 88:17
**HONORABLE** [1] - 1:10
**Honorable** [1] - 89:5
**hook** [2] - 27:5, 73:25
**hope** [1] - 55:19
**horse** [1] - 20:16
**hospital** [28] - 6:13, 7:17, 9:12, 11:14, 11:20, 12:13, 14:2, 18:8, 18:9, 22:14, 23:6, 25:21, 26:18, 26:19, 28:12, 31:23, 32:16, 46:8, 60:4, 60:21, 61:11, 63:17, 66:20, 80:16, 80:21, 81:10, 81:24
**hospital's** [1] - 32:10
**host** [1] - 66:10
**house** [2] - 13:17, 13:18
**hypothetical** [1] - 78:23

## I

**idea** [1] - 56:16
**identifiable** [1] - 63:24
**identified** [1] - 74:14
**identify** [2] - 30:13, 74:15
**II** [1] - 51:23
**illegal** [1] - 36:8
**illuminate** [1] - 22:15
**imagination** [2] - 81:19, 82:2
**immediate** [1] - 77:10
**immediately** [1] - 77:24
**immunizes** [1] - 79:11
**impartial** [3] - 5:19, 10:12, 55:15
**impermissible** [1] - 36:18
**implementation** [1] - 41:19
**implicate** [1] - 71:14
**implications** [1] - 75:21
**importance** [4] - 44:10, 50:18, 51:13, 52:16
**important** [12] - 37:17, 42:25, 44:2, 44:6, 48:11, 53:19, 53:24, 54:4, 63:12, 76:16,

80:6, 88:15
**importantly** [4] - 52:6, 52:7, 60:17, 68:24
**imposed** [1] - 65:19
**impression** [1] - 59:22
**improvement** [1] - 52:21
**inability** [1] - 85:14
**inaccurate** [1] - 26:13
**inappropriate** [1] - 17:18
**INC** [1] - 1:7
**incidents** [1] - 63:6
**included** [3] - 54:7, 64:3, 71:4
**includes** [4] - 15:24, 44:22, 57:25, 70:24
**including** [10] - 7:10, 29:17, 30:19, 37:24, 40:8, 40:15, 40:20, 50:21, 63:10, 84:19
**incomplete** [1] - 79:6
**incorporated** [1] - 63:18
**independently** [1] - 43:12
**indicate** [1] - 58:20
**indicated** [1] - 10:12
**indicates** [1] - 82:8
**individual** [9] - 5:5, 28:15, 33:8, 43:23, 51:3, 51:5, 53:9, 53:10, 69:25
**individual's** [1] - 51:6
**individually** [1] - 81:15
**individuals** [3] - 10:19, 42:22, 51:2
**information** [11] - 6:8, 6:23, 13:11, 28:11, 55:17, 55:21, 59:11, 59:18, 59:21, 59:23, 82:7
**initial** [3] - 14:14, 33:1, 86:11
**initiated** [1] - 74:18
**injunction** [36] - 4:1, 12:11, 12:16, 12:17, 12:25, 13:8, 18:6, 18:13, 18:25, 19:3, 19:4, 19:5, 22:1, 22:3, 31:6, 35:11, 36:16, 36:18, 36:19, 67:18, 67:19, 74:6, 74:8, 74:11, 74:16, 74:17, 76:5, 76:15, 76:18, 78:9, 78:12, 78:21, 80:5, 84:21, 86:7, 86:13
**injunctions** [1] - 76:18

**injunctive** [14] - 12:18, 12:20, 27:8, 27:9, 31:11, 31:15, 64:1, 73:7, 74:23, 75:3, 76:8, 76:13, 78:10, 80:22
**injury** [1] - 77:1
**input** [1] - 51:2
**inquiries** [2] - 59:6, 83:18
**inquiring** [2] - 79:6, 79:15
**instance** [1] - 76:14
**instead** [1] - 55:12
**institution** [32] - 7:6, 11:9, 17:5, 24:22, 31:20, 39:18, 39:22, 40:5, 40:12, 40:17, 41:1, 41:4, 41:12, 41:18, 41:23, 42:3, 42:5, 42:24, 43:13, 44:5, 45:12, 54:5, 54:16, 54:17, 59:17, 62:11, 62:12, 63:7, 69:4, 71:13, 71:25, 72:9
**institution's** [3] - 43:14, 43:18, 50:23
**institutional** [5] - 14:20, 38:13, 39:17, 45:14, 51:8
**institutions** [6] - 24:12, 53:23, 62:2, 63:21, 70:7, 72:6
**insurmountable** [1] - 48:2
**integrity** [2] - 24:15, 52:15
**intended** [3] - 59:24, 60:22, 61:8
**intent** [5] - 43:12, 51:1, 51:17, 52:11, 53:18
**interacts** [1] - 51:9
**interested** [1] - 8:6
**interests** [1] - 79:17
**interfered** [1] - 57:16
**interference** [11] - 14:6, 14:11, 18:24, 19:23, 20:13, 31:10, 75:14, 75:20, 75:23, 81:5, 85:23
**interim** [3] - 70:9, 85:6, 85:10
**internal** [1] - 69:23
**internally** [1] - 33:7, 67:12, 69:19
**internship** [1] - 17:23
**interpersonal** [1] - 30:19

**interruption** [1] - 16:2
**introduced** [2] - 29:20, 75:7
**investigate** [1] - 38:23
**investigated** [1] - 39:9
**investigation** [2] - 39:8, 84:16
**involved** [3] - 17:1, 48:13, 82:19
**involving** [1] - 62:19
**Irani** [2] - 61:2, 62:20
**irreparable** [9] - 76:17, 76:22, 77:10, 77:21, 77:25, 85:9, 85:11, 85:13
**irreparably** [1] - 77:17
**Israel** [5] - 7:23, 13:18, 77:6, 77:7, 78:4
**issue** [25] - 8:12, 8:15, 10:25, 16:20, 20:9, 25:3, 25:25, 34:3, 47:1, 59:16, 64:13, 66:1, 66:18, 66:19, 67:18, 67:19, 68:17, 69:15, 71:9, 79:24, 80:5, 84:18, 86:7, 86:10, 88:15
**issued** [1] - 84:16
**issues** [15] - 8:22, 25:17, 25:18, 26:9, 28:13, 60:6, 66:10, 67:17, 73:9, 73:15, 78:14, 78:15, 82:23
**italics** [1] - 68:24
**items** [2] - 37:17, 37:21
**itself** [4] - 10:5, 15:1, 15:4, 54:5

## J

**Jaffee** [11] - 3:18, 25:23, 26:1, 26:11, 59:1, 59:3, 59:11, 59:24, 65:19, 65:22, 83:12
**January** [4] - 59:3, 77:3, 82:15, 82:21
**job** [1] - 7:24
**JUDGE** [1] - 1:11
**Judge** [9] - 35:2, 35:6, 35:9, 56:25, 61:2, 61:15, 64:12, 78:8, 86:16
**judges** [1] - 89:5
**judgment** [1] - 80:1
**July** [2] - 70:10, 70:22
**jump** [3] - 57:7, 57:10, 60:8
**June** [7] - 1:7, 37:11,

38:8, 62:19, 77:5, 82:15, 89:6
**jurisdiction** [3] - 12:8, 12:19, 47:16
**Justice** [2] - 34:15, 34:17

## K

**keep** [1] - 27:13
**keeping** [2] - 47:19, 54:24
**key** [2] - 46:21, 69:11
**Kfir** [2] - 3:17, 3:20
**KFIR** [1] - 1:7
**kind** [1] - 79:16
**knowing** [1] - 75:9
**knowledge** [1] - 30:3
**known** [1] - 5:6
**knows** [1] - 65:17

## L

**lack** [4] - 8:8, 30:18, 72:20, 85:13
**language** [11] - 33:13, 36:16, 59:7, 62:9, 65:11, 78:17, 83:19, 84:6, 84:7
**large** [1] - 38:12
**Lash** [2] - 1:17, 3:16
**last** [15] - 7:23, 23:18, 31:17, 37:15, 48:19, 53:4, 64:24, 68:4, 70:6, 71:11, 72:15, 74:9, 77:1, 79:16, 79:23
**law** [25] - 3:16, 13:1, 13:4, 15:9, 15:10, 15:12, 31:7, 31:13, 32:1, 34:4, 35:5, 35:10, 35:11, 35:25, 36:18, 37:4, 60:21, 63:19, 63:20, 65:16, 68:10, 74:12, 75:9, 76:22, 78:1
**lawsuit** [10] - 13:24, 14:15, 14:25, 18:4, 26:19, 26:20, 29:10, 66:11, 85:3
**lawyer** [3] - 25:22, 33:19, 83:22
**lay** [1] - 59:18
**leader** [1] - 52:12
**leadership** [2] - 43:16, 51:6
**learners** [1] - 40:21
**least** [3] - 44:20, 47:16, 60:3
**leave** [5] - 43:3, 44:7,

45:17, 54:1, 68:18
**led** [1] - 25:18
**left** [6] - 26:21, 69:11, 70:2, 77:13, 80:9, 84:10
**legal** [7] - 10:25, 17:19, 27:6, 73:15, 74:14, 74:15, 74:16
**length** [1] - 57:4
**letter** [148] - 4:11, 4:12, 5:7, 5:19, 5:23, 6:6, 6:10, 6:12, 6:23, 7:14, 7:16, 7:17, 7:18, 7:20, 8:9, 8:13, 9:16, 10:9, 10:14, 10:16, 10:20, 11:2, 11:3, 11:5, 13:21, 14:3, 14:19, 16:13, 16:17, 16:19, 17:3, 17:10, 17:13, 17:15, 17:25, 18:2, 18:10, 18:18, 19:20, 20:11, 20:15, 20:18, 21:3, 23:5, 23:17, 23:19, 23:23, 24:4, 24:7, 24:8, 24:9, 24:11, 24:14, 24:16, 24:20, 25:4, 25:12, 25:21, 25:24, 26:9, 26:13, 26:15, 26:18, 26:22, 27:21, 28:1, 28:2, 28:4, 28:7, 28:12, 28:24, 29:20, 29:23, 29:25, 30:5, 31:8, 31:19, 31:20, 32:14, 32:22, 33:15, 33:18, 38:3, 38:21, 45:16, 47:19, 47:23, 48:1, 48:3, 49:1, 49:7, 49:9, 49:21, 49:25, 50:5, 54:19, 54:22, 54:23, 55:1, 55:2, 55:6, 55:9, 55:11, 55:12, 57:25, 58:6, 58:9, 58:14, 58:17, 59:2, 59:4, 59:10, 59:13, 59:17, 60:4, 64:18, 66:12, 67:2, 67:3, 67:9, 67:21, 69:10, 69:14, 70:25, 73:6, 73:10, 75:6, 76:3, 82:12, 82:22, 83:1, 83:3, 83:5, 83:6, 83:16, 83:20, 83:21, 84:15, 84:17
**letters** [14] - 28:10, 28:14, 28:17, 28:22, 29:1, 29:8, 29:11, 29:17, 37:3, 37:23, 49:17, 57:21, 58:1,

58:5
**level** [2] - 15:21, 84:1
**LEVENSTEIN** [91] -
1:13, 3:6, 3:12, 4:19,
4:21, 4:24, 5:2, 5:10,
5:12, 5:15, 5:25, 9:8,
9:10, 9:17, 9:19,
9:24, 10:1, 10:3,
10:7, 10:10, 11:8,
11:12, 11:21, 11:24,
12:2, 12:6, 12:17,
12:22, 13:6, 13:10,
14:4, 14:13, 14:16,
14:23, 15:12, 16:14,
16:23, 17:15, 18:11,
18:14, 18:17, 19:4,
19:9, 19:16, 19:19,
20:1, 20:5, 20:17,
21:1, 21:7, 21:9,
21:19, 21:24, 35:21,
36:1, 36:3, 37:1,
39:12, 39:15, 40:3,
46:11, 46:15, 47:1,
47:6, 47:12, 49:5,
49:10, 49:13, 49:17,
49:21, 50:2, 50:4,
50:11, 50:14, 52:3,
55:24, 56:2, 56:4,
56:8, 56:11, 56:14,
56:18, 56:21, 80:17,
86:17, 86:21, 87:1,
87:16, 87:19, 88:14,
88:17
**Levenstein** [16] - 3:7,
22:15, 26:8, 26:25,
31:18, 32:12, 32:19,
33:2, 59:9, 63:12,
65:8, 65:15, 65:25,
66:11, 67:1, 71:12
**liability** [6] - 6:21,
76:6, 79:5, 79:10,
79:14
**lib'd** [1] - 84:5
**lie** [2] - 79:9, 82:11
**lied** [1] - 48:6
**life** [1] - 15:16
**light** [3] - 5:3, 18:18,
86:9
**likewise** [2] - 61:15,
70:17
**limited** [1] - 39:3
**limitless** [1] - 79:14
**limits** [1] - 21:14
**line** [1] - 48:23
**LISETTE** [2] - 1:10,
89:5
**listed** [2] - 38:2, 78:23
**listing** [4] - 37:6, 38:5,
38:8, 47:21
**litigating** [1] - 87:10

**litigation** [6] - 17:1,
29:20, 48:13, 48:14,
63:13, 74:13
**LLP** [1] - 1:17
**loaded** [1] - 79:2
**local** [1] - 25:22
**locally** [1] - 34:25
**log** [1] - 45:9
**logged** [1] - 82:16
**logical** [1] - 21:2
**logs** [1] - 38:1
**look** [10] - 29:12,
29:14, 35:9, 52:15,
57:19, 59:14, 66:5,
69:22, 72:8, 81:2
**looked** [2] - 54:14
**looking** [2] - 37:9,
85:16
**looks** [1] - 73:6
**lose** [1] - 46:8
**loss** [2] - 39:7, 66:17
**lost** [3] - 15:19, 15:20,
72:13
**Louis** [3] - 62:19,
62:25, 63:20
**love** [1] - 27:23
**low** [1] - 59:15

# M

**M.D** [2] - 1:4, 1:7
**ma'am** [12] - 4:19,
4:21, 9:8, 9:10, 9:17,
11:24, 16:24, 17:17,
18:11, 50:14, 88:8
**MAGISTRATE** [1] -
1:11
**mail** [1] - 37:22
**maintain** [2] - 42:4,
63:23
**maintained** [1] - 45:12
**major** [1] - 31:12
**manage** [1] - 78:20
**manageable** [1] -
78:11
**management** [1] -
51:3
**mandated** [1] - 41:16
**mandatory** [5] - 8:20,
9:4, 19:4, 19:5, 27:9
**manner** [1] - 54:6
**mark** [1] - 87:22
**marked** [1] - 88:4
**MARTIN** [1] - 1:16
**Martin** [3] - 3:15,
22:13, 57:8
**match** [1] - 84:23
**matches** [1] - 25:5
**matching** [1] - 77:23
**matriculates** [1] - 64:4

**matter** [13] - 5:22,
25:10, 46:16, 47:2,
47:25, 48:1, 63:19,
63:20, 65:15, 68:9,
77:11, 85:17
**matters** [1] - 69:6
**mature** [1] - 28:13
**McGowan** [1] - 61:2
**mean** [7] - 13:23, 31:9,
31:10, 48:9, 66:16,
78:18
**meaning** [1] - 14:7
**means** [4] - 23:17,
64:5, 69:19, 70:2
**Mecklenburg** [2] -
34:14, 34:19
**MEDICAL** [1] - 1:7
**Medical** [28] - 3:17,
5:6, 5:16, 5:19, 6:4,
7:4, 7:5, 7:10, 8:18,
8:22, 11:10, 11:14,
12:3, 27:5, 37:6,
37:10, 37:22, 39:19,
46:3, 47:22, 54:18,
54:23, 57:8, 58:9,
73:21, 77:2, 82:21,
83:22
**medical** [22] - 3:19,
4:14, 8:7, 13:15,
15:13, 16:5, 16:7,
30:1, 33:19, 44:2,
45:25, 51:9, 53:19,
60:16, 65:2, 65:12,
78:7, 80:3, 80:4,
80:6, 81:23, 85:19
**medicine** [1] - 30:3
**Medicine** [1] - 61:3
**member** [4] - 40:24,
41:16, 47:8, 50:20
**members** [10] - 7:9,
40:7, 40:14, 40:22,
41:6, 43:16, 51:7,
51:18, 51:21
**memo** [4] - 68:1,
68:10, 78:24, 84:7
**memoranda** [1] - 76:7
**memorandum** [7] -
36:4, 37:4, 42:19,
43:11, 74:9, 79:23,
82:13
**mention** [4] - 33:1,
64:23, 68:2, 68:11
**mentioned** [10] - 18:1,
35:3, 43:10, 45:17,
63:8, 65:23, 75:6,
76:19, 78:16, 84:2
**merger** [1] - 68:15
**met** [2] - 63:8, 69:21
**Miami** [7] - 1:6, 1:18,
1:23, 1:24, 16:7,

37:10, 89:6
**microphones** [1] -
3:21
**middle** [2] - 33:4,
57:20
**might** [3] - 6:20, 9:20,
87:12
**milestones** [1] - 45:8
**mind** [4] - 48:15,
54:24, 72:11, 73:12
**mine** [1] - 12:6
**minute** [3] - 42:13,
56:19, 71:8
**minutes** [5] - 56:20,
73:15, 73:16
**mirror** [1] - 66:11
**mislead** [1] - 79:4
**misleading** [5] - 33:5,
33:6, 33:12, 33:14,
67:24
**mistreated** [1] - 63:5
**mistreatment** [1] -
40:20
**MIT** [1] - 16:6
**mitigate** [2] - 84:25,
85:5
**model** [5] - 51:18,
51:21, 52:10, 52:12,
52:17
**moment** [3] - 9:7,
51:24, 83:8
**monetary** [1] - 78:1
**money** [3] - 15:19,
15:24, 15:25
**monitor** [1] - 41:19
**monitoring** [1] - 40:13
**month** [1] - 72:9
**moonlight** [1] - 77:13
**morning** [7] - 3:2, 3:3,
3:6, 3:9, 3:15, 73:20,
73:24
**most** [9] - 7:22, 37:16,
37:24, 52:6, 52:7,
74:9, 76:18, 78:23,
84:7
**MOTION** [1] - 1:10
**motion** [4] - 37:5,
65:24, 74:8, 79:23
**Mount** [46] - 3:17,
4:14, 5:5, 5:8, 5:16,
5:19, 6:3, 7:10, 7:22,
8:18, 11:9, 11:14,
12:3, 13:18, 14:5,
14:13, 14:20, 15:5,
15:18, 16:14, 16:16,
25:6, 25:13, 28:4,
28:5, 29:22, 37:6,
37:10, 37:22, 39:18,
47:22, 54:18, 54:23,
57:8, 58:13, 59:5,

64:25, 72:7, 73:21,
77:2, 77:5, 77:13,
78:24, 82:20, 83:16,
83:22
**MOUNT** [1] - 1:7
**move** [6] - 10:19,
15:25, 44:12, 50:13,
83:7, 84:24
**moved** [1] - 74:21
**moves** [2] - 16:1, 36:6
**moving** [2] - 47:20,
76:11
**MR** [136] - 3:6, 3:12,
3:15, 4:19, 4:21,
4:24, 5:2, 5:10, 5:12,
5:15, 5:25, 9:8, 9:10,
9:17, 9:19, 9:24,
10:1, 10:3, 10:7,
10:10, 11:8, 11:12,
11:21, 11:24, 12:2,
12:6, 12:17, 12:22,
13:6, 13:10, 14:4,
14:13, 14:16, 14:23,
15:12, 16:14, 16:23,
17:15, 18:11, 18:14,
18:17, 19:4, 19:9,
19:16, 19:19, 20:1,
20:5, 20:17, 21:1,
21:7, 21:9, 21:19,
21:24, 22:6, 22:13,
22:19, 22:24, 23:3,
23:8, 23:10, 23:12,
23:14, 23:16, 24:25,
27:18, 27:23, 27:25,
28:4, 28:22, 29:5,
30:25, 31:3, 31:9,
33:22, 34:1, 34:6,
34:8, 35:21, 36:1,
36:3, 37:1, 39:12,
39:15, 40:3, 46:11,
46:15, 47:1, 47:6,
47:12, 49:5, 49:8,
49:10, 49:13, 49:17,
49:21, 50:2, 50:4,
50:11, 50:14, 52:3,
55:24, 56:2, 56:4,
56:8, 56:11, 56:13,
56:14, 56:18, 56:21,
56:25, 57:2, 57:7,
58:23, 60:5, 60:8,
60:12, 61:21, 66:4,
66:24, 73:19, 73:20,
80:17, 86:17, 86:21,
87:1, 87:2, 87:4,
87:6, 87:16, 87:19,
88:3, 88:8, 88:11,
88:13, 88:14, 88:17
**MS** [3] - 3:9, 87:8,
87:24
**must** [36] - 14:2,

37:12, 37:17, 37:21, 39:22, 40:6, 40:12, 40:17, 41:4, 41:12, 41:18, 41:23, 42:3, 44:4, 44:21, 44:24, 45:6, 45:9, 45:11, 45:13, 45:21, 50:7, 50:19, 50:23, 51:3, 51:19, 51:24, 52:3, 52:10, 52:12, 52:15, 53:7, 53:21, 54:7, 63:22, 78:10
**mythical** [1] - 38:4

# N

**name** [2] - 35:1, 58:15
**named** [2] - 81:14, 81:15
**narrowing** [1] - 34:3
**Nason** [2] - 1:14, 3:7
**nature** [5] - 10:15, 13:25, 61:10, 61:14, 82:24
**necessarily** [1] - 78:4
**necessary** [1] - 45:24
**need** [13] - 27:10, 36:2, 40:2, 48:10, 48:23, 51:24, 54:22, 67:5, 68:5, 72:10, 86:20, 87:17
**needs** [3] - 5:21, 28:13, 67:2
**negative** [7] - 6:7, 6:14, 10:18, 26:9, 28:11, 59:11
**negotiate** [1] - 26:21
**never** [13] - 24:25, 25:11, 26:22, 33:10, 33:20, 58:16, 65:22, 66:20, 72:23, 74:13, 75:6, 82:8, 83:13
**new** [3] - 76:5, 77:12, 78:14
**New** [3] - 77:6, 77:14, 77:15
**next** [8] - 12:9, 16:11, 26:25, 41:10, 43:8, 44:22, 45:19, 54:3
**nine** [1] - 48:4
**NO** [1] - 1:2
**nomination** [1] - 51:11
**noncompetition** [3] - 42:3, 42:6, 65:13
**noncompliance** [1] - 41:8
**nondisclosure** [3] - 65:19, 65:21, 65:23
**nondiscrimination** [1] - 43:19

**none** [3] - 52:22, 66:16, 78:13
**nonrenewal** [1] - 25:18
**North** [1] - 1:23
**not-for-profit** [1] - 60:15
**notebook** [10] - 22:17, 25:2, 27:13, 38:11, 38:12, 57:12, 73:2, 87:25, 88:1, 88:6
**nothing** [10] - 62:10, 62:12, 64:13, 82:22, 84:4, 84:5, 84:9
**notified** [1] - 70:7
**notion** [5] - 57:5, 73:24, 76:2, 76:17, 80:5
**notwithstanding** [1] - 20:5
**novel** [2] - 20:8, 20:9
**November** [2] - 73:5, 84:13
**nowhere** [2] - 63:16, 65:21
**number** [3] - 67:9, 74:7, 75:24
**numbers** [1] - 56:10
**numeral** [1] - 51:23
**numerous** [1] - 51:2
**nutshell** [1] - 7:8

# O

**oath** [1] - 48:20
**obey** [1] - 36:18
**obey-the-law** [1] - 36:18
**obfuscate** [1] - 79:4
**object** [1] - 73:8
**objective** [12] - 5:18, 10:12, 10:22, 13:12, 17:16, 18:19, 47:18, 47:19, 55:7, 55:9, 55:15, 59:21
**objectively** [1] - 59:18
**obligation** [1] - 54:20
**obligations** [2] - 40:8, 42:20
**obtain** [14] - 6:11, 7:1, 9:1, 13:17, 14:7, 14:8, 42:12, 44:25, 57:22, 84:23, 85:9, 85:14, 85:15, 86:2
**obtaining** [1] - 81:23
**obviously** [1] - 31:9
**occur** [1] - 43:20
**occurred** [4] - 5:3, 6:25, 30:6, 63:6
**occurring** [1] - 13:20

**OF** [3] - 1:1, 1:7, 1:10
**offer** [4] - 7:24, 8:3, 77:5, 83:13
**offered** [2] - 59:22, 62:23
**office** [2] - 66:7, 66:8
**official** [4] - 28:17, 28:20, 51:8
**Official** [1] - 1:22, 89:8
**OLIVIERI** [1] - 1:13
**ombudsman** [1] - 66:8
**omitted** [1] - 84:4
**once** [4] - 25:5, 74:21, 75:2, 77:22
**one** [32] - 6:17, 7:12, 7:22, 10:1, 10:21, 17:2, 27:2, 31:12, 33:4, 34:10, 36:20, 37:12, 37:17, 37:21, 37:24, 38:13, 38:14, 43:20, 50:20, 52:22, 63:7, 65:7, 66:2, 67:9, 71:7, 71:25, 72:3, 76:8, 77:19, 82:19, 84:16, 89:5
**ones** [3] - 87:16, 87:17, 87:20
**ongoing** [1] - 84:16
**opening** [1] - 45:23
**operate** [2] - 43:12, 45:22
**operates** [1] - 39:19
**operation** [1] - 10:15
**operations** [1] - 52:5
**operative** [2] - 38:1, 77:8
**opinion** [2] - 61:18, 61:23
**Opportunity** [1] - 84:14
**opportunity** [13] - 15:21, 16:4, 16:12, 21:19, 25:16, 27:20, 55:9, 55:14, 56:17, 68:2, 68:8, 78:4, 78:6
**opposed** [2] - 74:21, 83:25
**opposing** [1] - 88:1
**opt** [1] - 82:1
**option** [1] - 41:17
**optional** [1] - 67:4
**order** [9] - 3:1, 5:13, 8:25, 9:4, 39:19, 45:22, 66:16, 71:24, 86:10
**organization** [5] - 7:7, 9:14, 60:15, 75:5, 81:17
**organization's** [1] -

75:5
**organizations** [1] - 9:4
**original** [1] - 74:8
**orthopedic** [1] - 61:5
**otherwise** [3] - 32:6, 42:11, 48:1
**out-of-state** [1] - 80:17
**outlining** [1] - 41:13
**outside** [2] - 28:6, 33:20
**outstanding** [1] - 52:17
**overall** [1] - 50:21
**overcharge** [1] - 33:13
**overcomes** [1] - 15:4
**overly** [1] - 36:19
**oversee** [1] - 41:4
**overview** [1] - 60:13
**own** [4] - 54:23, 64:18, 66:6, 77:22

# P

**P.A** [1] - 1:14
**packaged** [1] - 75:22
**page** [27] - 33:4, 36:4, 37:5, 39:21, 41:11, 41:21, 42:2, 42:23, 43:11, 44:20, 45:5, 51:16, 54:3, 57:20, 58:3, 59:1, 60:14, 60:19, 61:22, 64:24, 64:25, 66:8, 66:17, 69:7, 73:4
**Pages** [1] - 1:4
**pages** [1] - 33:1
**Paige** [3] - 3:10, 3:12, 82:14
**PAIGE** [1] - 1:4
**Palm** [1] - 1:15
**paper** [1] - 83:13
**papers** [2] - 59:17, 65:24
**paragraph** [5] - 11:11, 25:2, 29:25, 50:8, 57:14
**parallels** [1] - 61:4
**part** [17] - 14:17, 29:1, 37:17, 44:24, 45:11, 49:9, 53:13, 54:11, 54:20, 57:14, 64:10, 64:14, 65:20, 69:11, 73:7, 73:10, 77:7
**part-time** [1] - 77:7
**participant** [1] - 40:24
**participate** [2] - 51:19, 80:23
**participated** [1] - 82:18

**particular** [6] - 7:13, 54:8, 71:5, 80:2, 82:4, 85:25
**particularly** [2] - 29:8, 78:5
**parties** [8] - 4:13, 20:19, 33:25, 44:15, 67:12, 74:20, 79:7, 79:15
**partnership** [3] - 39:22, 40:5, 41:1
**parts** [1] - 61:19
**party** [5] - 19:15, 74:25, 75:1, 81:15
**past** [2] - 77:16, 78:3
**pasted** [2] - 33:5, 68:13
**patent** [2] - 12:23, 76:19
**path** [1] - 21:25
**patient** [8] - 25:18, 39:23, 52:9, 52:18, 59:24, 72:10, 80:4, 82:23
**patients** [2] - 15:21, 40:9
**pattern** [2] - 19:10, 19:13
**pause** [1] - 3:24
**PDF** [2] - 37:17, 37:21
**pending** [1] - 84:14
**people** [5] - 28:5, 29:15, 29:16, 48:6, 80:2
**per** [3] - 25:5, 38:21, 75:4
**percentile** [1] - 82:18
**performance** [5] - 6:19, 17:24, 30:8, 44:23, 47:4
**perhaps** [2] - 83:5, 83:7
**period** [2] - 85:7, 85:10
**permanent** [1] - 45:12
**permit** [2] - 14:1, 36:17
**person** [9] - 5:16, 7:25, 11:5, 14:3, 16:12, 16:15, 20:21, 24:21, 59:16
**person's** [1] - 20:25
**personal** [2] - 39:24, 58:19
**personnel** [3] - 43:16, 50:17, 53:6
**perspective** [2] - 7:22, 18:19
**persuasive** [1] - 80:18
**PGA** [1] - 1:15

**PGY-1** [2] - 37:25, 64:6
**PGY-2** [5] - 37:7, 37:11, 47:23, 54:24, 54:25
**PGY-5** [1] - 64:7
**philosophic** [1] - 69:2
**philosophy** [1] - 68:25
**phonetic** [2] - 32:3, 62:9
**phrased** [1] - 66:13
**physician** [10] - 8:24, 8:25, 9:1, 9:5, 13:17, 15:21, 16:6, 30:22, 45:25, 81:22
**physicians** [6] - 8:23, 40:8, 44:3, 53:20, 63:5, 79:20
**PI** [1] - 79:23
**pick** [4] - 16:12, 20:18, 20:21, 26:20
**picture** [1] - 67:23
**piece** [1] - 83:13
**Pinpoint** [1] - 61:23
**placed** [7] - 25:15, 39:18, 59:18, 63:4, 72:4, 79:8, 82:19
**plain** [1] - 32:23
**plaintiff** [28] - 1:5, 3:5, 3:7, 3:10, 3:13, 4:1, 4:3, 4:5, 4:6, 4:9, 4:10, 4:14, 4:17, 20:15, 26:12, 27:15, 60:2, 73:2, 74:6, 74:13, 74:19, 74:21, 75:2, 75:8, 76:25, 78:13, 79:8, 80:13
**Plaintiff** [1] - 1:13
**plaintiff's** [6] - 4:9, 12:24, 46:21, 76:3, 79:13, 80:7
**plant** [2] - 35:15, 64:1
**play** [2] - 37:14, 71:10
**playing** [1] - 84:1
**pleading** [2] - 4:5, 77:4
**pleadings** [7] - 4:9, 5:4, 7:12, 49:2, 49:13, 86:9, 86:15
**pleads** [2] - 25:1, 25:4
**pled** [1] - 74:23
**point** [27] - 8:7, 11:11, 11:15, 16:24, 16:25, 17:3, 17:4, 29:12, 34:10, 35:4, 35:15, 36:20, 38:7, 46:19, 57:13, 60:8, 60:24, 61:17, 65:7, 66:1, 68:7, 69:2, 71:14, 71:20, 72:12, 79:16,

82:10
**pointed** [1] - 75:11
**points** [4] - 34:8, 58:10, 76:16, 78:3
**policies** [5] - 42:24, 43:14, 43:19, 44:5, 53:23
**policy** [3] - 41:23, 42:4, 45:14
**poor** [1] - 63:3
**population** [1] - 80:4
**portal** [2] - 58:1, 72:20
**portion** [5] - 19:5, 41:10, 43:10, 71:3, 72:15
**portray** [1] - 71:12
**position** [14] - 7:19, 23:5, 25:7, 38:6, 38:8, 42:8, 55:7, 62:23, 77:8, 77:14, 77:15, 79:4, 81:7, 83:7
**positions** [3] - 13:17, 31:12, 57:21
**positive** [3] - 7:11, 30:2, 59:12
**possibility** [1] - 63:18
**possible** [2] - 24:4, 56:15
**post** [1] - 16:5
**post-medical** [1] - 16:5
**posting** [4] - 37:6, 47:21, 54:23, 55:1
**potential** [2] - 14:9, 24:8
**potentially** [1] - 48:2
**power** [2] - 15:8, 33:12, 35:10
**PowerPoint** [1] - 58:8
**powers** [9] - 8:11, 12:18, 27:2, 34:13, 34:18, 34:23, 35:5, 35:17, 36:12
**practical** [1] - 78:11
**practice** [5] - 30:17, 44:3, 45:10, 53:20, 70:6
**practices** [1] - 36:11
**predicate** [1] - 85:22
**prefer** [2] - 87:8, 87:12
**preliminary** [16] - 4:1, 12:11, 12:16, 12:17, 12:25, 13:8, 18:6, 18:13, 18:25, 19:2, 22:1, 22:3, 31:6, 37:11, 74:8, 86:13
**prelitigation** [1] - 5:22
**premise** [1] - 31:14
**prepare** [1] - 5:6

**prepared** [3] - 23:4, 29:21, 83:23
**prerequisites** [1] - 13:8
**present** [4] - 8:8, 33:25, 34:10, 49:2
**presentation** [6] - 8:16, 11:13, 11:18, 13:20, 55:19, 69:12
**presented** [3] - 5:25, 37:6, 73:17
**president** [1] - 3:19
**pressed** [1] - 76:4
**pretty** [1] - 62:22
**preventing** [1] - 13:14
**previous** [2] - 36:12, 45:17
**previously** [4] - 7:12, 43:1, 44:7, 53:25
**prima** [1] - 10:14
**primarily** [2] - 5:21, 34:13
**primary** [2] - 44:1, 53:18
**principles** [2] - 44:14, 45:18
**private** [4] - 31:25, 60:15, 64:2, 74:2
**privileges** [1] - 81:23
**probation** [6] - 25:16, 59:14, 59:19, 63:4, 72:5, 82:19
**probations** [2] - 29:14, 79:9
**problem** [1] - 29:7
**problems** [2] - 27:10, 63:2
**Procedure** [1] - 12:13
**procedures** [4] - 43:15, 43:19, 59:20, 82:16
**proceed** [3] - 22:5, 56:23, 56:25
**Proceedings** [1] - 88:18
**proceedings** [1] - 89:4
**process** [12] - 8:1, 23:21, 24:15, 25:23, 28:6, 32:16, 57:16, 57:17, 58:3, 58:10, 60:18, 80:23
**produce** [1] - 66:15
**produced** [2] - 62:10, 62:11
**product** [2] - 12:24, 31:11
**profession** [3] - 30:2, 80:4, 84:25
**professional** [3] - 40:7, 40:14, 40:18

**professionalism** [8] - 25:17, 28:13, 30:19, 39:21, 39:23, 52:10, 52:18, 82:23
**profit** [1] - 60:15
**progeny** [1] - 34:22
**Program** [1] - 7:4
**program** [233] - 5:7, 5:19, 5:23, 6:5, 7:9, 7:10, 7:13, 7:15, 7:16, 7:17, 7:20, 7:21, 8:8, 8:13, 8:18, 8:19, 9:2, 9:16, 10:5, 10:6, 10:8, 10:9, 10:16, 10:20, 10:21, 11:2, 13:14, 13:16, 13:20, 14:18, 16:8, 16:13, 16:19, 16:25, 17:1, 17:6, 17:9, 17:13, 17:20, 17:25, 18:2, 18:10, 18:18, 19:20, 20:25, 21:2, 23:1, 23:4, 23:15, 23:16, 23:21, 23:25, 24:1, 24:2, 24:5, 24:22, 25:15, 27:22, 28:2, 28:8, 28:18, 28:20, 29:6, 29:8, 29:13, 30:13, 36:25, 37:3, 37:7, 37:8, 37:10, 37:24, 38:3, 38:13, 38:15, 38:17, 38:18, 38:20, 38:22, 38:24, 39:2, 39:4, 39:10, 39:19, 39:22, 40:6, 40:10, 40:11, 40:23, 41:2, 41:5, 41:7, 41:14, 41:16, 42:16, 42:20, 42:22, 42:24, 43:1, 43:3, 43:9, 43:12, 43:13, 43:17, 43:21, 43:25, 44:5, 44:7, 44:8, 44:11, 44:19, 44:23, 45:5, 45:6, 45:7, 45:11, 45:15, 45:16, 45:18, 45:20, 45:21, 45:22, 46:1, 46:3, 46:9, 46:10, 46:17, 47:8, 47:18, 47:22, 47:24, 48:1, 48:4, 49:23, 50:1, 50:4, 50:5, 50:7, 50:10, 50:15, 50:16, 50:17, 50:19, 50:20, 50:21, 50:22, 50:23, 50:24, 51:4, 51:5, 51:12, 51:13, 51:14, 51:17, 51:18, 51:20, 51:22, 51:23, 52:3, 52:9,

52:11, 52:12, 52:16, 52:17, 52:19, 52:23, 53:2, 53:5, 53:6, 53:7, 53:8, 53:12, 53:13, 53:23, 53:25, 54:1, 54:4, 54:5, 54:12, 54:19, 54:21, 54:22, 55:2, 55:3, 55:6, 55:12, 56:1, 58:13, 59:5, 60:19, 61:5, 61:6, 61:7, 61:11, 62:5, 62:7, 62:24, 63:11, 64:7, 64:8, 65:3, 65:5, 67:3, 67:11, 68:23, 69:3, 69:7, 69:9, 69:16, 70:16, 71:18, 72:3, 75:5, 76:2, 79:4, 79:5, 79:18, 80:7, 80:22, 81:18, 81:20, 82:5, 83:17, 85:17, 87:13, 87:14
**program's** [5] - 30:7, 30:8, 43:15, 43:18, 51:11
**programs** [13] - 7:5, 8:20, 26:2, 37:19, 40:18, 41:19, 41:24, 42:5, 46:5, 58:18, 65:1, 65:13, 80:3
**progress** [2] - 30:19, 44:22
**prohibited** [2] - 42:15, 81:23
**prolog** [1] - 78:4
**promise** [1] - 63:24
**promised** [3] - 33:3, 62:11, 62:12
**promises** [1] - 61:11
**promotion** [3] - 41:22, 41:24, 52:7
**proof** [3] - 29:21, 54:22, 64:16
**proposed** [3] - 24:11, 24:16, 79:13
**proposing** [1] - 78:19
**proposition** [1] - 75:24
**prospectively** [1] - 34:18
**protect** [1] - 20:2
**proven** [1] - 18:18
**proves** [3] - 29:12, 49:24
**provide** [29] - 6:7, 6:14, 6:22, 8:14, 13:11, 19:20, 27:11, 33:9, 33:17, 39:23, 40:9, 40:12, 40:18, 43:22, 45:6, 45:16,

47:19, 50:7, 53:9, 54:21, 55:15, 55:18, 56:4, 64:18, 69:24, 82:6, 83:13, 86:17, 86:25
**provided** [26] - 6:24, 7:11, 14:19, 14:24, 17:13, 18:1, 18:2, 18:4, 23:25, 27:8, 32:15, 37:17, 37:21, 41:12, 42:13, 44:12, 45:3, 48:5, 55:11, 58:2, 59:10, 70:20, 77:8, 81:7, 85:2, 85:4
**provider** [1] - 78:24
**provides** [6] - 27:5, 41:21, 42:23, 51:17, 60:13, 74:1
**providing** [3] - 19:17, 21:3, 27:7
**provision** [4] - 32:22, 65:12, 70:13, 84:6
**provisions** [11] - 11:15, 21:21, 36:11, 45:17, 45:19, 50:12, 50:13, 68:16, 80:25, 81:9, 81:10
**proviso** [1] - 6:1
**public** [3] - 79:17, 79:19, 83:3
**publication** [1] - 82:19
**publicly** [1] - 57:18
**pudding** [1] - 64:16
**pull** [1] - 4:8
**purported** [1] - 29:21
**purpose** [1] - 79:13
**purposes** [6] - 46:5, 52:7, 52:8, 53:22, 65:9, 88:5
**pursuant** [2] - 7:2, 17:7
**pursue** [4] - 15:15, 16:4, 19:24, 20:13
**pursuits** [1] - 40:15
**put** [13] - 36:9, 48:7, 61:18, 64:10, 65:9, 69:8, 71:21, 74:7, 74:11, 79:3, 79:16, 83:3, 88:16
**puts** [1] - 12:7

## Q

**qualified** [1] - 79:20
**qualify** [3] - 71:23, 72:5, 81:21
**qualities** [1] - 30:2
**quality** [1] - 52:18
**questioned** [1] - 48:19

**questions** [16] - 6:9, 9:22, 10:4, 21:17, 22:7, 22:20, 22:21, 33:22, 55:20, 73:16, 78:22, 78:23, 80:10, 80:11, 80:13
**quickly** [1] - 59:13
**quite** [2] - 59:15, 84:11
**quote** [1] - 39:16
**quoted** [1] - 42:21

## R

**raised** [4] - 23:18, 66:13, 72:23, 73:16
**raises** [1] - 78:22
**raising** [1] - 66:10
**rather** [2] - 62:3, 62:14
**reach** [1] - 20:14
**read** [26] - 24:14, 29:19, 39:24, 41:2, 41:10, 47:22, 50:6, 50:8, 50:12, 50:19, 53:4, 59:12, 60:16, 61:24, 63:22, 66:17, 68:21, 69:12, 71:22, 84:3, 84:6, 86:15, 86:18, 87:16, 87:20
**readiness** [1] - 44:22
**reading** [5] - 40:3, 63:19, 69:18, 69:24, 81:8
**real** [2] - 8:17, 47:13
**really** [12] - 22:16, 23:18, 27:1, 48:9, 60:20, 61:24, 68:9, 69:19, 77:19, 77:25, 78:6, 79:24
**reason** [4] - 11:3, 9:11, 20:25, 72:5
**reasonable** [2] - 21:6, 21:9
**reasons** [3] - 63:25, 74:7, 76:25
**receive** [7] - 7:2, 17:20, 55:5, 55:7, 58:14, 81:13
**received** [7] - 6:13, 31:8, 49:25, 63:3, 84:17, 86:9, 88:10
**recent** [6] - 7:22, 37:24, 62:20, 74:9, 78:23, 84:7
**recently** [2] - 26:13, 42:19
**Recess** [1] - 56:22
**recognition** [1] - 81:21
**recognized** [2] -

35:12, 46:3
**recognizes** [2] - 46:4, 51:2
**recommendation** [58] - 4:11, 4:15, 14:3, 20:11, 20:15, 23:19, 23:20, 23:23, 24:4, 24:9, 24:11, 24:20, 25:4, 25:12, 25:21, 25:24, 26:22, 28:1, 28:4, 28:8, 28:18, 28:25, 29:1, 29:11, 29:21, 29:23, 29:25, 31:19, 31:21, 32:14, 32:22, 33:16, 36:22, 37:23, 49:22, 49:25, 57:21, 57:25, 58:2, 58:5, 58:10, 58:14, 58:16, 58:18, 59:2, 59:10, 60:4, 64:19, 66:12, 67:9, 67:21, 69:10, 69:14, 71:1, 73:7, 73:10, 75:6, 86:16
**recommendations** [2] - 48:5, 48:7
**recommended** [1] - 7:14
**recommending** [1] - 59:16
**recommends** [1] - 49:22
**record** [13] - 30:16, 42:24, 44:5, 44:19, 45:12, 49:9, 49:11, 50:15, 53:23, 56:1, 56:8, 87:12, 88:4
**records** [3] - 69:20, 69:23
**recruitment** [1] - 52:6
**redacted** [1] - 58:15
**redline** [1] - 70:12
**reference** [8] - 7:20, 7:21, 47:9, 65:6, 65:11, 69:8, 78:24, 79:2
**references** [3] - 7:11, 7:25, 79:12
**referred** [3] - 81:12, 86:21, 87:10
**referring** [4] - 44:18, 50:14, 57:3, 87:19
**refers** [1] - 81:16
**refused** [3] - 6:11, 80:23, 83:9
**refuses** [1] - 78:25
**regard** [12] - 5:20, 17:4, 17:22, 29:24, 36:3, 36:21, 38:23, 41:19, 48:22, 50:17,

54:11, 86:1
**regarding** [3] - 8:4, 59:6, 83:18
**regime** [2] - 78:19, 79:13
**regular** [1] - 68:23
**regulation** [4] - 34:4, 34:11, 35:25, 74:12
**regulations** [2] - 62:3, 62:14
**Reid** [1] - 64:12
**REID** [2] - 1:10, 89:5
**rejected** [2] - 26:15, 32:7, 61:10
**related** [3] - 15:3, 62:13, 84:20
**relates** [1] - 70:11
**relationship** [15] - 8:17, 8:20, 9:3, 10:11, 11:9, 11:10, 11:23, 13:13, 15:2, 22:8, 43:9, 54:18, 60:21, 62:4, 63:6
**relationships** [2] - 14:7, 22:15
**relay** [1] - 8:3
**release** [35] - 6:2, 6:3, 6:11, 6:13, 6:24, 7:1, 10:13, 10:16, 14:24, 17:11, 17:12, 17:17, 18:3, 18:10, 19:18, 26:4, 26:6, 26:10, 26:15, 42:8, 42:12, 45:1, 53:15, 59:7, 59:22, 59:25, 65:16, 79:20, 80:24, 83:1, 83:2, 83:4, 83:11, 83:14, 83:19
**released** [3] - 15:5, 53:14, 53:15
**relevant** [1] - 61:19
**relief** [28] - 5:2, 5:20, 6:18, 7:7, 8:10, 12:18, 12:20, 16:3, 19:5, 27:7, 27:8, 27:9, 31:11, 31:15, 31:16, 36:10, 64:2, 73:8, 74:23, 75:3, 76:9, 76:13, 76:20, 77:20, 78:10, 80:22
**remarks** [1] - 45:24
**remediable** [1] - 30:22
**remediations** [1] - 79:9
**remedied** [2] - 76:22, 78:1
**remedy** [13] - 15:9, 15:10, 15:12, 31:7, 31:13, 32:9, 46:8, 46:21, 46:22, 46:24,

73:25, 77:24
**remember** [3] - 31:17, 69:13, 82:12
**remind** [1] - 68:5
**remove** [1] - 39:4
**removed** [4] - 39:2, 64:22, 75:2, 84:21
**removing** [1] - 46:16
**render** [1] - 86:16
**renewal** [2] - 41:22, 41:25
**repackaging** [1] - 35:7
**repeat** [1] - 58:7
**repeatedly** [1] - 83:12
**reply** [8] - 32:25, 33:4, 34:12, 68:1, 68:2, 68:12, 75:16, 82:13
**report** [1] - 86:16
**Reported** [1] - 1:22
**reported** [1] - 63:4
**REPORTER** [1] - 22:12
**reporter** [2] - 40:2, 56:17, 63:22
**Reporter** [2] - 1:22, 89:8
**represent** [3] - 66:14, 66:21, 71:6
**represented** [1] - 67:1
**request** [17] - 24:7, 24:17, 25:21, 26:3, 33:9, 43:23, 47:15, 48:11, 53:10, 58:5, 58:6, 70:1, 74:6, 74:17, 75:3, 80:22, 86:12
**requested** [7] - 4:1, 36:9, 53:14, 58:2, 58:14, 58:16, 74:16
**requesting** [1] - 58:17
**require** [17] - 4:10, 11:4, 14:1, 17:12, 20:14, 31:19, 33:17, 33:18, 42:5, 43:4, 44:8, 54:1, 54:8, 55:21, 60:3, 65:13, 71:4
**required** [30] - 7:1, 7:2, 7:20, 8:21, 9:4, 10:13, 14:19, 16:5, 17:5, 19:14, 23:5, 23:11, 25:25, 26:10, 33:15, 38:4, 40:9, 40:16, 42:11, 42:13, 45:2, 47:22, 54:11, 57:23, 67:10, 69:20, 73:4, 81:11, 82:25
**requirement** [13] - 6:1, 23:13, 30:12, 38:6, 39:17, 42:14, 43:6,

45:16, 68:23, 69:9, 70:3, 73:11, 87:14
**requirements** [40] - 13:8, 17:4, 17:14, 18:7, 31:17, 31:19, 38:2, 38:13, 38:14, 38:15, 38:16, 38:17, 39:12, 39:18, 40:10, 40:23, 40:25, 41:8, 42:1, 43:10, 44:19, 45:2, 46:10, 47:7, 47:8, 50:16, 50:22, 52:25, 53:5, 54:16, 56:1, 60:20, 62:5, 62:13, 63:11, 63:15, 63:23, 67:2, 81:4, 82:5
**requires** [5] - 41:23, 42:10, 46:2, 55:5, 55:18
**requiring** [5] - 17:10, 18:15, 19:1, 19:18, 55:1
**residencies** [3] - 57:16, 64:6, 77:12
**residency** [62] - 5:8, 6:20, 7:5, 7:15, 8:18, 8:19, 8:20, 9:2, 10:5, 13:16, 15:14, 16:8, 17:22, 23:20, 24:5, 24:22, 25:7, 26:2, 29:8, 30:8, 30:11, 30:13, 33:20, 37:7, 37:10, 37:13, 37:14, 38:14, 38:16, 38:24, 39:9, 39:19, 41:15, 44:20, 46:1, 46:4, 50:10, 50:16, 51:3, 51:6, 51:14, 57:20, 58:3, 59:5, 62:24, 64:4, 65:1, 72:3, 77:3, 77:18, 79:18, 80:3, 80:6, 80:21, 81:18, 81:20, 82:15, 83:17, 84:24, 85:15, 85:17
**Residency** [1] - 25:5
**resident** [52] - 5:8, 9:12, 11:20, 15:4, 17:1, 17:2, 17:6, 17:25, 18:8, 23:6, 24:4, 25:14, 25:20, 31:24, 37:7, 37:8, 38:22, 41:25, 42:6, 42:10, 44:21, 44:24, 45:3, 45:7, 45:13, 46:13, 47:23, 47:24, 52:5, 52:9, 54:4, 54:17, 54:24, 57:22, 59:14, 60:23, 61:5,

61:8, 61:14, 62:7, 62:24, 64:4, 65:9, 66:5, 69:20, 71:17, 72:2, 72:8, 72:16, 80:16
**resident's** [13] - 30:14, 33:8, 33:9, 43:23, 44:23, 45:12, 53:9, 53:10, 53:11, 67:13, 69:25, 70:1
**residents** [37] - 30:14, 32:5, 37:18, 40:6, 40:11, 40:13, 40:16, 40:21, 41:6, 41:12, 42:17, 42:25, 43:3, 43:16, 43:22, 44:6, 44:7, 45:10, 47:9, 51:7, 51:18, 51:21, 52:7, 52:8, 52:13, 52:14, 53:2, 53:8, 53:25, 65:13, 67:14, 69:17, 70:15, 71:25, 81:16, 81:21
**resides** [2] - 50:24, 51:12
**resign** [1] - 16:10
**resigned** [3] - 59:19, 82:15, 82:20
**resolve** [1] - 78:14
**resolves** [1] - 78:22
**respect** [4] - 10:18, 30:7, 52:15, 59:23
**respectful** [2] - 40:19, 52:20
**respectfully** [1] - 36:6
**respects** [1] - 71:10
**respond** [3] - 27:20, 35:22, 57:9
**responded** [1] - 75:18
**response** [10] - 4:3, 4:23, 6:16, 59:6, 68:12, 72:21, 74:8, 79:22, 82:13, 83:17
**responsibilities** [9] - 17:7, 40:7, 40:15, 42:21, 43:7, 51:23, 53:1, 53:7, 54:15
**responsibility** [5] - 17:10, 39:24, 41:5, 51:7, 52:4
**responsible** [1] - 51:4
**rest** [4] - 8:16, 60:16, 80:9, 80:11
**restate** [1] - 58:11
**rested** [1] - 40:8
**restricted** [1] - 42:9
**restrictive** [6] - 42:7, 65:10, 65:14, 65:16, 65:20, 66:1
**restricts** [1] - 42:9

**restroom** [1] - 56:15
**rests** [1] - 86:13
**resubmit** [1] - 87:9
**result** [2] - 8:3, 62:21
**resulted** [1] - 25:17
**retaliation** [2] - 84:20, 85:23
**retention** [3] - 42:24, 44:5, 53:24
**review** [9] - 28:25, 44:24, 45:13, 50:24, 51:13, 58:24, 60:18, 84:8, 86:8
**reviewed** [2] - 4:5, 51:11
**reviews** [1] - 39:1
**revision** [1] - 70:9
**revoke** [1] - 62:6
**rewrite** [1] - 80:7
**Rice** [7] - 32:3, 62:19, 62:21, 62:23, 62:25, 63:25, 64:8
**Rice's** [1] - 63:9
**RICHARD** [1] - 1:13
**Richard** [1] - 3:6
**RICO** [10] - 14:4, 14:14, 36:7, 75:9, 75:10, 76:6, 76:8, 76:9, 82:7, 85:22
**RICO's** [1] - 36:11
**rightly** [1] - 35:4
**rights** [5] - 17:19, 31:23, 42:9, 42:10, 60:22
**rise** [2] - 61:12, 69:10
**role** [7] - 29:1, 51:17, 51:20, 52:10, 52:12, 52:14, 80:6
**Roman** [1] - 51:23
**root** [6] - 33:3, 33:11, 34:21, 35:10, 35:15, 36:3
**rotation** [1] - 72:10
**rule** [2] - 34:10, 74:12
**ruled** [1] - 63:25
**Rules** [1] - 12:12
**rules** [1] - 67:20
**run** [1] - 24:6

**S**

**s/Vernita** [1] - 89:8
**safe** [1] - 86:23
**safety** [2] - 25:18, 39:23
**sake** [1] - 74:5
**satisfactory** [1] - 26:8
**satisfied** [2] - 76:10, 78:17
**save** [1] - 61:21

**schedule** [1] - 68:10
**scheduled** [1] - 84:12
**scheme** [2] - 51:14, 82:1
**scholarly** [4] - 40:15, 52:5, 52:19, 82:18
**School** [1] - 61:3
**school** [4] - 15:13, 16:5, 16:7, 33:19
**scores** [6] - 37:25, 59:15, 59:20, 63:3, 82:17
**se** [2] - 38:21, 75:4
**seated** [2] - 3:2, 56:23
**SEC** [1] - 36:13
**second** [22] - 14:16, 21:4, 25:2, 25:14, 27:3, 28:14, 30:4, 30:15, 34:12, 36:9, 49:14, 49:18, 49:23, 57:14, 58:3, 59:1, 66:8, 67:5, 71:3, 71:20, 72:8, 73:4
**secondly** [1] - 72:6
**Section** [8] - 41:10, 41:21, 42:2, 44:20, 45:5, 50:17, 53:5
**sections** [1] - 36:17
**secure** [3] - 24:6, 28:1, 72:20
**see** [17] - 4:6, 8:24, 19:1, 21:21, 26:5, 26:6, 26:7, 31:11, 37:9, 47:21, 49:1, 58:15, 59:1, 65:10, 69:1, 84:9
**seed** [1] - 64:1
**seek** [2] - 5:21, 86:1
**seeking** [6] - 5:18, 37:8, 47:24, 73:8, 77:18, 77:20
**seeks** [2] - 47:25, 57:22
**seem** [2] - 60:3, 67:20
**segregation** [1] - 34:20
**selection** [3] - 5:15, 52:6, 78:24
**selling** [2] - 12:24, 35:8
**semi** [1] - 38:1
**semi-evaluations** [1] - 38:1
**send** [4] - 58:19, 59:5, 83:17, 86:23
**sends** [1] - 59:3
**senior** [1] - 3:19
**sense** [2] - 9:20, 10:22
**sent** [3] - 24:4, 24:21, 83:20

**sentence** [3] - 5:12, 58:4, 71:3
**sentences** [1] - 71:7
**separate** [1] - 67:17
**September** [2] - 70:6, 70:9
**serious** [1] - 75:20
**serve** [4] - 7:17, 16:19, 52:12, 78:4
**Service** [1] - 25:5
**service** [1] - 25:8
**session** [1] - 48:17
**set** [6] - 8:13, 22:17, 27:9, 30:13, 62:14, 81:11
**sets** [3] - 51:13, 60:15, 60:19
**settle** [1] - 12:15
**setup** [1] - 23:21
**seventh** [1] - 35:2
**several** [5] - 35:22, 63:6, 67:8
**sexual** [1] - 85:23
**shall** [3] - 5:16, 20:19, 43:17
**shape** [2] - 27:11, 72:14
**short** [1] - 26:9
**shot** [1] - 47:16
**show** [5] - 11:19, 23:22, 30:18, 68:18, 71:7
**showed** [1] - 69:10
**shown** [2] - 67:25, 70:12
**shows** [1] - 77:24
**shut** [1] - 35:12
**sic** [2] - 34:19, 59:24
**side** [1] - 60:19
**sides** [1] - 88:16
**SIGMAN** [1] - 1:17
**sign** [10] - 6:11, 7:1, 10:13, 10:16, 14:24, 26:22, 42:6, 42:11, 64:8, 65:13
**signals** [1] - 35:7
**signature** [3] - 64:25, 83:20, 83:23
**signed** [9] - 5:23, 6:2, 41:15, 45:1, 48:11, 48:12, 62:24, 83:10, 83:14
**significant** [1] - 66:18
**signing** [4] - 17:19, 18:3, 53:15, 83:21
**silence** [1] - 74:25
**silencing** [1] - 75:4
**similar** [14] - 8:12, 38:24, 45:18, 49:17, 54:12, 55:1, 61:14,

62:18, 62:22, 62:23, 63:2, 63:7, 72:18, 86:2
**simple** [1] - 87:9
**simply** [3] - 17:12, 18:6, 36:9
**Sinai** [46] - 3:17, 4:14, 5:6, 5:8, 5:16, 5:19, 6:4, 7:10, 7:22, 8:18, 11:9, 11:14, 12:3, 13:18, 14:5, 14:13, 14:21, 15:5, 15:18, 16:14, 16:16, 25:6, 25:13, 28:5, 29:22, 37:6, 37:10, 37:22, 39:18, 47:22, 54:18, 54:23, 57:8, 58:13, 59:5, 64:25, 72:8, 73:21, 77:2, 77:6, 77:13, 78:25, 82:20, 83:16, 83:22
**SINAI** [1] - 1:7
**single** [4] - 51:3, 61:13, 61:16, 83:13
**sit** [2] - 34:8, 70:11
**site** [1] - 66:19
**sitting** [2] - 3:13, 6:25
**situation** [2] - 53:11, 82:4
**situations** [1] - 80:18
**slightly** [1] - 75:2
**Sliwka** [1] - 3:9
**SLIWKA** [4] - 1:13, 3:9, 87:8, 87:24
**slow** [1] - 67:5
**slower** [1] - 40:1
**sole** [1] - 32:9
**solely** [1] - 83:25
**Solow** [1] - 36:13
**someone** [7] - 17:3, 20:12, 50:1, 50:9, 55:10, 55:14, 75:4
**somewhat** [1] - 61:9
**somewhere** [1] - 74:2
**sorry** [4] - 10:24, 23:12, 41:3, 63:21
**Sorry** [1] - 73:2
**sort** [10] - 11:18, 13:23, 13:24, 66:10, 73:24, 75:13, 78:23, 79:14, 79:20, 79:24
**sought** [3] - 7:19, 47:24, 74:1
**sounds** [1] - 11:17
**South** [4] - 34:19, 61:1, 61:3, 61:6
**Southeast** [1] - 1:18
**Southern** [2] - 36:14, 89:9
**SOUTHERN** [1] - 1:1

**spawn** [1] - 78:14
**speaking** [6] - 19:6, 44:4, 54:20, 69:14, 74:20, 74:25
**specialization** [1] - 8:23
**Specialties** [2] - 8:22, 46:4
**specialty** [9] - 8:25, 41:7, 45:8, 45:9, 51:20, 68:24, 81:25, 84:24, 85:15
**specialty-specific** [2] - 45:8, 45:9
**specific** [14] - 6:8, 8:14, 16:24, 21:20, 22:19, 22:21, 24:11, 41:7, 42:1, 44:15, 45:7, 45:8, 45:9, 68:23
**specifically** [6] - 14:21, 27:3, 42:15, 43:3, 47:9, 81:11
**specify** [2] - 54:7, 71:3
**speculative** [1] - 76:24, 76:25
**speech** [3] - 75:19, 75:22, 75:25
**spelled** [1] - 53:3
**Spellman** [3] - 35:2, 35:6, 35:9
**spent** [3] - 15:16, 53:13, 73:23
**Splichal** [4] - 3:16, 73:14, 73:21, 84:2
**SPLICHAL** [2] - 1:17, 73:20
**spoken** [2] - 22:15, 33:2
**sponsoring** [21] - 39:22, 40:5, 40:12, 40:17, 41:1, 41:4, 41:11, 41:18, 41:22, 42:3, 42:4, 42:23, 42:13, 43:14, 43:18, 44:5, 50:22, 53:23, 54:5, 62:11, 62:12
**spring** [2] - 74:4, 74:12
**springs** [1] - 75:17
**spun** [1] - 28:11
**squarely** [2] - 60:22, 61:10
**St** [3] - 62:19, 62:24, 63:20
**staff** [2] - 40:22, 81:23
**stage** [1] - 18:13
**stages** [1] - 5:22
**stagnate** [1] - 20:6
**stand** [1] - 29:6

**standard** [8] - 21:9, 21:10, 32:1, 32:21, 33:4, 33:7, 33:11, 33:15
**standards** [11] - 32:7, 33:2, 60:15, 60:20, 61:8, 62:1, 63:17, 64:10, 64:15, 66:6, 68:3
**standing** [3] - 37:15, 72:3, 72:4
**standpoint** [1] - 35:14
**start** [8] - 4:22, 5:11, 13:4, 13:9, 27:16, 60:13, 67:7, 80:14
**started** [3] - 3:4, 15:22, 28:7
**starting** [1] - 3:5
**state** [12] - 8:8, 40:17, 41:18, 43:2, 43:17, 44:1, 45:4, 74:18, 75:9, 80:17, 84:11, 84:12
**statement** [1] - 58:19
**statements** [4] - 6:20, 35:22, 68:25, 82:12
**States** [6] - 1:23, 7:6, 8:19, 61:1, 81:24, 89:9
**STATES** [1] - 1:1
**states** [10] - 37:9, 41:11, 42:3, 42:4, 43:11, 52:11, 53:18, 54:3, 54:10, 82:14
**status** [5] - 31:17, 33:3, 67:13, 68:4, 71:11
**statute** [7] - 13:2, 13:4, 34:4, 34:11, 35:25, 36:17, 79:11
**statutory** [1] - 76:20
**stay** [1] - 31:5
**steadfast** [1] - 32:17
**stealing** [1] - 35:7
**Step** [1] - 37:25
**step** [1] - 12:9
**still** [8] - 4:5, 19:19, 30:18, 50:14, 84:16, 86:3, 86:11, 87:12
**stipulate** [1] - 16:17
**stipulated** [1] - 55:11
**stipulation** [1] - 16:19
**stood** [1] - 31:18
**stop** [8] - 12:20, 12:23, 13:1, 13:3, 13:9, 13:10, 35:5, 35:11
**stopped** [1] - 13:19
**stopping** [1] - 13:19
**Store** [1] - 34:25

**Street** [1] - 1:18
**strength** [1] - 30:3
**stretch** [3] - 56:17, 81:19, 82:1
**strongly** [2] - 30:4, 73:8
**struggling** [1] - 30:14
**stuff** [2] - 33:19, 48:7
**style** [1] - 48:12
**stymied** [1] - 7:18
**subject** [1] - 66:15
**subjected** [1] - 52:24
**submission** [1] - 67:25
**submit** [5] - 4:11, 26:2, 28:23, 46:11, 58:17
**submitted** [6] - 24:8, 25:12, 38:19, 72:18, 74:9, 79:23
**subsequent** [1] - 48:21
**subspecialty** [2] - 15:15, 41:7
**substance** [1] - 84:10
**substantially** [1] - 62:5
**substantive** [3] - 74:11, 74:24, 75:12
**substitute** [3] - 13:20, 55:12, 80:1
**succeed** [2] - 25:15, 25:16
**successfully** [2] - 14:8, 86:2
**sue** [1] - 84:15
**sued** [5] - 26:14, 31:10, 60:1, 63:9
**suffice** [1] - 36:22
**sufficient** [2] - 26:13, 86:14
**suggest** [6] - 5:5, 17:3, 20:21, 33:14, 35:17, 66:12
**suggested** [1] - 75:17
**suggesting** [1] - 63:12
**suggestion** [1] - 20:23
**suggests** [1] - 27:1
**suit** [3] - 77:9, 84:11, 85:7
**Suite** [2] - 1:15, 1:18
**summarize** [1] - 62:21
**summarizing** [1] - 62:8
**summative** [10] - 17:23, 43:5, 44:9, 44:21, 54:2, 67:16, 72:23, 72:25, 73:1, 73:3
**Summative** [1] - 67:17

**supervision** [1] - 52:8
**supplemental** [2] - 76:7, 86:8
**supplementary** [1] - 37:4
**support** [3] - 37:4, 43:16, 85:11
**supporting** [1] - 76:5
**supports** [2] - 39:23, 74:23
**supposed** [2] - 77:16, 79:9
**Supreme** [1] - 34:17
**surgeon** [3] - 13:18, 15:14, 30:22
**surgery** [8] - 5:8, 7:9, 16:8, 37:7, 37:10, 61:5, 82:15, 85:17
**surgical** [6] - 15:15, 37:13, 59:5, 62:23, 82:16, 83:17
**surveyed** [1] - 69:22
**suspenders** [1] - 75:13
**sustain** [1] - 63:24
**Swann** [1] - 34:14
**system** [3] - 24:6, 24:10, 24:13
**systems** [1] - 40:12

**T**

**Tab** [22] - 57:11, 57:20, 58:1, 58:8, 58:12, 58:21, 58:25, 59:1, 59:3, 60:9, 60:25, 62:18, 64:3, 66:4, 66:24, 67:25, 68:20, 69:6, 71:2, 71:20, 72:19, 73:2
**table** [2] - 3:13, 3:18
**Tabs** [1] - 57:18
**talks** [2] - 59:20, 67:16
**target** [1] - 76:11
**task** [1] - 68:12
**teaching** [2] - 52:5, 65:1
**technical** [1] - 52:13
**technically** [2] - 17:15
**technology** [1] - 3:24
**ten** [1] - 56:19
**ten-minute** [1] - 56:19
**term** [3] - 6:19, 50:10, 79:2
**terminate** [2] - 30:9, 63:9
**terminated** [7] - 16:9, 59:15, 61:5, 71:17, 71:18, 77:2, 77:24
**termination** [2] -

25:19, 29:14
**terms** [6] - 13:10, 34:20, 41:14, 41:20, 59:16, 81:6
**test** [1] - 63:3
**testified** [1] - 65:22
**testimony** [1] - 28:9
**text** [8] - 47:9, 59:4, 59:13, 68:22, 68:23, 81:16, 83:16, 84:4
**THE** [138] - 1:10, 3:2, 3:8, 3:11, 3:14, 3:21, 3:22, 3:25, 4:20, 4:22, 5:1, 5:9, 5:11, 5:14, 5:24, 9:7, 9:9, 9:11, 9:18, 9:22, 9:25, 10:2, 10:6, 10:8, 10:25, 11:11, 11:17, 11:22, 11:25, 12:5, 12:9, 12:20, 12:23, 13:7, 13:22, 14:11, 14:14, 14:22, 15:7, 16:11, 16:21, 17:9, 18:6, 18:12, 18:16, 18:21, 19:7, 19:12, 19:18, 19:22, 20:4, 20:7, 20:24, 21:5, 21:8, 21:13, 21:23, 21:25, 22:11, 22:12, 22:18, 22:22, 22:25, 23:4, 23:9, 23:11, 23:13, 23:15, 24:24, 27:15, 27:19, 27:24, 28:3, 28:19, 29:3, 30:23, 31:1, 31:4, 33:21, 33:24, 34:2, 34:7, 35:19, 35:23, 36:2, 36:24, 39:11, 39:14, 40:1, 46:7, 46:14, 46:20, 47:5, 47:10, 49:4, 49:6, 49:9, 49:11, 49:16, 49:20, 49:24, 50:3, 50:6, 50:13, 52:1, 55:22, 55:25, 56:3, 56:6, 56:10, 56:12, 56:16, 56:19, 56:23, 57:1, 57:6, 58:22, 60:2, 60:7, 60:11, 61:20, 66:3, 66:23, 73:18, 80:12, 86:5, 86:19, 86:24, 87:3, 87:5, 87:7, 87:17, 87:21, 87:25, 88:6, 88:9, 88:12, 88:15
**theories** [1] - 32:7
**theory** [6] - 61:12, 61:15, 62:16, 74:14, 74:16, 76:5

**therefore** [1] - 52:17
**they've** [3] - 26:16, 32:25, 79:1
**thickness** [1] - 57:4
**thin** [3] - 43:7, 81:19, 82:2
**third** [7] - 38:14, 61:22, 63:1, 67:12, 74:20, 79:7, 79:15
**thorny** [1] - 59:16
**thoughts** [1] - 86:11
**threats** [2] - 26:17
**three** [4] - 37:23, 38:12, 57:24, 71:7
**throughout** [1] - 32:1
**tie** [1] - 74:16
**tied** [6] - 70:17, 74:11, 75:13, 75:14, 76:6
**timely** [11] - 41:8, 42:25, 43:4, 44:4, 44:6, 44:8, 53:21, 53:22, 53:24, 54:1, 54:6
**today** [12] - 44:4, 44:13, 59:25, 61:9, 67:4, 70:4, 70:11, 71:15, 76:16, 78:7, 86:25, 87:20
**together** [4] - 49:17, 69:19, 69:24, 72:6
**took** [4] - 15:6, 39:5, 39:6, 66:21
**tools** [1] - 45:9
**tortious** [11] - 14:6, 14:11, 18:24, 19:23, 20:13, 31:10, 75:14, 75:19, 75:23, 81:5, 85:22
**torts** [1] - 75:18
**totality** [1] - 54:14
**Totally** [1] - 67:17
**towards** [2] - 10:12, 85:25
**tracks** [1] - 36:16
**traditional** [3] - 9:20, 12:25, 27:8
**train** [1] - 15:14
**trained** [1] - 15:22
**training** [8] - 15:22, 15:23, 16:5, 37:14, 44:3, 53:20, 82:16, 85:20
**transactions** [1] - 62:16
**transcript** [3] - 68:4, 71:11, 89:3
**TRANSCRIPT** [1] - 1:10
**transfer** [25] - 7:15, 13:16, 31:20, 37:8,

37:19, 47:23, 47:25, 54:24, 67:3, 71:13, 71:16, 71:17, 71:19, 71:22, 71:25, 72:2, 72:7, 72:9, 72:11, 72:13, 85:10, 85:14, 85:16, 85:18
**transferring** [1] - 37:19, 54:25, 71:12
**transfers** [6] - 71:9, 71:14, 71:24, 72:1, 72:12, 72:17
**transparent** [1] - 70:5
**transpired** [4] - 12:3, 12:7, 38:23, 46:12
**treated** [2] - 38:21, 39:9
**treatment** [1] - 15:3
**tree** [2] - 35:16, 36:3
**trees** [1] - 61:21
**trenching** [1] - 79:25
**trial** [2] - 30:24, 31:1
**tried** [2] - 64:9, 85:19
**trigger** [2] - 64:1
**true** [6] - 6:19, 11:25, 18:21, 32:1, 82:12, 89:3
**truly** [1] - 77:21
**truthful** [1] - 28:10
**try** [10] - 8:7, 20:1, 26:21, 28:7, 44:12, 77:24, 84:22, 84:23, 84:24, 84:25
**trying** [9] - 3:23, 9:25, 24:5, 26:18, 68:18, 70:24, 73:9, 78:20, 85:5
**turn** [10] - 30:24, 58:3, 60:14, 60:25, 62:18, 64:24, 66:4, 68:20, 71:2, 72:18
**turning** [1] - 39:12
**TV** [1] - 35:7
**twice** [2] - 25:16, 59:14
**two** [13] - 5:7, 15:13, 16:8, 17:21, 17:23, 25:13, 32:2, 34:8, 34:13, 62:4, 66:7, 71:7, 76:9
**twofold** [1] - 27:2
**type** [3] - 9:14, 35:17, 70:24
**typically** [1] - 75:21

---

**U**

**U.S** [2] - 1:11, 60:16
**ultimately** [1] - 84:15
**unable** [6] - 13:16,

13:17, 15:15, 28:1, 85:9, 86:2
**unaccredited** [1] - 81:20
**unaware** [1] - 46:15
**under** [26] - 8:15, 12:12, 23:6, 23:17, 37:16, 41:21, 42:2, 45:17, 45:18, 47:13, 47:14, 48:20, 51:1, 51:22, 53:5, 53:6, 54:3, 59:21, 61:14, 65:9, 74:12, 78:19, 79:13, 80:21, 81:7, 81:14
**undergraduate** [1] - 16:6
**underlying** [1] - 76:9
**undermines** [1] - 77:20
**underscored** [1] - 77:12
**underscores** [1] - 76:12
**underscoring** [1] - 74:15
**understood** [1] - 30:25
**unemployment** [1] - 43:19
**unequivocally** [1] - 83:9
**unfair** [1] - 20:12
**unfortunately** [3] - 7:15, 25:15, 30:21
**unilateral** [1] - 20:20
**unintelligible** [1] - 68:9
**unintended** [1] - 60:22
**unique** [1] - 8:13
**UNITED** [1] - 1:1
**United** [6] - 1:23, 7:6, 8:19, 61:1, 81:24, 89:9
**universally** [1] - 75:22
**University** [5] - 16:7, 61:3, 62:19, 62:25, 63:20
**unjust** [2] - 19:25, 20:12
**unlawfully** [1] - 17:20
**unless** [4] - 33:22, 73:16, 83:10, 83:13
**unofficial** [2] - 28:21, 29:3
**unprofessional** [1] - 40:20
**unreasonable** [2] - 20:24, 21:3
**unreasonably** [6] -

5:17, 16:15, 20:19, 20:23, 78:18, 79:1
**unsuccessful** [1] - 85:1
**unsuccessfully** [1] - 26:21
**untruthful** [1] - 79:6
**unusual** [1] - 21:6
**unwillingness** [1] - 74:15
**up** [15] - 4:8, 6:9, 17:19, 22:14, 22:17, 24:1, 25:14, 26:20, 28:15, 29:2, 30:13, 38:12, 42:10, 48:7, 57:3
**updated** [2] - 58:19, 69:21
**uploaded** [1] - 58:2
**upshot** [1] - 33:6
**urge** [1] - 31:14
**urging** [1] - 21:22
**uses** [1] - 34:23
**USMLE** [1] - 37:25
**usurp** [1] - 80:6
**utmost** [1] - 52:16

---

**V**

**vacancy** [1] - 37:11
**vague** [1] - 36:19
**value** [1] - 51:2
**various** [2] - 28:5, 80:25
**vehemently** [1] - 36:23
**veracity** [1] - 48:19
**verification** [32] - 33:9, 43:21, 43:22, 44:1, 44:4, 53:7, 53:9, 53:19, 53:21, 54:7, 54:9, 54:11, 54:19, 67:11, 67:19, 67:22, 69:13, 69:15, 69:16, 69:25, 70:3, 70:13, 70:14, 70:18, 70:19, 70:23, 71:1, 71:4, 71:5, 73:4, 73:6, 73:10
**verifications** [1] - 71:6
**verified** [1] - 54:6
**verify** [1] - 67:12
**VERNITA** [2] - 1:22, 89:2
**Vernita_Allen** [1] - 1:22
**Vernita_Allen-Williams** [1] - 1:22
**versions** [1] - 87:13
**via** [1] - 37:21

**vice** [1] - 3:19
**view** [5] - 10:14, 17:18, 26:20, 54:20, 55:5
**violate** [2] - 34:19, 69:1
**violated** [6] - 34:4, 35:8, 35:10, 36:18, 42:13, 64:17
**violating** [1] - 35:11
**violation** [8] - 14:4, 31:25, 32:11, 35:5, 36:7, 36:11, 52:25
**virtually** [1] - 81:23
**vis** [2] - 42:17
**vis-a-vis** [1] - 42:17
**visit** [1] - 66:19
**vitiate** [1] - 70:23
**voluntary** [5] - 23:24, 60:18, 67:10, 81:17, 81:25
**vs** [7] - 1:6, 34:14, 34:20, 34:22, 34:25, 36:13, 61:2

## W

**wait** [1] - 32:19
**waited** [1] - 76:25
**waive** [6] - 24:14, 24:15, 26:5, 58:23, 58:24
**waived** [2] - 24:17, 24:18
**waives** [1] - 28:25
**walk** [9] - 22:7, 22:20, 24:3, 31:22, 32:4, 33:6, 33:12, 60:6, 67:22
**wall** [1] - 8:24
**wants** [13] - 4:3, 9:15, 23:20, 24:4, 24:9, 24:23, 27:16, 28:23, 29:7, 71:12, 71:13, 72:2, 72:12
**water** [1] - 51:24
**wax** [6] - 26:21, 58:25, 59:11, 65:22, 72:24, 83:11
**Wax** [1] - 25:22
**ways** [2] - 21:11, 66:7
**week** [3] - 74:9, 78:20, 79:23
**weight** [1] - 28:24
**welcomed** [1] - 52:20
**well-being** [1] - 41:6
**well-qualified** [1] - 79:20
**whim** [1] - 41:18
**white** [1] - 38:4

**whitewash** [4] - 6:18, 6:19, 82:11, 82:25
**whole** [6] - 27:9, 66:10, 70:8, 71:19, 87:2, 87:3
**wholly** [1] - 69:15
**WILLIAMS** [2] - 1:22, 89:2
**Williams** [2] - 1:22, 89:8
**willing** [5] - 6:14, 6:22, 25:25, 26:2, 83:1
**withdraw** [2] - 8:3, 65:25
**withdrawn** [1] - 14:9
**withdrew** [1] - 10:16
**withheld** [6] - 5:17, 16:16, 20:20, 78:18, 79:1, 81:13
**withhold** [1] - 20:23
**withholding** [1] - 14:18
**wondering** [1] - 22:3
**word** [1] - 72:20
**words** [4] - 31:24, 40:10, 41:15, 62:8
**workable** [2] - 78:11, 78:21
**works** [2] - 4:12, 15:8
**write** [16] - 4:11, 9:15, 10:8, 14:3, 20:21, 20:22, 24:1, 24:2, 24:9, 24:11, 24:19, 25:25, 28:7, 28:10, 28:16
**writes** [4] - 16:12, 17:3, 20:15, 20:18
**writing** [2] - 66:21, 71:15
**written** [12] - 11:2, 16:18, 17:9, 20:12, 24:20, 24:21, 26:7, 27:22, 28:19, 30:5, 41:13, 48:20
**wrongdoing** [1] - 29:22
**wrote** [3] - 29:16, 30:15, 62:1

## Y

**Yeager** [2] - 1:14, 3:7
**year** [12] - 25:5, 30:15, 37:13, 37:15, 44:22, 63:1, 63:2, 63:8, 64:7, 77:5, 77:9, 77:22
**years** [10] - 5:8, 15:13, 15:14, 15:16, 16:9, 17:22, 17:23, 63:1,

64:6
**York** [3] - 77:6, 77:14, 77:15