**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

PAIGE FINKELSTEIN, M.D.,       )
                                  )
      Plaintiff,           )   Case No. 1:23-CV-20188-RKA
                                  )
v.                               )
                                  )
MOUNT SINAI MEDICAL CENTER OF    )
FLORIDA, INC., a Florida Not For Profit    )
Corporation, and KFIR BEN-DAVID, M.D.,    )
                                  )
      Defendants.

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED SECOND
AMENDED COMPLAINT AND MOTION TO STRIKE
<u>CERTAIN ALLEGATIONS CONTAINED THEREIN</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

   I.    Legal Standard ........................................................................................................ 3

   II.   The Breach of Contract Claims (Counts I and II) Fail on Multiple Grounds ................... 4

   III.  Plaintiff's Claims of Intentional Infliction of Emotional Distress (Counts III and IV) Fail as a Matter of Law ........................................................................................ 9

   IV.  Plaintiff's Tortious Interference Claims (Counts V and VI) Fail as a Matter of Law ...... 10

   V.   Plaintiff's Claims of Defamation (Counts VII and VIII) Fail as a Matter of Law .......... 12

   VI.  Plaintiff's Claim Pursuant to RICO (Count IX) Fails ..................................................... 13

   VII.  Plaintiff's Claims Pursuant to Title VII, the FCRA, and the ADA (Counts X-XVI) Are Time-Barred and Independently Fail ................................................................ 14

   VIII. Plaintiff Fails to State a Claim of Vicarious Liability (Count XVII) Against MSMC .... 17

   IX.  Plaintiff's Negligent Supervision and Retention Claims (Count XVIII and XIX) Fail ... 17

   X.   Plaintiff Fails to State a Claim for Permanent Injunctive Relief (Count XXII) .............. 19

MOTION TO STRIKE CERTAIN ALLEGATIONS FROM THE SAC ................................... 23

   I.    Background .............................................................................................................. 23

   II.   Argument ................................................................................................................ 25

CONCLUSION .................................................................................................................... 26

## **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Albany Bone & Joint Clinic, P.C. v. Hajek*,
   612 S.E.2d 509 (Ga. Ct. App. 2005) ......................................................................... 7

*Albright v. Teva Pharms. USA, Inc.*,
   290 F. Supp. 3d 1321 (S.D. Fla. 2017)...................................................................... 3

*Alexander v. Prendergrast*,
   No. 5:18-cv-519-Oc-30PRL, 2019 WL 10817143 (M.D. Fla. Jan. 24, 2019) .......................... 15

*Allison v. Parise*,
   No. 8:12-CV-1313-T-17EAJ, 2013 WL 877111 (M.D. Fla. Mar. 8, 2013)............................. 11

*Am. Acad. of Dermatology v. Dep't of Health & Human Services*,
   118 F.3d 1495 (11th Cir. 1997).................................................................................. 8

*Am. Seafood, Inc. v. Clawson*,
   598 So. 2d 273 (Fla. 3d DCA 1992) ........................................................................ 12

*Artiga v. Garcia*,
   No. 05-61036-CIV, 2006 WL 8451593 (S.D. Fla. Jan. 10, 2006)............................. 21

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ........................................... 3

*Atl. Tr. Co. v. Graver*,
   2-09-0589, 2011 WL 10109585 (Ill. App. Ct. Jan. 31, 2011)..................................... 7

*Baker v. Joseph*,
   938 F. Supp. 2d 1265 (S.D. Fla. 2013).................................................................... 20

*Bass v. Morgan, Lewis & Bockius*,
   516 So. 2d 1011 (Fla. 3d DCA 1987) ...................................................................... 18

*Bd. of Curators of Univ. of Missouri v. Horowitz*,
   435 U.S. 78 (1978) .................................................................................................. 22

*Bickel v. City of Coral Springs*,
   No. 17-cv-60606-BLOOM/Valle, 2017 WL 2439078 (S.D. Fla. June 6, 2017)...................... 17

*Blake v. Batmasian*,
   318 F.R.D. 698 (S.D. Fla. 2017) ............................................................................. 25

*Boehm v. Am. Bankers Ins. Group, Inc.*,
   557 So. 2d 91 (Fla. 3d DCA 1990) ........................................................... 11

*Brooks v. Blue Cross & Blue Shield*,
   116 F.3d 1364 (11th Cir.1997) ................................................................. 3

*Buckner v. Lower Florida Keys Hosp. Dist.*,
   403 So. 2d 1025 (Fla. 3d DCA 1981) ....................................................... 12

*Bulwer v. Mount Auburn Hosp.*,
   473 Mass. 672, 46 N.E.3d 24 (2016) ....................................................... 6

*Carver v. Casey*,
   669 F. Supp. 412 (S.D. Fla. 1987) ........................................................... 4

*Castleberry v. Edward M. Chadbourne, Inc.*,
   810 So. 2d 1028 (Fla. 1st DCA 2002) ...................................................... 19

*Cavner v. Bounceback, Inc.*,
   2015 WL 467682 (M.D. Fla. Feb. 3, 2015) .............................................. 26

*City of Miami v. Fraternal Order of Police Lodge No. 20 of City of Miami*,
   378 So. 2d 20 (Fla. 3d DCA 1979) ........................................................... 7

*Clemente v. Horne*,
   707 So. 2d 865 (Fla. 3d DCA 1998) ......................................................... 9

*Cmty. State Bank v. Strong*,
   651 F.3d 1241 (11th Cir. 2011) ................................................................ 14

*Crawford's Auto Cent., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   269 F. Supp. 3d 1344 (M.D. Fla. 2017) ................................................... 14

*Curvey v. Avante Group, Inc.*,
   327 So. 3d 401 (Fla. 5th DCA 2021) ........................................................ 20

*D'Angelo v. ConAgra Foods, Inc.*,
   422 F.3d 1220 (11th Cir. 2005) ................................................................ 16

*Deauville Hotel Mgmt., LLC v. Ward*,
   219 So. 3d 949 (Fla. 3d DCA 2017) ......................................................... 9

*Demby v. English*,
    667 So. 2d 350 (Fla. 1st DCA 1995) ...................................................................... 11, 20

*Desai v. Lawnwood Med. Ctr., Inc.*,
    219 So. 3d 869 (Fla. 4th DCA 2017) ............................................................................ 7

*Dinehart v. Town of Palm Beach*,
    728 So. 2d 360 (Fla. 4th DCA 1999) ............................................................................ 8

*Edwards v. Prime, Inc.*,
    602 F.3d 1276 (11th Cir. 2010) .................................................................................. 16

*English v. CSA Equip. Co., LLC*,
    2006 WL 2456030 n.5 (S.D. Ala. Aug. 22, 2006) ...................................................... 26

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
    647 So. 2d 812 (Fla. 1994) ........................................................................................ 10

*Fed. Deposit Ins. Corp. v. VRG Appraisels, Inc.*,
8:12-CV-1814-T-35TGW,
    2013 WL 12156110 (M.D. Fla. Aug. 13, 2013) ........................................................... 7

*Fernandez v. Bal Harbour Vill.*,
    49 F. Supp. 3d 1144 (S.D. Fla. 2014) ................................................................... 18, 22

*FHR TB, LLC v. TB Isle Resort, LP.*,
    865 F. Supp. 2d 1172 (S.D. Fla. 2011) ...................................................................... 22

*Florida Carry, Inc. v. Thrasher*,
    315 So. 3d 771 (Fla. 1st DCA 2021), *reh'g denied* .................................................... 8

*Freese v. Wuesthoff Health Sys., Inc.*,
    No. 6:06-cv-175-Orl-31JGG, 2006 WL 1382111 (M.D. Fla. May 19, 2006) ......................... 17

*Gibson v. Nocco*,
    No. 8:20-cv-2992-KKM-SPF, 2021 WL 4033893 (M.D. Fla. Sept. 3, 2021) ......................... 13

*Grossman v. Nationsbank, N.A.*,
    225 F.3d 1228 (11th Cir. 2000) .................................................................................... 3

*Gutman v. Quest Diagnostics Clinical Labs., Inc.*,
    707 F. Supp. 2d 1327 (S.D. Fla. 2010) ...................................................................... 17

*Harris v. Cellco P'ship*,
 No. 21-81129-CV-MIDDLEBROOKS/Matthewman,
2021 WL 8155331 (S.D. Fla. Dec. 29, 2021) ............................................................................ 18

*Harris v. Sch. Bd. of Broward Cnty.*,
 No. 11-62604-CIV, 2012 WL 882610 (S.D. Fla. Mar. 15, 2012) ............................................ 16

*Hilb, Rogal & Hamilton Co. of Arizona v. McKinney*,
 946 P.2d 464 (Ariz. Ct. App. 1997) .......................................................................................... 7

*In re 2TheMart.com, Inc. Sec. Litig.*,
 114 F. Supp. 2d 955 (C.D. Cal. 2000) ...................................................................................... 25

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
 164 F.R.D. 346 (S.D.N.Y.1996) ............................................................................................... 26

*Ingram v. Butter*,
 No. 14-21392-CV-Williams, 2015 WL 9911314 (S.D. Fla. Dec. 23, 2015) .......................... 10

*Int'l Sales & Serv., Inc. v. Austral Insulated Products, Inc.*,
 262 F.3d 1152 (11th Cir. 2001) ................................................................................................ 10

*Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*,
3:14-cv-3577-CMC,
 2016 WL 3079466 (D.S.C. June 1, 2016) ................................................................................. 5

*Jackman v. 20th Judicial Circuit Court Admin.*,
 No. 2:19-cv-828-FtM-38MRM, 2020 WL 3895425 (M.D. Fla. July 10, 2020) ..................... 19

*Jarzynka v. St. Thomas Univ. of Law*,
 310 F. Supp. 2d 1256 (S.D. Fla. 2004) ..................................................................................... 11

*Keller v. Lawnwood Med. Ctr., Inc.*,
 219 So. 3d 879 (Fla. 4th DCA 2017) ......................................................................................... 7

*Klay v. United Healthgroup, Inc.*,
 376 F.3d 1092 (11th Cir. 2004) ................................................................................................ 20

*Knapik v. Mary Hitchock Mem'l Hosp.*,
 No. 5:12-cv-175, 2014 WL 12717446 (D. Vt. May 30, 2014) .................................................. 8

*Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc.*,
 361 So. 2d 769 (Fla. 4th DCA 1978) ....................................................................................... 10

*Laster v. City of Tampa Police Dep't,*
    575 Fed. Appx. 869 (11th Cir. 2014) ........................................................ 17

*LeGrande v. Emmanuel,*
    889 So. 2d 991 (Fla. 3d DCA 2004) ........................................................ 9

*Liberty Mut. Ins. Co. v. Steadman,*
    968 So. 2d 592 (Fla. 2d DCA 2007) ........................................................ 9

*Marino v. Phaidon Int'l, Inc.,*
    No. 22-14027-CV-Cannon/McCabe, 2022 WL 1913266 (S.D. Fla. May 17, 2022) ............... 11

*Martin v. Automobili Lamborghini Exclusive, Inc.,*
    307 F.3d 1332 (11th Cir.2002) ........................................................ 26

*McElrath v. Burley,*
    707 So. 2d 836 (Fla. 1st DCA 1998) ........................................................ 18

*McMaster v. United States,*
    177 F.3d 936 (11th Cir. 1999) ........................................................ 8

*Mendoza v. Borden, Inc.,*
    195 F.3d 1238 (11th Cir. 1999) ........................................................ 16

*Minotti S.P.A. v. Belletti,*
    15-23365-CIV, 2016 WL 7508244 (S.D. Fla. June 30, 2016) ........................................................ 21

*Moon v. Med. Tech. Assocs., Inc.,*
    577 F. App'x 934 (11th Cir. 2014) ........................................................ 21

*Ne. Florida Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.,*
    896 F.2d 1283 (11th Cir. 1990) ........................................................ 22

*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) ........................................................ 20

*Nemazee v. Mt. Sinai Med. Ctr.,*
    564 N.E.2d 477 (Ohio 1990) ........................................................ 7, 8

*Nodar v. Galbreath,*
    462 So. 2d 803 (Fla. 1984) ........................................................ 11

*Noventa Ocho LLC v. PBD Properties LLC,*
    284 F. App'x 726 (11th Cir. 2008) ........................................................ 7

*Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*,
  416 F. Supp. 3d 1369 (S.D. Fla. 2019) .................................................................. 20

*Pineda v. PRC, LLC*,
  No. 1:11-CV-20894-JKL, 2011 WL 3022564 (S.D. Fla. July 22, 2011) .................................... 4

*Pippin et al. v. Playboy Entm't Group, Inc. et al*.,
No. 8:02-cv-2329-T-30EAJ,
  2003 U.S. Dist. LEXIS 25415, *6 (M.D. Fla. 2003) .................................................. 22

*Raney v. Allstate Ins. Co.*,
  370 F.3d 1086 (11th Cir. 2004) ....................................................................... 13

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) ....................................................................... 13

*Rice v. St. Louis Univ.*,
4:19-CV-03166 SEP,
  2020 WL 3000431 (E.D. Mo. June 4, 2020) ............................................................. 5

*Santander Consumer USA Inc. v. Sandy Sansing Nissan Inc*.
3:22CV8084-MCR-HTC,
2022 WL 17478257 (N.D. Fla. Sept. 21, 2022) ........................................................... 5

*Santandreu v. Miami-Dade Cnty.*,
  No. 10-24616-CIV-ALTONAGA/Simonton, 2011 WL 13136161 (S.D. Fla. Aug. 1, 2011) .. 19

*Santilli v. Van Erp*,
8:17-CV-1797-T-33MAP,
  2018 WL 2172554 (M.D. Fla. Apr. 20, 2018) ....................................................... 20, 21

*Sarkis v. Pafford Oil Co., Inc.*,
  697 So. 2d 524 (Fla. 1st DCA 1997) .................................................................. 10

*Scelta v. Delicatessen Support Servs., Inc.*,
  57 F.Supp.2d 1327 (M.D. Fla. 1999) .................................................................. 17

*Scheidler v. Nat'l Org. for Women*,
  537 U.S. 393 (2003) .................................................................................. 13

*Seminole Tribe of Fla. v. Times Publ'g Co., Inc.*,
  780 So. 2d 310 (Fla. 4th DCA 2001) .................................................................. 10

*Short v. Immokalee Water & Sewer Dist.*,
  165 F. Supp. 3d 1129 (M.D. Fla. 2016) ............................................................. 9, 10

*Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*,
   641 F. App'x 849 (11th Cir. 2016)........................................................................... 6

*Solis–Ramirez v. United States Dept. of Justice*,
   758 F.2d 1426 (11th Cir.1985)............................................................................... 4

*Sony Music Entm't, Inc. v. Glob. Arts Productions*,
   45 F. Supp. 2d 1345 (S.D. Fla. 1999)................................................................... 22

*Supinger v. Virginia*,
   167 F. Supp. 3d 795 (W.D. Va. 2016) ................................................................. 11

*Thomas v. Hosp. Bd. of Dirs. of Lee Cnty.*,
   41 So. 3d 246 (Fla. 2d DCA 2010) ........................................................................ 9

*Venture Assoc. Corp. v. Zenith Data Sys. Corp.*,
   987 F.2d 429 (7th Cir.1993)............................................................................... 3, 4

*Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*,
   912 F. Supp. 1549 (S.D. Fla. 1996)........................................................................ 9

*Wood v. Acordia of W. Virginia, Inc.*,
   217 W. Va. 406, 618 S.E.2d 415 (2005) ............................................................... 7

*Wreal, LLC v. Amazon.com, Inc.*,
   840 F.3d 1244 (11th Cir. 2016)........................................................................... 22

## Statutes

18 U.S.C. § 1951(b)(2) .......................................................................................... 13
18 U.S.C. § 1961(1) ........................................................................................ 13, 14
18 U.S.C. § 1964(a), (c) ......................................................................................... 14
42 U.S.C. § 1981.................................................................................................... 19
42 U.S.C. § 2000e.................................................................................................... 4
42 U.S.C. § 2000e-5 ........................................................................................ 14, 15
42 U.S.C. § 12102(2) ............................................................................................ 16
Fla. Stat. § 760.11 ................................................................................................. 15
Fla. Stat. § 836.05 ................................................................................................. 13
Florida Statute § 542.335 ........................................................................................ 6

## Rules

Rule 12(b)(6).......................................................................................................... 3
Rule 12(f) .......................................................................................................... 1, 25
Rules 12(b)(1) ......................................................................................................... 1

Defendants move pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint (the "SAC") with prejudice. Pursuant to Rule 12(f), Defendants further move to strike certain frivolous allegations in the SAC that the parties had agreed Plaintiff would voluntarily excise lest Defendants file a Rule 11 motion for sanctions. Plaintiff has breached that agreement and only partially removed these.

## INTRODUCTION

Plaintiff is a former surgical resident at MSMC who was terminated during her third year because of longstanding issues with her professionalism and communication skills—namely, her demeaning attitude towards other residents and patients, as well as patient safety concerns. Despite Defendants providing her every opportunity to succeed as a surgical resident, Plaintiff failed to improve her conduct following two academic probations and other efforts at remediation. Now, almost two years later, Plaintiff seeks to blame everyone at MSMC for her well-documented failures as a surgical resident. Even if these allegations are taken as true, the proffered claims must fail for the independently dispositive reasons set forth below.

According to the SAC, Plaintiff began her surgical residency with MSMC in June 2018. SAC ¶ 13. On March 11, 2020, Plaintiff entered into a written agreement with MSMC for her third year of residency, which would run from June 2020 until June 2021 (hereinafter the "GME Agreement"). *See Id*. ¶ 56, & Ex. B. Defendant Dr. Kfir Ben-David, MSMC's Chairman of Surgery and General Surgery Program Director, signed the GME Agreement on behalf of MSMC, but is not a party to that agreement. *Id.*, Ex. B.

In January 2021, Defendants allegedly "forced" Plaintiff's resignation from the residency program. SAC ¶ 31. She alleges, without explanation, that all disciplinary actions taken against her during her residency, leading to her resignation, were designed to "harass" and "retaliate" against her. *Id*. ¶¶ 12, 30-31. She also alleges that during her employment at MSMC she was subject to discrimination on the basis of gender and an asserted disability (ADHD). Plaintiff contends that she voiced concerns about alleged disparate gender treatment in the program at unspecified times to unspecified individuals. *Id*. ¶¶ 17, 20, 21, 23, 26. Plaintiff alleges that she timely exhausted her administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and timely pursued her statutory claims in Court. *Id.* ¶ 53. Plaintiff attaches correspondence with an EEOC enforcement supervisor as purported proof of her satisfaction of this condition precedent. *Id.*, Ex. D.

1

Plaintiff alleges that following her resignation, Defendants attempted to "extort" and "blackmail" her by withholding her "Completion Documents" (which show her completion of two years in the program) unless Plaintiff signed a release. *Id.* ¶¶ 33-34. Plaintiff claims that the Hospital has since provided her with the Completion Documents but only in response to this litigation and her complaint to the Accreditation Council for Graduate Medical Education ("ACGME", discussed further *infra*). *Id.* ¶ 36.

Plaintiff contends that in July 2021, she received an offer for a house surgeon position at Mount Sinai Beth Israel in New York City ("Beth Israel"). *Id.* ¶ 42. She alleges her application for clinical privileges at Beth Israel was denied because Dr. Ben-David did "not provide a reference, or would only provide defamatory comments about her." *Id.* ¶¶ 41-42. She alleges that Defendants' actions have "effectively ended [her] career as a physician." *Id.* ¶ 50. Plaintiff alleges nineteen substantive (and often overlapping) claims and three claims for injunctive relief.

Central to many of Plaintiff's claims is the suggestion that Defendants wrongfully withheld certain documents from her to which she was legally entitled following her termination from the Program (including a so-called recommendation or "Program Director letter"). These allegations were also the gravamen of her motion for preliminary injunction, of which Magistrate Judge Reid recently recommended denial. *See* Report and Recommendation (July 17, 2023), ECF No. 113. Unable to discern in Plaintiff's pleadings or initial briefing the source of the legal right supporting entry of an injunction, Judge Reid nevertheless gave Plaintiff the opportunity to further brief – directly and concisely – this dispositive issue.

Yet, nowhere in Plaintiff's 20-plus pages of supplemental briefing did she address this threshold issue, but rather recycled old allegations and other off-point arguments. *See* ECF No. 94. Thus, Plaintiff has had four opportunities to point to a legal right or other authority supporting her central legal theory underpinning her complaint and request for injunction, that is, her entitlement to the claimed documents from MSMC. She was unable to do so in her opening brief, reply brief, supplemental memorandum and reply, and during the in-person hearing held by Magistrate Judge Reid on June 21, 2023. ECF Nos. 39, 74, 94, & 99.

For this and other reasons discussed *infra*, Judge Reid recommended denial of Plaintiff's motion for injunctive relief. Judge Reid concluded: "Plaintiff … points to no specific language [under ACGME requirements] showing that Mount Sinai has a duty to provide Plaintiff with a Program Director letter authored by an individual of her choice. Critically, Plaintiff fails to show

that accreditation programs like the ACGME may be enforced by residents under a third-party beneficiary theory." ECF No. 113, p. 6 (internal citations omitted). Judge Reid also concluded that Plaintiff failed to demonstrate actual or imminent harm "even if her allegations were proven true," and that the balance of equities and public policy favored denial of her motion. *Id.*, pp. 7-9. Plaintiff has objected to the Report and Recommendation, but notably does not challenge this central conclusion. *See* ECF No. 127.

Judge Reid's conclusions of law bear on the instant Motion to Dismiss in several ways. First, since Plaintiff's breach of contract claims (Counts I and II) rely on her asserted entitlement to the so-called Program Director letter or other "Completion Documents," it must fail absent any legally cognizable right. Plaintiff's RICO "extortion" claim (Counts IX) similarly cannot stand as Defendants' alleged withholding of a recommendation letter or other documents cannot serve as a required "predicate offense" to sustain the claim – that is, withholding documents to which Plaintiff was not legally entitled cannot be a violation of state or federal law. And finally, Plaintiff's claim for "permanent" injunctive relief (Count XXII) must fail for the same reason her request for preliminary relief failed: want of a clear legal right and failure to satisfy *any* of the remaining elements required to obtain an injunction.

Judge Reid's careful and reasoned conclusions of law are at least instructive of the myriad deficiencies in the SAC, and at best, outright dispose of these claims.

## ARGUMENT

### I.    Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Albright v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 1321, 1325–26 (S.D. Fla. 2017). To survive such a motion, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

It is well-settled that when considering a motion to dismiss, a court may consider not only the pleadings, but also the exhibits attached thereto. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). A court may consider documents referred to in the complaint, and doing so will not convert the motion to one for summary judgment. *See Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1369 (11th Cir.1997) (*citing Venture Assoc. Corp. v. Zenith Data Sys.*

*Corp.,* 987 F.2d 429, 431 (7th Cir.1993) (citations omitted)); *Solis–Ramirez v. United States Dept. of Justice,* 758 F.2d 1426, 1430 (11th Cir.1985).

## II.   The Breach of Contract Claims (Counts I and II) Fail on Multiple Grounds

In her SAC, Plaintiff advances breach of contract claims against Dr. Ben-David individually (Count I) and MSMC (Count II). The counts are virtually identical and the grounds for dismissal asserted below apply to both.

*The Claim is Preempted.* Plaintiff alleges that Defendants breached a contractual obligation to "provide a harassment free work environment for [Plaintiff] to perform her duties as [a] Resident Physician, pursuant to Paragraph 6 of the [GME Agreement]." SAC. ¶ 74. As explained further below, Plaintiff's allegation is that the Hospital failed to enforce its EEO policy. Even if true, which it is not, that claim is preempted by federal law. Section 6 of the GME Agreement states, in pertinent part:

> Mount Sinai Medical Center is committed to Equal Employment Opportunity (EEO). Discrimination on the basis of a person's race, religion, national origin, age, disability, veteran status, marital status, sex, or sexual orientation, or any other basis protected by federal, state or local law, including verbal or physical harassment on the basis of any of the above characteristics, is prohibited and will not be tolerated. Such prohibited harassment consists of unwelcome sexual advances or comments; ethnic jokes; ethnic, racial, religious or age-related slurs; and similar conduct.

*Id.*, Ex. B, § 6.

To state it most favorably for Plaintiff, Plaintiff's allegation fails to recognize: (i) the law is clear that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (and its state law equivalent) provides the exclusive remedy for unlawful discrimination or harassment in the workplace, *see Carver v. Casey*, 669 F. Supp. 412, 417 (S.D. Fla. 1987); and (ii) an EEO policy contained within a contract does not give rise to an independent contractual obligation, *see Pineda v. PRC, LLC*, No. 1:11-CV-20894-JKL, 2011 WL 3022564, at *4 (S.D. Fla. July 22, 2011).

In addition, as explained further below, Plaintiff's discrimination, retaliation and harassment claims are also time-barred. Thus, having forfeited her purported remedy under Title VII, Plaintiff cannot now attempt to disguise the same allegations as a breach of contract: "The fact that plaintiff is precluded from asserting his Title VII claims … does not permit the court to

substitute breach of contract claims for that exclusive remedy." *Casey*, 669 F. Supp. at 417 (internal citations omitted).[1]

*No Private Right of Action*. Plaintiff's reference and reliance upon the Accreditation Council for Graduate Medical Education ("ACGME") guidelines fails to state a personal legal cause of action. Plaintiff alleges that Defendants' alleged failure to provide a hostile-free work environment was "in violation of the obligations imposed upon the Defendants by the [ACGME] and all Residency Programs." SAC ¶ 65. A fatal flaw to this stated claim by Plaintiff is that there is no private right of action for an individual resident to enforce ACGME guidelines and therefore it presents no justiciable controversy. As clearly stated in Judge Reid conclusion of law, the ACGME guidelines do not provide any relief or remedy that "may be enforced by residents." ECF No. 113, p. 6.

One court explained how issues arising under ACGME standards simply do not present a justiciable controversy between private parties, which Judge Reid cited and recognized in her Report and Recommendation (ECF No. 113, at 6):

> [S]tandards that ACGME has established for all of its accredited institutions ... are akin to regulations established by an administrative body, *rather than a contract governing a relationship between two entities*. If [the sponsoring institution] fails to substantially comply with ACGME's requirements, ACGME can revoke its accreditation; that would not be a "breach" of any "contract" by [the sponsoring institution], but rather a decision by ACGME, as a regulatory institution, that [the residency program] is no longer entitled to accreditation.

*See Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*, No. 3:14-cv-3577-CMC, 2016 WL 3079466, at \*49 (D.S.C. June 1, 2016), *aff'd sub nom. Irani v. Palmetto Health*, 767 F. App'x. 399 (4th Cir. 2019) (emphasis added); *see also Rice v. St. Louis Univ.*, 4:19-CV-03166 SEP, 2020 WL 3000431, at \*5 (E.D. Mo. June 4, 2020) (declining to find that ACGME requirements created an "implied term" in a residency contract).

---

[1] Plaintiff also alleges that Defendants breached "([Section] 7) Accommodation for Disabilities; [and] ([Section] 9) Clinical Experience and Education Hours Policy" of the GME Agreement. SAC ¶ 73. Beyond conclusory reference to these contractual provisions, nowhere does the SAC allege or explain what actions and/or omissions by Defendants constituted breaches of these provisions. Absent Plaintiff's identification of any specific purported breach, the claims must fail. *See Santander Consumer USA Inc. v. Sandy Sansing Nissan Inc.*, 3:22CV8084-MCR-HTC, 2022 WL 17478257, at \*2 (N.D. Fla. Sept. 21, 2022) (dismissing breach of contract claim where there was "not even one clear example of a … provisions together with a description of facts that show its breach ….").

Remarkably and with no citation to authority, Plaintiff claims that MSMC's act of providing her with the "Completion Documents" (Plaintiff's terminology, not Defendants') during the pendency of this litigation "is further evidence that the Surgical Residency Program, Defendants, and the GME Agreement provisions are subject to ACGME oversight and must abide by ACGME Guidelines." SAC ¶ 79. But there is no authority that an extracontractual accommodation Defendants provided to Plaintiff would somehow rewrite her GME Agreement notwithstanding its clear terms that do not incorporate such guidelines. *Cf. Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690, 46 N.E.3d 24, 40 (2016) (incorporating ACGME's nondiscrimination policy by clear reference thereto).

*The Purported Restrictive Covenant Is Not a Breach*. Plaintiff also alleges that Defendants attempted "to force her into signing a General Release … [which] constituted a breach" of the GME Agreement. SAC ¶ 76. But by her own allegations, any purported "restrictive covenant" was presented to Plaintiff *after* her "termination" and "constructive discharge" from the program in January 2021. *Id.* ¶¶ 9, 33. Section 1 of the GME Agreement states (emphasis added): "This appointment will be for a one-year period commencing on June 24, 2020, and terminating on June 23, 2021 *unless terminated as hereinafter stated*." Section 12 of the GME Agreement enumerates actions which may lead to early termination of the GME Agreement. Crucially, Section 17 states: "Upon termination of the [GME Agreement] by any of the mechanisms outlined above, *the only obligation of* [MSMC] shall be to pay [Plaintiff's] stipend earnings which may have accrued hereunder up to the date of such termination or suspension." *See Id.*, Ex. B (emphasis added).

It is well-established that termination of an agreement releases the parties from their *substantive* obligations thereunder, while only structural provisions (such as provisions governing arbitration, forum selection, and choice of law) may survive. *Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*, 641 F. App'x 849, 857 (11th Cir. 2016). MSMC's alleged obligation to not require Plaintiff to enter a "restrictive covenant" during her residency is not a "structural" provision that survives termination and may later constitute a breach; instead, MSMC's only surviving obligation is to "pay [Plaintiff's] stipend earnings which may have accrued hereunder." SAC, Ex. B ¶ 17.

In any event, there is nothing in Florida Statute § 542.335 which indicates that the statute applies to covenants beside non-competes, non-solicitations, and non-disclosure agreements. *Id.* (Florida statute authorizing restrictive covenants as an exception to unlawful restraints on trade). Further, courts in other jurisdictions are in accord that a release agreement is not a recognized

"restrictive covenant." *See Atl. Tr. Co. v. Graver*, 2-09-0589, 2011 WL 10109585, at *6 (Ill. App. Ct. Jan. 31, 2011) (finding that release agreement was "not a restrictive covenant in and of itself"); *Albany Bone & Joint Clinic, P.C. v. Hajek*, 612 S.E.2d 509, 512 (Ga. Ct. App. 2005) ("In Georgia, there are four basic types of restrictive covenants: noncompetition, nonsolicitation of customers, nonrecruitment of employees, and nondisclosure of confidential information."); *Wood v. Acordia of W. Virginia, Inc.*, 217 W. Va. 406, 408, 618 S.E.2d 415, 417 (2005) ("[T] here are two types of restrictive covenants …: (1) covenants not to compete and (2) non-piracy provisions, also known as non-solicitation provisions or hands-off provisions."); *Hilb, Rogal & Hamilton Co. of Arizona v. McKinney*, 946 P.2d 464, 467 (Ariz. Ct. App. 1997) (same).

*Dr. Ben-David is Not a Contracting Party*. In addition, Dr. Ben-David was not a party or signatory to the GME Agreement in his personal capacity, and thus there is no basis to assert a breach of contract claim against him. *See, e.g.*, *Noventa Ocho LLC v. PBD Properties LLC*, 284 F. App'x 726, 728 (11th Cir. 2008). Plaintiff herself pleads this basic tenet of contract law: "Dr. Ben-David's signature to the GME Agreement *was endorsed and assumed by MSMC* when Dr. Finkelstein joined the Surgical Residency Program." SAC ¶ 58 (emphasis added). Absent alleged fraud or some other basis for piercing the corporate veil, Dr. Ben-David did not, as a matter of law, assume liabilities in his personal capacity by signing the GME Agreement *on behalf of MSMC*. *See Fed. Deposit Ins. Corp. v. VRG Appraisels, Inc.*, 8:12-CV-1814-T-35TGW, 2013 WL 12156110, at *2 (M.D. Fla. Aug. 13, 2013) ("Akins might have been subjected to personal liability for contractual breaches if Plaintiff had alleged that the corporate veil should be pierced or the corporate entity ignored.").

*No Exhaustion of Contractual Remedies*. Last, this Court is without jurisdiction to entertain any claim related to termination of the GME Agreement. Florida law requires physicians challenging purported adverse actions to exhaust their administrative remedies prior to seeking relief in court. *Desai v. Lawnwood Med. Ctr., Inc.*, 219 So. 3d 869, 871-72 (Fla. 4th DCA 2017), *aff'd*, 260 So. 3d 218, 219 (Fla. 2018); *Keller v. Lawnwood Med. Ctr., Inc.*, 219 So. 3d 879 (Fla. 4th DCA 2017); *City of Miami v. Fraternal Order of Police Lodge No. 20 of City of Miami*, 378 So. 2d 20, 23 (Fla. 3d DCA 1979). Courts in multiple jurisdictions with similar law have applied the exhaustion requirement to actions brought by medical residents. *See, e.g., Nemazee v. Mt. Sinai*

*Med. Ctr.*, 564 N.E.2d 477, 482 (Ohio 1990); *Knapik v. Mary Hitchock Mem'l Hosp.*, No. 5:12-cv-175, 2014 WL 12717446, at *3 (D. Vt. May 30, 2014).[2]

Here, Plaintiff had the right to appeal her termination through an administrative process. That right is detailed in the GME Agreement, Section 12(4), which states that residents subjected to disciplinary action, including termination, "may petition the Chief Executive Officer of [MSMC] for an appeal hearing before a Disciplinary Hearing Committee ...." SAC, Ex. B. Under this process, the Disciplinary Hearing Committee may later reverse a termination decision. *Id.* Ex. B, § 12(4).

Plaintiff concedes in the SAC that these contractual remedies existed and were available to her (SAC ¶ 64), and in point of fact, Plaintiff had been informed of these remedies but never used them.[3] Plaintiff's allegation that she was "intimidated" against using these remedies is of no moment. *See Dinehart v. Town of Palm Beach*, 728 So. 2d 360, 362 (Fla. 4th DCA 1999) ("Appellants do not dispute that they did not exhaust their administrative remedies, instead attacking the adequacy and flaws of the remedy available under the town's ordinance. Their conclusions that they cannot get a fair hearing and that the ordinance does not comply with the act are without merit."). At bottom, the SAC fails to point to any exception to exhaustion – such as exigent circumstances – that would justify Plaintiff coming to Court prior to availing herself of her contractual remedies (indeed, Plaintiff waited more than 18 months following her termination to file suit, *see* SAC ¶¶ 31-32). *See also Florida Carry, Inc. v. Thrasher*, 315 So. 3d 771, 772 (Fla. 1st DCA 2021), *reh'g denied* (May 4, 2021). Plaintiff's failure to exhaust her administrative remedies renders this claim (and lawsuit) subject to dismissal.

---

[2] Plaintiff's failure to exhaust her administrative remedies presents a jurisdictional defect. *Am. Acad. of Dermatology v. Dep't of Health & Human Services*, 118 F.3d 1495, 1497 (11th Cir. 1997).

[3] Defendants attach the Declaration of Robert C. Goldszer, M.D., the Designated Institutional Official for MSMC's residency programs, who attests that no petition from Plaintiff was ever received by MSMC to appeal her termination. *See* Exhibit 1. Declarations and other materials outside the pleadings may be considered by courts to determine whether subject matter jurisdiction exists. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999) ("Factual attacks, ... challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." (internal quotation marks omitted)).

### III.    Plaintiff's Claims of Intentional Infliction of Emotional Distress (Counts III and IV) Fail as a Matter of Law

Plaintiff again asserts claims separately against Dr. Ben-David and MSMC, alleging identical "misconduct." Plaintiff specifically alleges she was the "victim of a relentless campaign to discredit her," which was "shocking, atrocious, and utterly intolerable in civil society." SAC ¶¶ 86-87. Yet, Plaintiff alleges no independent tortious conduct on Defendants' part to support Count III and IV beyond those allegations purporting to support her discrimination, retaliation, harassment, and other claims—and certainly nothing sufficiently "outrageous" to make out a claim. Black letter law mandates the dismissal of these counts at the pleading stage.[4]

The exceedingly high pleading standard for this tort was explained in *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 956 (Fla. 3d DCA 2017). The Court found that while the conduct at issue may have been "wrong" and "tortious," it did not rise to the level of "outrageous," drawing a helpful comparison with a pair of Florida cases, *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007)  and *Thomas v. Hosp. Bd. of Dirs. of Lee Cnty.*, 41 So. 3d 246 (Fla. 2d DCA 2010) , which involved "matters of life-and-death." *Id.* at 956.

Here, the alleged "campaign to discredit" Plaintiff is a far cry from the "matters of life-and-death" illustrated in the *Ward* case. *Id.* at 955. Accordingly, this Court must find, as a matter of law, that these actions, even assuming their truth, do not rise to the level of "outrageous" to sustain the tort. Further and equally important, beyond Plaintiff's allegations being insufficiently outrageous on their face, even colorable allegations of a hostile work environment almost *never* are sufficiently outrageous to sustain this tort. *Cf. Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1559 (S.D. Fla. 1996) (collecting cases from this Court illustrating the high bar to allege conduct to sustain the tort); *Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d

---

[4] The tort of intentional infliction of emotional distress comprises four elements: "(1) [T]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Clemente v. Horne*, 707 So. 2d 865, 866 (Fla. 3d DCA 1998) (alterations in original). It is well-established that the question of "outrageousness" must be determined by the trial court, as a matter of law, and may warrant dismissal of the claim based on the pleadings. *LeGrande v. Emmanuel*, 889 So. 2d 991, 995 (Fla. 3d DCA 2004).

1129, 1152–53 (M.D. Fla. 2016); *Ingram v. Butter*, No. 14-21392-CV-Williams, 2015 WL 9911314, at *5 (S.D. Fla. Dec. 23, 2015). Beyond her description of a few fleeting comments and use of other charged adjectives in her pleading (e.g., "lewd," "obscene," and "sexual"), the claim is conspicuously short on alleged conduct that rises to the level of "outrageous." *Cf. Vernon*, 912 F. Supp. at 1559 (collecting cases from this Court illustrating actionable conduct such as "repeated groping and kissing, offensive touching and other physical abuse and attacks, as well as repeated verbal licentiousness").

## IV.    Plaintiff's Tortious Interference Claims (Counts V and VI) Fail as a Matter of Law[5]

Plaintiff alleges that she had "received an offer from [Beth Israel] in New York," and that her necessary (but not yet approved) request for "credentials" and "medical staff privileges" from Beth Israel was still pending. SAC ¶¶ 42, 99. She alleges that Dr. Ben-David "either would not provide a reference or provided defamatory comments about her to [Beth Israel], resulting in [Beth Israel] rescinding its previous offer for that position." *Id.* The claims against MSMC and Dr. Ben-David fail for two reasons.

First, a claim of tortious interference requires "a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Sarkis v. Pafford Oil Co., Inc.*, 697 So. 2d 524, 526 (Fla. 1st DCA 1997) (emphasis added) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). Generally, a "mere offer" to enter a business relationship "does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship." *Ethan Allen, Inc.*, 647 So. 2d 812 at 814 (Fla. 1994) (citing *Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc.*, 361 So. 2d 769, 772 (Fla. 4th DCA 1978), *cert. denied*, 368 So. 2d 1370 (Fla. 1979)); *see also Int'l Sales & Serv., Inc. v. Austral Insulated Products, Inc.*, 262 F.3d 1152, 1156 (11th Cir. 2001) (applying *Ethan Allen*).

---

[5] In Florida, the elements of a claim for tortious interference are: "(1) the existence of a business relationship between the plaintiff and a third person, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant which induces or otherwise causes the third person not to perform; and (4) damage to the plaintiff resulting from the third person's failure to perform." *Seminole Tribe of Fla. v. Times Publ'g Co., Inc.*, 780 So. 2d 310, 315 (Fla. 4th DCA 2001).

Here, Plaintiff alleges that she received only a *conditional offer* for a part-time position pending future approval of her credentialing application. That does not constitute an "actual and identifiable understanding" between Plaintiff and Beth Israel that would likely have been completed absent Defendants' alleged interference. By Plaintiff's own allegations, her offer was conditioned and contingent upon other occurrences. *See Marino v. Phaidon Int'l, Inc.*, No. 22-14027-CV-Cannon/McCabe, 2022 WL 1913266, at *5 (S.D. Fla. May 17, 2022), *report and recommendation adopted*, 2022 WL 1908977 (S.D. Fla. June 3, 2022) (dismissing tortious interference claim where third party "withdrew its job offer because Plaintiff never completed his degrees"); *Supinger v. Virginia*, 167 F. Supp. 3d 795, 822 (W.D. Va. 2016) (conditional offers of employment insufficient to state a claim of tortious interference which requires a "specific, existing contract or business expectancy or opportunity"). Stated simply, Plaintiff's prospective business relationship with Beth Israel was, at best, speculative and thus not actionable as a matter of law.

Second, communications between former and prospective employers regarding an applicant's performance are privileged. *See Boehm v. Am. Bankers Ins. Group, Inc.*, 557 So. 2d 91, 95 (Fla. 3d DCA 1990); *see also Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984). To overcome this privilege, a plaintiff must allege facts showing that the *sole* reason for the communications was malicious. *Boehm*, 557 So. 2d at 95. A trial court may determine both the existence of privilege and whether the defendant acted with malice at the motion to dismiss stage. *E.g.*, *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1267–68 (S.D. Fla. 2004). Here, Plaintiff only alleges Defendants' generalized animosity towards women in the workplace and the vague and conclusory allegation of "bad faith" and a desire to "discredit" Plaintiff. *See, e.g.*, SAC ¶ 16. Such conclusory assertions, unsupported by *any* facts from which one could infer that malice was the sole reason for the communication, are insufficient to plead this element of the claim. *See Allison v. Parise*, No. 8:12-CV-1313-T-17EAJ, 2013 WL 877111, at *2 (M.D. Fla. Mar. 8, 2013) ("A conclusory allegation unsupported by factual allegations that statements were made maliciously is not an allegation of express malice."); *see also Demby v. English*, 667 So. 2d 350, 354 (Fla. 1st DCA 1995).[6]

---

[6] Plaintiff cannot elaborate on these allegations to demonstrate "malice" for good reason: she *expressly authorized* Beth Israel to contact MSMC regarding her credentialing application, and also released MSMC and Dr. Ben-David from "any liability whatsoever in providing such

Third, Plaintiff's allegations fail to demonstrate with particularity the element of causation, including any specific allegations as to "where and when the alleged interference occurred." *See Am. Seafood, Inc. v. Clawson*, 598 So. 2d 273, 274 (Fla. 3d DCA 1992). The SAC merely alleges that Plaintiff received an "offer" from Beth Israel in July 2021, that Dr. Ben-David at some unspecified time thereafter made "disparaging" representations about Plaintiff's professionalism to some unspecified person, and that at some unspecified time after that, Beth Israel "rescinded" its offer.[7] SAC ¶ 99.

## V.      Plaintiff's Claims of Defamation (Counts VII and VIII) Fail as a Matter of Law

Plaintiff alleges that she was also "defamed" by both Dr. Ben-David (individually) and MSMC by making "misrepresentations pertaining to [Plaintiff's] lack of professionalism or abilities as a prospective resident or medical professional to residency programs or prospective employers." SAC ¶¶ 115, 121. Plaintiff attaches to the SAC several purportedly "positive" recommendations to show that anything uttered by Dr. Ben-David to the contrary must have been false and defamatory. *Id.*, Ex. I. But Plaintiff still does not identify *a single false statement of fact* provided by either Defendant to Beth Israel or to any other residency program or third party. This is fatal. Moreover, it is manifestly unfair to permit these claims to go forward because the allegations provide Defendants with no notice of the specific "defamatory" statements made. *See Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So. 2d 1025, 1028 (Fla. 3d DCA 1981).

And, as explained above, communications between Defendants and Beth Israel were privileged as a matter of law absent allegations that Defendants were motivated exclusively by malice, which Plaintiff cannot allege. *See Nodar*, 462 So. at 809; *supra* n. 6.

---

information" requested by Beth Israel. While Defendants acknowledge this information exists outside the pleading, it is referenced here to provide further context for Plaintiff's failure to satisfy her pleading burden—namely, she cannot allege facts to support malice because she invited the alleged tortious communication. *See* Exhibit 2.

[7] While not before this Court, there is ample record evidence demonstrating the remoteness in time and various superseding incidents between any claimed "interference" by Dr. Ben-David and Plaintiff's losing her "offer" at Beth Israel – points adduced by both parties recently before Judge Reid at the hearing on Plaintiff's motion for preliminary injunction. Predictably, in light of this record, the allegation supporting this claim are intentionally threadbare in the SAC.

## VI.    **Plaintiff's Claim Pursuant to RICO (Count IX) Fails**

In her SAC, Plaintiff has re-tooled her ill-conceived common law "extortion" claim as a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim. Even in this new packaging, Plaintiff's allegations fail to state a claim as a matter of law. To make out a civil RICO claim, Plaintiff must allege that Defendants "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (quotation marks omitted). To meet the "enterprise" requirement, Plaintiff "must establish a distinction between the defendant 'person' and the 'enterprise' itself." *Id.* at 1355. And to demonstrate the requisite "racketeering activity," Plaintiff must allege "that the defendants committed two qualifying predicate acts," *i.e.*, "a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004).

Plaintiff's RICO claim fails for two independent reasons. First, "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation." *Ray*, 836 F.3d at 1357. Here, the only "enterprise" that Plaintiff alleges is the "common unit" of MSMC and Dr. Ben-David. *See* SAC ¶ 134. MSMC and Dr. Ben-David, as a defendant corporation and an employee "carrying on the normal work of the corporation," cannot constitute an enterprise for purposes of RICO. *See Ray*, 836 F.3d at 1356. To interpret RICO so broadly "would turn every claim of corporate fraud into a RICO violation." *Id.* Plaintiff's failure to demonstrate an enterprise is fatal to her claim.

Second, Plaintiff has not adequately alleged that Defendants committed extortion or any other qualifying predicate acts. To make out a claim for extortion sufficient to support a RICO claim, Plaintiff must show a violation of the federal Hobbs Act (18 U.S.C. § 1951(b)(2)). *See Raney*, 370 F.3d at 1087.[8] Extortion under the Hobbs Act requires "not only the deprivation but also the acquisition of property." *Scheidler v. Nat'l Org. for Women*, 537 U.S. 393, 404 (2003). Plaintiff nowhere alleges that Defendants attempted to acquire some property from her through the purported general release so there is no extortionate act under federal law. *See id.* at 405 ("such

---

[8] Plaintiff does not identify any Florida extortion law that would qualify as a RICO violation. But to the extent Plaintiff relies on Florida's criminal extortion statute (Fla. Stat. § 836.05), her claim still fails because she has not sufficiently pled an "alleged threat or how the threat was malicious." *See Gibson v. Nocco*, No. 8:20-cv-2992-KKM-SPF, 2021 WL 4033893, at *6 (M.D. Fla. Sept. 3, 2021).

acts did not constitute extortion because petitioners did not obtain respondents' property") (internal quotation marks omitted); *see also Crawford's Auto Cent., Inc. v. State Farm Mut. Auto. Ins. Co.*, 269 F. Supp. 3d 1344, 1355 (M.D. Fla. 2017) ("None of these alleged deprivations satisfy the requirements of the Hobbs Act, because the Defendants never obtained the thing(s) of which the Plaintiffs were allegedly deprived."). Without a sufficient predicate act, Plaintiff's RICO claim necessarily fails.

Finally, as Judge Reid concluded in her Report and Recommendation, Plaintiff has no legal right to the documents that Defendants allegedly withheld to "extort" a general release from her. ECF No. 113, p. 6. Section 1964 is clear that civil remedies under RICO must be based on a "violation of section 1962 of this chapter." *See* 18 U.S.C. § 1964(a), (c). Absent any legal entitlement to the documents allegedly withheld, or any prohibition against Defendants "withholding" them, there is no way Plaintiff could ever establish any "violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)" (*Rainey, supra*) based on the facts alleged. Accordingly, there can be no underlying predicate offenses to support her claim. *Cf. Cmty. State Bank v. Strong*, 651 F.3d 1241, 1259 (11th Cir. 2011) (where bank was not subject to state usury laws, there could be no claim in RICO based on usury racket for want of underlying predicate offenses).

## VII.    Plaintiff's Claims Pursuant to Title VII, the FCRA, and the ADA (Counts X-XVI) Are Time-Barred and Independently Fail

Plaintiff alleges discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Florida Civil Rights Act of 1992 ("FCRA"), and the Americans with Disabilities Act ("ADA"), and a hostile work environment under Title VII. The claims fail for several independent reasons.

*Plaintiff's Claims Are Time-Barred*. Plaintiff points to two operative dates in her SAC when purported unlawful activity occurred: (i) her alleged "forced" resignation on January 13, 2021, and (ii) the date she received an "offer" from Beth Israel for a house surgeon position, in July 2021. SAC ¶¶ 31, 42. A plaintiff wishing to sue under Title VII, the FCRA, and/or ADA has 300 days from the last "unlawful employment practice" to file a charge with the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 2000e-5. Plaintiff filed a charge with the EEOC on July 22, 2022, thus placing both alleged events in the SAC outside the

300-day statute of limitations.[9] Plaintiff alleges no other events or activity within the 300-day limitations period.

By apparent sleight of hand or (at best) a misapprehension of the law, Plaintiff contends that her claims are timely because she commenced this lawsuit within the time prescribed by Fla. Stat. § 760.11. SAC ¶ 138. But the statute cited by Plaintiff governs the time for filing suit following resolution of a charge submitted to an administrative agency (such as the EEOC or state FCHR), not the time for filing a charge, which 42 U.S.C. § 2000e-5 governs. This latter deadline under 42 U.S.C. § 2000e-5 establishes the operative statute of limitation. While Plaintiff's lawsuit may have been timely commenced as measured from the date she submitted a charge to the EEOC, her charge was untimely filed with the EEOC in the first instance, thus precluding all of her Title VII, FCRA, and ADA claims.[10]

*No Protected Activity Alleged*. Plaintiff's claims of retaliation (i.e., Counts XII, XIII, and XV) fail because she has not alleged she engaged in any protected activity beyond the most vague, unspecific, and conclusory allegations that she "voiced her concerns about the disparate treatment of female and male residents" (SAC ¶ 20), that she "reported" alleged unprofessional remarks made to female residents (*id.* ¶ 21) and "complain[ed] for how female residents were treated" (*id.* ¶ 26). For each complaint, Plaintiff does not specify to whom she complained, when she complained, and the substance of her complaints.[11] These allegations fall well short of "protected activity" under the statutes. *See Alexander v. Prendergrast*, No. 5:18-cv-519-Oc-30PRL, 2019 WL

---

[9] The EEOC made the same determination on October 27, 2022, dismissing Plaintiff's July 22, 2022 charge as time-barred and issuing a Dismissal and Notice of Right to Sue. On January 17, 2023 (the same day that this action was removed to this Court), the EEOC decided to reopen its investigation on the merits, for reasons not explained in its Notice of Revocation. Both EEOC notices are attached together as Exhibit 3.

[10] Exhibit D to the SAC – an email from the EEOC to Plaintiff's counsel – states that, while Plaintiff's charge was to be reopened for further investigation: "Please note that the allegations that will be investigated are those concerning retaliation through negative references. All other allegations the agency has review and has determined to be untimely." Thus, at worst, all allegations and claims based on incidents predating her termination from Mount Sinai are time-barred. The SAC appears to obscure the EEOC's central determination.

[11] To the extent Plaintiff attempts to provide more details about her purported "complaints" regarding sex discrimination, she relies upon Exhibit K to the SAC – an email chain that contains no reference whatsoever to any complaints or reports she made regarding discrimination.

10817143, at *9 (M.D. Fla. Jan. 24, 2019) ("[The] allegation is too conclusory and lacks any details about her complaint, to whom she complained, or when she complained. These are necessary facts needed to plead a protected activity and are relevant to determining whether the causation element of a retaliation claim is satisfied.").

*Inadequately Pled Claims under the ADA*. Plaintiff's ADA claims (Counts XIV and XV) are insufficiently pled. To sustain a cause of action under the ADA, a plaintiff must demonstrate, among other elements but at a minimum, that she was "disabled" and that she was "qualified" insofar she was able to perform the essential functions of her position with or without an accommodation. *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1226 (11th Cir. 2005). The ADA defines "disability" to include: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff's conclusory allegation that her ADHD constitutes a "disability" under the ADA does not make it so. SAC ¶ 18. Plaintiff has failed to specify how her purported ADHD substantially limited one or more major life activities beyond her commenting on the "nature of standardized tests such as the United States Medical Licensing Examination ("USMLE Step 1") and the ABSITE" (SAC ¶ 188), and further fails to specify how she was able to perform her essential functions as a surgical resident with or *without* the accommodation she identifies. The absence of these allegations is fatal to her ADA claims. *Harris v. Sch. Bd. of Broward Cnty.*, No. 11-62604-CIV, 2012 WL 882610, at *4 (S.D. Fla. Mar. 15, 2012).

*No Actionable Harassment*. Plaintiff does not allege facts demonstrating that her alleged harassment (Count XVI) was "severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010). To assess whether harassment objectively alters a plaintiff's terms and conditions of employment, courts consider: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). Teasing, offhand comments, and isolated incidents (unless extreme) will not amount to discriminatory changes in the terms and conditions of employment. *Id.* at 1245. Here, the conduct Plaintiff has alleged does

not rise to the level of actionable harassment—allegations that female residents were referred to as "baby" and "sweetheart" and "acting hormonal." SAC ¶ 21; *see also* Part III *supra*.

### VIII. Plaintiff Fails to State a Claim of Vicarious Liability (Count XVII) Against MSMC

To recap, all of Plaintiff's claims (tort or otherwise) against Dr. Ben-David fail as a matter of law: (i) absent contractual privity with Plaintiff, Plaintiff has no breach of contract claim against him; (ii) Plaintiff fails to state a viable RICO claim against either Defendant; (iii) Plaintiff's allegations of isolated workplace harassment do not, as a matter of law, rise to the level of "outrageous conduct" to sustain the tort of intentional infliction of emotional distress; (iv) Dr. Ben-David's alleged "interference" with Beth Israel's purported "offer" to Plaintiff constituted nonactionable and privileged communication between former and prospective employers; and (v) Plaintiff alleges no false statement of fact made by Dr. Ben-David, to any third party, to anchor a claim of defamation.

Absent any viable underlying tort claim against Dr. Ben-David, there is no legal basis to impute tort liability to MSMC as Dr. Ben-David's employer. *See Bickel v. City of Coral Springs*, No. 17-cv-60606-BLOOM/Valle, 2017 WL 2439078, at *5 (S.D. Fla. June 6, 2017) (citing *Laster v. City of Tampa Police Dep't*, 575 Fed. Appx. 869, 873 (11th Cir. 2014)).

### IX. Plaintiff's Negligent Supervision and Retention Claims (Counts XVIII and XIX) Fail

Florida law does not recognize claims for negligent supervision and negligent retention arising from an employee's purported sexual harassment, discrimination, or retaliation in the workplace. Under Florida law, "the underlying wrong allegedly committed by an employee in a negligent supervision or negligent retention claim must be based on an injury resulting from a tort which is recognized under common law." *See Freese v. Wuesthoff Health Sys., Inc.*, No. 6:06-cv-175-Orl-31JGG, 2006 WL 1382111, at *8 (M.D. Fla. May 19, 2006) (*quoting Scelta v. Delicatessen Support Servs., Inc.*, 57 F.Supp.2d 1327, 1348 (M.D. Fla. 1999)); *see also Gutman v. Quest Diagnostics Clinical Labs., Inc.*, 707 F. Supp. 2d 1327, 1332 (S.D. Fla. 2010) ("Thus, because the underlying injury in Count III and IV results from violation of the ADA, which is not a recognized common law tort, Plaintiff fails to state a claim for negligent supervision or training.").

Florida common law does not recognize causes of action for employment discrimination, retaliation, or sexual harassment in the workplace.[12] *See McElrath v. Burley*, 707 So. 2d 836, 839 (Fla. 1st DCA 1998) ("The claims of employment discrimination and retaliatory discharge raised by Ms. Burley did not exist at common law. Protection from employment discrimination and retaliatory discharge in Florida are statutory rights legislatively created in 1977.").

Plaintiff attempts to circumvent her forfeiture of Title VII, FCRA, and ADA remedies and resurrect these untimely claims by repackaging them as negligence-based torts. Plaintiff alleges MSMC acted "negligently" by placing and continuing to place employees under the supervision of its employee, Dr. Ben-David, who allegedly created a hostile work environment and discriminated against Plaintiff:

> Upon information and belief, several MCMC [sic] employees, including female physicians, nurses, and staff, have reported Dr. Ben-David to MSMC for inappropriate behavior *tantamount to discrimination and harassment*, only to later suffer retaliatory actions sanctioned by MSMC. Thus, MSMC negligently placed, and continued to place, employees, such as Plaintiff, under the supervision of a repeat offender when it either knew or should have known that Dr. Ben- David had the propensity *to create a hostile work environment due to continuous sexual harassment* of MSMC's female employees and other discriminatory practices.

SAC ¶¶ 226, 232 (emphasis added). It is well-established that these allegations are insufficient to state causes of action for negligent supervision or negligent retention as a matter of law. *See Harris v. Cellco P'ship*, No. 21-81129-CV-MIDDLEBROOKS/Matthewman, 2021 WL 8155331, at *3 (S.D. Fla. Dec. 29, 2021) (dismissing claims for negligent supervision and negligent retention based upon the failure to investigate and/or discharge harassers or act upon claims of employment discrimination because the underlying wrongful conduct – discrimination, harassment, and retaliation – did not consist of a common law tort); *Fernandez v. Bal Harbour Vill.*, 49 F. Supp. 3d 1144, 1153 (S.D. Fla. 2014) ("Florida does not recognize claims of retaliatory discharge and employment discrimination under common law. Thus, because the underlying injury with respect

---

[12] Plaintiff's attempt to tie her negligent supervision/retention claims to Defendants' alleged extortive conduct is also self-defeating, as the Florida common law recognizes no tort based on extortion. *See Bass v. Morgan, Lewis & Bockius*, 516 So. 2d 1011 (Fla. 3d DCA 1987) (("[W]e hold that no violation of the [criminal extortion] statute gives rise to a civil cause of action."). The claim is further vitiated by Judge Reid's conclusions in her Report and Recommendation, as Defendants' withholding of documents from Plaintiff did not deprive her of any right and thus could not have been wrong or inappropriate. ECF. No. 113, p. 6.

to Count Four involves claims that are not recognized common law torts, Plaintiff fails to state a claim for negligent retention.") (internal citation omitted); *Santandreu v. Miami-Dade Cnty.*, No. 10-24616-CIV-ALTONAGA/Simonton, 2011 WL 13136161, at *18 (S.D. Fla. Aug. 1, 2011), *aff'd*, 513 F. App'. 902 (11th Cir. 2013) (granting summary judgment on negligent retention and supervision claims because the plaintiff failed to allege the underlying wrongful conduct consisted of a common-law tort); *Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1030–31 (Fla. 1st DCA 2002) (affirming summary judgment on claims of negligent retention and negligent supervision based on the employer's "alleged actual or constructive knowledge of its employees' propensity to speak and act in a sexist, harassing, and retaliatory fashion").

Plaintiff's claims for negligent supervision and negligent retention arise from the same set of factual allegations giving rise to Plaintiff's Title VII and FCRA claims. Again, similar attempts to allege negligent supervision and negligent retention claims based on violations of Title VII and the FCRA have been rejected. *See Jackman v. 20th Judicial Circuit Court Admin.*, No. 2:19-cv-828-FtM-38MRM, 2020 WL 3895425, at *4 (M.D. Fla. July 10, 2020) ("Jackman maintains Wilsker failed to correct other supervisors and employees when they harassed and discriminated against him in violation of Title VII, 42 U.S.C. § 1981, and the FCRA. These statutes are not common law causes of action recognized by Florida law. Because Jackman does not allege an underlying injury based on a common law tort, his state negligence claims cannot move forward.") (internal citations omitted). At bottom, Plaintiff fails to allege an underlying common law tort necessary to support either cause of action.

## X.   Plaintiff Fails to State a Claim for Permanent Injunctive Relief (Count XXII)

Plaintiff's claims for "emergency" and "preliminary" injunctive relief must fail given the failure of her motion for same. ECF No. 113. For the same reasons, her claim for permanent injunctive relief (Count XXII) must also fail. In her SAC, Plaintiff seeks a permanent injunction (emphasis added):

> *prohibiting* Dr. Ben-David from providing any information to Third Parties relating to the performance by Dr. Finkelstein as a General Surgery Resident at Mount Sinai and *requiring* another representative of MSMC to be agreed upon by Plaintiff and MSMC, to provide such information in a fair and objective way.

SAC ¶¶ 240, 260, 279.

This request cannot stand as a matter of law. First, because injunctive relief is a remedy, not a cause of action, the absence of any cognizable substantive claims in the SAC means that Plaintiff's claim for injunctive relief is defective as a threshold matter. *See Klay v. United Healthgroup, Inc.* 376 F.3d 1092, 1097 (11th Cir. 2004); *Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1379 (S.D. Fla. 2019) ("The Eleventh Circuit has made clear that 'any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action....'").

Even though Plaintiff asks for an injunction that has both a mandatory and prohibitory component, Plaintiff cannot demonstrate that a clear right has been violated. Nowhere in her SAC does Plaintiff identify the source of the right she seeks to vindicate by injunctive relief; instead, she announces in conclusory fashion that she will likely succeed on the merits of Counts I through XIX of the SAC. *See Organo Gold*, 416 F. Supp. 3d at 1379. Crucially, her request that this Court mandate someone other than Dr. Ben-David, "agreed upon by Plaintiff and MSMC, to provide such information in a fair and objective way," is also tied to no cause of action, legal right, or any feasible or practicable basis for this Court to even fashion the appropriate remedy. Judge Reid's conclusions, as discussed *supra*, support this view. ECF No. 113, p. 6.

To the extent Plaintiff responds that her defamation claims provide the necessary hook for an injunction, that is foreclosed by black letter law. "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Consistent with this principle, courts may not enjoin defamation or threatened defamation as it would constitute an unconstitutional prior restraint on speech. *See Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013) (collecting cases and observing the "rule … that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages"); *Santilli v. Van Erp*, 8:17-CV-1797-T-33MAP, 2018 WL 2152095, at *1 (M.D. Fla. May 10, 2018) ("Notably, in defamation cases, there is a strong presumption against injunctive relief."). This is so regardless of the alleged falsity of the speech sought to be enjoined. *See Curvey v. Avante Group, Inc.*, 327 So. 3d 401, 403 (Fla. 5th DCA 2021); *Demby v. English*, 667 So. 2d 350, 355 (Fla. 1st DCA 1995) ("It is a well-established rule that equity will not enjoin either an actual or a threatened defamation." (internal quotations omitted)).

For the same reason, Plaintiff's tortious interference claims fail to provide any right to injunctive relief where the claim is based on purported "defamatory" statements. Here, Plaintiff alleges that Defendants "provided defamatory comments about her" (SAC ¶ 99) and engaged in a "defamatory campaign" against her (Mot. ¶¶ 40, 43). An injunction should not issue to enjoin "interference" where, as here, the gravamen of the claim involves speech. *Santilli v. Van Erp*, 8:17-CV-1797-T-33MAP, 2018 WL 2172554, at *4 (M.D. Fla. Apr. 20, 2018), *report and recommendation adopted,* 8:17-CV-1797-T-33MAP, 2018 WL 2152095 (M.D. Fla. May 10, 2018). Thus, even if Plaintiff tries to tie her request for injunctive relief to her claims for defamation or tortious interference, that argument fails as a matter of law.

Second, Plaintiff's request for injunction is laden with arbitrary standards that would evade court review and management. *See, e.g.*, *Minotti S.P.A. v. Belletti*, 15-23365-CIV, 2016 WL 7508244, at *3 (S.D. Fla. June 30, 2016) (discussing the prohibition on injunctions that invite the "question of what behaviors would constitute a violation of the injunction"); *Artiga v. Garcia*, No. 05-61036-CIV, 2006 WL 8451593, at *1 (S.D. Fla. Jan. 10, 2006) (denying to enforce injunction over vague, unspecified, and speculative acts of multiple parties). Entry of such an injunction, as Plaintiff has framed it, would raise a multitude of additional questions and potential pitfalls and conundrums, ultimately rendering it unworkable and well beyond the province of this Court's powers in equity.

For instance, what does the Court do if Plaintiff's selection of a "representative of MSMC" refuses? Who decides whether the letter of recommendation or oral reference provided is "fair and objective?" Who decides what is said in response to specific questions raised by third parties about whether Plaintiff was in good standing, on probation, terminated, resigned, or had any deficiencies? If an injunction is entered as requested by Plaintiff, it may compel MSMC to provide false and/or misleading statements in its responses to third parties. In such a circumstance, would MSMC have to come back to the Court to assist with crafting a specific response? This is unworkable. These open issues show, among other reasons, that Plaintiff's purported reliance on the Court's equitable powers falls well short of sustaining her request.

In any event, threshold legal impediments aside, Plaintiff cannot meet the requirements for the extraordinary and drastic remedy of injunctive relief. *Moon v. Med. Tech. Assocs., Inc.*, 577 F. App'x 934, 937 (11th Cir. 2014). To obtain a permanent injunction, Plaintiff must demonstrate: "1) irreparable harm; 2) success on the merits; 3) a balancing of competing claims of injury to the

parties; and 4) consideration of the public interest." *Sony Music Entm't, Inc. v. Glob. Arts Productions*, 45 F. Supp. 3d 1345, 1347 (S.D. Fla. 1999).[13] As explained by Judge Reid in her Report and Recommendation, Plaintiff cannot satisfy any of these elements and carry her burden at this stage. Judge Reid's conclusions confirm Defendants' positions herein.

First, as Judge Reid concluded, Plaintiff "faces [no] actual or imminent harm." ECF No. 113, p. 7. The harm here – purported rescinding of a "job offer" – occurred well before Plaintiff even filed suit and is thus not tied to any present threat of harm. *See Ne. Florida Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1286 (11th Cir. 1990). Judge Reid correctly noted "it is not evident that Defendants are actively interfering with a current employment opportunity." ECF No. 113, p. 8. Absent this basic connection, and also given the delay by Plaintiff bringing suit, dismissal of the claim is mandated. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *Pippin et al. v. Playboy Entm't Group, Inc. et al.*, No. 8:02-cv-2329-T-30EAJ, 2003 U.S. Dist. LEXIS 25415, *6 (M.D. Fla. 2003). (finding that delay reflects that a request for injunctive relief is more about gaining an advantage rather than protecting a party from irreparable harm).

Judge Reid also found that the balance of equities favored Defendants given that "[l]imiting or controlling Defendants' protected speech far outweighs the harm to Plaintiff." ECF No. 113, p. 8. Beyond the obvious infringement on speech, entry of an injunction would also, in effect, compel false speech, forcing Defendants to whitewash Plaintiff's history of remediations and other deficiencies with any inquiring residency program or other third party. Finally, Judge Reid concluded that the public would not be served by issuance of an injunction, which would violate the province and autonomy of academic institutions – an inappropriate role for the Court. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 92 (1978). It would also not serve the public to silence Dr. Ben-David or the Program, who are best positioned and most informed to evaluate Plaintiff as a physician. Under these circumstances, this would put the community and patient population at risk.

---

[13] A mandatory injunction is subject to a heightened standard and "a particularly heavy burden of persuasion." *FHR TB, LLC v. TB Isle Resort, LP.*, 865 F. Supp. 2d 1172, 1192 (S.D. Fla. 2011). In addition to the above requirements for issuance of an injunction, one seeking a mandatory injunction must also show "a clear legal right has been violated." *Fernandez v. Bal Harbour Vill.*, 49 F. Supp. 3d 1144, 1151 (S.D. Fla. 2014).

**MOTION TO STRIKE CERTAIN ALLEGATIONS FROM THE SAC**

The SAC contains frivolous allegations about a non-existent Non-Disclosure Agreement (or "NDA") that, Plaintiff asserts, Defendants tried to extort or force her into signing. *See* Exhibit 4. (highlighting those allegations in the SAC). As Plaintiff well knows, those allegations have no basis in fact. That is why "Plaintiff agreed to strike all portions of her [SAC] that allege or relate to Plaintiff's allegation that the Defendants sought to obtain a Non-Disclosure Agreement from Plaintiff." ECF No. 119 (Mot. for Leave) at 4 n.1. Notwithstanding that representation to the Court, Plaintiff has not abided by her agreement. Defendants therefore ask the Court to rectify that by striking the frivolous allegations from Plaintiff's complaint.

**I.    Background**

A central feature of Plaintiff's original Second Amended Complaint (ECF No. 38) was her allegation that Defendants harmed her by withholding documents or job references unless Plaintiff agreed to sign a Non-Disclosure Agreement "agreeing not to divulge any events or facts concerning the Surgical Residency Program." *See, e.g.*, ECF No. 38 ¶ 11. That was pure fiction. After providing notice and a demand to retract these frivolous allegations early on in the case, Plaintiff refused and marched forward with discovery which, of course, did not uncover any such NDA nor the alleged practice of silencing residents. Plaintiff was also forced to concede in discovery that she could not produce the purported NDA that she claimed to have been asked to sign.  Defendants then served a letter and motion for sanctions on Plaintiff on June 15 pursuant to Rule 11(c)(2). *See* Exhibit 5 (Rule 11 motion) at 6.

Faced with Rule 11, Plaintiff's counsel finally conceded that the allegations had no factual basis, but asserted that they were the result of a "good faith misunderstanding" by Plaintiff. *See* Exhibit 6 (July 5 M. Goldberg letter). Setting aside that this claim of "good faith" was meritless, Defendants proposed on July 5 that the parties could resolve the Rule 11 motion, without subjecting Plaintiff to sanctions, by Plaintiff moving the Court to strike "all portions of her [SAC] that allege or relate to Plaintiff's allegation that the Defendants sought to obtain a Non-Disclosure Agreement from Plaintiff," and to enter a stipulation "that Plaintiff shall not be permitted to argue, assert, allege, or in any manner suggest to the Court or jury" that Defendants "sought, demanded, or otherwise attempted to obtain a Non-Disclosure Agreement or confidentiality agreement from Plaintiff." *Id.*

Defendants' proposal attached an agreed motion to strike and stipulation, along with a copy of the then-operative SAC, highlighting the specific portions to be struck, and noting that "[t]his resolution is conditioned upon the filing of the attached motion and proposed order as attached without change." *Id.* at 3; *see also id.* at Composite Ex. 5 (agreed motion to strike and stipulation). After some back and forth, Plaintiff eventually agreed to Defendants' proposal, stating to Defendants on July 11: "We will agree to the filing of the agreed motion you prepared in full and complete resolution of the issues raised in" the Rule 11 motion. *See* <u>Exhibit 7</u> (July 11, 2023, email).

The next day, Plaintiff reversed course. Plaintiff's counsel sent Defendants "a copy of the motion and exhibit Plaintiff intends to file"—which were *not* the papers Plaintiff had agreed to file just the day before. *See* <u>Exhibit 8</u> (July 12, 2023, Sliwka email and attachment). When Defendants' counsel flagged this switcheroo, Plaintiff's counsel promised that Plaintiff would file Defendants' drafted motion, asserting that the altered version was "incorrect." <u>Exhibit 9</u> (July 12 email chain).

The following morning, the Court ruled on Defendants' outstanding motion to strike and/or dismiss the first version of the SAC. The Court struck that complaint, but ordered that Plaintiff could file a motion for leave to amend her complaint. ECF No. 111 (Paperless Order). Plaintiff's counsel subsequently proposed to Defendants that the next version of the SAC would "omit any reference to any 'Non-Disclosure Agreement (NDA),'" but made no reference to the remaining parts of the parties' agreement that Plaintiff would remove all allegations relating to the supposed NDA (not merely the term "NDA"). Defendants therefore rejected Plaintiff's proposal and asked Plaintiff for a *third* time to abide by the parties' agreement. *See* <u>Exhibit 10</u> (July 14 email chain)

Plaintiff did not do so. Instead, Plaintiff filed a motion for leave to amend her complaint on July 25, without conferring as requested with Defendants about the motion for leave and without confirming whether the revised SAC would comport with the parties' agreed resolution of the Rule 11 motion. As it turns out, the revised SAC does *not* comport with that agreement. Plaintiff had agreed to remove all fifty-two references to the allegation that Defendants sought an NDA or confidentiality agreement in her complaint. Instead, Plaintiff merely removed the literal words "Non-Disclosure Agreement" throughout the SAC, retaining her frivolous allegations that

Defendants attempted to coerce Plaintiff into signing an agreement to keep quiet about her experience at MSMC—allegations which Plaintiff had agreed to strike.[14]

## II.     **Argument**

Plaintiff represented in her motion for leave that the SAC's "narrowly tailored modifications" were made in response to Defendants' service of the Rule 11 motion and Plaintiff's "agree[ment] to *strike all portions of her [SAC] that allege or relate to Plaintiff's allegation* that the Defendants sought to obtain a Non-Disclosure Agreement from Plaintiff." Mot. for Leave at 4 & n.1 (emphasis added). What Plaintiff fails to mention is that she did not actually do what she agreed to. Many of those allegations remain in the operative version of the complaint. *See* ECF No. 125.

At a minimum, Plaintiff breached her agreement to excise those allegations from the SAC. Even more egregiously, Plaintiff suggests to the Court that she has complied with that agreement—which is untrue. The Court therefore should exercise its authority to strike those allegations (as identified in Ex. 4) from the SAC.

The Court is empowered by Rule 12(f) to "strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts have defined "impertinent" matter as "allegations that are not responsive or irrelevant to the issues that arise in the action and which are inadmissible as evidence." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000); *see also Blake v. Batmasian*, 318 F.R.D. 698, 700 n.3 (S.D. Fla. 2017) ("An allegation is impertinent if it is irrelevant to the issues . . . [and is] not properly in issue between the parties."). Plaintiff herself agrees that these allegations have no evidentiary basis, and represented to Defendants multiple times that she would remove them from the complaint. Frivolous allegations that even the Plaintiff agrees should not be in the complaint are

---

[14] For example, Plaintiff had agreed to strike all of Paragraph 10 of the SAC, which alleges that Defendants withheld documents "unless the Residents agreed to sign Non-Disclosure Agreements and/or General Releases . . . which was similar to the conduct of others who have used non-disclosure agreements to avoid revealing their misconduct, so that their conduct never reaches the public view." *See* Ex. 4 (highlighting all of Paragraph 10 for striking).

The revised SAC that Plaintiff filed instead still alleges that Defendants withheld documents "unless the Residents agreed to sign General Releases . . . which was similar to the conduct of others who have used agreements to avoid revealing their misconduct, so that their conduct never reaches the public view." ECF No. 125 (revised SAC) ¶ 10.

plainly neither responsive nor relevant. Furthermore, the continued survival of these allegations in the SAC prejudices Defendants, who have been baselessly accused of blackmail. *See Blake*, 318 F.R.D. at 701 (motion to strike is appropriate where "the matter sought to be omitted . . . [may] prejudice a party").

The Court also "has inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances." *Cavner v. Bounceback, Inc.*, 2015 WL 467682, at *1 (M.D. Fla. Feb. 3, 2015) (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 164 F.R.D. 346, 349 (S.D.N.Y.1996)). In particular, the Court may strike a filing for misconduct. *English v. CSA Equip. Co., LLC*, 2006 WL 2456030, at *2 n.5 (S.D. Ala. Aug. 22, 2006) (citing *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir.2002)). Plaintiff's violation of the parties' Rule 11 agreement alone amounts to misconduct. But even more brazenly, Plaintiff has misrepresented *to the Court* her compliance with the agreed resolution to the Rule 11 motion. *See* Mot. for Leave at 4 & n.1. Striking Plaintiff's frivolous allegations is warranted.[15]

## CONCLUSION

Defendants' counsel requested Plaintiff's position on this motion via email on August 6, 2023, and again followed up during an in-person meet-and-confer on August 9, 2023. Plaintiff's counsel advised that he would provide Plaintiff's position no later than the morning of August 11, 2023, the day this motion was due to be filed. At the time of this filing, Plaintiff has not responded. Dated: August 11, 2023

---

[15] The Court also has authority to impose sanctions based on Rule 11. Defendants' Rule 11. Defendants' Rule 11 motion (which was served on June 15, and the safe harbor for which has long since expired) is attached to this motion as Ex. 5. If the Court deems it appropriate, Defendants also can file that motion on the docket separately.

Respectfully submitted,

**LASH GOLDBERG LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 347-4040
Fax: (305) 347-4050
*Attorneys for Defendants*

By:*/s/ Martin B. Goldberg*
    **MARTIN B. GOLDBERG**
    Florida Bar No. 0827029
    Email: mgoldberg@lashgoldberg.com
    **CLARK S. SPLICHAL**
    Florida Bar No. 1010425
    Email: csplichal@lashgoldberg.com

**KRAMER LEVIN NAFTALIS**
**& FRANKEL LLP**
2000 K Street N.W., 4th Floor
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202)775-4510
*Attorneys for Defendant Kfir Ben-David, M.D.*

By:*/s/ Gary A. Orseck*
    **GARY A. ORSECK**
    Florida Bar No. 846015
    Primary Email: gorseck@kramerlevin.com
    **LAUREN CASSADY ANDREWS**
    Va. Bar No. 92149 (appearing *pro hac vice*)
    Primary Email: landrews@kramerlevin.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF on August 11, 2023, or in the manner specified on all counsel or parties of record on the Service List below.

By: */s/ Martin B. Goldberg*
**MARTIN B. GOLDBERG**

## SERVICE LIST

Richard H. Levenstein, Esq.
Gabrielle O. Sliwka, Esq.
Abby M. Spears, Esq.
**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
gsliwka@nasonyeager.com
aspears@nasonyeager.com
ptreadway@nasonyeager.com
creyes@nasonyeager.com
*Attorneys for Plaintiff*