# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

PAIGE FINKELSTEIN, M.D.,

      Plaintiff,

v.                                   Case No. 1:23-CV-20188-RKA

MOUNT SINAI MEDICAL CENTER OF
FLORIDA, INC., a Florida Not-For Profit
Corporation, and KFIR BEN-DAVID, M.D.,

      Defendants.

_____/

**DEFENDANTS' RULE 11 MOTION FOR SANCTIONS PERTAINING TO FALSE
ALLEGATIONS CONCERNING NON-DISCLOSURE AGREEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 2

III.    LEGAL STANDARD .......................................................................................... 7

IV.     ARGUMENT ....................................................................................................... 8

        A.  Plaintiff and Her Counsel's Actions Violate Rule 11 ............................................. 8

            i.      *Plaintiff's Allegations Are Objectively Frivolous* ...................................... 9
            ii.     *Plaintiff and Her Counsel Should Have Been Aware the Allegations
                    Are Frivolous* ............................................................................ 10

        B.  The Court Should Impose Sanctions Against Plaintiff and Her Counsel ............ 11

V.      CONCLUSION .................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                      <u>**Page(s)**</u>

*Abdinoor v. Lewis Rental Properties Ltd. P'ship*,
  9:20-CV-80801-WPD/WM,
  2020 WL 6041846 (S.D. Fla. Oct. 13, 2020) .................................................................. 7,9

*Byrne v. Nezhat*,
  261 F.3d 1075 (11th Cir. 2001) ........................................................................................ 8

*Cox v. Adm'r U.S. Steel & Carnegie*,
  17 F.3d 1386 (11th Cir. 1994)......................................................................................... 11

*Davis v. Carl*,
  906 F.2d 533 (11th Cir. 1990)........................................................................................... 7

*Estrada v. FTS USA, LLC*,
  2018 U.S. Dist. LEXIS 11535 (S.D. Fla. Jan. 23, 2018).......................................... 12

*Franklin v. Pinnacle Entm't, Inc.*,
  289 F.R.D. 278 (E.D. Mo. 2012)..................................................................................... 12

*J A P Logistics, Inc. v. MT 2005 Integradores Y Consultores, S.A.*,
  2020 U.S. Dist. LEXIS 83666 (S.D. Fla. May 11, 2020)........................................... 13

*Jones v. Int'l Riding Helmets, Ltd.*,
  49 F.3d 692 (11th Cir. 1995)............................................................................................. 7

*MSP Recovery, LLC v. Allstate Ins. Co.*,
  15-20788-CIV-SEITZ-TURNO,
  2015 WL 5882122 (S.D. Fla. Oct. 6, 2015).................................................................... 9

*Nguyen v. Bank of Am. Nat. Ass'n*,
  11-CV-03318-LHK,
  2011 WL 5574917 (N.D. Cal. Nov. 15, 2011) ............................................................... 9

*Nguyen v. Bank of Am., NA*,
  563 Fed. Appx. 558 (9th Cir. 2014) ................................................................................. 9

*Ousley Prods.*,
  952 F.2d...................................................................................................................................... 8

*Patterson v. Aiken*,
  841 F.2d 386 (11th Cir. 1988)........................................................................................... 8

*Pelletier v. Zweifel*,
  921 F.2d 1465 (11th Cir. 1991)....................................................................................... 13

*Philippeaux v. City of Coral Springs*,
   No. 19-60617-CV, 2019 WL 10303694 (S.D. Fla. Oct. 16, 2019) ............................................ 7

*Vaughn v. Taylor,*
   2022 U.S. Dist. LEXIS 143337 (E.D. Tenn. July 22, 2022) ...................................................... 13

*Worldwide Primates, Inc. v. McGreal*,
   87 F.3d 1252 (11th Cir. 1996) .................................................................................................. 7, 8

## **<u>Rules</u>**

Fed. R. Civ. P. 11(b)(3) ..................................................................................................................... 1, 7, 8

Fed. R. Civ. P. 11(c)(1) ...................................................................................................................... 12

Pursuant to Federal Rule of Civil Procedure 11, Defendants Mount Sinai Medical Center of Florida, Inc. ("Mount Sinai") and Kfir Ben-David, M.D. ("Dr. Ben-David") (collectively, "Defendants") hereby move this Court to impose sanctions on Plaintiff, Paige Finkelstein, M.D. ("Plaintiff") and her counsel. Plaintiff and her counsel have violated Rule 11(b) of the Federal Rules of Civil Procedure by making allegations that have no evidentiary support. She has continued to advance allegations that both she and her counsel know are false, specifically that Defendants "extorted" her by trying to coerce her to sign a "Non-Disclosure Agreement." This allegation is directly contradicted by documentary evidence *Plaintiff herself relies upon and attached* to her own pleadings, and more recently, is contradicted by her admissions in discovery that a "Non-Disclosure Agreement" does not exist and sworn deposition testimony by her own lawyer that Mount Sinai never discussed, much less demanded, a non-disclosure agreement. *See* Fed. R. Civ. P. 11(b)(3).

Nevertheless, Plaintiff adamantly refuses to withdraw these demonstrably false allegations. Defendants have incurred substantial costs addressing the matter, and Plaintiff and her counsel should be sanctioned.

## I.    INTRODUCTION

Shortly after Plaintiff's departure from Mount Sinai Medical Center's Surgical Residency Program in January 2021, Plaintiff and her father, David Finkelstein, began blaming the Program and Dr. Ben-David for her failures as a resident. This included making threats to publicly embarrass Mount Sinai and Dr. Ben-David. This conduct escalated in December 2022 when Plaintiff and her newly retained counsel, Mr. Richard Levenstein, said that they possessed "sensitive information" that they were prepared to put into the public record and convey directly to other healthcare institutions, government entities and accreditation bodies unless both Mount

Sinai's Chief Executive Officer and General Counsel personally appeared at Mr. Levenstein's office the next day in Boca Raton for a "one-time offer" to settle the matter. When Mount Sinai declined, Plaintiff amended her complaint to include various scurrilous, harassing and personal allegations which were later struck by this Court.

Unable to assert any viable claim for relief, Plaintiff and her counsel set forth the theory that is the subject of this motion. They alleged that Mount Sinai and Dr. Ben-David acted like "Harvey Weinstein," by brandishing a "non-disclosure agreement" to force Plaintiff to remain silent. *See* ECF No. 24-26 (Am. Compl.) ¶¶ 10, 74, 76 ("Further, the leveraging of the release of the Completion Documents is consistent with the conduct of others such as Harvey Weinstein, who have used non-disclosure agreements to avoid the revealing of their misconduct.").

Plaintiff and her counsel knew then and know now that their allegation is frivolous, is not supported by any evidence, and is in fact *refuted* by the very documents Plaintiff cites. It is the use of this lawsuit to make and foster such a verifiably false narrative that compels this motion for sanctions.

## II.   BACKGROUND

As this Court is aware, Plaintiff accuses Defendants in this case of discrimination, retaliation, and harassment on the basis of her gender and asserted disability, and also advances a litany of duplicative tort and breach of contract claims. Plaintiff's second amended complaint (the operative, yet procedurally defective, pleading in this case, hereinafter the "SAC") is currently subject to Defendants' motions to strike and to dismiss for various dispositive reasons, which are now fully briefed and *sub judice*.

In the SAC, Plaintiff brings a claim pursuant to the *Racketeer Influenced and Corrupt Organizations Act* ("RICO") based on an alleged plot by Defendants to "extort" her. She alleges

that Defendants withheld certain documents related to her residency following her termination

from the Program unless she signed a "General Release and a Non-Disclosure Agreement." *E.g.*,

SAC ¶ 129. Plaintiff also alleges that Defendants breached her residency contract (hereinafter the

"GME Agreement") for violating its prohibition against restrictive covenants based on the same

supposed "Non-Disclosure Agreement." *E.g.*, SAC ¶ 63. These allegations form a broader

narrative in the SAC that Defendants allegedly engaged in a "campaign" to "silence" Plaintiff

following her termination. *See, e.g.*, SAC ¶¶ 79, 93, 100. The allegations support at least seven (7)

claims in the SAC.

Plaintiff alleges or references a "Non-Disclosure Agreement" <u>fifty-five (55) separate times</u>.

She has repeated this falsehood in her SAC (ECF No. 38), her response to Defendants' pending

motions to strike and to dismiss (ECF No. 65, the "Response"), her motion for preliminary

injunction and reply in further support thereof (ECF Nos. 39 and 72, together the "PI Motion"),

and in Plaintiff's Affidavit filed in support of her PI Motion, as well as an earlier version of same

filed in support of her injunction motion in state court (ECF Nos. 40 and 24-27). A table containing

each allegation or argument referencing a "Non-Disclosure Agreement" is attached as <u>Exhibit A</u>.

But there is not, nor was there ever, a "Non-Disclosure Agreement" that Plaintiff was

forced to sign. The allegation is fiction, because no Non-Disclosure Agreement has ever existed.

Indeed, Plaintiff has affirmatively placed documentary evidence into the Court record (attached to

both her SAC and Affidavit) that demonstrates that these allegations lack evidentiary support.

The key document that Plaintiff has submitted to support her claim of a "Non-Disclosure

Agreement" is nothing of the sort: it is instead a straightforward release agreement that contains

no confidentiality or non-disclosure component of any kind. But in her SAC, Plaintiff alleges,

without qualification:

> Dr. Ben-David's actions, individually and on behalf of MSMC, were taken in bad faith as part of his smear campaign motivated by discrediting Dr. Finkelstein and forcing her to sign a Non-Disclosure Agreement and General Release, agreeing not to divulge any events or facts concerning the Surgical Residency Program, and releasing both Defendants from liability with respect to any and all claims related to her Surgical Residency Program experience. A copy of the email communication between Dr. Finkelstein's then legal counsel, Barry Wax, and MSMC general counsel, Arnie Jaffe, including attachments, is attached hereto as **Exhibit "H."**

SAC ¶ 100 (emphasis in original).

"Exhibit H" to the SAC, which remains a public record, is a chain of emails from January 2021. None of the emails reference a "Non-Disclosure Agreement." In fact, in these emails, Plaintiff's then-counsel, Barry Wax, Esq. ("Mr. Wax"), writes to his client (emphasis added): "I spoke with Arnie Jaffee [the Hospital's General Counsel] yesterday and the hospital will agree to give you a letter of successful completion of your 2nd year and an internship diploma *in exchange for a signed release*. Perhaps we should have a conference this afternoon to discuss it and come to a decision collectively." The "release" is also attached to the email chain. Nowhere does this document mention any confidentiality or non-disclosure obligation. This idea simply was not a point ever discussed or proposed between counsel. The January 2021 email exchange and release agreement (attached by Plaintiff as evidence of a "Non-Disclosure Agreement" in her SAC) is attached here as Exhibit B.  Indeed, Barry Wax was deposed by Plaintiff on June 5, 2023, and testified that MSMC and Mr. Jaffee *never* raised, discussed, or presented a non-disclosure agreement or confidentiality restriction. Wax Depo. 80:17-18, 126:18-19, and *passim* ("Arnie Jaffee never threatened anything [regarding signing an NDA]"; "I have no specific recollection of discussing an NDA with Mr. Jaffee.") (transcript excerpts of Mr. Wax's deposition are attached hereto as Exhibit C).

The allegation appears elsewhere in Plaintiff's papers. In her PI Motion, Plaintiff alleges that "Defendants, through MSMC's counsel, Arnie Jaffe [sic], *had open conversations* with Dr.

Finkelstein's former legal counsel, Barry Wax, *representing more than once* that the Completion Documents would only be provided after she signed a General Release and a Non-Disclosure Agreement." ECF No. 39, ¶ 25 (emphasis added). For support, she cites Exhibits W, X, Y, Z, AA, and BB to her Affidavit. *Id.* But none of the exhibits cited/attached ever mention or refer to a "Non-Disclosure Agreement," and Exhibit X to the Affidavit (ECF No. 40-26) is an email that merely re-attaches the release agreement discussed above. *See* Ex. A. This email chain is attached here as Exhibit D.

And finally, in her *sworn* Affidavit, Plaintiff claims that she "engaged legal representation to assist [her] in obtaining a copy of [her] records and the Completion Documents, which Dr. Ben-David & MSMC continued to withhold in a blatant attempt to force [her] into signing a Non-Disclosure Agreement and General Release forgoing any potential claim [she] may have against them. A copy of the communication between my legal representative, Barry Wax, and Defendants' counsel is attached hereto as **Exhibit 'X'.**" ECF No. 40, ¶ 36 (emphasis in original); ECF No. 40-26. As explained above and confirmed by Mr. Wax in his recent deposition, the document attached to the Affidavit is an email from Mr. Wax, which simply attaches the release agreement – a document devoid of any confidentiality or non-disclosure terms. *See* Ex. C. Thus, in her SAC, PI Motion, her Response, and Affidavit (*see generally* Ex. A), Plaintiff alleges and argues the existence of a "Non-Disclosure Agreement" foisted upon her by Defendants lest they withhold crucial paperwork related to her residency, and each time Plaintiff cites to documents that not only fail to support her allegation, but rule out the possibility that the allegation could ever be proven.

In addition to Mr. Wax's testimony, which eliminates any doubt here, Defendants recently requested from Plaintiff in discovery, in point-blank fashion: "The 'Non-Disclosure Agreement' you allege in this Action." In response, Plaintiff admitted that she "does not have any documents

responsive to this Request." A copy of Plaintiff's written responses and objections to Defendants'

First Set of Requests for Production of Documents dated March 13, 2023, is attached as <u>Exhibit

E</u>.

Following this, on May 2, 2023, undersigned counsel wrote to Plaintiff's counsel, Mr.

Levenstein:

> In the Response [to the Hospital's discovery requests], at paragraph 10, you admit
> that there is no Non-Disclosure Agreement. This is directly contrary to many of the
> allegations in the SAC. See, e.g., 10, 11, 33, 34, 39, 41, 50, 129, 130, 134. This is
> also consistent with Mr. Wax's statement to us that Mr. Jaffee, the Hospital's
> general counsel, never asked for or mentioned a non-disclosure agreement in
> resolution discussions. Mr. Wax also advised that he had previously advised Mr.
> Levenstein of this fact. Hence, please file a notice of withdrawal of all allegations
> involving the frivolously alleged Non-Disclosure Agreement by next Tuesday, May
> 9, 2023.

After failing to respond and being asked again for a response, Mr. Levenstein (nine days later)

refused to withdraw the allegations, stating that Plaintiff will "conduct discovery and then review

the allegations and claims we have filed as would be done in any case." A copy of the email

communication between undersigned counsel and Mr. Levenstein is attached together as <u>Exhibit

F</u>.  Mr. Wax's deposition thereafter occurred on June 5, 2023, and Plaintiff has not withdrawn the

allegations.

Thus, at present, and upon ample notice given to Plaintiff and after the deposition of Mr.

Wax (who refuted Plaintiff's allegation that Mount Sinai extorted Plaintiff), Plaintiff and her

counsel have provided nothing that might possibly provide a basis for these allegations.  Nor could

further discovery change any of this. If Plaintiff had ever been presented with a non-disclosure

agreement, she would not need to obtain a copy of it from Defendants. Worse still, this fiction is

relied upon by Plaintiff notwithstanding the contradictory documentary evidence that she placed

in the record and has been recently adduced. To date, the frivolous allegations and claims related

to a "Non-Disclosure Agreement" remain in the SAC, PI Motion, Response, and Affidavit. And, these allegations remain pending as this Court currently considers Defendants' motions to strike and to dismiss the SAC wherein Defendants directly contended that the "Non-Disclosure Agreement" allegations were frivolous. *See* ECF No. 52, p. 6 & n.4.

### III.   LEGAL STANDARD

By presenting a pleading to the Court, an attorney certifies, among other things, that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11(b)(3). Rule 11 sanctions are proper when a party files a pleading without a reasonable factual basis, based on a legal theory that has no reasonable chance of success and cannot be advanced as a reasonable argument to change existing law, or in bad faith for an improper purpose. *See Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995)). Rule 11 sanctions are also warranted where a party shows "deliberate indifference to obvious facts." *Davis v. Carl*, 906 F.2d 533, 537 (11th Cir. 1990).

To determine whether the imposition of sanctions under Rule 11 is appropriate, courts in this circuit conduct "a two-step inquiry: (1) a determination whether the non-moving party's claims are objectively frivolous; and (2) whether the party should have been aware that the claims were frivolous." *Abdinoor v. Lewis Rental Properties Ltd. P'ship*, 9:20-CV-80801-WPD/WM, 2020 WL 6041846, at *2 (S.D. Fla. Oct. 13, 2020) (quoting *Philippeaux v. City of Coral Springs*, No. 19-60617-CV, 2019 WL 10303694, at *9 (S.D. Fla. Oct. 16, 2019)). If the party's claims are "objectively frivolous—in view of the facts or law," then the second step requires the Court to determine "whether the person who signed the pleadings should have been aware that they were

frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Worldwide Primates*, 87 F.3d at 1254.

Notably, "[i]f the attorney failed to make a reasonable inquiry, then the Court *must* impose sanctions despite the attorney's good faith belief that the claims were sound." *Id.* at 1256 (quoting *Ousley Prods.*, 952 F.2d at 382) (emphasis added); *see also Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001) (finding courts are "obligated to impose sanctions" if a claim is baseless and the party's attorney failed to conduct a reasonable inquiry into the matter). Rule 11 also applies to frivolous allegations contained in a portion of a pleading. *See Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) ("Rule 11 does not prevent the imposition of sanctions where it is shown that the Rule was violated as to a portion of the pleading, even though it was not violated as to other portions." (internal citation omitted)).

## IV.   ARGUMENT

### A.   Plaintiff and Her Counsel's Actions Violate Rule 11

Plaintiff, Paige Finkelstein, M.D., and her counsel and law firm of record, including Richard H. Levenstein, Esq., should be sanctioned under Federal Rule of Civil Procedure 11. Rule 11 requires that factual allegations "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Plaintiff alleged repeatedly in her SAC, her PI Motion, her Response, and in her Affidavit, the existence of a "Non-Disclosure Agreement" and, matter-of-factly, that Defendants demanded or attempted to "force" her to sign it. *See* Table at Ex. A. The SAC alone recites this allegation (or some variation of it) <u>thirty-two (32) times</u>. SAC ¶¶ 10, 11, 33, 34, 39, 41, 50, 63, 64, 76, 79, 80, 100, 101, 107, 109, 110, 115, 116, 122, 123, 129, 130, 133, 134, 226, 232, 246, 252, 267, 273, and 288.

Plaintiff does not identify these as allegations that "likely would have evidentiary support" after a reasonable opportunity for further investigation or discovery, or *any* other factual basis by which evidentiary support might be discovered. Rather, these allegations are set forth in the SAC and other papers as though their proof is beyond cavil. And, Plaintiff has affirmatively attached documents as purported support for these allegations (including the "agreement" at issue), but which actually provide no support and in fact contradict this false narrative. *See* Ex. B, C; *see also Nguyen v. Bank of Am. Nat. Ass'n*, 11-CV-03318-LHK, 2011 WL 5574917, at *12 (N.D. Cal. Nov. 15, 2011), *aff'd sub nom. Nguyen v. Bank of Am., NA*, 563 Fed. Appx. 558 (9th Cir. 2014) (litigant ordered to show cause as to why sanctions should not be entered based on contradictions in pleadings created by attached exhibits); *MSP Recovery, LLC v. Allstate Ins. Co.*, 15-20788-CIV-SEITZ-TURNO, 2015 WL 5882122, at *3 (S.D. Fla. Oct. 6, 2015) ("This contradiction between the pleadings and the exhibit can be interpreted … as Plaintiff's counsel has violated Rule 11 by failing to ensure that the facts alleged in the complaint have evidentiary support.").

Thus, by including these allegations in the SAC, the PI Motion, the Response, and Plaintiff's Affidavit, Plaintiff's counsel certified (and Plaintiff herself purports to verify, *see* SAC at pp. 1, 6), that there was evidentiary support for the allegation of the existence of a "Non-Disclosure Agreement" which Defendants attempted to "force" her to sign. As discussed below, however, these allegations are objectively frivolous, her counsel should have been aware of that fact, and Plaintiff nevertheless refuses to withdraw them. *See Abdinoor*, 2020 WL 6041846, at *2. Accordingly, Rule 11 sanctions are warranted.

### i. *Plaintiff's Allegations Are Objectively Frivolous.*

Plaintiff's allegations that Defendants tried to "extort" her by forcing her to sign a "Non-Disclosure Agreement" is objectively frivolous for three reasons. First, the general release proposed to Mr. Wax by the Hospital's counsel has no confidentiality or non-disclosure component

on its face, nor were any terms along those lines ever discussed in the email exhibits relied upon by Plaintiff in her SAC and other papers. *See* Ex. B, D. Second, Plaintiff has admitted in her responses to Plaintiff's discovery that the "Non-Disclosure Agreement" does not exist – in other words, an "agreement" that is central to Plaintiff's pleadings and her broader narrative, Plaintiff has admitted to not having in her possession, custody, or control. *See* Ex. E. Third, there is no evidence that Mr. Wax and the Hospital's General Counsel ever discussed a "Non-Disclosure Agreement." *See* Ex. C.

      ii.   *Plaintiff and Her Counsel Should Have Been Aware the Allegations Are Frivolous*

Plaintiff and her counsel have known these allegations are frivolous. At the time of filing the SAC and other papers, documentary evidence existed directly refuting her claims. *See* Ex. B-E. Plaintiff was aware, of course, of this evidence because she attached it to her pleadings.

After being pressed by undersigned counsel to explain the factual basis for these allegations or otherwise withdraw them, Mr. Levenstein answered that Plaintiff would "conduct discovery and then review the allegations and claims." Ex. F. Such a response is specious. Here, counsel and Plaintiff knew the allegation was false when they made it because it was disproven, at a minimum, by the very document they relied upon at the time they filed the SAC and her Affidavits.

Nowhere in the <u>fifty-five (55) times</u> a "Non-Disclosure Agreement" is referenced in the SAC and other papers does Plaintiff put forward a basis for her far-fetched assertion that Defendants presented her with such an agreement and forced her to sign it or else they would withhold documents related to her residency. Tellingly, each and every reference to a "Non-Disclosure Agreement" in the SAC is coupled with reference to a "General Release," the latter of which *does* exist and which Plaintiff has attached as purported proof of the former. Plaintiff and her counsel apparently hoped no one would notice or call out this sleight of hand.

Plaintiff and her counsel repeatedly and publicly suggest (a) that a "Non-Disclosure Agreement" exists somewhere (*e.g.*, SAC ¶¶ 10, 11, 33, 34, 39, 41, and 50), (b) that "open conversations" about the document have occurred and are documented (*id.* ¶ 130), and (c) that the "Non-Disclosure Agreement" has been physically presented to her and that she was threatened and "forced" to sign it (*e.g.*, *id.* ¶¶ 76, 79, 80, 100). If so, then any reasonable and responsible federal litigant and counsel would point the Court and Defendants in its direction. Not here.

It further bears mentioning that Plaintiff has now refused to produce documents reflecting any communications between her and Mr. Wax, as well as any documents related to her allegations of "extortion," both of which she claims are protected by attorney-client privilege. *See* Ex. E. Yet, Plaintiff waived that privilege by affirmatively filing communications between herself and Mr. Wax in support of her spurious claim. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994), *opinion modified on reh'g,* 30 F.3d 1347 (11th Cir. 1994) ("The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit …."). The law is clear that Plaintiff cannot use the attorney-client privilege as both sword and shield, and here, she is now using the privilege as a shield to likely hide documents or communications that further negate her frivolous allegations. Having been placed on notice by undersigned counsel and having further failed to produce anything in discovery remotely supporting her allegations of a "Non-Disclosure Agreement," Plaintiff and her counsel should be sanctioned. Plaintiff and her counsel's actions have substantially prejudiced Defendants, who have incurred substantial costs in defending against these baseless allegations.

B.  The Court Should Impose Sanctions Against Plaintiff and Her Counsel

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm,

or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Rule 11 grants this Court considerable discretion in fashioning an appropriate sanctions award. Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment. The amount of an award must be sufficient to deter Plaintiff and her counsel from future wrongdoing, and may include nonmonetary directives, an order to pay a penalty into court, or, if "warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Estrada v. FTS USA, LLC*, 2018 U.S. Dist. LEXIS 11535, at *14 (S.D. Fla. Jan. 23, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 238457 (S.D. Fla. Mar. 16, 2018). For the reasons outlined above, Plaintiff's failure to withdraw these allegations violates Rule 11.

Given Plaintiff's actions in violating Rule 11, Defendants request that this Court impose the following sanctions:

1. Strike Plaintiff's baseless allegations, as discussed above, including at a minimum those included in Exhibit A, from the SAC, her PI Motion, her Response, and her Affidavits. *See Franklin v. Pinnacle Entm't, Inc.,* 289 F.R.D. 278, 291 (E.D. Mo. 2012) (in addition to monetary sanctions, striking the complaint and ordering plaintiffs to file an amended pleading that correct the deficiencies within it).

2. Preclude Plaintiff from arguing that a "Non-Disclosure Agreement" exists (now or ever), and that Plaintiff was forced or coerced into signing one or else Defendants would withhold paperwork related to her residency.

3. Strike and preclude Plaintiff from arguing or advancing any legal claim based on the existence of a "Non-Disclosure Agreement," including but not limited to, her breach of contract

claims (Counts I and II), her tortious interference claims (Counts V and VI), her defamation claims (Counts VII and VIII), and her RICO claim (Count IX).

4.      Award attorneys' fees and costs incurred by Defendants to defend against Plaintiff's baseless allegations and claims. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1521 (11th Cir. 1991) (awarding monetary sanctions where claims were frivolous when made and became even more so as discovery proceeded); *J A P Logistics, Inc. v. MT 2005 Integradores Y Consultores, S.A.,* 2020 U.S. Dist. LEXIS 83666, at *18 (S.D. Fla. May 11, 2020) (awarding fees and costs incurred in bringing a motion for sanctions).

5.      Declare that Plaintiff committed fraud upon the Court by advancing false allegations. *See Vaughn v. Taylor,* 2022 U.S. Dist. LEXIS 143337, at *28 (E.D. Tenn. July 22, 2022) (finding it appropriate, as a sanction for violating Rule 11, to declare that the plaintiffs committed fraud when claiming to own a piece of equipment, after having the opportunity to provide proof of their ownership or that the piece of equipment even existed, and failing to do so).

*   *   *

Defendants appreciate that courts do not often impose sanctions under Rule 11, and Defendants do not seek this relief lightly. This case, however, is extraordinary. Having already attempted to smear Defendant Dr. Ben-David by filing irrelevant, embarrassing materials on the public docket, Plaintiff and her counsel now stand on allegations they know, to a certainty, are false, in an attempt to survive dismissal. Such sharp practice should not be tolerated.

## V.      CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant this motion and enter an order imposing the above-referenced sanctions on Plaintiff and her counsel.

Dated:  June **XX**, 2023

Respectfully submitted,

**LASH GOLDBERG LLP**
Miami Tower, Suite 1200
100 S.E. Second Street
Miami, Florida 33131
Tel: (305) 347-4040
Fax: (305) 347-4050
*Attorneys for Defendants*

By: */s/ Martin B. Goldberg*
    **MARTIN B. GOLDBERG**
    Florida Bar No. 0827029
    Email: mgoldberg@lashgoldberg.com
    **CLARK S. SPLICHAL**
    Florida Bar No. 1010425
    Email: csplichal@lashgoldberg.com

**KRAMER LEVIN NAFTALIS**
**& FRANKEL LLP**
2000 K Street N.W., 4th Floor
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202)775-4510
*Attorneys for Defendant Kfir Ben-David, M.D.*

By: */s/ Gary A. Orseck*
    **GARY A. ORSECK**
    Florida Bar No. 846015
    Primary Email: gorseck@kramerlevin.com
    **LAUREN CASSADY ANDREWS**
    Va. Bar No. 92149 (appearing *pro hac vice*)
    Primary Email: landrews@kramerlevin.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF on June **XX**, 2023, or in the manner specified on all counsel or parties of record on the Service List below.

By: */s/ Martin B. Goldberg*
**MARTIN B. GOLDBERG**

<u>**SERVICE LIST**</u>

Richard H. Levenstein, Esq.
Gabrielle O. Sliwka, Esq.
Abby M. Spears, Esq.
**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, FL 33410
Tel: (561) 686-3307
Fax: (561) 686-5442
relevenstein@nasonyeager.com
ptreadway@nasonyeager.com
jresnick@nasonyeager.com
creyes@nasonyeager.com
*Attorneys for Plaintiff*

# EXHIBIT A

**EXHIBIT A to Defendants' Rule 11 Motion for Sanctions  - - Plaintiff's Use of Frivolous "Non-Disclosure Agreement" Allegation**

| Pleading/Paper | Date | Docket Entry | Section | Text |
|---|---|---|---|---|
| Affidavit of Paige Finkelstein, M.D. | 10/25/2022 | 32 (State Court Case) | Para. 7 | Mount Sinai demanded that I sign a non-disclosure agreement and general release of all claims to prevent me from sharing the details of my experience at Mount Sinai, as a precondition of providing me with my Summative Evaluations and Certificate of Completion documents which Mount Sinai was required to provide me upon request, pursuant to the Rules of Regulations of the ACGME |
| Affidavit of Paige Finkelstein, M.D. | 10/25/2022 | 32 (State Court Case) | Para. 8 | I refused to sign the non-disclosure agreement and general release of all claims. |
| Affidavit of Paige Finkelstein, M.D. | 10/25/2022 | 32 (State Court Case) | Para. 11 | Mount Sinai continued to coerce me into signing the non-disclosure agreement and general release in exchange for a letter of recommendation, my certificate of intern year completion, and Summative Evaluations, all documents Mount Sinai was required to provide by the ACGME. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 11 | In fact, Defendants refused to provide documents required to be provided to Dr. Finkelstein by the American Counsel of Graduate Medical Education (ACGME), including a Summative Evaluation, Proof of Completion for at least two years of surgical residency, and her Diploma for completing the intern year of the General Surgery Residency ("Completion Documents"), unless she agreed to sign a Non-Disclosure Agreement and General Release, agreeing not to divulge any events or facts concerning the Surgical Residency Program, and releasing both Defendants from liability with respect to any and all claims related to her Surgical Residency Program experience, as a pre-condition to receiving the Completion Documents, which Defendants were required to provide to her by law. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 33 | Therefore, the demand by Dr. Ben-David and Mount Sinai that she sign a Non-Disclosure Agreement and General Release in exchange for receiving the Completion Documents was extortion and blackmail by requiring her to give up something of value in exchange for something she was legally entitled to receive. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 34 | Dr. Finkelstein refused to sign the Non-Disclosure Agreement and General Release….. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for | 2/17/2023 | 38 | Para. 39 | Upon information and belief, Dr. Ben-David's disparaging comments made about Dr. Finkelstein were intentionally false, made knowingly, with malice, and bad faith, in efforts to discredit her and force her to sign the Non-Disclosure Agreement and General Release releasing Defendants from any claims she may |

EXHIBIT A to Defendants' Rule 11 Motion for Sanctions  - - Plaintiff's Use of Frivolous "Non-Disclosure Agreement" Allegation

| | | | | |
|---|---|---|---|---|
| Injunctive Relief and Damages | | | | have, and to prevent her from continuing in a residency program and/or obtaining employment as a physician. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 41 | Dr. Finkelstein has continued to interview with other hospital systems across the country, and when she inquired as to whether or not Dr. Ben-David would provide her with a recommendation for that Program, she was told by the Defendants that if she did not sign the Non-Disclosure Agreement and General Release, Dr. Ben-David and Mount Sinai would not provide her with a reference, or would only provide defamatory comments about Plaintiff, and therefore without such a reference all of the applications which she submitted in order to continue her residency training and/or obtaining employment as a physician were rejected. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 50 | These actions of the Defendants' have effectively ended Dr. Finkelstein's career as a physician due to the Defendants' relentless campaign to damage her reputation, Defendants' actions to impede Dr. Finkelstein from completing her training by denying required records, effectively holding Dr. Finkelstein in career limbo, with little or no prospects for employment, until such time she signs a Non-Disclosure Agreement and General Release in favor of Defendants. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 63 | Also pursuant to that Graduate Medical Education Program Agreement, Dr. Finkelstein was to serve as a resident in Surgical Residency without the imposition of any restrictive covenants by Defendants. See Exhibit B ¶15. Dr. Ben-David violated the GME Agreement's restrictive covenants provision when its associates tried to force Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release, agreeing not to divulge any events or facts concerning the Surgical Residency Program, and releasing both Defendants from liability with respect to any and all claims related to her Surgical Residency Program experience, as a precondition to receiving the Completion Documents, in clear breach of the GME restrictive covenant provision. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 64 | Defendants went on to act on this veiled threat by both refusing to release Dr. Finkelstein's records and Completion Documents, as well as providing incomplete or intentionally erroneous information to other residency programs or prospective employers as a means to force Dr. Finkelstein to agree to sign a Non-Disclosure Agreements and/or General Releases so that their conduct never reached the public view. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 76 | MSMC violated the GME Agreement's restrictive covenants provision when they tried to force Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release, agreeing not to divulge any events or facts concerning the Surgical Residency Program…. |

**EXHIBIT A to Defendants' Rule 11 Motion for Sanctions - - Plaintiff's Use of Frivolous "Non-Disclosure Agreement" Allegation**

| | | | | |
|---|---|---|---|---|
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 79 | Further, MSMC's withholding of Dr. Finkelstein's Completion documents in an attempt to force her into signing a Non-Disclosure Agreement and General Release releasing Defendants from any claims she may have, was a restrictive covenant, and as such, constituted a breach of the Graduate Medical Education Program Agreement. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 80 | Defendants went on to act on this veiled threat by both refusing to release Dr. Finkelstein's records and Completion Documents, as well as providing incomplete or intentionally erroneous information to other residency programs or prospective employers as a means to force Dr. Finkelstein to agree to sign a Non-Disclosure Agreements and/or General Releases so that their conduct never reached the public view. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 100 | Upon information and belief, Dr. Ben-David's actions, individually and on behalf of MSMC, were taken in bad faith as part of his smear campaign motivated by discrediting Dr. Finkelstein and forcing her to sign a Non-Disclosure Agreement and General Release, agreeing not to divulge any events or facts concerning the Surgical Residency Program, and releasing both Defendants from liability with respect to any and all claims related to her Surgical Residency Program experience. A copy of the email communication between Dr. Finkelstein's then legal counsel, Barry Wax, and MSMC general counsel, Arnie Jaffe, including attachments, is attached hereto as Exhibit "H." Dr. Ben-David's interference conforms to the Defendants' pattern of behavior seeking to force Dr. Finkelstein to sign a Non-Disclosure Agreement and General Release in favor of Defendants by all means necessary. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 101 | Dr. Ben-David's interference, individually and on behalf of MSMC, was not privileged or justified, as it was perpetrated as part of Defendants' efforts to induce Dr. Finkelstein to signing a Non-Disclosure Agreement and General Release benefitting Defendants. Further, Dr. Ben-David's actions were taken in bad faith and with specific intent to harm Dr. Finkelstein. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 107 | Upon information and belief, Dr. Ben-David's actions, individually and on behalf of MSMC, were taken in bad faith as part of Dr. Ben-David and MSMC's smear campaign motivated by discrediting Dr. Finkelstein and forcing her to sign a Non-Disclosure Agreement and General Release, agreeing not to divulge any events or facts concerning the Surgical Residency Program, and releasing both Defendants from liability with respect to any and all claims related to her Surgical Residency Program experience. See Exhibit H. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 109 | Upon information and belief, MSMC attempted to leverage Dr. Finkelstein's need for a proper reference and documentation to force her into signing a Non-Disclosure Agreement and General Release in favor of Defendants. |

**EXHIBIT A to Defendants' Rule 11 Motion for Sanctions  - - Plaintiff's Use of Frivolous "Non-Disclosure Agreement" Allegation**

| | | | | |
|---|---|---|---|---|
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 110 | MSMC's interference was not privileged or justified as it was perpetrated as part of Defendants' bad faith efforts to induce Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release benefitting Defendants. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 115 | Further, Dr. Ben-David's defamatory statements about Dr. Finkelstein cannot be considered to be privileged as they were made as a concerted effort by Dr. Ben-David to induce Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release benefitting Defendants, among other bad faith motives as appears below. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 116 | Defendants' statements were not made in good faith, thus, are not privileged, and were made with the further purpose of forcing Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release in favor of Defendants and/or to discredit her, and prevent her from continuing her residency training and/or obtaining employment as a physician. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 122 | Further, MSMC's defamatory statements about Dr. Finkelstein cannot be considered to be privileged as they were done as a concerted effort from Defendants to induce Dr. Finkelstein to signing a Non-Disclosure Agreement and General Release benefitting Defendants. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 123 | Defendants' statements were not made in good faith, thus, are not privileged, and were made with the purpose of forcing Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release in favor of Defendants and/or to discredit her, and prevent her from continuing her residency training and/or obtaining employment as a physician. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 129 | The Electronic Residency Application Service ("ERAS") match happens once per year. With that in mind, MSMC and Dr. Ben-David, both individually and through their agents, with the purpose of forcing Dr. Finkelstein into signing a General Release and a Non-Disclosure Agreement, sought to employ all means necessary to obtaining that goal, and have continued to do so since her forced resignation. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 130 | MSMC and Dr. Ben-David, through MSMC's counsel, Arnie Jaffe, had open conversations with Dr. Finkelstein's former legal counsel, Barry Wax, representing more than once that the Completion Documents would only be provided after she signed a General Release and a Non-Disclosure Agreement. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 133 | This effort, combined with Dr. Ben-David's cross-country defamatory campaign, were designed to place Dr. Finkelstein in a precarious position in which she would be much more likely to sign Defendant's Non-Disclosure Agreement and General Release, and to be prevented from continuing her residency, and/or obtaining employment as a physician. |

**EXHIBIT A to Defendants' Rule 11 Motion for Sanctions  - - Plaintiff's Use of Frivolous "Non-Disclosure Agreement" Allegation**

| | | | | |
|---|---|---|---|---|
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 134 | Defendants' actions, as a continuing unit functioning with a common purpose, were therefore unlawful, and by requiring Plaintiff to sign General Releases and Non-Disclosure Agreements as a condition to obtain documents to which Plaintiff was lawfully entitled to receive, these actions constitute extortion and blackmail, in violation of RICO. See Ray, 836 F.3d at 1352 (citing United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981).) |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 226 | Further, Dr. Ben-David and MSMC, though its agents, used their position of power to extort General Releases and Non-Disclosure Agreements, similar to the conduct carried out by MSMC's counsel, Arnie Jaffe. Mr. Jaffe, on behalf of MSMC and Dr. Ben-David, had open conversations with Dr. Finkelstein's former legal counsel, Barry Wax, representing more than once that the Completion Documents would only be provided after she signed a General Release and a Non-Disclosure Agreement. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 232 | Further, Dr. Ben-David and MSMC, though its agents, used their position of power to extort General Releases and Non-Disclosure Agreements, similar to the conduct carried out by MSMC's counsel, Arnie Jaffe. Mr. Jaffe, on behalf of MSMC and Dr. Ben-David, had open conversations with Dr. Finkelstein's former legal counsel, Barry Wax, representing more than once that the Completion Documents would only be provided after she signed a General Release and a Non-Disclosure Agreement. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 246 | Defendants' persistence in extorting Dr. Finkelstein's signature and agreement to a Non-Disclosure Agreement and General Release exonerating Defendants from any potential claims Dr. Finkelstein may otherwise have had against Defendants have likely cost her surgical career and continue to stop her from earning an income as a medical professional. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 252 | Dr. Finkelstein's educational and professional background sufficiently show that she is qualified to either join a new residency program, where she could continue her education under more impartial circumstances, but that she is also qualified to act as a medical professional, as indicated by MSBI's job offer. Likewise, instead of having the intention of protecting society at large, Defendants' misconduct is solely designed to intimidate Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release, thus avoiding the medical community and the community at large, learning of Defendants' impermissible misconduct. |

**EXHIBIT A to Defendants' Rule 11 Motion for Sanctions  - - Plaintiff's Use of Frivolous "Non-Disclosure Agreement" Allegation**

| | | | | |
|---|---|---|---|---|
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 267 | Defendants' persistence in extorting Dr. Finkelstein's signature and agreement to a Non-Disclosure Agreement and General Release exonerating Defendants from any potential claims Dr. Finkelstein may otherwise have had against Defendants have likely cost her surgical career and continue to stop her from earning an income as a medical professional. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 273 | Likewise, instead of having the intention of protecting society at large, Defendants' misconduct is solely designed to intimidate Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release, thus avoiding the medical community and the community at large, learning of Defendants' impermissible misconduct. |
| Plaintiff's, Paige Finkelstein, M.D., Verified Second Amended Complaint for Injunctive Relief and Damages | 2/17/2023 | 38 | Para. 288 | Defendants' persistence in extorting Dr. Finkelstein's signature and agreement to a Non-Disclosure Agreement and General Release exonerating Defendants from any potential claims Dr. Finkelstein may otherwise have had against Defendants have likely cost her surgical career and continue to stop her from earning an income as a medical professional. |
| Plaintiff's Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction Against Defendants, Mount Sinai Medical Center and Kfir Ben-David, M.D. | 2/24/2023 | 39 | Para. 3 | Since Plaintiff's forced resignation from the Surgical Residency Program, Defendants refused to release to Dr. Finkelstein, even after she retained legal representation, documents that are required to be provided to every resident by the American Counsel of Graduate Medical Education (ACGME), including, but not limited to, a Summative Evaluation, Proof of Completion for at least two years of surgical residency, and her Diploma for completing the intern year of the General Surgery Residency ("Completion Documents"), unless Plaintiff agreed to sign a Non-Disclosure Agreement and General Release, agreeing not to divulge any events or facts concerning the Surgical Residency Program, and releasing Defendants from liability with respect to any and all claims related to Dr. Finkelstein's Surgical Residency Program experience. A copy of Dr. Finkelstein's Affidavit addressing her account of the events is attached hereto as Exhibit "2." ("Finkelstein Decl."); see also Exhibit X to Finkelstein Decl. Defendants, Dr. Ben-David and MSMC, only provided Dr. Finkelstein with the Completion Documents after Dr. Finkelstein filed a Complaint with the ACGME and this lawsuit. See SAC at ¶¶ 10-11. |

EXHIBIT A to Defendants' Rule 11 Motion for Sanctions  - - Plaintiff's Use of Frivolous "Non-Disclosure Agreement" Allegation

| | | | | |
|---|---|---|---|---|
| Plaintiff's Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction Against Defendants, Mount Sinai Medical Center and Kfir Ben-David, M.D. | 2/24/2023 | 39 | Para. 4 | Likewise, although Plaintiff sought to, and continues to, do her best to mitigate the damages sustained by her this far as a result of Defendants' misconduct and negligence, most of which cannot be reduced to a monetary value, Defendants sought to, and continue to seek to, intimidate Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release in favor of Defendants…... See Second Amended Complaint at ¶¶ 10-11, 33-36; 39-45; 49-51. see also Finkelstein Decl. at ¶¶ 32-41; Exhibits W, X, Y, Z, AA, and BB. |
| Plaintiff's Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction Against Defendants, Mount Sinai Medical Center and Kfir Ben-David, M.D. | 2/24/2023 | 39 | Para. 11 | It is well documented that: (i) that Defendants devised an illegal enterprise to extort a General Release of all Claims and Non-Disclosure Agreement Non-Disclosure Agreement and General Release, agreeing not to divulge any events or facts concerning the Surgical Residency Program, and releasing both Defendants from liability with respect to any and all claims related to her Surgical Residency Program experience, as a pre-condition to producing to Plaintiff the Completion Documents, which Defendants were required to provide to her by law, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). See SAC ¶¶ 33-36; 125-136. See also Finkelstein Decl. ¶¶ 32-41; Exhibits W, X, Y, Z, AA, and BB; (ii) that |
| Plaintiff's Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction Against Defendants, Mount Sinai Medical Center and Kfir Ben-David, M.D. | 2/24/2023 | 39 | Para. 25 | Dr. Finkelstein is likely to prove that the Defendants, through MSMC's counsel, Arnie Jaffe, had open conversations with Dr. Finkelstein's former legal counsel, Barry Wax, representing more than once that the Completion Documents would only be provided after she signed a General Release and a Non-Disclosure Agreement. |
| Plaintiff's Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction Against Defendants, Mount Sinai Medical Center and Kfir Ben-David, M.D. | 2/24/2023 | 39 | Para. 37 | Further, Dr. Ben-David and MSMC, through its agents, used their position of power to extort General Releases and Non-Disclosure Agreements, similar to the conduct carried out by MSMC's counsel, Arnie Jaffe. |
| Plaintiff's Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction Against Defendants, Mount Sinai Medical Center and Kfir Ben-David, M.D. | 2/24/2023 | 39 | Para. 40 | Defendants' persistence in extorting Dr. Finkelstein's signature and agreement to a Non-Disclosure Agreement and General Release exonerating Defendants from any potential claims Dr. Finkelstein may otherwise have had against Defendants have likely cost her surgical career and continue to stop her from earning an income as a medical professional. |

EXHIBIT A to Defendants' Rule 11 Motion for Sanctions  - - Plaintiff's Use of Frivolous "Non-Disclosure Agreement" Allegation

| | | | | |
|---|---|---|---|---|
| Plaintiff's Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction Against Defendants, Mount Sinai Medical Center and Kfir Ben-David, M.D. | 2/24/2023 | 39 | Para. 45 | Likewise, instead of having the intention of protecting society at large, Defendants' misconduct was solely designed to intimidate Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release, thus avoiding the medical community and the community at large, learning of the treatment to which Dr. Finkelstein was subjected to by Defendants. |
| Plaintiff's , Paige Finkelstein, M.D., Affidavit in Support of her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction Against Defendants, Mount Sinai Medical Center and Kfir Ben-David, M.D. | 2/24/2023 | 40 | Para. 35 | These essential documents include a Summative Evaluation, Proof of Completion for at least two years of surgical residency, and a Diploma for completing the intern year of the General Surgery Residency ("Completion Documents"), unless I agreed to sign a Non-Disclosure Agreement and General Release, agreeing not to divulge any events or facts concerning the Surgical residency Program, and releasing them from liability with respect to any and all claims related to my Surgical Residency Program experience. |
| Plaintiff's , Paige Finkelstein, M.D., Affidavit in Support of her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction Against Defendants, Mount Sinai Medical Center and Kfir Ben-David, M.D. | 2/24/2023 | 40 | Para. 36 | I then immediately engaged legal representation to assist me in obtaining a copy of my records and the Completion Documents, which Dr. Ben-David & MSMC continued to withhold in a blatant attempt to force me into signing a Non-Disclosure Agreement and General Release forgoing any potential claim I may have against them. A copy of the communication between my legal representative, Barry Wax, and Defendants' counsel is attached hereto as Exhibit "X." |
| Plaintiff's, Paige Finkelstein, M.D., Response to Defendants' Motion to Strike or, in the Alternative, to Dismiss Plaintiff's Second Amended Complaint | 4/1/2023 | 65 | Summary of Argument, Para. 1 | Dr. Finkelstein sufficiently alleges the required main facts and supporting allegations in her Second Amended Complaint: (i) that Defendants devised an illegal enterprise to extort a General Release of all Claims and Non-Disclosure Agreement, agreeing not to divulge any events or facts concerning the Surgical Residency Program, and releasing both Defendants from liability with respect to any and all claims related to her Surgical Residency Program experience, as a pre-condition to producing to Plaintiff the Completion Documents, which Defendants were required to provide to her by law, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). |

EXHIBIT A to Defendants' Rule 11 Motion for Sanctions  - - Plaintiff's Use of Frivolous "Non-Disclosure Agreement" Allegation

| | | | | |
|---|---|---|---|---|
| Plaintiff's, Paige Finkelstein, M.D., Response to Defendants' Motion to Strike or, in the Alternative, to Dismiss Plaintiff's Second Amended Complaint | 4/1/2023 | 65 | F. Dr. Finkelstein Has Sufficiently Alleged Her Defamation Claims Against MSMC And Dr. Ben-David (Counts VII And VII); last para. | Further, and as explained above, Defendants' statements were not made in good faith, thus, are not privileged, and were made with the further purpose of forcing Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release in favor of Defendants and/or to discredit her and prevent her from continuing her residency training and/or obtaining employment as a physician. |
| Plaintiff's, Paige Finkelstein, M.D., Response to Defendants' Motion to Strike or, in the Alternative, to Dismiss Plaintiff's Second Amended Complaint | 4/1/2023 | 65 | G. Dr. Finkelstein Has Sufficiently Alleged Her RICO Claim (Count IX); last para. | The elements of extortion have been properly and sufficiently alleged. See SAC ¶¶ 126-136. First, Defendants cannot take the absurd position that Arnold Jaffe, MSMC general counsel, or Dr. Ben-David, as Program Director, were acting within the scope of their roles while they both took illegal actions in furtherance of Defendants' enterprise to extort a General Release and a Non-Disclosure Agreement from Dr. Finkelstein. |
| Plaintiff's, Paige Finkelstein, M.D., Response to Defendants' Motion to Strike or, in the Alternative, to Dismiss Plaintiff's Second Amended Complaint | 4/1/2023 | 65 | J. Dr. Finkelstein Has Sufficiently Alleged Her Negligent Supervision and Retention Claims against MSMC (Counts XVIII and XIX); last para. | Defendants' reliance on Freese v. Wuesthoff Health Sys., Inc., No. 6:06CV175-ORL-31JGG, 2006 WL 1382111 (M.D. Fla. May 19, 2006) to advance the position that Dr. Finkelstein's Negligent Supervision and Retention Claims fail is once again mistaken, because it assumes that the only torts committed by Dr. Ben-David or other MSMC agents against Dr. Finkelstein were of sexual harassment or of a discriminatory nature. However, that is not supported by the SAC. See SAC ¶ 226, citing to Arnie Jaffe, MSMC general counsel, and Dr. Ben-David openly seeking to extort Dr. Finkelstein's signature of a General Release and a Non-Disclosure Agreement in exchange for the Completion Documents. |
| Plaintiff's, Paige Finkelstein, Reply Memorandum of Law in Further Support for her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction | 4/6/2023 | 72 | Factual Background; second para. | Having both notice and knowledge of their wrongdoing, Defendants employed, and continue to employ, different manners to discredit Dr. Finkelstein and extort her into signing a Non-Disclosure Agreement and General Release agreeing not to divulge any events or facts concerning the Surgical Residency Program and releasing both Defendants from liability with respect to any and all claims related to her Surgical Residency Program experience…. |

**EXHIBIT A to Defendants' Rule 11 Motion for Sanctions  - - Plaintiff's Use of Frivolous "Non-Disclosure Agreement" Allegation**

| | | | | |
|---|---|---|---|---|
| Plaintiff's, Paige Finkelstein, Reply Memorandum of Law in Further Support for her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction | 4/6/2023 | 72 | Factual Background; third para. | Dr. Finkelstein refused to sign the Non-Disclosure Agreement and General Release, and, until the filing of this action and a complaint was filed with the ACGME, despite repeated demands…. |
| Plaintiff's, Paige Finkelstein, Reply Memorandum of Law in Further Support for her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction | 4/6/2023 | 72 | Memorandum of Law; fourth para. | Here, Dr. Finkelstein has met her burden for showing entitlement to a preliminary injunction by establishing the likelihood of success on the merits, the likelihood of irreparable harm, the inadequacy of a remedy at law, that the harm to Plaintiff outweighs the harm to Defendants and the public interest in protecting former employees from being extorted into signing General Release of all Claims and Non-Disclosure Agreement benefitting former employers or educational institutions. |
| Plaintiff's, Paige Finkelstein, Reply Memorandum of Law in Further Support for her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction | 4/6/2023 | 72 | Memorandum of Law; last para. | Until such time as this Court grants Plaintiff's Motion, Defendants will continue to feel emboldened to sabotage Dr. Finkelstein's career in furtherance of their attempt to intimidate her into signing a Non-Disclosure Agreement and General Release benefiting Defendants. |
| Plaintiff's, Paige Finkelstein, Reply Memorandum of Law in Further Support for her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction | 4/6/2023 | 72 | Section I(a).; fifth para. | Defendants did this solely to damage Dr. Finkelstein's reputation as a means to extort from her a General Release of all Claims and Non-Disclosure Agreement, agreeing not to divulge any events or facts concerning the Surgical Residency Program, and releasing both Defendants from liability with respect to any and all claims related to her Surgical Residency Program experience. |
| Plaintiff's, Paige Finkelstein, Reply Memorandum of Law in Further Support for her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction | 4/6/2023 | 72 | Section I(c); second para. | The Defendants' primary motive was to force Dr. Finkelstein into signing a Non-Disclosure Agreement and General Release, to protect their reputation and avoid litigating, and the risks attendant thereto. |
| Plaintiff's, Paige Finkelstein, Reply Memorandum of Law in Further Support for her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction | 4/6/2023 | 72 | Section I(c); third para. | Defendants' underlying conduct, as alleged by the SAC and the Motion, involves malicious, defamatory speech that does not prevent this Court from issuing the requested injunctive relief, for, in this case, the defamatory statements are verbal acts in aid of another tort, and Defendants' sole goal was not to persuade public opinion, but to damage Dr. Finkelstein's business relationships, which Defendants were acutely aware, and to extort a non-disclosure agreement and release of claims from Dr. Finkelstein. |

**EXHIBIT A to Defendants' Rule 11 Motion for Sanctions  - - Plaintiff's Use of Frivolous "Non-Disclosure Agreement" Allegation**

| | | | | |
|---|---|---|---|---|
| Plaintiff's, Paige Finkelstein, Reply Memorandum of Law in Further Support for her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction | 4/6/2023 | 72 | Section I(d); first para. | Also, the allegations in the SAC and the Motion are supported by 32 exhibits, which demonstrate: (i) that Defendants devised an illegal enterprise to extort a General Release of all Claims and Non-Disclosure Agreement and General Release, agreeing not to divulge any events or facts concerning the Surgical Residency Program, and releasing both Defendants from liability with respect to any and all claims related to her Surgical Residency Program experience…. |
| Plaintiff's, Paige Finkelstein, Reply Memorandum of Law in Further Support for her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction | 4/6/2023 | 72 | Section I(f); last para. | Further, it is not in the public interest for Defendants to spread false and misleading statements about Dr. Finkelstein's uncorroborated and unspecified professionalism issues. It is also not in the public interest for Defendants to utilize a pattern of misconduct designed to force former residents and employees into signing Non-Disclosure Agreements or Release of All Claims benefiting Defendants. If, as the factual record submitted by Dr. Finkelstein establishes, Dr. Finkelstein has never presented professionalism issues, and Defendants this false narrative to interfere with Dr. Finkelstein's business relationships as a stratagem to extort a Non-Disclosure Agreement and Release of All Claims from Plaintiff, then Defendants' knowingly false statements otherwise may be enjoined. |
| Plaintiff's, Paige Finkelstein, Reply Memorandum of Law in Further Support for her Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction | 4/6/2023 | 72 | Section I(g); last para. | If Defendants' unabashed resolve in forcing Dr. Finkelstein into signing a Non-Disclosure Agreement and Release of All Claims by any means necessary so far in order to safeguard Defendants' and the Program's prestige and reputation, including the commission of several torts are any indications of the lengths Defendants are willing to go…. |

# EXHIBIT B

# Redacted

**From:** Barry M. Wax <barry@barrywax.com>
**Sent:** Thursday, January 28, 2021 12:14 PM
**To:** Paige Finkelstein <paige@finkelstein.us>
**Cc** Redacted
**Subject:** FW: Paige Finkelstein, M.D.
**Importance:** High

Paige and David,

I spoke with Arnie Jaffee yesterday and the hospital will agree to give you a letter of successful completion of your 2nd year and an internship diploma in exchange for a signed release. Perhaps we should have a conference this afternoon to discuss it and come to a decision collectively.

They cannot give you a copy of your MSPE letter as it is confidential. I reviewed your email dated 1/20 in which you included the following:

UM website:

https://med.miami.edu/en/medical-education/divisions/registrar/alumni-services

MSPE Request

To request an MSPE, please fill out the FERPA Alumni Request Form. Please note that the Dean's Letter (MSPE) is sent as a hard copy or emailed as a secure pdf to a requesting institution. It cannot be faxed nor given directly to the student/alumni.

Arnie verified the same, and told me he called UM before getting back to me to verify it was not able to be released to you, which is exactly what this passage says. Mt. Sinai will not violate that protocol.

I don't understand why the schools expect you to include documents in 1 pdf file if the majority of them cannot be disclosed directly to you. When discussing this with Arnie and advising him the directions were coming from ABSGME he was surprised also.

Perhaps the application submission requirements are conflating the request for these documents from the specific institutions with the actual documents. Perhaps you can obtain additional guidance from the ABSGME.



**Law Offices of Barry M. Wax**
**701 Brickell Avenue**
**Suite 1550**
**Miami, Florida 33131**
**(305) 373-4400 - Office**
**(305) 728-5139 – Fax**
**www.barrywax.com**
**Primary E-mail Address for Service of Pleadings: barry@barrywax.com**

**"The criminal defense lawyer marches into the pit, often unloved by everyone in the courtroom, but with the courage, strength and mind to make our Constitution live as a vibrant being in that courtroom on behalf of someone who at that moment stands for all the principles of freedom and dignity that have been preserved in our constitution. It is a chore in many respects. It is difficult in all respects. It is tiring. It is demanding. But it is what we signed up for." – Albert Krieger**

---

**From:** Arnold Jaffee <Arnold.Jaffee@msmc.com>
**Sent:** Wednesday, January 27, 2021 5:03 PM
**To:** Barry M. Wax <barry@barrywax.com>
**Subject:** Paige Finkelstein, M.D.

Barry,

I have prepared the attached release for your review with Dr. Finkelstein.  Please let me know if you have any questions or comments.  Best regards.

--Arnie

Arnie Jaffee
Senior Vice President and General Counsel
Mount Sinai Medical Center
Warner Building, Fifth Floor
4300 Alton Road
Miami Beach, Florida 33140
phone: (305) 674-2444
fax: (305) 674-2007
e-mail: ajaffee@msmc.com

Mount Sinai Top 100



MSMC Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain CONFIDENTIAL or PRIVILEGED information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and immediately destroy all copies of the original message and all attachments.

## FULL AND FINAL RELEASE OF ALL CLAIMS

I agree that in exchange for MOUNT SINAI MEDICAL CENTER of FLORIDA, INC. (the "Hospital") providing me, in connection with my application for a medical residency program, with:

    (i)      a letter from the general surgery program director or other qualified individual stating that I completed two years of medical residency in general surgery; and

    (ii)     a diploma from completing my intern (1st) year;

I forgive, release and discharge the Hospital from and against any and all actions, claims or demands that now exist, or may hereafter exist, against the Hospital and any other person, corporation, association or partnership employed by or associated with the Hospital arising out of any and all incidents that may have occurred during, or in relation to, my medical residency at the Hospital from the beginning of time to the date of this Release. I understand that I am providing a full and final release of all known or unknown and anticipated or unanticipated claims, payments, injuries or damages, I agree not to institute administrative proceedings or a lawsuit against the Hospital, and I represent and warrant that no other person or entity has initiated or will initiate such proceedings or lawsuit on my behalf.

I warrant that: (i) no promise or inducement has been offered to me except for the Hospital providing the designated two items stated above (the "Stated Items"); and (ii) I have signed and given this Release without relying on any statement or representation by the Hospital or any other person or parties released, or their representatives, other than the Hospital providing the Stated Items.

IN WITNESS WHEREFORE, I have signed this Release on _____, 2021.


_____

Paige Finkelstein, M.D.


_____

Signature (Witness)

Print Name: _____


_____

Signature (Witness)

Print Name: _____

# EXHIBIT C

Page 1

1                UNITED STATES DISTRICT COURT

                 SOUTHERN DISTRICT OF FLORIDA

2                      MIAMI DIVISION

3                CASE NO.:  1:23-cv-20188-RKA

4

5    PAIGE FINKELSTEIN, M.D.,

6            Plaintiff,

     vs.

7

     MOUNT SINAI MEDICAL CENTER OF

8    FLORIDA, INC, a Florida Not For Profit

     Corporation, and KFIR BEN-DAVID, M.D.,

9

             Defendants.

10   _____/

11

12

13

14                   Monday, June 5, 2023

                     9:40 a.m. - 4:22 p.m.

15

16

17     HYBRID ZOOM VIDEOCONFERENCE DEPOSITION OF BARRY WAX,

                          ESQUIRE

18

19

20

21           Taken on behalf of the Defendants before

22   Christine Savoureux-Mariner, Florida Professional

23   Reporter and Notary Public in and for the State of

24   Florida at Large, pursuant to Notice of Taking

25   Deposition in the above cause.

```
 1            THE WITNESS:  I thought that's what your
 2        question asked.  Is that what it asked?
 3            MR. LEVENSTEIN:  I didn't think it was
 4        qualified that way.
 5    BY MR. RUFFNER:
 6        Q    Are you aware of anyone at Mount Sinai
 7    threatening Dr. Finkelstein if she didn't sign an NDA,
 8    she would not receive certain documents?
 9            MR. LEVENSTEIN:  And my objection was if it's
10        not something you learned from Mr. Finkelstein or
11        Dr. Finkelstein, you can answer.
12            THE WITNESS:  The only source of my knowledge
13        about any of that would have been coming from
14        either one of my clients, so I have to claim
15        privilege.
16    BY MR. RUFFNER:
17        Q    How about from Mr. Jaffee?
18        A    No, Arnie never threatened anything.
19        Q    Did he ever tell you that anybody else at
20    Mount Sinai was threatening?
21        A    Not that I recall.
22        Q    Are you aware of any attempts by
23    Dr. Finkelstein to continue her residency at another
24    location in Delray Beach?
25        A    I might be.  Off the top of my head, I'm not.
```

Page 126

1      Q    Do you have any independent recollection of

2  what was discussed?

3      A    All I can say is that I would not have let

4  five weeks go by after Mr. Jaffee sent me a release

5  without responding to him.

6           MR. LEVENSTEIN:  Just for the record, the

7           exhibit marked -- the March 2, 2021 letter is

8           Plaintiff's Exhibit 7 to this deposition in which

9           the question of the release was addressed by

10          Mr. Wax.

11 BY MR. RUFFNER:

12     Q    In that, as you called it, five-week time

13 frame, did you ever discuss with Mr. Jaffee the concept

14 of extortion?

15     A    I've never discussed the concept of extortion

16 with Mr. Jaffee.  Extortion is a crime.

17     Q    How about NDA or nondisclosure agreement?

18     A    I have no specific recollection of discussing

19 an NDA with Mr. Jaffee.

20     Q    And confidentiality?

21     A    Same.

22     Q    How about more generally, any discussion with

23 Mr. Jaffee in which Dr. Finkelstein would be precluded

24 from disclosing the terms of the release?

25     A    I don't have a specific recollection of that.

# EXHIBIT D

# Redacted

**From:** Barry M. Wax <barry@barrywax.com>
**Sent:** Thursday, January 28, 2021 12:14 PM
**To:** Paige Finkelstein <paige@finkelstein.us>
**Cc** Redacted
Redacted

Redacted



---

**From:** Arnold Jaffee <Arnold.Jaffee@msmc.com>
**Sent:** Wednesday, January 27, 2021 5:03 PM
**To:** Barry M. Wax <barry@barrywax.com>
**Subject:** Paige Finkelstein, M.D.

Barry,

I have prepared the attached release for your review with Dr. Finkelstein.  Please let me know if you have any questions or comments.  Best regards.

--Arnie

Arnie Jaffee
Senior Vice President and General Counsel
Mount Sinai Medical Center
Warner Building, Fifth Floor
4300 Alton Road
Miami Beach, Florida 33140
phone: (305) 674-2444
fax: (305) 674-2007
e-mail: ajaffee@msmc.com

Mount Sinai Top 100



MSMC Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain CONFIDENTIAL or PRIVILEGED information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and immediately destroy all copies of the original message and all attachments.

**FULL AND FINAL RELEASE OF ALL CLAIMS**

I agree that in exchange for MOUNT SINAI MEDICAL CENTER of FLORIDA, INC. (the "Hospital") providing me, in connection with my application for a medical residency program, with:

(i)     a letter from the general surgery program director or other qualified individual stating that I completed two years of medical residency in general surgery; and

(ii)    a diploma from completing my intern (1st) year;

I forgive, release and discharge the Hospital from and against any and all actions, claims or demands that now exist, or may hereafter exist, against the Hospital and any other person, corporation, association or partnership employed by or associated with the Hospital arising out of any and all incidents that may have occurred during, or in relation to, my medical residency at the Hospital from the beginning of time to the date of this Release.  I understand that I am providing a full and final release of all known or unknown and anticipated or unanticipated claims, payments, injuries or damages, I agree not to institute administrative proceedings or a lawsuit against the Hospital, and I represent and warrant that no other person or entity has initiated or will initiate such proceedings or lawsuit on my behalf.

I warrant that: (i) no promise or inducement has been offered to me except for the Hospital providing the designated two items stated above (the "Stated Items"); and (ii) I have signed and given this Release without relying on any statement or representation by the Hospital or any other person or parties released, or their representatives, other than the Hospital providing the Stated Items.

IN WITNESS WHEREFORE, I have signed this Release on _____, 2021.


_____
Paige Finkelstein, M.D.


_____
Signature (Witness)

Print Name: _____


_____
Signature (Witness)

Print Name: _____

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

PAIGE FINKELSTEIN, M.D.,         )
                                        )

       Plaintiff,              )  Case No. 1:23-CV-20188-RKA
                                        )

v.                                 )
                                        )

MOUNT SINAI MEDICAL CENTER OF   )
FLORIDA, INC., a Florida Not For Profit  )
Corporation, and KFIR BEN-DAVID, M.D.,  )
                                        )

       Defendants.

_____/

**PLAINTIFF, PAIGE FINKELSTEIN, M.D.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT, MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC.'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiff, PAIGE FINKELSTEIN, M.D., by and through the undersigned counsel, hereby files her Supplemental Responses and Objections to Defendant, Mount Sinai Medical Center of Florida, Inc.'s First Request for Production of Documents, and in support thereof states:

Plaintiff will produce the documents requested with respect to her medical condition and with respect to the various applications she has submitted to hospitals and other facilities upon the execution of an agreement by Defendants that all such documents shall be confidential and sealed and not to be filed in this action or any other public record.

**GENERAL OBJECTIONS**

1.     The following responses are based on information currently available to Plaintiff. These responses are given without prejudice to Plaintiff's right to produce or rely on subsequently discovered information.

1

2.      Further discovery, independent investigation, or other analysis may lead to the discovery of additional information, which may lead to additions or changes to these responses.

3.      Nothing in these responses is intended to be or should be construed as a waiver of the attorney-client privilege, the work product doctrine, or any other protection. Inadvertent production of such protected information is not intended to be and shall not operate as a waiver of the applicable privilege and should be treated as set out in the Confidentiality Agreement to be executed by the parties. Any information withheld on the basis of such privilege will be identified on a privilege log as required by the Federal Rules of Civil Procedure/in accordance with the Confidentiality Agreement.

4.      Unless otherwise indicated, Plaintiff will produce information relating only to matters occurring/dated between 2015 to the present date (hereafter "Relevant Period").

5.      Plaintiff reserves the right to condition the production of documents containing confidential or proprietary information or trade secrets on the Court's issuance of a confidentiality or protective order governing the disclosure of any such information.

6.      The production of any documents or information by Plaintiff is made without waiver, and with preservation, of any privilege or protection against disclosure afforded to documents containing confidential or proprietary information or trade secrets.

7.      Plaintiff objects to the Document Requests to the extent that they would require Plaintiff to produce documents or information covered by confidentiality agreements with others, or that would require Plaintiff to violate the privacy interests of others.

## DOCUMENTS TO BE PRODUCED

1.      **All documents sent and/or received by You, and all communications by and between You and the Equal Employment Opportunity Commission ("EEOC"), including those which refer or relate to MSMC.**

**RESPONSE:** Plaintiff objects to Request No. 1 on the grounds that it calls for information readily available from another source and also under the control of Defendant MSMC. Subject to the foregoing objections and the general objections, Plaintiff will produce all non-privileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff.

2.      **All documents sent and/or received by You, and communications by and between You and the Accreditation Council for Graduate Medical Education ("ACGME"), including those which refer or relate to MSMC.**

**RESPONSE:** Plaintiff objects to Request No. 2 on the grounds that it calls for information readily available from another source or otherwise under the control of Defendant MSMC. Subject to the foregoing objections and the general objections, Plaintiff will produce all nonprivileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff.

3.      **All documents and communications which refer or relate to complaints You have made to any person or entity concerning MSMC or Dr. Ben-David.**

**RESPONSE:** Plaintiff objects to Request no. 3 on the grounds that it is vague and unclear because this request is non-specific, does not identify any individuals to whom communications were potentially sent or received from, and ask for virtually any document in existence in any way related to complaints Dr. Finkelstein may have made concerning the Defendants. The Defendants

should specify which documents and communications they are requesting and identify any specific

parties with regard to those communications of which they have knowledge.

**4.      All documents sent to and/or received by You, and communications with any person You sought, received, or did not receive a professional or personal reference or recommendation from, since January 1, 2020, including those individuals identified by You in this Action. Such documents and communications shall include but not be limited to all requests for a reference, responses thereto, and drafts and final versions of reference letters.**

**RESPONSE:** Plaintiff objects to Request no. 4 on the grounds that it is vague and unclear

because it does not identify any individuals to whom Plaintiff sent or received documents or

otherwise communicated with. Subject to the foregoing objections and the general objections,

Plaintiff will produce all nonprivileged documents responsive to Request no. 4 pursuant to the

Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to

produce those same documents in their possession, custody and control to the Plaintiff.

See attached documents Bates # Finkelstein 1-75 Highly Confidential

**5.      All documents and communications that refer or relate to your use of any professional or personal reference or recommendation received by you since January 1, 2020.**

**RESPONSE:** Plaintiff objects to Request no. 5 on the grounds that it is vague and unclear

because this request is non-specific and requests any piece of paper that could possibly refer or

relate to any professional or personal reference or recommendation received by Plaintiff since

January 1, 2020.  The Defendants should specify which documents and communications they are

requesting and identify any specific parties with regard to those communications of which they

have knowledge.

**6.      All communications by and between You and your father Mr. David Finkelstein, which refer or relate to MSMC, Dr. Ben-David or the allegations You have made in this Action.**

**RESPONSE:** Plaintiff objects to Request no. 6 on the grounds that it seeks

communications or other documents that are protected by the attorney-client privilege and/or work

product doctrine. Plaintiff is withholding such privileged documents concerning communications protected by the attorney client and work product privileges, as all such communications would have occurred in the presence of an attorney or if in writing as part of correspondence between attorney and client. Subject to the foregoing objections and the general objections, Plaintiff represents that she does not have any non-privileged documents responsive to this Request.

**7.     All documents and communications that refer or relate to your father, Mr. David Finkelstein's statement in a letter to MSMC dated March 31, 2021: "Over the next several months I can imagine that the reasons for [Plaintiff's] departure from the program are going to be explained in detail through our public relations and social media teams, and in private with various local and national VIPs, including large donors, as we are national partners with patient advocacy groups and FirstNet.gov." *See* ECF No. 24-25, Ex. I.**

**RESPONSE:** Plaintiff objects to Request no. 7 on the grounds that it seeks communications or other documents that are protected by the attorney-client privilege and/or work product doctrine. Plaintiff is withholding such privileged documents concerning communications protected by the attorney client and work product privileges, as all such communications would have occurred in the presence of an attorney or if in writing as part of correspondence between attorney and client. Subject to the foregoing objections and the general objections, Plaintiff represents that she does not have any non-privileged documents responsive to this Request.

**8.     All documents and communications which refer or relate to applications You have prepared or submitted (including drafts thereof) for any graduate education (including but not limited to business or medical schools) since January 1, 2020.**

**RESPONSE:** Plaintiff objects to Request no. 8 on the grounds that it is vague and unclear because it does not identify any individuals and/or entities to which Plaintiff sent or received documents or otherwise communicated with. Subject to the foregoing objections and the general objections, Plaintiff will produce all non-privileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff.

See attached documents Bates # Finkelstein 76-152 Highly Confidential

See attached supplemental documents Bates # Finkelstein 659-663 Highly Confidential

**9.      All documents and communications which refer or relate to applications (or other type of requests to join) You have prepared or submitted (including drafts thereof) to hospitals, healthcare systems or healthcare residency/medical programs since January 1, 2020, including but not limited to Larkin Community Hospital, University of San Francisco, and Mount Sinai Hospital– Beth Israel, New York.**

**RESPONSE:** Plaintiff objects to Request no. 9 on the grounds that it is vague and unclear because it does not identify any individuals and/or entities to which Plaintiff sent or received documents or otherwise communicated with. Subject to the foregoing objections and the general objections, Plaintiff will produce all non-privileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff.

See attached documents Bates # Finkelstein 153-175 Highly Confidential

See attached supplemental document Bates # Finkelstein 664-667 Highly Confidential

**10.      The "Non-Disclosure Agreement" you allege in this Action. *See, e.g.,* SAC ¶¶ 10, 11, 33, 34, 39, 41, and 50.**

**RESPONSE:** Plaintiff does not have any documents responsive to this Request.

**11.      All documents sent to/or received by You, and communications by and between You and Mr. Barry Wax, Esq, which refer or relate to MSMC or Dr. Ben-David or to any allegations You make in this Action.**

**RESPONSE:** Plaintiff objects to Request no. 11 on the grounds that it seeks communications or other documents that are protected by the attorney-client privilege and/or work product doctrine. Plaintiff is withholding such privileged documents concerning communications protected by the attorney client and work product privileges, as all such communications would have occurred in the presence of an attorney or if in writing as part of correspondence between

attorney and client. Subject to the foregoing objections and the general objections, Plaintiff represents that she does not have any non-privileged documents responsive to this Request.

**12.    All documents and communications by and between You and any current or former surgical resident, faculty, administrator, or physician affiliated with MSMC that refers or relates to the allegations You have made in this Action.**

**RESPONSE:** Plaintiff objects to Request no. 12 on the grounds that it is vague and unclear because it does not identify any individuals and/or entities to which Plaintiff sent or received documents or otherwise communicated with. Subject to the foregoing objections and the general objections, Plaintiff will produce all non-privileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff.

See attached documents Bates # Finkelstein 176-541 Confidential

See attached supplemental document Bates # Finkelstein 510-514 Highly Confidential

See attached supplemental document Bates # Finkelstein 668 Highly Confidential

**13.    All documents and communications which refer or relate to Your alleged Attention Deficit/Hyperactivity Disorder ("AD/HD"), including but not limited to all medical records and requests for accommodation(s) made to any entity or person including MSMC or Dr. Ben-David.**

**RESPONSE:** Subject to the general objections, Plaintiff will produce all non-privileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff.

See attached document Bates # Finkelstein 542 Highly Confidential

See attached supplemental documents Bates # Finkelstein 669-686 Highly Confidential

14.    All documents and communications which refer or relate to Your allegation in this Action that Your "fellow resident with AD/HD accommodations had double of the allotted time to take" the ABSITE. SAC ¶ 191.

**RESPONSE:** Plaintiff does not have any documents responsive to this Request.

15.    All documents and communications which refer or relate to any mental condition or diagnosis, including but not limited to documents and communications which relate to Your claim of "mental anguish [and] emotional distress." SAC ¶ 51.

**RESPONSE:** Plaintiff objects to Request no. 15 on the grounds that it is vague and unclear because it does not identify any individuals and/or entities to which Plaintiff sent or received documents or otherwise communicated with. Subject to the foregoing objections and the general objections, Plaintiff will produce all non-privileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff.

See attached documents Bates # Finkelstein 543-548 Highly Confidential

16.    All documents and communications which refer or relate to complaints You allege You made to MSMC or Dr. Ben-David including but not limited to those regarding patient safety, staff training issues, and how females were treated at MSMC.

**RESPONSE:** Plaintiff objects to Request no. 16 on the grounds that it is vague and unclear because it does not identify any individuals and/or entities to which Plaintiff sent or received documents or otherwise communicated with. Subject to the foregoing objections and the general objections, Plaintiff will produce all non-privileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff.

See attached documents Bates # Finkelstein 549-600 Confidential

See attached supplemental document Bates # Finkelstein 559-560 Highly Confidential

17.    All documents and communication statements which refer or relate to the alleged defamatory or disparaging comments you contend were made by Dr. Ben-David or MSMC's "agents" (SAC ¶ 121) in this Action.

**RESPONSE:** Plaintiff objects to Request no. 17 on the grounds that it is vague and unclear because it does not identify any individuals and/or entities to which Dr. Ben-David sent or received documents or otherwise communicated with. Plaintiff further objects to Request No. 17 on the grounds that it calls for information readily available from another source or otherwise under the control of Defendant MSMC. Subject to the foregoing objections and the general objections, Plaintiff will produce all non-privileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff.

See attached documents Bates # Finkelstein 601-604 Confidential

18.    All documents and communications which refer or relate to the extortion You allege was committed by MSMC or Dr. Ben-David.

**RESPONSE:** Plaintiff objects to Request no. 17 on the grounds that it is vague and unclear because it does not identify any individuals and/or entities to which MSMC and/or Dr. Ben-David sent or received documents or otherwise communicated with which refer or relate to Plaintiff's extortion claim. Plaintiff further objects to Request No. 18 on the grounds that it calls for information readily available from another source or otherwise under the control of Defendant MSMC. Subject to the foregoing objections and the general objections, Plaintiff will produce all non-privileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff

19.     All documents and communications which refer or relate to the reasons for removal from publication on or about February 18, 2016 by Taylor & Francis (Publisher) of your authored article entitled "Genetically Modified Foods: A Brief Overview of the Risk Assessment Process."

**RESPONSE:** Plaintiff objects to Request No. 19 on the grounds that it calls for information readily available from another source or otherwise under the control of Defendant MSMC. Subject to the foregoing objections and the general objections, Plaintiff will produce all non-privileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff.

See attached documents Bates # Finkelstein 605-610 Confidential

20.     All documents and communications which refer or relate to your interview for an article by Poets & Quants in or about May, 2022 regarding your purported experience at MSMC.

**RESPONSE:** Plaintiff objects to Request No. 20 on the grounds that it calls for information readily available from another source or otherwise under the control of Defendant MSMC. Subject to the foregoing objections and the general objections, Plaintiff will produce all non-privileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff.

See attached documents Bates # Finkelstein 611-614 Confidential

21.     All documents and communications which refer or relate to your allegations in the SAC that male and female residents at MSMC were subject to different treatment. *See, e.g.*, SAC ¶¶ 20-22, 24, 25, 28-32.

**RESPONSE:** Plaintiff objects to Request No. 21 on the grounds that it calls for information readily available from another source or otherwise under the control of Defendant MSMC. Subject to the foregoing objections and the general objections, Plaintiff will produce all

10

non-privileged documents responsive to this Request pursuant to the Confidentiality Agreement and Protective Order entered in this action, if the Defendants agree to produce those same documents in their possession, custody and control to the Plaintiff.

See attached documents Bates # Finkelstein 615-658 Confidential

Dated: May 17, 2023.                          Respectfully submitted,

                                              ___/s/ *Richard H. Levenstein*_____

                                              Richard H. Levenstein
                                              Florida Bar No. 235296
                                              Gabrielle O. Sliwka
                                              Florida Bar No. 1022654
                                              Abby M. Spears
                                              Florida Bar No. 44662
                                              Primary E-mail: rlevenstein@nasonyeager.com
                                              gsliwka@nasonyeager.com;
                                              aspears@nasonyeager.com
                                              Secondary E-mail: ptreadway@nasonyeager.com;
                                              creyes@nasonyeager.com
                                              NASON, YEAGER, GERSON,
                                              HARRIS & FUMERO, P.A.
                                              3001 PGA Boulevard, Suite 305
                                              Palm Beach Gardens, Florida 33410
                                              Telephone:      (561) 686-3307
                                              *Attorneys for Plaintiff, Paige Finkelstein, M.D.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was emailed on May 17, 2023, or in the manner specified on all counsel or parties of record on the Service List below:

***Attorneys for Defendant, Mount Sinai Medical Center of Florida and Defendant, Kfir Ben-David, MD***
Martin B. Goldberg, Esq.
David R. Ruffner, Esq.
Clark Splichal, Esq.
Lash & Goldberg LLP
Miami Tower
100 S.E. 2nd Street

Suite 1200
Miami, Florida 33131
Primary Email: mgoldberg@lashgoldberg.com; csplichal@lashgoldberg.com
druffner@lashgoldberg.com
Secondary Email: rdiaz@lashgoldberg.com; mwallace@lashgoldberg.com

***Attorneys for Defendant, Kfir Ben-David, MD***
Gary A. Orseck, Esq.
Lauren Cassady Andrews, Esq.
Kramer, Levin, Naftalis, & Frankel, LLP
2000 K Street, NW, 4th Floor
Washington, DC  20006
Primary Email: gorseck@kramerlevin.com; landrews@kramerlevin.com

*Attorneys for Plaintiff, Paige Finkelstein, M.D.*
NASON, YEAGER, GERSON,
HARRIS & FUMERO, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida 33410
Telephone:      (561) 686-3307
Facsimile:      (561) 686-5442
**Richard H. Levenstein, Esq**.
Primary E-mail: rlevenstein@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com;
creyes@nasonyeager.com
**Gabrielle O. Sliwka, Esq.**
Primary E-mail: gsliwka@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com;
creyes@nasonyeager.com
**Abby M. Spears, Esq.**
Primary E-mail: aspears@nasonyeager.com
Secondary E-mail: ptreadway@nasonyeager.com;
 creyes@nasonyeager.com


By:    /s/ Richard H. Levenstein
           Richard H. Levenstein
           Florida Bar No. 235296
           Gabrielle O. Sliwka
           Florida Bar No. 1022654
           Abby M. Spears
           Florida Bar No. 44662

# EXHIBIT F

| | |
|---|---|
| **From:** | Richard H. Levenstein |
| **To:** | Martin Goldberg; Pamela S. Treadway; Clark Splichal; Dave Ruffner; GOrseck@KRAMERLEVIN.com |
| **Cc:** | Rosy Diaz; Minerva Wallace; Delsa Suazo; Gabrielle O. Sliwka; Cynthia Reyes; LAndrews@KRAMERLEVIN.com; Abby M. Spears |
| **Subject:** | RE: SERVICE OF COURT DOCUMENT - Dr. Paige Finkelstein v Mount Sinai Medical Center and Dr. Kfir Ben-David - Case # 1:23-CV-20188 |
| **Date:** | Thursday, May 11, 2023 2:21:04 PM |
| **Attachments:** | image005.png |
| | image7309c2.PNG |

**EXTERNAL:**

Mr. Goldberg,

 In response to your reference to the non-disclosure agreement issue, we do not agree with your assessment, and we will not be dismissing any claims or withdrawing any allegations at this time. We will conduct discovery and then review the allegations and claims we have filed as would be done in any case.

        Thank you.

        Richard H.Levenstein

**Richard Levenstein**
Attorney at Law

Email: RLevenstein@nasonyeager.com
Tel: 561-686-3307 | Fax: 561-686-5442

Profile       vCard



3001 PGA Blvd, Suite 305 |Palm Beach Gardens |FL |33410
www.nasonyeager.com

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone (collect) and return the original message to us at the above address via the U.S. Postal Service. We will reimburse you for postage and/or telephone expenses.

**WIRE FRAUD ADVISORY:** Due to the increased risk associated with wire fraud and e-mail hacking and phishing attacks, in the event you receive an e-mail from Nason Yeager containing wire transfer instructions, please call Nason Yeager using previously known contact information and NOT information provided in the email, to verify the information contained within said wire transfer instructions prior to sending funds pursuant to such wire transfer instructions.

**Think Green!** Please do not print this e-mail unless absolutely necessary.

**From:** Martin Goldberg [mailto:mgoldberg@lashgoldberg.com]
**Sent:** Thursday, May 11, 2023 1:58 PM
**To:** Pamela S. Treadway <PTreadway@nasonyeager.com>; Clark Splichal <csplichal@lashgoldberg.com>; Dave Ruffner <druffner@lashgoldberg.com>; GOrseck@KRAMERLEVIN.com
**Cc:** Rosy Diaz <rdiaz@lashgoldberg.com>; Minerva Wallace <mwallace@lashgoldberg.com>; Delsa Suazo <dsuazo@lashgoldberg.com>; Gabrielle O. Sliwka <GSliwka@nasonyeager.com>; Cynthia Reyes <CReyes@nasonyeager.com>; LAndrews@KRAMERLEVIN.com; Abby M. Spears <ASpears@nasonyeager.com>; Richard H. Levenstein <RLevenstein@nasonyeager.com>
**Subject:** RE: SERVICE OF COURT DOCUMENT - Dr. Paige Finkelstein v Mount Sinai Medical Center and Dr. Kfir Ben-David - Case # 1:23-CV-20188
**Importance:** High

Mr. Levenstein:

You have not responded to item (2) below regarding the frivolously alleged non-disclosure agreement.  Please let us hear from you as soon as possible on this issue.

Thank you.

**Martin B. Goldberg**
Partner
T (305) 347-4040
E mgoldberg@lashgoldberg.com



Weston Corporate Center I
2500 Weston Rd., Ste. 220
Fort Lauderdale, Florida 33331
www.lashgoldberg.com

**From:** Martin Goldberg
**Sent:** Tuesday, May 2, 2023 7:19 PM
**To:** Pamela S. Treadway <PTreadway@nasonyeager.com>; Clark Splichal <csplichal@lashgoldberg.com>; Dave Ruffner <druffner@lashgoldberg.com>; GOrseck@KRAMERLEVIN.com
**Cc:** Rosy Diaz <rdiaz@lashgoldberg.com>; Minerva Wallace <mwallace@lashgoldberg.com>; Delsa Suazo <dsuazo@lashgoldberg.com>; Gabrielle O. Sliwka <GSliwka@nasonyeager.com>; Cynthia Reyes <CReyes@nasonyeager.com>; LAndrews@KRAMERLEVIN.com; Abby M.

Spears <ASpears@nasonyeager.com>; Richard H. Levenstein <RLevenstein@nasonyeager.com>
**Subject:** RE: SERVICE OF COURT DOCUMENT - Dr. Paige Finkelstein v Mount Sinai Medical Center and Dr. Kfir Ben-David - Case # 1:23-CV-20188

Counsel:

We are in receipt of the Response via service below.  There are numerous deficiencies.  To start our meet and confer process, I write this evening on two issues:

1) Please produce the documents identified in the Response by tomorrow via sharefile or other electronic means.  We agree to be bound by the protective order the parties agree upon or the Court enters in this Litigation.

2) In the Response, at paragraph 10, you admit that there is no Non-Disclosure Agreement.  This is directly contrary to many of the allegations in the SAC.  See, e.g., 10, 11, 33, 34, 39, 41, 50, 129, 130, 134. This is also consistent with Mr. Wax's statement to us that Mr. Jaffee, the Hospital's general counsel, never asked for or mentioned a non-disclosure agreement in resolution discussions.  Mr. Wax also advised that he had previously advised Mr. Levenstein of this fact.  Hence, please file a notice of withdrawal of all allegations involving the frivolously alleged Non-Disclosure Agreement by next Tuesday, May 9, 2023.

3) We will write separately on other deficiencies arising from the Response and our desire to meet and confer on same.

Thank you.

**Martin B. Goldberg**
Partner
T (305) 347-4040
E mgoldberg@lashgoldberg.com



Weston Corporate Center I
2500 Weston Rd., Ste. 220
Fort Lauderdale, Florida 33331
www.lashgoldberg.com

---

**From:** Pamela S. Treadway <PTreadway@nasonyeager.com>
**Sent:** Tuesday, May 2, 2023 4:14 PM
**To:** Clark Splichal <csplichal@lashgoldberg.com>; Dave Ruffner <druffner@lashgoldberg.com>; Martin Goldberg <mgoldberg@lashgoldberg.com>; GOrseck@KRAMERLEVIN.com
**Cc:** Rosy Diaz <rdiaz@lashgoldberg.com>; Minerva Wallace <mwallace@lashgoldberg.com>; Delsa Suazo <dsuazo@lashgoldberg.com>; Gabrielle O. Sliwka <GSliwka@nasonyeager.com>; Cynthia Reyes <CReyes@nasonyeager.com>; LAndrews@KRAMERLEVIN.com; Abby M. Spears <ASpears@nasonyeager.com>; Richard H. Levenstein <RLevenstein@nasonyeager.com>
**Subject:** SERVICE OF COURT DOCUMENT - Dr. Paige Finkelstein v Mount Sinai Medical Center and Dr. Kfir Ben-David - Case # 1:23-CV-20188

<mark>EXTERNAL:</mark>

| COURT IN WHICH PROCEEDING IS PENDING: | IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION |
|---|---|
| CASE NO.: | CASE NO. 1:23-CV-20188-RKA |
| NAME OF PARTIES: | PAIGE FINKELSTEIN, M.D., PLAINTIFF VS. MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC., A FLORIDA NOT FOR PROFIT CORPORATION, AND KFIR BEN-DAVID, M.D., DEFENDANT |
| TITLE OF DOCUMENT(S): | PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT, MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC.'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS |
| SENDER'S NAME AND TELEPHONE NUMBER: | PAMELA S. TREADWAY, CP, FRP ON BEHALF OF RICHARD H. LEVENSTEIN, ESQ., GABRIELLE O. SLIWKA, ESQ., |