UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-20188-ALTMAN/Reid

**PAIGE FINKELSTEIN, M.D.**,

    *Plaintiff*,

v.

**MOUNT SINAI MEDICAL CENTER OF FLORIDA**, *et al.*,

    *Defendants*.

_____/

## ORDER

The Plaintiff, Dr. Paige Finkelstein, filed an "Expedited Motion for Entry of Temporary Restraining Order and Preliminary Injunction" (the "Motion") [ECF No. 39], asking us to force the Defendants to "designate a new member of the Surgical Residency Program of [Dr. Finkelstein's] choice to serve as a reference provider," *id.* at 19. We referred the Motion to U.S. Magistrate Judge Lisette M. Reid, *see* Order of Referral [ECF No. 44] at 1, whose Report and Recommendation (the "R&R") [ECF No. 113] found that "Plaintiff has failed to establish that she is entitled to preliminary injunctive relief" and recommended that we deny the Motion, R&R at 9. Magistrate Judge Reid also cautioned the parties as follows:

> Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar movant from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

*Ibid.*

Dr. Finkelstein timely objected to the R&R, *see* Dr. Finkelstein's Objections to the Magistrate Judge's Report and Recommendation (the "Objections") [ECF No. 127], and the Defendants have

responded, *see* Response to Plaintiff's Objections ("Response") [ECF No. 150]. After careful review, we **OVERRULE** the Plaintiff's Objections, **ADOPT** Magistrate Judge Reid's R&R in full, and **DENY** the Motion.

## THE LAW

District courts must review *de novo* any part of a magistrate judge's disposition that has been properly objected to. *See* FED. R. CIV. P. 72(b)(3). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require a *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). "If no objection or only [a] partial objection is made to the magistrate judge's report, the district judge reviews those unobjected portions for clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (cleaned up)).

When a party timely objects to a magistrate judge's report and recommendation, the district judge must make a *de novo* determination "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Leonard v. Polk Cnty. Sheriff's Dep't*, 2019 WL 11641375, at *1 (M.D. Fla. Apr. 16, 2019) (Jung, J.). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). The "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citation omitted).

"A district court may grant a preliminary injunction only if the moving party establishes that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable injury unless the injunction is granted; (3) the harm from the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) the injunction would not be adverse to the public interest." *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270–71 (11th Cir. 2020) (footnote omitted). A showing of irreparable injury is "the sine qua non of injunctive relief" and is the most important of the four factors. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 826 F.2d 1283, 1285 (11th Cir. 1990)). To satisfy this standard, the "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Still, a district court cannot grant a preliminary injunction unless the moving party satisfies *all four* of the requirements. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("Because Wreal must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms [his request]."). The Plaintiff bears the burden of establishing her need for a preliminary injunction. *See ibid.* ("Because a preliminary injunction is an extraordinary and drastic remedy, its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." (cleaned up)).

## ANALYSIS

The preliminary injunction[1] Dr. Finkelstein requests is, by her own admission, unusual. *See* Injunction Hr'g Tr. [ECF No. 116] at 8 ("[Plaintiff's Counsel]: This is a unique set of circumstances,

---

[1] Dr. Finkelstein's Motion technically requests *both* a temporary restraining order *and* a preliminary injunction. *See* Motion at 4. The main difference between these two forms of equitable relief is that a temporary restraining order may be issued "without written or oral notice to the adverse party or its attorney[.]" FED. R. CIV. P. 65(b); *see generally* 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2951 (3d ed., Apr. 2023 update). For two reasons, we (like Magistrate Judge Reid) will only focus on the request for a preliminary injunction. *One*, our Defendants (the opposing party) "[had] notice of the application for the temporary restraining order," so a temporary restraining order (if granted) would not "differ functionally from a preliminary injunction." *United States v. State of Ala.*, 791 F.2d 1450, 1458 (11th Cir. 1986) (quoting *Dilworth v. Riner*,

so I can't provide the Court with a specific case that addresses this issue."). To summarize, Dr. Finkelstein wants an employee of Mount Sinai Medical Center—but *not* Dr. Ben-David—to "prepare what is commonly known as a program director letter for her based upon her two and a half years of residency as a general surgery resident at Mount Sinai[.]" *Id.* at 5. This letter is important to Dr. Finkelstein because, without it, she believes that her medical career cannot continue. *See id.* at 7 ("[Plaintiff's Counsel]: Dr. Finkelstein's career has been stymied because every application she has filed and every position she has sought has required a program director letter and/or a reference from the program director."). And Dr. Ben-David isn't an acceptable reference for Dr. Finkelstein because (she says) (1) Dr. Ben-David was motivated by "discrimination based upon her sex and disability," (2) Dr. Ben-David "took several retaliatory actions against her whenever she voiced her concerns about the Program," and (3) Dr. Ben-David "made defamatory statements to discredit her and prevent her from continuing her medical career." R&R at 2. In an argument that (as we will see) defies common sense, Dr. Finkelstein insists that this injunction "will ensure the preservation of the status quo by precluding Defendants from interfering with Dr. Finkelstein's abilities to continue her career as a medial professional[.]" Motion at 6. In essence, Dr. Finkelstein wants the federal courts to turn the medical profession upside down by requiring hospitals to allow surgical residents to *choose* their own (favorable) recommenders. That's what Dr. Finkelstein means when she asks us to "preserv[e] the status quo." Needless to say, that's not what status quo means—nor is it what the federal courts are for.

In any event, after holding a lengthy hearing on Dr. Finkelstein's Motion, *see generally* Injunction Hr'g Tr. [ECF No. 116], Magistrate Judge Reid concluded that Dr. Finkelstein hadn't established her

---

343 F.2d 226, 229 (5th Cir. 1965)). *Two*, the analysis for both forms of equitable relief is identical because both rely on the same four-factor test. *See Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001) (applying the four-factor test to both temporary restraining orders and preliminary injunctions).

4

entitlement to a preliminary injunction. As an initial matter, Magistrate Judge Reid characterized Dr. Finkelstein's request as little more than a demand for the court "to compel Defendants to express views with which they disagree." R&R at 6; *see also ibid.* ("Plaintiff describes her request as 'restraining' Defendants from taking certain actions, but however phrased, Plaintiff asks the Court to force Defendants to act, rather than simply maintaining status quo. This mandatory injunctive relief is particularly disfavored and places a higher burden on Plaintiff."). Magistrate Judge Reid went on to explain that (1) the Defendants didn't have "a duty to provide Plaintiff with a Program Director letter authored by an individual of her choice," and (2) Dr. Finkelstein had already received every document she was entitled to under the American Counsel of Graduate Medical Education's ("ACGME") policies and rules. *Id.* at 6–7.

Magistrate Judge Reid also found that Dr. Finkelstein didn't meet *any* of the four elements of a preliminary injunction. *First*, Magistrate Judge Reid wrote, Dr. Finkelstein "had not demonstrated a threat of continuing irreparable harm" because there was no evidence that the Defendants "are actively interfering with a current employment opportunity." *Id.* at 7. Here, Magistrate Judge Reid also noted that Dr. Finkelstein "may [still] recover monetary damages based on the alleged tortious interference and other causes of action raised in [her] complaint," which also weighed against a finding of irreparable harm. *Id.* at 7–8 (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). *Second*, Magistrate Judge Reid explained that Dr. Finkelstein was unlikely to succeed on the merits of her claims because the "Plaintiff's six-month evaluations directly refute her defamation and wrongful termination claims." *Id.* at 8. *Third*, Magistrate Reid said that "the balance of harms [did not] favor[ ] the entry of a preliminary injunction. Limiting or controlling Defendants' speech far outweighs the harm to Plaintiff." *Ibid. Fourth*, Magistrate Judge Reid opined that "the public will not be served by granting the injunctive relief" because "[c]ourts are particularly ill-equipped to evaluate academic performance." *Id.* at 9 (quoting *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 (1978)). In short, Magistrate Judge

5

Reid concluded that: (1) Dr. Finkelstein's request that we compel the Defendants to prepare a "program director letter" falls outside the scope of available injunctive relief; and (2) Dr. Finkelstein didn't satisfy any of the four elements of a preliminary injunction.

Dr. Finkelstein advances three objections to Magistrate Judge Reid's R&R. *One*, she objects to all "the findings of fact contained in the Report and Recommendations" because "the Magistrate Judge precluded the parties from relying on or even introducing witnesses' testimony and/or documents as evidence during the Injunction Hearing." Objections at 6. *Two*, she disagrees with Magistrate Judge Reid's characterization of her request for injunctive relief as "mandatory," insisting that "the remedy sought by Plaintiff with her Motion, far from compelling Defendants to express views with which they disagree, sought to preclude Defendants from withholding a Program Director's letter[.]" *Ibid.* (As we've suggested, this argument is particularly frivolous.) *Three*, Dr. Finkelstein maintains that she *has* met all four elements of a preliminary injunction because: (1) Magistrate Judge Reid's R&R "seemingly disregards" the "documents and legal analysis" that showed she *is* likely to succeed on her tortious-interference and extortion claims, *id.* at 7; (2) she continues to suffer irreparable harm because Dr. Ben-David "created [a] narrative pertaining to Dr. Finkelstein's unspecified professionalism issues," *id.* at 8; (3) the balance of harms tips in her favor because "an order restraining defendants from disseminating disparaging and defamatory statements about Dr. Finkelstein does not interfere with protected speech," *id.* at 9; and (4) the public has an interest in stopping the Defendants from "spread[ing] false and misleading statements about Dr. Finkelstein's uncorroborated and unspecified professionalism issues," *id.* at 10. We'll address—and overrule—each of Dr. Finkelstein's objections in turn.

I.  **Evidentiary Limitations at the Injunction Hearing (the First Objection)**

In her First Objection, Dr. Finkelstein challenges the procedures Magistrate Judge Reid followed at the injunction hearing. According to Dr. Finkelstein, Magistrate Judge Reid "precluded

the parties from relying on or even introducing witnesses' testimony and/or documents as evidence during the Injunction Hearing" and instead "relie[d] on facts as portrayed solely by Defendants' counsel, many of which are outside the pleadings and unsupported by competent evidence." *Id.* at 6. Dr. Finkelstein asserts that, because of the one-sided nature of the preliminary-injunction hearing, we shouldn't rely "on the factual assertions noted in the Report[.]" *Ibid.*[2] The Defendants offer several defenses of Magistrate Judge Reid's procedures: (1) "a full evidentiary hearing with live testimony was not required," they say, because "such testimony [wouldn't] help to illuminate any of the issues before the court," Response at 8; (2) Magistrate Judge Reid *did*, in fact, "permit the submission of voluminous documentary evidence" and carefully considered the evidence that was already in the record, *id.* at 9; and (3) Dr. Finkelstein never objected to Magistrate Judge Reid's procedures, so she's "waived her right to raise [the issue] now," *ibid*. We agree with the Defendants on all three counts.

On May 19, 2023, Magistrate Judge Reid held a hearing in preparation for the preliminary-injunction hearing she had scheduled for June 21, 2023. *See generally* 5/19/23 Hr'g Tr. [ECF No. 95]. During this status hearing, Magistrate Judge Reid wondered whether a preliminary injunction was even the proper mechanism for the relief Dr. Finkelstein was seeking.[3] *See id.* at 43–44 ("[The Court]: But that sounds like you're putting together a—a contract dispute, in which the doctor is required to write some sort of letter, and the doctor either hasn't done it or hasn't done it in an appropriate way, in accordance with the contract. It still doesn't sound like injunctive relief."). After some back and forth with Dr. Finkelstein's lawyer, the following exchange took place:

> [Plaintiff's Counsel]: Under the ACGME guidelines and rules under the manual, by which this residency program is governed and Dr. Finkelstein was governed, . . . they're

---

[2] Although we review Magistrate Judge Reid's factual findings *de novo* when Dr. Finkelstein objects to them, we don't need to hold our own evidentiary hearing. *See Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990) ("Thus, although *de novo* review [of the R&R] does not require a new hearing of witness testimony, it does require independent consideration of factual issues based on the record." (cleaned up)).
[3] We'll discuss Magistrate Judge Reid's (rightful) skepticism about the propriety of an injunction in these circumstances in Section II, *infra*.

7

> required to provide [a program director letter]. And it specifically says when a resident seeks transfer to another program, these documents must be provided.
>
> Counsel for the hospital responded by providing a letter, with an attached general release, indicating that if Dr. Finkelstein signed a general release of all claims . . . they would provide [a program director letter] to her if she signed the release. Without the release, they would provide nothing to her[.]
>
> The Court: Okay.
>
> [Plaintiff's Counsel]: That's the history. That's the true history of the relationship and that you will hear testimony of, which is why injunctive relief is appropriate.
>
> The Court: *I'm not sure I need any testimony.*
>
> [Plaintiff's Counsel]: *Right.*
>
> The Court: It sounds like a contractual dispute. What I need is to know what those guidelines are.

*Id.* at 45–46 (emphases added).

Magistrate Judge Reid then reiterated, *at least twice*, that she wouldn't need live testimony at the preliminary-injunction hearing because the dispositive question before her was *legal*, not factual. *See id.* at 47 ("[The Court]: Okay. Yeah, and it sounds like I need to know the legal issues. I don't need a lot of witnesses. Maybe there might be some documentation that—that you need to present, [Plaintiff's counsel], to support your—your side, and maybe [defense counsel]. But I don't see why it should require the testimony of witnesses. It's a legal argument, and that's what I'm expecting to hear on June 21st, a legal argument with respect to . . . the issues you're talking about, [Plaintiff's counsel]."); *id.* at 52–53 ("The Court: And no more—no more than a half-day hearing, which is really more of an evidentiary hearing, no witnesses, on June 21st, so that I can, first of all, resolve these issues. Now, if, after that, I determine somehow, 'Oh, yes, we need more,' we can go there."). Plaintiff's counsel *never* resisted (much less objected to) Magistrate Judge Reid's decision to forego witness testimony at the hearing. *See generally id.* at 45–53.

8

Magistrate Judge Reid properly limited the evidentiary scope of the preliminary-injunction hearing. The Eleventh Circuit has held that, in ruling on a preliminary injunction, a district court needn't hold an evidentiary hearing when the "facts in dispute are not material to the preliminary injunction sought[.]" *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998). Magistrate Judge Reid was clear about the scope of the issue before her: "What's my authority?" she asked. "What is the law, the statute, the regulation that's been violated here that I am going to be enjoining behavior to correct?" Injunction Hr'g Tr. [ECF No. 116] at 34.[4] Magistrate Judge Reid could (and did) determine whether the ACGME guidelines impose a *legal obligation* on the Defendants to prepare a program director's letter *that's acceptable to Dr. Finkelstein* by reference to the voluminous documentary evidence *already* in the record—which both parties relied on extensively at the hearing. *See, e.g.*, *id.* at 37–56 (Plaintiff's counsel citing extensively from [ECF No. 40] and its exhibits); *id.* at 57–73 (Defense counsel citing exhibits from [ECF No. 102]). Dr. Finkelstein now insists that the evidence the Defendants presented at the hearing "could be directly contradicted by witnesses' testimony or documents, had the Magistrate Judge not precluded their use at the Injunction hearing," Objections at 6, but she never deigns to explain *how* this unidentified testimony or documents would have rebutted the Defendants' evidence. Nor does she begin to tell us *which* parts of the Defendants' evidence her mystery witnesses would have contradicted. We won't overturn the magistrate judge's findings on the basis of conclusory supposition and innuendo.

In any event, Dr. Finkelstein *never* objected to Magistrate Judge Reid's proposed procedures—even though counsel had been on notice for over a month about Magistrate Judge Reid's plan—so she's waived any right to complain about it now. *Cf. Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d

---

[4] Magistrate Judge Reid also told the parties beforehand that, if this question were answered to her satisfaction during the June 21st hearing, she would be open to holding a *second hearing* where she *would* hear from fact witnesses. *See* 5/19/23 Hr'g Tr. [ECF No. 95] at 53 ("Now, if, after that, I determine somehow, 'Oh, yes, we need more,' we can go there.").

1234, 1264 (11th Cir. 2001) ("[I]t is incumbent upon the Intervenors to respond by, at the very least, raising in their opposition papers any all arguments or defenses they felt precluded judgment in Plaintiffs' favor."); *Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *see also, e.g.*, *Antoine v. Sch. Bd. of Collier Cnty., Fla.*, 301 F. Supp. 3d 1195, 1198 n.3 (M.D. Fla. 2018) (Chapell, J.) ("But neither party requested an evidentiary hearing, moved for leave to question the opposing side's witnesses, or asserted that live testimony would be needed to decide the motion for preliminary injunction. And no hearing was requested even when, about four weeks before oral argument, Judge McCoy's Order stated 'the hearing will be limited to argument of counsel because neither party has sought leave to the contrary pursuant to FED. R. CIV. P. 43.' Thus, to the extent Plaintiffs object to Judge McCoy not holding an evidentiary hearing, the Court is not persuaded. The parties opted to rely on their briefs, supporting documents, and arguments. Plaintiffs cannot now use that choice to contest the Report and Recommendation because they are unhappy with the result." (cleaned up)).

Because Magistrate Judge Reid didn't need to hear from witnesses to adjudicate the issues Dr. Finkelstein presented at the injunction hearing—and given Dr. Finkelstein's decision not to object to the magistrate judge's procedures *at the time*—we **OVERRULE** the First Objection.

## II.   Scope of Injunctive Relief (the Second Objection)

Dr. Finkelstein's Second Objection is (arguably) her most important and least persuasive. Magistrate As Magistrate Judge Reid explained:

> [T]he relief Plaintiff seeks is largely affirmative or mandatory injunctive relief. Plaintiff does not seek to maintain the *status quo*, but instead asks the Court to compel Defendants to provide a letter of recommendation to Plaintiff—or what Plaintiff calls a "Residency Program Director Letter"—authored by an individual of Plaintiff's choice. By asking for a letter recommendation that contains no "disparaging" or "inaccurate" statements, or that is limited to certain topics, Plaintiff basically asks the Court to compel Defendants to express views with which they disagree.

R&R at 5–6. Dr. Finkelstein rejects Magistrate Judge Reid's characterization of her request and insists that "the remedy sought by Plaintiff with her Motion, far from compelling Defendants to express views with which they disagree, sought to preclude Defendants from withholding a Program Director's letter, a letter which contains no claims based on communications or professionalism issues, which Defendants were willing to and ready to provide in exchange for Dr. Finkelstein signing a Release of All Claims Agreement." Objections at 6–7. The Defendants, for their part, ask us to reaffirm Magistrate Judge Reid's conclusion because (they say) "there is no law, rule or regulation that requires a residency program or recommender to provide such a reference, much less allow the resident to control the content of that letter." Response at 10.

During the preliminary-injunction hearing, Dr. Finkelstein argued that, under the ACGME's guidelines, "there is a requirement to provide this program director letter" upon request if a resident wants to transfer to a new residency program. Injunction Hr'g Tr. [ECF No. 116] at 45; *see also* Memorandum of Law in Support of Motion for Preliminary Injunction ("Finkelstein Memo") [ECF No. 94] at 7 (same). The Defendants responded that, for starters, the ACGME's standards don't create a "private right of action" for residents against their residency programs. Injunction Hr'g Tr. [ECF No. 116] at 64. But (the Defendants continued), even if the guidelines *did* create such a private right of action, the ACGME requires the residency program *only* to give a "document verification of program completion"—and *not*, as Dr. Finkelstein would have it, a "letter of recommendation." *Id.* at 69. After considering these arguments, Magistrate Judge Reid agreed with the Defendants, finding that: (1) the "Plaintiff fails to show that accreditation programs like the ACGME may be enforced by residents under a third-party beneficiary theory," R&R at 6; and (2) the ACGME's regulations "contain no express language requiring a 'letter,' let alone one authored by the resident's choice," *id.* at 7. Because (Magistrate Judge Reid explained) the Defendants weren't obligated (by any law or contract) to provide Dr. Finkelstein with a program director letter—let alone one composed by a doctor of Dr.

11

Finkelstein's choice—Dr. Finkelstein's proposed injunction would "force [the] Defendants to act, rather than simply maintaining [the] *status quo*" and constitutes the type of "mandatory injunctive relief" that's highly disfavored by the courts. *Id.* at 6 (citing *Jeremiah's Int'l Trading Co. v. Ren Media Grp. USA, Inc.*, 2017 WL 5900111, at *5 (M.D. Fla. Nov. 14, 2017) (McCoun, Mag. J.)).

Dr. Finkelstein didn't object to Magistrate Judge Reid's conclusion that she cannot privately enforce the ACGME's standards—nor did she contest Magistrate Judge Reid's determination that nothing in the ACGME requires a program director to provide a letter of recommendation on a resident's behalf. *See* Objections at 6–7.[5] Instead, she insists that her request cannot be categorized as

---

[5] Nor (for two reasons) could she have argued otherwise. *First*, Magistrate Judge Reid properly relied on persuasive federal-court decisions for the proposition that residents *cannot* sue to enforce the ACGME standards against their residency programs. *See, e.g.*, *Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 51 F. Supp. 3d 828, 843 (S.D. Ind. 2014) (Lawrence, J.) ("Because Dr. Castrillon has not demonstrated the existence of an enforceable contract between ACGME and St. Vincent, it is axiomatic that she has not demonstrated that she was the third party beneficiary of any such contract."); *Irani v. Palmetto Health, Univ. of S.C. Sch. of Med.*, 2016 WL 3079466, at *49 (D.S.C. June 1, 2016) (Currie, J.) ("[T]he new argument would fail because the nature of the promises between the Entity Defendants does not give rise to an inference residents are intended third-party beneficiaries rather than incidental beneficiaries of these agreements in general or any promises relating to ACGME standards in particular."); *Rice v. St. Louis Univ.*, 2020 WL 3000431, at *5 (E.D. Mo. June 4, 2020) (Pitlyk, J.) ("Dr. Rice tries to avoid summary judgment by noting that one of the Defendants 'admitted that the ACGME program requirements for graduate medical education and general surgery have been in effect throughout Plaintiff's residency . . . and that SLU is required to comply with these requirements.' That 'admission' is of no consequence. SLU, like all other accredited institutions, must comply with certain requirements to maintain its accreditation. Dr. Rice still must point to an identifiable contractual promise that SLU failed to honor if she wishes to avoid summary judgment on her breach of contract claims. Because she has not done so, Dr. Rice's breach of contract claims fail[.]" (cleaned up)); *see also Kavianpour v. Bd. of Regents of the Univ. Sys. of Ga.*, 2021 WL 2638999, at *42 (N.D. Ga. Jan. 28, 2021) (Vineyard, Mag. J.) (relying on *Irani* and *Rice* to dismiss "Kavianpour's breach of contract claims premised on any violation of the terms provided by the ACGME Policies"), *report and recommendation adopted*, 2021 WL 2635854 (N.D. Ga. Mar. 29, 2021) (Brown, J.).

*Second*, no ACGME policy requires a residency's program director to provide a "letter" upon demand. As Magistrate Judge Reid noted, the regulations "generally state that the sponsoring institution must provide 'document verification' to residents, but contain no express language requiring a 'letter,' let alone one authored by the resident's choice." R&R at 7. After reviewing the relevant ACGME regulations, we agree that they require a program director only to "verify" the amount of time the resident spent in the residency program; they do not even purport to require the program director to provide a favorable letter of recommendation upon demand. *See* ACGME § II.A.4 [ECF No. 102-33] at 3 ("The program director must: document verification of education for all residents within 30 days of completion of or departure from the program; and, provide verification of

a "mandatory injunction" since the "Defendants were willing to and ready to provide [a program director's letter] for Dr. Finkelstein in exchange for Dr. Finkelstein signing a Release of All Claims Agreement." *Ibid.* That's absurd. It's true that Dr. Ben-David drafted a letter, which briefly summarized Dr. Finkelstein's time as a resident. *See* Dr. Ben-David Letter [ECF No. 127-6] at 3. But Dr. Finkelstein's counsel *conceded* that this letter "was not adequate" and "would have generated many, many questions about [Dr. Finkelstein] and follow-up questions because of the brevity of that letter." Injunction Hr'g Tr. [ECF No. 116] at 6. So, instead of just compelling the Defendants to produce Dr. Ben-David's letter *without* the previously-demanded release, Dr. Finkelstein is now asking us to order "an individual at Mount Sinai Medical Center," but not Dr. Ben-David, to prepare "an objective and fair and impartial letter, program director letter . . . with regard to Dr. Finkelstein." *Id.* at 5. The Defendants, in other words, have already produced the only letter the ACGME could even be reasonably read to require—a letter about the duration of Dr. Finkelstein's residency—but that isn't good enough for Dr. Finkelstein, who wants us to compel the Defendants to draft a *new* letter that (she believes) would be more "objective," "fair," and "impartial." *Ibid.*

Magistrate Judge Reid was thus plainly correct when she described Dr. Finkelstein's request as a mandatory injunction. Mandatory injunctions "order[ ] a responsible party to 'take action.'" *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484 (1996). This kind of relief "goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)[6]; *accord Powers v. Sec'y, Fla. Dep't of Corr.*, 691 F. App'x 581, 583 (11th Cir. 2017). Dr. Finkelstein's request, in short, probably violates the First Amendment by asking us to regulate how and when the

---

an individual resident's education upon the resident's request, within 30 days[.]"). Any argument to the contrary would thus have been contradicted by the express language of the ACGME guidelines.
[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Defendants should speak. *See McClendon v. Long*, 22 F.4th 1330, 1336 (11th Cir. 2022) ("First Amendment protection 'includes both the right to speak freely and the right to refrain from speaking at all.'" (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977))); *see also CBS, Inc. v. Davis*, 510 U.S. 1315, 1318 (1994) (Blackmun, J., in chambers) (staying an injunction that would have "prohibit[ed] CBS from airing videotape footage taken at the factory of Federal Beef Processors, Inc.," even though doing so "could result in significant economic harm to Federal"). In short, requiring the Defendants to produce this letter on Dr. Finkelstein's behalf would "compel [the] Defendants to express views with which they disagree." R&R at 6 (citing *Baskin v. Royal Goode Prods., LLC*, 2021 WL 6125612, at *6 (M.D. Fla. Nov. 19, 2021) (Wilson, Mag. J.)). That's not what injunctions are for.[7]

Having found that Dr. Finkelstein *is* requesting mandatory injunctive relief, we **OVERRULE** Dr. Finkelstein's Second Objection.

### III.   The Elements of a Preliminary Injunction (the Third Objection)

In her final objection, Dr. Finkelstein contends that Magistrate Judge Reid improperly weighed all four elements of a preliminary injunction against her. In Dr. Finkelstein's view, (1) she *is* substantially likely to succeed on her tortious-interference and extortion claims because the "Defendants have not yet been able to contradict" the "documents and legal analysis" that underpin her claims, Objections at 7; (2) she *has* shown "irreparable harm" because "Dr. Ben-David [has] made

---

[7] As we've suggested, Dr. Finkelstein repeatedly alleges that the Defendants would not allow her to use Dr. Ben-David's letter unless she signed a general release of all claims against the Defendants. *See* Injunction Hr'g Tr. [ECF No. 116] at 83 ("[Plaintiff's Counsel]: But [the Defendants] unequivocally refused to give any of these documents we're talking about unless she signed that general release."). But, as we just explained, Dr. Finkelstein is insisting on *an entirely new letter* written by *someone other than Dr. Ben-David. See id.* at 5 ("[Plaintiff's Counsel]: The relief that we're asking is . . . for Dr. Finkelstein to suggest an individual at Mount Sinai Medical Center to prepare what is commonly known as the program director letter[.]"); Finkelstein Memo at 13 (requesting an injunction that compels "[the Defendants] to consent that Dr. Finkelstein can designate a new faculty member . . . of her choice to serve as a reference provider"). She's thus not asking for unfettered use of Dr. Ben-David's letter at all. And we don't understand how an order requiring the Defendants to produce a *new* letter would "preserv[e]" the status quo. *See* R&R at 6 ("Plaintiff asks the Court to force Defendants to act, rather than simply maintaining [the] status quo.").

representations so disparaging of Dr. Finkelstein's professionalism . . . [that] Dr. Finkelstein [lost] her position as [Mount Sinai Beth Israel ("MSBI")] house surgeon," *id.* at 8; (3) the balance of harms favors her since the "Defendants' dissemination of falsities had a deleterious effect on Dr. Finkelstein securing a new employment or position at a new residency program," *id.* at 9; and (4) "it is not in the public interest for Defendants to spread false and misleading statements about Dr. Finkelstein's uncorroborated and unspecified professionalism issues," *id.* at 10. Because Magistrate Judge Reid correctly found that the second, third, and fourth elements of a preliminary injunction support the Defendants, we overrule Dr. Finkelstein's Third Objection.[8]

*First*, there's no evidence that Dr. Finkelstein will suffer irreparable injury if we don't grant her Motion. Dr. Finkelstein claims that, without a program director letter, she won't be able to continue her medical career. *See* Finkelstein Memo at 16 ("Defendants' misconduct has caused, and continues to cause, Dr. Finkelstein irreparable harm by not only directly interfering with her attempts to secure a spot with a new residency program but also actively interfering with Plaintiff's attempt to earn any income with her medical training."). As proof, Dr. Finkelstein says that, "in July 2021, [she] received an offer from [MSBI] to serve as a House Surgeon," but that the offer was withdrawn when the Defendants (allegedly) refused to provide "further information regarding Dr. Finkelstein's tenure" at Mount Sinai and implied that Dr. Finkelstein had "unspecified professionalism issues." Objections at 7–8; *see also, e.g.*, Affidavit of Dr. Elliot Goodman [ECF No. 94-2] ¶ 9 ("Conversely, when I contacted [Dr. Ben-David] . . . to discuss Dr. Finkelstein, he suggested that he would not hire Dr. Finkelstein if he were me due to unspecified professionalism issues that he reported having with Dr. Finkelstein.").

---

[8] For the sake of judicial economy, we won't address the "substantial likelihood of success" on the merits prong in *this* Order because we'll have a full opportunity to tackle it when we adjudicate the Defendants' pending Amended Motion to Dismiss Plaintiff's Verified Second Amended Complaint [ECF No. 146]. And our decision to skip over this part of the analysis here won't affect our results because we cannot issue a preliminary injunction unless the moving party (here, Dr. Finkelstein) satisfies *all four* elements. *See Wreal*, 840 F.3d at 1248 ("Wreal must meet all four prerequisites to obtain a preliminary injunction[.]").

Magistrate Judge Reid rejected this argument for two reasons. *One*, MSBI "withdrew the offer of employment [way back] in 2021," so Dr. Finkelstein has failed to show "that [the] Defendants are actively interfering with a *current* employment opportunity." R&R at 7 (emphasis added). *Two*, the "Plaintiff has an adequate remedy at law because she may recover monetary damages based on the alleged tortious interference and the other causes of action raised in the complaint, such as defamation and sex discrimination." *Ibid*. Here (again), Magistrate Judge Reid got it right.

Dr. Finkelstein's only concrete example of irreparable harm—the MSBI withdrawal—happened *nearly a year before* she filed this case in state court. *See* Objections at 7–8. The law is well-settled that past injuries, however harmful, aren't grounds for an injunction. *See Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 986 (11th Cir. 2016) ("To the extent that Hoop Culture has been irreparably harmed by Gap's past actions, past harm is not a basis for preliminary injunctive relief, which requires a showing of likely future injury if an injunction does not issue."); *see also Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005) ("Thus, a preliminary injunction is completely at odds with a sanction for past conduct that may be addressed by adequate remedies at law. 'The sole function of an action for injunction is to forestall future violations. It is so unrelated to punishment or reparations for those past that its pendency or decision does not prevent concurrent or later remedy for past violations by indictment or action for damages by those injured.'" (quoting *United States v. Or. State Med. Soc.*, 343 U.S. 326, 333 (1952))). In other words, if it's true that the Defendants wrongfully interfered with Dr. Finkelstein's potential employment with MSBI, the proper and adequate remedy would be monetary damages for this *past* interference with her career. *See Sampson*, 415 U.S. at 91–92 ("Assuming for the purpose of discussion that respondent had made a satisfactory showing of loss of income and had supported the claim that her reputation would be damaged as a result of the challenged agency action, we think the showing falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this

16

type of case."); *Blanco GmbH +Co. KG v. Vlanco Indus., LLC*, 992 F. Supp. 2d 1225, 1231 (S.D. Fla. 2014) (Rosenbaum, J.) ("To the extent that Plaintiff seeks relief from any harm imposed by Defendant's past conduct, Plaintiff may pursue a legal remedy; hence, equitable relief is barred.").

As the Defendants point out, Dr. Finkelstein "does not point to a single statement made by Defendants since July 2021 when Plaintiff was seeking a position at [MSBI]," and she doesn't "allege any job opportunities with which Defendants supposedly interfered with other than [MSBI]." Response at 13. We can't assume that Dr. Finkelstein faces the threat of future, irreparable injuries just because she lost out on a job opportunity two years ago. *See Siegel*, 234 F.3d at 1176 ("As we have emphasized on many occasions, the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" (quoting *City of Jacksonville*, 896 F.2d at 1285)). We add here only that Dr. Finkelstein's argument rings particularly hollow in our case because the Defendants appear to be under *no* obligation to promote her career by providing a favorable letter of recommendation. *See* ACGME Section II.A.4 at 3. We, therefore, adopt Magistrate Judge Reid's conclusion that Dr. Finkelstein has failed to show irreparable harm.

*Second*, we agree with Magistrate Judge Reid that "[l]imiting or controlling Defendants' protected speech far outweighs the harm to Plaintiff." R&R at 8; *see also, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (citing *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971))).

In her Objections, Dr. Finkelstein cites several cases for the proposition that "an order restraining defendants from disseminating disparaging and defamatory statements about Dr. Finkelstein does not interfere with protected speech." Objections at 9. But we find these cases totally inapposite here. In *Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So. 2d 1371 (Fla. 4th DCA 1987), for instance, Florida's Fourth District Court of Appeal approved of a highly circumscribed injunction that

enjoined the defendants from engaging in speech "*incident to conduct* which constitute[d] intentional interference with potentially advantageous business relationships[.]" *Id.* at 1376 (emphasis added).[9] And, in *Murtagh v. Hurley*, 40 So. 3d 62 (Fla. 2d DCA 2010), the Second DCA *affirmed* the denial of injunctive relief because the plaintiff had not shown that the defendant's speech tortiously interfered with his business. *See id.* at 67 ("The record reflects that Dr. Murtagh did not present any evidence that demonstrated or would allow an inference that Hurley's conduct 'had a deleterious effect on' Dr. Murtagh's business. . . . Dr. Murtagh improperly attempts to rely on the allegations in his unsworn complaint that Hurley's activities caused current customers to terminate their relationships with Dr. Murtagh and that his revenue had decreased."). Neither case stands for the blanket proposition that Florida law permits a temporary injunction simply because a defendant (allegedly) engaged in "libelous or slanderous speech." *Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269–70 (S.D. Fla. 2013) (Ungaro, J.) (rejecting the plaintiffs' argument that *Zimmerman* and *Murtagh* "support the proposition that prior restraints on speech are proper under Florida law . . . because the defamation in those cases was considered by the courts to be incidental to a tortious interference in a business relationship"). And neither of the federal cases Dr. Finkelstein cites are remotely similar to the injunction she's requested here. *See San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1237 (9th Cir. 1997) (enjoining workers on strike from displaying a banner emblazoned with the words "THIS MEDICAL FACILITY IS FULL OF RATS" because the sign was "intended to mislead members of the general public into believing that the Hospital suffered from a sanitation problem.")[10]; *Vondran v. McLinn*,

---

[9] The Fourth DCA notably *rejected and reversed* certain other portions of the injunction that (it held) violated the appellants' First Amendment rights. *See id.* at 1376 ("On the other hand, some of the prohibited activities fall within the ambit of first amendment protections and are not subject to prior restraint whether or not those activities are tortious. Accordingly, to the extent . . . the injunction prohibit[s] peaceful picketing and the displaying of signs, posters or other graphic material, we disapprove them and, upon remand, those prohibitions shall be stricken from the temporary injunction.").

[10] Dr. Finkelstein's citation to *San Antonio Community Hospital* is particularly unconvincing because that court's reasoning has been frequently maligned—*both* by other circuits *and* (even) by some other judges

1995 WL 415153, at *6 (N.D. Cal. July 5, 1995) (Aguilar, J.) (enjoining statements in a trade libel case because they "are assertions of fact and are capable of being proved true or false"). Dr. Finkelstein has thus failed to allay our concern that an injunction in the circumstances presented here—an injunction that would force the Defendants to say something they don't believe in a letter of recommendation they don't think Dr. Finkelstein deserves—would cause the Defendants significant harm by abridging their First Amendment rights.

*Third*, the injunction Dr. Finkelstein has requested would *not* serve the public interest. Dr. Finkelstein says that "it is not in the public interest for Defendants to spread false and misleading statements about [her] uncorroborated and unspecified professionalism issues. It is also not in the public interest for Defendants to utilize a pattern of misconduct designed to force former residents and employees into signing [a release] benefiting Defendants." Objections at 10. But, if Dr. Finkelstein is right—if the Defendants have in fact wronged her—she will receive just compensation from a jury (a jury, we hasten to add, that's far more representative of the public's views than we are). *See* Second Amended Complaint [ECF No. 125] at 89 ("Plaintiffs demand a trial by jury for all claims so triable as of right."). The public has a powerful interest in ensuring that these hotly contested factual questions—including questions about the extent to which Dr. Finkelstein has performed well during her residency—are decided, not by a federal judge no one elected, but by a jury of the parties' peers. *See Horowitz*, 435 U.S. at 92 ("Courts are particularly ill-equipped to evaluate academic performance.");

---

on the Ninth Circuit. *See id.* at 1239 (Kozinski, J., dissenting) ("The Hospital here did not carry its burden of showing it will suffer a 'substantial and irreparable injury.' It's implausible to believe that anyone choosing what hospital to patronize, or whether to donate money, would make such a weighty decision on the basis of a fleeting glance at a picket sign during a drive-by."); *San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 137 F.3d 1090, 1094 (9th Cir. 1998) (Reinhardt, C.J., dissenting from denial of rehearing en banc) ("I respectfully dissent from this court's failure to rehear en banc its unfortunate and unprecedented decision to get back into [the labor injunction] business in order to regulate traditional, robust labor speech, in violation of the clear mandate of not only our national labor laws but of our fundamental First Amendment doctrine[.]"); *Metro. Opera Ass'n v. Local 100 Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172, 178 (2d Cir. 2001) (rejecting *San Antonio Community Hospital* as persuasive authority).

*accord Fenje v. Feld*, 398 F.3d 620, 624 (7th Cir. 2005) (applying *Horowitz* to residency programs); *see also FF Cosm. FL Inc. v. City of Miami Beach, Fla.*, 129 F. Supp. 3d 1316, 1336 (S.D. Fla. 2015) (King, J.) (explaining that the public has a compelling interest in vindicating "the freedom of speech").

Magistrate Judge Reid, in sum, properly concluded that Dr. Finkelstein hasn't been irreparably harmed, that the balance of harms favors the Defendants, and that the public interest weighs heavily against an injunction. We therefore adopt Magistrate Judge Reid's findings and **OVERRULE** Dr. Finkelstein's Third Objection.

* * *

Having conducted a careful, *de novo* review of the R&R, the record, and the applicable law, we hereby **ORDER AND ADJUDGE** as follows:

1. The R&R [ECF No. 113] is **ACCEPTED and ADOPTED** in full. The Plaintiff's Objections [ECF No. 127] are **OVERRULED**.

2. The Plaintiff's Motion for Entry of Temporary Restraining Order and Preliminary Injunction [ECF No. 39] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on September 19, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record